1  Guy B. Wallace, State Bar No. 176151
2  Nancy Park, State Bar No. 236750
   Christian Schreiber, State Bar No. 245597
3  SCHNEIDER & WALLACE
   180 Montgomery Street, Suite 2000
4  San Francisco, CA 94104
   Telephone: (415) 421-7100
5  Facsimile: (415) 421-7105

6
   Mark T. Johnson, State Bar No. 76904 ·
7  Alexius Markwalder, State Bar No. 227004
   THE STURDEVANT LAW FIRM
8  475 Sansome Street, Suite 1750
9  San Francisco, CA 94111
   Telephone: (415) 477-2410
10 Facsimile: (415) 477-2420

11 Attorneys for Plaintiffs

12 **UNITED STATES DISTRICT COURT**

13 **NORTHERN DISTRICT OF CALIFORNIA**
   **SAN FRANCISCO/OAKLAND DIVISION**

14

15 IVANA KIROLA, MICHAEL KWOK, and       No. **C 07 3685 TEH**
16 ELIZABETH ELFTMAN, on behalf of
   themselves and all others similarly situated;
17

18         Plaintiffs,

19     vs.                                **COMPLAINT FOR DECLARATORY
                                           AND INJUNCTIVE RELIEF FOR**
20 THE CITY AND COUNTY OF SAN            **DISCRIMINATION AGAINST PERSONS
   FRANCISCO ("the CITY"); GAVIN         WITH DISABILITIES IN VIOLATION OF:**
21 NEWSOM, in his official capacity as Mayor;  **THE AMERICANS WITH
   AARON PESKIN, in his official capacity as   DISABILITIES ACT OF 1990; SECTION 504 OF**
22 President of the Board of Supervisors; JAKE  **THE REHABILITATION ACT OF 1973;**
   MCGOLDRICK, MICHELA ALIOTO-PIER,     **CAL CIV. CODE §§ 51, *ET SEQ.*, CAL. CIV.**
23 ED JEW, CHRIS DALY, SEAN ELSBERND,   **CODE §§ 54, *ET SEQ.*, AND CAL. GOVT. CODE
   BEVAN DUFTY, TOM AMMIANO, SOPHIE      §§ 11135, *ET SEQ.***
24 MAXWELL, ROSS MIRKARIMI, AND
   GERARDO SANDOVAL, in their official    **CLASS ACTION**
25 capacities as members of the Board of
26 Supervisors;

27         Defendants.

28

**INTRODUCTON**

1.    This action seeks to redress the CITY AND COUNTY OF SAN FRANCISCO's (hereafter "the CITY") failure to provide to persons with mobility disabilities the minimum legally required access to facilities, programs, services, and activities owned, operated, controlled, provided and/or maintained by the CITY. Plaintiffs IVANA KIROLA, MICHAEL KWOK, and ELIZABETH ELFTMAN have suffered ongoing deprivations of their civil rights as well as loss of equal access because of the CITY's repeated violations of federal and state disability nondiscrimination laws regarding access for persons with mobility disabilities. The facilities owned, operated, or controlled by the CITY are characterized by multiple, pervasive, and hazardous physical access barriers. The CITY's architectural barriers include, *inter alia*, dangerous and inaccessible sidewalks, dangerous and unsafe intersections, inaccessible passenger loading zones, inaccessible public buildings, inaccessible paths of travel within public buildings, inaccessible service counters within public buildings, inaccessible or nonexistent parking for the disabled, inadequate signage and excessive door pressures in public buildings, inaccessible or non-operational elevators within public buildings, inaccessible public parks, and inaccessible public pools. Many of these barriers constitute safety hazards to persons who have mobility disabilities.

2.    The CITY has also failed to adopt and implement effective policies to ensure that its public facilities and programs are readily accessible to and usable by persons with mobility disabilities. The CITY has performed new construction and alterations to its existing facilities without complying with federal and state disability access design standards. The CITY has known for at least thirty years that it was required by Section 504 of the Rehabilitation Act of 1973 and its accompanying regulations to address its unequal facilities in the form of a Self-Evaluation Plan and a Transition Plan, in which the CITY identified facilities, programs, services, and activities that deny equal access to persons with disabilities. The CITY has also known for over a twenty-five years that it was required by Section 504 of the Rehabilitation Act of 1973 and its accompanying regulations to have implemented structural changes to create equal access to the facilities and programs owned, operated, controlled and/or maintained by the CITY. In addition,

1

1  the CITY has known that it was required under Title II of the Americans with Disabilities Act of

2  1990 ("ADA") to make structural changes to create equal access to its facilities by January 26,

3  1995. The CITY has failed to meet these federal and state requirements, failed to develop and

4  implement adequate plans, and has denied equal access to persons with mobility disabilities. The

5  Mayor of the CITY and the members of the CITY's Board of Supervisors are each responsible for

6  ensuring compliance with federal and state law within and by the CITY's various facilities,

7  programs, services, and activities. Despite the obligation of the Mayor and the Board of

8  Supervisors to ensure that the CITY complies fully with federal and state disability non-

9  discrimination laws, they have failed and refused to ensure such compliance.

10      3.      Plaintiffs seek declaratory and injunctive relief against the Defendants for severely

11  limiting Plaintiffs' access to the CITY's facilities, programs, services, and activities by knowingly

12  refusing to eliminate architectural and programmatic barriers, resulting in emotional and physical

13  distress to Plaintiffs and violating Title II of the Americans With Disabilities Act, 42 U.S.C. §

14  12101 *et seq.*, and its accompanying regulations; Section 504 of the Rehabilitation Act of 1973, as

15  amended, 29 U.S.C. § 794, and its accompanying regulations; 42 U.S.C. § 1983; California Civil

16  Code §§ 51 *et seq.*; California Civil Code §§ 54, *et seq.*; and California Government Code

17  §§11135, *et seq.*

18      4.      Plaintiffs have no adequate remedy at law and, unless the Defendants are

19  preliminarily and permanently enjoined, Plaintiffs will continue to suffer irreparable harm as a

20  result of their exclusion from basic facilities, programs, services, and activities.

21                                    **JURISDICTION**

22      5.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§

23  1331, 1343(a)(3)-(4). The Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, Section

24  504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794, and 42 U.S.C. § 1983 present

25  federal questions and confer jurisdiction on this Court over Plaintiffs' claims regardless of the

26  amount in controversy. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction

27  over Plaintiff's pendant claims under California law.

28

2

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

1

## VENUE

2    6.    Venue is proper in the Northern District of California, the judicial district in which

3    these claims have arisen, pursuant to 28 U.S.C. §1391(b).

4    ## INTRADISTRICT ASSIGNMENT

5    7.    Assignment of this action to the United States District Court for the Northern District

6    of California, San Francisco/Oakland, is proper pursuant to Civil L.R. 3-2 because these civil

7    claims arose in the County of San Francisco, within this District.

8    ## THE PARTIES

9    8.    Plaintiff IVANA KIROLA is a person with a mobility disability within the meaning

10    of all applicable statutes, and she is a qualified person with disabilities within the meaning of Title

11    II of the ADA and Section 504 of the Rehabilitation Act of 1973.  IVANA KIROLA has cerebral

12    palsy.  She is unable to walk, has limited use of her hands, and is legally blind.  She uses a power

13    wheelchair for mobility.  Plaintiff IVANA KIROLA is a resident of San Francisco County and is a

14    citizen of the State of California and the United States.

15    9.    Plaintiff MICHAEL KWOK is a person with a mobility disability within the

16    meaning of all applicable statutes, and is a qualified person with a disability within the meaning of

17    Title II of the ADA and Section 504 of the Rehabilitation Act of 1973.  MICHAEL KWOK is a

18    quadriplegic with impaired motor and sensory functions.  He has been disabled since he was in a

19    car accident in 1987.  He uses both a manual wheelchair and a power wheelchair for mobility.  In

20    most instances, Plaintiff MICHAEL KWOK uses a manual wheelchair for mobility in order to

21    maintain his physical health and for greater maneuverability.  Plaintiff MICHAEL KWOK is a

22    resident of San Francisco County and is a citizen of the State of California and the United States.

23    10.    Plaintiff ELIZABETH ELFTMAN is a person with a mobility disability within the

24    meaning of all applicable statutes, and she is a qualified person with disabilities within the

25    meaning of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973.  She has been

26    using a cane for mobility for more than two years.  Ms. Elftman can only walk for six blocks at a

27    time, and in doing so, she must rest frequently for several minutes.  Plaintiff ELIZABETH

28

3

SCHNEIDER
& WALLACE

1   ELFTMAN is a resident of San Francisco County and is a citizen of the State of California and the

2   United States.

3      11.    The CITY is a local government entity, with responsibility for providing Plaintiffs

4   with access to its public facilities, programs, services, and activities.

5      12.    GAVIN NEWSOM is the Mayor of the CITY (hereinafter the "Mayor"); AARON

6   PESKIN is the President and a member of the Board of Supervisors; JAKE MCGOLDRICK,

7   MICHELA ALIOTO-PIER, ROSS MIRKARIMI, ED JEW, CHRIS DALY, SEAN ELSBERND,

8   BEVAN DUFTY, TOM AMMIANO, SOPHIE MAXWELL, and GERARDO SANDOVAL are

9   members of the Board of Supervisors (hereinafter the "Board"). The Mayor and the Board are

10   each legally responsible for ensuring compliance with federal and state law by the CITY.

11      13.    The CITY, the Mayor and the Board of Supervisors will be collectively referred to as

12   "Defendants."

13                 **FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

14      14.    The CITY receives federal and state funds for its programs and facilities.

15      15.    The CITY has numerous illegal physical and programmatic barriers to residents,

16   visitors, and other individuals who use wheelchairs and/or who have mobility disabilities,

17   including Plaintiffs IVANA KIROLA, MICHAEL KWOK, and ELIZABETH ELFTMAN, which

18   deny such persons full and equal access to the CITY's public premises, facilities, programs,

19   services, and activities. Examples of such barriers include the following:

20            a.    CITY sidewalks that do not have curb ramps and are, therefore, inaccessible to

21               persons with mobility impairments;

22            b.    CITY sidewalks with curb ramps that are too steep or that have hazardous cross-

23               slopes, or are located in such a way as to force persons with mobility

24

25               impairments onto the streets, making them inaccessible to persons with mobility

26               disabilities and unsafe for them to use;

27

28                                                   4

c.  Designated passenger loading zones in the middle of CITY blocks that lack curb
ramps, making them inaccessible for persons with mobility disabilities;

d.  Public buildings and spaces (including, but not limited to, key and unique
administrative buildings, museums, libraries, parks, and recreation centers)
housing facilities, programs, services, and activities offered by the CITY that
contain ramps that are too steep, constituting safety hazards to persons with
mobility disabilities;

e.  Public facilities with hazardous or inaccessible paths of travel, making them
unsafe for persons with mobility disabilities;

f.  Public facilities with restrooms that are inaccessible to persons with mobility
disabilities;

g.  Public facilities with inaccessible or non-operational elevators;

h.  Public facilities that are inaccessible to persons with mobility disabilities because
the entryways are too steep or consist only of stairs;

i.  Public facilities with entire floors or sections that are inaccessible to persons with
mobility disabilities because they are accessible only by stairs;

j.  Public facilities with drinking fountains and service counters that are inaccessible
to persons with mobility disabilities;

k.  Public facilities with inadequate signage, making them inaccessible to persons
with mobility disabilities;

l.  Public facilities with door hardware or excessive door pressures that prevent
access through the doors to persons with mobility disabilities;

m. Public facilities that lack or have insufficient parking accessible to persons with
mobility disabilities;

5

n. Parks, including Golden Gate Park, that are inaccessible, or only partially

accessible, to persons with mobility disabilities;

16.     The CITY continues to perform new construction of its public buildings and facilities that does not comply with state and federal disability access design standards.

17.     The CITY has received numerous complaints regarding these and similar access barriers, yet the CITY has failed to come into full compliance with applicable laws notwithstanding the severe negative impact that this conduct has caused for Plaintiffs IVANA KIROLA, MICHAEL KWOK, and ELIZABETH ELFTMAN as well as other persons with mobility disabilities.

18.     Because of the Defendants' misconduct and failure to remove architectural and programmatic access barriers, Plaintiffs have been denied full and equal access to the CITY's facilities, programs, services, and activities. Plaintiffs have suffered and risk suffering severe physical injury and damage to their mental health because Defendants have failed and refused to ensure that the CITY complies with federal and state disability anti-discrimination laws, including the CITY's failure to remove illegal and hazardous architectural and programmatic barriers.

19.     Defendants have known for years that they are operating illegal facilities and programs, which, by reason of multiple and severe architectural barriers, discriminate against persons with mobility disabilities. Despite this knowledge, Defendants have intentionally refused to comply with federal and state disability non-discrimination laws.

20.     The Mayor and the Members of the Board of Supervisors are legally responsible for failing to ensure the CITY's full compliance with federal and state law, as alleged in this Complaint.

21.     Plaintiff IVANA KIROLA travels to many parts of the CITY on a regular basis, including the Western Addition, the Mission, and the Financial District, and has been denied access at many points throughout the CITY.

22.     Plaintiff IVANA KIROLA has cerebral palsy and must use a scooter for mobility. Plaintiff IVANA KIROLA experiences mobility difficulties due to cracked and inaccessible

1  sidewalks, inaccessible paths of travel, inadequate and dangerous curb ramps, a lack of curb cuts,

2  and a lack of adequate or accessible ramps and accessible paths of travel at CITY parks, pools, and

3  public buildings. Plaintiff IVANA KIROLA has been repeatedly and routinely denied full and

4  equal access to the CITY's facilities, programs, services, and activities because of the Defendants'

5  refusal and failure to provide the legally required access to the CITY's streets and buildings.

6      23.    Many of the CITY'S curb ramps are too steep and make travel for Plaintiff IVANA

7  KIROLA difficult and dangerous. For example, the curb ramps at the intersections of Octavia

8  Street and McCallister Street and at Van Ness Avenue and California Street are too steep, and the

9  curb ramp at the intersection of Olive Street and Van Ness Avenue is so steep that Plaintiff

10  IVANA KIROLA fell out of her wheelchair when trying to cross the street.

11     24.    Many intersections in the CITY still lack curb ramps. For example, the intersection

12  at Grove Street and Fillmore Street, which is in Plaintiff IVANA KIROLA'S residential

13  neighborhood, has curbs that do not provide curb ramps. Because this intersection does not have

14  curb ramps, Plaintiff IVANA KIROLA is often forced to take a longer alternate route. Plaintiff

15  IVANA KIROLA also has difficulty traveling in this area of her neighborhood because the cross

16  slope on the south side of the sidewalk on Grove Street between Fillmore Street and Webster

17  Street is too steep.

18     25.    Lack of curb ramps also impedes Plaintiff IVANA KIROLA's travel and use of

19  public areas of the CITY outside of her neighborhood. For example, the intersection of 18th Street

20  and Shotwell Street has a curb without a curb ramp. The intersection of Guerrero Street and 16th

21  Street has a curb with only one curb ramp. Curbs on 26th Street between Mission and Harrison are

22  missing curb ramps. Plaintiff IVANA KIROLA travels this area at least twice a month when

23  going to the CITY'S Garfield Swimming Pool.

24     26.    Plaintiff IVANA KIROLA uses the CITY'S pools for exercise, but does not have

25  full and equally effective access to them. Hamilton, Garfield, and Sava pools do not have

26  accessible showers, and the "accessible" bathroom at Sava pool does not have a grab bar. North

27

28                                                        7

SCHNEIDER
& WALLACE

1    Beach pool is also inaccessible because its entry door is too heavy and has excessive door pressure,

2    and is not equipped with an automated push button to open it.

3        27.    Plaintiff IVANA KIROLA encounters access barriers in her neighborhood when she

4    goes to grocery stores located at the intersections of Geary Boulevard and Masonic Avenue and at

5    Geary Boulevard and Fillmore Street. The curb ramps on Masonic Avenue are too steep, and the

6    curb ramps on Geary Boulevard do not have detectable domes, which make them difficult for

7    Plaintiff IVANA KIROLA to detect and use.

8        28.    Plaintiff IVANA KIROLA also encounters access barriers when she goes to the

9    Financial District. Many of the curb ramps on Montgomery Street are too steep, and several of

10    them have sections of pavement missing at the bottom of the curb ramp, which results in a safety

11    hazard. Many of the curb ramps in the Financial District have lips that are in excess of three

12    inches high and which are not beveled.

13        29.    Plaintiff IVANA KIROLA encounters access barriers when traveling to her doctors'

14    offices. When visiting her doctor, who is located at Divisadero Street and Geary Boulevard,

15    Plaintiff IVANA KIROLA has to navigate curb ramps that are too steep. When visiting her doctor

16    at the Parnassus Medical Center, she also has to use curb ramps that are too steep.

17        30.    Plaintiff IVANA KIROLA has difficulty accessing the City Health Department

18    building located at 101 Grove Street because the entry ramp is too steep. Furthermore, the

19    entrance for persons with mobility disabilities is on the side of the building, and is separate and

20    distinct from the main entrance used by nondisabled persons. The intersection of Polk Street and

21    Grove Street, where the City Health Department is located, is also not fully accessible because the

22    curb ramps do not have detectable domes. Plaintiff IVANA KIROLA has gone off the curb in her

23    wheelchair at this intersection because she was not able to detect the curb.

24        31.    Many of the bus islands in the CITY, including those located at Church Street and

25    Market Street and at Market Street and 8th Street, are not accessible. A bus driver once let Plaintiff

26    IVANA KIROLA off on an inaccessible island where she was stranded until she had someone help

27

28

her off the island. There were no curb ramps for a person with a mobility disability to use at the bus island.

32.    Many of the CITY'S parks are inaccessible to Plaintiff IVANA KIROLA, including Alamo Square Park, which has an "accessible" entrance that is too steep, and Park Merced, which has sidewalks that are too narrow and are uneven. Golden Gate Park is also inaccessible to Plaintiff IVANA KIROLA because many of its sidewalks are too narrow and the cross-slopes are too steep. Plaintiff IVANA KIROLA visits Golden Gate Park several times a year and has to deal with these access barriers each time she visits. Plaintiff IVANA KIROLA faces similar barriers when she visits the Palace of Fine Arts where the sidewalks lack curb ramps.

33.    Plaintiff MICHAEL KWOK travels to many parts of the CITY for business, social or recreational purposes, and has been denied access at many points throughout the CITY.

34.    Plaintiff MICHAEL KWOK is a quadriplegic. He uses a wheelchair for mobility. Plaintiff MICHAEL KWOK experiences mobility difficulties due to cracked and inaccessible sidewalks, inaccessible paths of travel, inadequate and dangerous curb ramps, and a lack of curb ramps. Plaintiff MICHAEL KWOK has been repeatedly and routinely denied full and equal access to the CITY's facilities, programs, services, and activities because of the Defendants' refusal and failure to provide the legally required access to the CITY's streets and buildings.

35.    Plaintiff MICHAEL KWOK lives at 6th Street and Howard Street. He has lived at this location for three years, but has lived in the SOMA neighborhood for almost 20 years. Many of the intersections in his neighborhood do not have accessible curb ramps. He must use these inaccessible sidewalks and curb ramps on a daily basis to patronize neighborhood cafes, stores and movie theatres, and therefore encounters access barriers every day. For example, at Howard Street and 8th Street, there is a curb ramp that has a pothole at the bottom of the ramp. This barrier is dangerous for Plaintiff MICHAEL KWOK to navigate. The curb ramps along Howard Street beyond 5th and 9th Streets are also inaccessible. In his neighborhood there are also several sections of sidewalk in which the tree roots have made the sidewalk uneven and difficult to use for someone in a wheelchair. Traveling from Folsom Street to Harrison Street, Plaintiff MICHAEL

1 | KWOK also must use curb ramps that are inaccessible and unsafe, and that are characterized by

2 | potholes and other bumps in their surface.

3 | 36.    Plaintiff MICHAEL KWOK travels to the Civic Center to go to City Hall, the Main

4 | Library, and to the Farmer's Market on a bi-weekly basis. To get to Civic Center, he travels across

5 | sections that do not have adequate curb ramps, which include, for example, Mission Street between

6 | 7th Street and 9th Street and the intersection of Minna Street and 7th Street. Plaintiff MICHAEL

7 | KWOK also travels along Market Street when he goes to the Civic Center and to City Hall. When

8 | he does so, he encounters curb ramps that have abrupt lips that are often more than two inches high

9 | at the bottom of the ramp. Going over these lips in his power wheelchair causes difficulty for

10 | Plaintiff MICHAEL KWOK because the jarring changes the direction that his power chair is

11 | going, and also unbalances his body in his wheelchair and causes him physical discomfort.

12 | Plaintiff MICHAEL KWOK also encounters curb ramps with abrupt lips at various other locations

13 | throughout the City.

14 | 37.    Plaintiff MICHAEL KWOK also goes to Union Square weekly. When he does so,

15 | he crosses Market Street at 5th Street, which is hazardous because the locations of the curb ramps

16 | force him into oncoming traffic. Potholes created by streetcars create additional hazards at this

17 | intersection, as well as at the intersection of Market Street and 8th Street.

18 | 38.    Plaintiff MICHAEL KWOK goes to Cathedral Hill and Japan Town on a weekly

19 | basis. When Plaintiff MICHAEL KWOK travels up Van Ness Avenue from Market Street to go to

20 | these areas (or to use the AMC 1000 movie theatre on Van Ness), he has difficulty crossing the

21 | intersections because the curb ramps on Van Ness are very steep and many of them are hazardous

22 | to climb in a wheelchair.

23 | 39.    Last summer, Plaintiff MICHAEL KWOK fell out of his chair when crossing 5th

24 | Street and Tehama Street because the pavement at this section was uneven. Such falls are not

25 | uncommon for Plaintiff MICHAEL KWOK, as many of the City's streets and sidewalks are

26 | hazardous for him to travel.

27

28

40.     Many of the CITY'S parks are inaccessible to Plaintiff MICHAEL KWOK, including Golden Gate Park and Alamo Square Park. Golden Gate Park and Alamo Square Park contain numerous curb ramps that are not accessible. In addition, the park located at Turk Street and Gough Street is not accessible because of inaccessible curb ramps on the sidewalks nearby, and because the main entrance to the park has steps. Plaintiff MICHAEL KWOK used to try to use many of the CITY's parks, but no longer does so because of the access barriers that he encounters in the parks.

41.     Plaintiff MICHAEL KWOK often goes to the City's Main Library in the Civic Center. When he goes, he cannot enter through the main entrance on Larkin Street because the main entrance is not accessible to him. He enters from Grove Street, the side entrance. Once he is in the library building, he must descend a steep ramp. Controlling his chair while going down the ramp is difficult, and going up the ramp, which he has to do to exit the library, is exhausting.

42.     Plaintiff MICHAEL KWOK also encounters inaccessible curb ramps and potholes when he travels along Larkin Street between Eddy Street and Turk Street. The curb ramps in this area are also hazardous, and Plaintiff MICHAEL KWOK has almost fallen out of his wheelchair on several occasions when trying to navigate them.

43.     Plaintiff ELIZABETH ELFTMAN travels to many parts of the CITY, and has been denied access at many points throughout the CITY. Plaintiff ELIZABETH ELFTMAN has been a resident of San Francisco for over forty years.

44.     Plaintiff ELIZABETH ELFTMAN has a physical disability and is unable to walk without the assistance of a cane and cannot walk more than six blocks at a time without stopping to rest for several minutes. Plaintiff ELIZABETH ELFTMAN experiences mobility difficulties due to cracked and inaccessible sidewalks, lack of adequate handrails, and lack of accessible paths of travel at CITY buildings and parks. Plaintiff ELIZABETH ELFTMAN has been repeatedly and routinely denied full and equal access to the CITY's facilities, programs, services, and activities because of the Defendants' refusal and failure to provide the legally required access to the CITY's streets and buildings.

SCHNEIDER
& WALLACE

45.    Tree roots have raised and damaged the sidewalks in Plaintiff ELIZABETH ELFTMAN'S neighborhood near the intersection of Laguna Street and Geary Boulevard. Plaintiff ELIZABETH ELFTMAN, who uses a cane and has difficulty navigating the abrupt transitions created by the damaged sidewalk, has tripped and fallen near this intersection because this portion of the sidewalk had been upturned by tree roots. Plaintiff ELIZABETH ELFTMAN goes shopping at stores on Post Street, Laguna Street and Webster Street, and encounters tripping hazards on the sidewalks while traveling in her neighborhood for these purposes.

46.    Plaintiff ELIZABETH ELFTMAN has medical appointments on a monthly basis at the University of California Medical Center at San Francisco and Kaiser Medical Center for doctors' appointments. When she goes to these appointments she uses the bus stop at Masonic Street and Geary Boulevard. The pavement at this stop is damaged and uneven, which makes this stop difficult and unsafe for her to use and inaccessible to someone using a wheelchair. Plaintiff ELIABETH ELFTMAN has also encountered access barriers on Sutter Street, where there is a section of sidewalk that is partially missing, broken and uneven.

47.    Plaintiff ELIZABETH ELFTMAN lives a few blocks from Jefferson Square Park, which is inaccessible to her because it does not have handrails with extensions. Plaintiff ELIZABETH ELFTMAN has difficulty climbing and descending stairs when the handrails do not have extensions. The extensions give her the stability she needs at the bottom and top of a staircase.

48.    Plaintiff ELIZABETH ELFTMAN has encountered physical access barriers in various CITY facilities. Davies Symphony Hall is inaccessible because of a lack of accessible paths of travel and a lack of handrails with extensions. The War Memorial Opera House is inaccessible because it does not have handrails with extensions, does not have adequate accessible parking, contains doors that are too heavy to be accessible, and lacks accessible seating. The Opera House's lack of doors that have the required clearance makes it inaccessible to wheelchair users.

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

49.     Plaintiff ELIZABETH ELFTMAN'S primary source of exercise is swimming, and she uses the CITY's public pools.  None of the pools she has used (Garfield, Hamilton, and North Beach Pool) have handrails with extensions, which makes entering and exiting the pools both difficult and unsafe for her.  In addition, the last step on the staircase in the Hamilton pool is approximately one foot above the floor of the pool, which makes the last step too steep and unsafe for Plaintiff ELIZABETH ELFTMAN to use.  In an attempt to provide for a more gradual descent, the CITY has placed a plastic block at the foot of the staircase, but the plastic block is an inadequate and unsafe substitute for a real step.

CLASS ALLEGATIONS

50.     The named Plaintiffs bring this action on behalf of themselves and all persons similarly situated.  The class that Plaintiffs seek to represent is comprised of all residents of San Francisco who have mobility disabilities and who seek to have access to and use its facilities, programs, services, and activities.

51.     The members of the proposed class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit both to the parties and to this Court.

52.     There is a well-defined community of interest among the members of the proposed class in the questions of law and fact to be decided in this case.  All members of the class  have been and continue to be denied their civil rights to full and equal access to, and use and enjoyment of, the facilities, programs, services and activities operated by the Defendants because of the violations of disability access laws alleged herein.

53.     There are numerous questions of law and fact common to the class, including, but not limited to, the following:

a.    Whether the CITY adopted a "transition plan" as required by 28 C.F.R. §35.150(d);

b.    Whether any transition plan adopted by the CITY was adequate;

c.    The extent to which any transition plan adopted by the CITY remains unimplemented;

13

d. Whether the CITY's sidewalks, crosswalks, parks, libraries, pools, museums and public buildings owned and operated by the CITY contain physical barriers to access by persons with mobility disabilities which violate the disability access laws alleged herein and applicable regulations;

e. Whether physical barriers to access deprive class members, including the named Plaintiffs, of full and equal access to, and the use and enjoyment of, programs, services and activities offered by the CITY.

f. Whether facilities or parts of facilities owned or operated by the CITY are "new construction" and/or "alterations" within the meaning of 28 C.F.R. § 35.151;

g. Whether facilities or parts of facilities owned or operated by the CITY that constitute "new construction" or "alterations" are in compliance with 28 C.F.R. § 35.151.

54. The issues of law and fact common to the class predominate over individual issues.

55. The claims of the named Plaintiffs are typical of those of the class in that they arise from the same course of conduct engaged in by the CITY. The relief sought herein will benefit all class members alike.

56. The CITY has acted and refused to act on grounds generally applicable to the class, making the declaratory and injunctive relief sought on behalf of the class as a whole appropriate.

57. The named Plaintiffs will fairly and adequately represent the interests of the class. They have no interests adverse to the interests of other members of the class and have retained counsel who are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases.

58. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since joinder of all members of the class is impracticable.

59. References hereafter to Plaintiffs include the named Plaintiffs and each member of the class.

14

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

1

2

**FIRST CLAIM**
**Violations of the Americans with Disabilities Act of 1990**
**(Against all Defendants)**

3      60.     Plaintiffs incorporate by reference as though fully set forth herein the preceding

4   paragraphs of this Complaint.

5      61.     The acts alleged herein constitute violations of Title II of the Americans with

6   Disabilities Act of 1990, 42 U.S.C. §§12131, *et seq.*, and the regulations promulgated thereunder.

7   Title II of the ADA provides, *inter alia*, that (a) people with disabilities shall not be excluded from

8   participation in, nor be denied the benefits of any services, programs, or activities of a public

9   entity, or be subjected to discrimination by any such entity; (b) a public entity may not provide a

10   qualified person with a disability any aid, benefit, or service that is inferior to that received by non-

11   disabled persons; (c) public entities and recipients of federal monies that employ fifteen or more

12   persons shall adopt and complete implementation of an effective transition plan by no later than

13   January 26, 1995.

14      62.     The CITY is a public and local government entity within the meaning of Title II of

15   the ADA and employs more than fifteen employees at all times relevant to this action.

16      63.     Defendants' discriminatory conduct alleged herein constitutes, *inter alia*, (a) failure

17   to provide safe and equal access to the CITY's programs, facilities, services, and activities; (b)

18   denial of access to the CITY's facilities, programs, services, and activities; (c) failure to formulate

19   and implement an adequate self-evaluation and transition plan; (d) failure to take prompt and

20   equitable steps to remedy its discriminatory conduct; and (e) failure to maintain in operable

21   condition those features of facilities and equipment that Title II of the ADA requires to be readily

22   accessible to and usable by persons with disabilities.

23      64.     The premises administered by Defendants include buildings, structures, and related

24   facilities within the meaning of the Americans with Disabilities Act Accessibility Guidelines

25   ("ADAAG") and the Uniform Federal Access Standards ("UFAS"). Plaintiffs are informed and

26   believe, and on that basis allege, that since January 26, 1992, Defendants have constructed, altered,

27   or repaired parts of these premises within the meaning of the ADAAG and the UFAS, and that

28

15

SCHNEIDER
& WALLACE

1 | Defendants have failed to make their facilities readily accessible to and usable by persons with

2 | disabilities as required under federal accessibility standards.

3 | 65.    Pursuant to 42 U.S.C. §12133 and the remedies, procedures, and rights set forth in

4 | §794 of Title 29 incorporated therein, Plaintiffs pray for judgment as set forth below.

5 | **SECOND CLAIM**
**Violations of Section 504 of the Rehabilitation Act of 1973**

6 | **(Against All Defendants)**

7 | 66.    Plaintiffs incorporate by reference as though fully set forth herein the preceding

8 | paragraphs of this Complaint.

9 | 67.    The acts alleged herein constitute violations of Section 504 of the Rehabilitation Act

10 | of 1973, 29 U.S.C. §§794, *et seq.*, and the regulations promulgated thereunder.  Section 504 of the

11 | Rehabilitation Act provides, *inter alia*, that no otherwise qualified individual with a disability

12 | shall, solely by reason of his or her disability, be excluded from the participation in, be denied the

13 | benefits of, or be subjected to discrimination under any program or activity receiving federal

14 | financial assistance.

15 | 68.    The CITY is a direct recipient of federal financial assistance sufficient to invoke the

16 | coverage of Section 504, and has received such federal financial assistance at all times relevant to

17 | the claims asserted in this Complaint.

18 | 69.    Defendants have violated Plaintiffs' rights under Section 504 of the Rehabilitation

19 | Act of 1973 and the regulations promulgated thereunder by:  (1) denying Plaintiffs their right to

20 | full, equal, and safe access to the facilities, programs, services, and activities offered by the CITY;

21 | (2) failing to develop and implement an adequate self-evaluation and transition plan that sets forth

22 | the steps necessary to achieve full and equally effective access for persons with mobility

23 | disabilities; and (3) by otherwise discriminating against the Plaintiffs solely by reason of their

24 | disabilities.

25 | 70.    The premises owned and operated by Defendants include buildings, structures, and

26 | related facilities within the meaning of the Americans with Disabilities Act Accessibility

27 | Guidelines (ADAAG) and the Uniform Federal Access Standards (UFAS).  Plaintiffs are informed

28 |

16

1 and believe, and on that basis allege, that since June 3, 1977, Defendants have constructed, altered

2 or repaired parts of these premises within the meaning of the ADAAG, the UFAS, and other

3 applicable federal disability access design standards, and have failed to make those premises

4 readily accessible to and usable by persons with disabilities as required under federal accessibility

5 standards.

### THIRD CLAIM
#### 42 U.S.C. §1983
6

7 **(Against the Mayor and Members of the Board of Supervisors in their Official Capacities)**

8      71.    Plaintiffs incorporate by reference as though fully set forth herein the preceding

9 paragraphs of this Complaint.

10      72.    The acts and omissions of the Mayor and Members of the Board of Supervisors,

11 under color of law as well as official policy and custom, as hereinabove set forth, deprive Plaintiffs

12 of their rights under Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA in

13 violation of 42 U.S.C. §1983, for which Plaintiffs seek and are entitled to injunctive and

14 declaratory relief.

15      73.    The acts of Defendants as herein alleged were willful, intentional, and oppressive.

### FOURTH CLAIM
#### (Violations of California Civil Code §§51, *et seq.*)
16
#### (Against All Defendants)
17

18      74.    Plaintiffs incorporate by reference as though fully set forth herein the preceding

19 paragraphs of this Complaint.

20      75.    Defendants own, operate and/or lease business establishments within the meaning of

21 the Unruh Civil Rights Act. CITY facilities are public accommodations whose facilities and

22 programs are open to the general public and are operated for the public benefit. The CITY

23 provides its facilities, programs and services to the public, enters into business contracts with a

24 myriad of business entities, and markets and promotes its programs, services, facilities and

25 activities to the general public.

26      76.    The actions of Defendants constitute intentional discrimination against persons with

27 disabilities and violate the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.*, in that physically

28

17

disabled persons have been and are denied full and equal accommodations, advantages, facilities, privileges, and services provided to non-disabled persons.

77.    The actions of Defendants were and are in violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.* and therefore Plaintiffs are also entitled to injunctive relief and reasonable attorneys' fees and costs.

### FIFTH CLAIM
**(Violations of Cal. Civ. Code §§ 54, *et seq.*)**

78.    Plaintiffs incorporate by reference as though fully set forth herein the preceding paragraphs of this Complaint.

79.    The facilities of the CITY constitute places of public accommodation and places to which the general public is invited within the meaning of California Civil Code §§ 54.1, *et seq.* The CITY provides its facilities, programs and services to the public, enters into business contracts with a myriad of business entities, and markets and promotes its programs, services, facilities and activities to the general public.

80.    Defendants' discriminatory conduct also includes the CITY's failure to comply with California Government Code §§ 4450, *et seq.* California Government Code sections 4450 *et seq.* requires that all buildings, structures, sidewalks, curbs and related facilities that are constructed with the use of state, county, or municipal funds must provide full and equal access to persons with disabilities. The accessibility standards require that in no instances shall such standards of accessibility and usability provided be a lesser standard than that provided by the Accessibility Guidelines prepared by the federal Access Board as adopted by the United States Department of Justice to implement the Americans with Disabilities Act of 1990. The City and County of San Francisco is an entity that is funded directly by the State of California and/or that receives financial assistance from the State of California.

81.    Defendants have failed to ensure that all buildings, structures, sidewalks, curbs and related facilities of the CITY provide full and equal access to persons with disabilities, as required by California Government Code §§ 4450, *et seq.* and Cal. Civ. Code §§ 54, *et seq.* Defendants

18

1   have also failed to rectify the unauthorized deviations from applicable regulations and building

2   standards by full compliance within 90 days after discovery of the deviation, as required by Cal.

3   Govt. Code §4452 and Cal. Civ. Code §§ 54, *et seq.*

4        82.    Defendants have violated, and continue to violate, Plaintiffs' rights under Civil Code

5   §§ 54, *et seq.* and therefore, Plaintiffs are also entitled to injunctive relief and reasonable attorneys'

6   fees and costs.

7   **SIXTH CLAIM**<br>**(Violations of Cal. Govt. Code §§ 11135, *et seq.*)**

8

9        83.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint, as

10  though fully set forth herein.

11       84.    The CITY is funded directly by the State of California and receives financial

12  assistance from the State of California sufficient to invoke the coverage of Government Code

13  sections 11135, *et seq.* The City was the recipient of such funding and financial assistance at all

14  time relevant to the claims asserted in this Complaint.

15       85.    Defendants have refused and failed to provide Plaintiffs with full and equal access to

16  their facilities, programs, services and activities as required by California Government Code

17  sections 11135, *et seq.*

18  **ALLEGATIONS SUPPORTING DECLARATORY AND INJUNCTIVE RELIEF**

19       86.    Plaintiffs incorporate by reference as though fully set forth herein the preceding

20  paragraphs of this Complaint.

21       87.    A present and actual controversy exists regarding the respective rights and

22  obligations of Plaintiffs and Defendants. Plaintiffs desire a judicial determination of their rights

23  and Defendants' obligations in a declaration as to whether, and to what extent, the Defendants'

24  conduct violates applicable law.

25       88.    Such a declaration is necessary and appropriate at this time in order that Plaintiffs

26  may ascertain their rights. Such a declaration is also necessary and appropriate to prevent further

27  harm or infringement of Plaintiffs' rights.

28  19

SCHNEIDER
& WALLACE

89.    Plaintiffs have no adequate remedy at law for the harm to them arising from the conduct alleged herein. Unless and until Defendants are preliminarily and permanently enjoined from engaging in such conduct, Plaintiffs will continue to suffer irreparable harm as a result of their exclusion from basic facilities, programs, services, and activities.

90.    Plaintiffs are entitled to declaratory and injunctive relief pursuant to each of the laws under which this action is brought.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.    Issue a declaratory judgment that Defendants' failure to provide full, equal, and safe access for Plaintiffs to the facilities, programs, services, and activities that Defendants offer to non-disabled persons violates Plaintiffs' rights under Title II of the ADA, § 42 U.S.C. 12131 *et seq.*, and the regulations promulgated thereunder, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder, California Civil Code §§ 51 *et seq.*; California Civil Code §§ 54, *et seq.*; and California Government Code §§11135, *et seq.*

2.    Issue a declaratory decree that the ongoing acts and omissions of the Mayor and the Members of the Board of Supervisors are taken under color of law, policy, or custom, and deprive Plaintiffs of rights secured under Title II of the ADA and Section 504 of the Rehabilitation Act;

3.    Issue preliminary and permanent injunctions requiring each of the Defendants to undertake remedial measures to mitigate the effects of Defendants' past and ongoing violations of Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under each of these statutes. At a minimum, the Defendants should be enjoined to take the following actions:

      a.    Develop and implement a plan to remove all disability access barriers that deny or limit access to persons with disabilities in the CITY's newly constructed facilities or in areas of facilities that are subject to the alterations provisions of federal or state disability nondiscrimination laws;

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

b.  Prepare, adopt and implement an ADA Self-Evaluation Plan and ADA Transition Plan that comply with the requirements of Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under each of these statutes;

c.  Develop and implement plans to ensure that all existing CITY facilities comply with the more stringent of either the Americans with Disabilities Act Accessibility Guidelines or Title 24 of the California Code of Regulations and Cal. Civ. Code §§54, *et seq.,* including, without limitation, removal of all architectural barriers that pose safety hazards individuals with disabilities;

d.  Develop and implement plans to ensure that all future new construction and alterations to CITY facilities comply with Title 24 of the California Code of Regulations standards and Cal. Govt. Code §§4450, *et seq.*;

4.  Award to Plaintiffs all costs of this proceeding, including reasonable attorneys' fees and costs, as provided by law; and

5.  Issue any other preliminary and permanent injunctions the Court deems sufficient to rectify the acts and omissions alleged herein.

DATED: July 17, 2007                          SCHNEIDER & WALLACE


                                      _____/s/_____
                                  By:   GUY B. WALLACE
                                        Attorney for Plaintiffs


DATED: July 17, 2007                          THE STURDEVANT LAW FIRM


                                  By:   MARK T. JOHNSON
                                        Attorneys for Plaintiffs

21

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION