Guy B. Wallce, State Bar No. 176151
Nancy Park, Sate Bar No. 236750
Christian Schreiber, State Bar No. 245597
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA  94104
Telephone:    (415) 421-7100
Facsimile:    (415) 421-7105

James C. Sturdevant, State Bar No. 94551
Mark T. Johnson, State Bar No. 76904
Alexius Markwalder, State Bar No. 227004
THE STURDEVANT LAW FIRM
A Professional Corporation
475 Sansome Street, Suite 1750
San Francisco, California  94111
Telephone:    (415) 477-2410
Facsimile:    (415) 477-2420

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVANA KIROLA, MICHAEL KWOK, AND ELIZABETH ELFTMAN, on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO ("the CITY"); GAVIN NEWSOM, in his official capacity as Mayor; AARON PESKIN, in his official capacity as President of the Board of Supervisors; JAKE MCGOLDRICK, MICHELA ALIOTO-PIER, ED JEW, CHRIS DALY, SEAN ELSBERND, BEVAN DUFTY, TOM AMMIANO, SOPHIE MAXWELL, ROSS MIRKARIMI, AND GERARDO SANDOVAL, in their official capacities as members of the Board of Supervisors;<br><br>Defendants. | Case No.:  **C07-3685 SBA**<br><br>**CLASS ACTION**<br><br>**DECLARATION OF MARK T. JOHNSON IN SUPPORT OF PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF PURSUANT TO CIVIL LOCAL RULE 7-11 ESTABLISHING THE NON-APPLICABILITY OF GENERAL ORDER 56** |

I, Mark T. Johnson, declare as follows:

1. I am an attorney at law duly licensed to practice law in the courts of the State of California, as well as the Northern District of California. I am a member of the Sturdevant Law Firm, counsel for Plaintiff in this action. This declaration is submitted in support of Plaintiffs' Motion for Administrative Relief Establishing the Non-Applicability of General Order 56. I have personal knowledge of the facts set forth in this declaration and, if called upon as a witness, I could and would testify competently as to these facts.

2. The Complaint in the action was filed on July 17, 2007, a true and correct copy of which is attached hereto as Exhibit A. Plaintiffs' Complaint alleges no claim under Title III of the Americans with Disabilities Act.

3. This action was initially assigned to the Honorable Thelton E. Henderson. Concurrently with the assignment of this action to Judge Henderson, the Court provided the parties with Judge Henderson's Standing Order, the Standing Orders for All Judge of the Northern District, and a document entitled "Scheduling Order for Cases Asserting Denial of Right of Access Under Americans with Disabilities Act title III (42 U.S.C. §§ 12181-89)" true and correct copies of which are attached hereto as Exhibit B.

4. On August 29, 2007, I sent an e-mail to Jim Emery, attorney for Defendants in the above-captioned matter, and proposed filing a stipulation with the Court regarding the inapplicability of General Order 56 to this case so that an initial case management conference could be scheduled. A true and correct copy of an e-mail string containing my August 29, 2007 e-mail is attached hereto at Exhibit C.

5. On September 5, 2007, Mr. Emery responded by e-mail, asking for an explanation of the benefits of opting out of General Order 56. I responded by e-mail of the same date stating that, by its own terms, General Order 56 does not apply to Title II ADA cases. A true and correct copy of an e-mail string containing our September 5, 2007 e-mail exchange is attached hereto at Exhibit C.

6. On September 19, 2007, I e-mailed Mr. Emery again proposing that the parties file a stipulation regarding the inapplicability of General Order 56, reiterating that, because this case is a Title II case, not a Title III case, the General Order does not apply, and attached a draft stipulation for his

1

---

DECLARATION OF MARK T. JOHNSON IN SUPPORT OF MOTION FOR ADMINISTRATIVE RELIEF
C07-3685 SBA

1   review. A true and correct copy of my September 19, 2007 e-mail is attached hereto at Exhibit C.

2       7. On September 21, 2007, Mr. Emery telephoned me and indicated that, while he had no

3   objection to requesting a setting of an initial case management conference, he saw no reason why the

4   procedures set forth in General Order 56 should not apply.

5       8. On October 17, 2007, I received a letter from Mr. Emery regarding compliance with the July

6   17, 2007 scheduling order, indicating that Defendants consider that General Order 56 applies to this

7   case. A true and correct copy of Mr. Emery's letter is attached hereto as Exhibit D.

8       9. Plaintiffs believe it is in the best interest of all parties and of judicial economy for this Court

9   to a) make a determination that this case is not subject to General Order 56 and b) to set a Case

10  Management Conference at the Court's earliest possible convenience pursuant to Federal Rule of Civil

11  Procedure 16(b) and Local Rule 16-2.

12      I declare under penalty of perjury under the laws of the United States that the foregoing is true

13  and correct.

14

15  Dated:  October 17, 2007                    _____/s/_____

16                                              Mark T. Johnson

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT A

1  Guy B. Wallace, State Bar No. 176151
   Nancy Park, State Bar No. 236750
2  Christian Schreiber, State Bar No. 245597
3  SCHNEIDER & WALLACE
   180 Montgomery Street, Suite 2000
4  San Francisco, CA 94104
   Telephone: (415) 421-7100
5  Facsimile: (415) 421-7105

6
   Mark T. Johnson, State Bar No. 76904
7  Alexius Markwalder, State Bar No. 227004
8  THE STURDEVANT LAW FIRM
   475 Sansome Street, Suite 1750
9  San Francisco, CA 94111
   Telephone: (415) 477-2410
10 Facsimile: (415) 477-2420

11 Attorneys for Plaintiffs

12                 UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA
               SAN FRANCISCO/OAKLAND DIVISION
14

15 IVANA KIROLA, MICHAEL KWOK, and      No. C 07 3685
16 ELIZABETH ELFTMAN, on behalf of
   themselves and all others similarly situated;      TEH
17

18            Plaintiffs,
                                          COMPLAINT FOR DECLARATORY
19    vs.                                 AND INJUNCTIVE RELIEF FOR
                                          DISCRIMINATION AGAINST PERSONS
20 THE CITY AND COUNTY OF SAN            WITH DISABILITIES IN VIOLATION OF:
   FRANCISCO ("the CITY"); GAVIN         THE AMERICANS WITH
21 NEWSOM, in his official capacity as Mayor;  DISABILITIES ACT OF 1990; SECTION 504 OF
22 AARON PESKIN, in his official capacity as   THE REHABILITATION ACT OF 1973;
   President of the Board of Supervisors; JAKE  CAL. CIV. CODE §§ 51, ET SEQ., CAL. CIV.
23 MCGOLDRICK, MICHELA ALIOTO-PIER,     CODE §§ 54, ET SEQ., AND CAL. GOVT. CODE
   ED JEW, CHRIS DALY, SEAN ELSBERND,   §§ 11135, ET SEQ.
24 BEVAN DUFTY, TOM AMMIANO, SOPHIE
   MAXWELL, ROSS MIRKARIMI, AND
25 GERARDO SANDOVAL, in their official    CLASS ACTION
   capacities as members of the Board of
26 Supervisors;

27            Defendants.

28

SCHNEIDER    KIROLA ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.
& WALLACE    COMPLAINT FOR DISCRIMINATION

**INTRODUCTON**

1.      This action seeks to redress the CITY AND COUNTY OF SAN FRANCISCO's (hereafter "the CITY") failure to provide to persons with mobility disabilities the minimum legally required access to facilities, programs, services, and activities owned, operated, controlled, provided and/or maintained by the CITY. Plaintiffs IVANA KIROLA, MICHAEL KWOK, and ELIZABETH ELFTMAN have suffered ongoing deprivations of their civil rights as well as loss of equal access because of the CITY's repeated violations of federal and state disability nondiscrimination laws regarding access for persons with mobility disabilities. The facilities owned, operated, or controlled by the CITY are characterized by multiple, pervasive, and hazardous physical access barriers. The CITY's architectural barriers include, *inter alia*, dangerous and inaccessible sidewalks, dangerous and unsafe intersections, inaccessible passenger loading zones, inaccessible public buildings, inaccessible paths of travel within public buildings, inaccessible service counters within public buildings, inaccessible or nonexistent parking for the disabled, inadequate signage and excessive door pressures in public buildings, inaccessible or non-operational elevators within public buildings, inaccessible public parks, and inaccessible public pools. Many of these barriers constitute safety hazards to persons who have mobility disabilities.

2.      The CITY has also failed to adopt and implement effective policies to ensure that its public facilities and programs are readily accessible to and usable by persons with mobility disabilities. The CITY has performed new construction and alterations to its existing facilities without complying with federal and state disability access design standards. The CITY has known for at least thirty years that it was required by Section 504 of the Rehabilitation Act of 1973 and its accompanying regulations to address its unequal facilities in the form of a Self-Evaluation Plan and a Transition Plan, in which the CITY identified facilities, programs, services, and activities that deny equal access to persons with disabilities. The CITY has also known for over a twenty-five years that it was required by Section 504 of the Rehabilitation Act of 1973 and its accompanying regulations to have implemented structural changes to create equal access to the facilities and programs owned, operated, controlled and/or maintained by the CITY. In addition,

1

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

1   the CITY has known that it was required under Title II of the Americans with Disabilities Act of

2   1990 ("ADA") to make structural changes to create equal access to its facilities by January 26,

3   1995. The CITY has failed to meet these federal and state requirements, failed to develop and

4   implement adequate plans, and has denied equal access to persons with mobility disabilities. The

5   Mayor of the CITY and the members of the CITY's Board of Supervisors are each responsible for

6   ensuring compliance with federal and state law within and by the CITY's various facilities,

7   programs, services, and activities. Despite the obligation of the Mayor and the Board of

8   Supervisors to ensure that the CITY complies fully with federal and state disability non-

9   discrimination laws, they have failed and refused to ensure such compliance.

10         3.      Plaintiffs seek declaratory and injunctive relief against the Defendants for severely

11  limiting Plaintiffs' access to the CITY's facilities, programs, services, and activities by knowingly

12  refusing to eliminate architectural and programmatic barriers, resulting in emotional and physical

13  distress to Plaintiffs and violating Title II of the Americans With Disabilities Act, 42 U.S.C. §

14  12101 *et seq.*, and its accompanying regulations; Section 504 of the Rehabilitation Act of 1973, as

15  amended, 29 U.S.C. § 794, and its accompanying regulations; 42 U.S.C. § 1983; California Civil

16  Code §§ 51 *et seq.*; California Civil Code §§ 54, *et seq.*; and California Government Code

17  §§11135, *et seq.*

18         4.      Plaintiffs have no adequate remedy at law and, unless the Defendants are

19  preliminarily and permanently enjoined, Plaintiffs will continue to suffer irreparable harm as a

20  result of their exclusion from basic facilities, programs, services, and activities.

21                                         **JURISDICTION**

22         5.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§

23  1331, 1343(a)(3)-(4). The Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, Section

24  504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794, and 42 U.S.C. § 1983 present

25  federal questions and confer jurisdiction on this Court over Plaintiffs' claims regardless of the

26  amount in controversy. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction

27  over Plaintiff's pendant claims under California law.

28                                              2

SCHNEIDER
& WALLACE

**VENUE**

6.    Venue is proper in the Northern District of California, the judicial district in which these claims have arisen, pursuant to 28 U.S.C. §1391(b).

**INTRADISTRICT ASSIGNMENT**

7.    Assignment of this action to the United States District Court for the Northern District of California, San Francisco/Oakland, is proper pursuant to Civil L.R. 3-2 because these civil claims arose in the County of San Francisco, within this District.

**THE PARTIES**

8.    Plaintiff IVANA KIROLA is a person with a mobility disability within the meaning of all applicable statutes, and she is a qualified person with disabilities within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973. IVANA KIROLA has cerebral palsy. She is unable to walk, has limited use of her hands, and is legally blind. She uses a power wheelchair for mobility. Plaintiff IVANA KIROLA is a resident of San Francisco County and is a citizen of the State of California and the United States.

9.    Plaintiff MICHAEL KWOK is a person with a mobility disability within the meaning of all applicable statutes, and is a qualified person with a disability within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973. MICHAEL KWOK is a quadriplegic with impaired motor and sensory functions. He has been disabled since he was in a car accident in 1987. He uses both a manual wheelchair and a power wheelchair for mobility. In most instances, Plaintiff MICHAEL KWOK uses a manual wheelchair for mobility in order to maintain his physical health and for greater maneuverability. Plaintiff MICHAEL KWOK is a resident of San Francisco County and is a citizen of the State of California and the United States.

10.    Plaintiff ELIZABETH ELFTMAN is a person with a mobility disability within the meaning of all applicable statutes, and she is a qualified person with disabilities within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973. She has been using a cane for mobility for more than two years. Ms. Elftman can only walk for six blocks at a time, and in doing so, she must rest frequently for several minutes. Plaintiff ELIZABETH

1  ELFTMAN is a resident of San Francisco County and is a citizen of the State of California and the

2  United States.

3       11.    The CITY is a local government entity, with responsibility for providing Plaintiffs

4  with access to its public facilities, programs, services, and activities.

5       12.    GAVIN NEWSOM is the Mayor of the CITY (hereinafter the "Mayor"); AARON

6  PESKIN is the President and a member of the Board of Supervisors; JAKE MCGOLDRICK,

7  MICHELA ALIOTO-PIER, ROSS MIRKARIMI, ED JEW, CHRIS DALY, SEAN ELSBERND,

8  BEVAN DUFTY, TOM AMMIANO, SOPHIE MAXWELL, and GERARDO SANDOVAL are

9  members of the Board of Supervisors (hereinafter the "Board").  The Mayor and the Board are

10 each legally responsible for ensuring compliance with federal and state law by the CITY.

11      13.    The CITY, the Mayor and the Board of Supervisors will be collectively referred to as

12 "Defendants."

13               **FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

14      14.    The CITY receives federal and state funds for its programs and facilities.

15      15.    The CITY has numerous illegal physical and programmatic barriers to residents,

16 visitors, and other individuals who use wheelchairs and/or who have mobility disabilities,

17 including  Plaintiffs IVANA KIROLA, MICHAEL KWOK, and ELIZABETH ELFTMAN, which

18 deny such persons full and equal access to the CITY's public premises, facilities, programs,

19 services, and activities.  Examples of such barriers include the following:

20               a.  CITY sidewalks that do not have curb ramps and are, therefore, inaccessible to

21                   persons with mobility impairments;

22               b.  CITY sidewalks with curb ramps that are too steep or that have hazardous cross-

23                   slopes, or are located in such a way as to force persons with mobility

24                   impairments onto the streets, making them inaccessible to persons with mobility

25                   disabilities and unsafe for them to use;

26

27

28
                                              4

c.  Designated passenger loading zones in the middle of CITY blocks that lack curb

ramps, making them inaccessible for persons with mobility disabilities;

d.  Public buildings and spaces (including, but not limited to, key and unique

administrative buildings, museums, libraries, parks, and recreation centers)

housing facilities, programs, services, and activities offered by the CITY that

contain ramps that are too steep, constituting safety hazards to persons with

mobility disabilities;

e.  Public facilities with hazardous or inaccessible paths of travel, making them

unsafe for persons with mobility disabilities;

f.  Public facilities with restrooms that are inaccessible to persons with mobility

disabilities;

g.  Public facilities with inaccessible or non-operational elevators;

h.  Public facilities that are inaccessible to persons with mobility disabilities because

the entryways are too steep or consist only of stairs;

i.  Public facilities with entire floors or sections that are inaccessible to persons with

mobility disabilities because they are accessible only by stairs;

j.  Public facilities with drinking fountains and service counters that are inaccessible

to persons with mobility disabilities;

k.  Public facilities with inadequate signage, making them inaccessible to persons

with mobility disabilities;

l.  Public facilities with door hardware or excessive door pressures that prevent

access through the doors to persons with mobility disabilities;

m. Public facilities that lack or have insufficient parking accessible to persons with

mobility disabilities;

5

n.  Parks, including Golden Gate Park, that are inaccessible, or only partially

accessible, to persons with mobility disabilities;

16.   The CITY continues to perform new construction of its public buildings and

facilities that does not comply with state and federal disability access design standards.

17.   The CITY has received numerous complaints regarding these and similar access

barriers, yet the CITY has failed to come into full compliance with applicable laws

notwithstanding the severe negative impact that this conduct has caused for Plaintiffs IVANA

KIROLA, MICHAEL KWOK, and ELIZABETH ELFTMAN as well as other persons with

mobility disabilities.

18.   Because of the Defendants' misconduct and failure to remove architectural and

programmatic access barriers, Plaintiffs have been denied full and equal access to the CITY's

facilities, programs, services, and activities.  Plaintiffs have suffered and risk suffering severe

physical injury and damage to their mental health because Defendants have failed and refused to

ensure that the CITY complies with federal and state disability anti-discrimination laws, including

the CITY's failure to remove illegal and hazardous architectural and programmatic barriers.

19.   Defendants have known for years that they are operating illegal facilities and

programs, which, by reason of multiple and severe architectural barriers, discriminate against

persons with mobility disabilities.  Despite this knowledge, Defendants have intentionally refused

to comply with federal and state disability non-discrimination laws.

20.   The Mayor and the Members of the Board of Supervisors are legally responsible for

failing to ensure the CITY's full compliance with federal and state law, as alleged in this

Complaint.

21.   Plaintiff IVANA KIROLA travels to many parts of the CITY on a regular basis,

including the Western Addition, the Mission, and the Financial District, and has been denied

access at many points throughout the CITY.

22.   Plaintiff IVANA KIROLA has cerebral palsy and must use a scooter for mobility.

Plaintiff IVANA KIROLA experiences mobility difficulties due to cracked and inaccessible

6

SCHNEIDER
& WALLACE

1   sidewalks, inaccessible paths of travel, inadequate and dangerous curb ramps, a lack of curb cuts,

2   and a lack of adequate or accessible ramps and accessible paths of travel at CITY parks, pools, and

3   public buildings.  Plaintiff IVANA KIROLA has been repeatedly and routinely denied full and

4   equal access to the CITY's facilities, programs, services, and activities because of the Defendants'

5   refusal and failure to provide the legally required access to the CITY's streets and buildings.

6        23.     Many of the CITY'S curb ramps are too steep and make travel for Plaintiff IVANA

7   KIROLA difficult and dangerous.  For example, the curb ramps at the intersections of Octavia

8   Street and McCallister Street and at Van Ness Avenue and California Street are too steep, and the

9   curb ramp at the intersection of Olive Street and Van Ness Avenue is so steep that Plaintiff

10  IVANA KIROLA fell out of her wheelchair when trying to cross the street.

11       24.     Many intersections in the CITY still lack curb ramps.  For example, the intersection

12  at Grove Street and Fillmore Street, which is in Plaintiff IVANA KIROLA'S residential

13  neighborhood, has curbs that do not provide curb ramps.  Because this intersection does not have

14  curb ramps, Plaintiff IVANA KIROLA is often forced to take a longer alternate route.  Plaintiff

15  IVANA KIROLA also has difficulty traveling in this area of her neighborhood because the cross

16  slope on the south side of the sidewalk on Grove Street between Fillmore Street and Webster

17  Street is too steep.

18       25.     Lack of curb ramps also impedes Plaintiff IVANA KIROLA's travel and use of

19  public areas of the CITY outside of her neighborhood.  For example, the intersection of 18th Street

20  and Shotwell Street has a curb without a curb ramp.  The intersection of Guerrero Street and 16th

21  Street has a curb with only one curb ramp.  Curbs on 26th Street between Mission and Harrison are

22  missing curb ramps.  Plaintiff IVANA KIROLA travels this area at least twice a month when

23  going to the CITY'S Garfield Swimming Pool.

24       26.     Plaintiff IVANA KIROLA uses the CITY'S pools for exercise, but does not have

25  full and equally effective access to them.  Hamilton, Garfield, and Sava pools do not have

26  accessible showers, and the "accessible" bathroom at Sava pool does not have a grab bar.  North

27

28

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

1   Beach pool is also inaccessible because its entry door is too heavy and has excessive door pressure,

2   and is not equipped with an automated push button to open it.

3       27.    Plaintiff IVANA KIROLA encounters access barriers in her neighborhood when she

4   goes to grocery stores located at the intersections of Geary Boulevard and Masonic Avenue and at

5   Geary Boulevard and Fillmore Street.  The curb ramps on Masonic Avenue are too steep, and the

6   curb ramps on Geary Boulevard do not have detectable domes, which make them difficult for

7   Plaintiff IVANA KIROLA to detect and use.

8       28.    Plaintiff IVANA KIROLA also encounters access barriers when she goes to the

9   Financial District.  Many of the curb ramps on Montgomery Street are too steep, and several of

10  them have sections of pavement missing at the bottom of the curb ramp, which results in a safety

11  hazard.  Many of the curb ramps in the Financial District have lips that are in excess of three

12  inches high and which are not beveled.

13      29.    Plaintiff IVANA KIROLA encounters access barriers when traveling to her doctors'

14  offices.  When visiting her doctor, who is located at Divisadero Street and Geary Boulevard,

15  Plaintiff IVANA KIROLA has to navigate curb ramps that are too steep.  When visiting her doctor

16  at the Parnassus Medical Center, she also has to use curb ramps that are too steep.

17      30.    Plaintiff IVANA KIROLA has difficulty accessing the City Health Department

18  building located at 101 Grove Street because the entry ramp is too steep.  Furthermore, the

19  entrance for persons with mobility disabilities is on the side of the building, and is separate and

20  distinct from the main entrance used by nondisabled persons.  The intersection of Polk Street and

21  Grove Street, where the City Health Department is located, is also not fully accessible because the

22  curb ramps do not have detectable domes.  Plaintiff IVANA KIROLA has gone off the curb in her

23  wheelchair at this intersection because she was not able to detect the curb.

24      31.    Many of the bus islands in the CITY, including those located at Church Street and

25  Market Street and at Market Street and 8th Street, are not accessible.  A bus driver once let Plaintiff

26  IVANA KIROLA off on an inaccessible island where she was stranded until she had someone help

27

28
                                      8

SCHNEIDER
& WALLACE
    KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.
    COMPLAINT FOR DISCRIMINATION

1    her off the island. There were no curb ramps for a person with a mobility disability to use at the

2    bus island.

3        32.     Many of the CITY'S parks are inaccessible to Plaintiff IVANA KIROLA, including

4    Alamo Square Park, which has an "accessible" entrance that is too steep, and Park Merced, which

5    has sidewalks that are too narrow and are uneven. Golden Gate Park is also inaccessible to

6    Plaintiff IVANA KIROLA because many of its sidewalks are too narrow and the cross-slopes are

7    too steep. Plaintiff IVANA KIROLA visits Golden Gate Park several times a year and has to deal

8    with these access barriers each time she visits. Plaintiff IVANA KIROLA faces similar barriers

9    when she visits the Palace of Fine Arts where the sidewalks lack curb ramps.

10       33.     Plaintiff MICHAEL KWOK travels to many parts of the CITY for business, social

11    or recreational purposes, and has been denied access at many points throughout the CITY.

12       34.     Plaintiff MICHAEL KWOK is a quadriplegic. He uses a wheelchair for mobility.

13    Plaintiff MICHAEL KWOK experiences mobility difficulties due to cracked and inaccessible

14    sidewalks, inaccessible paths of travel, inadequate and dangerous curb ramps, and a lack of curb

15    ramps. Plaintiff MICHAEL KWOK has been repeatedly and routinely denied full and equal

16    access to the CITY's facilities, programs, services, and activities because of the Defendants'

17    refusal and failure to provide the legally required access to the CITY's streets and buildings.

18       35.     Plaintiff MICHAEL KWOK lives at 6th Street and Howard Street. He has lived at

19    this location for three years, but has lived in the SOMA neighborhood for almost 20 years. Many

20    of the intersections in his neighborhood do not have accessible curb ramps. He must use these

21    inaccessible sidewalks and curb ramps on a daily basis to patronize neighborhood cafes, stores and

22    movie theatres, and therefore encounters access barriers every day. For example, at Howard Street

23    and 8th Street, there is a curb ramp that has a pothole at the bottom of the ramp. This barrier is

24    dangerous for Plaintiff MICHAEL KWOK to navigate. The curb ramps along Howard Street

25    beyond 5th and 9th Streets are also inaccessible. In his neighborhood there are also several sections

26    of sidewalk in which the tree roots have made the sidewalk uneven and difficult to use for

27    someone in a wheelchair. Traveling from Folsom Street to Harrison Street, Plaintiff MICHAEL

28

9

SCHNEIDER
& WALLACE

1    KWOK also must use curb ramps that are inaccessible and unsafe, and that are characterized by

2    potholes and other bumps in their surface.

3        36.    Plaintiff MICHAEL KWOK travels to the Civic Center to go to City Hall, the Main

4    Library, and to the Farmer's Market on a bi-weekly basis.  To get to Civic Center, he travels across

5    sections that do not have adequate curb ramps, which include, for example, Mission Street between

6    7th Street and 9th Street and the intersection of Minna Street and 7th Street.  Plaintiff MICHAEL

7    KWOK also travels along Market Street when he goes to the Civic Center and to City Hall.  When

8    he does so, he encounters curb ramps that have abrupt lips that are often more than two inches high

9    at the bottom of the ramp.  Going over these lips in his power wheelchair causes difficulty for

10   Plaintiff MICHAEL KWOK because the jarring changes the direction that his power chair is

11   going, and also unbalances his body in his wheelchair and causes him physical discomfort.

12   Plaintiff MICHAEL KWOK also encounters curb ramps with abrupt lips at various other locations

13   throughout the City.

14       37.    Plaintiff MICHAEL KWOK also goes to Union Square weekly.  When he does so,

15   he crosses Market Street at 5th Street, which is hazardous because the locations of the curb ramps

16   force him into oncoming traffic.  Potholes created by streetcars create additional hazards at this

17   intersection, as well as at the intersection of Market Street and 8th Street.

18       38.    Plaintiff MICHAEL KWOK goes to Cathedral Hill and Japan Town on a weekly

19   basis.  When Plaintiff MICHAEL KWOK travels up Van Ness Avenue from Market Street to go to

20   these areas (or to use the AMC 1000 movie theatre on Van Ness), he has difficulty crossing the

21   intersections because the curb ramps on Van Ness are very steep and many of them are hazardous

22   to climb in a wheelchair.

23       39.    Last summer, Plaintiff MICHAEL KWOK fell out of his chair when crossing 5th

24   Street and Tehama Street because the pavement at this section was uneven.  Such falls are not

25   uncommon for Plaintiff MICHAEL KWOK, as many of the City's streets and sidewalks are

26   hazardous for him to travel.

27

28

KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

40.    Many of the CITY'S parks are inaccessible to Plaintiff MICHAEL KWOK, including Golden Gate Park and Alamo Square Park. Golden Gate Park and Alamo Square Park contain numerous curb ramps that are not accessible. In addition, the park located at Turk Street and Gough Street is not accessible because of inaccessible curb ramps on the sidewalks nearby, and because the main entrance to the park has steps. Plaintiff MICHAEL KWOK used to try to use many of the CITY's parks, but no longer does so because of the access barriers that he encounters in the parks.

41.    Plaintiff MICHAEL KWOK often goes to the City's Main Library in the Civic Center. When he goes, he cannot enter through the main entrance on Larkin Street because the main entrance is not accessible to him. He enters from Grove Street, the side entrance. Once he is in the library building, he must descend a steep ramp. Controlling his chair while going down the ramp is difficult, and going up the ramp, which he has to do to exit the library, is exhausting.

42.    Plaintiff MICHAEL KWOK also encounters inaccessible curb ramps and potholes when he travels along Larkin Street between Eddy Street and Turk Street. The curb ramps in this area are also hazardous, and Plaintiff MICHAEL KWOK has almost fallen out of his wheelchair on several occasions when trying to navigate them.

43.    Plaintiff ELIZABETH ELFTMAN travels to many parts of the CITY, and has been denied access at many points throughout the CITY. Plaintiff ELIZABETH ELFTMAN has been a resident of San Francisco for over forty years.

44.    Plaintiff ELIZABETH ELFTMAN has a physical disability and is unable to walk without the assistance of a cane and cannot walk more than six blocks at a time without stopping to rest for several minutes. Plaintiff ELIZABETH ELFTMAN experiences mobility difficulties due to cracked and inaccessible sidewalks, lack of adequate handrails, and lack of accessible paths of travel at CITY buildings and parks. Plaintiff ELIZABETH ELFTMAN has been repeatedly and routinely denied full and equal access to the CITY's facilities, programs, services, and activities because of the Defendants' refusal and failure to provide the legally required access to the CITY's streets and buildings.

11

1  45.    Tree roots have raised and damaged the sidewalks in Plaintiff ELIZABETH

2  ELFTMAN'S neighborhood near the intersection of Laguna Street and Geary Boulevard.  Plaintiff

3  ELIZABETH ELFTMAN, who uses a cane and has difficulty navigating the abrupt transitions

4  created by the damaged sidewalk, has tripped and fallen near this intersection because this portion

5  of the sidewalk had been upturned by tree roots.  Plaintiff ELIZABETH ELFTMAN goes shopping

6  at stores on Post Street, Laguna Street and Webster Street, and encounters tripping hazards on the

7  sidewalks while traveling in her neighborhood for these purposes.

8  46.    Plaintiff ELIZABETH ELFTMAN has medical appointments on a monthly basis at

9  the University of California Medical Center at San Francisco and Kaiser Medical Center for

10  doctors' appointments.  When she goes to these appointments she uses the bus stop at Masonic

11  Street and Geary Boulevard.  The pavement at this stop is damaged and uneven, which makes this

12  stop difficult and unsafe for her to use and inaccessible to someone using a wheelchair.  Plaintiff

13  ELIABETH ELFTMAN has also encountered access barriers on Sutter Street, where there is a

14  section of sidewalk that is partially missing, broken and uneven.

15  47.    Plaintiff ELIZABETH ELFTMAN lives a few blocks from Jefferson Square Park,

16  which is inaccessible to her because it does not have handrails with extensions.  Plaintiff

17  ELIZABETH ELFTMAN has difficulty climbing and descending stairs when the handrails do not

18  have extensions.  The extensions give her the stability she needs at the bottom and top of a

19  staircase.

20  48.    Plaintiff ELIZABETH ELFTMAN has encountered physical access barriers in

21  various CITY facilities.  Davies Symphony Hall is inaccessible because of a lack of accessible

22  paths of travel and a lack of handrails with extensions.  The War Memorial Opera House is

23  inaccessible because it does not have handrails with extensions, does not have adequate accessible

24  parking, contains doors that are too heavy to be accessible, and lacks accessible seating.  The

25  Opera House's lack of doors that have the required clearance makes it inaccessible to wheelchair

26  users.

27

28

1      49.    Plaintiff ELIZABETH ELFTMAN'S primary source of exercise is swimming, and

2  she uses the CITY's public pools.  None of the pools she has used (Garfield, Hamilton, and North

3  Beach Pool) have handrails with extensions, which makes entering and exiting the pools both

4  difficult and unsafe for her.  In addition, the last step on the staircase in the Hamilton pool is

5  approximately one foot above the floor of the pool, which makes the last step too steep and unsafe

6  for Plaintiff ELIZABETH ELFTMAN to use.  In an attempt to provide for a more gradual descent,

7  the CITY has placed a plastic block at the foot of the staircase, but the plastic block is an

8  inadequate and unsafe substitute for a real step.

9                        CLASS ALLEGATIONS

10      50.    The named Plaintiffs bring this action on behalf of themselves and all persons

11  similarly situated.  The class that Plaintiffs seek to represent is comprised of all residents of San

12  Francisco who have mobility disabilities and who seek to have access to and use its facilities,

13  programs, services, and activities.

14      51.    The members of the proposed class are so numerous that joinder of all such persons

15  is impracticable and the disposition of their claims in a class action is a benefit both to the parties

16  and to this Court.

17      52.    There is a well-defined community of interest among the members of the proposed

18  class in the questions of law and fact to be decided in this case.  All members of the class  have

19  been and continue to be denied their civil rights to full and equal access to, and use and enjoyment

20  of, the facilities, programs, services and activities operated by the Defendants because of the

21  violations of disability access laws alleged herein.

22      53.    There are numerous questions of law and fact common to the class, including, but

23  not limited to, the following:

24          a.  Whether the CITY adopted a "transition plan" as required by 28 C.F.R. §35.150(d);

25          b.  Whether any transition plan adopted by the CITY was adequate;

26          c.  The extent to which any transition plan adopted by the CITY remains

27             unimplemented;

28

13

d.  Whether the CITY's sidewalks, crosswalks, parks, libraries, pools, museums and public buildings owned and operated by the CITY contain physical barriers to access by persons with mobility disabilities which violate the disability access laws alleged herein and applicable regulations;

e.  Whether physical barriers to access deprive class members, including the named Plaintiffs, of full and equal access to, and the use and enjoyment of, programs, services and activities offered by the CITY.

f.  Whether facilities or parts of facilities owned or operated by the CITY are "new construction" and/or "alterations" within the meaning of 28 C.F.R. § 35.151;

g.  Whether facilities or parts of facilities owned or operated by the CITY that constitute "new construction" or "alterations" are in compliance with 28 C.F.R. § 35.151.

54.  The issues of law and fact common to the class predominate over individual issues.

55.  The claims of the named Plaintiffs are typical of those of the class in that they arise from the same course of conduct engaged in by the CITY. The relief sought herein will benefit all class members alike.

56.  The CITY has acted and refused to act on grounds generally applicable to the class, making the declaratory and injunctive relief sought on behalf of the class as a whole appropriate.

57.  The named Plaintiffs will fairly and adequately represent the interests of the class. They have no interests adverse to the interests of other members of the class and have retained counsel who are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases.

58.  A class action is superior to other methods for the fair and efficient adjudication of this controversy, since joinder of all members of the class is impracticable.

59.  References hereafter to Plaintiffs include the named Plaintiffs and each member of the class.

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

**FIRST CLAIM**
**Violations of the Americans with Disabilities Act of 1990**
**(Against all Defendants)**

60.    Plaintiffs incorporate by reference as though fully set forth herein the preceding paragraphs of this Complaint.

61.    The acts alleged herein constitute violations of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12131, *et seq.*, and the regulations promulgated thereunder. Title II of the ADA provides, *inter alia*, that (a) people with disabilities shall not be excluded from participation in, nor be denied the benefits of any services, programs, or activities of a public entity, or be subjected to discrimination by any such entity; (b) a public entity may not provide a qualified person with a disability any aid, benefit, or service that is inferior to that received by non-disabled persons; (c) public entities and recipients of federal monies that employ fifteen or more persons shall adopt and complete implementation of an effective transition plan by no later than January 26, 1995.

62.    The CITY is a public and local government entity within the meaning of Title II of the ADA and employs more than fifteen employees at all times relevant to this action.

63.    Defendants' discriminatory conduct alleged herein constitutes, *inter alia*, (a) failure to provide safe and equal access to the CITY's programs, facilities, services, and activities; (b) denial of access to the CITY's facilities, programs, services, and activities; (c) failure to formulate and implement an adequate self-evaluation and transition plan; (d) failure to take prompt and equitable steps to remedy its discriminatory conduct; and (e) failure to maintain in operable condition those features of facilities and equipment that Title II of the ADA requires to be readily accessible to and usable by persons with disabilities.

64.    The premises administered by Defendants include buildings, structures, and related facilities within the meaning of the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and the Uniform Federal Access Standards ("UFAS"). Plaintiffs are informed and believe, and on that basis allege, that since January 26, 1992, Defendants have constructed, altered, or repaired parts of these premises within the meaning of the ADAAG and the UFAS, and that

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

1    Defendants have failed to make their facilities readily accessible to and usable by persons with

2    disabilities as required under federal accessibility standards.

3         65.    Pursuant to 42 U.S.C. §12133 and the remedies, procedures, and rights set forth in

4    §794 of Title 29 incorporated therein, Plaintiffs pray for judgment as set forth below.

5    **SECOND CLAIM**
     **Violations of Section 504 of the Rehabilitation Act of 1973**
6    **(Against All Defendants)**

7         66.    Plaintiffs incorporate by reference as though fully set forth herein the preceding

8    paragraphs of this Complaint.

9         67.    The acts alleged herein constitute violations of Section 504 of the Rehabilitation Act

10   of 1973, 29 U.S.C. §§794, *et seq.*, and the regulations promulgated thereunder.  Section 504 of the

11   Rehabilitation Act provides, *inter alia*, that no otherwise qualified individual with a disability

12   shall, solely by reason of his or her disability, be excluded from the participation in, be denied the

13   benefits of, or be subjected to discrimination under any program or activity receiving federal

14   financial assistance.

15        68.    The CITY is a direct recipient of federal financial assistance sufficient to invoke the

16   coverage of Section 504, and has received such federal financial assistance at all times relevant to

17   the claims asserted in this Complaint.

18        69.    Defendants have violated Plaintiffs' rights under Section 504 of the Rehabilitation

19   Act of 1973 and the regulations promulgated thereunder by:  (1) denying Plaintiffs their right to

20   full, equal, and safe access to the facilities, programs, services, and activities offered by the CITY;

21   (2) failing to develop and implement an adequate self-evaluation and transition plan that sets forth

22   the steps necessary to achieve full and equally effective access for persons with mobility

23   disabilities; and (3) by otherwise discriminating against the Plaintiffs solely by reason of their

24   disabilities.

25        70.    The premises owned and operated by Defendants include buildings, structures, and

26   related facilities within the meaning of the Americans with Disabilities Act Accessibility

27   Guidelines (ADAAG) and the Uniform Federal Access Standards (UFAS).  Plaintiffs are informed

28                            16

1  and believe, and on that basis allege, that since June 3, 1977, Defendants have constructed, altered

2  or repaired parts of these premises within the meaning of the ADAAG, the UFAS, and other

3  applicable federal disability access design standards, and have failed to make those premises

4  readily accessible to and usable by persons with disabilities as required under federal accessibility

5  standards.

### THIRD CLAIM
#### 42 U.S.C. §1983
**(Against the Mayor and Members of the Board of Supervisors in their Official Capacities)**

8      71.     Plaintiffs incorporate by reference as though fully set forth herein the preceding

9  paragraphs of this Complaint.

10     72.     The acts and omissions of the Mayor and Members of the Board of Supervisors,

11  under color of law as well as official policy and custom, as hereinabove set forth, deprive Plaintiffs

12  of their rights under Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA in

13  violation of 42 U.S.C. §1983, for which Plaintiffs seek and are entitled to injunctive and

14  declaratory relief.

15     73.     The acts of Defendants as herein alleged were willful, intentional, and oppressive.

### FOURTH CLAIM
**(Violations of California Civil Code §§51, _et seq._)**
**(Against All Defendants)**

18     74.     Plaintiffs incorporate by reference as though fully set forth herein the preceding

19  paragraphs of this Complaint.

20     75.     Defendants own, operate and/or lease business establishments within the meaning of

21  the Unruh Civil Rights Act. CITY facilities are public accommodations whose facilities and

22  programs are open to the general public and are operated for the public benefit. The CITY

23  provides its facilities, programs and services to the public, enters into business contracts with a

24  myriad of business entities, and markets and promotes its programs, services, facilities and

25  activities to the general public.

26     76.     The actions of Defendants constitute intentional discrimination against persons with

27  disabilities and violate the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, _et seq._, in that physically

28

17

SCHNEIDER
& WALLACE

1    disabled persons have been and are denied full and equal accommodations, advantages, facilities,

2    privileges, and services provided to non-disabled persons.

3        77.    The actions of Defendants were and are in violation of the Unruh Civil Rights Act,

4    Cal. Civ. Code §§ 51, *et seq.* and therefore Plaintiffs are also entitled to injunctive relief and

5    reasonable attorneys' fees and costs.

6                    **FIFTH CLAIM**
                    **(Violations of Cal. Civ. Code §§ 54, *et seq.*)**
7

8        78.    Plaintiffs incorporate by reference as though fully set forth herein the preceding

9    paragraphs of this Complaint.

10       79.    The facilities of the CITY constitute places of public accommodation and places to

11   which the general public is invited within the meaning of California Civil Code §§ 54.1, *et seq.*

12   The CITY provides its facilities, programs and services to the public, enters into business contracts

13   with a myriad of business entities, and markets and promotes its programs, services, facilities and

14   activities to the general public.

15       80.    Defendants' discriminatory conduct also includes the CITY's failure to comply with

16   California Government Code §§ 4450, *et seq.*   California Government Code sections 4450 *et seq.*

17   requires that all buildings, structures, sidewalks, curbs and related facilities that are constructed

18   with the use of state, county, or municipal funds must provide full and equal access to persons with

19   disabilities.  The accessibility standards require that in no instances shall such standards of

20   accessibility and usability provided be a lesser standard than that provided by the Accessibility

21   Guidelines prepared by the federal Access Board as adopted by the United States Department of

22   Justice to implement the Americans with Disabilities Act of 1990.  The City and County of San

23   Francisco is an entity that is funded directly by the State of California and/or that receives financial

24   assistance from the State of California.

25       81.    Defendants have failed to ensure that all buildings, structures, sidewalks, curbs and

26   related facilities of the CITY provide full and equal access to persons with disabilities, as required

27   by California Government Code §§ 4450, *et seq.* and Cal. Civ. Code §§ 54, *et seq.* Defendants

28

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

1  have also failed to rectify the unauthorized deviations from applicable regulations and building

2  standards by full compliance within 90 days after discovery of the deviation, as required by Cal.

3  Govt. Code §4452 and Cal. Civ. Code §§ 54, *et seq.*

4      82.    Defendants have violated, and continue to violate, Plaintiffs' rights under Civil Code

5  §§ 54, *et seq.* and therefore, Plaintiffs are also entitled to injunctive relief and reasonable attorneys'

6  fees and costs.

7                          **SIXTH CLAIM**
                  **(Violations of Cal. Govt. Code §§ 11135, *et seq.*)**
8

9      83.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint, as

10  though fully set forth herein.

11     84.    The CITY is funded directly by the State of California and receives financial

12  assistance from the State of California sufficient to invoke the coverage of Government Code

13  sections 11135, *et seq.* The City was the recipient of such funding and financial assistance at all

14  time relevant to the claims asserted in this Complaint.

15     85.    Defendants have refused and failed to provide Plaintiffs with full and equal access to

16  their facilities, programs, services and activities as required by California Government Code

17  sections 11135, *et seq.*

18  **ALLEGATIONS SUPPORTING DECLARATORY AND INJUNCIVE RELIEF**

19     86.    Plaintiffs incorporate by reference as though fully set forth herein the preceding

20  paragraphs of this Complaint.

21     87.    A present and actual controversy exists regarding the respective rights and

22  obligations of Plaintiffs and Defendants. Plaintiffs desire a judicial determination of their rights

23  and Defendants' obligations in a declaration as to whether, and to what extent, the Defendants'

24  conduct violates applicable law.

25     88.    Such a declaration is necessary and appropriate at this time in order that Plaintiffs

26  may ascertain their rights. Such a declaration is also necessary and appropriate to prevent further

27  harm or infringement of Plaintiffs' rights.

28
                                                    19

SCHNEIDER
& WALLACE

89.     Plaintiffs have no adequate remedy at law for the harm to them arising from the conduct alleged herein.  Unless and until Defendants are preliminarily and permanently enjoined from engaging in such conduct, Plaintiffs will continue to suffer irreparable harm as a result of their exclusion from basic facilities, programs, services, and activities.

90.     Plaintiffs are entitled to declaratory and injunctive relief pursuant to each of the laws under which this action is brought.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.     Issue a declaratory judgment that Defendants' failure to provide full, equal, and safe access for Plaintiffs to the facilities, programs, services, and activities that Defendants offer to non-disabled persons violates Plaintiffs' rights under Title II of the ADA, § 42 U.S.C. 12131 *et seq.*, and the regulations promulgated thereunder, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder, California Civil Code §§ 51 *et seq.*; California Civil Code §§ 54, *et seq.*; and California Government Code §§11135, *et seq.*

2.     Issue a declaratory decree that the ongoing acts and omissions of the Mayor and the Members of the Board of Supervisors are taken under color of law, policy, or custom, and deprive Plaintiffs of rights secured under Title II of the ADA and Section 504 of the Rehabilitation Act;

3.     Issue preliminary and permanent injunctions requiring each of the Defendants to undertake remedial measures to mitigate the effects of Defendants' past and ongoing violations of Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under each of these statutes.  At a minimum, the Defendants should be enjoined to take the following actions:

      a.     Develop and implement a plan to remove all disability access barriers that deny or limit access to persons with disabilities in the CITY's newly constructed facilities or in areas of facilities that are subject to the alterations provisions of federal or state disability nondiscrimination laws;

SCHNEIDER
& WALLACE

b.  Prepare, adopt and implement an ADA Self-Evaluation Plan and ADA Transition

Plan that comply with the requirements of Title II of the ADA, Section 504 of the

Rehabilitation Act, and the regulations promulgated under each of these statutes;

c.  Develop and implement plans to ensure that all existing CITY facilities comply

with the more stringent of either the Americans with Disabilities Act Accessibility

Guidelines or Title 24 of the California Code of Regulations and Cal. Civ. Code

§§54, *et seq.*, including, without limitation, removal of all architectural barriers that

pose safety hazards individuals with disabilities;

d.  Develop and implement plans to ensure that all future new construction and

alterations to CITY facilities comply with Title 24 of the California Code of

Regulations standards and Cal. Govt. Code §§4450, *et seq.*;

4.      Award to Plaintiffs all costs of this proceeding, including reasonable attorneys' fees

and costs, as provided by law; and

5.      Issue any other preliminary and permanent injunctions the Court deems sufficient to

rectify the acts and omissions alleged herein.


DATED:  July 17, 2007                           SCHNEIDER & WALLACE


                                                          /s/
                                        By:     GUY B. WALLACE
                                                Attorney for Plaintiffs


DATED:  July 17, 2007                           THE STURDEVANT LAW FIRM


                                        By:     MARK T. JOHNSON
                                                Attorneys for Plaintiffs

21

*KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL.*
COMPLAINT FOR DISCRIMINATION

SCHNEIDER
& WALLACE

# EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IVANA KIROLA
           Plaintiff (s)

v.

SF CITY COUNTY
           Defendant(s).

**C 07-03685 TEH
SCHEDULING ORDER FOR CASES
ASSERTING DENIAL OF RIGHT OF
ACCESS UNDER AMERICANS WITH
DISABILITIES ACT TITLE III (42 U.S.C.
§§ 12181- 89)**

    **IT IS HEREBY ORDERED** that this action is assigned to the Honorable <u>Thelton E.
Henderson</u>. When serving the complaint or notice of removal, the plaintiff or removing
defendant must serve on all other parties a copy of this Order and the assigned judge's
pertinent Standing Orders. This case is otherwise exempt from Civil Local Rule 4-2.
Counsel must comply with the case schedule listed below unless the Court otherwise
orders.

### CASE SCHEDULE

| Date | Event | Rule(s) |
|---|---|---|
| 7/17/2007 | **Complaint filed** | |
| 9/17/2007 | **Last day for plaintiff to complete service on defendants or file motion for administrative relief from deadline** | <u>General Order 56; Civil Local Rule 7-11</u> |
| **7 days before Joint Site Inspection** | **Last day for parties to complete initial disclosures, including defendant's disclosure re: construction or alteration history of subject premises** | <u>FRCivP 26(a);</u> <u>General Order 56 ¶2;</u> |
| 10/25/2007 | **Last day for parties and counsel to hold joint inspection of premises, with or without meet-and-confer regarding settlement** | <u>General Order 56 ¶3,4;</u> |
| **10 business days after Joint Site Inspection** | **Last day for parties to meet and confer in person to discuss settlement** | <u>General Order 56 ¶4;</u> |
| **45 days after Joint Site Inspection** | **Last day for plaintiff to file "Notice of Need for Mediation"** | <u>General Order 56 ¶6;</u> |
| **7 calendar days after mediation** | **Last day for plaintiff to file Motion for Administrative Relief Requesting Case Management Conference** | <u>General Order 56 ¶7;</u> Civil Local Rule 7-11 |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**STANDING ORDER FOR THE HONORABLE THELTON E. HENDERSON**

1. Counsel shall consult and comply with all provisions of the Local Rules for the Northern District of California. The parties are reminded that most procedural questions are answered in the Local Rules. The Court will not accept any pleadings that are untimely or presented in an improper manner or form. The Local Rules are available on the Court's website and may also be obtained from the Clerk's Office. Any attorney who violates the Local Rules may be subject to sanctions pursuant to Civil Local Rule 1-4.

2. Counsel shall notice their motions for a Monday morning at 10:00 AM and need not reserve a specific motion hearing date. Case management conferences are held on Mondays at 1:30 PM, and pretrial conferences are held on Mondays at 3:00 PM.

3. Parties wanting to continue hearings, request special status conferences, or make other procedural changes shall do so either by a signed stipulation and proposed order or, if a stipulation is not possible, by a written *ex parte* application and order. Briefing schedules may not be changed by stipulation. Any change in the hearing date does not alter the original briefing schedule unless otherwise ordered by the Court.

4. Any request to reschedule a case management conference shall be made in writing, and by stipulation if possible, at least ten calendar days prior to the scheduled case management conference date.

United States District Court
For the Northern District of California

5.  For Electronic Case Filing ("ECF") cases, the parties shall comply with General

Order 45, including the requirement regarding courtesy copies: "In all cases subject to

ECF, in addition to filing papers electronically, the parties are required to lodge for

chambers **no later than noon on the business day following the day that the papers**

**are filed electronically,** one paper copy of each document that is filed electronically.

These printed copies shall be marked 'Chambers Copy' and shall be clearly marked

with [Judge Henderson's] name, case number, and 'Chambers Copy-Do Not File.'

**The printed copies shall be delivered to the Clerk's Office.** Parties shall not file a

paper copy of any document with the Clerk's Office that has already been filed

electronically." General Order 45, Section VI.G (emphasis added).

6.  All discovery matters are hereby referred to a magistrate judge. If a discovery dispute

arises, the parties shall call this Court's courtroom deputy, at (415) 522-2047, for

referral to a magistrate.

7.  Plaintiff is directed to serve copies of this order at once upon all parties to this action,

and upon those subsequently joined, in accordance with Federal Rules of Civil

Procedure 4 and 5. Plaintiff shall file with the Court a certificate reflecting such

service.

**Failure to comply with this order may be deemed sufficient grounds for dismissal of**

**this case, entry of default, or other appropriate sanctions.**

**IT IS SO ORDERED.**

Dated:  March 9, 2007

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

**STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA**

**CONTENTS OF JOINT CASE MANAGEMENT STATEMENT**

Commencing March 1, 2007, all judges of the Northern District of California will require the identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.      Jurisdiction and Service:  The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.      Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.      Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.      Motions: All prior and pending motions, their current status, and any anticipated motions.

5.      Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.      Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

7.      Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

8.      Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).

9.      Class Actions: If a class action, a proposal for how and when the class will be certified.

10.     Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11.     Relief: All relief sought through complaint or counterclaim, including the amount of any

damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12.     Settlement and ADR: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13.     Consent to Magistrate Judge For All Purposes: Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14.     Other References: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.     Narrowing of Issues: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16.     Expedited Schedule: Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

17.     Scheduling: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18.     Trial: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19.     Disclosure of Non-party Interested Entities or Persons: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. **In addition**, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

20.     Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

# EXHIBIT C

## Karen Stilber

**From:** Mark Johnson
**Sent:** Wednesday, September 05, 2007 5:39 PM
**To:** 'Jim Emery'
**Cc:** 'Guy B. Wallace'; Karen Stilber; 'Nancy Park'; 'Christian Schreiber'
**Subject:** RE: Kirola v. SF

Jim,

It's not a matter of opting out of GO 56. By its own terms, the Order simply does not apply to Title II ADA cases (as opposed to Title III cases). We simply need to file a joint statement or stipulation to direct the Court's attention to that fact and request a Case Management Conference. Aside from that, I'm sure you will agree that the procedures described in GO 56 are simply unworkable in a class action case against a public entity involving thousands of geographically dispersed violations. If you are willing to stipulate that GO 56 does not apply and request a CMC, please let me know by the end of this week. Otherwise, we will file something on our own.

Regarding our response to your letter, it would be helpful if you provided us copies of the materials you referenced in the first two pages of the letter, including:

1. The City's self evaluation and ADA Transition Plan.
2. That part of the City's 10 year Capital Plan covering the $70 million in expenditures to cover the curb ramp component of the Transition Plan.
3. Any other documents which are part of or describe the City's "comprehensive and effective plan for addressing access barriers."
4. Documents identifying the "money already designated to construct curb ramps as part of the City's street repaving program."
5. Documents concerning the City's monitoring of curb ramp installations by third parties.
6. Documents describing the City's curb ramp replacement program and the matrix used for prioritizing curb ramp replacement.
7. Citizen complaints concerning curb ramps and sidewalks.
8. The 2006 legislation funding the sidewalk improvement fund.
9. Documents describing the "comprehensive plan to survey and repair all the City sidewalks over 30 years."
10. Documents relating to the City's incorporation of its self-assessment and transition plan into its 10 year Capital Plan.

Thank you. I look forward to hearing from you on these issues.

Mark


Mark Johnson
The Sturdevant Law Firm
Tel: (415) 477-2410 x229

---

**From:** Jim Emery [mailto:Jim.Emery@sfgov.org]
**Sent:** Wednesday, September 05, 2007 4:30 PM
**To:** Mark Johnson
**Cc:** Guy B. Wallace; Karen Stilber
**Subject:** Re: Kirola v. SF


Mark,

Thanks for your email last week. I will look forward to your response to my letter.

You'll have to explain to me the benefits of opting out of GO 56.  The structure that GO 56 imposes on ADA lawsuits seems like a good way to narrow issues early and promote resolution.

Jim Emery
Deputy City Attorney
1390 Market Street, 6th floor
San Francisco, CA 94102
dd: 415-554-4261
fax: 415-554-3837
jim.emery@sfgov.org

| "Mark Johnson" <mjohnson@sturdevantlaw.com> | | |
|---|---|---|
| | To | <jim.emery@sfgov.org> |
| 08/29/2007 05:22 PM | cc | "Guy B. Wallace" <gwallace@schneiderwallace.com>, "Karen Stilber" <kstilber@sturdevantlaw.com> |
| | Subject | Kirola v. SF |

Jim,

We are planning on responding to your letter of last week within the next few days.  In the meantime, we propose that we file a stipulation with the Court regarding the inapplicability of General Order 56 to this case so that we can get an initial case management conference scheduled.  If you agree, let me know and I will prepare a proposed stipulation and order.

mark

Mark T. Johnson
The Sturdevant Law Firm
475 Sansome Street,  Suite 1750
San Francisco, California  94111
Tel: (415) 477-2410 x229
Fax: (415) 477-2420
mjohnson@sturdevantlaw.com
www.sturdevantlaw.com

## Karen Stilber

| | |
|---|---|
| **From:** | Mark Johnson |
| **Sent:** | Wednesday, September 19, 2007 5:14 PM |
| **To:** | 'Jim Emery' |
| **Cc:** | 'Guy B. Wallace'; Alexius Markwalder; Karen Stilber; 'Nancy Park'; 'Christian Schreiber' |
| **Subject:** | Kirola v. City of San Francisco |

I am resending this email because the subject line was inadvertently left black in the first transmission.

Mark Johnson
The Sturdevant Law Firm
Tel: (415) 477-2410 x229

---

**From:** Mark Johnson
**Sent:** Wednesday, September 19, 2007 5:12 PM
**To:** 'Jim Emery'
**Cc:** 'Guy B. Wallace'; Karen Stilber; 'Nancy Park'; 'Christian Schreiber'; Alexius Markwalder
**Subject:**

Jim,

As I suggested in a prior email, we propose that the parties file a stipulation with the Court regarding the inapplicability of General Order 56 to this case on the basis that it is a Title II case, not a Title III case, and that we jointly request that the Court issue an order setting the initial case management conference.

Please let me know as soon as possible whether you agree that General Order 56, by its own terms, does not apply to this case and whether you are willing to sign a stipulation to that effect to be filed with the Court. If so, I have attached a proposed stipulation for your review. If not, I would appreciate an explanation of your position in that regard before seeking an appropriate order from the Court on the issue on behalf of plaintiffs. If you are prepared to sign a stipulation but would like to see changes to the language I have proposed in the attachment, please feel free to call me to discuss them or propose them in an email or revised version of the document.

Mark


Mark T. Johnson
The Sturdevant Law Firm
475 Sansome Street, Suite 1750
San Francisco, California 94111
Tel: (415) 477-2410 x229
Fax: (415) 477-2420
mjohnson@sturdevantlaw.com
www.sturdevantlaw.com

# EXHIBIT D

# CITY AND COUNTY OF SAN FRANCISCO



**DENNIS J. HERRERA**
City Attorney

# OFFICE OF THE CITY ATTORNEY

**JAMES M. EMERY**
Deputy City Attorney

DIRECT DIAL: (415) 554-4261
E-MAIL: jim.emery@sfgov.org

Ocotober 17, 2007

**By Facsimile and U.S. Mail**

Mark T. Johnson, Esq.
The Sturdevant Law Firm
475 Sansome Street, Suite 1750
San Francisco, CA 94111

     Re:    *Kirola v. CCSF*, N.D. Ca., Case No. C07-3685

Dear Mark:

     The scheduling order in this case, filed on July 17, 2007, provides for a joint site inspection by October 25, 2007. Please let us know which facilities plaintiffs wish to inspect, and we will arrange it. I also renew my suggestion that the parties meet and exchange information, with an eye to narrowing the issues in dispute.

     Very truly yours,

     DENNIS J. HERRERA
     City Attorney

     JAMES M. EMERY
     Deputy City Attorney

cc:    Guy Wallace, Esq.

FOX PLAZA · 1390 MARKET STREET, 6TH FLOOR · SAN FRANCISCO, CALIFORNIA 94102-5408
RECEPTION: (415) 554-3800 · FACSIMILE: (415) 554-3837

n:\lit\li2007\080122\00443922.doc

TOTAL P.02