DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Attorney
JAMES M. EMERY, State Bar #153630
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-4261
Facsimile:      (415) 554-3837
E-Mail:          jim.emery@sfgov.org

Attorneys for Defendants
THE CITY AND COUNTY OF SAN FRANCISCO, ET AL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IVANA KIROLA, MICHAEL KWOK, and ELIZABETH ELFTMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO ("the CITY"); GAVIN NEWSOM, in his official capacity as Mayor; AARON PESKIN, in his official capacity as President of the Board of Supervisors; JAKE MCGOLDRICK, MICHELA ALIOTO-PIER, ED JEW, CHRIS DALY, SEAN ELSBERND, BEVAN DUFTY, TOM AMMIANO, SOPHIE MAXWELL, ROSS MIRKARIMI, AND GERARDO SANDOVAL, in their official capacities as members of the Board of Supervisors,<br><br>Defendants. | Case No. C07-3685 SBA<br><br>DEFENDANTS' RESPONSE TO PLAINTIFFS' ADMINISTRATIVE MOTION |
|---|---|

This disability access class action against the City and County of San Francisco, its Mayor

and members of the Board of Supervisors (collectively, "San Francisco"), alleges barriers to access in

1  the City's sidewalks, public buildings, cultural and recreational facilities. Plaintiffs have asked the
2  Court to vacate the scheduling order that it issued pursuant to General Order 56 ("G.O. 56"), and to
3  authorize full-blown discovery, before plaintiffs inspect the allegedly non-compliant facilities and
4  mediate, as G.O. 56 requires. San Francisco, on the other hand, suggests that an early site inspection
5  and mediation offer the best path to a fair and efficient resolution of this dispute, for the benefit of the
6  putative class.

7  For Title III ADA cases, G.O. 56 creates a structure to encourage prompt exchange of
8  information, clarification of issues in dispute and early resolution. G.O. 56 requires the parties to
9  conduct a joint inspection of facilities where plaintiffs allege access violations. G.O. 56 further
10 directs the parties to early mediation before embarking on time-consuming and expensive discovery.

11 G.O. 56 requires the parties to collaborate early to solve any access violations that exist. The
12 alternative, full-blown litigation, promises delay and polarization of the parties. As fees accumulate,
13 the ADA's fee-shifting provisions can create obstacles to a resolution that would otherwise be
14 available to benefit the putative class.

15 This Court issued its G.O. 56 scheduling order in this case on July 17, 2007. Plaintiffs
16 correctly note that by its literal terms G.O. 56 governs Title III ADA cases against commercial
17 entities. Plaintiffs brought this lawsuit under Title II of the ADA, which applies to public entities
18 such as San Francisco.

19 The rationale behind G.O. 56 applies with full force to this case. Plaintiffs complain the scope
20 of this case, "which involves thousands of sidewalks and curb cuts in the City of San Francisco as
21 well as hundreds of parks, museums, swimming pools and other public buildings, facilities and
22 programs," renders G.O. 56 "impractical" and "counterproductive." Plaintiffs' Motion, at 2:20-28.
23 Plaintiffs' motion requests this Court to authorize unrestricted discovery to permit them to ascertain
24 whether access barriers exist of which they are not now aware, to commence immediately after a Rule
25 26(f) conference.

26 Plaintiffs are wrong. First, the scope of this lawsuit is no different from a typical Title III
27 ADA class action against a national restaurant chain or a large retailer. If, as plaintiffs contend,
28 inspection of premises and mediation are "impossible," *see* Plaintiffs' Motion, at 3:11, then plaintiffs

1 have themselves called into question whether this class action is an appropriate vehicle to resolve their allegations. The Court will be a better position to assess whether this is an appropriate class case after the parties have conducted the joint inspection and mediation that G.O. 56 require and narrowed any remaining issues for litigation.

The sole distinction plaintiffs identify between a Title III action and this Title II action – that a public entity has a duty to prepare a self-evaluation and transition plan – has no bearing on this lawsuit. There is no private right of action for the absence or insufficiency of a transition plan. *Cherry v. City College*, 2005 WL 2620560 (N.D.Cal. Oct. 14, 2005).[1]

Plaintiffs commenced this action July 17, 2007. The complaint alleges a wide range of access barriers that the five putative class representatives allege they have encountered. Some of the allegations are reasonably specific, such as alleged absent or inadequate curb ramps at particular intersections, and alleged access barriers at specifically identified City-run pools, parks and cultural facilities. Other allegations are vague, such as alleged excessive slopes on walking paths in Golden Gate Park.

The City promptly investigated the alleged access barriers and in August 2007 invited plaintiffs to meet and discuss their allegations. The City's investigation found the bulk of plaintiffs' allegations groundless, and the City sought a straightforward efficient way to demonstrate its ADA compliance. Many of the intersections, which plaintiffs alleged lacked adequate curb ramps, in fact have state-of-the-art curb ramps, some installed within the last two years. Other intersections have older, functional curb ramps that complied with all applicable codes when installed. Intersections still requiring remediation will be updated pursuant to a comprehensive $70 million ten-year capital plan, prioritizing citizen complaints and paths of travel serving public facilities.

Plaintiffs' complaint identifies 4 City-run pools. One of these City-run pools has recently reopened after an extensive renovation that removed the alleged access barriers. Two other City-run pools identified in plaintiffs' complaint are currently under renovation. The fourth City-run pool

---

[1] Plaintiffs' counsel (Schneider & Wallace) are well aware of this rule, since they served as plaintiffs' counsel in *Cherry*.

identified in plaintiffs' complaint complies with all applicable access codes.  The City's investigation showed that many of the facilities identified in plaintiffs' complaint, including Davies Symphony Hall, the War Memorial Opera House and the main office of the Public Health Department at 101 Grove Street, in fact comply with all applicable codes.  The City therefore seeks an efficient and fair forum to demonstrate its compliance, to develop a plan to remove any remaining access barriers, and to clarify the standards plaintiffs believe apply, for example, to walking paths in Golden Gate Park, a natural setting, or in Alta Plaza Park, which has a naturally steep topography.

For these reasons, the City asks the Court to exercise its inherent case management authority to retain the G.O. 56 scheduling order that it already issued in this case.  The City asks the Court to direct the parties to meet and confer, to conduct a joint inspection of premises specifically identified in plaintiffs' complaint (or a smaller sampling of facilities agreed on by the parties), and to mediate, *before* any formal discovery occurs.  It would be unfortunate indeed if the parties wait until they have spent substantial sums in attorney fees before they meet to exchange key information and define the dispute between them.  An avoidable attorney-fee liability would simply divert available funds from the very access improvements plaintiffs seek.

DATED:  October 22, 2007

          DENNIS J. HERRERA
          City Attorney
          JOANNE HOEPER
          Chief Trial Deputy

           /s/ James M. Emery
       By:_____
          JAMES M. EMERY
          Deputy City Attorney

          Attorneys for Defendants City and
          County of San Francisco, et al.