Guy B. Wallace, State Bar No. 176151
Nancy Park, State Bar No. 236750
Christian Schreiber, State Bar No. 245597
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Mark T. Johnson, State Bar No. 76904
Alexius Markwalder, State Bar No. 227004
THE STURDEVANT LAW FIRM
475 Sansome Street, Suite 1750
San Francisco, CA 94111
Telephone: (415) 477-2410
Facsimile: (415) 477-2420
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IVANA KIROLA, MICHAEL KWOK, and ELIZABETH ELFTMAN, on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO ("the CITY"); GAVIN NEWSOM, in his official capacity as Mayor; AARON PESKIN, in his official capacity as President of the Board of Supervisors; JAKE MCGOLDRICK, MICHELA ALIOTO-PIER, ED JEW, CHRIS DALY, SEAN ELSBERND, BEVAN DUFTY, TOM AMMIANO, SOPHIE MAXWELL, ROSS MIRKARIMI, AND GERARDO SANDOVAL, in their official capacities as members of the Board of Supervisors;<br><br>Defendants. | No. C07 - 3685 SBA<br><br>**CLASS ACTION**<br><br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT PURSUANT TO FED. RULE CIV. PROC. 26(f)**<br><br>Date: December 13, 2007<br>Time: 3:30 p.m.<br>(Telephonic)<br>Courtroom: 3 |

SCHNEIDER & WALLACE

Joint Case Management Conference Statement
CASE NO. C07 – 3685 SBA

Pursuant to the Court's Minute Order of November 14, 2007, which the parties received notice of through the ECF system on November 30, 2007, the parties submit the following Joint Case Management Statement to advise the Court of developments since the last Case Management Conference of November 14, 2007. For the Court's convenience, a copy of the Joint Case Management Conference Statement filed by the parties on November 6, 2007 for the November 14, 2007 Conference is attached as Exhibit A.

**Developments Since the Case Management Conference of November 14, 2007**

At the telephonic conference on November 14, 2007, the Court directed counsel for the City to file a notice of related case in the earliest filed case of several cases identified by defendant in section no. 10 of the previously filed Joint Case Management Conference Statement as being related to this action. The Court informed the parties that no further action would be taken by the Court in this case until it was determined whether the case would continue to be assigned to this Court.

On November 19, 2007, the City filed an administrative motion to consider whether cases should be related in *Letcher v. City and County of San Francisco,* C05-03772 JSW.

On November 21, 2007, counsel for the plaintiffs in *Letcher v. City and County of San Francisco,* C05-03772 JSW, filed an opposition to the related case motion.

On November 20, 2007, counsel for the plaintiffs in *Chambers v. City & County of San Francisco*, Case No. C06-06346 WHA, filed an opposition to the related case motion.

On December 4, 2007, the Hon. Jeffrey S. White, the District Court Judge assigned to *Letcher*, the earliest filed of the potentially related cases, issued a Related Case Order determining that none of the cases are related and that no cases will be reassigned.

On December 4, 2007, the Hon. William H. Alsup, the District Court Judge assigned to *Chambers,* issued a Related Case Order determining that none of the cases are related and that no cases will be reassigned.

**Revised Proposed Pre-Trial Schedule and Factors Related to the Pre-Trial Schedule**

Plaintiffs' Proposed Schedule

At the Case Management Conference of November 14, 2007, the Court expressed concern that the proposed trial date and pre-trial schedule was too extended and indicated that it would not approve a trial date as late as December, 2009, as proposed. Plaintiffs believe that the originally proposed schedule is both realistic and necessary given the scope of this case and the amount of discovery and investigation, including site inspections by experts, that will need to be conducted. For example, according to information from the City's FY 2008-2017 Capital Plan, General Fund Department Program, p. 58 (available at http://www.sfgov.org/site/uploadedfiles/cpp/General_Fund_Section_FINAL.pdf, "there are 7,200 functioning intersections in San Francisco with 23,500 corners. Most of these corners have only one curb ramp or none." Similarly, there are many miles of sidewalks and other right-of-ways, more than 200 recreation and park facilities (*See* San Francisco Recreation and Park Department website, available at http://www.sfgov.org/site/recpark_index.asp?id=21884, dozens of museums, and many other public buildings and facilities at issue in this case. A sampling methodology and plan for conducting site surveys and inspections of these intersections, sidewalks, parks and other public facilities will have to be developed and implemented. Plaintiffs anticipate that this process alone, independent of other discovery and fact investigation, will take a minimum of six months. Accordingly, plaintiffs believe that a schedule which would bring this action to trial within 2 years is realistic if not ambitious.[1] Plaintiffs also note that a two-year pre-trial schedule is consistent with, if not more accelerated than, the typical pre-trial schedule for class action employment discrimination cases which might be comparable or smaller in scope than this case: *See, e.g. Holloway v. Best Buy LLP*, C-05-0662 PJH (Title VII pattern or practice putative class action filed

---

[1] Although this action was filed in July of this year, no activity occurred until November due to the reassignment of the case from Judge Henderson to this Court and the subsequently vacated original scheduling order which erroneously assumed that this case was filed under Title III of the ADA and, therefore, subject to General Order 56. The November 14, 2007 Case Management Conference was the first Case Management Conference in this action.

2

1 in December 2005 setting more than two year schedule for filing of class certification papers in
2 2008); *Satchell v. FedEx Express Corp*, C-03-2659 SI (Title VII pattern or practice class action
3 filed in 2003 with trial court proceedings resolving in settlement in August 2007 and no
4 intervening merits appeal).

5 Despite Plaintiffs concerns regarding the scope of the discovery, investigation and site
6 inspection work that needs to be conducted in this case prior to trial, they are mindful of, and wish
7 to be responsive to, the Court's view that the originally proposed trial date is too far out.
8 Accordingly, Plaintiffs propose the following revised proposed pre-trial schedule, under which this
9 matter would be set for trial in approximately 18 months:

| Event or deadline | Proposed Date |
|---|---|
| Discovery Cut Off (expert and non-expert): | February 13, 2009 |
| Expert Reports Due: | November 14, 2008 |
| Rebuttal Reports Due: | December 19, 2008 |
| Last Day for hearing motions: | April 10, 2009 |
| PreTrial Conference | May 29, 2009 |
| Trial: | June 22 or 23, 2009 |

18 Under this schedule, Plaintiffs anticipate that they would move for class certification in July of
19 2008, following initial discovery.

20 Plaintiffs believe that the above-described schedule is an extremely accelerated pre-trial
21 schedule and that satisfying these deadlines will require not only diligence on the part of Plaintiffs
22 but the utmost of cooperation from defendants in responding to discovery and scheduling
23 inspections. Nonetheless, in light of the Court's concerns regarding the trial date, Plaintiffs are
24 prepare to proceed on this proposed time table subject to Court's discretion, on a proper showing,
25 to extend the dates as necessary and appropriate.

3

<u>Plaintiffs' Position With Regard to Defendant's Proposed Stay of Discovery, Amending the Complaint and Early Settlement Negotiations.</u>

Defendant's contention that there is no basis for the injunctive relief sought by this action because the City and County of San Francisco is in compliance with the Title II of the Americans with Disabilities Act and related California statutes is frivolous.  Under Title II of the ADA, the City was required to have completed removal of disability access barriers by no later than January 26, 1995, three years after the date on which Title II became effective, January 26, 1992.  Over <u>twelve</u> years later, the City has still failed to provide curb ramps at more than 10,000 street corners. Defendant's current "plan" regarding disability access, which is a non-binding plan that it may choose to implement (or not) at its own discretion, is scheduled to be implemented over the next <u>nine</u> years and, even then, will not complete all the access work that Defendant itself has identified as necessary.  Too little, too late.  Why should persons with mobility disabilities be required to wait an additional decade or more for compliance when the City should have discharged its duties under disability nondiscrimination laws over a decade ago?  Thus, while Plaintiffs' counsel remain willing to attend mediation in January and February 2008 as previously stated, Defendant will need to make a far more meaningful and binding commitment to improving disability access in the form of a consent decree or a stipulated judgment if those discussions are to bear fruit.

In the course of their continuing investigation of the class allegations made herein, Plaintiffs' counsel have spoken with numerous persons with mobility disabilities who have experienced disability access barriers at locations throughout the City.  While Defendant's counsel contends that the City has already demonstrated that the named Plaintiffs are mistaken regarding the existence of disability access barriers in their neighborhoods, he has not provided Plaintiffs' counsel with the actual results of any disability access site inspections that would confirm his pro forma denials regarding the barriers and types of barriers identified in the current complaint. Moreover, Defendant's counsel appears to labor under the misapprehension that simply providing any form of curb ramp constitutes compliance, no matter how steep.  It should be emphasized that even where the City has provided curb ramps, all too often they are not constructed in conformance

4

1  with any disability access standard. Many of them far exceed the maximum permissible slope of
2  8.33%, or contain potholes or steep lips at their base, which are hazardous to wheelchair users.
3  Many persons with mobility disabilities have fallen out of their wheelchairs because of the steep
4  and hazardous curb ramps that exist in the City. In fact, Defendant's own access survey from
5  October 2001 identified literally hundreds of steep and hazardous curb ramps throughout San
6  Francisco. (*See* Exhibit B hereto.) Finally, as is evident from the Complaint and as has been
7  repeatedly explained to counsel for Defendant, this action is not limited to the specific illustrations
8  of access barriers identified in the complaint. It challenges Defendant's overall policy and practice
9  of failing to remove physical barriers to access throughout the City. In any event, as Plaintiffs
10 noted in the original joint CMC statement, it is Plaintiffs' intention to seek leave to amend the
11 Complaint in a number of respects. When they do so, they will provide a more complete statement
12 of the barriers and types of barriers at issue. Plaintiffs intend seek leave to file the proposed
13 amended Complaint by late January or early February, 2008.
14      As justification for an unwarranted stay of discovery at the outset of this case, Defendant
15 contends that Plaintiffs will undertake needless and unduly costly discovery in this case. That
16 contention is simply false. Defendant apparently relies upon Judge Illston's decision in *Lopez v.*
17 *San Francisco Unified School District*, 385 F.Supp.2d 981 (N.D. Cal. 2005), as support for its
18 contention. Defendant's counsel paints a misleading picture of Judge Illston's findings and rulings
19 in that opinion. In her decision, Judge Illston expressly rejected defendant's contention that
20 needless and unduly burdensome discovery had been undertaken. *Id*. at 995 ("The court finds that
21 counsel's conduct in discovery and discovery was reasonable … and will award fees for all time
22 related to discovery and depositions.") Further, Judge Illston expressly placed the blame for the
23 award of fees and costs in *Lopez* where it belonged: on the defendant and Mr. Emery and his co-
24 counsel at the City Attorneys' Office, which represented the district. *Id.* at 1002 ("However, it is
25 important to remember that the District has largely brought this award of attorneys' fees and costs
26 on itself … the District tenaciously fought each stage of the litigation and caused delay throughout
27 discovery, which substantially increased the fees and costs."). Defendant took no appeal of Judge
28

5

1 Illston's decision. Thus, neither the experience of the *Lopez* litigation nor any other factor

2 identified by Defendant justifies any stay of discovery in this case. Moreover, such a stay of

3 discovery, even for a short period, would render the proposed revised pre-trial schedule impossible.

4 **The City's Statement**

5 The City proposes a pretrial case management plan mandating an early rigorous evaluation

6 of the merits and early dispute resolution. The bulk of the allegations in plaintiffs' complaint are

7 demonstrably erroneous. The City has brought these multiple and fundamental inaccuracies to

8 counsel's attention, who have declined to correct the erroneous allegations in their complaint or

9 even to investigate their erroneous allegations. The vast majority of access barriers alleged in the

10 complaint simply do not exist. The remainder are already subject to existing barrier removal plans

11 that completely satisfy the City's responsibilities under applicable disability access laws. In light

12 of the City's pre-existing and robust barrier removal plans, there is no basis for the injunctive relief

13 plaintiffs seek.

14 Plaintiffs' conference statement demonstrates their intention to launch hugely expensive and

15 burdensome discovery, based on their fundamentally defective complaint. The Court should

16 require plaintiffs to verify the allegations in their complaint before imposing this extreme

17 discovery burden on the public. Especially in this time of severe municipal budget constraints,

18 every dollar spent on litigation is one dollar less for access improvements, and the cost of

19 plaintiffs' discovery plan will quickly exceed millions of dollars. *See, e.g., Lopez v. San Francisco*

20 *Unified School Dist.*, 385 F. Supp. 2d 981 (N.D. Cal. 2005) (fee award exceeding $7 million to

21 class counsel after settling similar disability access class action against school district). For these

22 reasons, the City requests that the Court establish a pretrial schedule requiring the parties first to

23 conduct a joint inspection of those sites alleged in the complaint to violate access laws, and then to

24 meet and confer to attempt a resolution of this action. Absent a rigorous early evaluation of

25 plaintiffs' erroneous allegations, the mounting legal costs may create an insuperable obstacle to

26 settlement and lead to an unfortunate and avoidable misdirection of scarce public funds to

27 litigation, instead of access improvements.

28

Accordingly, the City renews its suggestion that the Court stay discovery pending a joint inspection of the sites identified in plaintiffs' complaint, followed by mandatory mediation. The Court should then require plaintiffs to amend their complaint to correct those allegations that the joint inspection establishes to be defective and erroneous, *before* plaintiffs are permitted to embark on their multi-million dollar discovery plan.

The City proposes the following pre-trial schedule:

| | |
|---|---|
| Joint inspection of sites identified in complaint: | January 15, 2008 |
| Mediation completed, and discovery commences: | February 15, 2008 |
| Expert reports: | February 13, 2009 |
| Rebuttal reports: | March 6, 2009 |
| Discovery cut-off: | March 21, 2009 |
| Last day for hearing dispositive motions: | May 8, 2009 |
| Pretrial conference: | May 29, 2009 |
| Trial: | June 22, 2009 |

The City has proposed the same trial date as plaintiffs. To accommodate the initial discovery standstill and ADR process, the City has tightened the schedule for dispositive motions and expert reports, with the result that the City's schedule provides a discovery period comparable to the discovery period in plaintiffs' proposed pretrial schedule.

Respectfully submitted,

DATED: December 7, 2007         SCHNEIDER & WALLACE

_____/s/_____
Guy B. Wallace
Attorneys for Plaintiffs

DATED: December 7, 2007         THE STURDEVANT LAW FIRM
A Professional Corporation

_____/s/_____
Mark T. Johnson
Attorneys for Plaintiffs

DATED: December 7, 2007                OFFICE OF THE CITY ATTORNEY OF
                                       SAN FRANCISCO

                                       _____/s/_____
                                       James M. Emery
                                       Attorney for Defendants

    I, Mark T. Johnson, am the ECF user whose ID and password are being used to file this Joint Case Management Conference Statement. In compliance with General Order 45, I hereby attest that Guy B. Wallace, counsel for Plaintiffs, and James M. Emery, counsel for Defendants, have concurred in this filing.

Dated: December 6, 2007                _____/s/_____
                                       Mark T. Johnson

8

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
CASE NO. C07 – 3685 SBA

SCHNEIDER & WALLACE