Guy B. Wallace, State Bar No. 176151
gwallace@schneiderwallace.com
Mark T. Johnson, State Bar No. 76904
mjohnson@schneiderwallace.com
Andrew P. Lee, State Bar No. 245903
alee@schneiderwallace.com
Amanda N. Hugh, State Bar No. 254287
ahugh@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

IVANA KIROLA, MICHAEL KWOK, and ELIZABETH ELFTMAN, on behalf of themselves and all others similarly situated;

Plaintiffs,

vs.

THE CITY AND COUNTY OF SAN FRANCISCO ("the CITY"); et al.

Defendants.

**No. 4:07-CV-03685 SBA (EMC)**

**CLASS ACTION**

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

Date: January 28, 2010
Time: 10:30 a.m.
Place: Courtroom C, 15th Floor

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 4

A. PLAINTIFFS' SITE INSPECTIONS ARE TIMELY NOTICED UNDER BOTH THE FACT DISCOVERY AND EXPERT DISCOVERY CUT OFFS ..... 4

B. PLAINTIFFS' SITE INSPECTIONS ARE NECESSARY AND ARE NOT UNREASONABLY CUMULATIVE OR BURDENSOME ..... 5

1. Plaintiffs' Site Inspections Do Not Expand The Scope Of This Case, And In Fact Cover Only A Modest Number Of The Facilities That Defendants' Expert Opines In His F.R.C.P. 26 Expert Report Are Accessible To Persons With Mobility Disabilities ..... 5

2. Plaintiffs' Site Inspections Are Necessary To Show A Current Pattern Or Practice Of Systemic Inaccessibility ..... 6

3. Plaintiffs' Site Inspections Are Representative And Are Comprised Of A Significant But Relatively Small Subset Of The City's Facilities ..... 8

4. Plaintiffs' Site Inspections Are Not Unduly Burdensome ..... 8

C. UNDER APPLICABLE LAW PLAINTIFFS' SITE INSPECTIONS ARE PERMISSIBLE FOR THE ADDITIONAL REASON THEY ARE NECESSARY TO REBUT THE FAR-REACHING EXPERT OPINIONS CONTAINED IN THE EXPERT REPORT OF DEFENDANTS' EXPERT MR. HECKER ..... 9

D. DEFENDANTS WILL NOT SUFFER ANY COGNIZABLE PREJUDICE AS A RESULT OF THESE INSPECTIONS ..... 13

E. DEFENDANTS HAVE CANCELLED OR HINDERED SOME OF PLAINTIFFS' SITE INSPECTIONS; ANY SUCH SITE INSPECTIONS SHOULD BE RESCHEDULED ..... 14

III. CONCLUSION ..... 14

## TABLE OF CONTENTS

**State Cases**

*Guidance Endodontics, LLC v. Dentsply International, Inc.*, 2009 WL 3672373 (Sept. 24, 2009) .......... 10

**Federal Cases**

*Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306 (M.D. N.C. 2002) .......... 10

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) .......... 4, 6

*Beller v. United States*, 221 F.R.D. 696 (D.N.M. 2003) .......... 10

*City of Gary v. Shafer*, 2009 WL 1370997 (N.D. Ind. May 13, 2009) .......... 9, 10, 13

*Coles v. Perry*, 217 F.R.D. 1 (D.D.C. 2003) .......... 10

*Creative Solutions Group, Inc. v. Penzer Corp.*, 199 F.R.D. 443 (D. Mass. 2001) .......... 14

*Crowley v. Chait*, 322 F.Supp.2d 530 (D.N.J.2004) .......... 11

*Finwall v. City of Chicago*, 239 F.R.D. 494 (N.D. Ill., 2006) .......... 13

*Fritter v. Dafina, Inc.*, 181 F.R.D. 215 (N.D.N.Y. 1998) .......... 10

*Gallagher v. Southern Source Packaging*, 568 F.Supp.2d 624 (E.D.N.C. 2008) .......... 10

*Grabein v. Jupiterimages Corp.*, 2008 WL 2704451 (S.D. Fla., 2008) .......... 14

*Leviton Manufacturing Co., Inc. v. Nicor, Inc.*, 245 F.R.D. 524 (D.N.M. 2007) .......... 10

*MMI Realty Services, Inc. v. Westchester Surplus Lines Insurances Co.*, 2009 WL 649894 (D. Haw. March 10, 2009) .......... 9, 11

*Pacific Information Resources, Inc. v. Musselman*, 2008 WL 2338505 (N.D. Cal. June 4, 2008) .......... 10

*Palmer v. Asarco Inc.*, 2007 WL 2254343 (N.D. Okla. Aug. 3, 2007) .......... 10

*Park West Radiology CareCore Nat. LLC*, ___F.Supp.2d ___, 2009 WL 4277106 (S.D.N.Y. Nov. 19, 2009) .......... 9

*Svcs., Inc. v. Westchester Surplus Lines Ins., Co.*, Civ. No. 07-00466 BMK, 2009 WL 649894 (D.Haw. March 10, 2009) ........ 11

*U.S. v. Chrzanowski*, 502 F.2d 573 (3d Cir. 1974) ........ 9

*U.S. v. Di Mucci*, 879 F.2d 1488 (7th Cir. 1989) ........ 6

*Versage v. Marriott Intern., Inc.*, 2006 WL 3614921 (M.D. Fla., 2006) ........ 14

**Supreme Cases**

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ........ 6

*Long Term Capital Holdings v. United States*, 2003 WL 21518555 (D. Conn. May 15, 2003) ........ 9

*O'Shea v. Littleton*, 414 U.S. 488 (1975) ........ 6

**Statutes, Rules & Codes**

Fed.R.Civ.P. 26(a)(2)(C)(ii) ........ 9, 11

# I. INTRODUCTION

The Complaint in this case alleges that the City and County of San Francisco (hereafter "the City" or "Defendants") has failed to make its parks, park facilities, libraries, swimming pools, pedestrian rights of way and certain other museums and public facilities readily accessible to and usable by persons with mobility disabilities. Declaration of Amanda Hugh ("Hugh Decl.") ¶15, Exh. B. The Complaint alleges claims for violations of Title II of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") as well as parallel California laws. In particular, Plaintiffs state claims for violations of the duty to perform new construction and alterations in a manner that complies with federal and state disability access standards, and for violations of the duty to make the City's programs, services and activities readily accessible to and usable by persons with mobility disabilities by ensuring that the facilities in which such programs, services and activities are offered do not contain physical access barriers that function to limit or deny access to programs. While the City professes to be a national leader in the area of providing disability access as compared to other cities in the United States (*e.g.*, New York), the reality is that public facilities in the City and County of San Francisco (and as result, the programs offered within them) are well below that level of accessibility mandated by federal and state disability nondiscrimination law. Accordingly, the purpose of this lawsuit is to force the City to come into compliance with the mandates of federal and state law by a date certain, and to obtain declaratory and injunctive relief from the Court that is sufficient to achieve that outcome. In its Answer, and in various other pleadings and correspondence, the City has taken the position that it is already fully accessible, and that to the extent that any physical access barriers remain, no injunctive relief is either necessary or appropriate because the City is already planning to remove them. Trial is set to begin on May 24, 2010.

The instant discovery dispute arises because Defendants object to Plaintiffs' second "round" of site inspections in this case. Plaintiffs previously conducted site inspections of numerous locations in the City in 2008 and 2009. With trial approaching, Plaintiffs have noticed a second round of site inspections. The purpose of these site inspections is to obtain current data regarding the condition of the built environment at a relatively small sample of locations in each of the City's eleven districts.

The data from these site inspections will be used to support Plaintiffs' showing at trial that inaccessibility remains an ongoing, systemic problem throughout the City, and that declaratory and injunctive relief should therefore issue. In addition, as explained in detail below, the data from the second round of site inspections will be used to rebut the sweeping opinions of Defendants' disability access expert, Mr. Hecker, who opines in his Report that the City is already in full compliance with the ADA and Section 504, and that the City has literally hundreds of "accessible" facilities that are "equitably dispersed" throughout the City. This is untrue (or not true in any meaningful sense), but Mr. Hecker's Report contains these opinions nonetheless, and he will doubtless proffer them at trial.

Critically, both fact discovery and expert discovery are still open. While Defendants argue that Plaintiffs' site inspections are late, and that Plaintiffs have "delayed," these arguments are not supported by the Court's scheduling Order, nor are they consistent with the nature of the allegations herein. Fact discovery is open until February 26, 2010, and it is open without any limitation as to site inspections or any other form of discovery. Expert discovery is open until March 12, 2010. All of Plaintiffs' site inspection notices pursuant to Federal Rule of Civil Procedure 34 are timely and sufficient, and are scheduled to be completed by no later than February 4, *three weeks prior to the fact discovery cut off*. Further, the data from these site inspections, which consist of percipient observations and measurements of the built environment, are necessary to show that in 2010 there continue to be disability access barriers at locations throughout the City's public spaces. Under applicable law, such a showing may well be necessary to support Plaintiffs' claims for injunctive relief.

Defendants argue contrary to the Court's scheduling Order herein, and insist that all site inspections and any data therefrom should have been conducted by December 11, 2010, and included within Plaintiffs' opening expert reports. However, as discussed below, the courts have rejected such an approach because it would result in the parties' experts being forced to introduce all manner of data and information in their opening reports based on the hypothetical need for such information to rebut the other side's expert opinions. Such an approach would impose a crushing burden on Plaintiffs' experts, particularly in a systemic disability class action challenge (or any other systemic civil rights challenge, for that matter) because of the size and scope of the Defendants' facilities.

Instead, courts have typically permitted a party's expert or experts to obtain additional data and use such data to address "the same subject matter" that is raised in the opposing party's expert report, and to do so in the form of a rebuttal expert report. In this case, rebuttal expert reports are due on February 15, 2010. As discussed in detail below, Mr. Hecker's Report contains sweeping opinions that the City's facilities are in full compliance with the ADA and Section 504, and he also identifies over two hundred specific facilities that he claims are "accessible." Plaintiffs' site inspections cover a relatively modest subset of the facilities that Mr. Hecker identifies as being accessible, and also address his claim that there is an "equitable dispersal" of accessible facilities throughout the City. Accordingly, there can be little doubt that data from these inspections, and opinions and analysis arising from such data, are the proper subject of rebuttal expert reports under applicable law.[1]

Plaintiffs are confident that the second round of site inspections will confirm that the City's facilities are, by and large, characterized by pervasive physical access barriers in the form of conditions that do not comply with the Americans with Disabilities Act Accessibility Guidelines (ADAAG) or another disability access standard. One suspects that this is the true reason that Defendants are opposed to these site inspections going forward. But, this is not a cognizable form of prejudice within the meaning of applicable law, nor can Defendants point to any such prejudice. During the meet and confer process, Plaintiffs' counsel pointed out that Defendants' access expert or representatives could conduct joint access inspections of these sites. Defendants declined. In addition, Plaintiffs have made clear that their experts will be made available for deposition regarding any data collected during these site inspections. Further, Plaintiffs have offered to give Defendants data from these inspections on a rolling basis, and the first such production will be made on January 20, 2010. And, during the meet and confer process, Plaintiffs' counsel asked if Defendants would stipulate that any of these sites were not accessible, or that Plaintiffs' prior inspections (the first

---

[1] While Defendants attempt to make much of Plaintiffs' references to the term "supplemental reports" in November and early December 2009 correspondence between the parties, the Court had not yet established a procedure or deadline for <u>rebuttal</u> expert reports in this case, so Plaintiffs' counsel used the term "supplemental" to describe what was at the time the only available vehicle within expert discovery to provide the information arising from the current round of site inspections.

round) were representative of current disability access conditions in the City. Defendants declined to enter into any such stipulation, which would have obviated the need for these inspections.

Finally, to the extent that Defendants argue or imply that Plaintiffs are attempting to "sandbag" them by withholding proper expert reports and disclosures until rebuttal, a review of the record shows that any such contention is not accurate. Plaintiffs provided voluminous, timely and conscientious Rule 26 disclosures and reports on December 11, 2009 in accordance with the Court's schedule. Plaintiffs submit the Expert Report of Peter Margen and its exhibits as an example thereof, filed as Exhibit I to the Hugh Declaration. Several other similar Experts Reports were also timely produced to Defendants.

In summary, because (a) fact and expert discovery is open, (b) these inspections are timely and properly noticed, and (c) these inspections cover a subset of the sites that Defendants' contend are accessible and therefore constitute proper rebuttal on the same subject matter, and (d) Plaintiffs have taken a sampled and reasonable approach to discovery in this class action matter that does not expand the allegations of the Complaint in any way whatsoever, this Court should allow these site inspections to go forward.

## II. <u>ARGUMENT</u>

### A. PLAINTIFFS' SITE INSPECTIONS ARE TIMELY NOTICED UNDER BOTH THE FACT DISCOVERY AND EXPERT DISCOVERY CUT OFFS

The current pretrial and trial schedule in this case, pursuant to stipulation of the parties and this Court's Order of June 11, 2009, [Doc # 63], is as follows: fact discovery closes on February 26, 2010. Expert rebuttal reports are due on February 15, 2010 (pursuant to Judge Armstrong's recent Order of December 17, 2009, [Doc # 74]. Expert discovery closes on March 12, 2010. Trial begins on May 24, 2010. Hugh Decl. ¶¶19-20, Exh. F, G.

Defendant admits, as it must, that Plaintiffs' current round of site inspections are timely noticed pursuant to Federal Rule of Civil Procedure 34 and the Court's current scheduling Order for this case. The site inspections were noticed between November 23 and December 28, 2009, and are all scheduled to be completed by no later than February 4, 2010, 22 days before the fact discovery cut off, and 36 days before the expert discovery cut off.

The site inspections consist of the measurement and photographing of public facilities and spaces that are open to the general public. For example, Plaintiffs' experts will collect data regarding the running slope of ramps by using a Smartlevel, or will measure the height of the lips on various curb ramps with a tape measure. No destructive testing, or expert statistical analysis, or other complex observations are being made.

There is literally no language whatsoever in the Court's scheduling Order that states that conducting Rule 34 site inspections between December 11, 2009, and the close of fact discovery two and half months later, or the close of expert discovery over three months later, is prohibited. Surely if the Court had intended to impose such a serious limitation in this case it would have done so expressly so that Plaintiffs would have had clear notice that *all discovery* ***–except site inspections—*** *was permissible between December 11, 2009 and February 26, 2010.*

In short, because Plaintiffs' Rule 34 site inspections are properly and timely noticed, and because the inspections take percipient observations of the conditions of Defendants' public spaces and facilities, this Court should permit this discovery to go forward on that basis alone.

### B. PLAINTIFFS' SITE INSPECTIONS ARE NECESSARY AND ARE NOT UNREASONABLY CUMULATIVE OR BURDENSOME

#### 1. Plaintiffs' Site Inspections Do Not Expand The Scope Of This Case, And In Fact Cover Only A Modest Number Of The Facilities That Defendants' Expert Opines In His F.R.C.P. 26 Expert Report Are Accessible To Persons With Mobility Disabilities

This is a putative class action matter that challenges the systemic accessibility of the City's parks, libraries, swimming pools, pedestrian rights of way (sidewalks and curb ramps) and a small number of identified unique cultural facilities and the health department building at 101 Grove Street. Under applicable precedents, it is probable that the class will be certified. Defendant has been aware of the scope of the allegations of the First Amended Complaint from the beginning of the case. *See* Hugh Decl. ¶17, Exh. D (Joint Case Management Conference Statement, filed November 6, 2007 [Doc # 32]). Notwithstanding Defendants' assertion in their Motion that this round of site inspections will substantially expand the scope of this litigation, Defendants have recognized in prior pleadings the systemic and far-reaching nature of the allegations herein. *Id.* at ¶17, Exh. D (Joint Case Management Conference Statement, filed November 6, 2007 at 4 [Doc # 32]).

Moreover, as discussed below, Defendants' access expert has taken the position in his Expert Report that, when viewed in their entirety, the City's parks, libraries, swimming pools, and museums are readily accessible to and usable by persons with mobility disabilities.[2] More specifically, Mr. Hecker identifies a total of 225 parks and park facilities, libraries, swimming pools and museums that he contends are "accessible" to persons with mobility disabilities. As discussed below in more detail, Plaintiffs have sought to conduct site inspections of a small subset of the facilities that Mr. Hecker identifies as being accessible in this Expert Report. Thus, Plaintiffs are only inspecting 78 of the sites Mr. Hecker identified in his Expert Report. In short, Defendants' contention that the current round of site inspections expand the scope of this case is utterly without merit. In truth, the current round of site inspections covers a far smaller number of facilities than those identified as being accessible by Defendants' own access expert in his Rule 26 Expert Report.

### 2. Plaintiffs' Site Inspections Are Necessary To Show A Current Pattern Or Practice Of Systemic Inaccessibility

As discussed above, this is a putative class action for declaratory and injunctive relief. It is well-settled that to be eligible for injunctive relief at trial, Plaintiffs will bear the burden of showing by a preponderance of the evidence that City parks, libraries, swimming pools, cultural facilities and pedestrian rights of way are ***currently*** inaccessible to persons with mobility disabilities. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1975); *U.S. v. Di Mucci*, 879 F.2d 1488, 1498 (7th Cir. 1989) ("A defendant can rebut the presumption of entitlement to affirmative injunctive relief by showing that such relief is not necessary because there is little or no danger of current violations."). Further, it is also well-settled that the scope of any injunctive relief to be ordered by the Court must be proportional to the scope of the violation proven by Plaintiffs. *See, e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("…the scope of injunctive relief is dictated by the extent of the violation established….); *Armstrong v. Davis*, 275 F.3d 849, 870 (9th Cir. 2001). Finally, it is equally well-

---

[2] Mr. Hecker admits that the City's pedestrian rights of way are not yet accessible to persons with mobility disabilities, but contends that the City has been unable to complete the necessary access work because of an alleged undue financial hardship. Hugh Decl. ¶3 Exh. A at 5-6, 44.

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER
KIROLA, ET AL., V. CITY AND COUNTY OF SAN FRANCISCO, ET AL., CASE NO. 4:07-CV-03685 SBA
6

settled that if a Defendant has ceased its unlawful conduct, declaratory and/or injunctive relief may not be appropriate under at least some circumstances. *See, e.g.*, *Armstrong* 275 F.3d at 860-61.

In this case, Defendant has taken the position in its Answer that the relief sought by Plaintiffs is "moot." Hugh Decl. ¶ 16, Exh. C (Answer at page 11). Further, Defendants have taken the position that the City is in the process of removing many of the access barriers alleged by Plaintiffs. *See*, *e.g.*, Hugh Decl. ¶¶17-18 Exh. D, E (Joint Case Management Conference Statement, filed November 6, 2007, at page 4 [Doc # 32]; Joint Case Management Conference Statement, filed December 7, 2007, at page 6 [Doc # 38]). Finally, in his Expert Report, Mr. Hecker repeatedly contends that literally dozens of sites are "in the design or construction" phase to be made accessible. For example, regarding parks and park facilities, libraries, swimming pools and museums, Mr. Hecker claims that thirty-six are "in design or construction," and thirty-three are "planned/funded." In short, it is clear that Defendants intend to argue at trial, and proffer evidence that, Plaintiffs' evidence is out of date, that Plaintiffs' claims are moot, and that therefore that no Order granting injunctive relief should issue.

Accordingly, to be in a position to rebut Defendants' contention that the City has remediated any disability access barriers identified by Plaintiffs, or that the City is in the process of addressing its inaccessibility to persons with mobility disabilities, Plaintiffs must be able to present affirmative evidence at trial about the condition of the City in the year 2010, rather than at much earlier points in time in 2009 and 2008. Thus, Plaintiffs have not delayed in noticing the present site inspections. To the contrary, Plaintiffs' decision to notice site inspections in early 2010 is deliberate and driven by Defendants' position that Plaintiffs' claims are moot and that injunctive relief is therefore improper. Indeed, when Plaintiffs' counsel asked Defendants' counsel, Mr. Emery, during the meet and confer process prior to the instant motion whether Defendants would stipulate that Plaintiffs' prior site inspections were representative of the current accessibility of the City, Defendants refused to do so. Hugh Decl. ¶23, Exh. J. Of course, if the City had been willing to stipulate that Plaintiffs' prior inspections were representative of current conditions, there would have been no need for the present round of inspections.

Since the primary relief sought by Plaintiffs is injunctive relief, it is important for Plaintiffs to show that the City has maintained its pattern of denying access to persons with mobility disabilities by means of physical barriers to its programs, services and activities right up through a date as close to trial as possible. Indeed, the Court's pretrial scheduling Order appears to recognize the importance of such discovery, expressly permitting both fact discovery and expert discovery to continue until two months prior to the trial date. Without the opportunity to conduct site inspections of City facilities through the close of discovery and report on the findings from those inspections through expert reports, Plaintiffs are hindered in their ability to present evidence at trial of the need for injunctive relief.

**3. Plaintiffs' Site Inspections Are Representative And Are Comprised Of A Significant But Relatively Small Subset Of The City's Facilities**

As discussed above, Plaintiffs' noticed site inspections comprise a relatively modest (but representative) sample of the City facilities that its expert contends are accessible to persons with mobility disabilities. Moreover, while Defendants argue that Plaintiffs are conducting needless and duplicative discovery, Plaintiffs have in truth taken rational steps to limit the scope of site inspections being undertaken in this matter. For example, Plaintiffs have not chosen to inspect all of the parks, recreation and cultural facilities that house the City's programs, services and activities. Rather, Plaintiffs have selected a random sample of the City's parks and recreation facilities for inspection. As detailed in the accompanying Declaration of Amanda Hugh filed herewith, Plaintiffs are only inspecting 41 out of 146 park facilities that Mr. Hecker contends are accessible. Hugh Decl. ¶¶ 7-8, 11. As a result of Plaintiffs' decision in this regard, the noticed site inspections comprise only a fraction of the City's facilities, and the burden of these inspections on the City has been minimized to the extent feasible.

**4. Plaintiffs' Site Inspections Are Not Unduly Burdensome**

Defendants' claim that these site inspections are unduly burdensome is not supported by the record before this Court. As Defendants admit, during 2008 and 2009 Plaintiffs noticed a number of physical site inspections of Defendants' public facilities, including sidewalks, curb ramps and potential curb ramp locations, parks and recreation-related facilities, swimming pools, libraries, and other public facilities. All of these inspections were properly noticed under Rule 34, and Defendants

were well aware of the time and location of the sites to be inspected. Although it was entitled to do so, Defendants have never attended these site inspections other than to provide personnel to open locked facilities or portions of facilities and make those areas available to the inspectors. Defendants have never previously objected that unlocking City facilities to permit these site inspections imposes any significant burden, nor could it, given that these are public spaces and the site inspections are noticed for and take place during regular business hours. Accordingly, Defendants cannot be heard to raise such an objection now. Further, Defendants have and cannot cite any legal authority to support their contention that disability access site inspections—which involve only percipient observations and no complex or destructive testing—impose any burden on the party whose premises are inspected.

**C. UNDER APPLICABLE LAW PLAINTIFFS' SITE INSPECTIONS ARE PERMISSIBLE FOR THE ADDITIONAL REASON THEY ARE NECESSARY TO REBUT THE FAR-REACHING EXPERT OPINIONS CONTAINED IN THE EXPERT REPORT OF DEFENDANTS' ACCESS EXPERT MR. HECKER**

It is well-settled that pursuant to Federal Rule of Civil Procedure 26 a party has the right to conduct discovery and prepare analyses necessary to prepare a rebuttal report that addresses the opinions stated in the opposing party's Rule 26 expert report. *See, e.g., Park West Radiology CareCore Nat. LLC*, ___F.Supp.2d ___, 2009 WL 4277106, *6 (S.D.N.Y. Nov. 19, 2009) (permitting rebuttal report because "new methodologies used by Maness in this second report were for the purpose of rebutting or critiquing the opinions of Defendants' expert witness"); *Long Term Capital Holdings v. United States*, 2003 WL 21518555, at *2 (D. Conn. May 15, 2003) ("An expert rebuttal report does exactly what it says: it rebuts, in the form of a complete statement of all of the opinions expressed by the author, the report of the opposing party's expert."); *see also, U.S. v. Chrzanowski*, 502 F.2d 573, 577 (3d Cir. 1974) ("The proper function and purpose of rebuttal testimony is to explain, repel, counteract or disprove the evidence of the adverse party.").

It is also well-settled that a rebuttal report is permissible if it directly addresses "the same subject matter" which the opposing party's expert has opined about in his or her opening expert report. *See, e.g., City of Gary v. Shafer*, 2009 WL 1370997, * 3 (N.D. Ind. May 13, 2009) ("[F]or Mr. Vandeven's Rebuttal Expert Report to be admissible under Rule 26, it must 'contradict or rebut evidence on the same subject matter' identified by Mr. Glanders' expert reports."); *MMI Realty*

*Services, Inc. v. Westchester Surplus Lines Insurances Co.*, 2009 WL 649894, * 2 (D. Haw. March 10, 2009) ("Under this rule [Rule 26(a)(2)(C)(ii)], Holland is free to support his opinions with evidence not cited in Westchester's reports so long as he rebuts the 'same subject matter' identified in those reports. [citing Fed.R.Civ.P. 26(a)(2)(C)(ii)].').[3]

Courts have expressly rejected the argument advanced by Defendants herein, *i.e.*, that all potentially relevant data and opinions must be included within the opening expert report, and that it is not permissible for an expert to do further work to rebut the other side's expert reports. For example, in *City of Gary v. Shafer*, *supra*, the court held that new opinions and data that were considered in an expert's rebuttal report were admissible because they addressed the "same subject matter" contained in the opposing expert's report. The court held:

> Turning to the second opinion, the Court concludes that this also constitutes proper rebuttal. Mr. Glanders concluded that illegal dumping at the Property contributed to lead contamination. In an attempt to rebut this opinion, Mr. Vandeven opined that, based on a

---

[3] Defendants' cases are either not on point in that they do not address the appropriate scope of rebuttal reports, or have no application because they address situations in which a party simply failed to comply with either the opening or rebuttal deadline for expert reports. In fact, in several of Defendants' cases, the party attempted to submit a supplemental expert report *after the discovery and/or summary judgment deadlines set in the court's scheduling order, and were simply untimely --exactly the opposite of the facts presented herein.* For example, in *Leviton Manufacturing Co., Inc. v. Nicor, Inc.*, 245 F.R.D. 524, 527, 529 (D.N.M. 2007) (refusing to consider supplemental expert declaration filed at the summary judgment stage because the party sought to file same almost nine months after the original deadline for opening expert reports, and six months after its response to the defendant's summary judgment motion was due); produce the report over six months after did not meet the scheduling order for the case with respect to ); *Beller v. United States*, 221 F.R.D. 696, 700 (D.N.M. 2003) (striking supplemental expert report because "In this case, Dr. Grant's supplemental report was submitted long after the deadline imposed by the Court and after discovery was closed"); *Akeva L.L.C. v. Mizuno Corp*., 212 F.R.D. 306, 308 (M.D. N.C. 2002) (rebuttal expert report and discovery deadlines closed on November 15, 2002, but party attempted to disclose a "supplemental report" including new opinions and after further testing to be conducted on November 21, 2002).

Similarly, in contrast to the circumstances presented herein, the following cases relied upon by Defendants do not involve rebuttal reports that were targeted to address "the same subject matter" that was opined upon in the opposing expert's report, but instead involved supplemental reports or declarations: *Guidance Endodontics, LLC v. Dentsply International, Inc.*, 2009 WL 3672373 (Sept. 24, 2009) (addressing propriety of late disclosed supplemental report, not rebuttal report); *Gallagher v. Southern Source Packaging*, 568 F.Supp.2d 624, 631 (E.D.N.C. 2008) (same) ( *Palmer v. Asarco Inc.*, 2007 WL 2254343, * 2-3 (N.D. Okla. Aug. 3, 2007) (striking new affidavit that contained "new opinions, facts and testing" that were not addressed in the expert's previously disclosed "original report, rebuttal report, or May 27, 2005" affidavit); *Pacific Information Resources, Inc. v. Musselman*, 2008 WL 2338505, * 1 (N.D. Cal. June 4, 2008) (allowing a "supplemental report" produced after the disclosure of rebuttal reports, and imposing fees and costs award against such late disclosure *but not excluding or striking the late supplemental report*); *Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003) (striking late disclosed, post-discovery cut off expert supplemental report and stating "When the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of the rule is nullified"); *Fritter v. Dafina, Inc.*, 181 F.R.D. 215, 217 (N.D.N.Y. 1998) (disallowing new expert report prepared six months after opening disclosure deadline, not involving scope of rebuttal testimony).

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER
KIROLA, ET AL., V. CITY AND COUNTY OF SAN FRANCISCO, ET AL., CASE NO. 4:07-CV-03685 SBA
10

> review of documents and observations from a personal visit to the Property, revealing no evidence of materials containing lead being left on the Property and soil concentrations of lead on the Property being higher than surrounding sections, dumping was unlikely to be a significant source of lead on the Property. This opinion deals with the same subject matter identified by Mr. Glanders and is a rebuttal opinion under Federal Rule 26(a)(2)(C) (ii).
> …
>
> Further, Defendants argue that Mr. Vandeven relies in his Rebuttal Expert Report on evidence to which he had access prior to his initial report and which should have been included in the initial expert report. However, the Court's inquiry under Rule 26(a)(2)(C)(ii) focuses on whether the opinions expressed in a rebuttal report rebut the "same subject matter" identified in the other party's expert report. "Under this rule, [Mr. Vandeven] is free to support his opinions with evidence not cited in [Mr. Glanders'] reports so long as he rebuts the 'same subject matter' identified in those reports." *MMI Realty Svcs., Inc. v. Westchester Surplus Lines Ins., Co.*, Civ. No. 07-00466 BMK, 2009 WL 649894, at *2 (D.Haw. March 10, 2009). Further, another district court dealing with the same issue has concluded that Rule 26 does not automatically exclude evidence that an expert could have included in his original report as "[s]uch a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing relevant material." *Crowley v. Chait*, 322 F.Supp.2d 530, 551 (D.N.J.2004). … Accordingly, the Court finds that to the extent that Mr. Vandeven relied on documents that he did not rely on in his initial report, and which were not cited by Mr. Glanders' expert reports, because the opinions expressed in the Rebuttal Expert Report dealt with the same subject matter as Mr. Glanders' reports, Mr. Vandeven's Rebuttal Expert Report complies with Rule 26(a)(2)(C)(ii)'s requirements.

*Id*. at * 4-5 (emphasis added). The holdings in the authorities cited above apply with particular force in the case at bar because both fact discovery and expert discovery are still open, and therefore Plaintiffs remain free to collect site inspection data and include it as part of both their expert and non-expert evidentiary showing at trial.

Defendants' disability access expert, Mr. Hecker, states the following opinions in this opening Rule 26 report:

- "[m]y opinion [is] that the City is already in compliance with the program access provisions. My conclusions are supported by the MOD [Mayor's Office on Disability] review of accessibility for existing City facilities and the development of color coded maps which show an equitable dispersal across the City for the accessible facilities that can, as needed, house programs otherwise offered at inaccessible facilities." (p. 29).
- "To demonstrate this key evidence of the City's current compliance with the ADA/504 program access provisions, I will present each map in turn and offer comments on the accessibility shown."
- Identifying 19 of the City's 29 public library facilities as "accessible" and opining that "In addition to showing that the main downtown Library is accessible, this map shows the distribution of library branch facilities throughout the City and

clearly demonstrates an equitable geographic dispersal across the City for the accessible facilities that can, as needed, house programs otherwise offered at inaccessible facilities." (p. 33).

- Identifying 33 of the City's 73 Recreation Centers and Clubhouses as "accessible." (p. 35)
- Identifying 3 of the City's 9 swimming pools as "accessible." (p. 36)
- Identifying 27 of the City's 30 cultural centers, fine arts museums, and large assemblies as "accessible." (p. 30)

Hugh Decl. ¶3, Exh. A (Hecker Report).

In summary, Mr. Hecker opines that all of the facilities listed above are presently "accessible" to persons with mobility disabilities, and that the City is in compliance with the program access requirements of Title II of the ADA and Section 504. In addition, Mr. Hecker opines that many additional sites are "planned/funded" for "accessibility modifications," in an apparent effort to support Defendants' argument that the issues raised in this litigation are moot, or are not appropriate for injunctive relief. *See, e.g.*, Hugh Decl. ¶3, Exh. A (Hecker Report at pp. 30-40.)

Plaintiffs' current round of site inspections will cover a sample of the many locations that Mr. Hecker has identified in his Report, and will include:

- 5 out of 20 athletic facilities identified as being accessible by Mr. Hecker (p. 36).
- 15 out of 76 children's play areas identified as being accessible by Mr. Hecker (p. 37).
- 3 out of 14 community gardens identified as being accessible by Mr. Hecker (p. 37).
- 13 out of 25 of the Golden Gate Park special features and facilities identified as being accessible by Mr. Hecker (p. 40).
- 2 out of 12 special features facilities identified as being accessible by Mr. Hecker (p. 39).

*Id*. at ¶3, Exh. A (Hecker Report).

Plaintiffs' current site inspections also include a number of sites that are not specifically identified as being accessible in Mr. Hecker's report. However, inspections of these sites are directly relevant to rebutting the same subject matter addressed in the Hecker Report because in addition to addressing accessibility at particular sites, the Hecker report also contains sweeping expert opinions regarding disability access in San Francisco more generally. For example, Mr. Hecker opines that

that the City has met its program access duty with respect to exist facilities, *Id*. at ¶3, Exh. A (Hecker Report at p. 29), and that "the current accessibility policies and practices of the City and County of San Francisco comply with Title II of the ADA, as well as the accessibility requirements of Section 504 of the Rehabilitation Act of 1973." *Id*. at ¶3, Exh. A (Hecker Report at p. 13). Again, Mr. Hecker also repeatedly opines that the City has "an equitable geographic dispersal across the City for the accessible facilities that can, as needed, house programs otherwise offered at inaccessible facilities." Plaintiffs' site inspections will provide their experts with data that can be used to rebut Mr. Hecker's broad opinions that the City's facilities are in compliance with the ADA and Section 504 "program access" standard, and that accessible facilities are spread out across the City in an equitable fashion such that persons with mobility disabilities have sufficient access to the City's facilities.

Under applicable case law, Plaintiffs have a right to conduct site inspections and to prepare rebuttal expert reports that directly address Mr. Hecker's claims that these particular sites are "accessible," and his contention that the sites identified in his report "clearly demonstrate an equitable geographic dispersal across the City for the accessible facilities." In fact, it is difficult to understand how Plaintiffs would be able to rebut Mr. Hecker's opinions without conducting at least a sampled inspection and analysis of the specific facilities that he claims provide program access to persons with mobility disabilities. This is precisely what Plaintiffs' current round of site inspections will allow Plaintiffs' experts to do. Accordingly, the site inspections are permissible under both Federal Rules of Civil Procedure 34 and Rule 26, and this Court should permit Plaintiffs to conduct these site inspections and prepare rebuttal reports to address Mr. Hecker's opinions.

**D. DEFENDANTS WILL NOT SUFFER ANY COGNIZABLE PREJUDICE AS A RESULT OF THESE INSPECTIONS**

It is well-settled that a rebuttal report is permissible if the opposing party has the opportunity to conduct discovery regarding the rebuttal report. See *City of Gary v. Shafer*, 2009 WL 1370997 *5 N.D. Ind., 2009); *Finwall v. City of Chicago*, 239 F.R.D. 494, 499-500 (N.D. Ill., 2006). In this case, Defendants have at least two avenues of pursuing discovery regarding Plaintiffs' current site inspections and the data and analysis that will arise therefrom. First, as these site inspections have been properly and timely noticed pursuant to Rule 34, Defendants' experts have the opportunity to

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER
KIROLA, ET AL., V. CITY AND COUNTY OF SAN FRANCISCO, ET AL., CASE NO. 4:07-CV-03685 SBA
13

conduct joint inspections of the sites at issue. Although Defendants have declined to participate in such joint inspections (where both sides would be able to simultaneously assess the data being collected by the other), Plaintiffs have committed that they will provide Defendants with access reports on a rolling basis as they are completed by Plaintiffs' experts. In fact, Plaintiffs will be providing several such site inspection reports to Defendants by January 20, 2010.

Second, Plaintiffs have expressly informed Defendants that they will make all of their experts available for deposition regarding the opinions and data underlying their rebuttal reports.

### E. DEFENDANTS HAVE CANCELLED OR HINDERED SOME OF PLAINTIFFS' SITE INSPECTIONS; ANY SUCH SITE INSPECTIONS SHOULD BE RESCHEDULED

It is well-settled that the mere filing of a motion for a protective order does not function as a stay on a party's discovery obligations. *See, e.g., Grabein v. Jupiterimages Corp.*, 2008 WL 2704451 *11, n.10 (S.D. Fla., 2008); *Versage v. Marriott Intern., Inc.*, 2006 WL 3614921 *7 (M.D. Fla., 2006); *Creative Solutions Group, Inc. v. Penzer Corp.*, 199 F.R.D. 443, 444 (D. Mass. 2001). Notwithstanding the foregoing, Defendants have hindered Plaintiffs' site inspections herein during the pendency of their Motion by failing and refusing to unlock facilities that were the proper subject of inspection. On some occasions, City employees have told Plaintiffs' inspectors that the inspection was "cancelled." Any such inspections should be rescheduled, and Defendants should bear responsibility for the cost of those inspections.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that: (a) this Court deny Defendants' Motion for a Protective Order; and (b) that this Court permit Plaintiffs to reschedule any inspections that have been cancelled or hindered by Defendants' conduct.

Dated: January 15, 2010

Respectfully Submitted,

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Guy B. Wallace
Attorneys for Plaintiffs