UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IVANA KIROLA, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No:  C 07-03685 SBA<br><br>**ORDER ON THE PARTIES'<br>MOTIONS IN LIMINE AND<br>EVIDENTIARY OBJECTIONS** |

This is a certified class action lawsuit alleging that the City and County of San Francisco ("the City") has failed to comply with the Americans with Disabilities Act and parallel state non-discrimination laws.

Presently before the Court are Plaintiffs' Motions in Limine  (Docket No. 361) and the City and County of San Francisco's Motions in Limine Nos. 1 to 8 (Docket No. 359).  Also before the Court are the City's Objections to Plaintiffs' Designation of Discovery Excerpts (Docket No. 325), Plaintiffs' Revised Objections to Defendants' Exhibits (Docket No. 381), and the City's Objections to Plaintiffs' Revised Exhibit List (Docket No. 382).

Having read and considered the papers submitted and being fully informed, the Court rules on the motions and objections as set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

**I.      PLAINTIFFS' MOTIONS IN LIMINE**

      **A.      To Exclude Testimony from Non-Retained Experts Who Were Not Identified Pursuant to Rule 26 (MIL No. 1)**

Plaintiffs seek to exclude or limit the testimony of five city employees identified by the City on its witness list: Kevin Jensen, Carla Johnson, Susan Mizner, John Paul Scott, and Jim Whipple.  These employees were not previously disclosed as expert witnesses as required by Federal Rule of Civil Procedure 26(a)(2)(A).  The parties differ as to the characterization of the testimony that these witnesses are expected to offer.

The City asserts that, although the identified witnesses are experts in disability access requirements, they will offer only percipient testimony.  As staff in the Mayor's Office on Disability ("MOD") and the Department of Public Works ("DPW"), these employees are directly responsible for implementing the City's policies, procedures and programs to ensure accessibility.  Duties include review of proposed projects, post construction inspection, and ADA certification.

Plaintiffs assert that the employees must be barred from proffering "backdoor expert" opinion about the disability access requirements of federal and state law, and whether programs and facilities comply with those requirements.  Plaintiffs further contend that the employees performed "disability access site inspections" by measuring conditions at particular facilities to rebut specific violations identified by Plaintiffs' experts.  The City had previously argued, and prompted the magistrate court to hold, that disability access site inspections "will lead to admissible evidence only if they are presented through an expert report."

The City responds that the "in-house access experts" will not directly offer expert testimony, but rather their findings from the site inspections are incorporated into the expert opinion of a disclosed expert, Larry Wood.  Mr. Wood relied "in part" on the work of the identified employees, and explained in his report the reasons he considered that work reliable.

Plaintiffs claim to be prejudiced by nondisclosure, in that the close of discovery prevents further deposition or request for drafts, field notes, and communications relating to the site inspection reports.  The City notes that these witnesses were offered for deposition and

1  their notes and drafts were produced.

2          As indicated, the City has represented that it intends to call these witnesses only as

3  percipient witnesses.  Moreover, this motion is premature.  Should these witness attempt to

4  offer expert opinion, that would be the appropriate time for Plaintiffs to present their

5  objections.  Accordingly, Plaintiffs' Motion in Limine No. 1 is DENIED as MOOT.[1]

6      **B.      To Exclude All or Portions of the Rebuttal Report of the City's Expert**

7          **Larry Wood  (MIL No. 2)**

8          Plaintiffs seek to exclude all or significant portions of the Rebuttal Report of Larry

9  Wood, including exhibits and testimony.  Plaintiffs argue that the Report lacks sufficient

10  indicia of reliability, is not based on reliable facts or data, and is a conduit for impermissible

11  opinion testimony by lay employees.

12          Plaintiffs seek to exclude Mr. Wood's itemized responses to Plaintiffs' experts' site

13  inspection reports because the itemized responses were not prepared by Mr. Wood or his staff.

14  The itemized responses were prepared entirely by the City's employees, who are not disclosed

15  experts.  The City rebuts by arguing that their in-house employees work product is reliable and

16  meets professional standards in the field because the employees who review architectural plans

17  an inspection construction projects for access compliance are experts in the field.

18          Plaintiffs also contend that the Report should be excluded because Mr. Wood's

19  conclusions are based on the itemized responses prepared by non-expert City employees, who

20  have an interest in the litigation and that Mr. Wood did not supervise or provide any guidance

21  to the City employees as to the methodology applied.  The City responds arguing that Mr.

22  Wood's conclusions are based on reliable data and facts because the City employees' detailed

23  site inspections are reliable.  The City, citing to United States v. Chang, 207 F.3d 1169, 1173

24  (9th Cir. 2000), contends that if testimony is otherwise admissible under Federal Rule of

25  Evidence 702, it is not precluded simply because of a relationship between the witness and one

26  of the parties.  The fact that the itemized responses are based on inspections conducted by the

27  _____

28  [1] Had the parties meaningfully met and conferred before filing their motions in limine, that would have obviated the need for Plaintiffs to have filed this motion in limine.

City's employees does not mean they are unreliable.  Further, Defendant points out that any potential bias of an employee-expert can be explored on cross-examination.

Finally, Plaintiffs argue that even though Mr. Wood testified that he relied on his own site visits for his conclusions, the testimony is not reliable or trustworthy. From his own site visits, he produced no written results or findings, did not take measurements of every item or site at issue, and did not follow his own protocol for conducting site inspections.  Plaintiffs contend there are insufficient facts and data indicating reliability and that his conclusions are not based on reliable methods used by experts in the field.  The City argues it is appropriate for Mr. Wood to rely on the reliable work of others for his opinions.  The City contends that Plaintiffs are disingenuous because their own testifying experts relied extensively on others' work.

The City is correct that expert opinion testimony does not need to be based on first-hand knowledge of the facts.  See United States v. Conn, 297 F.3d 548, 554 (7th Cir. 2002). Moreover, the City is correct that testimony should not be precluded solely because of a relationship between the witness and one of the parties.  See Hingson v. Pacific Southwest Airlines, 743 F.2d 1408, 1412 (9th Cir. 1984) (expert testimony of former employee of defendant – offered in support of plaintiff's case-in-chief – was admissible).  Finally, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." Primrose Operating Co. v. National American Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004).  Accordingly, Plaintiffs' Motion in Limine No. 2 is DENIED.

## C.  To Exclude Any Data, Testimony, or Information Not Timely Disclosed Pursuant to Rule 26 (MIL No. 3)

Plaintiffs argue that the City failed to comply with Federal Rules of Civil Procedure 26(a) and (e)(1) and thus, pursuant to Federal Rule of Civil Procedure 37(c)(1), the City should be precluded from using undisclosed documents or witnesses at trial, unless the failure is substantially justified or harmless.  Plaintiffs contend that the City has only provided two Rule 26 disclosure statements, one of which was on the eve of discovery cut-off.  However, the

1  City's list of proposed witnesses includes 6 individuals who are not previously disclosed.

2  Also, 2 witnesses were not disclosed until the close of discovery.  Plaintiffs contend these

3  witnesses should not be permitted.

4      Witnesses.   The City argues that 6 witnesses (Howard Chabner; Christina Rubke;

5  Roland Wong; Jennifer Walsh; Bruce Oka; and Ruth Nunez) that were not disclosed are

6  dissident class members.  The City provides information on Mr. Chabner, stating that he is

7  Witness No. 45 on Plaintiffs' witness list, so there is no prejudice in permitting him.

8      With respect to the 2 witnesses that were disclosed at the close of discovery, Plaintiffs

9  argue that they were deprived of any opportunity to conduct discovery concerning these

10  witnesses.  The City argues that these witnesses (Dr. Mitch Katz and Anne Hinton) should be

11  allowed at trial because both offer important testimony related to the City's current limited

12  resources for services benefiting persons with disabilities.  The City represent that these

13  witnesses were offered for deposition, but Plaintiffs declined to depose them.

14      Documents.   Plaintiffs move to preclude documents that "were never previously

15  identified or produced, were identified or produced on an untimely basis, or that were produced

16  only after the close of discovery."  The City contends that Plaintiffs failed to diligently pursue

17  necessary discovery until the eleventh hour.  The City was inundated with demands for

18  tremendous amounts of discovery.  The City argues that its untimely documents are the result

19  plaintiffs' large and untimely requests.  Additionally, some documents were produced after the

20  discovery cut-off because Plaintiffs' counsel requested them or they were appropriate

21  supplementations.  The City argues that to grant this motion would be unfair and prejudicial to

22  them.

23      Plaintiffs further object to the City's supplemental disclosure statement, which included

24  for the first time, "all documents publicly available on the websites maintained by the Mayor's

25  office of Disability and 11 other City departments."  Plaintiffs maintain this description is too

26  general given the size and complexity of the websites and thus should be precluded from trial.

27  The City contends that throughout discovery it has directed Plaintiffs to the information

28

1    available on the websites.  The information is continually updated and thus appropriate for

2    supplementation.

3        In view of the above, Plaintiffs' Motion in Limine No. 3 is GRANTED with respect to

4    Howard Chabner; Christina Rubke; Roland Wong; Jennifer Walsh; Bruce Oka; and Ruth

5    Nunez.  The City has not shown that its failure to disclose these individuals was "substantially

6    justified or harmless," as required by Rule 37(c)(1).

7        Furthermore, this is DENIED with respect to Dr. Mitch Katz and Anne Hinton, as the

8    City represents that it offered them for deposition. Moreover, this motion is DENIED with

9    respect to documents that were produced before the close of discovery, and to documents that

10   were produced after the close of discovery (and those identified in the supplemental disclosure

11   statement).   In view of the scope of the issues in this case, late production by the City was

12   justified.  Also, the website materials were readily available from the start of this action. Lastly,

13   this motion is DENIED as MOOT with respect to documents that were never produced by the

14   City.  In the accompanying Hugh Declaration in support of Plaintiffs' motion, Plaintiffs have

15   failed to actually identify documents that were never produced.

16       **D.     To Exclude Evidence Regarding "Technical" or "De Minimis" Violations,**

17       **or "No Impact on Usability" (MIL No. 4)**

18       Plaintiffs move to preclude the City from introducing evidence stating that the access

19   barriers and violations in its facilities are "technical" or "de minimis," or that they have little or

20   no impact on usability.  Plaintiffs argue that there is no such defense in the ADA, the

21   Rehabilitation Act, any relevant California Statutes and regulations accompanying these laws.

22   Further, citing to Long v. Coast Resorts, Inc., 267 F.3d 918 (9th Cir. 2001), Plaintiffs contend

23   that the 9th Circuit has held that minor or technical deviations from the ADAAG in new

24   construction or alterations are violations of the ADA.  Plaintiffs state that case law supports the

25   position that courts should not create defenses that do not exist in the plain language of the

26   statute.

27       The City argues that Plaintiffs' reliance on Long is misplaced.  The City contends that

28   the ADAAG expressly authorizes minor departures from strict dimensional requirements, so

1    long as the actual dimensions are still usable.  The City attempts to distinguish the facts of

2    Long from the instant case.  First, Long dealt with an individual action by hotel guests

3    asserting pervasive design flaws in a single building.  Here, the suit is a class action

4    challenging policies and city-wide practices.  Additionally, whereas Long dealt with a new

5    construction after the effective date of the ADAAG, here the case involves existing facilities

6    and requires the Court to assess "program access," which was not an element in Long.  Finally,

7    the City contends that whereas in Long the design defect was systematic and thus denied access

8    to each of the hotel's rooms, the instant case only deals with minor dimensional departures.

9         Plaintiffs argue in the alternative that if such a defense exists, the City does not provide

10   any foundation to show that they can reliably determine what defects are "technical" or "de

11   minimis."  Plaintiffs maintain that the City has no definition of "accessible," they have not

12   conducted any anthropometric studies, and have not proffered any expert testimony in that

13   area.  Plaintiffs argue that the City has no reliable means of determining whether a deviation

14   from the ADAAG or California's Title 24 standards have little or no impact on usability.  Thus,

15   under Daubert, the City's expert Mr. Wood's testimony on this issue should be excluded.

16        Plaintiffs' Motion in Limine No. 4 is DENIED as premature.  If this evidence is offered

17   with respect to new construction, an evidentiary objection can be made at that time based on

18   relevance.  With respect to existing facilities, the question is whether the programs and

19   facilities are accessible when viewed in their entirety, so this evidence could be relevant to that

20   issue.  See 28 C.F.R. § 35.150(a) (for an "existing facility," ADA regulations require that a

21   public entity must "operate each service, program, or activity so that the service, program or

22   activity, when viewed in its entirety, is readily accessible to and usable by individuals with

23   disabilities.").

24        **E.      To Exclude Witnesses from Observing Testimony of Other Witnesses (MIL**

25              **No. 5)**

26         Plaintiffs request an order under Federal Rule of Evidence 651 excluding all witnesses

27   from the courtroom during testimony of other witnesses, including the City's expert witnesses

28   William Hecker and Larry Wood because they are "fact witnesses" in view of their interviews

with City employees.  The City agrees generally that fact witnesses should be excluded from the courtroom.  However, the parties disagree as to the number of City representatives that may remain in the courtroom under Federal Rule of Evidence 651(2)'s exception for "an officer or employee of a party which is not a natural person designated as its representative by its attorney."  Plaintiffs argue only one City representative is allowed, while the City argues that multiple City representatives are allowed.  The City asks that four representatives be allowed, because each represents a different department that is implicated by this suit (the Mayor's Office on Disability, Public Works, Recreation and Parks, and the Libraries).  The City also argues that multiple of the City's representatives should be allowed under Federal Rule of Evidence 651(3), which allows the presence of "a person whose presence is shown by a party to be essential to the presentation of the party's cause."  The City also argues that its experts should not be excluded because they will contradict the opinions of the Plaintiffs' experts, and opine on the adequacy of the City's policies as introduced by other witnesses.

Plaintiffs request that if the City invokes one of Rule 615's exceptions, the Court require the City to make its designation prior to the start of trial.

Plaintiffs' Motion in Limine No. 5 is GRANTED to the extent that fact witnesses shall be excluded from the courtroom until they called and are excused.  This motion is DENIED to the extent that the City is allowed to have present in the courtroom during the entire trial four representatives (one each from the Mayor's Office on Disability, Public Works, Recreation and Parks, and the Libraries).  However, this motion is GRATED to the extent that the City must designate the four City representatives before the start of trial.  Also, this motion is DENIED with respect to exclusion of the City's experts.  Plaintiffs have not justified exclusion of experts in this case.

**F.     To Exclude Evidence of Any "Undue Burden" Prior to June 25, 2009 (MIL No. 6)**

Plaintiffs request that the Court exclude all evidence the City may attempt to introduce regarding undue financial burden for the period prior to June 25, 2009.  Plaintiffs argue that the City failed to comply with Section 35.150(a)(3), and equivalent sections within Title II

1    regulations, by never preparing a written statement of undue burden prior to June 25, 2009.

2    Additionally, Plaintiffs state that City Controller Ben Rosenfield testified that his Written

3    Statement of Undue Burden dated June 25, 2009 did not apply prior to that date.  Plaintiffs cite

4    two district court cases from other districts for the proposition that efforts to assert the

5    affirmative defense of undue burden should be excluded where a public entity has failed to

6    proffer evidence of a contemporaneous written statement of undue burden.  See Ewbank v.

7    Gallatin County, 2006 WL 197076, at *8 (E.D. Ky. 2006); Engle v. Gallas, 1994 WL

8    263347 at *2 (E.D. Pa. 1994).

9         The City disagrees with the Plaintiffs' interpretation of the law.  The City argues that

10   under the ADA, public entities must make "reasonable modifications" when necessary to avoid

11   discrimination against disabled persons.  In determining what is reasonable, courts should

12   consider not only the cost of the modification, but also the range of services provided to others

13   with disabilities.  Additionally, the City maintains that the written statement requirement only

14   applies where the public entity denies a specific proposed action.  This is contrary to Plaintiffs'

15   reading that a written statement explaining how the accommodation would create an undue

16   burden must be prepared prior to any particular proposed accommodation.  The City argues

17   that the cases Plaintiffs cite do not support this interpretation, as one involved a specific

18   renovation plan to bring a building into compliance with the ADA, and the second did not

19   actually hold that absence of a written undue burden analysis made the defense unavailable.

20        The City also argues that it should be permitted to introduce evidence showing that the

21   proposed modifications would have a severely negative impact on the city's ability to meet the

22   needs of individuals with disabilities.  The City cites to Sanchez v. Johnson, 416 F.3d 1051,

23   1067-68 (9th Cir. 2005) where the Ninth Circuit found that the reasonableness of the state's

24   program for disabled individuals must consider budgetary constraints and the demands of other

25   services provided by the State.

26        Plaintiffs' Motion in Limine No. 6 is DENIED.  The authority cited by the City supports

27   the conclusion that this evidence is relevant to the "reasonable accommodations" analysis, and

28   that a written statement is only required when a public entity denies a specific proposed action.

**G.     To Exclude Evidence Regarding "Reallocation of Public Resources" and Evidence Regarding Non-Accessible Related Programs and Services for Persons with Mobility Disabilities  (MIL No. 7)**

The City is expected to proffer evidence about non-physical access related programs, services, and activities provided to persons with mobility disabilities.  Plaintiffs exclusively challenge the City's failure to provide *physical* access to persons with disabilities in the City's pedestrian rights of way, parks, swimming pools, and libraries, as well as the City's failure to undertake construction and alteration in a manner that complies with the disability access *design standards*.  Thus, Plaintiffs contend that evidence of non-physical "program access" is irrelevant.  For example, Plaintiffs argue that evidence of an aquatics program for persons with disabilities is irrelevant to the claim that the facility lacks accessible showers and restrooms.

Plaintiffs note the broad scope of facilities to be addressed during trial.  Thus, Plaintiffs request that the Court exclude evidence that does not pertain to the pedestrian rights of way, parks, pools, and libraries, or to violations of construction and alteration requirements. Evidence of non-physical access related programs should be excluded as irrelevant under Federal Rule of Evidence 402, and as an undue waste of trial time under Federal Rule of Evidence 403.

Defendants respond that such evidence should not be excluded for three reasons.  First, 28 C.F.R. § 35.150(b) provides that a public entity can provide "program access" through means that do not involve actual physical access.  Second, 28 C.F.R. § 31.150(a) provides that accessibility must be determined by viewing each service, program, or activity "in its entirety." A single inaccessible feature does not render an entire facility or program inaccessible.  Third, the City raises an affirmative defense under ADA regulations, claiming that the expenditure of additional funds on disability access improvements would impose an undue financial burden. Thus, evidence of the range of programs and services offered by the City, as well as the costs associate with those programs, is relevant to the City's defense.

In view of the above, Plaintiffs' Motion in Limine No. 7 is DENIED.  This evidence is relevant to the "program access" issue and the question of accessibility "in its entirety."

**H.    To Exclude Evidence Regarding Compliance Efforts of Other Cities (MIL No. 8)**

The City's expert William Hecker is expected to proffer an expert opinion as to whether other cities and public entities have brought their pedestrian right of way into compliance with Title II of the ADA.  Plaintiffs seek to exclude that testimony under Federal Rule of Evidence 402, on the ground that it is irrelevant to the determination of whether The City of San Francisco has complied with its legal obligation to remove disability access barriers in its pedestrian right of way.  Plaintiffs argue that the City cannot excuse its unlawful conduct by pointing to other cities that similarly failed to meet their legal obligations.

The City responds that this testimony should be allowed to demonstrate the "prevailing standards and practices for compliance with Title II of the ADA."  In essence, the City argues that Title II sets forth legal obligations, but there is no mandated approach to ensure compliance.  The City contends that such evidence is directly relevant to whether "San Francisco's approach is reasonable."

Plaintiffs have not established that this testimony is irrelevant to the question of the City's compliance.  Accordingly, Plaintiffs' Motion in Limine No. 8 is DENIED.

**II.    THE CITY'S MOTIONS IN LIMINE**

**A.    To Exclude Improper "Rebuttal" Expert Opinion Evidence, Including Late-Disclosed Site Inspection Reports and Statistical Analysis Based on Those Late Reports  (MIL No. 1)**

The City's first motion in limine relates to the rebuttal reports that Plaintiffs served on February 16, 2010, pursuant to Magistrate Judge Chen's order on the City's motion for a protective order to prevent such rebuttal reports.  The City again asserts, as it did before Judge Chen, that the reports are not proper rebuttal testimony.

On June 15, 2010, the City served plaintiffs with rebuttal expert disclosures, presenting analyses of 50 of the 65 facilities included in plaintiffs' February 16, 2010 reports.  On July 21 2010, the Court granted the City's Administrative Motion to Authorize Rebuttal Expert Disclosure, seeking authorization for its June 15, 2010 disclosure.

Because the City has had the opportunity to rebut Plaintiffs' February 16, 2010 reports, the City's Motion in Limine No. 1 is DENIED.

**B.      To Exclude Opinions of Plaintiffs' Expert Paul Regan (MIL No. 2)**

The City seeks to exclude five opinions proffered by Paul Regan, the Plaintiffs' financial expert, challenging the Written Statement of Undue Financial Hardship prepared by the City's Controller, Ben Rosenfield.

First, Mr. Regan opines that the Controller's "conclusion, and the Statement provided to support it, materially fail to comply with the proof requirements of 28 C.F.R. § 35.150." Defendants assert that an opinion on a question of law is not admissible.  Plaintiffs respond that the gist of Mr. Regan's opinion goes to the "ultimate facts," including the fact that the City is able to spend will over the alleged limit on disability access improvements.

Second, Mr. Regan opines that the Controller's Statement is inadequate because it fails to "identify and quantify the incremental cost" that would be incurred to make the City's public facilities fully accessible.  When asked how he reached this opinion, Mr. Regan testified at deposition, "I think from my perspective, it's just a logical path."  The City argues expert testimony is only admissible if based on "scientific, technical, or other specialized knowledge that will assist the trier of fact."  Fed. R. Ev. 702.  Plaintiffs respond that in Mr. Regan's field, the accepted approach to determine whether a public entity can fund a program is to 1) determine the cost of the program, and 2) determine whether resources are available in that amount.

Third, Mr. Regan opines that the Controller's Statement is "not reasonable" because it is based on a three-year budget analysis rather than seven to ten years during which the economy normalizes.  Mr. Regan offered a variety of bases for his belief that the San Francisco economy would normalize over the greater period, touching on changes in benefits packages, retirement age, real estate prices, the commercial market, government efficiency, and economic stability. The City argues that Mr. Regan is an accountant, not an economist, and therefore this opinion is not based on any expertise.  Plaintiffs respond that while Mr. Regan did discuss larger economic factors, he stressed that the City's own financial statements predict these revenue

improvements over the next few years.

Fourth, Mr. Regan opines that the Controller's Statement is inadequate because it ignores certain specialized funds (e.g. the Open Space Fund, the Library Preservation Fund, etc.) that could finance access-related improvements.  Mr. Regan testified at deposition that he would "expect that there are restrictions" on the use of those funds, but that his analysis did not extend into the availability of fund transfers for ADA improvements.  The City argues that Mr. Regan lacks the requisite factual basis to support his conclusion.  Plaintiffs respond that Mr. Regan did assess the types of funds that the City already uses, and determined on that basis that the City has funds at its disposal.

Fifth, Mr. Regan opines that the Controller's Statement fails to consider certain of the City's financial strengths, such as its cash on hand, total and net assets, and revenue from the federal and state government.  Mr. Regan testified at deposition that his analysis did not extend into how much of those assets were available for disability access improvements.  The City argues that this opinion is therefore not based on technical expertise.  Plaintiffs respond that Mr. Regan's testimony goes to the overall financial strength of the City, and this its ability to spend more money on disability access.  While the City may disagree with Mr. Regan's assessment of the City's financial condition, that goes to the weight rather than the admissibility of the opinion.

Plaintiffs' overall response is essentially threefold.  First, Plaintiffs note that the City's primary defense is one of undue financial burden, and that defense is supported primarily by Mr. Rosenfield's Statement.  The City seeks to exclude the expert opinion of Mr. Regan to silence the Plaintiffs' rebuttal.  Second, Mr. Regan is in fact well qualified to proffer these opinions.  His opinions are within his area of expertise as a certified public and forensic accountant.  Mr. Regan followed the accepted methodology of his profession, and his conclusions can be tested against those standards.  As such, his testimony satisfies the applicable standards for admissibility.  Third, Plaintiffs assert that the City "misstates or grossly distorts" Mr. Regan's opinions, and therefore the objections are largely baseless.

This motion attacks the soundness of the opinion and the adequacy of the methodology

1    used, which goes to the weight of the testimony, not its admissibly.  See Int'l Adhesive Coating

2    Co. v. Bolton Emerson Int'l, 851 F.2d 540, 545 (1st Cir. 1988) ("When the factual

3    underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility

4    of the testimony-a question to be resolved by the jury.").  Accordingly, the City's Motion in

5    Limine No. 2 is DENIED.

6        C.    To Exclude the Use at Trial or Admission into Evidence of Plaintiffs'

7              Written Expert Disclosures (MIL No. 3)

8        The City requests that all experts present their opinions through live testimony, and

9    seeks to exclude all written expert disclosures.  The City argues that courts nationwide have

10   held that written expert disclosures are inadmissible under the hearsay rule and or Federal Rule

11   of Evidence 403.  See, e.g., Sommerfield v. City of Chicago, 254 F.R.D. 317, 329 (N.D. Ill.

12   2008) ("The expert does not testify to her report verbatim, and as to those aspects about which

13   there has been no testimony or testimony in a different form the hearsay rule should operate in

14   full vigor.  To the extent that the expert's report merely repeats the expert's trial testimony, the

15   report is 'needlessly cumulative' and thus should be excluded under Rule 403.")  Moreover, the

16   City claims that it would be prejudiced by the introduction of written disclosures, given the

17   limited time for trial and the voluminous opinions to be rebutted.

18       Plaintiffs respond that there is no blanket rule against the use or admission into evidence

19   of written expert reports.  See, e.g., NAACP v. A.A. Arms, Inc., 2003 WL 2003750 at *1 (E.D.

20   N.Y. 2003)("As a general matter the admission of written export reports into evidence when

21   the expert has testified orally at trial is not redundant.")  The reports and exhibits to the reports

22   will serve as a useful reference and aid in the evaluation of the testimony that the experts will

23   present at trial.

24       In its reply, the City notes that Plaintiffs cite a single, unpublished order for dicta, and

25   that cases citing NAACP have disagreed with its dicta.  The US Judicial Conference

26   Committee has recognized that "expert reports themselves are not admissible."  Thakore v.

27   Universal Mach. Co. of Pottstown, Inc., 670 F. Supp. 2d 705, 724 (N.D. Ill. 2009).

28       The City is correct that the expert reports would violate the hearsay rule to the extent

1  that live testimony is not also offered on the issues, and would be redundant if such testimony

2  were offered.  Therefore, the City's Motion in Limine No. 3 is GRANTED.

3      **D.**       **To Exclude Plaintiffs' Use of Deposition Transcript Excerpts in Lieu of Live**

4                   **Testimony or, Alternatively, for Order Granting City Additional Time at**

5                   **Trial to Respond (MIL No. 4)**

6      The City seeks to exclude, or alternatively, moves for additional trial time to respond to

7  deposition excerpts.  Plaintiffs have designated approximately 2500 pages from 29 separate

8  deposition transcripts.  The City argues that it would be prejudiced by the presentation of

9  voluminous deposition excerpts at trial.  The City also argues that this undermines the

10  instructions given by the Court on June 14, 2010, prohibiting the submission of direct

11  testimony by way of written examination.

12      Plaintiffs note that unlike written narrative testimony on direct, the use of depositions at

13  trial is specifically authorized by Federal Rule of Civil Procedure 32.  Under Rule 32(a)(2) &

14  (3), such use is authorized for the purpose of impeachment and where the deponent is a party or

15  the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4).  As a

16  threshold matter, Plaintiffs do not expect to submit all of the designated deposition excerpts at

17  trial, but rather to develop succinct stipulated statements or summaries after meeting and

18  conferring with the City.  To the extent that the parties are not able to agree upon stipulations,

19  all of the deponents at issue are officers, directors or managing agents of the City and or were

20  designated witnesses under Rule 30(b)(6), and therefore their testimony comes within Rule

21  32(a)(3).  The deposition excerpts are submitted for impeachment and other purposes under

22  Rule 32.

23      Moreover, Plaintiff argues that the City will not be prejudiced by the use of deposition

24  excerpts at trial.  The City can rebut the testimony of its own witnesses by counter

25  designations, and or object to specific testimony at trial under the rules of evidence.  If the

26  Court enters the order sought on this motion, Plaintiffs will call and elicit testimony from a

27  number of City employees as part of the case in chief merely to establish facts already

28  established through deposition.  This could consume Court time unnecessarily.  To the extent

that the motion permits reading portions of transcripts into evidence, that too would waste Court time.

The City's Motion in Limine No. 4 is DENIED as premature.  Whether to allow such evidence would depend on the purpose for which it is being offered.  Deposition testimony will only be allowed for admissible purposes where an appropriate foundation has been laid.

### E.    To Exclude Evidence Related to Access Features That Do Not Benefit Class Members (MIL No. 5)

The City seeks to exclude evidence regarding "protruding objects," arguing that the plaintiff class lacks standing to challenge such features.  Harris v. Costco Wholesale Corp., 389 F. Supp. 2d 1244, 1250-1251 (S.D. Cal. 2005).  In other words, these objects create access barriers for the visually impaired, not the mobility impaired.  Plaintiffs respond that evidence of protruding barriers should be allowed because they are physical barriers to access.

The City's Motion in Limine No. 5 is DENIED.  The relevance of "protruding objects" can be determined on a case-by-case basis at trial.

### F.    To Exclude Evidence of Alleged Access Violations at Facilities Outside Class Definition (MIL No. 6)

The City seeks to exclude, as irrelevant, evidence related to facilities beyond those specified in the class certification.  On June 4, 2010, the Court certified a class of plaintiffs consisting of persons who have been denied access to the City's "parks, libraries, swimming pools, and curb ramps, sidewalks, cross-walks, and any other outdoor designated pedestrian walkways."  The Court denied certification of class categories "museums" and "music venues," specifically the Palace of Fine Arts, the Academy of Sciences, de Young Museum, War Memorial Opera House, Davies Symphony Hall, and 101 Grove Street.  The City also requests that Plaintiffs be made to clarify the definition of the category "parks," should Plaintiffs' definition differ from the commonly accepted definition of "open spaces."

With respect to evidence regarding the six museums and cultural facilities named by the City, Plaintiffs have offered no response.

With respect to the clarification of "parks," Plaintiffs assert as an initial matter that the

request is untimely and procedural improper.  This argument should have been made at the class certification stage, not on the eve of trial, and in any event should be brought in a motion to modify the class definition.  As a factual matter, "parks" has already been defined by the City's own expert, Mr. William Hecker.  Mr. Hecker's December 2009 report identifies and defines the parks and facilities at issue in this case.  The "open space" definition has no basis in any of the pleadings, orders, or documents exchanged between the parties prior to the close of discovery.

The City's Motion in Limine No. 6 is GRANTED, as unopposed, with respect to preclusion of evidence relating to the Palace of Fine Arts, the Academy of Sciences, de Young Museum, War Memorial Opera House, Davies Symphony Hall, and 101 Grove Street.  This motion is DENIED with respect to the City's request that "parks" be clarified.  This part of the motion is untimely and should have been brought at the class certification stage.

### G.    To Exclude Duplicative Expert Opinions (MIL No. 7)

The City seeks to exclude duplicative expert testimony.  Plaintiffs disclosed four architectural experts, Misters Steinfeld, Margen, Mastin and Waters, who are expected to testify on the same key issues.  The City requests that Plaintiffs designate one witness to testify per topic regarding (1) the history, purpose and interpretation of the federal disability access requirements, and (2) the sufficiency of San Francisco's policies and practices for providing physical access to its facilities and programs.  The Court retains discretion to exclude cumulative expert testimony.  United States v. Alisal Water Corp., 431 F.3d 643, 659-60 (9th Cir. 2005), *cert denied*, 547 U.S. 1113 (2006).  To the extent that access analysis of individual facilities is appropriate, each expert should be permitted to present the results of his own expert analysis.

Plaintiffs respond that the Court has no basis for excluding "anticipated" cumulative expert testimony, and will be better able to address those concerns at trial by requiring an offer of proof regarding the scope of the testimony, or entertaining specific objections.  Moreover, Plaintiffs assert that the testimony of multiple experts on the same issue may be probative simply because each expert has different qualifications.  Rodriquez v. County of Stanislaus,

1  2010 WL 2720940 at *2 (E.D. Cal. July 8, 2010).  Finally, Plaintiffs expect to proffer expert

2  testimony that is complimentary, not cumulative, noting that all of the access experts cover

3  different facilities.

4         In its reply, the City notes that Federal Rule of Evidence 702 prohibits experts from

5  verbatim adopting another expert's opinion, as Mr. Margen has done explicitly or Mr.

6  Steinfield's opinions.

7         The City's Motion in Limine No. 7 is DENIED as premature.  The duplicative nature of

8  the evidence will be assessed when the evidence is offered at trial.

9         **H.      Order and Timing of Witnesses (MIL No. 8)**

10        The City requests an order requiring Plaintiffs to give 72-hours advance notice before

11 calling any City employee as an adverse witness.  The City argues that these measures are

12 necessary to ensure the availability of witnesses, enhance the efficiency of trial, and minimize

13 the burden on City employees performing essential public functions.  This is in light of the fact

14 that Plaintiffs identified as witnesses more than 100 of which are City employees and elected

15 officials.

16        Plaintiffs are not opposed to providing "reasonable notice," and propose a 48-hour

17 notice rule, but assert that 72-hours is "unnecessarily rigid."  Plaintiffs note that it is difficult to

18 predict exactly when a witness will be called, given that the length of cross-examination and or

19 Court questioning is unknown to them.

20        The City's Motion in Limine No. 8 is GRANTED-IN-PART.  Plaintiffs are required to

21 give 48-hours notice before calling any City employee as an adverse witness.

22 **III.    THE PARTIES' EVIDENTIARY OBJECTIONS**

23        The City has objected to Plaintiffs' designation of deposition experts, and both parties

24 have objected to the other's exhibit list.  However, the admissibility of each item will depend

25 on the circumstances surrounding its offer into evidence.  Accordingly, these objections are

26 DENIED as premature.  This denial is without prejudice to renewal of these objections when

27 and if the evidence is offered.  This will enable the Court to assess the evidentiary context and

28 foundation of the evidence.

1   **IV.      CONCLUSION**

2           Pursuant to the above,

3           IT IS SO ORDERED.

4
    Dated: September 2, 2010
5
                                              _____
6                                             SAUNDRA BROWN ARMSTRONG
                                              United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28