1   DENNIS J. HERRERA, State Bar #139669
    City Attorney
2   DANNY CHOU, State Bar # 180240
    Chief of Complex and Special Litigation
3   JAMES M. EMERY, State Bar #153630
    ELAINE M. O'NEIL, State Bar #142234
4   Deputy City Attorneys
    Fox Plaza
5   1390 Market Street, Seventh Floor
    San Francisco, California 94102-5408
6   Telephone:    (415) 554-3881
    Facsimile:    (415) 554-3985
7   E-Mail:       elaine.o'neil@sfgov.org

8
    Attorneys for Defendants
9   CITY AND COUNTY OF SAN FRANCISCO, ET AL.

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12
    IVANA KIROLA, and ELIZABETH            Case No. C07-3685 SBA
13  ELFTMAN, on behalf of themselves and all
    others similarly situated,             CLASS ACTION
14
            Plaintiffs,                     **DECLARATION OF ELAINE M.
15                                          O'NEIL IN SUPPORT OF THE CITY'S
        vs.                                 MOTION TO MODIFY THE CLASS
16                                          DEFINITION OR IN THE
                                            ALTERNATIVE FOR
17  THE CITY AND COUNTY OF SAN              RECONSIDERATION OF ORDER
    FRANCISCO ("the CITY"); GAVIN           DENYING DEFENDANTS' COUNSEL
18  NEWSOM, in his official capacity as Mayor; LEAVE TO COMMUNICATE WITH
    AARON PESKIN, in his official capacity as CERTAIN CLASS MEMBERS**
    President of the Board of Supervisors; JAKE
19  MCGOLDRICK, MICHELA ALIOTO-
    PIER, ED JEW, CHRIS DALY, SEAN
20  ELSBERND, BEVAN DUFTY, TOM
    AMMIANO, SOPHIE MAXWELL, ROSS
21  MIRKARIMI, AND GERARDO
    SANDOVAL, in their official capacities as
22  members of the Board of Supervisors,

23          Defendants.

24

25

26

27

28

I, Elaine M. O'Neil, hereby declare:

1.     I am a Deputy City Attorney in the Office of the City Attorney of San Francisco. I am a member of the bar of the state of California and counsel of record for defendants in this action (collectively, "the City"). If called as a witness, I could and would testify competently to the matters set forth herein.

2.     Throughout the course of this lawsuit and up until June 7, 2010, when this litigation was certified to proceed as a class action, I and others in my office under my direction regularly communicated with and relied upon the assistance of Joanna Fraguli, Deputy Director for Programmatic Access of the Mayor's Office on Disability (MOD), with preparation of the City's defense of this action. Over the past three years, Ms. Fraguli has provided assistance in a variety of matters, including preparing responses to plaintiffs' discovery requests, gathering relevant documents, identification of potential witnesses, and providing information regarding the existence and status of various City policies and procedures regarding disability access.

3.     Ms. Fraguli's job responsibilities include receiving and responding to requests and complaints from members of the public. I have worked with Ms. Fraguli directly to respond to discovery requests from plaintiffs' for information about requests and complaints received by MOD regarding physical access barriers within the City. I also depend on Ms. Fraguli as a resource in connection with defending the plaintiffs' claims that the City does not properly respond to requests and complaints about disability access issues. In addition, Ms. Fraguli is responsible for providing training to City employees on a wide variety of issues related to the City's obligations to provide access to persons with disabilities, and she is a resource for our office in that area as well.

4.     Ms. Fraguli uses a wheel chair for mobility, and is therefore a member of the class certified in this action.

5.      MOD is responsible for overseeing the implementation and local enforcement of the City's architectural, communication and programmatic access obligations under federal, state and local disability access laws.  As Deputy Director of MOD for programmatic access, Ms. Fraguli plays a key role in implementing MOD's mission and ensuring access by persons with disabilities to the City's services, programs and activities.  For this reason, the City has identified Ms. Fraguli as a witness on behalf of the City in the upcoming trial of this action to testify, *inter alia*, about the City's policies and procedures for (1) responding to complaints and requests from persons with disabilities and (2) providing training to City departments and employees about the City's obligations under federal, state and local disability access laws.

6.      Our office's inability to communicate with Ms. Fraguli seriously hampers our ability to defend the City against plaintiffs' claims.  Because we are prohibited from communicating with Ms. Fraguli about matters pertaining to the litigation, we are unable to assist Ms. Fraguli with basic trial preparation matters such as preparing her to testify about her work.  We are unable to advise her what materials she should review to refresh her recollection, on what topics she should be prepared to testify, how her proposed testimony relates to the anticipated testimony by her colleagues at MOD, or even when we are likely to put her on the stand.  Beyond these constraints, the City is deprived of the ability to discuss trial strategies with a key member of MOD who, but for the class certification order, would be consulted about trial matters.  Moreover, plaintiffs have stated their intention to put several class members on the stand to testify against the City.  Even though Ms. Fraguli is responsible for overseeing the City's responses to complaints from persons with disabilities, under the Court's orders, the City will be precluded from communicating with Ms. Fraguli about any complaints these individuals may have made or any communications she may have had with them.  As a result, the City may be deprived of the ability to effectively cross-examine these witnesses.

7.     A true and correct copy of a biography of San Francisco Supervisor Michela Alioto-Pier, located on the City's website for the Board of Supervisors at http://www.sfbos.org/index.aspx?page=1966, is attached hereto as Exhibit A.

8.     Attached as Exhibit B are true and correct copies of excerpts of the transcripts of the deposition of MOD's Director, Susan Mizner, taken on July 10, 2009 (pp. 68-70).

9.     Attached as Exhibit C are true and correct copies of excerpts of the transcripts of the deposition of MOD's Director, Susan Mizner, taken on January 22, 2010 (pp. 205-207).

10.     Attached as Exhibit D are true and correct copies of excerpts of the transcripts of the deposition of MOD's Director, Susan Mizner, taken on February 25, 2010 (pp. 46-47, 51-52).

11.     On September 7, 2010, I wrote an email to plaintiffs' counsel Guy Wallace and Mark Johnson renewing the City's request that plaintiffs' counsel consent to unrestricted communications between our office and Ms. Fraguli to permit the City to prepare its defense of the case.    On September 8, 2010, plaintiffs' counsel Mark Johnson replied stating plaintiffs' refused to provide this consent.  A true and correct copy of my email correspondence with plaintiffs' counsel on this issue is attached as Exhibit E.

12.     On September 16, 2010, my co-counsel Jim Emery wrote a letter to the Court responding to allegations made by plaintiffs' counsel in prior correspondence with the Court on this issue and stating the City's position with respect to communications with Ms. Fraguli.  (Mr. Emery's letter may be found in the Court's file as Docket No. 403.  A true and correct copy of Mr. Emery's September 16, 2010 letter is attached hereto as Exhibit F.)  In his letter, Mr. Emery states that absent further guidance from the Court, the City intends to move for reconsideration of the Court's September 7 Order denying the City's motion for leave to communicate with certain class members or, in the alternative, for a revision of the class definition in this case to exclude from the class certain City officials and employees.  Plaintiffs responded by way of a letter to the Court dated September

17, 2010 (Docket No. 404) that stated their views on the subject. A true and correct copy of the September 17, 2010 letter submitted by plaintiffs' counsel is attached hereto as Exhibit G.

13.     In light of the communications set forth in the above paragraphs 11 and 12, I believe the City has met its obligations to meet and confer with plaintiffs' counsel in an attempt to resolve the parties' disputes regarding the City's unrestricted communications with Ms. Fraguli and other City officials.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed October 7, 2010 in San Francisco, California.


By:_____/s/_____
    ELAINE M. O'NEIL

# EXHIBIT A

# Supervisor Alioto-Pier - About

### Supervisor Michela Alioto-Pier



Represents District 2, which includes the Presidio, Cow Hollow, Marina, Pacific Heights as well as part of the Richmond neighborhood. Appointed in January 2004 by Mayor Gavin Newsom, Supervisor Alioto-Pier moved quickly to unite the medical community, the business community, and City College around legislation to attract biotech companies to San Francisco. She succeeded in placing a good government proposal on the November ballot – Proposition I – to require an analysis of each law before it is passed to make sure it does not create hidden costs, drive away jobs, or hurt our economy.

Supervisor Alioto-Pier has worked hard to improve the quality of life for her constituents. During the budget cycle she was a leader in restoring funds to protect critical health services. She was the lead sponsor in securing San Francisco's endorsement of Proposition 71, the California Stem Cell Research and Cures Initiative. Supervisor Alioto-Pier worked successfully with neighbors and merchants in the Cow Hollow neighborhood to oppose the construction of a cell phone tower, and was able to persuade the Board of Supervisors to reject the permit.

In addition to her regular board duties, Supervisor Alioto-Pier servesas a member of the San Francisco Disaster Council and is the Board Representative on the State Legislative Committee. Prior to her service on the Board of Supervisors Supervisor Alioto-Pier served as a San Francisco Port Commissioner, focusing on port security issues.

Supervisor Alioto-Pier is a nationally known disability rights advocate. After an accident left her unable to walk in 1981, Supervisor Alioto-Pier decided fighting for her own civil rights wasn't enough. In 1984 President Ronald Reagan appointed her to the National Council on Disabilities Advisory Board at age 17. Supervisor Alioto-Pier decided on a life in public service after seeing first-hand how effective advocacy can improve the lives of people dramatically. She later worked for Vice President Al Gore, as an advisor on domestic policy matters and a liaison to the Department of Health & Human Services.

Like many working moms, Supervisor Alioto-Pier balances her job with an active family life, raising three children - Nicholas, Giovanna and Valentina - with her husband Tom.

Family and public service have been prominent in Supervisor Alioto-Pier's life since birth: her grandfather Joe Alioto was the Mayor of San Francisco from 1968 – 1976 and was a gubernatorial candidate; her aunt Angela Alioto was a San Francisco Supervisor from 1988-1996 and a mayoral candidate. Supervisor Alioto-Pier's great grandfather came to America over one hundred years ago to start a new life for himself and his family, and started a small fish market in San Francisco.

Supervisor Alioto-Pier graduated from the Convent of the Sacred Heart School in San Francisco, and received a degree in Anthropology from the University of California at Los Angeles. She also spent a year studying at Sophia University in Japan.

Supervisor Alioto-Pier has received numerous awards and honors, including seconding the nomination of Vice President Al Gore at the Democratic national convention in August of 1996. She has been named one of the top 21 up-and-coming women leaders in the country by Ms. Magazine, she is a Henry Crowne Fellow with the Aspen Institute, and she was a delegate to the Lifetime Summit on Women in 1997. Supervisor Alioto-Pier has been profiled in nationwide magazines such as Cosmopolitan, Time, and

People. She was named one of "the ten people expected to have the greatest impact on the Bay Area in the early part of the 21st century" by the San Francisco Examiner.

## Term:

- Appointed 01/26/04 - 01/08/05
- Elected November 2004 for term January 2005 to January 2007
- Elected November 2006 for term January 2007 to January 2011

## Committee and Board Assignments:

- Vice-Chair, Rules Committee
- Member, Joint City & School District Committee
- Member, Transportation Authority

## Boards and Commissions

- Representative on the Disaster Council
- Representative on State the Legislation Committee

## Occupation

- Member, Board of Supervisors

## Community and Civic Activities

- San Francisco Port Commissioner, 2003-2004

*Note: Click on the photo of SupervisorAlioto-Pier to open high resolution copy. After opening, right click on the photo to save image.*

## City Hall

1 Dr. Carlton B. Goodlett Pl.

Room 244

San Francisco, Ca 94102-4689

Voice: (415) 554-7752

Fax: (415) 554-7843

# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IVANA KIROLA, MICHAEL KWOK, and
ELIZABETH ELFTMAN, on behalf of
themselves and all others
similarly situated,

    Plaintiffs,

  vs                    CASE NO. C07-3685 SBA

THE CITY AND COUNTY OF SAN
FRANCISCO ("the CITY"); GAVIN
NEWSOM, in his official
capacity as Mayor; AARON
PESKIN, in his official
capacity as President of the
Board of Supervisors; JAKE
MCGOLDRICK, MICHELA
ALIOTO-PIER, ED JEW, CHRIS
DALY, SEAN ELSBERND, BEVAN
DUFTY, TOM AMMIANO, SOPHIE
MAXWELL, ROSS MIRKARIMI, AND
GERARDO SANDOVAL, in their
official capacities as members
of the Board of Supervisors,

    Defendants.

_____/

DEPOSITION OF

**SUSAN MIZNER**

_____

Friday, July 10, 2009

Reported by:
  LORI STOKES,
  CSR No. 12732

TOKUTOMI & ASSOCIATES
CERTIFIED SHORTHAND REPORTERS
114 QUAIL POINT CIRCLE
SAN BRUNO, CALIFORNIA 94066
650-291-7823

1

COPY

1   staff meetings that are for all of the department

2   heads.  But clearly, we're much smaller than most

3   departments -- any department.

4        Q.   How many staff do you have?

5        A.   In terms of permanent staff, we have myself,

6   the deputy director for physical access, the deputy

7   director for programmatic access, the program

8   administrator, who provides technical assistance and

9   helps staff the Mayor's Disability Council and work on

10  intake.

11        The compliance officer, who does the plan and

12  site reviews.  The compliance and emergency planner,

13  who does site reviews and has gotten homeland security

14  money to help with disability disaster preparedness.

15       Q.   I'm sorry.  What was that position again?

16       A.   It's a hybrid position.  All of these are not

17  funded through the general fund.  And this is a

18  position that is funded through the fees on the plan

19  and site reviews that she does.

20        And then homeland security funds, because we

21  are focusing on a number of disability issues in the

22  disaster preparedness and planning that the City does.

23        And then we have two administrative positions

24  that support the entire staff and the Mayor's

25  Disability Council, but it looks like we will be losing

68

Susan Mizner                           July 10, 2009

1    one of them.  And we previously had an intake

2    coordinator to be the point person for the ADA

3    grievance procedure, and we lost that position.

4         We have part-time interns, as well.  I don't

5    know if you want a list of the part-time interns.

6         Q.   Can we put some names to those?

7         A.   Sure.

8         Q.   You're the director.  John Scott is the

9    deputy director for physical access?

10        A.   Right.

11        Q.   Who is the deputy director for program

12   access?

13        A.   Joanna Fraguli, F-R-A-G-U-L-I.

14        Q.   Who is the program administrator?

15        A.   Ken Stein, S-T-E-I-N.

16        Q.   How do the positions for the deputy director

17   for physical access and deputy director for program

18   access differ?

19        A.   So physical access is looking at

20   architectural access issues and is primarily

21   responsible for implementation of the ADA transition

22   plan.

23        Programmatic access looks at programmatic

24   access issues.  It's primarily responsible for the

25   implementation of the self-evaluation.  It's -- the

                                                          69

Susan Mizner                           July 10, 2009

1   Title 2 regulations and reasonable modifications and

2   training and special projects with departments.

3       Q.    You mean reasonable accommodations?

4       A.    Under Title 2, the term is actually

5   reasonable modifications for the public.  We don't deal

6   with employment very directly.  So the reasonable

7   accommodations for city employees is handled with the

8   department of human resources.

9       Q.    And what does Ken Stein, the program

10  administrator, do?

11      A.    So he is the primary staff person for the

12  Mayor's Disability Council in terms of helping all of

13  the council members, setting agendas and getting

14  speakers, et cetera.

15          He has -- so just a little bit more

16  background.  Joanna has actually been out on medical

17  leave for the past seven months.  And, in her absence,

18  he's been taking over a lot of the supervision of the

19  interns, doing the intake from the public.

20          But he would normally do a little bit of

21  that.  And he is primarily responsible for technical

22  assistance to the departments.

23      Q.    Who is the compliance officer?

24      A.    Jim Whipple.

25      Q.    And what are Mr. Whipple's responsibilities?

                                                      70

Susan Mizner                         July 10, 2009

1   STATE OF CALIFORNIA        )
                               )
2                              )

3                    **CERTIFICATE OF REPORTER**

4

5        I, LORI STOKES, do hereby certify that the witness

6   in the foregoing deposition was be me duly affirmed to

7   tell the truth, the whole truth and nothing but the

8   truth in the within-entitled cause; that said deposition

9   was taken at the time and place therein stated; that the

10  testimony of said witness was reported by me and was

11  thereafter transcribed under my direction and

12  supervision; that the foregoing is a full, complete and

13  true record of said testimony; that the witness was

14  given an opportunity to read and, if necessary, correct

15  said deposition and to subscribe the same.

16       I further certify that I am not of counsel or

17  attorney for either or any of the parties in the

18  foregoing deposition and caption named, or in any way

19  interested in the outcome of the cause named in said

20  caption.

21       IN WITNESS WHEREOF, I have hereunto set my hand

22  this 20TH day of _____July_____, 2009.

23

24       _____Lori Stokes_____

25  LORI STOKES, CSR No. 12732

                                                    186

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

---oOo---

IVANA KIROLA, MICHAEL KWOK and
ELIZABETH ELFTMAN, on behalf of
themselves and all others
similarly situated,

                    Plaintiffs,

          vs.

THE CITY AND COUNTY OF SAN
FRANCISCO ("the CITY"); GAVIN NEWSOM,
in his official capacity as Mayor;
AARON PESKIN, in his official
capacity as President of the Board of
Supervisors; JAKE MCGOLDRICK, MICHELA
ALIOTO-PIER, ED JEW, CHRIS DALY, SEAN
ELSBERND, BEVAN DUFTY, TOM AMMIANO,
SOPHIE MAXWELL, ROSS MIRKARIMI, and
GERARDO SANDOVAL, in their official
capacities as members of the Board of
Supervisors,

                    Defendants.
_____/

CASE NO.
C07-3685 SBA

COPY

**DEPOSITION OF SUSAN MIZNER, ESQUIRE**

Volume II - 191-359

Friday, January 22, 2010

Reported by:
Kellie M. Summers, CSR No. 9686

**TOKUTOMI & ASSOCIATES**
**Certified Shorthand Reporters**
**114 Quail Point Circle**
**San Bruno, California 94066**
**(650) 291-7823**

191

1   level.

2       Q.   How would you describe the responsibilities of

3   you and the Mayor's Office on Disability for the

4   implementation of the curb ramp transition plan compared

5   to the responsibilities that DPW and Mr. Spielman have?

6       A.   I, in the Mayor's Office on Disability, work

7   with DPW to ask for funding for the ADA transition plan

8   curb ramps, and then I am the primary face of that

9   advocacy, to the extent that it needs advocacy, at the

10  Capital Planning Committee and the Mayor's Office and

11  the board of supervisors.

12       We also certainly have a dialogue, but the

13  Mayor's Office on Disability has tried to take the lead

14  on some of the policy in terms of priorities for which

15  curb ramps get built and helping DPW in the past.  We've

16  certainly tried to help in terms of researching the

17  status of complaints and talking with complainants,

18  forwarding complaints to DPW.

19       I guess that would be the other piece of this,

20  that we have staff who do intake from the public and

21  some of them talk with members of the public who are

22  asking for curb ramps.

23       Q.   Who are the staff that talk to members of the

24  public about complaints or inquiries about curb ramps?

25       A.   We have two full-time staff positions who

205

1    oversee intake and do some themselves.  One is Joanna

2    Fraguli, who is the deputy director for programmatic

3    access.  The other is Ken Stein, who is a program

4    administrator.  They have, because of staffing

5    shortages, generally supervised interns in the office

6    who do that intake.  So I can give you the names of

7    interns.  Some of them aren't with us anymore.

8         Q.    Can you spell Joanna's name for me, please?

9         A.    Sure.  Joanna is J-O-A-N-N-A.  Fraguli is

10   F-R-A-G-U-L-I.

11        Q.    How long has Ms. Fraguli been in that position

12   where she's had responsibility for overseeing the

13   process of public contact?

14        A.    I believe we hired her in the summer of 2006.

15   She has been out of the office at various periods; once

16   for maternity leave for three months and once for

17   medical leave for six months.  So there were

18   interruptions.

19        Q.    How long has Mr. Stein been with the office

20   and had those responsibilities?

21        A.    I believe he was hired in the summer of 2002

22   and has had that as part of his job, more so when Joanna

23   Fraguli was around and less so when she was.

24        Q.    And do these two individuals and/or the

25   interns who have this responsibility utilize any kinds

                                                          206

1    of scripts or have any instruction, written

2    instructions, for when they talk to people?

3        A.   We have general written instructions for

4    intake trying to help interns distinguish between what

5    is either a reasonable accommodation request or a

6    potential ADA complaint and what is simply information

7    and referral or a request for service.

8        Q.   And that's something that's within the Mayor's

9    Office on Disability's possession currently?

10       A.   Yes.

11       Q.   So one of the things that you were designated

12   to testify on is the funding and source of funding for

13   curb ramp installation or construction and improvement.

14   Let's talk about the current year.

15            How much has the City committed to spending on

16   curb ramps for the fiscal year 2009-2010?

17       A.   The year we're in?

18       Q.   (Attorney nods.)

19       A.   This is our -- on paper it's our worst year

20   because we had in 2008-2009 five million dollars in

21   certificates of participation that, because of the

22   financial crisis, didn't get issued.  So on paper that

23   was a fine year, but in practice it was our worst year

24   in which we scraped together some money from various

25   sources, borrowed some others and got some, I think,

                                                          207

REPORTER'S CERTIFICATE

I, KELLIE M. SUMMERS, a Certified Shorthand
Reporter of the State of California, hereby certify that
the witness in the foregoing deposition was by me duly
sworn to tell the truth in the within-entitled cause;
that said deposition was taken at the time and place
therein stated; that the testimony of the said witness
was reported by me, a duly certified shorthand reporter,
and was thereafter transcribed under my direction into
typewriting; and that the witness was given an
opportunity to read and, if necessary, correct said
deposition and to subscribe the same.

I FURTHER CERTIFY that I am not of counsel or
attorney for either or any of the parties in the
foregoing deposition and caption named, or in any way
interested in the outcome of the cause named in said
caption.

IN WITNESS WHEREOF, I have hereunto set my
hand this 26th day of January, 2010.

KELLIE M. SUMMERS
Certified Shorthand Reporter
Certificate No. 9686
State of California

355

# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IVANA KIROLA, MICHAEL KWOK, and
ELIZABETH ELFTMAN, on behalf of
themselves and all others
similarly situated,

                    Plaintiffs,

         vs.                            CASE NO. C07-3685 SBA

THE CITY AND COUNTY OF SAN
FRANCISCO ("the CITY"); GAVIN
NEWSOM, in his official
capacity as Mayor; AARON
PESKIN, in his official
capacity as President of the
Board of Supervisors; JAKE
MCGOLDRICK, MICHELA
ALIOTO-PIER, ED JEW, CHRIS
DALY, SEAN ELSBERND, BEVAN
DUFTY, TOM AMMIANO, SOPHIE
MAXWELL, ROSS MIRKARIMI, AND
GERARDO SANDOVAL, in their
official capacities as members
of the Board of Supervisors,

                    Defendants.
_____/

COPY

DEPOSITION OF

**SUSAN MIZNER**

Thursday, February 25, 2010

Reported by:
   LORI STOKES,
   CSR No. 12732

**TOKUTOMI & ASSOCIATES**
**CERTIFIED SHORTHAND REPORTERS**
**114 QUAIL POINT CIRCLE**
SAN BRUNO, CALIFORNIA 94066
**650-291-7823**

1

1  deposition of Ivana Kirola.

2          MR. WALLACE:  254?

3          MR. EMERY:  I think it may be safer to go up

4  to 256.

5          MR. WALLACE:  Okay.  256.

6          (Whereupon, Exhibit 256 was marked for

7          identification.)

8  BY MR. WALLACE:

9      Q.   Have you ever seen a copy of this before,

10  Ms. Mizner?

11     A.   I believe I have.

12     Q.   And what is it?

13     A.   It is a training that Joanna -- our deputy

14  director for programmatic access is Joanna Frabuli,

15  F-R-A-B-U-L-I, and she has been providing trainings

16  to -- I'm sorry, here.

17         MR. WALLACE:  Oh, I've got another one.

18         MR. EMERY:  Do you?  Great, thanks.

19         MR. WALLACE:  Sorry.

20         THE WITNESS:  To managers and directors

21  around the City.  And this looks like the training for

22  Staff to Boards and Commissions.

23  BY MR. WALLACE:

24     Q.   Who receives this training?

25     A.   We have targeted the directors and managers

46

Susan Mizner                          February 25, 2010

1   of departments throughout the City.  And the people

2   such as the Staff to Boards and Commissions who are

3   most likely to have public meetings or contact with the

4   public.

5       Q.   Is this training mandatory or optional?

6       A.   The -- I'm trying to remember if we ended up

7   getting a letter from the mayor telling them to go to

8   these trainings, which would make them fairly

9   mandatory.

10           I know that we mentioned this in a mayor's

11  department head meeting.

12      Q.   What's your understanding as to whether these

13  trainings are mandatory for the target audience or

14  optional?

15      A.   They are very strongly encouraged that people

16  attend them.  We've gotten very good attendance.

17      Q.   What's the purpose of this particular

18  training?

19      A.   This particular training, the purpose is to

20  make sure that when Boards and Commissions meet, they

21  are accessible to people with disabilities.

22      Q.   Does this particular training have a name?

23  Or is it the Boards and Commissions training?

24      A.   We haven't named our trainings.

25      Q.   Okay.

                                              47

Susan Mizner                       February 25, 2010

1      A.   The trainings are given on a rolling basis

2   and upon request.

3      Q.   Is there any formal training that department

4   heads receive on the ADA?

5      A.   Yes.  So this is one training.  We have a

6   number of different trainings that have been geared to

7   the department's work.

8           So this one is -- tries to focus on the

9   issues to Boards and Commissions.  And we have

10  different trainings that are geared toward the

11  different types of services that different departments

12  provide.

13     Q.   Does Department of Recreation & Parks get a

14  formal training from MOD each year?

15     A.   Not each year.

16     Q.   How often?

17     A.   They have received a training in the

18  last -- I know in the last two years.  It's been within

19  the last two years.

20     Q.   And who gave them the training?

21     A.   Joanna Frabuli and Mariam Morley,

22  M-A-R-I-A-M, M-O-R-L-E-Y.

23     Q.   And which training was provided?  Would that

24  be the one that's marked as No. 256, or would that be a

25  different training?

51

Susan Mizner                          February 25, 2010

1      A.    It would be a different training.

2      Q.    Does that training have a name?

3      A.    Training for Rec & Parks.

4      Q.    And does it have its own written materials?

5      A.    Yes.

6      Q.    And who wrote those?

7      A.    Joanna Frabuli and Mariam Morley.

8      Q.    And what's the approximate length of that

9 training for Rec & Parks?

10          MR. EMERY:  Vague.

11          THE WITNESS:  Probably two hours.  Often they

12 run over.

13 BY MR. WALLACE:

14     Q.    And is attendance at the Rec & Park ADA

15 training mandatory or encouraged?

16     A.    As I said before, we have strong attendance.

17     Q.    Does Mayor's Office on Disability keep

18 attendance records of which officials have received

19 these trainings?

20     A.    I know we have some attendance records.  I

21 couldn't tell you which ones.

22     Q.    Do the people who receive the training

23 receive any examination or quiz on the extent to which

24 they've mastered the material that they were trained

25 on?

                                                    52

1   STATE OF CALIFORNIA          )
                                 )
2                                )

3                   **CERTIFICATE OF REPORTER**

4

5       I, LORI STOKES, do hereby certify that the witness

6   in the foregoing deposition was be me duly affirmed to

7   tell the truth, the whole truth and nothing but the

8   truth in the within-entitled cause; that said deposition

9   was taken at the time and place therein stated; that the

10  testimony of said witness was reported by me and was

11  thereafter transcribed under my direction and

12  supervision; that the foregoing is a full, complete and

13  true record of said testimony; that the witness was

14  given an opportunity to read and, if necessary, correct

15  said deposition and to subscribe the same.

16      I further certify that I am not of counsel or

17  attorney for either or any of the parties in the

18  foregoing deposition and caption named, or in any way

19  interested in the outcome of the cause named in said

20  caption.

21      IN WITNESS WHEREOF, I have hereunto set my hand

22  this 27th day of February, 2010.

23

24      _____

25      LORI STOKES, CSR No. 12732

                                                      158

Susan Mizner                        February 25, 2010

# EXHIBIT E



RE: Kirola Trial Issues
Mark T. Johnson
to:
Elaine O'Neil, Guy B. Wallace
09/08/2010 02:07 PM
Cc:
Jim Emery, Danny Chou, "molivier@sturdevantlaw.com", "Andrew P. Lee", "Christopher L. Springer", "yroko@sturdevantlaw.com"
Show Details

History: This message has been forwarded.

1 Attachment



SWCBK.bmp

Elaine,

Plaintiffs are generally in agreement with your proposal to revisit the joint witness list and exhibit list, but suggest that we do so early next week rather than by the end of this week. We also continue to be interested in stipulating to certain facts and to the authenticity of certain documents and will put together a proposed stipulation for your consideration.

With regard to Ms. Fraguli, we are surprised that the City would even raise this issue again after the Court's unequivocal ruling on the matter yesterday, in which Ms. Fraguli was included by name, and the Court's further statement that neither party had leave to file any more motions between now and trial. Further, the argument you make below is exactly the same as the argument the City made to the Court in its unsuccessful administrative motion, which the Court characterized as the "nebulous" need to "prepare for trial." Plaintiffs continue to believe that there is absolutely no need for the City Attorneys office to communicate with class member Fraguli in order to prepare for trial and do not consent to such communications. Additionally, we believe that presenting this issue to the Court again would be frivolous and sanctionable. Accordingly, we hope that you reconsider your position and drop the matter.

Mark



SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

**Mark T. Johnson**
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone:    (415) 421-7100
Toll Free:    (800) 689-0024
Facsimile:    (415) 421-7105
www.schneiderwallace.com

**From:** Elaine O'Neil [mailto:Elaine.O'Neil@sfgov.org]
**Sent:** Tuesday, September 07, 2010 1:12 PM
**To:** Guy B. Wallace; Mark T. Johnson
**Cc:** Jim Emery; Danny Chou
**Subject:** Kirola Trial Issues

Dear Guy and Mark:

In light of the judge's ruling this morning expanding the hours allotted for trial, we propose the parties review and revise, as necessary, the joint document submitted to the court on Friday evening. We propose the parties exchange new lists and time estimates by the end of this week. We understand the plaintiffs now intend to call the seven witnesses identified in the September 2 joint pretrial submission and will enlarge the expected time for direct examination of other witnesses. We think it also makes sense, now that each side has refined its exhibit lists, to meet and confer to determine what stipulations we can reach regarding individual exhibits. We have already reviewed plaintiffs' exhibit list. Also, if plaintiffs wish to propose stipulated facts, the City will review those.

The City renews its request that you authorize unrestricted communications between our office and Joanna Fraguli, MOD's deputy director for programmatic access. Ms. Fraguli is a key player in the City's defense of this case. The ethical wall now is impractical, unnecessary and will prejudice the City's ability to present its case at trial. If plaintiffs do not consent, the City will ask Judge Armstrong once again for permission to consult with Ms. Fraguli. Please let us know. Our office will not seek to speak with any other class members.

Elaine M. O'Neil
Deputy City Attorney
City and County of San Francisco
1390 Market Street, 7th Floor
San Francisco, CA  94102
**Tel:** 415-554-3881
**Fax:** 415-554-3985
Email:  elaine.o'neil@sfgov.org


The information contained in this electronic message may be confidential and may be subject to the attorney-client privilege and/or the attorney work product doctrine. It is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, you are hereby notified that any use, dissemination or copying of this communication is strictly prohibited. If you have received this electronic message in error, please notify me by telephone at (415) 554-3881, and delete the original message from your email system. Thank you.

**EXHIBIT F**

CITY AND COUNTY OF SAN FRANCISCO

OFFICE OF THE CITY ATTORNEY



DENNIS J. HERRERA
City Attorney

JAMES M. EMERY
Deputy City Attorney

DIRECT DIAL:  (415) 554- 4261
E-MAIL:  jim.emery@sfgov.org

September 16, 2010

Honorable Saundra B. Armstrong
United States District Court
1301 Clay Street
Courtroom 1, 4th Floor
Oakland, CA  94612-5212

   Re: Ivana Kirola, et al v. City and County of San Francisco, et al.
     Case No. C07-3685 SBA

Dear Judge Armstrong:

  This letter responds to the serious, yet entirely baseless, imputation of unethical conduct that plaintiffs' counsel lodged against the City Attorney's Office in their September 14 letter to the Court.

  There have been no improper communications between the City Attorney's Office and Joanna Fraguli, either directly or indirectly.  The City Attorney's Office did not in any way advise or encourage Ms. Fraguli to write her September 13 letter to the Court.  The simple and straightforward explanation for the timing of Ms. Fraguli's letter is that Ms. Fraguli learned of the Court's September 7 Order forbidding communications with the City Attorney's Office.  Ms. Fraguli then, on her own initiative, decided to inform the Court how that Order affects her, and to convey her desire to consult freely with her own lawyers, the City Attorney's Office.

  Ms. Fraguli serves as Deputy Director for Programmatic Access in the Mayor's Office on Disability.  *See* Ms. Fraguli's Letter to the Court, dated September 13, 2010.  Ms. Fraguli is in charge of training City staff in all departments regarding their disability access obligations.  *Id.*  In addition, Ms. Fraguli oversees the City's response to access complaints.  *See* Declaration of Susan Mizner, filed July 30, 2010 (Docket # 354), ¶ 5.

  Plaintiffs' counsel have expressly challenged Ms. Fraguli's work at the Mayor's Office on Disability.  Plaintiffs allege "[t]he City has numerous . . . programmatic barriers to residents, visitors, and other individuals who use wheelchairs and/or who have mobility disabilities, . . . which deny such persons full and equal access to the CITY's public premises, facilities, programs, services and activities."  *See* First Amended Complaint, ¶ 16.  Plaintiffs' counsel further allege "[t]he CITY has received numerous complaints regarding these and similar access barriers, yet the CITY has failed to come into full compliance with applicable laws."  *Id.* ¶ 18.  Plaintiffs' complaint directly challenges Ms. Fraguli's performance of her core job responsibilities.  The City and Ms. Fraguli must be permitted to defend themselves properly, and to consult in preparation for trial.

  Ms. Fraguli worked actively with the City Attorney's Office in the defense of this case until June 7, 2010, when this Court certified a litigation class and Ms. Fraguli became an unwilling member of that class.  Before that date, Ms. Fraguli regularly advised the City Attorney's Office and assisted in the City's response to class counsel's voluminous discovery demands (including discovery regarding the City's response to access complaints).  Since June 7, 2010, the City has been deprived of Ms. Fraguli's services and her unique knowledge in its

FOX PLAZA · 1390 MARKET STREET, SEVENTH FLOOR · SAN FRANCISCO, CALIFORNIA 94102-5408
RECEPTION: (415) 554-3800 · FACSIMILE: (415) 554-3985

n:\cxlit\li2010\080122\00652509.doc

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

Letter to Honorable Saundra B. Armstrong
Page 2
September 16, 2010

defense of this case.  Nevertheless, the City Attorney's Office has scrupulously adhered to the
terms of September 7 Order, and has refrained from improper communications with Ms. Fraguli
since June 7, 2010.

It is plaintiffs' counsel who have created an irreconcilable conflict of interest for
themselves.  Not only have plaintiffs' counsel insisted they act as sole and exclusive counsel for
City officials, such as Ms. Fraguli, responsible for developing and implementing the very
policies and practices they challenge in this lawsuit.  Plaintiffs' counsel have actually sued by
name a member of the class they represent.  City Supervisor Michela Alioto-Pier is a named
defendant in this action.  *See* First Amended Complaint, ¶ 11.  Plaintiffs allege that Supervisor
Alioto-Pier is "legally responsible for ensuring compliance with federal and state laws by the
CITY," and has "intentionally refused" to do so.  *Id.*, ¶¶ 11, 20-21  Supervisor Alioto-Pier has a
mobility impairment and uses a wheelchair for mobility.  A ski accident in 1981 left her unable
to walk, and she is a nationally recognized advocate for disability rights.  *See* Exhibit A, hereto.
Having accused Supervisor Alioto-Pier by name of misconduct in their complaint, plaintiffs'
counsel now forbid her from consulting with her counsel, the City Attorney's Office.

As City officials, Ms Alioto-Pier and Ms. Fraguli are entitled to representation by the
City Attorney's Office in connection with their official acts and duties.  In view of the key roles
of Ms. Fraguli and Supervisor Alioto-Pier in developing and implementing the City's challenged
practices to ensure disability access, any unauthorized communications between plaintiffs'
counsel and these City officials is improper under Rule 2-100,[1] regardless of the fact these
individuals also happen to have mobility impairments and are members of the certified class.

Absent further guidance from the Court, the City intends to submit a formal motion: (1)
to reconsider the September 7 Order, to the extent it forbids communications with City
personnel, such as Ms. Fraguli and Supervisor Alioto-Pier, whose official duties include
developing and/or implementing the City's policies and practices regarding disability access; or
in the alternative (2) to revise the class definition to exclude from the class City officials and
employees with such duties.

Respectfully submitted,

DENNIS J. HERRERA
City Attorney


                              /S/
JAMES M. EMERY
Deputy City Attorney


cc:      eservice list


---

[1]  Cal. Rule Prof. Conduct 2-100 prohibits an attorney from "communicat[ing] directly or
indirectly about the subject of the representation with a party the member knows to be
represented by another lawyer in the matter, unless the member has the consent of the other
lawyer."  Rule 2-100(B) defines "party" to include "an employee . . . , if the subject of the
communication is any act or omission of such person in connection with the matter which may
be binding upon or imputed to the organization for purposes of civil or criminal liability or
whose statement may constitute an admission on the part of the organization."

# EXHIBIT A

# Supervisor Alioto-Pier - About

### Supervisor Michela Alioto-Pier



Represents District 2, which includes the Presidio, Cow Hollow, Marina, Pacific Heights as well as part of the Richmond neighborhood. Appointed in January 2004 by Mayor Gavin Newsom, Supervisor Alioto-Pier moved quickly to unite the medical community, the business community, and City College around legislation to attract biotech companies to San Francisco. She succeeded in placing a good government proposal on the November ballot – Proposition I – to require an analysis of each law before it is passed to make sure it does not create hidden costs, drive away jobs, or hurt our economy.

Supervisor Alioto-Pier has worked hard to improve the quality of life for her constituents. During the budget cycle she was a leader in restoring funds to protect critical health services. She was the lead sponsor in securing San Francisco's endorsement of Proposition 71, the California Stem Cell Research and Cures Initiative. Supervisor Alioto-Pier worked successfully with neighbors and merchants in the Cow Hollow neighborhood to oppose the construction of a cell phone tower, and was able to persuade the Board of Supervisors to reject the permit.

In addition to her regular board duties, Supervisor Alioto-Pier servesas a member of the San Francisco Disaster Council and is the Board Representative on the State Legislative Committee. Prior to her service on the Board of Supervisors Supervisor Alioto-Pier served as a San Francisco Port Commissioner, focusing on port security issues.

Supervisor Alioto-Pier is a nationally known disability rights advocate. After an accident left her unable to walk in 1981, Supervisor Alioto-Pier decided fighting for her own civil rights wasn't enough. In 1984 President Ronald Reagan appointed her to the National Council on Disabilities Advisory Board at age 17. Supervisor Alioto-Pier decided on a life in public service after seeing first-hand how effective advocacy can improve the lives of people dramatically. She later worked for Vice President Al Gore, as an advisor on domestic policy matters and a liaison to the Department of Health & Human Services.

Like many working moms, Supervisor Alioto-Pier balances her job with an active family life, raising three children - Nicholas, Giovanna and Valentina - with her husband Tom.

Family and public service have been prominent in Supervisor Alioto-Pier's life since birth: her grandfather Joe Alioto was the Mayor of San Francisco from 1968 – 1976 and was a gubernatorial candidate; her aunt Angela Alioto was a San Francisco Supervisor from 1988-1996 and a mayoral candidate. Supervisor Alioto-Pier's great grandfather came to America over one hundred years ago to start a new life for himself and his family, and started a small fish market in San Francisco.

Supervisor Alioto-Pier graduated from the Convent of the Sacred Heart School in San Francisco, and received a degree in Anthropology from the University of California at Los Angeles. She also spent a year studying at Sophia University in Japan.

Supervisor Alioto-Pier has received numerous awards and honors, including seconding the nomination of Vice President Al Gore at the Democratic national convention in August of 1996. She has been named one of the top 21 up-and-coming women leaders in the country by Ms. Magazine, she is a Henry Crowne Fellow with the Aspen Institute, and she was a delegate to the Lifetime Summit on Women in 1997. Supervisor Alioto-Pier has been profiled in nationwide magazines such as Cosmopolitan, Time, and

People. She was named one of "the ten people expected to have the greatest impact on the Bay Area in the early part of the 21st century" by the San Francisco Examiner.

## Term:

- Appointed 01/26/04 - 01/08/05
- Elected November 2004 for term January 2005 to January 2007
- Elected November 2006 for term January 2007 to January 2011

## Committee and Board Assignments:

- Vice-Chair, Rules Committee
- Member, Joint City & School District Committee
- Member, Transportation Authority

## Boards and Commissions

- Representative on the Disaster Council
- Representative on State the Legislation Committee

## Occupation

- Member, Board of Supervisors

## Community and Civic Activities

- San Francisco Port Commissioner, 2003-2004

*Note: Click on the photo of Supervisor Alioto-Pier to open high resolution copy. After opening, right click on the photo to save image.*

## City Hall

1 Dr. Carlton B. Goodlett Pl.
Room 244
San Francisco, Ca 94102-4689
Voice: (415) 554-7752
Fax: (415) 554-7843

# EXHIBIT G


SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

September 17, 2010

The Honorable Saundra B. Armstrong
USDC Northern District of California– Northern District of California
Courtroom 1, 3rd Floor
1301 Clay Street, Suite 400 S

      Re:    *Kirola et al. v. City and County of San Francisco,* No. C07-3685 SBA (EMC)
             <u>Correspondence from Class Member Joanna Fraguli</u>

Dear Judge Armstrong:

      This responds to Defendants' letter of September 16, 2010 ("Letter") regarding the City's request for ex parte communications with Ms. Joanna Fraguli. Plaintiffs address several troubling aspects of the City's letter, and provide a few additional points for the Court's consideration.

      As an initial matter, this Court has prohibited the filing of any motions in this matter absent Court approval. *See* Dkt. No. 358 at 3 ("The Parties are reminded of the April 6, 2010 motion hearing deadline. (See Docket No. 63.) <u>No further motions may be filed in this case without prior leave of Court, or unless so directed by the Court.</u>") (original emphasis). Yet, in the Letter, the City states the following:

> Absent further guidance from the Court, the City intends to submit a formal motion: (1) to reconsider the September 7 Order, to the extent it forbids communications with City personnel, such as Ms. Fraguli and Supervisor Alioto-Pier, whose official duties include developing and/or implementing the City's policies and practices regarding disability access; or in the alternative (2) to revise the class definition to exclude from the class City officials and employees with such duties.

Letter at 2. The filing of a formal motion without Court approval would be a direct violation of this Court's Order.

      Second, the filing of a motion for reconsideration without prior court approval is a violation of the local rules. Pursuant to Local Rule 7-9(a), "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." The City's intended filing would directly violate this rule. In any event, the City presents no new law or evidence that would justify reconsideration. *See* Local Rule 7-9(b). The City contends that it needs to

The Honorable Saundra B. Armstrong
Re: *Kirola et al. v. CCSF*  No. C07-3685 SBA (EMC)
September 17, 2010
Page 2

"consult [with Ms. Fraguli] in preparation for trial."[1]  This argument was considered and rejected by this Court in its September 7 Order.  Dkt. No. 399 at 4 ("Nor has the City identified any specific reason that would warrant excepting these class members from the well-established rules of Professional Conduct, other than a nebulous need to 'prepare for trial.'").  Thus, even if the City sought reconsideration through proper means, any such request should be denied on the basis of repetition of argument.  *See* Local Rule 7-9(c).

Furthermore, the City's past and ongoing communications with Mr. Fraguli raise several concerns.  The City states that Ms. Fraguli wrote her letter to the Court after learning of the Court's September 7 Order.  This only begs the question: How did Ms. Fraguli learn of the Court's Order?  It seems clear that the City is still communicating with Ms. Fraguli regarding this litigation either directly through the City Attorney's Office, or indirectly though Ms. Fraguli's superior, Susan Mizner, who is also a licensed attorney (State Bar No. 163452).

The City also openly contends that it represents Ms. Fraguli.  Letter at 2 ("As City officials, Ms. Alioto-Pier and Ms. Fraguli are entitled to representation by the City Attorney's Office in connection with their official acts and duties.").  The City further admits that it had pre-certification communications with Ms. Fraguli, and that she "worked actively with the City Attorney's Office in the defense of this case."  Letter at 1.  Pursuant to California Rule of Professional Conduct 3-310(c), no attorney shall accept or continue representation of more than one client in a matter in which the interests of the clients actually or potentially conflict, without the informed <u>written</u> consent of each client.  Therefore, the City was required to disclose its conflict of interest and obtain a written consent from Ms. Fraguli prior to representing her and accepting her help in defending this case.  Plaintiffs request that the City provide a copy of Ms. Fraguli's written consent so that they may determine whether a motion to disqualify counsel is warranted.

Lastly, the City attempts to group together Ms. Fraguli and City Supervisor Michela Alioto-Pier as class members with whom the City Attorney must communicate.  This characterization is erroneous.  Ms. Alioto-Pier is a named Defendant due to her membership on the Board of Supervisors, and is therefore a party to this action.  The City does not need the Court's permission to communicate with her.  Consequently, it is unnecessary for the Court to modify the definition of the class, or issue an order permitting communication with Ms. Alioto-Pier.  Ms. Fraguli, by contrast, is neither a named Defendant, nor a City official.  She is merely an employee-class member who has knowledge of the subject matter of this litigation.  Her situation is analogous to that of an employee-class member in a discrimination or wage-and-hour

---

[1] Plaintiffs do not understand the City's purported need for Ms. Fraguli's help in preparing for trial.  Ms. Fraguli did not submit a declaration in opposition to class certification, and the City did not disclose her as person with discoverable information until the discovery cut off (March 31, 2010).  Ms. Fraguli should have been more involved in this litigation, and disclosed much earlier if she is as important to the City's defense as is now claimed.  Further, the City has never been able to identify any specific knowledge or information that Ms. Fraguli has that her supervisor, Ms. Mizner, lacks.  The Rule 26 subject matter disclosures of the two employees are literally identical.

The Honorable Saundra B. Armstrong
Re: *Kirola et al. v. CCSF*  No. C07-3685 SBA (EMC)
September 17, 2010
Page 3


class action.  Plaintiffs are unaware of any court that has permitted unrestricted, ex parte
communications between a defendant and a class member in the employment class action
context.  Such communications should be prohibited in this matter as well.

Very truly yours,

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

*/s/ Guy B. Wallace*
GUY B. WALLACE
Attorneys for the Plaintiff Class

cc: E-service List
    Joanna Fraguli