UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IVANA KIROLA, et al., | Case No:  C 07-03685 SBA |
| Plaintiffs, | **ORDER GRANTING ABSENT CLASS MEMBER JOANNA FRAGULI'S MOTION FOR A MODIFICATION OF CLASS DEFINITION TO EXCLUDE HER AS A CLASS MEMBER** |
| vs. | |
| THE CITY AND COUNTY OF SAN FRANCISCO, et al., | |
| Defendants. | Dkt. 495 |

The parties are presently before the Court on Absent Class Member Joanna Fraguli's Motion for a Modification of the Class Definition to Exclude Her as a Class Member.  Dkt. 495.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

## I.    BACKGROUND

### A.    PROCEDURAL HISTORY

On July 30, 2010, the City filed an Administrative Motion to Authorize Communications with Class Members.  Dkt. 353.  In its motion, the City sought authorization to communicate with eight specific class members, as well as "[o]ther City employees/officials whose responsibilities include physical access issues."  Id. at 2.  The City argued that six of the eight identified class members – including Joanna Fraguli, who uses a wheelchair for mobility – are current or former City officials whose responsibilities include physical access issues.  The City contended that free communication with these individuals was essential to allow the City to prepare adequately for trial.  On September 7, 2010, the Court issued an Order denying the

City's motion, on the ground that the applicable rules of professional conduct prohibit communications by an attorney with a represented client without express consent of the attorney, including communications with individual class members once a class action has been certified.  See Dkt. 399 at 2 (citing Cal. Rule of Prof. Conduct 2-100; ABA Rule 4.2; Resnick v. American Dental Ass'n, 95 F.R.D. 372, 377 (D.C. Ill. 1982)).

On October 6, 2010, the City filed a notice of appeal of the Court's September 7, 2010 Order.  Thereafter, on October 8, 2010, the City filed an administrative motion seeking leave to file a motion for reconsideration of the Court's September 7, 2010 Order.  Dkt. 414. Alternatively, the City sought leave to move to modify the class to exclude City officials and employees with official duties that include developing and/or implementing the City's policies and practices regarding disability access issues.  Id.  On November 2, 2010, the Court denied the City's motion because: (1) the Court no longer had jurisdiction over the proposed motion for reconsideration in view of the City's notice of appeal; and (2) due to the City's delay in requesting modification of the class, the City failed to show good cause for leave to be granted. Dkt. 423.

Subsequently, at the January 25, 2011 pretrial conference, the Court continued the trial date to April 4, 2011 to allow the parties to take limited discovery directed to the City's updated exhibit list.  Dkt. 462.  The Court also granted the City leave to take the deposition of Ms. Fraguli.  Id.  On February 3, 2011, the City's counsel notified Plaintiffs' counsel that they elected not to pursue Ms. Fraguli's deposition.  Emery Decl. Ex. N, Dkt. 469.  Two business days later, Plaintiffs' counsel served Ms. Fraguli with a deposition subpoena, directing her appearance for deposition on February 15, 2011.  Id. Ex. O.  Upon receipt of the subpoena, Ms. Fraguli contacted Plaintiffs' counsel to advise them that she was unable to appear at the deposition due to a medical procedure.  Lee Decl. Ex. A, Dkt. 471; Fraguli Decl. ¶ 7, Dkt. 495-1.  In her confirming letter to Plaintiffs' counsel, dated February 14, 2011, Ms. Fraguli stated: "because each time you have called me you have been aggressive, hostile, intrusive and

inappropriate, I am not willing to be deposed without my own counsel to represent me.  I am pursuing the option of independent counsel …."  Lee Decl. Ex A.[1]

On February 14, 2011, the City filed an administrative motion for leave to file a motion to quash the deposition subpoena Plaintiffs served on Ms. Fraguli.  The Court granted the City leave to file the motion, and after briefing on the motion, granted the City's motion to quash on the ground that only the City had been granted leave to depose Ms. Fraguli.  Dkt. 481.

Now, Ms. Fraguli, through her own counsel, moves for a modification of the class definition to exclude her as a class member.  Dkt. 495.  At bottom, Ms. Fraguli argues that the Court should modify the class to exclude her in order to avoid an irreconcilable conflict of interest with the class that precludes adequate representation.  Id.  In the alternative, Ms. Fraguli moves to allow an exception to California Rule of Professional Conduct 2-100 so that the City's counsel can communicate with her on an ex parte basis.  Id.  The City has filed a joinder in Ms. Fraguli's motion, while Plaintiffs oppose her motion.[2]

**B.    MS. FRAGULI'S DECLARATION**

Ms. Fraguli submits a declaration in support of her motion.  In her declaration, she states that she is employed by the City as the Deputy Director for Programmatic Access of the Mayor's Office on Disability ("MOD").  Fraguli Decl. ¶ 1, Dkt. 495-1.  She has held this position since July of 2006.  Id.  She explains that MOD is responsible for overseeing the implementation and local enforcement of the City's architectural, communication, and

---

[1] In response, Plaintiffs' counsel, Mark Johnson, submits a declaration stating that "at no time during either of my telephone conversations with Ms. Fraguli did I say anything to her that was inappropriate, rude, or aggressive."  Johnson Decl. ¶ 2, Dkt. 501.

[2] On June 4, 2010, the Court certified the following class of persons:

All persons with mobility disabilities who are allegedly being denied access under Title II of the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, California Government Code Section 11135, et seq., California Civil Code § 51 et seq., and California Civil Code § 54 et seq. due to disability access barriers to the following programs, services, activities and facilities owned, operated and/or maintained by the City and County of San Francisco: parks, libraries, swimming pools, curb ramps, sidewalks, cross-walks, and any other outdoor designated pedestrian walkways in the City and County of San Francisco.  See Dkt. 285.

1  programmatic access obligations under the Americans with Disabilities Act of 1990 ("ADA"),

2  as well as other federal, state, and local disability laws.  Id. ¶ 2.

3      Ms. Fraguli further explains that, in her position at MOD, she oversees special projects

4  for the City, such as plans for disaster sheltering of persons with disabilities in the event of a

5  major disaster and the design of the Accessible Pedestrian Signals installation policy.  Id. ¶ 4.

6  She serves on various technical advisory groups regarding transportation facilities and

7  streetscape design, representing both the access needs of people with all disabilities and

8  efficacy of use.  Id.  She also creates and leads training programs on the subject of compliance

9  with disability rights laws and their practical applications, and develops and leads training for

10 the ADA coordinators in each department of the City.  Id.  She states that she is "directly

11 involved with every disability access issue reported to the MOD through the City's grievance

12 intake program."  Id.

13     Ms. Fraguli asserts that, because of her work at MOD, she possesses "an in-depth

14 knowledge of access issues at many City facilities."  Id. ¶ 5.  She "has detailed knowledge of

15 most access complaints that MOD receives directly regarding curb ramps in San Francisco, and

16 all complaints reported to the City involving maintenance of accessible features."  Id.

17 Furthermore, Ms. Fraguli states that, prior to class certification in this case, she acted as "client

18 liaison" for the City's counsel by assisting counsel with responding to discovery requests,

19 gathering relevant documents, identifying potential witnesses, and providing information

20 regarding the existence and status of the City's policies and procedures regarding disability

21 access.  Id. ¶¶ 5, 12.

22     With respect to the allegations in this case, Ms. Fraguli explains that her "official duties

23 include responsibility for developing, and implementing on a day to day basis, the very

24 disability access policies and procedures that plaintiffs allege discriminate against them and

25 members of the class."  Id. ¶ 11.  She states that, in her capacity as Deputy Director for

26 Programmatic Access, she is "primarily responsible for implementation of the City's Self-

27 Evaluation Plan as it relates to programmatic and communication access issues for people with

28 disabilities, the very plan that plaintiffs contend the City has failed to 'adopt or implement.'"

Id.  In addition, Ms. Fraguli explains that her official duties include training City department heads and employees regarding disability access issues, overseeing special projects such as plans for emergency evacuation of persons with disabilities, accessibility of events taking place on City property, and supervising the City's day to day responses to disability access complaints and inquiries.  Id.  She states that she "has broad knowledge of the practices of departments throughout the City regarding disability access, as well as first-hand knowledge regarding the City's disability access policies and how City personnel are trained regarding these policies."  Id.

Moreover, Ms. Fraguli asserts that the named Plaintiff Ivana Kirola, as class representative, "has interests that are directly antagonistic to my own, since my alleged actions or omissions as a Deputy Director of MOD are challenged in this case."  Id. ¶ 12.  Ms. Fraguli also avers that she is "unable to assist defendant counsel in defending the very policies and programs [she] helped implement and now oversee[s]."  Id. ¶ 13.  Finally, she states that she "is prevented from participating in the defense and defending [her] own work solely by virtue of [her] physical disability."  Id.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  See also General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); Andrews Farms v. Calcot, LTD., 2010 WL 3341963, *3 (E.D. Cal. Aug. 23, 2010) (a court "retains broad authority to modify or withdraw certification at any time where it appears the class definition is inappropriate or inadequate") (citing Armstrong v. Davis, 275 F.3d 849, 871 (9th Cir. 2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504-05 (2005)).

Moreover, Federal Rule of Civil Procedure 23(a)(4) imposes on the trial court "a continuing duty to undertake a stringent examination of the adequacy of representation by the named class representatives and their counsel at all stages of the litigation."  In re General

1   Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1124 (7th Cir. 1979).  "Resolution of

2   two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have

3   any conflicts of interest with other class members and (2) will the named plaintiffs and their

4   counsel prosecute the action vigorously on behalf of the class?"  Hanlon v. Chrysler Corp., 150

5   F.3d 1011, 1020 (9th Cir. 1998); see also Andrews Farms, 2010 WL 3341963, *4 (citing

6   Amchen Products, Inc. v. Windsor, 521 U.S. 591, 626 (1997)) (to satisfy the adequate

7   representation requirement, a named "class representative must not be antagonistic or have

8   conflicts of interest with other potential class members").

9   **III.    ANALYSIS**

10          Here, Ms. Fraguli argues that her interests are antagonistic to other class members, and

11  this creates an intra-class conflict that preludes adequate representation of the class as defined.

12  Specifically, Ms. Fraguli asserts that courts "uniformly recognized that a conflict exists when

13  some class members have participated in the very conduct that is being challenged on behalf of

14  the class."  Fraguli Mtn. at 8.  Ms. Fraguli asserts that in order to resolve this conflict, the Court

15  should redefine the class to exclude her as a class member.[3]

16          In support of her argument, Ms. Fraguli relies on several cases that found a class

17  conflict to exist in the employment discrimination context when the class is broadly defined to

18  include both supervisory and non-supervisory employees.  For instance, in Donaldson v.

19  Microsoft Corp., 205 F.R.D. 558 (W.D. Wash. 2001), female and African-American employees

20  and former employees brought an action under Title VII of the Civil Rights Act, alleging that

21  defendant's compensation and promotion practices were discriminatory based on gender and

22  race.  Plaintiffs moved for certification of a class that included both supervisory and non-

23  supervisory employees.  The district court denied the motion due to "serious concerns about

24

25  _____

26          [3] This class action was certified under Federal Rule of Civil Procedure 23(b)(2)
    (declaratory or injunctive relief with respect to the class as a whole).  See Dkt. 285.  A class
27  action certified under Rule 23(b)(2) "does not require notice or permit members to opt out,
    although a court in its discretion may provide for an opt-out or notice."  Crawford v. Honig, 37
28  F.3d 485, 487 (9th Cir. 1994).  Procedures for notice and opt-out were not provided in this
    case.

potential conflicts of interest between the class representatives and members of the putative class" that would preclude adequate representation.  Id. at 568.  The court noted:

> Two of the three named plaintiffs … are former Microsoft supervisors. As such, they were obligated to implement the very supervisory system which this litigation challenges.  A conflict of interest may arise where a class contains both supervisory and non-supervisory employees.  See, e.g., Appleton v. Deloitte and Touche, 168 F.R.D. 221, 233 (M.D. Tenn. 1996); Wagner v. Taylor, 836 F.2d 578, 579 (D.C. Cir. 1987).

Id.

The Donaldson court also observed that "not only are the named plaintiffs' interests in potential conflict with those of the putative class, but class members are also potentially in conflict with one another" as there were "a significant number of potential class members who are current or former managers."  Id.  In view of this potential conflict, the court found:

> Since plaintiffs['] allegations about disparate treatment and disparate impact arise directly from the evaluation system at Microsoft, the Court is unable to envision a class which would include both those who implemented the ratings system and those who allegedly suffered under it.  This conflict appears insurmountable.

Id.

Similarly, the district court in King v. Enterprise Rent-A-Car Co., 231 F.R.D. 255 (E.D. Mich. 2004) denied a motion for class certification in an employment action alleging race discrimination where "certain Plaintiffs also acted in a supervisory capacity over other Plaintiffs and participated in the promotion process for those members."  Id. at 264.  In finding that the adequate representation requirement had not been met, the court stated:

> [C]ourts have found that a conflict exists where certain members participated in the very behavior that is being challenged.  Here, the same conflict exists between named Plaintiffs and putative class members.  Certain supervisor class members employed the very promotion procedures that Plaintiffs complain about.  Those class members, therefore, are potential witnesses against other class members. … Thus, because of the inherent conflict in this case among class members who acted in a supervisory capacity over other class members, Plaintiffs failed to show that they would adequately represent the proposed class.

Id. at 265.

Likewise, in the employment discrimination action <u>Bacon v. Honda of America Mfg.</u>, <u>Inc.</u>, 205 F.R.D. 466 (S.D. Ohio 2001), the district court denied class certification on the ground that the adequate representation requirement has not been satisfied, in view of the inclusion of both supervisory and non-supervisory employees in the proposed class.  In so finding, the court stated: "[a]t Honda, exempt level employees and even team leaders participate in employment decisions touching upon production associates in matters of promotion, associate evaluations and discipline which would place them in the conflicting position of having to defend their actions against a discrimination challenge." <u>Id</u>. at 481-82.

In addition, Ms. Fraguli relies on <u>Andrews Farms</u>, 2010 WL 3341963, *1, wherein the district court of the Eastern District of California considered a motion by defendants to decertify the class, on the ground that representation was inadequate given class counsel's representation of class members who had a conflict with other members of the certified class. <u>Id</u>.  There, the court found that class members who, as former board members, had authorized the real estate investment that was challenged as improper had an "irreconcilable conflict of interest" with non-board class members who had not authorized the challenged conduct.  <u>Id</u>. at *7.  However, the court denied defendants' motion to decertify the class because the court had previously narrowed the class definition to exclude the conflicted class members.  <u>Id</u>.  In so finding, the court observed that "[o]rdinarily, if a court discerns a conflict like the one in this case, the proper solution is to create subclasses of persons whose interests are in accord," rather than to decertify the class.  <u>Id</u>. (citing <u>Payne v. Travenol Labs., Inc.</u>, 673 F.2d 798, 812 (5th Cir. 1982)).

Finally, Ms. Fraguli cites <u>Horton v. Goose Creek Independent School Dist.</u>, 690 F.2d 470, 487 (5th Cir. 1982) for the general proposition that an intra-class conflict may preclude a class representative from adequately representing the class as a whole.  There, the district court denied plaintiffs' motion for class certification on the ground that a significant number of class members opposed the representative plaintiffs' challenge to a school district's use of a canine contraband detection program.  The Fifth Circuit Court of Appeals reversed, holding that there are available "procedures to protect the interests of absentee[] [class members] before

purporting to bind them," short of denying class certification.  Id. at 486-87.  For instance, the Fifth Circuit explained that the district court "could have ordered notice of the action and of the relief requested by the plaintiff to the other students and parents to be posted or distributed to the students at the schools, an effective and relatively inexpensive way to apprise other members of the litigation and to invite intervention to challenge the representation or to oppose the named plaintiffs."  Id. at 487 (citing Snyder v. Board of Trustees, 286 F.Supp. 927, 931 (N.D. Ill. 1968) (inviting dissenting class members to intervene to request modification of the judgment or exclusion from the class)).

Applying those principles here, Ms. Fraguli asserts that she has an irreconcilable conflict with the class that precludes adequate representation.  In particular, she notes that the class is presently defined as "[a]ll persons with mobility disabilities who are allegedly being denied access … due to disability access barriers to the following programs, services, activities and facilities owned, operated and/or maintained by the City and County of San Francisco: parks, libraries, swimming pools, curb ramps, sidewalks, cross-walks, and any other outdoor designated pedestrian walkways in the City and County of San Francisco."  See Dkt. 285. Also, as noted by Ms. Fraguli, Plaintiffs allege that the City has violated the ADA and related disability access laws, and that the violations "arise from, and are the result of, the City's uniform failure to develop, adopt and implement, in a timely manner, policies and practices necessary to ensure that persons with mobility disabilities are provided access to the City's programs, services, and activities."  See Pls.' Trial Brief at 1, Dkt. 306.  Among the examples of the City's violations alleged by Plaintiffs in their trial brief are: "[f]ailing to adopt and implement policies and practices that require the identification and prompt removal of disability access barriers that constitute safety hazards to persons with mobility disabilities"; and "[f]ailing to adopt or implement a self-evaluation and transition plan pursuant to either Section 504 of the Rehabilitation Act of 1973 or California's Government Code Section 11135."  Id. at 2.

In view of Plaintiffs' allegations, Ms. Fraguli argues that Ms. Kirola, as a class representative, has interests that are directly antagonistic to hers, given that Ms. Fraguli's acts

or omissions as a Deputy Director of MOD are challenged in this action.  Ms. Fraguli also asserts that, under the authority presented, the conflict can be resolved by modifying the class definition to exclude her from the class.  See also Armstrong, 275 F.3d at 872 ("Where appropriate, the district court may redefine the class … may excise portions of a plaintiffs class allegations, and may even decertify the class.") (internal citations omitted).  The Court agrees. Like the supervisory employees in the employment discrimination actions cited by Ms. Fraguli, here, Ms. Fraguli is responsible, at least in part, for developing and implementing the very City programs and policies challenged by Plaintiffs.  Given her position at MOD, she participated in the very behavior that is being challenged, and is a potential witness against the allegations raised by other class members.  Therefore, Ms. Fraguli has a conflict with the class that precludes adequate representation, which can be remedied by excluding her from the class definition.

Moreover, Plaintiffs' arguments to the contrary are not persuasive.  First, Plaintiffs assert that the "principal source" of the conflict between Ms. Fraguli and the class representative "is Ms. Fraguli's own subjective disagreement with this action."  Pls.' Corrected Opp. at 3, Dkt. 502.  They then argue that a subjective disagreement cannot be the source of an intra-class conflict sufficient to find inadequate representation.  Id. at pp. 3-6.  But Ms. Fraguli has not argued that the source of the intra-class conflict here is her philosophical disagreement with Plaintiffs' decision to pursue this action.  Rather, the source of the intra-class conflict is the fact that Ms. Fraguli is a City official whose conduct at MOD is alleged to be unlawful.

Second, in an attempt to minimize the actual conflict, Plaintiffs contend that this case is really about architectural (as opposed to programmatic) access, and that Ms. Fraguli is only involved with programmatic access.  However, this argument is without merit, as Plaintiffs' filings include references to alleged failures by City personnel to provide programmatic access. See First Amended Complaint ("FAC") ¶ 3, Dkt. 294 (the City "severely limit[s] Plaintiffs' access to the CITY's facilities, programs, services, and activities by knowingly refusing to eliminate architectural and programmatic barriers"); id. ¶ 16 (the City "has numerous illegal physical and programmatic barriers to residents, visitors, and other individuals who use

1   wheelchairs and/or who have mobility disabilities … which deny such persons full and equal

2   access to the CITY's public premises, facilities, programs, services, and activities"); id. ¶ 18

3   (the City has received "numerous complaints regarding these and similar access barriers," but

4   its response has been inadequate); id. ¶ 19 ("[b]ecause of the Defendants' misconduct and

5   failure to remove architectural and programmatic access barriers, Plaintiffs have been denied

6   full and equal access to the CITY's facilities, programs, services, and activities").

7          Moreover, it is apparent from Ms. Fraguli's declaration that her job responsibilities are

8   not limited to programmatic access.  Ms. Fraguli states that she is the Deputy Director of the

9   City department responsible for overseeing the implementation and local enforcement of the

10  City's architectural, communication, and programmatic access obligations under the ADA and

11  other federal, state, and local disability laws.  Fraguli Decl. ¶ 2.  She describes her official

12  duties as including supervision of the City's response to disability access complaints from the

13  public.  Id. ¶¶ 4-5.  She has "detailed knowledge of most access complaints that MOD receives

14  directly regarding curb ramps in San Francisco, and all complaints reported to the City

15  involving maintenance of accessible features."  Id. ¶ 5.  She also trains City department ADA

16  coordinators on their ADA obligations.  Id. ¶¶ 4, 11.  She is "directly involved with every

17  disability access issue reported to the MOD through the City's grievance intake program."  Id.

18  ¶ 4.  Therefore, Plaintiffs' argument falls flat.

19         Third, Plaintiffs argue that Ms. Fraguli is not primarily responsible for policy decisions

20  and is therefore not in conflict with the class.  However, the case law cited by Ms. Fraguli

21  indicates that a conflict can arise out of the "participation" in decisions "touching upon"

22  challenged conduct.  See Bacon, 205 F.R.D. at 481-82.  Plaintiffs also ignore Donaldson v.

23  Microsoft, in which the proposed class included supervisory personnel who merely

24  implemented the system challenged by the Title VII employment discrimination suit.  See

25  Donaldson, 205 F.R.D. at 568.  These cases demonstrate that a class member's high-level

26  authority over policy decisions is not a prerequisite for a finding of an intra-class conflict

27  precluding adequate representation.  Furthermore, Plaintiffs' reliance on Stanton v. Boeing Co.,

28  327 F.3d 938 (9th Cir. 2003) is unavailing.  There, the Ninth Circuit held that the district court

1   acted within its discretion in certifying, in an employment discrimination action, a class that

2   included both supervisors and non-supervisory employees.  The Ninth Circuit agreed with the

3   district court that those objecting to class certification had failed "to identify a substantive issue

4   for which there is a conflict of interest between two or more sets of employees."  <u>Id</u>. at 958-59.

5   Here, Ms. Fraguli has identified such a "substantive issue," i.e., the fact that she participated in

6   the very behavior that is being challenged.  Therefore, <u>Stanton</u> is inapposite.

7       As a final matter, Plaintiffs argue in a summary fashion that Ms. Fraguli's conflict is

8   merely "speculative."  This argument is without merit, as there currently exists an overlap

9   between the acts and omissions alleged by Plaintiffs and the work performed by Ms. Fraguli in

10  her capacity as Deputy Director of MOD.[4]

11  **IV.     <u>CONCLUSION</u>**

12      For the reasons stated above,

13      IT IS HEREBY ORDERED THAT:

14      1.      Ms. Fraguli's Motion for a Modification of the Class Definition to Exclude Her

15  as a Class Member is GRANTED; the class definition as set forth in the Court's June 4, 2010

16  Order (Dkt. 285) is modified as follows (modification underlined):

> All persons with mobility disabilities who are allegedly being denied access
> under Title II of the Americans with Disabilities Act of 1990, Section 504 of the
> Rehabilitation Act of 1973, California Government Code Section 11135, et seq.,
> California Civil Code § 51 et seq., and California Civil Code § 54 et seq. due to
> disability access barriers to the following programs, services, activities and
> facilities owned, operated and/or maintained by the City and County of San
> Francisco: parks, libraries, swimming pools, curb ramps, sidewalks, cross-walks,
> and any other outdoor designated pedestrian walkways in the City and County of
> San Francisco.  <u>Excluded from the class is Joanna Fraguli, Deputy Director for
> Programmatic Access of the City and County of San Francisco's Mayor's Office
> on Disability.</u>

---

[4] It is unclear whether there are other City officials or employees that are similarly
situated to Ms. Fraguli and for whom the same rationale would apply for excluding them from
the class definition.  Therefore, the City is granted leave to file a memorandum directed to this
issue, as set forth below.  If a timely memorandum on this issue is not filed, it will be presumed
that there are no other such City officials or employees.  The parties are advised that leave is
not granted to move for reconsideration of the Court's ruling on Plaintiffs' Motion in Limine
No. 3 regarding untimely-disclosed witnesses or any other ruling.  <u>See</u> Dkt. 389 at 5-6.

1      2.      Ms. Fraguli's alternative motion for an exception to Rule 2-100 allowing the

2      City's counsel to communicate with her on an ex parte basis is DENIED as MOOT.

3      3.      The City is granted leave to file a memorandum, not to exceed ten (10) pages, by

4      no later than March 22, 2011 directed to the issue of whether there are other City officials or

5      employees that are similarly situated to Ms. Fraguli and for whom the same rationale would

6      apply for excluding them from the class definition.  Any responsive memorandum, not to

7      exceed ten (10) pages, shall be filed by no later than March 24, 2011.  No reply will be

8      permitted.

9      IT IS SO ORDERED.

10     Dated: March 17, 2011

SAUNDRA BROWN ARMSTRONG
United States District Judge

- 13 -