DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
ARI BARUTH, State Bar #258418
ELAINE M. O'NEIL, State Bar #142234
Deputy City Attorneys
Fox Plaza
1390 Market Street, Suite 401
San Francisco, CA  94102-5408
Telephone:    (415) 554-3897
Facsimile:    (415) 255-0733
E-Mail:       ari.baruth@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, ET AL.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVANA KIROLA, et al.,<br><br>    Plaintiff,<br><br>    vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 3:07-cv-03685 AMO<br><br>**THE CITY AND COUNTY OF SAN FRANCISCO'S RESPONSE TO PLAINTIFFS' POST TRIAL BRIEFING REGARDING "PHASE TWO" FACILITIES**<br><br>Hearing Date:    August 1, 2024<br>Time:    2:00 p.m.<br>Place:    Courtroom 10<br>Judge:    Hon. Araceli Martinez-Olguin |

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................1

II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ....................2

III.   PLAINTIFFS' EVIDENCE OF ALLEGED ADAAG VIOLATIONS FALLS
       SHORT IN ALL BUT A FEW INSTANCES ...........................................6

       A.   Botanical Gardens...........................................................................7

            1.   Plaintiffs Fail to Present Specific Evidence Sufficient to Warrant
                 Injunctive Relief Regarding the Designated Accessible Path.........7

            2.   Restrooms at the Botanical Gardens ...............................9

       B.   Minnie and Lovie Ward Recreation Center .............................................10

       C.   Bernal Heights Recreation Center ...........................................................11

            1.   Plaintiffs Do Not Establish Whether the Existence of Sand
                 Constitutes an ADAAG Violation ...............................................11

            2.   Plaintiffs' Expert's Testimony Calls Into Question the Feasibility
                 and Requirement for Having a Level Slope Outside the Gate to
                 the Playground Area ..........................................................12

            3.   Entrance Gate Hardware .................................................13

            4.   Plaintiffs Did Not Provide Sufficiently Specific Testimony
                 Regarding the Bernal Heights Restrooms.....................................13

                 a.   Doorway Thresholds...............................................13

                 b.   No Insulation on Lavatory Pipes.......................................13

                 c.   Plaintiffs Provide No Calculations or Measurements
                      Supporting their Claim Regarding Clearances for
                      Designated Accessible Toilet Stalls..................................13

       D.   Tenderloin Recreation Center ...................................................................13

            1.   Boys' and Girls' First Floor Restrooms.........................................14

                 a.   The Slope of the Accessible Route Leading to the
                      Accessible Toilets ................................................14

                 b.   Stall Door Hardware in the Boy's and Girl's First Floor
                      Restrooms .........................................................15

            2.   Second Floor Men's and Women's Restrooms .............................15

            3.   No Evidence Exists Demonstrating the Elevator Violates
                 ADAAG .................................................................15

       E.   Wo Hei Yuen Recreation Center ...........................................................16

            1.   Men's and Women's Restrooms....................................................16

            2.   Signage....................................................................16

       F.   Upper Noe Recreation Center ..................................................................16

1. Restrooms ................................................................................16

    a. Entrance Doors.................................................................16

    b. Plaintiffs Do Not Present Sufficiently Specific Evidence to Demonstrate the Restroom Doors Close Too Quickly ..17

2. Plaintiffs Present Insufficient Evidence From Trial to Demonstrate Lack of Signage as a Violation of ADAAG.............18

G. Eureka Valley, Gene Friend, Joseph Lee, and Richmond Recreation Center......................................................................................18

H. Martin Luther King Swimming Pool ........................................................18

IV. PLAINTIFFS' ARGUMENTS ABOUT THE CITY'S PURPORTED TRIAL CONCESSIONS MISS THEIR MARK ...............................................................19

V. PLAINTIFFS FAIL TO MAKE A SHOWING JUSTIFYING A PHASE THREE PROCEEDING ........................................................................................20

VI. CONCLUSION.................................................................................21

1

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Armstrong v. Schwarzenegger,*
  622 F.3d 1058 (9th Cir. 2010) ...............................................................20

*Doran v. 7 Eleven, Inc,*
  524 F.3d 1034 (9th Cir. 2008) ...............................................................13

*Gerritsen v. Warner Bros. Entm't Inc.*
  112 F. Supp.3d 1011 (C.D. Cal. 2015) ...................................................11

*Kirola v. City & Cnty. of San Francisco,*
  860 F.3d 1164 (9th Cir. 2017) ...........................................3, 4, 8, 9, 14, 19, 21

*Kohler v. Presidion Int'l, Inc.,*
  782 F. 3d 1064 (9th Cir. 2015) .............................................................6, 13

*Strong v. Valdez Fine Foods,*
  724 F.3d 1042 (9th Cir. 2013) ...............................................................6

**Rules**

Federal Rule of Civil Procedure (b)(2) .......................................................2

Federal Rule of Civil Procedure 23(a) .......................................................2

Federal Rule of Civil Procedure 52(a)(1) ...................................................3

**Regulations**

28 Code Federal Regulations
  § 36.403(f) ...........................................................................................9, 10

28 Code of Federal Regulations
  § 35.150 ...............................................................................................3

28 Code of Federal Regulations
  § 35.151 ...............................................................................................3

**Other References**

Americans with Disabilities Act Accessibility Guidelines
  § 3.5 .....................................................................................................8

Americans with Disabilities Act Accessibility Guidelines
  § 4.1.2(1) ...........................................................................................12

Americans with Disabilities Act Accessibility Guidelines
  § 4.1.6(2) ............................................................................................9

Americans with Disabilities Act Accessibility Guidelines
  § 4.13.10 ............................................................................................17

Americans with Disabilities Act Accessibility Guidelines
  § 4.13.11(2)(b) ........................................................................................................17

Americans with Disabilities Act Accessibility Guidelines
  § 4.13.6 ....................................................................................................................12

Americans with Disabilities Act Accessibility Guidelines
  § 4.30.7(1) ...............................................................................................................16

Americans with Disabilities Act Accessibility Guidelines
  § 4.8 ..........................................................................................................................8

## I.    INTRODUCTION

Through this "Phase Two" briefing the Court is tasked with the relatively limited scope of determining whether admitted evidence from the 2011 trial exists to establish a violation of ADAAG relating to certain conditions at a small number of City recreation and park facilities. Plaintiffs urge the Court to decide whether the Phase Two facilities "are in full compliance with ADAAG…" (P's briefing p. 3, ln 26-27) That issue is not before this Court; rather, this Court is examining the trial evidence related to 22 specific conditions at 11 locations to decide whether to issue injunctive relief as to those specific conditions. Plaintiffs have not presented sufficiently specific trial evidence to support finding these conditions constitute an ADAAG violation at the majority of the locations.

Plaintiffs claim that "any" ADAAG violation requires Phase Three proceedings regarding systemic injunctive relief. The Ninth Circuit did not issue such a requirement, nor would that be warranted. This Court may tailor future injunctive relief limited to any violations it finds in this Phase Two proceeding because the Ninth Circuit remanded with instructions to revisit injunctive relief that is tailored to additional violations found or, if necessary, systemwide conditions. Under Plaintiffs' interpretation, finding one violation of ADAAG for failure to have one sign identifying an accessible route or needing to adjust one bathroom door latch would trigger revisiting systemwide injunctive relief. That is not a fair reading of the Ninth Circuit's remand order.

Much of class counsel's brief contains conclusions of law and an extended description of ADAAG. San Francisco does not necessarily dispute the legal framework as presented; rather, San Francisco disagrees with the characterization of what the 2011 trial evidence shows. The trial evidence serves as the basis for determining ADAAG violations. Plaintiffs' lengthy brief cannot change the fact that the trial record lacks the requisite specificity to establish an ADAAG violation for the majority of the cited conditions. Scant expert testimony that a condition is "not accessible" fails to meet Plaintiffs' burden of proof. For the majority of the purported violations no more than conclusory and nonspecific testimony exists. The Ninth Circuit, in responding to Plaintiffs' challenges regarding purported ADAAG violations in City parks, playgrounds, and recreational facilities, found that the District Court did not err when it found that the Plaintiffs' evidence was not specific enough to establish ADAAG

violations. Plaintiffs' evidence presented here similarly falls short, and the criticism of Plaintiffs' experts by the District Court and affirmed by the Ninth Circuit holds true.

In this response, San Francisco addresses the evidence that class counsel relies on to support their arguments about a small number of ADAAG violations. The evidence does not justify injunctive relief as to the majority of the purported ADAAG violations. For the rest, San Francisco acknowledges a small handful of issues that it agrees to address. Given San Francisco's 2000 miles of sidewalks, 57,000 curb ramp locations, 220 parks spanning 4200 acres, and 28 public libraries, correcting 22 conditions out of the many thousands in San Francisco does not warrant Phase Three proceedings. Plaintiffs fare no better now than they did on their second appeal. The Ninth Circuit's ADAAG interpretations do not change the ultimate conclusion that the trial record demonstrates only isolated departures from ADAAG.

The City respectfully submits that apart from the few instances where the City agrees to remedy a condition, Plaintiffs fail to submit sufficiently specific information to justify injunctive relief.

## II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The City provides this recitation to provide important case background from the City's perspective, and to highlight relevant prior findings by this District Court and the Ninth Circuit.

Plaintiff Ivana Kirola filed the instant class action, claiming that San Francisco discriminates against mobility-impaired persons by failing to eliminate access barriers throughout the City's libraries, swimming pools, parks, and public right-of-way (i.e. the City's networks of sidewalks, curb ramps, crosswalks, and other outdoor pedestrian walkways). During the course of the litigation, the Court granted Plaintiff's motion for class certification, and certified the class (as described in plaintiffs' papers) pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2). Dkt 285.

The Court presided over a lengthy bench trial on Plaintiffs' claims, during which the parties presented evidence and testimony from thirty-six witnesses, including numerous experts. Following the conclusion of trial, the parties submitted extensive post-trial briefing and Proposed Findings of Fact and Conclusions of Law. Dkt. 614, 616, 617, 618, 632, 634, 635, 636, 646, 662, 681, 683. After considering the entirety of the evidence and testimony submitted, Judge Armstrong issued a 113-page

Findings of Fact and Conclusions of Law ("Findings") pursuant to Federal Rule of Civil Procedure 52(a)(1). Dkt 686. Judge Armstrong found, inter alia, that Plaintiff failed to carry the burden of demonstrating Article III standing, and, alternatively, that she otherwise failed to sufficiently substantiate any of her claims by a preponderance of the evidence. The District Court entered judgment in favor of the City. Plaintiff appealed certain of the Court's rulings.

a.)   <u>Plaintiffs' First Appeal to The Ninth Circuit Court of Appeals</u>

Plaintiffs challenged the District Court's determination that Ms. Kirola lacked standing as well as the Court's rulings on her new construction and alterations claims under 28 C.F.R. § 35.151 (as to the pedestrian right-of-way, parks and recreational facilities, swimming pools and libraries) and her existing facilities (i.e. program access) claims under 28 C.F.R. § 35.150 (as to the pedestrian right-of-way, libraries, and parks and recreational facilities). Plaintiffs did not appeal the adverse rulings on Ms. Kirola's claims regarding the City's grievance procedure, maintenance policies, repair procedures or the self-evaluation and transition plans.

With regard to the threshold question of standing, the Ninth Circuit Court held that because Ms. Kirola encountered a barrier connected to each of the challenged programs, she had standing to pursue claims on behalf of the certified class *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1174-76 (9th Cir. 2017). Turning to the merits, the appellate court disagreed with the District Court's analysis of Plaintiffs' claims under 28 C.F.R. § 35.151 relating to newly constructed or altered facilities. In its Findings, the District Court discounted the opinions of Plaintiffs' experts for a number of reasons, including their inconsistent methodologies and measuring protocols in conducting site inspections, their erroneous measurements and their reliance on ADAAG standards. On appeal, the Ninth Circuit held that "ADAAG applies to [the City's] public right-of-way, parks, and playgrounds. The District Court therefore erred in its conclusion that Kirola's experts' application of ADAAG to those facilities made them less credible." *Id*. at 1181.

Finally, the Ninth Circuit affirmed the District Court's rejection of Plaintiffs' program access claims predicated on 28 C.F.R. § 35.150, which applies to existing facilities. The Ninth Circuit agreed with the District Court in holding that Plaintiff Kirola and other class members had failed to demonstrate "inaccessibility at a programmatic level." *Id*. at 1183-84 ("In sum, we conclude that

Kirola has not shown that the City operates its public right-of-way in a deficient manner so that the program, when viewed in its entirety, is not readily accessible to and usable by individuals with disabilities… [¶] We reach the same conclusion regarding San Francisco's RecPark program"). *Id.*

The Ninth Circuit remanded with two independent instructions. First, "[the District Court] shall apply the ADAAG as we [the Ninth Circuit] have interpreted it, and reevaluate the extent of ADAAG noncompliance." *Kirola,* 860 F.3d at 1185. In doing so, the Court is to reevaluate the credibility of the expert testimony presented, taking into account that ADAAG does apply to the public right-of-way, parks and playgrounds. *Id.* Second, "[o]nce the scope of any ADAAG violations at facilities used by [Plaintiff] and all other class members has been determined, [the District Court] shall revisit the question of whether injunctive relief should be granted." *Id.*

b.) The District Court's Application of the Ninth Circuit's ADAAG Interpretation on Remand

On the first remand, the City filed a Motion for Judgment as a Matter of Law. Dkt. 751. The District Court issued its March 12, 2021 Order Granting Defendant's Motion for Judgment. Dkt. 776. The District Court described its approach to deciding the City's motion as follows:

> In accordance with the Ninth Circuit's mandate, the Court, in addressing the City's motion for judgment, first considers the extent of ADAAG noncompliance, if any, with respect to the City's right-of-way, parks and playgrounds, libraries and swimming pools (constructed or altered after January 26, 1992). After making that determination, the Court will address whether and to what extent class-wide injunctive relief is appropriate

After carefully re-examining the evidence at trial in light of the Ninth Circuit's mandate for the facilities identified in the text of the plaintiffs' opposition brief, the District Court made the following findings:

- "Plaintiff failed to demonstrate by a preponderance of the evidence that the City's public right-of way violate ADAAG." Dkt. 776, at p. 21.

- As to the City's parks and playgrounds, the District Court found that of approximately 220 parks in the City Dkt. 686, Plaintiff established ADAAG violations with respect to two items in just two parks: "the lack of an accessible route at St. Mary's Playground and a

missing grab bar in a restroom located near the Golden Gate Park ballparks." Dkt 776, at 32.

- Regarding the twenty-eight libraries in the City's library system, the District Court found that Plaintiff established ADAAG violations in only one, the Main Library. This Court issued an injunction relating to those issues. Dkt. 822.

- Concerning the City's nine public swimming pools, the District Court found that "The Court finds that Plaintiff has failed to demonstrate by a preponderance of the evidence that any of the aforementioned pools contain features that violate ADAAG." Dkt. 776 at 48.

In light of these findings, the District Court found no basis for class-wide injunctive relief.

The District Court found that "the City has implemented a robust, multi-faceted infrastructure to address the needs of its disabled, including the mobility-impaired, population. Dkt. 776 at 51. Moreover, the violations the District Court identified must be considered in context. "There are hundreds, if not thousands, of measurements specific in ADAAG that govern restrooms and buildings, respectively." *Id.* "As such, the fact that the Court has identified some ADAAG violations at three facilities does not suggest, let alone support the conclusion that the violations are pervasive or of a systemic nature." *Id* at 51. The District Court concluded that injunctive relief was not warranted. The District Court granted the City's Motion for Judgment.

### c.) Plaintiffs' Second Appeal to the Ninth Circuit

Plaintiff appealed the District Court's 2021 grant of judgment to the City. The Ninth Circuit affirmed in part, reversed in part, and remanded for further proceedings. The Ninth Circuit held that "[a]lthough the district court appropriately found that the plaintiffs' evidence did not warrant the sweeping class-wide relief that the plaintiffs sought, the district court abused its discretion in denying relief for the ADAAG violations found." Dkt. 61-1, 3-4.

On remand, the Ninth Circuit instructed that the District Court should first issue injunctive relief as to the ADAAG violations the District Court found in its 2021 order. The District Court should then evaluate the evidence that was presented at trial of the alleged violations in 11 recreation facilities throughout the City and evidence from trial regarding the MLK Pool restroom stall door latch. Then, if

the District Court finds any further ADAAG violations based on the evidence presented at trial, the District Court may revisit the scope of any injunctive relief.

The Ninth Circuit left only a small sliver of the Plaintiffs' case open. The Ninth Circuit denied the majority of the relief sought by Plaintiffs. For instance, the Ninth Circuit found that "[t]he plaintiffs' contention that the district court failed to address other purported ADAAG violations at St. Mary's Playground lacks merit." Dkt. 61-1, p. 2, fn 1. Further, the Plaintiffs contended at oral argument that the District Court also found ADAAG violations in its prior findings of fact and conclusions of law at curb ramps. The Ninth Circuit rejected this argument because the Plaintiffs did not establish ADAAG violations as they did not show whether the existing curb ramps were built after January 26, 1992. The Plaintiffs also challenged the District Court's findings as to the facilities and purported ADAAG violations the District Court addressed. The Ninth Circuit affirmed the District Court as to all but one such finding. The Plaintiffs also raised three specific challenges related to the District Court's library-related findings. The Ninth Circuit held each of those challenges fail. Dkt. 61-1, at 6. The Ninth Circuit rejected multiple other arguments put forth by the Plaintiffs, resulting in its narrow instructions to the District Court on remand.

The City filed a petition for writ of certiorari to the United States Supreme Court. That petition was denied.

## III.   PLAINTIFFS' EVIDENCE OF ALLEGED ADAAG VIOLATIONS FALLS SHORT IN ALL BUT A FEW INSTANCES

Plaintiffs must establish any departures from ADAAG with specificity. *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir. 2013) (a plaintiff who "proffer[s] evidence of precise measurements" "no doubt present[s] a more powerful case at trial" and noting that testimony may be insufficiently probative of an ADA violation where it does not exclude other possibilities). *Kohler v. Presidion Int'l, Inc.*, 782 F. 3d 1064 (9th Cir. 2015) similarly instructs that a level of specificity is required to establish a violation. This is consistent with the Ninth Circuit's finding in this matter:

> Contrary to plaintiffs' contentions, the district court did not run afoul of *Kohler*... and *Strong*...when it found that the plaintiffs' evidence was not specific enough to establish ADAAG violations. Although it is well established that neither expert testimony nor precise measurements are required to prove an ADAAG violation, the district court understood as much but fairly concluded that the plaintiffs had not met their burden of proof for the purported violations

at the Golden Gate Park Children's Playground, Stow Lake, Alamo Square Park, Holly Park, and the Conservatory of Flowers." *(Kirola Ninth Circuit Opinion 4/10/23 at p. 7)*

The trial record similarly lacks specific evidence sufficient for Plaintiffs' to satisfy their burden to establish more than a few isolated departures from ADAAG at any of the 11 facilities at issue. Plaintiffs rely primarily on vague testimony. In the few instances where specific, supported, and undisputed evidence exists of a violation, and the City did not offer expert testimony rebutting the issue, the City agrees to perform remedial work as described below.

**A.      Botanical Gardens**

Plaintiffs seek injunctive relief relating to the designated accessible path and bathrooms at the Botanical Gardens. Each are addressed below.

**1.      Plaintiffs Fail to Present Specific Evidence Sufficient to Warrant Injunctive Relief Regarding the Designated Accessible Path**

As correctly pointed out in Plaintiffs' papers, the Botanical Gardens offer 55 acres of landscaped gardens (See Wallace Decl. Ex. HH) containing a circulation walking path which the City altered between 2008 and 2011 (See Wallace Dec, Ex. F at 1175-1176). At trial, Plaintiffs' expert Mr. Mastin testified regarding the designated accessible path. He testified that he "inspected the Botanical Gardens twice" once during pre-construction and also after construction was performed. Baruth Decl., Ex. 1 at 1175-1176. Regarding that construction, Mr. Mastin testified that "there were pathways that were improved and created to provide accessibility and there were other pathways that were just repaved or modified or altered that were not intended to be accessible. And they pretty much extended throughout the entire facility." Baruth Decl., Ex. 1 at 1185. To provide scale to the size of the facility, as part of his testimony regarding the bathrooms, Mr. Mastin testified that a distance of "approximately 1500 feet" exists between the two bathrooms at the Botanical Gardens. Baruth Decl., Ex. 1 at 1181. Looking at the map of the Botanical Gardens supplied by Plaintiffs (Ex HH to Wallace Dec), it is obvious that the designated accessible pathways all around the gardens cover far more ground, perhaps three or more times, than the presumably direct path of approximately 1500 feet between the two bathrooms.

1    Without identifying any specific locations among the hundreds or thousands of feet of this

2  path, Mr. Mastin testified that "in 17 places 5.7 percent running slope to 15.4 percent where five

3  percent would be the maximum without handrails and ramp features." Baruth Decl., Ex. 1 at 1186. Mr.

4  Mastin continued that "there were three portions that were added up to 180 feet of continuous,

5  nonaccessible running slope along these paths." *Id.*  Plaintiffs cite no other evidence from the trial

6  record in support of their motion.

7    This testimony fails to provide specific locations identifying noncompliant conditions. The

8  designated accessible path extends well over 1500 feet, possibly to 4500 feet, and the evidence at trial,

9  and now presented in Plaintiffs' briefing, permits neither the Court nor San Francisco with sufficient

10  understanding where among the thousands of feet of path corrective work would be required, if it is

11  even required.

12    During design and construction of the Botanical Gardens' path improvement project, San

13  Francisco's access inspector and plan reviewer applied ADAAG standards and the California Building

14  Code. Baruth Decl., Ex. 1 at 2026: 8-19. And when San Francisco's access expert Mr. Wood

15  concluded that the paths in the Botanical Gardens are accessible, he likewise applied ADAAG

16  standards and the California Building Code. Baruth Decl., Ex. 1 at 2185:15 – 2186:7.

17    In addition to the lack of specificity and the opposing evidence by the City's witnesses, the trial

18  record shows that the Plaintiffs' experts failed to perform adequate measurements. This flaw was

19  noted by the District Court when making credibility findings for the Plaintiffs' expert witnesses.  The

20  Ninth Circuit previously explained that ADAAG's feature-specific guidelines, such as ADAAG § 4.8,

21  apply to ramps constructed on parks and playgrounds after January 26, 1992. *Kirola* 860 F.3d at 1179-

22  80. ADAAG § 4.8 requires that any part "of an accessible route" having a running slope greater than

23  5% be considered a ramp and to comply with ADAAG's technical requirements for ramps. An

24  "accessible route," in turn, is "[a] continuous unobstructed path connecting all accessible elements and

25  spaces of a building or facility." ADAAG § 3.5. Class counsel references this ADAAG § 3.5 for the

26  same citation (See MPA, p. 15 ln 8-11), and further discusses ADAAG § 4.8 for the requirements for

27  ramps. (See MPA, p. 15, ln 16-21). Class counsel discusses "any accessible route with a slope between

28

5% and 8.33% is considered a ramp…" (See MPA p. 16, ln 9-10) and concludes that the observations by Mr. Mastin at the Botanical Gardens therefore constitute an ADAAG violation.

But there is no evidence regarding how Mr. Mastin took his measurements. As for slope measurements on ramps, the Ninth Circuit previously pointed to the DOJ toolkit for the proposition that compliance with ADAAG's slope requirements should be measured with a level rather than calculating overall rise over run. *Kirola,* 74 F. Supp. 3d at 1223. When criticizing Plaintiffs' experts' slope measurements, however, the District Court found their use of a very short level, shorter than two feet, was a violation of the DOJ's express directions and magnified local and insignificant variations, which when properly measured fall within dimensional tolerances:

> Margen's team used a very short level to measure slopes, notwithstanding Margen's assurances that his team always used a two-foot level. Use of a short level is problematic because it "gives exaggerated readings it's so short [that] it picks up minor fluctuations." See *Id.* at 1227.

As Plaintiffs' experts used methods for measuring ramp slopes that directly contradicted DOJ's express guidance, and Plaintiffs have not identified trial evidence to the contrary regarding the slopes at the Botanical Gardens, the evidence does not support issuance of an injunction.

## 2. Restrooms at the Botanical Gardens

ADAAG § 4.1.6(2) provides that if alterations are made to an area containing a primary function, an accessible path of travel is required, which means a continuous route connecting the altered area to an entrance, including phones, restrooms, and drinking foundations that, where provided, serve the altered area. As explained in the Title II regulations, this applies "unless it is disproportionate to the overall cost and scope of the addition as established in § 36.403(f)." 28 C.F.R. § Pt. 36, App. C. Disproportionality is defined as costs exceeding 20% of the cost of the alteration to the primary function area. 28 C.F.R. § 36.403(f).

Plaintiffs identify both sets of restrooms in the Botanical Gardens as serving the designated accessible path, with neither purportedly complying with ADAAG. See Plaintiffs' MPA, p. 16, ln 26-27. There was no evidence presented at trial regarding potential estimates for construction costs to bring the bathrooms into compliance with ADAAG, nor was there evidence of the costs of construction associated with designated accessible pathway. Given this, Plaintiffs cannot satisfy the

requirement in § 36.403(f) of showing the costs to remediate the bathrooms would not be disproportionate to the costs of the alteration to the pathway. Plaintiffs could have presented expert testimony to provide estimates for public contracting costs but chose not to.

In addition, Plaintiffs' expert testimony regarding the bathrooms is vague. Mr. Mastin testified that remedying compliance issues "would be quite easy; like just lowering accessories. They are much too high. Insulating – there may not be hot water there." Baruth Decl., Ex. 1 at 1182- 1183. Mr. Mastin continued "I am just going from memory…the stalls are much too narrow to allow entrance by a person using a wheelchair, for example." *Id.* at 1183. Mr. Mastin further testified again that he was "going from memory, I believe they were over five percent cross slope." *Id*. The testimony continued to be vague with Mr. Mastin testifying that "I think there were some – oh yes. And the accessories were too high. the paper towel dispenser was too high, too, in both rest rooms." *Id.* In response, San Francisco's expert was, admittedly, just as vague. Mr. Wood, San Francisco's accessibility expert, testified regarding the Botanical Gardens that "a vast percentage of the site has been made accessible. It's only that you as you get in the back and there's some natural terrain topography issues that are very steep that are very, very difficult to get into because of the natural terrain." Baruth Decl., Ex. 1 at 2115-2116. Mr. Wood further testified regarding the bathrooms that "the facility itself was – was accessible." Baruth Decl., Ex. 1 at 2117.  When asked to explain, Mr. Wood testified that the "toilet rooms had accessible stalls, accessible lavatories, accessible doors." Baruth Decl., Ex. 1 at 2117.

Mr. Mastin also testified "there is a step getting up into both restrooms." Baruth Decl., Ex. 1 at 1183, which was not rebutted by Mr. Wood. San Francisco agrees to remedy that condition to the extent it exists.

The trial evidence relating to the bathrooms at the Botanical Garden reveals experts with equally vague testimony simply disagreeing about accessibility – with neither providing sufficiently specific testimony. However, Plaintiffs carry the burden to establish a violation, and have failed to do so here except for the step listed above.

### B.     Minnie and Lovie Ward Recreation Center

Plaintiffs seek an injunction relating to the ramps, the route to the ballfield, the path to the tennis courts consisting of dirt, and the lack of accessible signage. San Francisco believes the

testimony and trial evidence presented by Plaintiffs fails to adequately specify the purported

violations. The trial testimony provided by Plaintiffs suffers from the same issues as seen with the

other facilities. However, the recreation center was significantly renovated in 2013 and none of the

conditions identified by Plaintiffs exist anymore.[1] The City is agreeable to an order of injunction

permitting a showing that the 2013 renovation of the center addressed each of the conditions identified

by Plaintiffs.

### C. Bernal Heights Recreation Center

Plaintiffs seek injunctive relief relating to the playground surface consisting of sand, two issues

regarding the entrance gate, and the restrooms.

### 1. Plaintiffs Do Not Establish Whether the Existence of Sand Constitutes an ADAAG Violation

Plaintiffs contend the playground at the Bernal Heights Recreation Center "is located entirely

on sand and there is no accessible route to the playground equipment." (Plaintiffs MPA p. 21 ln 2-4).

"Entirely" is not accurate. The trial evidence does not confirm how much of the playground is indeed

accessible. Plaintiffs' expert Mr. Mastin comes closest when he estimated that "I think there were 22

play components involved with that play structure, but there are only – of 7 different types, meaning

swinging, climbing, et cetera, but there were only 2 that are actually accessible." Baruth Decl., Ex. 1 at

1121-1122. This testimony falls short of confirming with specificity the amount of accessible play

structures. At the very least it confirms that Plaintiffs' briefing is inaccurate in stating that the

playground is "entirely on sand." The information provided by an expert must be sufficiently specific

to persuade this Court that the perceived barrier constitutes an ADAAG violation.

Here, there is clearly accessibility to a portion of the playground, but rather than focus on the

percentage of space that is available, Plaintiffs' expert thinks only 2 of the 7 components are

accessible. What if those 2 components comprise more than half of the playground space? What if Mr.

---

[1] Pursuant to Federal Rule of Evidence 201(b), which permits a court to take judicial notice of a fact not subject to reasonable dispute, the City requests that the Court take judicial notice of this government document. https://sfrecpark.org/535/Minnie-Lovie-Ward-Recreation-Center-Fiel *Gerritsen v. Warner Bros. Entm't Inc.* 112 F. Supp.3d 1011, 1033-34 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the internet" such as websites run by governmental agencies.

Mastin was mistaken in that moment when he "thought" and it was 4 or 5 of the components that are accessible? The City respectfully submits that Mr. Mastin's testimony fails to provide the required level of specificity to support an injunction.

### 2. Plaintiffs' Expert's Testimony Calls Into Question the Feasibility and Requirement for Having a Level Slope Outside the Gate to the Playground Area

Plaintiffs contend the paved surface at the entrance gate to the playground has a cross-slope of 8.9% in violation of ADAAG § 4.13.6. Mr. Mastin testified that "I think, yeah, - looks like it's 8.7 percent cross – actually, 8.9 cross-slope" regarding "both the outside and the inside. The outside's on the sidewalk." Baruth Decl., Ex. 1 at 1123-1124.  San Francisco agrees to remedy the slope inside of the gate toward the entrance to the playground based on the cross-slope exceeding ADAAG requirements.  However, no remediation is required for the portion of the sidewalk outside the playground gate that is in the public right of way.

Mr. Mastin testified "it is not required" when asked whether people walking along the sidewalk from right to left passing the retaining wall adjacent to the entry gate have a level path of travel. Baruth Decl., Ex. 1 at 1263, referencing Ex 2142A Sequence 4). The outside area "on the sidewalk" is not on the site and an accessible route is to be provided only within the boundary of the site. ADAAG § 4.1.2(1).

With regard to a sidewalk's running slope in hilly San Francisco, Plaintiffs' access expert Gary Waters agreed that a sidewalk steeper than 5% need not comply with ADAAG's ramp requirements, including handrails and a level resting area every 30" of vertical rise. Baruth Decl., Ex. 1 at 1367: 1-7. That same concession applies here and is consistent with the rule articulated in the 2017 Ninth Circuit Opinion that ADAAG applies, "to the extent possible," to features in the public right of way that are described in Section Four of ADAAG.

When asked whether the street was steep, Mr. Mastin testified "I don't know what you mean by 'very steep.'" Baruth Decl., Ex. 1 at 1264. This leaves ambiguity, on whether it remains feasible to provide a level entrance to the gate going into the playground given the "steep" slope, however that may be defined, and what that would require for modifying the public right of way sidewalk.

### 3.      Entrance Gate Hardware

San Francisco agrees to modify the door hardware.

### 4.      Plaintiffs Did Not Provide Sufficiently Specific Testimony Regarding the Bernal Heights Restrooms

Except as noted, Plaintiffs fail to provide sufficiently specific testimony regarding the Bernal Heights restrooms to demonstrate a violation of ADAAG. *Kohler* 782 F.3d; *Doran v. 7 Eleven, Inc,* 524 F.3d 1034 (9th Cir. 2008) 524 F.3d.

#### a.      Doorway Thresholds

Mr. Mastin testified that the restrooms were inaccessible because they have door thresholds that "are about an inch high, and they should be no more than a half-inch high." Baruth Decl., Ex. 1 at 1140. This is not a measurement – it is an estimate of a very specific measurement. When looking at a purported violation based on a 1/2-inch discrepancy, the word "about" demonstrates the lack of specificity to support showing a violation.

#### b.      No Insulation on Lavatory Pipes

Lack of insulation is not necessarily an ADAAG violation, but possibly a maintenance issue. That notwithstanding, San Francisco will insulate any sink hot water and drain pipes presently lacking insulation.

#### c.      Plaintiffs Provide No Calculations or Measurements Supporting their Claim Regarding Clearances for Designated Accessible Toilet Stalls

Plaintiffs claim the clearances in the accessible toilet stalls are too narrow. The trial testimony supporting this from Mr. Mastin lacks sufficient specificity. Mr. Mastin testified that "the clearances in the accessible stalls, it's too narrow." Baruth Decl., Ex. 1 at 1140. Plaintiffs provide no further details or measurements. Information provided by a witness about an ADAAG violation must be sufficiently specific – here, they are not. *Kohler* 782 F.3d at 1070 n. 3. Consequently, the trial record does not support injunctive relief relating to the clearances at the designated accessible toilet stalls.

### D.      Tenderloin Recreation Center

San Francisco again believes the trial evidence and expert testimony lacks sufficient specificity to support injunctive relief for each of the issues identified, each of which San Francisco address here.

1    **1.      Boys' and Girls' First Floor Restrooms**

2            **a.      The Slope of the Accessible Route Leading to the Accessible Toilets**

3            Mr. Mastin testified that the cross-slope in the girls first-floor restroom "is too high, over twice

4    the allowable – and that's I've here that it's – I measured it for the length of the restroom or near

5    there." Baruth Decl., Ex. 1 at 1151. Mr. Mastin relied on trial exhibit 2411A (Sequence 6) (Ex Q to

6    Wallace Declaration) to show that he measured a cross-slope of 2.7% to 4.8% for the entire length of

7    the restroom. Plaintiffs present no trial evidence to show where the accessible toilet is located in the

8    restroom, or where the 2.7% cross slope exists compared to the 4.8% purported slope. Each is located

9    "for the length of the restroom or near there." Mr. Mastin does not state where he took those

10   measurements in the restroom, or what "near there" means. Is that just outside the bathroom? Is that

11   right at the drain? Moreover, Mr. Mastin does not specify how he made those measurements. The

12   Ninth Circuit previously upheld criticism of Plaintiffs' experts for using "inconsistent measurement

13   techniques" *Kirola,* 860 F.3d at 1183; 74 F. Supp.3d at 1222 ¶ 185,187, and for failing to take into

14   account dimensional tolerances, for which ADAAG specifically provides. *Id* at 1182, 1183; *Id* at

15   1222-23 ¶ 188. Plaintiffs do not address these issues here, and given the prior credibility

16   determinations sustained by the Ninth Circuit, the need for specific and explained data becomes more

17   critical.

18           The District Court previously criticized Plaintiffs' experts for ignoring dimensional tolerances.

19   "Two experts, in particular, inappropriately focused on minor construction variations and ignored

20   dimensional tolerances, which resulted in otherwise trivial and insignificant deviations being

21   characterized as access barriers – despite the fact that such deviations were permissible under industry

22   accessibility standards." 74 F. Supp.3d at 1227 ¶ 211. These credibility determinations are consistent

23   with the Ninth Circuit's interpretation of ADAAG and its instructions on remand, and apply to

24   measurements such as those made here.

25           As to the bathrooms, Mr. Mastin does not offer specific measurements; rather he vaguely

26   testifies to "sloping floors." Baruth Decl., Ex. 1 at 1157. This testimony lacks the specificity to

27   demonstrate an ADAAG violation as to "sloping" in the boy's bathroom.

28

b.    **Stall Door Hardware in the Boy's and Girl's First Floor Restrooms**

Mr. Mastin again does not provide sufficiently specific testimony regarding the height of the stall door hardware in the first-floor restrooms. He testified that "I think they were – it was above 54 inches high, which is the highest allowable under Federal Standards, and 40 inches is the highest allowable under California." Baruth Decl., Ex. 1 at 1157. Mr. Mastin does not identify the actual height of the stall door hardware; rather, it appears he identified the applicable standard and then speculated that the mounted hardware exceeded that. This lacks sufficient specificity to establish an ADAAG violation.

2.    **Second Floor Men's and Women's Restrooms**

Plaintiffs assert that the second-floor men's and women's restrooms are completely inaccessible. The trial evidence presented to support this conclusion is exclusively from testimony from Mr. Mastin without a single calculation. "A person in a wheelchair, for example would be unable to – or most persons in wheelchairs would be unable to open that door to leave the rest room, because it's – the clear space in order to do that is obstructed by the lavatory and the waste…receptacle." Baruth Decl., Ex. 1 at 1156. Absent a measurement, calculation, or other figure to verify lack of compliance with ADAAG, Plaintiffs cannot establish a violation.

3.    **No Evidence Exists Demonstrating the Elevator Violates ADAAG**

Plaintiffs contend the condition of the elevator amounts to a violation of ADAAG without specific and validated information. Mr. Mastin testified the Tenderloin Recreation Center was inaccessible, in part, because "the elevator is not functioning. And the staff mentioned that it has never really functioned in the time that this is constructed since – I'm assuming since 1992 when I believe there was a renovation." Baruth Decl., Ex. 1 at 1156. Plaintiffs present no other evidence regarding the elevator. Such unconfirmed speculation where Mr. Mastin is "assuming" certain things based on an unconfirmed conversation with an unidentified staff member who may or may not have accurate information about the elevator's condition cannot support a finding a violation of ADAAG.

San Francisco's expert Mr. Wood concluded that at the Tenderloin Recreation Center "what we found is accessible routes, accessible entrances, toilets." Baruth Decl., Ex. 1 at 2101. This admittedly vague testimony sufficiently contradicts the equally imprecise testimony from Plaintiffs.

### E.        Wo Hei Yuen Recreation Center

Plaintiffs seek injunctive relief at the Wo Hei Yuen Recreation Center relating to the dimensions of the men's and women's restroom stalls and the signage. The City's expert, Mr. Wood, testified "we found that the bathrooms were accessible." Baruth Decl., Ex. 1 at 2104-2105.

#### 1.        Men's and Women's Restrooms

Plaintiffs identify testimony from Mr. Mastin regarding the men's and women's restroom at the facility to support their contention that the facilities are inaccessible. The testimony again falls short. No measurements are referenced in the testimony. Instead of using measurements to justify his conclusions, Mr. Mastin testifies, without reference to any measurements, that "there's no way to actually get in there and close the door." Baruth Decl., Ex. 1 at 1159 But Mr. Mastin cannot support such a conclusion without actual measurements, rendering his testimony speculative.

#### 2.        Signage

San Francisco agrees to replace signage to ensure compliance with ADAAG § 4.30.7(1).

### F.        Upper Noe Recreation Center

Plaintiffs contend there are ADAAG violations in the Upper Noe Recreation Center restrooms. San Francisco disputes Plaintiffs' conclusions regarding violations of ADAAG at the restrooms, with its expert Mr. Wood testifying "it was claimed that the bathroom was inaccessible…, it has the features that we've seen in other facilities that are…common in accessible bathrooms." Baruth Decl., Ex. 1 at 2103-2104.

#### 1.        Restrooms

##### a.        Entrance Doors

Plaintiffs seek injunctive relief relating to the required pounds of force to open the restroom doors. However, Mr. Mastin's testimony remains vague and uncertain. "Well, the restroom doors were heavy, and they closed – too heavy to – heavier than they should be. Should be 5 pounds. And I believe they were 7 or 8." Baruth Decl., Ex. 1 at 1141. Mr. Mastin fails to provide an actual

measurement; rather, Plaintiffs present what he "believes." ADAAG § 4.13.11(2)(b) discusses a maximum force for pushing or fulling to be 5 pounds for interior hinged doors. Someone believing the door force was 7 or 8 pounds could possibly be mistaken for a door requiring 5 pounds of force. Also, Mr. Mastin was testifying regarding multiple restrooms with an unknown number of doors. He fails to specify which ones he believe required 7 or 8 pounds, further calling into question the sufficiency of his testimony.

Mr. Mastin also acknowledged that "door pressure can vary every day…depending on wind and other factors." Baruth Decl., Ex. 1 at 1272. This appears to be a concession that door pressure variation is a maintenance issue, not an ADAAG violation. He further conceded that door pressures vary "within a range" "even with regular inspections and adjustments." *Id* at 1272. Given this acknowledgement, Mr. Mastin's non-specific testimony about his belief that certain bathrooms need 7 or 8 pounds of force to operate appears to fall exactly into the range of door pressure figures he understands exist. Consequently, the trial evidence does not support a finding of an ADAAG violation.

**b.    Plaintiffs Do Not Present Sufficiently Specific Evidence to Demonstrate the Restroom Doors Close Too Quickly**

Plaintiffs contend the restroom doors close too quickly but without specific trial evidence to support such a finding. The extent of Mr. Mastin's testimony on the subject states that "they also close much too quickly, about twice as fast as they should so that can trap people trying to use it." Baruth Decl., Ex. 1 at 1142. Plaintiffs do not present any other trial evidence. Plaintiffs cite ADAAG § 4.13.10 and all of its specific requirements including that if a door has a closer than the sweep period of the closer shall be adjusted so that from an open position of 70 degrees, the door will take at least 3 seconds to move to a point 3 inches from the latch. Plaintiffs do not offer any trial evidence to show lack of compliance with these standards. If Mr. Mastin's estimate that the doors close "about twice as fast as they should," and the standards discuss 3 seconds of closing time, a measurement of time should be required to establish a violation. If not, the issue becomes one of Mr. Mastin estimating approximately one second, or even less, as the difference between a violation or not. The City believes that cannot support the finding of a violation of ADAAG.

**2.      Plaintiffs Present Insufficient Evidence From Trial to Demonstrate Lack of Signage as a Violation of ADAAG**

The evidence presented by Plaintiffs to support a finding of violation of ADAAG relating to signage at the Upper Noe Recreation Center is Mr. Mastin testifying "I think the chief barriers were a problem with signage." Baruth Decl., Ex. 1 at 1141. No specifics are provided, including what signage may be missing and where or whether there was existing signage that was noncompliant. Absent such information the trial evidence presented does not support the finding of a violation of ADAAG.

**G.      Eureka Valley, Gene Friend, Joseph Lee, and Richmond Recreation Center**

The expert testimony and trial evidence presented as to these four facilities exemplifies the lack of required specificity needed to support a violation of ADAAG. This is an utter failure to present competent evidence. The testimony from Mr. Mastin presented by Plaintiffs to support the finding of a violation of ADAAG as to Eureka Valley, Gene Friend, Joseph Lee, and the Richmond Recreation Center is as follows:

> Q: Mr. Mastin, did you identify barriers at the other recreation centers that you inspected similar to those that you've described with respect to the recreation centers that we've discussed?
>
> A: Yes, I did find similar barriers.
>
> Q: And were any of those other recreation centers that you inspected accessible, in your professional opinion?
>
> A: No. In my opinion, none of the ten that I inspected were accessible.

Baruth Decl., Ex. 1 at 1170-1171

There is no testimony referencing any specific purported violations, much less testimony or evidence relating to specific conditions at any of the four facilities. Plaintiffs' briefing suggests these facilities "lack compliant restrooms, entrances and accessible signage" but do not present evidence or expert testimony to support the conclusion. The trial evidence does not even get through the gate of consideration and falls far short of the requirement to present specific evidence to demonstrate a violation of ADAAG as to Eureka Valley, Gene Friend, Joseph Lee, and the Richmond Recreation Center.

**H.      Martin Luther King Swimming Pool**

San Francisco agrees to replace the toilet stall door latch.

**IV.   PLAINTIFFS' ARGUMENTS ABOUT THE CITY'S PURPORTED TRIAL CONCESSIONS MISS THEIR MARK**

Seeking to excuse their evidentiary failures, Plaintiffs try to shift the focus of these Phase Two proceedings to the City's alleged concessions during the 2011 trial. First, Plaintiffs contend that San Francisco did not present any evidence at trial rebutting purported ADAAG violations in the Phase Two facilities. Plaintiffs MPA p. 29, 14-15. This is just wrong. The City has provided several citations in this memorandum to testimony by the City's retained access expert Larry Wood and the City's Disability Access Coordinator Kevin Jensen regarding the Phase Two facilities (Baruth Decl., Ex. 1 at 119, 2101-2105, 2115-2117, 2185-2186). This argument also ignores the prior orders of the District Court and Ninth Circuit that tell a different story about the City's defense. This story, and the evidence presented by the City, resulted in the Ninth Circuit holding that the "district court appropriately found that the plaintiffs' evidence did not warrant the sweeping class-wide relief that the plaintiffs sought…" (Dkt. 61 at p3)

Next, Plaintiffs mention – again - the "roughly 400" barriers that they raised in the parties' Joint Case Management Conference Statement. (Dkt. 811). Plaintiffs erroneously claim, as they did before, that these 400 barriers are admitted ADAAG violations, and should be considered as evidence supporting injunction relief on remand. That is incorrect. The City previously explained that its trial witnesses testified about approximately 400 locations throughout the Rec Park program that needed alteration, and at the time of trial approximately 60 of those had been addressed. *Kirola*, 860 F.3d at 1173, (citing *Kirola*, 74 F. Supp 3d at 1230). Nothing in the trial record supports a conclusion that these access barriers were ADAAG violations. See, e.g., (Dkt. 686 at p. 113) Equally important, Plaintiffs had their opportunity to seek to include these 400 additional conditions in these remand proceedings, but failed to do so.

It is true that neither Plaintiffs nor the City is able to present the Court with a fulsome picture of the circumstances surrounding many of the 22 conditions at issue in this Phase Two. That is because the breadth of the case pursued by Plaintiffs was massive. Plaintiffs sought injunctive relief relating to alleged accessibility violations at thousands of locations and relating to millions of measurements. There was no opportunity during the 2011 timed trial for all of these locations and

measurements to be presented and rebutted in detail. Each side made their best decisions about how to proceed based on their trial strategy. But in the end the City was vindicated on a macro level, with the isolated violations not supporting any systemic failures in the City's policies and procedures for ensuring compliance with disability access laws.

Plaintiffs need to prove violations of ADAAG, and their continued lack of specific proof demonstrates why, after so many years, they are left with nothing more than being able to establish a small slice of violations compared to what they once alleged. Except for the isolated conditions identified in this opposition, the City respectfully requests denial of further injunctive relief.

## V. PLAINTIFFS FAIL TO MAKE A SHOWING JUSTIFYING A PHASE THREE PROCEEDING

The Ninth Circuit held that "[i]f the district court finds any further ADAAG violations, the district court should revisit the question of injunctive relief that is systemwide or tailored to any additional violations found." (9th circuit 2023 decision, last paragraph). Here, the City acknowledges a handful of additional ADAAG violations. Even if all the conditions identified by Plaintiffs at these 11 facilities were found to be ADAAG violations, that would still only amount to 22 specific violations in the City's entire recreation and parks system of over 220 parks spanning 4200 acres! In no universe could these small number of isolated violations ever justify systemwide injunctive relief.  Yet, under Plaintiffs' interpretation, finding a violation of ADAAG for failure to have one sign identifying an accessible route or needing to adjust one bathroom door latch would necessarily trigger revisiting the entire case. That does not appear to have been the intent of the Ninth Circuit or a fair reading of the opinion.

In granting the City's 2021 motion for judgment, the District Court found there was no showing that the proven violations are widespread or "are attributable to policies or practices pervading the whole system." (Dkt 776, Court order granting motion for judgment at p. 51, ln 4-7, citing *Armstrong v. Schwarzenegger,* 622 F.3d 1058, 1072-73 (9th Cir. 2010) (reversing grant of class-wide injunctive relief in an ADA class action where "plaintiffs presented insufficient evidence to justify the system-wide relief ordered by the district court.") To the contrary, the District Court found the City has implemented a robust, multi-faceted infrastructure to address the needs of its disabled,

including the mobility-impaired, population. *Kirola* I, 74 F. Supp. 3d at 1202-1205. Nothing in the evidence presented by Plaintiffs regarding the 11 facilities at issue in this Phase Two briefing changes those findings. They remain true and undisturbed today.

## VI.    CONCLUSION

The City respects the authority and discretion of this Court to issue injunctive relief, and respectfully submits that the trial evidence proffered by Plaintiffs does not warrant revisiting whether to explore potential systemwide injunctive relief. Rather, the City believes the evidence presented supports a limited injunction relating to the violations acknowledged by the City. The City has no objection to the form of injunction previously issued by this Court.

DATED:  May 24, 2024

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
ARI BARUTH
ELAINE M. O'NEIL
Deputy City Attorneys

By: _____
ARI BARUTH
Deputy City Attorney

Attorneys for Defendants CITY AND COUNTY OF
SAN FRANCISCO, ET AL.