UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVANA KIROLA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY & COUNTY OF SAN FRANCISCO, THE, et al.,<br><br>    Defendants. | Case No. 07-cv-03685-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PHASE II INJUNCTIVE RELIEF**<br><br>Re: Dkt. Nos. 825, 843 |

Before the Court is Plaintiffs' motion for permanent injunction. The matter is fully briefed and suitable for decision without oral argument. *See* Civil L.R. 7-1(b). This Order assumes familiarity with the case's record. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the motion for the following reasons.

I.    **BACKGROUND**

Pursuant to the Ninth Circuit decision and mandate, *Kirola v. City & Cnty. of San Francisco*, No. 21-15621, 2023 WL 2851368, at *3 (9th Cir. Apr. 10, 2023), *cert. denied sub nom. City & Cnty. of San Francisco, California v. Kirola*, 144 S. Ct. 185 (2023) ("*Kirola II*"), the Court ordered the parties to prepare post-trial briefing regarding the alleged Americans with Disabilities Act Accessibility Guidelines (ADAAG)[1] violations at the 11 identified facilities. ECF 814. Plaintiffs moved for injunctive relief, arguing that the evidence at the 2011 trial – based on the testimony of Plaintiffs' expert Jeffrey Mastin – showed violations at each of the 11 facilities. ECF 825. Defendants concede the existence of violations at various facilities, agree to remedy them,

---

[1] "ADAAG" refers to the 1991 ADAAG standards, which are applicable here. *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1178 (9th Cir. 2017) ("*Kirola I*").

and contest the remaining allegations. ECF 829.

## II. DISCUSSION

Defendants concede the existence of the following violations and agree to remedy them: (1) the step to get into both restrooms at the Botanical Gardens (ECF 829 at 15); (2) the slope inside the gate toward the entrance to the playground at the Bernal Heights Recreation Center (*id.* at 17); (3) the entrance gate hardware at the Bernal Heights Recreation Center (*id.* at 18); (4) the uninsulated sink hot water and drain pipes at the Bernal Heights Recreation Center (*id.*); (5) the lack of accessible signage at the Woh Hei Yuen Recreation Center (*id.* at 21); and (6) the toilet stall door latch at the Martin Luther King Swimming Pool (*id.* at 23). Accordingly, the Court **GRANTS** injunctive relief to these violations as unopposed.

The Court next turns to the alleged violations at the Minnie and Lovie Ward Recreation Center ("Ward Recreation Center"). Though Defendants seemingly agree to an injunction, they condition that agreement on a finding that the alleged violations were remedied as part of a 2013 renovation. ECF 829 at 15-16. In support of their position, Defendants ask the Court to take judicial notice of a San Francisco Recreation & Parks webpage announcing that renovations had been completed. *Id.* at 16 n.1. The Ninth Circuit mandate did not require the Court to consider evidence outside of the trial record, *see Kirola II*, 2023 WL 2851368, at *1-3, and for the purposes of this motion, the Court only considers evidence presented at the 2011 trial. *See* ECF 842 at 10-14. Thus, it will not consider post-trial renovations to the recreation center.[2] The Court therefore **DENIES** the request for judicial notice of the website. Defendants also move to file a sur-reply to object to evidence outside of the trial record that Plaintiffs include in their reply regarding recent site inspections at the Botanical Gardens, the Bernal Heights Recreation Center, and the Minnie and Lovie Ward Recreation Center. ECF 843 (citing ECF 837, 837-2). Because the Court does not consider evidence outside the trial submitted by Defendants or Plaintiffs, the Court **DENIES**

---

[2] Moreover, the webpage is not a proper subject of judicial notice as its contents are subject to dispute. *See* Fed. R. Evid. 201(b) (courts may take judicial notice of facts that are "not subject to reasonable dispute"). Indeed, Plaintiffs contend that Defendants do not provide any evidentiary support that the identified conditions at the Center have been remedied. ECF 837 at 7-8.

1  that motion as moot.

2        To prove up the alleged ADAAG violations at the Ward Recreation Center, Plaintiffs point
3  to trial evidence concerning inaccessible ramps, routes, and paths, and a lack of accessible
4  signage.  The ramps at the Ward Recreation Center have excessive running slopes and cross
5  slopes, and non-compliant handrails.  Wallace Decl. (ECF 826), Ex. F at 1165.  The East entrance
6  ramp has a cross slope of 3% in violation of ADAAG §§ 4.3.7 and 4.8.6, excessive running slopes
7  of up to 9.8%, in violation of ADAAG § 4.8.2, and the bottom section of the ramp has a 6.33%
8  running slope without handrails in violation of ADAAG § 4.8.5.  *Id.*, Ex. T.  Second, the routes to
9  the ball fields are not accessible because one route is a chained off dirt path that is too narrow to
10 navigate, in violation of ADAAG §§ 4.13.5, 4.13.6, 4.3.6, and 4.5.1.  Wallace Decl., Ex, F at
11 1163-64; Ex. S.  The alternative route has a 9.8% cross-slope, which is nearly five times greater
12 than permissible under ADAAG § 4.3.7, and "slopes towards [] a dropoff and a grate," so there is
13 a risk of injury "if you lose control."  *Id.* at 1168-69; Ex. V.  The pathways are also covered in
14 mud due to a flawed design where the drainage runs across the path, in violation of ADAAG §§
15 4.3.6 and 4.5.1, and the planting on the path is overgrown, restricting the available width, in
16 violation of ADAAG § 4.4.1.  *Id.*  Third, the path to the tennis courts consists of dirt, in violation
17 of ADAAG §§ 4.3.6 and A4.5.1.  Wallace Decl., Ex. F at 1166-67; Ex. U.  Fourth, there is a lack
18 of accessible signage in violation of ADAAG § 4.1.3(8)(d).  Wallace Decl., Ex. F at 1162-63.
19 Defendants respond only that the "trial testimony and evidence presented by Plaintiffs fails to
20 adequately specify the purported violations."  ECF 829 at 15-16.  The Court disagrees and finds
21 that Plaintiffs have sufficiently evidenced ADAAG violations at the Ward Recreation Center.
22 *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir. 2013).  The Court therefore **GRANTS**
23 injunctive relief as to the Minnie and Lovie Ward Recreation Center.

24       Defendants similarly dispute whether the trial evidence is sufficiently specific to establish
25 ADAAG violations at the remaining facilities.  The ADAAG standards are "as precise as they are
26 thorough, and the difference between compliance and noncompliance with the standard of full and
27 equal enjoyment established by the ADA is often a matter of inches."  *Kirola I*, 860 F.3d at 1178
28 (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945-46 (9th Cir. 2011)).  To prevail

1  on an ADA claim, a plaintiff need "not prove up a precise measurement." *Strong*, 724 F.3d at

2  1046; *see also Kirola II*, 2023 WL 2851368, at *3 ("it is well established that neither expert

3  testimony nor precise measures are required to prove an ADAAG violation"). However, a

4  plaintiff who "proffer[s] evidence of precise measurements" "no doubt present[s] a more powerful

5  case at trial." *Strong*, 724 F.3d at 1045.

6      At trial, Plaintiffs' expert testified about the accessibility barriers at the 11 identified

7  facilities. As detailed in the chart below, Plaintiffs presented sufficient evidence of ADAAG

8  violations at various facilities, including routes that are inaccessible due to greater than

9  permissible running slopes, lavatory stalls that are too narrow for a wheelchair to enter, mounted

10  bathroom hardware that is higher than permitted under the ADAAG, restroom doors requiring

11  greater force than permitted by ADAAG regulations, and playground structures that are built on

12  inaccessible materials. Defendants contend that Plaintiffs' evidence was not specific enough to

13  show ADAAG violations. For example, Defendants take issue with Plaintiffs' expert testifying

14  (1) "I think" there were 22 play components but only two structures were accessible (Baruth Decl.,

15  Ex. 1 at 1121-22); (2) thresholds that may not be more than half an inch were "about an inch high"

16  (Wallace Decl., Ex. F at 1139-40); (3) mounted hardware was above 54 inches without specifying

17  an exact measurement (*id.* at 1157); and (4) "I believe" restroom doors required "7 or 8" pounds of

18  force, when no more than five pounds is permitted (*id.* at 1141). Defendants, however, point to no

19  caselaw that the expert was required to provide exact measurements or that his opinions were

20  insufficient. Indeed, the Ninth Circuit has clarified that precise measurements are not required to

21  prove an ADAAG claim. *See Strong*, 724 F.3d at 1046. The Court therefore finds Defendants'

22  arguments unpersuasive. Moreover, with very limited exception, Defendants point to no trial

23  evidence contradicting Plaintiffs' expert testimony. In fact, the only places where defense experts

24  countered Plaintiffs' expert testimony were vague statements without foundation that the facilities

25  were "accessible." *See* Baruth Decl., Ex. 1 at 2117, 2101.

26      Defendants also insist that the testimony was too vague to prove violations at certain

27  facilities. *See* Wallace Decl., Ex. F at 1157 (the boys' bathroom has "sloping floors"); *id.* at 1141

28  ("I think the chief barriers were a problem with signage"); *id.* at 1170-71 (the expert found

"similar barriers" at other recreation centers and found that they "[n]one of [them] . . . were accessible"). This evidence is indeed too vague for the Court conclude that these barriers constituted ADAAG violations.

The Court organizes the alleged violations and the evidence presented regarding each violation in the chart below for the ease of viewing the evidence presented at each facility:

| Facility | Alleged Violation | Plaintiffs' Evidence | Defendants' Evidence | Finding |
|---|---|---|---|---|
| Botanical Gardens | Accessible route is too steep and lacks handrails | Expert Mastin testified that in 17 places, the running slope of the ramp is 5.7 to 15.4%, where 5% is the maximum permitted without handrails and ramp features. Wallace Decl., Ex. F at 1186; ADAAG §§ 4.3.7, 4.8.2. | Expert Wood testified that Plaintiffs' expert misapplied the ADAAG. Baruth Decl., Ex. 1 at 2185:15 – 2186:7. | ADAAG Violation.<br><br>The Court rejects Defendants' arguments that Plaintiffs did not specify the locations of the noncompliant conditions, and that Plaintiffs' experts did not perform adequate measurements or comply with the DOJ toolkit. ECF 829 at 13-14.[3] |
| Botanical Gardens | Inaccessible men's restrooms | The men's restroom had a cross-slope of 5% in floor surface leading to the accessible stall, in violation of ADAAG § 4.3.7. The accessories are too | The bathroom "facility itself was [] accessible" and had "accessible stalls, accessible lavatories, accessible doors." *Id.* at 2117.[4] | ADAAG violation.<br><br>Defendant's vague expert testimony fails to contradict Plaintiffs' evidence that the floor had a cross-slope of 5%, violating ADAAG |

---

[3] Defendants rely on the district court's 2014 ruling criticizing Mr. Mastin's slope measurements. ECF 829 at 14 (citing *Kirola v. City & Cnty. of San Francisco*, 74 F. Supp. 3d 1187, 1223 (N.D. Cal. 2014), *aff'd in part, rev'd in part*, 860 F.3d 1164 (9th Cir. 2017)). However, the Ninth Circuit subsequently held that Plaintiffs' experts' approach complied with the DOJ approach in the ADA Best Practices Tool Kit and that Plaintiffs' experts applied the proper method for measuring slopes. *Kirola I*, 860 F.3d at 1181-82 ("[B]ecause it is the steepest point on the ramp that affects whether a wheelchair user can navigate the ramp, it is the maximum localized variation, used by Kirola's experts, rather than the average slope, used by the City's experts, that is the correct benchmark."). Defendants also note that the district court criticized Plaintiffs' experts use of the use of a short level in their measurements, but this criticism referred to measurements made by a different expert for a different facility. ECF 829 at 14 (citing *Kirola*, 74 F. Supp. 3d at 1223).

[4] Defendants also argue that Plaintiffs failed to prove that the cost to remediate the bathrooms was not disproportionate to the costs of the pathway alterations project. ECF 829 at 14 (citing 28

5

| Facility | Alleged Violation | Plaintiffs' Evidence | Defendants' Evidence | Finding |
|---|---|---|---|---|
| | | high. Wallace Decl., Ex. F at 1178, 1182-83. | | § 4.3.7.[5] |
| Botanical Gardens | Inaccessible women's restrooms | The women's restroom stalls "are much too narrow to allow entrance by a person using a wheelchair" and the paper towel dispenser was "too high" in both restrooms. *Id.* at 1181-83. | The bathroom "facility itself was accessible" and had "accessible stalls, accessible lavatories, accessible doors." Baruth Decl., Ex. 1 at 2117. | ADAAG violation. Plaintiffs' expert's testimony that the stalls were too narrow for a wheelchair user and the paper towel dispensers were too high is sufficient to establish an ADAAG violation. *See Strong*, 724 F.3d at 1046 ("witnesses may estimate size, weight, distance, speed and time even when those quantities could be measured precisely"). |
| Bernal Heights Recreation Center | Playground surface consists of sand | "The playground itself is on sand. I think there were 22 play components involved with that play structure, but there are only – of 7 | None. | ADAAG Violation. The Court rejects Defendants' arguments that it is not specific enough for Plaintiffs' expert to say that he |

---

C.F.R. § 36.403). However, 28 C.F.R. § 36.403 is in Title III of the ADA, and applies to the private sector, not the City, which is covered by Title II of the ADA. The current Title II regulations contain a similar provision, 28 C.F.R. § 35.151(b)(4), but that regulation did not become effective until March 2011, making it inapplicable to the Botanic Gardens Project, which commenced in 2008. *See* Wallace Decl., Ex. F at 1175-76. Moreover, even if this limitation applied, it is Defendants' burden to prove disproportionate cost, and they have not offered any evidence. *See N.L.R.B. v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 711 (2001) (citation omitted) (there is a "general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits"); *Lemmons v. Ace Hardware Corp.*, 2014 WL 3107842, at *9 (N.D. Cal. July 3, 2014).

[5] Defendants also point to trial evidence that is not relevant to this violation. *See* Baruth Decl., Ex. 1 at 2115-16 ("A vast percentage of the site has been made accessible. It's only as you get in the back and there's some natural terrain topography issues that are very steep that are very, very difficult to get into because of the natural terrain.").

| Facility | Alleged Violation | Plaintiffs' Evidence | Defendants' Evidence | Finding |
|---|---|---|---|---|
| | | different types, meaning swinging, climbing, et cetera, but there were only 2 that are actually accessible. . . . I think there were three or four structures . . . [a]nd they're all located on sand except there's [] access to two swings[.]" Wallace Decl., Ex. F at 1121-22. | | "thinks" that only two components are accessible and does not state what percentage of the playground is located on sand, ECF 829 at 16-17. |
| Bernal Heights Recreation Center | Inaccessible restrooms: high entrance doorway thresholds | Thresholds are "about an inch high, and they should be no more than a half-inch high." Wallace Decl., Ex. F at 1139-40. | None. | ADAAG Violation.

The Court rejects Defendants' argument that Plaintiffs' experts' approximate measurement is too vague. *See Strong*, 724 F.3d at 1046. |
| Bernal Heights Recreation Center | Inaccessible restrooms: clearances too narrow in designated accessible toilet stalls | "The clearances in the accessible stalls, it's too narrow. But I couldn't see any reason why it shouldn't be the correct width." Wallace Decl., Ex. F at 1140. | None. | ADAAG Violation.

The Court rejects Defendants' argument that Plaintiffs needed to provide exact measurements. *See Strong*, 724 F.3d at 1046. |
| Tenderloin Recreation Center | Inaccessible boys' and girls' first floor restrooms | The floor of the girls' restroom has a cross-slope of 2.7% to 4.8%, which is above the 2% cross slope permitted by ADAAG § 4.3.7. Wallace Decl., Ex F at 1151-52. | None. | ADAAG violation as to the girls' bathroom accessibility and as to the mounted hardware in both bathrooms.

The Court rejects Defendants' arguments that Plaintiffs needed to specify the height of |

7

| Facility | Alleged Violation | Plaintiffs' Evidence | Defendants' Evidence | Finding |
|---|---|---|---|---|
| | | The mounted hardware was above 54 inches in both bathrooms, which is higher than permissible under ADAAG § 4.13.9. *Id.* at 1157. | | the mounted hardware, ECF 829 at 20. *See Strong*, 724 F.3d at 1046. The Court also rejects Defendants' argument that Plaintiffs' expert does not identify how he made measurements, ECF 829 at 19.[6] |
| | | The boys' bathroom has "sloping floors." *Id.* | | However, there is insufficient evidence as to whether the sloping in the boys' bathroom constitutes an ADAAG violation. |
| Tenderloin Recreation Center | Inaccessible second floor men's and women's restrooms | The women's restroom was "completely inaccessible" because "a person in a wheelchair . . . would be unable to . . . open that door to leave the restroom, because it's – the clear space in order to do that is obstructed by the lavatory and the [] built-in wall waste receptacle." Wallace Decl., Ex F at 1155-56; *see* ADAAG §§ 4.13.5, 4.13.6, 4.17.5. The men's room was also | None. | ADAAG Violation. *Strong* does not require an exact measurement, which is the only ground Defendants raise in opposition, ECF 829 at 20. *See* 724 F.3d at 1046. |

---

[6] The Ninth Circuit sustained the district court's criticism of a different expert's failure to consider dimensional tolerances. *Kirola I*, 860 F.3d at 1182; *see supra* n.3. Further Defendants argue that Plaintiffs' expert did not show where the accessible toilet is in the restroom or where the 2.7% cross slope exists in comparison to the 4.8% slope. ECF 829 at 19. However, as a cross slope greater than 2% violates ADAAG § 4.3.7, the Court does not consider this argument persuasive.

8

| Facility | Alleged Violation | Plaintiffs' Evidence | Defendants' Evidence | Finding |
|---|---|---|---|---|
| | | "inaccessible, again dealing [] mainly with clearances." *Id.* at 1158. | | |
| Tenderloin Recreation Center | Non-functional elevator | "The elevator is not functioning. And the staff mentioned that it has never really functioned in the time that this is constructed since – I'm assuming since 1992 when I believe there was a renovation." Wallace Decl., Ex F at 1156; *see* ADAAG § 4.3.8 (requiring ramp, elevator, or platform lift). | The City's expert concluded that "what we found [at the Tenderloin Recreation Center] is accessible routes, accessible entrances, toilets." Baruth Decl., Ex. 1 at 2101. | ADAAG Violation.<br><br>Defendants' argument that it is speculation that the elevator has not worked since 1992, ECF 829 at 20, does not dictate a different outcome.[7] |
| Who Hei Yuen Recreation Center | Inaccessible restrooms | The bathrooms are likely to trap users because there is no way to enter and close the door. Wallace Decl., Ex F at 1159; *see* ECF 826-18, Ex R ("This door is completely unusable to the majority of wheelchair users; further it is likely to trap a user who attempts to maneuver into a transfer position to the WC.")<br><br>In "[a]n accessible | None. | ADAAG violation.<br><br>Defendants' argument about the need for specific measurements is not well-taken. *See Strong*, 724 F.3d at 1046. |

---

[7] While the Court agrees that there is insufficient evidence that the elevator has not functioned since 1992, Defendants do not point to any authority showing that Plaintiffs must prove that the elevator has never functioned.

9

| Facility | Alleged Violation | Plaintiffs' Evidence | Defendants' Evidence | Finding |
|---|---|---|---|---|
| | | stall, one of the requirements is that you can . . . actually enter it, then close the door based on a wheelchair-sized area, which is 30 inches by 48.  In this case, [in] both the men's and the women's, there's no way to actually get in there and close the door. It was not actually physically possible using that area." *Id.* at 1158-59.[8] | | |
| Upper Noe Recreation Center | Inaccessible restrooms | The restroom doors cannot require more than five pounds of force to open and Mastin stated, "I believe they were 7 or 8 [pounds]." Wallace Decl., Ex F at 1141; *see* ADAAG § 4.13.11(2)(b). <br><br> The restroom doors close twice as fast as they should. Wallace Decl., Ex F at 1142; *see* ADAAG § 4.13.10. | Plaintiffs' expert stated that door pressure can vary within a range, suggesting that the pressure may sometimes comply with the ADAAG. Baruth Decl., Ex. 1 at 1272. | ADAAG Violation. <br><br> *Strong* does not require an exact measurement. *See* 724 F.3d at 1046. |
| Upper Noe Recreation Center | Lack of accessible signage | "I think the chief barriers were a problem with signage." Wallace Decl., Ex. F at 1141. | The expert does not identify what signage is missing or whether or how existing signage is non-compliant | No violation. The Court cannot determine what issues exist with signage, and thus cannot issue a remedy. |

---

[8] *See* ADAAG § 4.13.6.

10

| Facility | Alleged Violation | Plaintiffs' Evidence | Defendants' Evidence | Finding |
|---|---|---|---|---|
| | | | with the ADAAG. ECF 829 at 23. | |
| Eureka Valley, Gene Friend, Joseph Lee, and Richmond Recreation Centers | ADAAG violations similar to those above, including a lack of compliant restrooms, entrances, and accessible signage. | "I did find similar barriers [to the other recreation centers]" and "[n]one of the ten [other recreation centers] that I inspected were accessible." Wallace Decl., Ex. F at 1170-71. | None. | There is insufficient evidence for the Court to find any violation, much less order a remedy. |

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for injunctive relief. Because the Court does not consider evidence outside of the trial record, it **DENIES AS MOOT** Defendants' administrative motion to file a sur-reply. The Court **ORDERS** the parties to meet and confer and file a proposed injunction consistent with this Order by **September 18, 2024**, which should include a timeline for Defendants to remedy the violations. In light of the violations that the Court has found, the Court also orders the parties to provide additional briefing on the need for broader injunctive relief ("Phase III"). By **September 4, 2024**, the parties shall submit a stipulation proposing a briefing schedule and page limit for briefs regarding whether further injunctive relief is appropriate and its scope.

**IT IS SO ORDERED.**

Dated: August 19, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

11