UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVANA KIROLA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY & COUNTY OF SAN FRANCISCO, THE, et al.,<br><br>    Defendants. | Case No. 07-cv-03685-AMO<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SYSTEMIC INJUNCTIVE RELIEF**<br><br>Re: Dkt. No. 872 |

This is a case challenging the City and County of San Francisco's compliance with accessibility regulations in its public facilities. Before the Court is Plaintiffs' motion for systemic injunctive relief. Dkt. No. 872. The motion is fully briefed and suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having carefully considered the parties' papers, as well as the relevant legal authority, the Court hereby **GRANTS** Plaintiffs' motion for the following reasons.

I.    **BACKGROUND**

Plaintiff Ivana Kirola filed this class action on July 17, 2007, alleging the City and County of San Francisco, the Mayor of San Francisco, and members of the San Francisco Board of Supervisors ("City") systemically failed to comply with the Americans with Disabilities Act ("ADA") and related regulations. Dkt. No. 1. On June 24, 2010, Kirola filed a first amended complaint, alleging discrimination in violation of Title II of the ADA; Section 504 of the Rehabilitation Act of 1973 ("Section 504"); the California Disabled Persons Act, California Government Code §§ 11135, *et seq.*; the Unruh Civil Rights Act, California Government Code §§ 51, *et seq.*; and California Government Code §§ 54, *et seq. See* Dkt. No. 294. Title II of the ADA prohibits discrimination on the basis of a disability in the programs, services, or activities of

a public entity. 42 U.S.C. § 12132. "In defining accessibility, Title II's implementing regulations distinguish between newly constructed or altered facilities . . . and existing facilities . . . ." *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014). A newly constructed or altered facility is one in which the construction or alteration began after January 26, 1992. *See* 28 C.F.R. §§ 35.151(a)(1), (b)(1). Newly constructed facilities and parts of newly constructed facilities "constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities . . . ." 28 C.F.R. § 35.151(a)(1). As for the alteration of existing facilities, they must be "altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities . . . ." 28 C.F.R. § 35.151(b)(1). "Readily accessible" means "constructed in conformance with the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG), 28 C.F.R. Pt. 36, App. A, or with the Uniform Federal Accessibility Standards (UFAS), 41 C.F.R. Pt. 101-19.6, App. A." *Daubert*, 760 F.3d at 985-86 (citing 28 C.F.R. §§ 35.151(c)(1)-(3)). Existing facilities are those constructed prior to January 26, 1992, and "need not be 'accessible to and usable by individuals with disabilities,' " *Daubert*, 760 F.3d at 986, but a public entity must provide "program access" by "operat[ing] each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities," 28 C.F.R. § 35.150(a).

The Court certified a class on June 7, 2010, noting that the City did not contest "that this case satisfies . . . Rule 23(b)(2), since the relief plaintiffs seek includes class-wide injunctive relief as to San Francisco's policies and practices regarding access to City facilities and programs for persons with mobility disabilities." Dkt. No. 285. A bench trial took place from April 4, 2011, to May 5, 2011. *See* Dkt. No. 542-581. On November 26, 2014, the Court issued findings of fact and conclusions of law and entered judgment in favor of the City on all claims. Dkt. No. 686.

On December 23, 2014, Plaintiff appealed, challenging certain of the Court's rulings, including that Kirola lacked standing, the Court's ruling on her new construction and alterations claims (as to the pedestrian right-of-way, Recreation and Parks ("RecPark") facilities, swimming

2

1    pools, and libraries), and the findings on her program access claims (as to the pedestrian right-of-
2    way, libraries, and RecPark facilities). Dkt. No. 689. On June 22, 2017, the Ninth Circuit held
3    that Kirola had standing and remanded with instructions for this Court to apply the Americans
4    with Disabilities Act Accessibility Guidelines ("ADAAG") as the panel had interpreted it,
5    reevaluate the extent of ADAAG noncompliance, and then revisit the question of whether
6    injunctive relief should be granted. Dkt. No. 723. The Ninth Circuit affirmed the Court's
7    conclusion that the program access claims failed for lack of proof, as Kirola had not "present[ed]
8    evidence sufficient to show that the City's public right-of-way and RecPark programs, when
9    viewed in their entirety, were not readily accessible to and usable by individuals with disabilities."
10   *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1184 (9th Cir. 2017) ("*Kirola I*").

11   On August 16, 2018, Defendants moved for judgment as a matter of law, Dkt. No. 751,
12   which the Court granted on March 12, 2021, Dkt. No. 776. The Court found certain ADAAG
13   violations at three facilities: the Main Library, St. Mary's Playground, and a restroom in Golden
14   Gate Park (the "Phase I facilities"). *See id*. The Court concluded injunctive relief was not
15   warranted because Kirola had not satisfied her burden of demonstrating that she was actually
16   injured as a result of the ADAAG violations identified by the Court. *Id*. at 50. The Court further
17   found "the fact that the Court has identified some ADAAG violations at three facilities does not
18   suggest . . . that the violations are pervasive or of a systemic nature." *Id*. at 51.

19   On April 5, 2021, Plaintiffs appealed anew. Dkt. No. 779. On April 10, 2023, the Ninth
20   Circuit issued a decision reversing in part and affirming in part, and remanding with instructions.
21   *Kirola v. City & Cnty. of San Francisco*, No. 21-15621, 2023 WL 2851368, at *3 (9th Cir. Apr.
22   10, 2023) ("*Kirola II*"), *cert denied*, 144 S. Ct. 185 (2023). The Ninth Circuit held that
23   "[a]lthough the district court appropriately found that the plaintiffs' evidence did not warrant the
24   sweeping class-wide relief that the plaintiffs sought, the district court abused its discretion in
25   denying relief for the ADAAG violations found." *Id*. On remand, the Ninth Circuit charged this
26   Court "to determine injunctive relief" tailored to the ADAAG violations that this Court found at
27   the Main Library, St. Mary's Playground, and a restroom in Golden Gate Park. *Id*. The Ninth
28   Circuit further directed this Court to evaluate the evidence of alleged violations in certain facilities

3

("Phase II facilities"). *Id.* It also instructed that if the Court found additional ADAAG violations, it should "revisit the question of injunctive relief that is systemwide or tailored to any additional violations found." *Id.*

On March 28, 2024, this Court ordered injunctive relief as to the Phase I facilities and ordered completion within 180 days. Dkt. No. 822. On April 12, 2024, Plaintiffs filed a motion for permanent injunction regarding additional facilities (the "Phase II facilities"). Dkt. No. 825. On August 19, 2024, the Court granted the motion in part and denied it in part, granting injunctive relief as to conditions at seven of the Phase II facilities – the Botanical Gardens, Bernal Heights Recreation Center, Tenderloin Recreation Center, Woh Hei Yuen Recreation Center, Minnie & Lovie Ward Recreation Center, Upper Noe Recreation Center, and the Martin Luther King Jr. Swimming Pool – and finding there was insufficient evidence to establish violations at four other facilities.[1] Dkt. No. 852. In the August 19 Order, the Court also ordered the parties to provide additional briefing on the need for broader injunctive relief ("Phase III"). The ordered briefing took the form of the instant motion, which was filed on November 1, 2024. Dkt. No. 872. The City's opposition followed on December 13, 2024 (Dkt. No. 874), and Plaintiff replied on January 11, 2025 (Dkt. No. 876).

## II. DISCUSSION

Plaintiffs move for systemic injunctive relief, seeking an order requiring Defendants to (1) fully comply with current federal and state accessibility standards when performing new construction or alterations to City facilities going forward, and (2) develop and implement a remedial plan for bringing the City's newly constructed or altered facilities, within the meaning of the ADA, into compliance. Plaintiffs' Motion (Dkt. No. 872, "Mot.") at 9. Injunctive relief is "an extraordinary remedy, never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking injunctive relief must demonstrate "(1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for

---

[1] The remedial work was ordered to be completed by May 21, 2025. Dkt. No. 870 at 5. On January 16, 2025, the City moved to extend the time to complete the remedial work relating to the Bernal Heights Recreation Center until October 23, 2025, Dkt. No. 877, which the Court granted, Dkt. No. 881.

4

1  that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a
2  remedy in equity is warranted; and (4) that the public interest would not be disserved by a
3  permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The Court
4  has "broad discretion in fashioning a remedy" through injunctive relief, *Melendres v. Arpaio*, 784
5  F.3d 1254, 1265 (9th Cir. 2015), the scope of which "is dictated by the extent of the violations
6  established," *Lewis v. Casey*, 518 U.S. 343, 360 (1996). Where "injunctive relief is premised
7  upon only a few isolated violations affecting a narrow range of plaintiffs, its scope must be limited
8  accordingly." *Id.* However, "[s]ystem-wide relief is required if the injury is the result of
9  violations of a statute or the constitution that are attributable to policies or practices pervading the
10 whole system (even though injuring a relatively small number of plaintiffs), or if the unlawful
11 policies or practices affect such a broad range of plaintiffs that an overhaul of the system is the
12 only feasible manner in which to address the class's injury." *Armstrong v. Davis*, 275 F.3d 849,
13 870 (9th Cir. 2001). The Court first considers whether systemwide relief is appropriate before
14 assessing whether Plaintiffs are entitled to the forms of injunctive relief they seek.

15     **A.    Systemic Injunctive Relief**

16 As a threshold matter, Defendants assert that this Court should not consider ordering
17 systemic injunctive relief because the Ninth Circuit has already found it inappropriate. Opp. at 11.
18 Not so. On the first appeal, the Ninth Circuit directed that "[o]nce the scope of any ADAAG
19 violations at facilities used by Kirola and all other class members has been determined, the district
20 court shall revisit the question of whether injunctive relief should be granted in light of the scope
21 of violations determined by the district court . . . ." *Kirola I*, 860 F.3d at 1185. On the second
22 appeal, the Ninth Circuit found the Court abused its discretion on remand in denying relief for the
23 ADAAG violations found and held the Court "appropriately found that the plaintiffs' evidence did
24 not warrant the sweeping class-wide relief that the plaintiffs sought." *Kirola II*, 2023 WL
25 2851368, at *2. However, it noted that "[i]f the district court finds any further ADAAG
26 violations, [it] should revisit the question of injunctive relief that is systemwide or tailored to any
27 additional violations found." Dkt. No. 798 at 8. Having found violations at seven additional
28 facilities in Phase II, the Court now considers whether to issue systemwide injunctive relief. The

5

1  Court begins with the four-part test for a permanent injunction. *eBay*, 547 U.S. at 391.

2  First, because Kirola and the class members have encountered and continue to encounter
3  ADAAG violations in the City's facilities and are at risk of encountering ADAAG violations in
4  any future facility that is constructed or altered, they have suffered irreparable injury. *Kirola II*,
5  2023 WL 2851368, at *1; *Kirola I*, 860 F.3d at 1175-76. Where a defendant violates a civil rights
6  statute, courts "presume that the plaintiff has suffered irreparable injury from the fact of the
7  defendant's violation." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814,
8  827 (9th Cir. 2001) (collecting cases). The second part of the test is satisfied, as well, because
9  remedies at law are inadequate to compensate for these civil rights violations. Monetary damages
10 cannot provide access to the City's non-compliant new and altered facilities. Defendants do not
11 contest that Plaintiffs meet the first two elements necessary for a permanent injunction.

12 Third, Plaintiffs argue the balance of hardships weighs in their favor because they have
13 established hardship – lack of access to public facilities – and Defendants have no legitimate
14 interest in maintaining inaccessibility to City facilities. Mot. at 33. The Court agrees; moreover,
15 Defendants put forward no specific hardship argument about any cost or burden imposed by
16 Plaintiffs' proposed relief, only vaguely referencing hardship related to the proposed "overhaul"
17 required in carrying out the "unprecedented" survey of the City's newly constructed or altered
18 facilities that Plaintiffs seek as part of their proposed remedial plan. *See* Opp. at 11-12. While the
19 proposed overhaul may prove laborious, the balance of hardships tilts in Plaintiffs' favor because
20 their civil rights violations should be remedied. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976,
21 996 (9th Cir. 2017) (citing *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)) ("Faced with
22 such a conflict between financial concerns and preventable human suffering, we have little
23 difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.") (internal
24 quotation marks omitted).

25 Finally, Plaintiffs argue the public interest would be greatly served by the issuance of
26 injunctive relief requiring compliance with the ADA and parallel California laws. Mot. at 33.
27 Defendants argue that the "lack of evidence establishing deficiencies in the City's policies and
28 practices does not support that the public would be well served by overhauling policies and

6

practices that already work." Opp. at 11. But Defendants neither explain nor provide support for their position, and the Court finds that injunctive relief remedying unlawful inaccessibility is in the public interest. Accordingly, the Court finds the four *eBay* factors are met here.

Despite this conclusion, Defendants resist the availability of systemic injunctive relief on a handful of additional bases, which the Court takes up in turn.

### 1. Violations Attributable to Policies or Practices

Defendants also argue that systemic injunctive relief is not merited because there is no evidence that the additional ADAAG violations found in Phase III are attributable to City policies or practices or that the isolated additional violations justify an "overhaul" of the system. Opp. at 5. The Court disagrees. Plaintiffs' injuries – both those found in Phase II and at other times in this litigation – are attributable to a systemwide City policy. *See Armstrong*, 275 F.3d at 870. Procedure 9.8.24 – titled "ADA & Accessibility Compliance" – sets forth the City's written policy regarding compliance with the ADA in newly constructed or altered facilities. Wallace Decl., Ex. E (Dkt. No. 872-1) at 276. It is "a procedure for identifying the scope of work required to attain accessibility compliance on all Department of Public Works projects and to ensure that construction documents and completed facilities meet all applicable requirements and policies." *Id.* Kevin Jensen, Disability Access Coordinator for the Department of Public Works, prepared the Procedure, which was approved by Director of Public Works Edward D. Reiskin and adopted by the City in January 2010. *Id.* at 276-82; 286. Through the course of the litigation, the City's position was that ADAAG does not apply to pedestrian rights of way, parks, playgrounds, and other outdoor recreational facilities, and the Procedure does not require ADAAG compliance with those facilities and locations. The Court found that Jensen followed Procedure 9.8.24, *Kirola I*, 74 F. Supp. 3d at 1217, and Jensen and the City's Director for Physical Access, John Paul Scott, testified they did not use ADAAG for parks, playgrounds, outdoor recreation facilities, and the pedestrian rights of way. However, as the Ninth Circuit already made clear in this case, ADAAG does apply to public rights-of-way, parks, and playgrounds. *Kirola I*, 860 F.3d at 1179, 1181. Moreover, the San Francisco Department of Building Inspection job card, which must be signed and approved by the Department of Public Works Disability Access Compliance at the end of a

7

1    construction project, does not require any attestation that the project complies with ADAAG.
2    Wallace Decl., Ex. J at 1945-49; Ex. CC; Ex. FF.  The certificate completed at the conclusion of
3    the City's Department of Building Inspection's projects also does not require any certification of
4    ADAAG compliance.  *Id.*  Defendants have not offered any evidence or authority to the contrary.
5    Therefore, because these defects apply across a range of City policies and practices, the Court
6    must conclude that Plaintiffs' injuries are the result of violations "attributable to policies or
7    practices pervading the whole system." *Armstrong*, 275 F.3d at 870.

## 2.     Factual Findings in Support of Systemwide Injunctive Relief

In addition to showing that violations of a statute or the constitution that are attributable to policies or practices pervading the whole system warrant systemwide relief, Plaintiffs must also establish that factual findings support the relief sought.  *See id.* at 871.  If there is evidence of "only a few isolated violations affecting a narrow range of plaintiffs," the relief granted by the Court "must be limited accordingly."  *Id.* at 870.  Defendants contend Plaintiffs have only shown a "handful" of "isolated" violations that fail to justify Plaintiffs' requested relief.  Opp. at 10-11.  The Court disagrees, as it found dozens of violations at ten facilities throughout San Francisco that had undergone new construction or alterations since 2000: the Main Library, St. Mary's Playground, a restroom in Golden Gate Park, the Botanical Gardens, the Bernal Heights Recreation Center, the Tenderloin Recreation Center, the Woh Hei Yuen Recreation Center, the Minnie & Lovie Ward Recreation Center, the Upper Noe Recreation Center, and the Martin Luther King Jr. Swimming Pool.[2]

The City insists that Plaintiffs are not entitled to their requested relief as they have "only" shown ten facilities contain ADAAG violations out of the hundreds of City facilities.  But the City's focus on the number of violations is misplaced.  For one, using the total number of City

---

[2] The parties dispute the import of the 400 access barriers in the City's RecPark program identified by Plaintiffs' experts and confirmed by the Mayor's Office of Disability.  *See* Mot. at 17; Opp. at 14-15; Reply at 12.  Defendants contend that "[n]othing in the trial record supports a conclusion that these access barriers were ADAAG violations," and that they should not be considered as evidence supporting injunctive relief on remand.  Opp. at 24.  As the Court finds systemwide injunctive relief appropriate without considering the 400 access barriers, it need not resolve the parties' disagreement.

facilities as a denominator is misleading, as many City facilities are not newly constructed or altered, and thus are not challenged in this case. More critically, the case law does not instruct that there is any minimum number of violations necessary to justify systemwide relief. Indeed, requiring a plaintiff to present evidence of many or all accessibility barriers to obtain injunctive relief would defeat the purpose of class actions.[3] *See Cal. for Disability Rts., Inc. v. Cal. Dep't. of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008) (noting that "in order to prove the existence of the forest the plaintiffs must individually prove the existence of each tree . . . is anathema to the very notion of a class action"). These violations affect a class consisting of 21,000 individuals, any and all of whom may encounter any one of the violations the Court has found, or others that may exist as a result of Defendants' policy. *See Armstrong*, 275 F.3d at 870 (affirming systemwide injunctive relief where injuries suffered by seventeen individuals extended to members of the class).

### 3. Evidence of a Systemwide Deficiency

Systemwide injunctive relief is appropriate where plaintiffs present evidence that the challenged practice caused a " 'systemwide violation' [that] would justify 'systemwide relief.' " *Melendres*, 784 F.3d at 1264, 1258 (affirming permanent injunction requiring various remedial actions applying "to all law enforcement activity within the [sheriff's office] where plaintiffs mostly presented evidence related to "saturation patrols," and some evidence suggesting the policies and practices were implemented during regular patrols, as well) (citations omitted).

Here, the Court finds that the systemwide deficiency – the City's policies failing to require ADAAG compliance – coupled with the evidence in the record demonstrating violations across various facilities are sufficient to justify systemwide relief. Plaintiffs have presented more

---

[3] Moreover, at trial Plaintiffs were limited to the evidence of ADAAG violations they were allowed to present. The City argues that "[t]o the extent Plaintiffs have issues about adverse rulings on limits of discovery and the District Court's order of a timed trial, both of these issues should have been raised on appeal," and because they were not, they are now waived. Opp. at 10 n.1. However, this misunderstands Plaintiffs' argument, which is not that they should have been allowed to put on more evidence at trial but rather should not be required to put on more evidence than they did at trial to establish systemwide violations. Mot. at 12.

evidence than the plaintiffs in *Armstrong v. Schwarzenegger*, which the Ninth Circuit – calling it a "close question" – found insufficient. 622 F.3d 1058, 1073 (9th Cir. 2010). Here, unlike in *Schwarzenegger*, there is evidence in the record that class members have been injured by ADAAG violations in the City's facilities. At trial, Kirola and six other class members testified to barriers they encountered at City facilities, including facilities at which the Court later determined to contain ADAAG violations, such as St. Mary's Playground and a restroom at Golden Gate Park. Wallace Decl., Ex. C at 1381-87.

Because the injury is attributable to policies or practices pervading the whole system, and because the unlawful policies affect such a broad range of plaintiffs that an overhaul of the system is the only feasible manner in which to address the class's injury, the Court thus finds systemic injunctive relief is appropriate to remedy Plaintiffs' harms.

### B. Appropriateness of Proposed Injunctive Relief

Next, the Court must determine if the specific systemic injunctive relief sought is appropriate. The Court's remedy "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis*, 518 U.S. at 357 (quoting *Missouri v. Jenkins*, 515 U.S. 70 (1995)). Here, Plaintiffs seek an injunction requiring that Defendants fully comply with the requirements of the 2010 Americans with Disabilities Act Standards (28 C.F.R. § 35.151, "2010 ADAS") and the current iteration of the California Building Code ("CBC") whenever the City performs new construction and alterations. Mot. at 28. Plaintiffs also request that the Court order Defendants to prepare a remedial plan to remove the ADAAG violations from newly constructed or altered parks, playgrounds, outdoor recreational facilities, and pedestrian rights of way. Mot. at 29.

First, as to Plaintiffs' request to require Defendants to fully comply with applicable law, Plaintiffs request that Defendants be required to adopt policies that clearly specify that the 2010 ADAS and the most recent iteration of the CBC will be used as the accessibility standard for all aspects of newly constructed or altered parks, playgrounds, outdoor recreation areas, and pedestrian pathways, and that bidding documents and contracts for construction projects should require that all work be done in compliance with those authorities as well. Mot. at 28. Further,

they request that City policy require that all projects be inspected for compliance with 2010 ADAS and the CBC at close-out, with a written verification to be prepared confirming the project is in full compliance with those standards before projects are opened to the public. Defendants argue the Court has already approved the City's "robust infrastructure" to "meet the needs of the disabled." Opp. at 8 (citing the Court's March 12, 2021 Order Granting Defendants' Motion for Judgment as a Matter of Law, Dkt. No. 776 at 51). The Court's earlier finding of a robust infrastructure, however, does not contradict a finding here that the City's policy does not currently require compliance with federal and state accessibility standards when performing new construction or alterations to City facilities. The City further argues that "the balance of hardships weighs in favor of maintaining the current program," but does not otherwise address this aspect of Plaintiffs' requested injunctive relief or explain its objection. The Court finds that requiring the City to adopt written policies and procedures to ensure its construction and alteration of City facilities complies with current federal state disability access standards is appropriate – and, in fact, necessary – to prevent future violations.

Second, Plaintiffs' proposed remedial plan would require Defendants to survey the City's parks, playgrounds, outdoor recreational facilities, and pedestrian rights of way that were newly constructed or altered after January 26, 1992, for ADAAG violations. Mot. at 29. Plaintiffs seek to be permitted to review, comment on, and object to the scope of the survey, as well as the survey instrument and procedures. Mot. at 29-30. Defendants would share the results of the survey with Plaintiffs and the Court. Defendants would next prepare a proposed remedial plan with Plaintiffs' input, which would be submitted to the Court for its review and approval, with Plaintiffs again permitted to comment and object. Mot. at 30. Defendants argue this plan is improper because Plaintiffs "skip[] the necessary step of establishing pervasive and systemic ADA violations throughout the City." Opp. at 14. Because the Court has found that systemwide relief is required, however, Plaintiffs are entitled to systemic relief. For this reason, Defendants' argument that this proposal improperly shifts the burden of showing a lack of ADAAG violation onto the City, when plaintiffs in an ADA case bear the burden of showing violations, is also unavailing. Opp. at 15 (citing *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1048 (9th Cir. 2008)).

1  The Court finds the relief sought is appropriately limited to the inadequacies that caused Plaintiffs' injuries. *Lewis*, 518 U.S. at 357 (finding systemwide injunction was not limited to the inadequacy that produced the injury where only one named plaintiff in class action was found to have suffered actual injury). The injunction Plaintiffs seek only extends to newly constructed and altered facilities. While not a small undertaking, it is necessary to provide Plaintiffs with complete relief.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion. The parties **SHALL** meet and confer and file a joint proposed form of injunction, with a Word version emailed to amopo@cand.uscourts.gov, by no later than **October 20, 2025**.

**IT IS SO ORDERED.**

Dated: September 29, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**