DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
ELAINE M. O'NEIL, State Bar #142234
ARI A. BARUTH, State Bar #258418
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA  94102-5408
Telephone:    (415) 554-3881
Facsimile:     (415) 255-0733
E-Mail:        ari.baruth@sfcityatty.org
               john.george@sfcityatty.org
               steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, ET AL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVANA KIROLA, et al., | Case No. 3:07-cv-03685 AMO |
| Plaintiff, | **DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING; MOTION TO DECERTIFY** |
| vs. | |
| THE CITY AND COUNTY OF SAN FRANCISCO, et al., | Hearing Date:   June 4, 2026<br>Time:           2:00 pm<br>Place:          Court Room 10, 19th Floor<br>Judge:          Hon. Araceli Martínez-Olguín |
| Defendants. | |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................3

II.     BACKGROUND .....................................................................................5

    A.      Kirola's Claims ...........................................................................5

    B.      Class Certification .......................................................................6

    C.      Trial and Post-Trial Proceedings ................................................7

III.    LEGAL STANDARDS ...........................................................................9

    A.      Indicative Ruling Standard .........................................................9

    B.      Decertification Standard ...........................................................10

    C.      Rule 23 Certification ................................................................10

IV.     ARGUMENT .......................................................................................11

    A.      Kirola Failed to Prove the Rule 23(a) Requirements................11

        1.      Kirola Failed to Prove Commonality............................12

        2.      Kirola Failed to Prove Typicality .................................18

        3.      Kirola Failed to Prove Adequacy..................................20

        4.      Kirola Failed to Prove Numerosity ...............................22

    B.      Kirola Failed to Prove the Rule 23(b)(2) Requirements...........24

    C.      The Class Is an Improper Fail-Safe Class................................26

    D.      This Court Should Issue an Indicative Ruling ..........................27

V.      CONCLUSION....................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*,
   No. 15-cv-06314-YGR, 2018 WL 558844 (N.D. Cal. Jan. 25, 2018)......................................10

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)..............................................................................................................18

*Allen v. Ollie's Bargain Outlet, Inc.*,
   37 F.4th 890 (3d Cir. 2022) ...........................................................................................15, 24

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)..............................................................................................................20

*Babcock v. Michigan*,
   812 F.3d 531 (6th Cir. 2016) ...............................................................................................17

*Booth v. Lazzara*,
   164 F.4th 581 (6th Cir. 2026) ...............................................................................................17

*Campbell v. PricewaterhouseCoopers, LLP*,
   287 F.R.D. 615 (E.D. Cal. 2012) ..........................................................................................10

*Castaneda v. Burger King Corp.*,
   264 F.R.D. 557 (N.D. Cal. 2009)....................................................................................19, 25

*Castellanos v. City of Reno*,
   No. 319CV00693MMDCLB, 2021 WL 3634662 (D. Nev. Aug. 16, 2021)...........................15

*Celano v. Marriott Int'l, Inc.*,
   242 F.R.D. 544 (N.D. Cal. 2007)..........................................................................................24

*Chapman v. Pier 1 Imps. (U.S.), Inc.*,
   631 F.3d 939 (9th Cir. 2011) ...............................................................................................22

*Civil Rights Educ. & Enforcement Ctr. v. Hospitality Properties Trust*,
   867 F.3d 1093 (9th Cir. 2017) ...............................................................................13, 14, 16

*Civil Rights Education & Enforcement Center v. Hospitality Properties Trust*,
   317 F.R.D. 91 (N.D. Cal. 2016)......................................................................................19, 25

*Cnty. of Santa Clara v. Trump*,
   267 F. Supp. 3d 1201 (N.D. Cal. 2017) ...............................................................................22

*Coopers & Lybrand v. Livesay*,
   437 U.S. 463 (1978)..............................................................................................................10

*Daubert v. Lindsay Unified Sch. Dist.*,
   760 F.3d 982 (9th Cir. 2014) ...............................................................................................17

*Davidson v. O'Reilly Auto Enters., LLC,*
    968 F.3d 955 (9th Cir. 2020) ...............................................................................16

*Derval v. Xaler,*
    No. 2:19-CV-01881-ODW, 2020 WL 430781 (C.D. Cal. Jan. 28, 2020) .................................23

*Dukes v. Wal-Mart Stores, Inc.,*
    603 F.3d 571 (9th Cir. 2010) ...........................................................................6, 12

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ...............................................................................13

*Gen. Tel. Co. of the Sw. v. Falcon,*
    457 U.S. 147 (1982).................................................................................10, 19, 20

*Griggs v. Provident Consumer Discount Co.,*
    459 U.S. 56 (1982).............................................................................................9

*Halliburton Co. v. Erica P. John Fund, Inc.,*
    573 U.S. 258 (2014)...........................................................................................11

*Howard v. Cook Cnty. Sheriff's Office,*
    No. 17 C 8146, 2020 WL 1445620 (N.D. Ill. March 25, 2020) .................................27

*Kirola v. City & Cnty. of San Francisco,*
    74 F. Supp. 3d 1187 (N.D. Cal. 2014) ......................................................... *passim*

*Kirola v. City & Cnty. of San Francisco,*
    860 F.3d 1164 (9th Cir. 2017) .........................................................7, 13, 18, 21

*Kirola v. City & Cnty. of San Francisco,*
    No. 21-15621, 2023 WL 2851368 (9th Cir. Apr. 10, 2023)................................8, 13

*Kirola v. City & Cnty. of San Francisco,*
    No. C 07-3685 SBA, 2021 WL 1334153 (N.D. Cal. Mar. 12, 2021) ............................. *passim*

*Langer v. Kiser,*
    57 F.4th 1085 (9th Cir. 2023) ...............................................................................21

*Lewis v. Casey,*
    518 U.S. 343 (1996)...........................................................................................21

*Lindblom v. Santander Consumer USA, Inc.,*
    No. 15-CV-0990-BAM, 2018 WL 573356 (E.D. Cal. Jan. 26, 2018).........................20

*Londberg v. City of Riverside,*
    571 F.3d 846 (9th Cir. 2009) ...............................................................................17

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024)...........................................................................................17

*Marlo v. United Parcel Serv., Inc.,*
    639 F.3d 942 (9th Cir. 2011) ...................................................................10

*Melendres v. Arpaio,*
    784 F.3d 1254 (9th Cir. 2015) .................................................20, 21, 22

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651 (9th Cir. 2022) ...................................................11, 23, 26

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ...................................................18, 19, 25

*Payan v. L.A. Cmty. Coll. Dist.,*
    No. 24-1809, 2026 WL 684094 (9th Cir. Mar. 11, 2026) ......................18

*Payan v. L.A. Cmty. College Dist.,*
    11 F.4th 729 (9th Cir. 2021) ..............................................................17, 18

*Rannis v. Recchia,*
    380 F. App'x 646 (9th Cir. 2010) ............................................................23

*Rosebrock v. Mathis,*
    745 F.3d 963 (9th Cir. 2014) ..................................................................18

*Sali v. Corona Reg'l Med. Ctr.,*
    909 F.3d 996 (9th Cir. 2018) ...................................................11, 20, 23

*Sanai v. Cardona,*
    No. 22-CV-01818-JST, 2025 WL 1644502 (N.D. Cal. June 10, 2025) ...................10

*Siles v. ILGWU Nat'l Ret. Fund,*
    783 F.2d 923 (9th Cir. 1986) ..................................................................23

*Siqueiros v. General Motors LLC,*
    676 F. Supp. 3d 776 (N.D. Cal. 2023) ....................................................10

*Small v. Allianz Life Ins. Co. of N. Am.,*
    122 F.4th 1182 (9th Cir. 2024) ..........................................................11, 19

*Stiner v. Brookdale Senior Living, Inc.,*
    665 F. Supp. 3d 1150 (N.D. Cal. 2023) ..................................................15

*Stiner v. Brookdale Senior Living, Inc.,*
    No. 17-cv-03962-HSG, 2024 WL 5112480 (N.D. Cal. Dec. 13, 2024) ...................17

*Terry v. Wasatch Advantage Grp., LLC,*
    No. 2:15-CV-0799 KJM DB, 2023 WL 8189747 (E.D. Cal. Nov. 27, 2023) ..............10

*Thurston v. J. Crew Grp., Inc.,*
    No. ED CV15-01331 JAK, 2016 WL 11755595(C.D. Cal. May 11, 2016) ...............24

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021)..................................................................................22

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025)..................................................................................20

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................................................ *passim*

*Willis v. City of Seattle,*
    943 F.3d 882 (9th Cir. 2019) ...................................................................16

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories,*
    231 F.3d 1215 (9th Cir. 2000) .................................................................20

**Rules**
Federal Rules of Appellate Procedure
    Rule 12.1 ....................................................................................................9

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................ *passim*

Federal Rules of Civil Procedure
    Rule 23(a) ........................................................................................ *passim*

Federal Rules of Civil Procedure
    Rule 23(a)(1) .......................................................................................22, 23

Federal Rules of Civil Procedure
    Rule 23(a)(3) .............................................................................................18

Federal Rules of Civil Procedure
    Rule 23(b)(2) ................................................................................... *passim*

Federal Rules of Civil Procedure
    Rule 23(b)(3) .............................................................................................10

Federal Rules of Civil Procedure
    Rule 23(c)(1)(B) ........................................................................................10

Federal Rules of Civil Procedure
    Rule 23(c)(1)(C) .....................................................................................1, 10

Federal Rules of Civil Procedure
    Rule 25(c) ....................................................................................................1

Federal Rules of Civil Procedure
    Rule 62.1 .....................................................................................................1

Federal Rules of Civil Procedure
    Rule 62.1(a) ................................................................................................9

**Regulations**

28 C.F.R.
 Part 36, App. D, Section 4 ........................................................................................... 14

**State Statutes & Codes**

California Civil Code
 Section 51 .................................................................................................................... 6

California Civil Code
 Section 54 .................................................................................................................... 6

California Government Code
 Section 11135 ............................................................................................................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Notice is hereby given that on June 4, 2026 at 2:00 p.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, 19th Floor, Courtroom 10, San Francisco, CA 94102, before the Honorable Araceli Martínez-Olguín, Defendants City and County of San Francisco, Daniel Lurie in his official capacity as Mayor, Rafael Mandelman in his official capacity as President and Member of the Board of Supervisors, and Connie Chan, Stephen Sherrill, Danny Sauter, Bilal Mahmood, Matt Dorsey, Myrna Melgar, Jackie Fielder, Shamann Walton, Chyanne Chen, and Alan Wong in their official capacities as current members of the Board of Supervisors (collectively the "City")[1] will and hereby do move this Court pursuant to Federal Rules of Civil Procedure 23(c)(1)(C) and 62.1, for an indicative ruling decertifying the certified class in this action.

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Steven Mills in support, the Request for Judicial Notice contained herein, the pleadings and other papers filed, any oral argument, the evidence and testimony presented at trial, and any other such matters that the Court may consider.

---

[1] This case names a former Mayor and former members of the San Francisco Board of Supervisors in their official capacities: Gavin Newsom as Mayor, Aaron Peskin as President and member of the Board of Supervisors, and Jake McGoldrick, Michela Alioto-Pier, Ross Mirkarimi, Ed Jew, Chris Daly, Sean Elsbernd, Bevan Dufty, Tom Ammiano, Sophie Maxwell, and Gerardo Sandoval as members of the Board of Supervisors. When a public officer ceases to hold office, the successor is automatically substituted as a party. Fed. R. Civ. P. 25(c). Accordingly, the City names the current Mayor and members of the Board of Supervisors.

Dated:  March 13, 2026

                                              DAVID CHIU
City Attorney
ELAINE M. O'NEIL
ARI A. BARUTH
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys


By:  */s/John H. George*
JOHN H. GEORGE

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.   INTRODUCTION

3

The Court certified the Class in this disability discrimination case in June 2010—more than

4

fifteen years ago—over the City's objections that adjudicating individual access barriers is an

5

impermissible use of Federal Rules of Civil Procedure 23. Since then, the case was tried, the trial

6

decision was appealed to the Ninth Circuit, largely affirmed, and remanded with instructions; the

7

Court issued a further order following remand; that order was appealed; and the Ninth Circuit again

8

affirmed in part, reversed in part, and remanded with instructions. Critically, in the time since the

9

Court's class certification decision, the Supreme Court issued a landmark decision overturning the

10

very Ninth Circuit decision this Court relied on to certify the Class. In short, much has happened

11

between the 2010 class certification decision and now. But, in all that time, and despite the significant

12

legal and factual developments, class certification has not been re-examined. Class certification is

13

inherently tentative until final judgment, which has yet to issue, and the Court has a continuing

14

obligation to ensure certification is appropriate under Rule 23. When class certification is rigorously

15

examined under the current legal standard and with the benefit of the trial record, it is clear that

16

Plaintiff Ivana Kirola has not proven—as she must—that each Rule 23 requirement is satisfied.

17

First, Kirola has not carried her burden to establish each of the Rule 23(a) requirements:

18

commonality, typicality, adequacy, and numerosity. Kirola moved to certify the Class on the

19

argument, which the Court accepted, that there were questions common to the Class because the City

20

had a policy of failing to *eliminate* accessibility barriers in rights-of-way, parks, libraries, pools, and

21

other City facilities. Since the Class was certified, this basis for commonality has proved factually and

22

legally baseless. Kirola failed to prove at trial that City had any such policy and the Court found the

23

exact opposite—*i.e.*, the City has robust policies, systems, and procedures for ensuring the City does

24

not discriminate against disabled members of the public. Further, to establish commonality following

25

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("*Wal-Mart*"), and subsequent Ninth Circuit

26

precedent, Kirola was required (but failed) to prove the City had a uniform policy of discrimination.

27

Without such a policy, there is nothing that binds all the myriad claimed barriers together such that

28

resolution of the legality of one claimed barrier will meaningfully resolve the remaining ones. In fact,

as the Court's multiple post-trial findings demonstrate, there was no significant common question in this case, the answer to which would resolve a key issue for each Class member's claim. Instead, the case fragmented in numerous distinct mini trials about the legality of dozens of claimed violations at parks, recreation centers, playgrounds, pools, libraries, and public rights-of-way across the City, and whether any particular violation was proved or not had no impact on the subsequent analysis of the remaining alleged violations. This is precisely the situation Rule 23 was designed to prevent.

The typicality and adequacy requirements tend to merge with commonality and failing to establish commonality similarly dooms typicality and adequacy. Kirola has also failed to demonstrate typicality or adequacy because she failed to show that she suffered the same injuries as the absent Class members. Kirola failed to show she suffered *any* injury at trial. Kirola only claimed (but was unable to prove) barriers on sidewalks, in a library as a result of misplaced step stools, and in a few pools. But the Class consists of persons allegedly injured by *any and all* barriers throughout the City, nearly all of which are entirely distinct from those Kirola alleged she suffered from. Kirola is therefore not an adequate representative, and her claims are not typical of each Class member's claims. Kirola is also not typical or adequate because, by failing to prove she actually experienced or will experience any unlawful disability barriers, she is excluded from the Class, which is limited to those who were discriminated against by the City because they faced an unlawful barrier.

Second, Kirola has not carried her burden as to numerosity. At class certification, Kirola relied on a bare statistic about the number of mobility-impaired persons in San Francisco. At trial, Kirola provided no more information about the number of people who were actually affected by the claimed barriers. Kirola's bare statistic, without more, is insufficient.

Third, Kirola failed to prove that the City's conduct was such that it could be enjoined or declared unlawful only as to all of the Class members or as to none of them, which is required to satisfy Rule 23(b)(2). Here, Kirola failed to prove that the wide variety of alleged violations (both those proved at trial and those Kirola failed to prove) were caused by a single uniform City policy of discrimination. Accordingly, no single injunction could issue that would provide relief to each Class member. Instead, as the injunctions issued to date confirm, the unconnected violations—which have not uniformly injured each Class member—have each required different, specific injunctions that

provide relief to only those members injured by the violation (or no members at all). The lack of a common course of conduct causing each of the distinct violations (proved and not) means this case is not proper for certification as a Rule 23(b)(2) class.

Finally, the Class is an improper fail-safe class. Because the Class is defined to only include those persons who have allegedly been discriminated against, Class membership depends on proving the merits of each claim. Those persons who failed to prove a discrimination claim, like Kirola herself, are not members of the Class by virtue of their failure to have suffered discrimination. Defining the Class to only include those who succeeded on their claims, and exclude those who did not, violates Ninth Circuit precedent.

Because the City has appealed this Court's class certification ruling as part of its most recent appeal, the Court does not have the ability to modify that order. Regardless, the Court can and should issue an indicative ruling that it would decertify the Class to promote efficiency.

## II.    BACKGROUND

### A.    Kirola's Claims

Kirola's theories have been sprawling since class counsel filed this case in 2007. ECF No. 1. The operative First Amended Complaint ("FAC") was filed on June 24, 2010. ECF No. 294. Kirola, on behalf of the Class, alleged violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), section 504 of the Rehabilitation Act of 1973, and state civil rights statutes. FAC ¶ 3. Kirola separately alleged an individual claim under Section 1983.[2] *Id*. She sought "declaratory and injunctive relief against the Defendants for severely limiting Plaintiffs' access to the City's facilities . . . by knowingly refusing to eliminate architectural and programmatic barriers[.]" *Id*. ¶ 3. While Kirola alleged multiple common questions of law and fact, not one concerned a policy related to new or altered construction. *Id*. ¶ 44. As this Court has recognized, Kirola claims "that Defendants . . . discriminate against mobility-impaired persons by failing to *eliminate* access barriers at the City's libraries, swimming pools, parks, and public right-of-way (i.e., the City's network of sidewalks, curb ramps, crosswalks, and other outdoor pedestrian walkways)." ECF No. 776 at 1 (emphasis added).

---

[2] The City concurrently moves to dismiss this claim.

**B.    Class Certification**

Two-and-a-half years into litigation, Kirola filed a motion for class certification. ECF No. 187. The City opposed class certification because the fact-intensive adjudication of thousands of alleged barriers failed to satisfy commonality, adequacy, typicality, and Rule 23(b)(2). ECF Nos. 245-249. A hearing was held on the motion on May 18, 2010 where the Court issued oral rulings related to class certification on a motion it believed was largely unopposed. *See* ECF No. 695. At the hearing, the City reraised its objections to adjudicating individual access barriers. *Id.* at 51-62. The Court struck references to certain facilities from the class definition because individual adjudication is improper and acknowledged it would be "a little odd" to order remediation of facilities with no proof of a violation at trial. *Id.* It further acknowledged that "policies and practices turns into a lot of things." ECF No. 695 at 59:6. Ultimately, over the City's objections that it would be hard pressed to understand Kirola's claims in advance of trial given the circumstances, the Court deferred further consideration of standing and the scope of remedies until trial. *Id.* at 60-62.

On June 7, 2010, the Cout certified the following Class with Kirola as the sole representative:

> All persons with mobility disabilities who are allegedly being denied access under Title II of the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, California Government Code Section 11135, et seq., California Civil Code § 51 et seq., and California Civil Code § 54 et seq. due to disability access barriers to the following programs, services, activities and facilities owned, operated and/or maintained by the City and County of San Francisco: parks, libraries, swimming pools, and curb ramps, sidewalks, cross-walks, and any other outdoor designated pedestrian walkways in the City and County of San Francisco.

ECF No. 285 at 7. The Court concluded that Kirola established each of the requirements of Federal Rule of Civil Procedure 23(a), including that there was commonality among the Class because Kirola alleged the City had a policy of failing to eliminate physical barriers to access in rights-of-way, parks, libraries, pools, and other facilities. *Id.* at 2-5. The Court's commonality finding (*id.* at 3) relied on *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 587 (9th Cir. 2010), which was reversed in *Wal-Mart* after trial. With respect to adequacy and typicality, the Court did not make any findings concerning Kirola's standing and the scope of permissible remedies or identify the system-wide failures or policies that were at issue. ECF No. 285 at 2-3. The Court concluded that Kirola established that the City "has acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required by Federal Rule of Civil Procedure 23(b)(2). *Id*. at 4. While it was undisputed that "policies and practices regarding access" satisfied Rule 23(b)(2), "policies and practices" were undefined and did not address the City's concerns regarding adjudication of individual barriers. *Id*.

## C.    Trial and Post-Trial Proceedings

In April and May 2011, the Court held a bench trial. During trial, the City moved for judgment and to decertify the class because Kirola and the Class had not identified any policies and practices tying class claims together and instead based their case on scattershot evidence. ECF No. 570. In their opposition and articulation of evidence from their case-in-chief, Kirola and the Class failed to identify a policy tying new or altered construction together. ECF No. 572, 575. After trial, the parties engaged in extensive post-trial briefing related to deficiencies in Kirola's bid for class-wide relief, including what the "policies" are that justify class-wide relief. ECF Nos. 604, 608, 614, 616, 618, 619, 632, 634, 636, 646, 657, 662, 666, 672, 675. While the Court questioned whether class certification should be reconsidered in light of intervening law and developments in the case (ECF Nos. 659, 663), the Court never reassessed class certification.

On November 26, 2014, the Court issued its findings of fact and conclusions of law. *Kirola v. City & Cnty. of San Francisco*, 74 F. Supp. 3d 1187 (N.D. Cal. 2014). As a threshold issue, the Court bound Kirola to the "policies" identified in her post-trial submission. *Id*. at 1238 (citing ECF No. 662 13:12-14:17). The Court concluded, among other things, that Kirola lacked standing and failed to prove any of her claims on the merits. The Court also concluded (contrary to Kirola's allegations about deficient policies) the City had robust policies to ensure ADA access at the challenged locations. *Id*. at 1250-66. Kirola appealed and the Ninth Circuit affirmed in part and reversed in part. *See Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164 (9th Cir. 2017) ("*Kirola-I*"). Policies were not relevant on appeal because Kirola had not appealed findings concerning them. *Id*. at 1170, n.2. The Ninth Circuit concluded that Kirola had standing for facilities she used, but that she and the Class nonetheless failed to prove "the City operates its public right-of-way in a deficient manner so that the program, when viewed in its entirety, is not readily accessible to and usable by individuals with disabilities." *Id*. at 1183-84 (affirming failure to prove "program access" claims). The Ninth Circuit reached "the same

conclusion regarding San Francisco's RecPark program." *Id.* With respect to Kirola's new or altered construction claims, the Ninth Circuit held that ADAAG applied to the City's public right-of-way, parks, and playgrounds to the extent Section 4's feature specific requirements applied. *Id.* at 1181. Accordingly, the Ninth Circuit remanded with specific instructions to "apply ADAAG as we have interpreted it, and reevaluate the extent of ADAAG noncompliance," and then "[o]nce the scope of any ADAAG violations at facilities used by Kirola and all other class members has been determined, the district court shall revisit the question of whether injunctive relief should be granted." *Id.* at 1185.

Following remand, the City moved for judgment and to decertify the class. ECF Nos. 751, 758, 759. The Court carried out the Ninth Circuit's specific instructions to apply ADAAG and decide whether injunctive relief should be granted based on the scope of ADAAG violations at facilities used by Kirola and all other Class members. *See Kirola v. City & Cnty. of San Francisco*, No. C 07-3685 SBA, 2021 WL 1334153, at *1 (N.D. Cal. Mar. 12, 2021). On March 12, 2021, the Court issued its order granting the City's motion for judgment and painstakingly analyzed numerous claimed ADAAG violations at the City's rights-of-way, parks, playgrounds, libraries, and swimming pools and considered the expert and percipient testimony, where it existed, about each. *Id.* at *5-26 (analyzing several disparate alleged ADAAG violations on sidewalks and rights-of-way and in parks, playgrounds, pools, and libraries). The Court concluded that Kirola and the Class failed to establish ADAAG violations in the City's rights-of-way or at any swimming pools, and that the Class established ADAAG violations at only three locations: "(1) the lack of an accessible route at St. Mary's Playground, [] (2) a missing grab bar in a restroom located somewhere near the ballparks within Golden Gate Park," and (3) "violations at the Main Library; namely, non-ADAAG compliant features in certain restrooms, the Latino/Hispanic meeting room, the Koret Auditorium and the Deaf Services Center." *Id.* at *27. Although Kirola had shown these ADAAG violations, the Court found Kirola was not entitled to class-wide injunctive relief because she had not encountered them, and she had failed to show the violations were attributable to policies or practices pervading the whole system. *Id.* at *27-28. Class certification was not addressed.

Kirola again appealed and the Ninth Circuit affirmed in part and reversed in part. *Kirola v. City & Cnty. of San Francisco*, No. 21-15621, 2023 WL 2851368, at *1 (9th Cir. Apr. 10, 2023) ("*Kirola-*

*II*"). The Ninth Circuit held that "the district court appropriately found that the plaintiffs' evidence did not warrant the sweeping class-wide relief that the plaintiffs sought," but that "the district court abused its discretion in denying relief for the ADAAG violations found." *Id.* at *2. The Ninth Circuit also affirmed the Court's findings with respect to each facility the Court analyzed, with the sole exception of a door latch in a bathroom at one pool. *Id.* at *2-3. The Ninth Circuit also directed the Court to analyze the claimed ADAAG violations at eleven park facilities. *Id.* at *2. The Ninth Circuit instructed the Court to "first issue injunctive relief as to the ADAAG violations it found," then "evaluate the evidence of alleged violations" at the eleven park facilities, and finally, "[i]f the district court finds any further ADAAG violations, the district court should revisit the question of injunctive relief that is systemwide or tailored to any additional violations found." *Id.* at *2-3.

Following the second remand, the Court issued injunctive relief for the initial ADAAG findings in Phase I. ECF No. 822. In Phase II, the Court analyzed alleged ADAAG violations at the eleven remaining facilities, and found disparate ADAAG violations at five recreation centers and the Botanical Gardens. ECF No. 852. After issuing narrowly tailored injunctions, the Court ordered systemic injunctive relief in Phase III. ECF No. 889. With respect to the City's written policies, the Court found DPW Procedure 9.8.24 (which was superseded), bidding documents, and building inspection job cards deficient. The City appealed that order and the Court's class certification order. ECF Nos. 895, 900. Final judgment has not been entered.

## III.    LEGAL STANDARDS

### A.    Indicative Ruling Standard

"The filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Under Federal Rule of Civil Procedure 62.1, a court may nevertheless issue an indicative ruling "if a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending." If the court "states that it would grant the motion or that the motion raises a substantial issue," the movant must promptly notify the Ninth Circuit, which may remand for further proceedings. *Id.*; *see* Fed. R. App. P. 12.1. "The purpose of Rule 62.1(a) is to promote judicial

1  efficiency and fairness by providing a mechanism for the district court to inform the parties and the

2  court of appeals how it could rule on a motion made after the district court has been divested of

3  jurisdiction." *Sanai v. Cardona*, No. 22-CV-01818-JST, 2025 WL 1644502, at *2 (N.D. Cal. June 10,

4  2025) (cleaned up).

5    **B.    Decertification Standard**

6        Federal Rule of Civil Procedure 23(c)(1)(C) provides that "[a]n order that grants or denies

7  class certification may be altered or amended before final judgment." "[A] district court's order

8  denying or granting class status is inherently tentative." *Coopers & Lybrand v. Livesay*, 437 U.S. 463,

9  469 n.11 (1978). That is because "actual, not presumed, conformance with" Rule 23 is

10  "indispensable." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). As such, "[d]istrict

11  courts have a responsibility to review continually the appropriateness of a certified class in light of

12  developments subsequent to class certification." *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*,

13  No. 15-cv-06314-YGR, 2018 WL 558844, at *2 (N.D. Cal. Jan. 25, 2018) (cleaned up); *see Terry v.

14  Wasatch Advantage Grp., LLC*, No. 2:15-CV-0799 KJM DB, 2023 WL 8189747, at *2 (E.D. Cal.

15  Nov. 27, 2023) ("Under Federal Rule of Civil Procedure Rule 23, district judges have an obligation to

16  'define, redefine, subclass and decertify as appropriate in response to the progression of the case from

17  assertion to facts'"). Class certification is not dispensed in gross; it is analyzed on a claim-by-claim (or

18  issue-by-issue) basis. *See* Fed. R. Civ. Proc. 23(c)(1)(B). The party seeking to maintain class

19  certification bears the burden of demonstrating that the Rule 23 requirements are satisfied, even on a

20  motion to decertify. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011); *Campbell v.*

21  *PricewaterhouseCoopers, LLP*, 287 F.R.D. 615, 619 (E.D. Cal. 2012) ("[I]n the case of a motion to

22  decertify a class, the Ninth Circuit rule is that the party resisting the motion bears the burden of

23  showing that the motion should not be granted."); *Siqueiros v. General Motors LLC*, 676 F. Supp. 3d

24  776, 789 (N.D. Cal. 2023) ("A motion for class decertification is subject to the same standard as a

25  motion for class certification under Federal Rule of Civil Procedure 23.").

26    **C.    Rule 23 Certification**

27        Plaintiffs must demonstrate that each of the four requirements of Rule 23(a) are met and that

28  Rule 23(b)(2) or (3) is satisfied. Rule 23(a) requires the plaintiff to prove "(1) the class is so numerous

that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To be certified as a Rule 23(b)(2) class action, the case must meet the four requirements of Rule 23(a) and the two criteria specified in Rule 23(b)(2): the party opposing the class must have "acted or refused to act on grounds generally applicable to the class," and the plaintiffs must be seeking "final injunctive relief or corresponding declaratory relief" that is appropriate "with respect to the class as a whole." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1201 (9th Cir. 2024) (reversing certification under Rule 23(b)(2) where "neither an injunction forcing specific performance, nor the district court's declaration constitute 'indivisible' relief that 'benefits all its members at once'"). Certification is proper "only if "the trial court is satisfied, after a rigorous analysis," that the moving party has satisfied the Rule 23 requirements. *Wal-Mart*, 564 U.S. at 350-51.

Plaintiff bears the burden of establishing all Rule 23 requirements by a preponderance of the evidence, *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) ("*Olean*"), and "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original); *see Wal-Mart*, 564 U.S. at 350 (plaintiffs must "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.") (emphasis in original). "[T]he manner and degree of evidence required at the preliminary class certification stage is not the same as at the successive stages of the litigation—*i.e.*, at trial." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (quotation marks omitted).

## IV.    ARGUMENT

### A.    Kirola Failed to Prove the Rule 23(a) Requirements

Kirola failed to prove at trial any of the Rule 23(a) requirements. Commonality, which has never been analyzed by this Court under the appropriate legal standard, is not met because Kirola failed to prove the numerous, disparate ADAAG violations at issue were caused by a uniform policy of discrimination. Kirola, who is not in the Class she purports to represent, also failed to show that her claims are typical of the absent Class members' claims. Additionally, Kirola failed to show she is an

adequate representative of a Class that includes people who encountered a huge range of alleged

violations whose only connection is that they allegedly occurred on City property. Finally, Kirola's

reliance on a single population-level statistic is insufficient to prove that the Class is so numerous that

joinder is impracticable. The Court must decertify the Class based on Kirola's failure of proof.

### 1. Kirola Failed to Prove Commonality

Decertification is appropriate because the Court's class certification order rests on the very

Ninth Circuit commonality standard that the Supreme Court subsequently overruled in *Wal-Mart*, and

this case cannot be reconciled legally or factually with the rigorous standard the Supreme Court

requires. *See* ECF No. 285 at 3. "Commonality requires the plaintiff to demonstrate that the class

members have suffered the same injury. This does not mean merely that they have all suffered a

violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349-50 (cleaned up). Instead, the

claims "must depend upon a common contention." *Id.* at 350. "That common contention, moreover,

must be of such a nature that it is capable of classwide resolution—which means that determination of

its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke." *Id.* This test ensures that the "claims can productively be litigated at once." *Id.* Here, Kirola

failed to establish any common question that would have resolved an issue central to the validity of the

Class's claims in one stroke—*i.e.* "some glue holding the alleged *reasons*" for the alleged disparate

ADA violations together. *Id.* at 352. Specifically, they failed to prove the existence of a City-wide

policy causing their ADA injuries—the very "glue" they alleged held their claims together and

presented a basis for common resolution.

When seeking class certification, Kirola argued, and the Court accepted, that she showed

commonality by *alleging* the City "fail[ed] to adopt adequate policies and practices for ensuring

compliance with disability access laws" and had a practice of "fail[ing] to eliminate physical barriers

to access in its pedestrian right-of-way, parks, libraries, pools, and other specified facilities." ECF No.

285 at 3. This alleged "adequacy of the City's policies and practices for ensuring compliance with

disability access laws" was, as the Court found, "an overarching issue common to the claims of the

class as a whole" and therefore sufficient for commonality. *Id.* (citing overturned Ninth Circuit *Dukes

v. Wal-Mart* decision). But, Kirola failed to establish any overarching City policy of failing to

eliminate barriers to access in pedestrian right-of-way, parks, libraries, pools, and other specified facilities based on actual evidence. As the Court concluded following trial, "Kirola's 'overarching policy' argument makes no sense" because the "mere fact that an access barrier is left 'in place' does not automatically demonstrate a violation of Title II of the ADA." *Kirola*, 74 F. Supp. 3d at 1238. This finding was not disturbed on appeal. *See Kirola-I*, 860 F.3d 1164. Nor did Kirola establish any City-wide failure to adopt adequate policies and practices for ensuring compliance. Again, as the Court found, Kirola failed to show "that the proven violations are attributable to policies or practices pervading the whole system. To the contrary, the City has implemented a robust, multi-faceted infrastructure to address the needs of its disabled, including the mobility-impaired, population." *Kirola*, 2021 WL 1334153 at *28. In fact, as the Court found, the City has a policy specifically "requir[ing] that all projects involving new construction or alterations of a building funded, in whole or in part, by the City, undergo review by City staff to ensure compliance with disability access laws." *Kirola*, 74 F. Supp. 3d at 1212. These factual findings were not disturbed on appeal either. *See Kirola-II*, 2023 WL 2851368.

Kirola's failure to establish the policies that the Court relied on to grant class certification is fatal to commonality, and by extension class certification, because "[t]here is no evidence of a single, 'general policy of discrimination' that could serve as a common issue." *Civil Rights Educ. & Enforcement Ctr. v. Hospitality Properties Trust*, 867 F.3d 1093, 1104 (9th Cir. 2017) ("*CREEC*") (quoting *Wal-Mart*, 564 U.S. at 352-53). Such a "general policy of discrimination" is required to find commonality here. *Id.*; *Wal-Mart*, 564 U.S. at 358 ("Even if every single one of these accounts is true, that would not demonstrate that the entire company operates under a general policy of discrimination, *which is what respondents must show to certify a companywide class*.") (cleaned up and emphasis added). As the Ninth Circuit has succinctly stated, "[i]f there is no evidence that the entire class was subject to the same allegedly discriminatory practice, there is no question common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).

The Ninth Circuit's decision affirming the denial of class certification in *CREEC* is instructive. There, plaintiffs sued the owner of several hundred hotels alleging that nearly half failed to provide local shuttle service that accommodated wheelchairs. The district court found there was no

commonality because the hotel owner, which delegated operation of the hotels to several operators, had "no common offending policy" that connected the absent class members' claims and that, accordingly, "proving that each of the 142 hotels violated the ADA would require 142 trials within a trial." *Id*. at 1104. The Ninth Circuit affirmed, reasoning that without evidence of a systematic policy of discrimination, such as evidence showing the defendant discouraged the hotel operators from complying with the ADA, there was no common question. *Id*. at 1104-05. So too here. Not only did Kirola fail to show a general policy of discrimination or any common policy that caused the disparate ADA violations complained of, the Court found the City had policies to prevent ADA violations and ensure compliance. *See Kirola*, 2021 WL 1334153 at *28; *Kirola*, 74 F. Supp. 3d at 1212.

Without proof of a common, City-wide policy that was the source of the various claimed accessibility barriers in a handful of City facilities across the City, the case splintered into numerous disconnected mini-trials about each alleged ADAAG violation. *See CREEC*, 867 F.3d at 1104 (without a common question, case consisted of facility-specific mini-trials). Indeed, on appeal Kirola judicially admitted the Class's new or altered construction claim "requires an element-by-element evaluation of a facility's compliance with ADAAG." Declaration of Steven Mills ("Mills Decl.") Ex. A at 63-64. But ADAAG regulates hundreds of requirements across disparate features, including but not limited to, accessible routes, ground surfaces, parking, ramps, doors, drinking foundations, restrooms, showers, grab bars, signage, and benches. *See generally* 28 C.F.R. Part 36, App. D, § 4. There was no significant question, the answer to which would have driven resolution of the lawfulness of the distinct and varied barriers the Class complained of (*e.g.*, exposed pipes under sink in library bathroom, a non-accessible route at a playground, a missing grab bar in a park bathroom). Instead, as warned in *CREEC*, the Court was required to effectively conduct individual trials about numerous alleged ADAAG violations at facilities across San Francisco. *See Kirola*, 2021 WL 1334153 at *5-26 (examining alleged, unrelated ADAAG violations in the right-of-way and at parks, playgrounds, libraries, and pools). Proof, or failure to prove, any particular alleged violation for a specific facility or feature had no impact on the question of whether the remaining alleged violations at other facilities or features actually violated ADAAG. *See Wal-Mart*, 564 U.S. at 350 (commonality requires a common issue, the truth or falsity of which "will resolve an issue that is central to the validity of each one of the

claims in one stroke"). For example, proving the missing grab bar in the Golden Gate Park bathroom did not establish the exposed pipes under the sink in the Main Library violated ADAAG any more than it impacted the question of ADAAG compliance (or lack thereof) of the locker rooms at the Rossi Pool. Here, the requisite "glue" holding them together was missing and commonality is lacking. *Id.* at 352. Courts faced with similar overbroad access barrier classes following *Wal-Mart* find that they are ill-suited for class certification given the distinct variation and lack of glue—preventing these claims from erroneously getting to trial in the first place. *See, e.g.*, *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 902-03 (3d Cir. 2022) (recognizing the "broad term 'accessibility barriers,' [] sweeps in a broad array of potential claims with little in common"); *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1187-88 (N.D. Cal. 2023) ("challeng[ing] architectural features of dozens of different facilities" is not suited for certification since "physical differences between the different locations may make it impossible to identify a common body of evidence").

The lack of commonality is also confirmed by the fact that Kirola failed to establish her own claims and that this did not resolve the Class's claims (several Class members, or their parents or experts, continued through trial in an attempt to show numerous disparate claimed violations). Had Kirola and the Class actually shared a common contention such that the "determination of its truth or falsity w[ould] resolve an issue that is central to the validity of each one of the claims in one stroke," the findings against Kirola should have ended the case for the Class as well. *Id.* at 350; *see Castellanos v. City of Reno*, No. 319CV00693MMDCLB, 2021 WL 3634662, at *6 (D. Nev. Aug. 16, 2021) (finding lack of commonality where "[t]he class members' claims do not rise and fall together"). Continuation of this case as a class action to resolve Class members' claims that share nothing in common with Kirola's failed claims directly contradicts the purpose of commonality and the other Rule 23(a) requirements, which exist to "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 564 U.S. at 349.

In addition to Kirola's failure to prove a City-wide policy of discrimination, the "policies" relied on for commonality cannot, as a matter of law, establish a common question. *See* ECF No. 285 at 3 ("failure to eliminate physical barriers" and "failure to adopt adequate policies and practices for ensuring access"). Kirola challenged the *absence* of policies and the failure to have, in her opinion, an

adequate policy. As the Ninth Circuit has held, this is "decidedly not a common issue." *CREEC*, 867 F.3d at 1105; *id.* at 1104 ("absent a legal duty to adopt specific policies to comply with the ADA, 'it is unclear how [defendant's] admitted lack of a policy regarding the operation of shuttle or transportation services could serve as the 'glue' holding together Plaintiff's claims'"); *see also Kirola*, 74 F. Supp. 3d at 1238 (finding "Kirola's 'overarching policy' argument makes no sense" because failure to remove a barrier does not establish ADA violation).

The Court's September 29, 2025 Order does not change this conclusion. The "policy" that the Court found was not an affirmative policy of discrimination providing a common cause of each violation, but *the failure to have an adequate policy—i.e.*, "the City's policies failing to require ADAAG compliance." ECF No. 889 at 9; *see id.* at 11 ("[T]he City's policy does not currently require compliance with federal and state accessibility standards when performing new construction or alterations[.]"). Remarkably, this was not a "policy" identified in Kirola's binding post-trial briefing over a decade ago. ECF No. 662 at 13:12-14:17. Nevertheless, the Ninth Circuit has held that neither the mere existence of a defective "policy" nor the failure to have a policy is sufficient to bind all the Class members' claims together. *CREEC*, 867 F.3d at 1105; *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 968 (9th Cir. 2020) (affirming finding of no commonality and holding "the mere existence of a facially defective written policy—without any evidence that it was implemented in an unlawful manner—does not constitute 'significant proof'" that a class was subject to a common unlawful practice); *Willis v. City of Seattle*, 943 F.3d 882, 885-86 (9th Cir. 2019) (affirming finding of no commonality where each seizure of property was different); *see also Wal-Mart*, 564 U.S. at 353-54 (rejecting argument that policy forbidding sex discrimination and providing discretion to managers was "significant proof" of a "general policy of discrimination" because such a "policy" was "the opposite of a uniform employment practice that would provide the commonality needed for a class action"). If a proposed class plaintiff could merely assert a failure to have a policy that ensured compliance with the law at issue (as Kirola has done here), the Supreme Court's requirements regarding commonality would be meaningless.[3] That problem is exacerbated here, where the written

---

[3] For example, the *Wal-Mart* plaintiffs could have just claimed that the company's policy regarding hiring and promotions failed to prevent the discrimination they alleged. The Supreme Court

policies the Kirola now complains of, and the Court found deficient, were not introduced in Kirola's case-in-chief to prove their overarching theory of discrimination (ECF Nos. 595-96), were not discussed by their experts as being deficient (ECF Nos. 698-704), were not alleged in the FAC as being unlawful (ECF No. 294), and were not submitted at class certification as any common glue (ECF No. 187). Nor does any testimony from trial establish that the City uniformly failed to comply with ADAAG. To the contrary, trial testimony demonstrates that the City applied ADAAG to park features and facilities. Mills Decl. Ex. B, ECF No. 706 at 1808-1824, 1855-1866; Mills Decl. Ex. C, ECF No. 707 at 1919-1948, 2026; Mills Decl. Ex. D at 33-52.

Issues with commonality further exist here as a legal matter where Title II does not create a standalone private right of action to challenge policies, let alone new or altered construction based on ADAAG, since nothing in the plain text of Title II dictates policy or construction standards. *See, e.g.*, *Londberg v. City of Riverside*, 571 F.3d 846, 849-52 (9th Cir. 2009); *see also Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 987 (9th Cir. 2014) (requiring nexus to public service, program, or activity); *Babcock v. Michigan*, 812 F.3d 531, 536 (6th Cir. 2016) (recognizing "facility accessibility is not, standing alone, a cognizable claim under Title II's private right of action"). Similarly, since *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) overruled *Chevron* deference, violation of ADAAG is no longer a per se ADA violation. *See, e.g.*, *Booth v. Lazzara*, 164 F.4th 581, 598-99 (6th Cir. 2026) (Murphy, J. concurring) ("But we may not give that deference now that the Supreme Court has instructed us that courts (not agencies) must resolve questions about the scope of laws like the ADA. . . . That deference is particularly problematic here because background norms should instead compel us to resolve any ambiguity in Title II in favor of state and local governments."); *Stiner v. Brookdale Senior Living, Inc.*, No. 17-cv-03962-HSG, 2024 WL 5112480, at *7 (N.D. Cal. Dec. 13, 2024) (recognizing tension between *Loper Bright* and Ninth Circuit precedent). Courts must now independently consider whether meaningful access is still provided to comply with the ADA for each feature at issue. Trial identified no way to do so on a class-wide basis.[4]

---

flatly rejected this as a valid method of showing commonality and required instead an actual, proven "general policy of discrimination." *Id.* at 353.

[4] While a divided panel in *Payan v. L.A. Cmty. College Dist.*, 11 F.4th 729 (9th Cir. 2021) ("*Payan I*") held that disparate impact claims are cognizable, the Ninth Circuit has since clarified that

Commonality further unravels because the legal standards for new or altered construction have evolved on top of the program access requirements included in the definition. For new or altered construction, trial only concerned compliance with ADAAG. As the Ninth Circuit recognized, the DOJ adopted new regulatory standards on September 15, 2010, that incorporated guidelines that were proposed by the Access Board in 2004. *Kirola-I*, 860 F.3d at 1177. For construction between September 15, 2010 and March 15, 2012, ADAAG was an optional standard. *Id*. After March 15, 2012 new or altered constructions must comply with standards commonly known as ADAS. *Id*. At trial, City employees testified that they were already applying guidelines that became ADAS as best practice and conducted related training. ECF No. 707 at 1947-1948; ECF No. 706 at 1808-1810. And even the Ninth Circuit acknowledged that it was unclear which standard applied based on the trial record. *Kirola-I*, 860 F.3d at 1178. What's more, the City already has a written policy mandating ADAS compliance. ECF No. 906-1.[5] Ultimately, injecting construction beyond September 15, 2010 into the Class undermines any showing that commonality (or adequacy and typicality) are met because no glue holds together distinct regulatory requirements.

In short, since the Court certified the Class, the Supreme Court has made clear that, to establish commonality, Kirola had to prove a general policy of discrimination. Kirola failed to prove any such policy at trial and therefore failed to establish commonality.

### 2.    Kirola Failed to Prove Typicality

Kirola was required to prove that her claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (cleaned up). "The commonality and typicality requirements of Rule

---

"the scope of remedies available under Title II of the ADA is ultimately determined by Title VI's remedial scheme." *Payan v. L.A. Cmty. Coll. Dist.*, No. 24-1809, 2026 WL 684094, at *5 (9th Cir. Mar. 11, 2026). Title VI does not authorize disparate impact. *Alexander v. Sandoval*, 532 U.S. 275, 293 (2001). Thus, *Payan I* was wrongly decided and should be overturned. In any event, Kirola cannot show how either disparate impact or disparate treatment theories of liability are justified on a class-wide basis.

[5] The City separately moves for dismissal because this policy change moots any ADAAG policy challenge. *See, e.g.*, *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014).

23(a) tend to merge." *Falcon*, 457 U.S. at 157-158, n.13. Both requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

Here, as in *Civil Rights Education & Enforcement Center v. Hospitality Properties Trust*, 317 F.R.D. 91, 103 (N.D. Cal. 2016) ("*CREEC II*"), because there is no City policy of discrimination that gave rise to disparate ADAAG violations, any "injuries" suffered by Kirola are "different injuries than those suffered by purported class members who encountered different ADA violations." Accordingly, she failed to prove her claims are typical. *Id.*; *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 571-72 (N.D. Cal. 2009) (finding lack of typicality where "restaurants did not share common architecture, plans, remodels, policies, or barriers to access" and thus plaintiffs "suffered different injuries than those suffered by purported class members who encountered different access barriers").

Additionally, as explained above, the lack of a single uniform City policy causing each of the various types of ADAAG violations (both proven and disproven) demonstrates that Kirola's claims and the Class members' claims were not the result of a "similar course of conduct" by the City. *Parsons*, 754 F.3d at 685. The atypicality of Kirola's claims from the Class member's (as well as the atypicality of the various member's claims) is confirmed by the fact that Kirola entirely lost at trial, but other Class members carried on to prove a handful of unrelated violations at disparate locations around the City (*e.g.*, a Main Library bathroom, a Golden Gate Park bathroom, access to St. Mary's Playground). Kirola's claims and the Class members' claims are therefore far from being "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157-158, n.13; *see also Small*, 122 F.4th at 1203 (varying causation theories defeated typicality).

Kirola is also not typical because her failure to prove she encountered *any* disability access barriers excludes her from the very Class she purported to represent and makes any survey and remediation as to her as the sole class representative far too broad. At trial, Kirola failed to demonstrate that she experienced any "disability access barriers." *Kirola*, 2021 WL 1334153 at *27 ("Plaintiff has failed to demonstrate, by a preponderance of evidence, that she encountered ADAAG

violations with respect to the City's public right-of-way, libraries or swimming pools."). Similarly, she failed to identify that she will experience any other access barrier outside of those presented at trial. ECF No. 704 at 1380-1394. Because judicial power only provides "complete relief *to the plaintiffs before the court*," *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025), any complete relief to Kirola is no relief at all. Because she failed to show she experienced any disability access barriers, Plaintiff is not a member of the Class entitled to relief and is not typical. Decertification is required.

### 3.    Kirola Failed to Prove Adequacy

Commonality and typicality also "tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 157-158, n.13. Because Kirola failed to prove commonality and her interests are not aligned with the Class, which she is not a member of, she is also not an adequate class representative. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Sali*, 909 F.3d at 1007 (holding "[a] named plaintiff must be a member of the class she seeks to represent"); *Lindblom v. Santander Consumer USA, Inc.*, No. 15-CV-0990-BAM, 2018 WL 573356, at *4 (E.D. Cal. Jan. 26, 2018) (adequacy and typicality are not satisfied "if the purported class representative is not even a member of the class").

"It is not inconceivable that a lead plaintiff . . . might turn out to be an inadequate class representative[.]" *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218-19 (9th Cir. 2000). Kirola's failure to encounter barriers that the Class challenged at trial renders her inadequate to represent a Class pursuing claims based on *any* "access barriers" at City facilities. *See Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (holding "any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant" to class certification, but not standing).[6] Kirola's claims, which concern discreet alleged barriers on sidewalks, at three pools, and on one park path, "implicate a

---

[6] The City contends *Melendres* was wrongly decided to the extent it adopted the "class certification approach" and held a plaintiff can bring claims for which the plaintiff lacks standing, but class members do not.  But even accepting *Melendres*' holding, Kirola's lack of standing to challenge barriers other than those the Ninth Circuit determined she had standing to challenge renders her inadequate to represent the Class that was certified, which includes facilities, programs, and barriers wholly unrelated to anything she experienced or testified she would experience.

significantly different set of concerns than the unnamed plaintiffs' claims," which concern any barrier in hundreds of locations across the City that have nothing to do with those Kirola encountered. *Id.* at 1263. Kirola's claims were limited to her encounters with seven alleged access barriers: "(1) three stretches of sidewalk containing 'bumps,' (2) a sidewalk where her wheelchair became stuck in a tree well; (3) one street corner that lacked curb ramps, (4) one street corner that provided only a single curb ramp, (5) errant step stools at three of the City's libraries, (6) three inaccessible pools [because of vague claims of access issues], and (7) steep paths in one park." *Kirola*, 2021 WL 1334153 at *3. Despite this relatively narrow set of barriers at just a few facilities and programs, Kirola was found to be adequate to represent Class members for *any* access barrier at *any* one of the hundreds of City "programs, services, activities and facilities" included in the Class definition. ECF No. 285 at 7.

As *Melendres* explained, when the remedy for the named plaintiff's claims "would not redress the injury of the unnamed plaintiffs, the claims raise a 'significantly different set of concerns' that consequently makes the named plaintiffs inadequate representatives of the unnamed plaintiffs' claims." *Id.* at 1264. Here, as further explained below (*see infra* § IV.B), because there was no common City-wide policy causing each of the "access barriers" included in the Class definition, any injunction addressing Kirola's claims (assuming she had not lost at trial) would do nothing to redress the alleged harms arising from the panoply of unrelated alleged ADAAG violations across numerous diverse facilities. To find otherwise (as the Court did in certifying the Class) is contrary to law. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) ("If the right to complain of *one* administrative deficiency automatically conferred the right to complain of *all* administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review. That is of course not the law.") (emphasis in original).

Kirola also cannot seek a remedy to remove barriers at all facilities. Faced with *Melendres*, the Ninth Circuit held that "[s]tanding for ADA claims is measured on a facility-by-facility basis, not a barrier-by-barrier basis." *Kirola-I*, 860 F.3d at 1175 n.4. And plaintiffs "must have actual knowledge of an access barrier or ADA violation." *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023). These rules make sense. "Injunctions do not extend to barriers not affecting persons with the plaintiff's particular disability; barriers that the plaintiff is not reasonably likely to encounter, . . .; or barriers in

areas [she] is unlikely to enter, such as [single sex] restrooms or employee work areas." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 952 (9th Cir. 2011). These limits ensure the ADA is not "transform[ed] . . . into an open-ended private attorney general statute, because the scope of such an injunction is limited." *Id.* So, even if Kirola has standing for facilities she used, she has not shown her standing, or anyone else's for that matter, for the hundreds of facilities contained in the broad class definition. That is an error because "*[s]tanding* is [still] meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate[.]" *Melendres*, 784 F.3d at 1261. And "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Evidence confirms that the scope of Kirola's injuries are inadequate to stand in for the entire Class. Take *children's* playgrounds as one example. At class certification, another Class member admitted children's parks were "off limits to adults"—meaning all facilities are not intended for adult use. ECF No. 190 at ECF p. 10 ¶ 6. ADA Guidelines recognize "[c]hildren often interact with their environment in ways that would be considered inappropriate for adults. Crawling and climbing, for example, are integral parts of the play experience for young children." Mills Decl. Ex. E at p. 159.[7] Thus, any injury an adult may experience at a *children*'s playground collides with the interests of the children the playgrounds are designed and intended for. Similarly, Kirola complained at trial that she could not use a children's slide at a pool and the Court held Plaintiff was "hard pressed to characterize her inability to use the children's slide as an ADAAG violation" in part because "specifications in [ADAAG] are based upon adult dimensions and anthropometrics." *Kirola*, 2021 WL 1334153, at *23 (citing ADAAG § 2.1). Thus, the record shows Kirola is an inadequate class representative to represent the overbroad Class, and the Class must therefore be decertified.

### 4.    Kirola Failed to Prove Numerosity

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Since the Class was certified, the Supreme Court clarified that plaintiffs must "prove that there are *in fact* sufficiently numerous parties[.]" *Wal-Mart*, 564 U.S. at 350. At trial,

---

[7] Government documents and "statements of public record are appropriate for judicial notice." *Cnty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1217 n.11 (N.D. Cal. 2017).

Kirola failed to introduce any evidence concerning the size of the Class and failed to show by preponderance of evidence that numerosity is in fact met. Decertification is required.

"The numerosity requirement is not tied to any fixed numerical threshold—it requires examination of the specific facts of each case . . . ." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (internal quotation marks omitted). To establish numerosity, the moving party must "show some evidence of or reasonably estimate the number of class members. Mere speculation as to satisfaction of this numerosity requirement does not satisfy Rule 23(a)(1)." *Derval v. Xaler*, No. 2:19-CV-01881-ODW, 2020 WL 430781, at *2 (C.D. Cal. Jan. 28, 2020); *see also Siles v. ILGWU Nat'l Ret. Fund*, 783 F.2d 923, 930 (9th Cir. 1986) (affirming denial of class certification where plaintiff offered no evidence as to the number of potential class members who suffered harm similar to plaintiff). Here, because the case proceeded through trial, Kirola was required to prove numerosity by a preponderance of the evidence. *Sali*, 909 F.3d at 1006 (the "manner and degree" of evidence required for class certification is greater at trial than in earlier proceedings); *Olean*, 31 F.4th at 665.

Here, to establish numerosity, Kirola relied on, and the Court accepted, a single statistic showing that there are approximately 21,000 residents of San Francisco with a mobility disability. ECF No. 285 at 2 (concluding the number of people with a mobility disability who were denied access to the specified programs and facilities due to disability barriers is so large joinder is impractical). At trial, Kirola offered no more evidence of numerosity than this statistic and the testimony of six Class members (or their mothers). *See Kirola*, 74 F. Supp. 3d at 1200 (noting Class member testimony). Nor did Kirola admit evidence that anyone other than the six Class members encounter the barriers complained about (for many ADAAG violations, the Class relied only on expert testimony and offered zero evidence than any mobility-impaired person ever encountered them or would encounter them).[8] Even assuming Kirola's bare statistic was sufficient early in the case, their evidence was wholly insufficient to "prove that there are *in fact* sufficiently numerous parties," *Wal-Mart*, 564 U.S. at 350.

---

[8] Even for those ADAAG violations that a Class member encountered, the mere existence of a feature that is out of ADAAG compliance does not show an accessibility barrier or an ADA violation. For example, the Class member who encountered the missing grab bar in the Golden Gate Park bathroom testified that bathroom was nonetheless accessible and that he was able to use it. *Kirola*, 2021 WL 1334153 at *17. He showed no intent to use that restroom again. ECF No. 702 at 860-898.

*See Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549-50 (N.D. Cal. 2007) (statistical evidence showing 1.5 million disabled golfers and declarations from 21 disabled people insufficient to establish numerosity, pre-trial, in case challenging accessibility of Marriot golf course where plaintiff offered no other evidence of how many accessed or attempted to access a Marriot course); *Thurston v. J. Crew Grp., Inc.*, No. ED CV15-01331 JAK, 2016 WL 11755595, at *6 (C.D. Cal. May 11, 2016) (finding no numerosity in disability case because "there is no evidence that allows any reliable statistical inferences from the national census data" about the number of visually-impaired persons injured by defendant's alleged conduct); *Allen*, 37 F.4th at 898 (reversing certification decision and finding of lack of numerosity for proposed class of mobility-impaired disabled patrons of store who faced obstructed aisles because statistical evidence and in-store video of 16 people using mobility devices was insufficient to show sufficiently numerous persons suffered same injury as plaintiffs).

### B. Kirola Failed to Prove the Rule 23(b)(2) Requirements

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 360. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (cleaned up). Here, Kirola has failed to prove the Rule 23(b)(2) requirements. First, as detailed above, Kirola did not prove at trial that the City had a policy of discrimination that applied generally to the Class (in fact, the Court found the exact opposite). Second, no single permissible injunction would provide relief to each member of the Class—instead Kirola seeks numerous ADAAG-violation-specific injunctions that, based on the evidence, affect a tiny number of Class members (or none at all).

As detailed above (*see supra* § IV.A.1), Kirola not only failed to prove that the City had a uniform policy of discrimination that caused the injuries Class members allegedly suffered, but the

1   Court explicitly found the City had policies to prevent barriers and address access. Accordingly,

2   Kirola failed to prove that the City "acted or refused to act on grounds that apply generally to the

3   class," as required by Rule 23(b)(2). Without such conduct, there is nothing that "can be enjoined or

4   declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at

5   360.

6          The injunctions Kirola sought (and has, in part, received) cannot and do not "provide relief to

7   each member of the class" as a whole. *Id.* This case is strikingly similar to two other disability class

8   actions where courts found Rule 23(b)(2) was not satisfied. *See CREEC II*, 317 F.R.D. at 103;

9   *Castaneda*, 264 F.R.D. at 569. In each, as here, the plaintiffs failed to show a common policy was the

10  cause of the numerous barriers they alleged. *See CREEC II*, 317 F.R.D. at 103 (no common policy of

11  discrimination causing lack of shuttle service for people using wheelchairs and scooters); *Castaneda*,

12  264 F.R.D. at 569 (no common policy of discrimination causing various barriers in Burger King

13  restaurants). And in each, the court found there was no generally applicable relief available to the class

14  as whole such that Rule 23(b)(2) was satisfied. As *Castaneda* explained: "the actual injunctive relief

15  ordered must be individually fashioned for each location" due to disparate feature specific violations.

16  264 F.R.D. at 569. "Because every store will have different violations, any ordered injunctive relief

17  will primarily need to be tailored store-by-store. There can be no 'generally applicable' relief in this

18  case as to patrons of all 92 stores." *Id*. Similarly, *CREEC II*, 317 F.R.D. at 105, found that plaintiffs

19  failed to satisfy Rule 23(b)(2)'s requirements because relief would have to be tailored to each of the

20  142 hotels whose shuttle service was allegedly in violation. Plaintiffs there argued that the court could

21  issue a single injunction ordering defendant to comply with the ADA, but the court aptly rejected the

22  argument, relying on Ninth Circuit precedent to conclude "the proposed injunction must be 'more

23  specific than a bare injunction to follow the law.'" *Id.* (quoting *Parsons*, 754 F.3d at 689 n. 35).

24         Again, this case's own history proves its failure to meet the requirements of Rule 23(b)(2).

25  Here, the Court was directed to, and did, issue an injunction to remedy the specific ADAAG violations

26  shown at trial (ECF No. 822). That injunction is precisely what Rule 23(b)(2) disallows and what

27  *Castaneda* and *CREEC II* warned against. The injunction is necessarily limited to the specific, facility-

28  by-facility violations it seeks to remedy and is, in no way, applicable to the Class as a whole, which

encompasses any person with a mobility disability who was allegedly denied access because of any access barrier at any of the City's parks, pools, sidewalks, curb ramps, crosswalks, or other outdoor walkway. For example, the Court's injunction to add insulation to the supply and drain lines in one of the Library bathrooms is specific to a single ADAAG violation in a single location. There is zero evidence that this will provide relief to *any* Class member, let alone the whole Class, because Kirola provided no evidence that any person with a mobility disability in San Francisco was denied any access because of this violation.[9] *See Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to *each member of the class*." (emphasis added)). Even for the injunction remedying the violation based on testimony from a Class member (as opposed to a violation established solely by expert testimony), Kirola offered zero evidence from which to conclude that the injunction will provide relief to anyone other than the member who testified, let alone the whole Class. Kirola has failed to prove, by a preponderance of the evidence, that Rule 23(b)(2) is satisfied and, accordingly, the Class should be decertified.

## C.    The Class Is an Improper Fail-Safe Class

Intervening law that post-dates trial establishes that courts may not "create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct." *Olean*, 31 F.4th at 669 n.14. "'Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.'" *Id.* (citation omitted). Here, the Class definition "includes only those individuals who were injured by the allegedly unlawful conduct," *id.*, by defining the Class to include those persons with mobility disabilities "who are allegedly being denied access under" federal and state access laws "due to disability access barriers[.]" ECF No. 285 at 7. The Class membership depends on the success of the underlying claims because if a person with a mobility disability does not establish that they were denied access to a City facility, program, etc. due to a disability access barrier, they both fail to

---

[9] Even for the ADAAG violations that were encountered by a Class member, it is not clear that remedying the ADAAG violation will even provide relief to that member (let alone the *entire* Class) because, as noted above, an ADAAG violation is not necessarily a violation of Title II. For example, because the member who encountered the missing grab bar nonetheless testified the bathroom was accessible, replacing the missing bar will not relieve his injury because there was no Title II injury.

establish a disability claim (as Kirola did) and are necessarily no longer a Class member (as Kirola is no longer a member). This fail-safe Class should be decertified.

### D.     This Court Should Issue an Indicative Ruling

An order decertifying the Class would entirely resolve this litigation, including the pending appeal. As the Court concluded, Kirola failed to prove any of the claims she brought against the City. Thus, without a certified class, there would only need to be a judgment against her and the case would be over. Similarly, conducting the required rigorous analysis of class certification (regardless of the outcome) under the appropriate legal standard (which has never been done), would be extremely beneficial as it would provide the parties and the Ninth Circuit the benefit of the Court's class certification analysis over substantial issues without need for a third remand. *See, e.g.*, *Howard v. Cook Cnty. Sheriff's Office*, No. 17 C 8146, 2020 WL 1445620 (N.D. Ill. March 25, 2020) (explaining similar benefit). Accordingly, an indicative ruling provides the efficiency contemplated by Rule 62.1.

## V.     CONCLUSION

For the foregoing reasons, the Court should issue an indicative ruling decertifying or modifying the class certified in the Court's Class Certification Order (ECF No. 285).

Dated:  March 13, 2026

> DAVID CHIU
> City Attorney
> ELAINE M. O'NEIL
> ARI A. BARUTH
> JOHN H. GEORGE
> STEVEN A. MILLS
> Deputy City Attorneys
>
> By:  */s/ John H. George**
>      JOHN H. GEORGE
>
> Attorneys for Defendants
> CITY AND COUNTY OF SAN FRANCISCO, et al.

*The e-filing attorney hereby attests that he has obtained concurrence in the filing of the document from the other signatory.

> */s/ Steven A. Mills*
>      STEVEN A. MILLS