DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
ELAINE M. O'NEIL, State Bar #142234
ARI A. BARUTH, State Bar #258418
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5408
Telephone:     (415) 554-3881
Facsimile:      (415) 255-0733
E-Mail:          ari.baruth@sfcityatty.org
                    john.george@sfcityatty.org
                    steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, ET AL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVANA KIROLA, et al.,<br><br>        Plaintiff,<br><br>        vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 3:07-cv-03685 AMO<br><br>**DEFENDANTS' MOTION FOR AN INDICATIVE MOTION TO DISMISS RULING; MOTION TO DISMISS**<br><br>Hearing Date:     June 4, 2026<br>Time:                2:00 pm<br>Place:               Court Room 10, 19th Floor<br>Judge:              Hon. Araceli Martínez-Olguín |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................ ii

I.      INTRODUCTION ................................................................3

II.     BACKGROUND ................................................................5

        A.      Kirola and the Class's Sprawling Claims. ..................................5

        B.      Class Certification ................................................................6

        C.      Trial Evidence. ................................................................7

                1.      Class Testimony Concerning Use Of RecPark Facilities. ...............7

                2.      The Trial Evidence Concerning New Or Altered
                        Construction Policies. ................................................8

        D.      Summary of Relevant Proceedings. ......................................10

III.    LEGAL STANDARDS ................................................................12

        A.      Motions For An Indicative Ruling. .......................................12

        B.      Motions To Dismiss For Lack Of Subject Matter Jurisdiction. .................12

IV.     ARGUMENT ................................................................14

        A.      The Court Lacks Jurisdiction Over A Policy Challenge. .........................14

        B.      Kirola And The Class Do Not Have Standing To Challenge
                All RecPark Facilities. ................................................17

        C.      The Court Lacks Jurisdiction Over Kirola's Section 1983 Claim. ............20

        D.      This Court Should Issue an Indicative Ruling. .........................22

V.      CONCLUSION ................................................................23

# TABLE OF AUTHORITIES

**Federal Cases**

*Allstate Ins. Co. v. Hughes*,
   358 F.3d 1089 (9th Cir. 2004) ...................................................................................12

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013).....................................................................................................14, 16

*Anderson v. Warner*,
   451 F.3d 1063 (9th Cir. 2006) ...................................................................................21

*Arizonans for Off. Eng. v. Arizona*,
   520 U.S. 43 (1997)......................................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................22

*Bell v. Krol*,
   Case No. 13-cv-05820-SI, 2024 WL 1055850 (N.D. Cal. Mar. 11, 2024)..............21

*Chapman v. Pier 1 Imps. (U.S.), Inc.*,
   631 F.3d 939 (9th Cir. 2011) .....................................................................................18

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)......................................................................................................14

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
   867 F.3d 1093 (9th Cir. 2017) ...................................................................................14

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..........................................................................................14, 15, 21

*Cnty. of Santa Clara v. Trump*,
   267 F. Supp. 3d 1201 (N.D. Cal. 2017) .....................................................................19

*Common Cause Ind. v. Marion Cty. Election Bd.*,
   No. 1:17-cv-01388-SEB-TAB, 2019 WL 441849 (S.D. Ind. Feb. 5, 2019)............22

*Cottrell v. Alcon Labs.*,
   874 F.3d 154 (3d Cir. 2017) ......................................................................................14

*Cuhaci v. Echemendia*,
   No. 20-cv-23950, 2021 WL 4307051 (S.D. Fal. Sept. 21, 2021)..............................22

*Dep't of Ed. v. Brown*,
   600 U.S. 551 (2023)....................................................................................................15

*FBI v. Fikre*,
   601 U.S. 234 (2024)....................................................................................................14

*Firth v. United States*,
    554 F.2d 990 (9th Cir. 1977) ...........................................................................................15

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ...............................................................................................15, 20

*Freedom from Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*,
    896 F.3d 1132 (9th Cir. 2018) .....................................................................................16

*Gonzalez v. Thaler*,
    565 U.S. 134 (2012) ......................................................................................................12

*Griggs v. Provident Consumer Discount Co.*,
    459 U.S. 56 (1982) ........................................................................................................12

*Jackson v. City of Bremerton*,
    268 F.3d 646 (9th Cir. 2001) .......................................................................................21

*Jarvis v. Regan*,
    833 F.2d 149 (9th Cir. 1987) .......................................................................................17

*Jones v. L.A. Cent. Plaza LLC*,
    74 F.4th 1053 (9th Cir. 2023) ......................................................................................13

*Kirola v. City & Cnty. of San Francisco*,
    74 F. Supp. 3d 1187 (N.D. Cal. 2014) ................................................................ *passim*

*Kirola v. City & Cnty. of San Francisco*,
    860 F.3d 1164 (9th Cir. 2017) ............................................................................ *passim*

*Kirola v. City & Cnty. of San Francisco*,
    No. 21-15621, 2023 WL 2851368 (9th Cir. Apr. 10, 2023) ...............................11, 17

*Kirola v. City & Cnty. of San Francisco*,
    No. C 07-3685-SBA, 2021 WL 1334153 (N.D. Cal. Mar. 12, 2021) ................. *passim*

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................................................12, 13

*Langer v. Kiser*,
    57 F.4th 1085 (9th Cir. 2023) ......................................................................................18

*Lee v. Schmidt-Wenzel*,
    766 F.2d 1387 (9th Cir. 1985) .....................................................................................17

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) .....................................................................................13

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990) ......................................................................................................14

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)................................................................................13, 14, 15, 19

*M.S. v. Brown,*
    902 F.3d 1076 (9th Cir. 2018) ...............................................................................17

*McDonald v. Lawson,*
    94 F.4th 864 (9th Cir. 2024) .................................................................................14

*Melendres v. Arpaio,*
    784 F.3d 1254 (9th Cir. 2015) ...............................................................................20

*Miranda B. v. Kitzhaber,*
    328 F.3d 1181 (9th Cir. 2003) ...............................................................................21

*Nat. Grocers v. Rollins,*
    157 F.4th 1143 (9th Cir. 2025) ..............................................................................20

*Nelsen v. King County,*
    895 F.2d 1248 (9th Cir. 1990) ...............................................................................19

*Omar v. Sea-Land Service, Inc.,*
    813 F.2d 986 (9th Cir. 1987) .................................................................................21

*Rosebrock v. Mathis,*
    745 F.3d 963 (9th Cir. 2014) ...........................................................................16, 17

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ...............................................................................13

*Sanai v. Cardona,*
    No. 22-CV-01818-JST, 2025 WL 1644502 (N.D. Cal. June 10, 2025) ...................12

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976).................................................................................................19

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016)...............................................................................................13

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021).........................................................................................13, 19

*United States v. Sanchez-Gomez,*
    584 U.S. 381 (2018).........................................................................................14, 20

*Vinson v. Thomas,*
    288 F.3d 1145 (9th Cir. 2002) ...............................................................................21

*West v. Atkins,*
    487 U.S. 42 (1988).................................................................................................21

*Wood v. City of San Diego,*
    678 F.3d 1075 (9th Cir. 2012) ...........................................................................13

**San Francisco Statutes, Codes & Ordinances**
San Francisco Park Code
    Section 3.02 ...........................................................................................................19

**Rules**
Federal Rules of Appellate Procedure
    Rule 12.1 ................................................................................................................12

Federal Rules of Civil Procedure
    Rule 12(b)(1)......................................................................................................1, 13

Federal Rules of Civil Procedure
    Rule 12(h)(3).......................................................................................1, 12, 13, 22

Federal Rules of Civil Procedure
    Rule 23(b)(2)...........................................................................................................6

Federal Rules of Civil Procedure
    Rule 25(c) ................................................................................................................1

Federal Rules of Civil Procedure
    Rule 62.1 ...............................................................................................1, 5, 12, 22

Federal Rules of Civil Procedure
    Rule 62.1(a) ...........................................................................................................12

**Regulations**
Code of Federal Regulation
    Section 35.151(c) ...................................................................................................16

**State Statutes & Codes**
California Civil Code
    Section 51 ................................................................................................................6

California Civil Code
    Section 54 ................................................................................................................6

California Government Code
    Section 11135 ..........................................................................................................6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Notice is hereby given that on June 4, 2026 at 2:00 p.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, 19th Floor, Courtroom 10, San Francisco, CA 94102, before the Honorable Araceli Martínez-Olguín, Defendants City and County of San Francisco, Daniel Lurie in his official capacity as Mayor, Rafael Mandelman in his official capacity as President and Member of the Board of Supervisors, and Connie Chan, Stephen Sherrill, Danny Sauter, Bilal Mahmood, Matt Dorsey, Myrna Melgar, Jackie Fielder, Shamann Walton, Chyanne Chen, and Alan Wong in their official capacities as current members of the Board of Supervisors (collectively the "City" or "Defendants")[1] will and hereby do move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), and 62.1, for an indicative ruling to dismiss Plaintiffs' remaining claims for lack of subject matter jurisdiction. Additionally, the official capacity Defendants move to dismiss the Section 1983 claim brought by Plaintiff Ivana Kirola only, and not as the sole representative of the class, for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3). This claim can be dismissed without an indicative ruling because the claim is not subject to the City's pending appeal.

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Steven Mills in support, the Request for Judicial Notice contained herein, the pleadings and other papers filed, any oral argument, the evidence and testimony presented at trial, and any other such matters that the Court may consider.

---

[1] This case names a former Mayor and former members of the San Francisco Board of Supervisors in their official capacities: Gavin Newsom as Mayor, Aaron Peskin as President and member of the Board of Supervisors, and Jake McGoldrick, Michela Alioto-Pier, Ross Mirkarimi, Ed Jew, Chris Daly, Sean Elsbernd, Bevan Dufty, Tom Ammiano, Sophie Maxwell, and Gerardo Sandoval as members of the Board of Supervisors. When a public officer ceases to hold office, the successor is automatically substituted as a party. Fed. R. Civ. P. 25(c). Accordingly, the City names the current Mayor and members of the Board of Supervisors.

Dated:  March 13, 2026

DAVID CHIU
City Attorney
ELAINE M. O'NEIL
ARI A. BARUTH
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys


By:  */s/ Steven A. Mills*
STEVEN A. MILLS

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Ivana Kirola ("Kirola") commenced this case nearly two-decades ago, alleging on behalf of a putative class that the City and County of San Francisco and its elected officials in their official capacities (the "City") knowingly and intentionally violate federal and state nondiscrimination law, as well as related regulations. Kirola prevailed in certifying a sprawling class over the City's objections that Article III did not support her bid to do so and that it was impermissible to adjudicate individual access barriers in a class action. Since 2010, she has been the sole representative on behalf of a Class of all persons with mobility disabilities who are allegedly being denied access due to disability access barriers in the City's parks, libraries, swimming pools, curb ramps, sidewalks, cross-walks, and any other outdoor designated pedestrian walkways in the City.

Circumstances have changed considerably since this case was commenced. After a 14-day bench trial and two appeals to the Ninth Circuit, all that remains a theory that the City's Recreation and Park Department ("RecPark") violated the Americans with Disabilities Act, the Rehabilitation Act, and related state law when RecPark allegedly enacted barriers in its newly constructed or altered facilities that fail to comply with the ADA Accessibility Guidelines ("ADAAG") from 1991. Having failed to prevail on the overwhelming majority of their claims and theories, Kirola has conjured up theories of legal liability she failed to allege in the operative First Amended Complaint ("FAC"), abandoned on appeal, and that fall outside of this Court's limited jurisdiction. Dismissal of the remaining claims is required.

The FAC is premised on Kirola's misguided belief that the City failed to adopt and implement policies that would ensure access. At trial, Kirola introduced no evidence in the Class's case-in-chief that the City had any policy bearing on new or altered construction, or that the City failed to adopt a relevant policy. Doing so was fatal as far as Article III jurisdiction is concerned. Kirola and the Class completely failed to carry their burden that any injury was fairly traceable to a challenged policy and they lack standing. Notably, the City introduced evidence that it *actually* has policies governing new or altered construction—turning Kirola's allegations on their head. Seeing through Kirola and the Class's smokescreen, the Court found that the City has a sophisticated and robust infrastructure,

including policies, that ensure meaningful access in RecPark programs. Remarkably, because Kirola failed to put on any policy challenge at trial, she did not appeal one and forfeited any challenge on appeal.

Even if Kirola or the Class had standing to challenge an ADAAG policy and did not waive any policy challenge on appeal, any ADAAG policy challenge is moot. As the trial record shows, and the Ninth Circuit confirmed, ADAAG was superseded by the 2010 ADA Standards ("ADAS") by March 15, 2012. Consistent with its commitment to accessibility, the City did enact a new policy that mandates compliance with ADAS in all construction after March 15, 2012. Because local governments are presumed to act in good faith when they change a policy based on evolving legal standards, any ADAAG policy challenge is moot. The claim must be dismissed for lack of subject matter jurisdiction.

Moreover, Kirola and the Class have judicially admitted that their new or altered construction claim requires an element-by-element analysis. The Ninth Circuit has also held in this case that standing is evaluated on a facility-by-facility basis and that Kirola and the Class only have standing for the facilities they demonstrated they used. Kirola and the Class marshalled up minimal evidence in their case-in-chief to justify their standing. At bottom, this expanded to just 7 parks in the RecPark system.  But the record showed the City has 220 parks, which included approximately 73 recreation centers and clubhouses, 45 athletic fields, and 133 playgrounds. The evidence is woefully deficient to justify equitable relief over the vast majority of these facilities. Because Kirola and the Class failed to prove their constitutional standing to challenge all facilities, the Court lacks jurisdiction over them.

Kirola also alleges a stand-alone Section 1983 claim against the City's elected officials premised on violations of the ADA and Rehabilitation Act. However, Kirola again failed to present any evidence of a relevant policy at trial and does not have standing to pursue this claim. Even if she had standing (and she does not), the claim is moot because Kirola failed to prove any predicate violation as to her to justify any relief. The claim is also futile because the ADA and Rehabilitation Act preclude a Section 1983 claim because they include comprehensive remedial schemes. It must be dismissed once and for all.

Ultimately, the Court's ability to address all of these jurisdictional issues is limited due to the City's pending appeal of the Court's order granting systemic injunctive relief. Jurisdictional challenges

are raised by the City on appeal. However, the Court can and should issue an indicative ruling pursuant to Federal Rules of Civil Procedure 62.1. Resolving these jurisdictional issues in the first instance will aid the complete resolution of this case and preempts any potential remand for this Court to address the issues in the first instance. The City's appeal also does not limit the Court's ability to dismiss the Section 1983 claim because that claim is not subject to the order granting systemic injunctive relief. Accordingly, the City requests that the Court issue an indicative ruling and dismiss Kirola and the Class's claims.

## II.     BACKGROUND

### A.     Kirola and the Class's Sprawling Claims.

Class counsel commenced a putative class action in 2007. ECF No. 1. This original complaint named Ivana Kirola, Michael Kwok, and Elizabeth Elftman as plaintiffs. *Id.* The operative FAC was filed on June 24, 2010 after the class was certified. ECF No. 294. Only Kirola remains as a named plaintiff and the sole representative of the class. She has cerebral palsy and "is unable to walk, has limited use of her hands, and is legally blind. She uses a power wheelchair for mobility." FAC ¶ 8. Kirola, on behalf of the class, alleged violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), section 504 of the Rehabilitation Act of 1973, and state civil rights statutes. FAC ¶ 3. Kirola separately alleged an individual claim under Section 1983 premised on violations of the ADA and Rehabilitation Act. *Id.* This claim was not brought on behalf of the class and is not certified on that basis.

In the FAC, Kirola alleged that the City "failed to adopt and implement effective policies to ensure that its public facilities and programs are readily accessible to and usable by persons with mobility disabilities." FAC ¶ 2. As to new or altered construction, which is the only theory remaining in this case after a 14-day trial and two appeals, Kirola alleged that the City "has performed new construction and alterations to its existing facilities without complying with federal and state disability access design." *Id.* ¶ 2. Because the FAC is premised on the City's failure to adopt policies, the FAC does not allege that any City policy bearing on new or altered construction is unlawful. Rather, the FAC alleges deficiencies with the City's transition and self-evaluation plans, remediation of grievances, and maintenance of accessible features—all claims which have been conclusively decided

against Kirola and the Class. *See, e.g.*, FAC ¶¶ 54, 60. Similarly, while the FAC identified eight "questions of law and fact common to the class," not one concerns the unlawfulness of any City policy bearing on new or altered construction. FAC ¶ 44.

As alleged, Kirola sought "declaratory and injunctive relief against the Defendants for severely limiting Plaintiffs' access to the City's facilities, programs, services, and activities by knowingly refusing to eliminate architectural and programmatic barriers[.]" *Id.* ¶ 3. The Prayer for Relief does not seek relief as to any policy bearing on new or altered construction. FAC, Prayer for Relief ¶¶ 1-5. As this Court recognized after presiding over trial, Kirola claims "that Defendants . . . discriminate against mobility-impaired persons by failing to *eliminate* access barriers at the City's libraries, swimming pools, parks, and public right-of-way (i.e., the City's network of sidewalks, curb ramps, crosswalks, and other outdoor pedestrian walkways)." ECF No. 776 at 1 (emphasis added).

**B.    Class Certification.**

Two-and-a-half years into litigation, Kirola filed a motion for class certification. ECF No. 187. Kirola's class certification went beyond the allegations in her original complaint to identify seven common questions of law and fact related to the putative class's new or altered construction claim specifically. Notably, not a single one concerned any specific City policy that Kirola claimed was unlawful. The City opposed class certification because the fact-intensive adjudication of thousands of alleged barriers failed to satisfy commonality, adequacy, typicality, and Rule 23(b)(2). ECF Nos. 245-249. On June 7, 2010, the Court certified the following class with Kirola as the sole representative:

> All persons with mobility disabilities who are allegedly being denied access under Title II of the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, California Government Code Section 11135, et seq., California Civil Code § 51 et seq., and California Civil Code § 54 et seq. due to disability access barriers to the following programs, services, activities and facilities owned, operated and/or maintained by the City and County of San Francisco: parks, libraries, swimming pools, and curb ramps, sidewalks, cross-walks, and any other outdoor designated pedestrian walkways in the City and County of San Francisco.

ECF No. 285 at 7. As demonstrated by the class definition itself, a claim pursuant to Section 1983 was not certified and has not been tried on a class-wide basis. In certifying the class, and over the City's objections that it would be hard pressed to understand the claims in advance of trial (*see, e.g.*, ECF No. 695 at 60:15-24), the Court did not address the merits of the City's objections and did not articulate the

1    contours of the claims that Kirola and the Class would be permitted to try. ECF No. 285. Indeed, the

2    Court acknowledged that "policies and practices turns into a lot of things." ECF No. 695 at 59:6.

3    Nevertheless, questions concerning the scope of claims and remedies were deferred until trial. The

4    City has filed a motion for an indicative ruling decertifying the class based on changes in the law and

5    evidence since the class was certified. Class certification was also appealed.

6         **C.    Trial Evidence.**

7         Between April and May of 2011, the Court held a bench trial. The evidence concerning

8    facilities used by class members was scant. Nor did Kirola present any written construction policy

9    concerning new or altered construction as being unlawful at trial in the Class's own case-in-chief.

10        **1.    Class Testimony Concerning Use Of RecPark Facilities.**

11        Testimony at trial hardly scratched the surface concerning the City's RecPark facilities. As the

12   Court found, "RecPark manages approximately 4,200 acres of park land, which includes more than

13   220 parks and 400 built structures, including pools, recreation centers, clubhouses, and playgrounds."

14   *Kirola v. City & Cnty. of San Francisco*, 74 F. Supp. 3d 1187, 1214 (N.D. Cal. 2014).  At the time of

15   trial, this also included approximately nine pools, seventy-three recreation centers and clubhouses,

16   forty-five athletic fields, and 133 playgrounds. *Id*. at 1230-31.

17        "Aside from her own testimony, Kirola presented the testimony of three class members and

18   three mothers of class members." *Kirola*, 74 F. Supp. 3d at 1217. This included Timothy Grant,

19   Margie Cherry, and Elizbeth O'Neil on their own behalf. *Id*. It also included mothers Jill Kimbrough,

20   Audrey DeChadenedes, and Erica Monasterio who testified concerning their daughter's experiences,

21   who ranged from ages 9, 13, and 25 at trial. *Id*. Testimony from these individuals concerning RecPark

22   parks and park facilities was sparse. As the Court acknowledged, Kirola only complained about Alamo

23   Square Park in her minimal testimony and failed to "offer any testimony regarding any inability to

24   access the multitude of other parks operated by the City." *Id*. at 1256. The other class members fared

25   no better. The Court found that "Cherry, Kimbrough and Monasterio testified regarding accessibility

26   issues at a handful of the City's 220 parks. Much of the testimony was sparse and non-specific." *Id*.

27   Ultimately, the Court painstakingly evaluated the evidence concerning parks used by class members.

28   This concerned a bathroom stall at Golden Gate Park, the Tea House entrance at the Japanese Tea

Garden in Golden Gate Park, a Golden Gate Park playground, the McLaren Park duck pond, pathways at St. Mary's playground, a play area at Balboa Park, paths at Holly Park, parts of the eucalyptus forest at Glen Canyon Park, access to the Conservatory of Flowers at Golden Gate Park, and the barriers encountered by Kirola at Alamo Square park. *See generally Kirola v. City & Cnty. of San Francisco*, No. C 07-3685-SBA, 2021 WL 1334153 (N.D. Cal. Mar. 12, 2021); *see also* Declaration of Steven Mills ("Mills Decl."), Ex. A, ECF No. 700 at 535-596 [O'Neil]; Ex. B, ECF No. 701 at 820-855 [Kimbrough]; Ex. C, ECF No. 702 at 862-898 [Grant], 997-1027 [DeChadenedes], 1028-1051 [Cherry]; Ex. D, ECF No. 703 at 1225-1249 [Monasterio]; Ex. E, ECF No. 704 at 1380-1396 [Kirola]. No other evidence from trial exists concerning facilities class members used or will use. Nor is there any evidence of class members' actual knowledge of barriers at other facilities.

In addition to this testimony from class members, Kirola presented expert testimony from Peter Margen, Dr. Edward Steinfeld, Jeffrey Scott Mastin, Gary Waters, and David Seaman. *Kirola*, 74 F. Supp. 3d at 1221. "With respect to the City's park program, Kirola's experts inspected 13 parks, 7 mini-parks, and 16 playgrounds of the City's network of approximately 220 parks. They also visited multiple sites within Golden Gate Park." *Id*. at 1227. These experts also "conducted site inspections of thirteen of the City's seventy-three recreation centers and clubhouses." *Id*. These experts did not testify to any actual instances of class members being denied meaningful access in any facility surveyed and focused their testimony on the results of their inspections.

## 2.    The Trial Evidence Concerning New Or Altered Construction Policies.

At trial, Kirola did not introduce evidence concerning any written policy bearing on the City's new or altered construction in its RecPark facilities to support the Class's allegations that the City "failed to adopt and implement effective policies to ensure that its public facilities and programs are readily accessible to and usable by persons with mobility disabilities." FAC ¶ 2. Indeed, Kirola summarized the evidence in a sworn declaration when the City moved for judgment during trial, and not a single document identified concerns a City policy controlling new or altered construction in RecPark facilities. ECF No. 572.

In its rebuttal, the City introduced evidence concerning construction compliance with disability access laws that turned the Class's allegations in the FAC that the City had *no* policies on its head. The

Court acknowledged based on the evidence that "the City has elected to use ADAAG as its standard for newly constructed or altered facilities." *Kirola*, 74 F. Supp. at 1258. "Since June 22, 1998, the City has required that all projects involving new construction or alterations of a building funded, in whole or in part, by the City, undergo review by City staff to ensure compliance with disability access laws." *Id.* at 1212; Mills Decl. Ex. F. Furthermore, the City affirmatively introduced DPW Procedure 9.8.24, which the Court found "is a written accessibility compliance procedure that sets forth the review process for all projects designed by or contracted through DPW to ensure that all construction plans and completed facilities meet applicable access regulations and City standards." *Kirola*, 74 F. Supp. 3d at 1212; Mills Decl. Ex. G. "Procedure 9.8.24 requires DPW Disability Access Coordinator to conduct: (1) accessibility reviews during the planning and design of DPW-managed City projects, which includes the review of construction drawings and plans prior to submission to the Department of Building Inspection; (2) accessibility reviews during construction; and (3) post-construction inspections for disability access compliance before the building is certified for occupancy." *Kirola*, 74 F. Supp. 3d at 1212. "Publicly-funded projects reviewed by MOD undergo similar access reviews." *Id.*; Mills Decl. Ex. H at p. A35-000079-82, 126-140. "The Department of Building Inspection will not issue a building permit, or certify a project as complete, without written approval from MOD's compliance officers for each stage of design and construction." *Kirola*, 74 F. Supp. 3d at 1212; Mills Decl. Ex. I. The City's policy expert William Hecker testified that the City has "the best" polices he has seen in his 21 years—including City training on accessibility and construction inspections for accessibility compliance. Mills Decl. Ex. J, ECF No. 711 at 2723-2734. Indeed, "MOD regularly conducts training for virtually all City departments on matters such as disability rights and access requirements," which included training concerning ADAAG's application to newly constructed or altered facilities in the RecPark system. *Kirola*, 74 F. Supp. 3d at 1203; Mills Decl. Ex. K, ECF No. 706 at 1854-1871; Mills Decl. Ex. L at 33-53. The Class offered no related testimony.

Ultimately, the Court found the City has "a sophisticated and robust infrastructure" "[t]o ensure that disabled persons have meaningful access to its services and programs consistent with the ADA and state law." *Kirola*, 74 F. Supp. 3d at 1202; *Kirola*, 2021 WL 1334153, at *28 (finding "the City has implemented a robust, multi-faceted infrastructure to address the needs of its disabled,

1    including the mobility-impaired, population"). In addition, the Court found that "City staff members

2    responsible for design and construction review of publicly-funded projects are 'well qualified,

3    competent, detail-oriented professionals that really understand the accessibility requirements of the

4    ADA.'" *Kirola*, 74 F. Supp. 3d at 1212.

5          **D.    Summary of Relevant Proceedings.**

6          On November 26, 2014, the Court issued its findings of fact and conclusions of law. *Kirola*, 74

7    F. Supp. 3d at 1197. The Court concluded, among other things, that Kirola lacked standing and failed

8    to prove any of her claims on the merits. The Court also concluded (contrary to Kirola's allegations

9    about deficient policies) the City had robust policies to ensure ADA access at the challenged locations.

10   *Id.* at 1250-66. Kirola appealed and the Ninth Circuit affirmed in part and reversed in part. *See Kirola*

11   *v. City & Cnty. of San Francisco*, 860 F.3d 1164 (9th Cir. 2017) ("*Kirola-I*"). Policies were not

12   relevant on appeal because Kirola had not appealed findings concerning them. *Id.* at 1170, n.2. Indeed,

13   Kirola represented that the Class's case was about removing individual barriers, and "requires an

14   element-by-element evaluation of a facility's compliance with ADAAG." Mills Decl. Ex. M at pp. 6,

15   61-85. Again, this did not concern any policy.

16         Relevant to these proceedings, the Ninth Circuit concluded that ADA standing is evaluated on

17   a "facility-by-facility basis" and that Kirola and the "class [have] standing for claims related to all

18   facilities *challenged at trial*" that were "*used* by Kirola and all other class members[.]" *Kirola-I*, 860

19   F.3d at 1174-76, 1185, n.4 (emphasis added). With respect to the new or altered construction claims,

20   which is the only theory that now remains, the Ninth Circuit held that ADAAG applied to the City's

21   public right-of-way, parks, and playgrounds to the extent Section 4's feature specific requirements

22   applied. *Id.* at 1181. Accordingly, the Ninth Circuit remanded with specific instructions to "apply

23   ADAAG as we have interpreted it, and reevaluate the extent of ADAAG noncompliance," and then

24   "[o]nce the scope of any ADAAG violations at facilities *used* by Kirola and all other class members

25   has been determined, the district court shall revisit the question of whether injunctive relief should be

26   granted." *Id.* at 1185 (emphasis added).

27         Following remand, the City moved for judgment and to decertify the class. ECF Nos. 751, 758,

28   759. On March 12, 2021, the Court issued its order granting the City's motion for judgment after

1   painstakingly analyzing the scope of ADAAG violations at facilities used by Kirola and all other class

2   members. *Kirola*, 2021 WL 1334153, at *5-26. The Court concluded that Kirola and the Class failed

3   to establish ADAAG violations in the City's rights-of-way or at any swimming pools, and that

4   Plaintiffs established ADAAG violations at only three locations: "(1) the lack of an accessible route at

5   St. Mary's Playground, [] (2) a missing grab bar in a restroom located somewhere near the ballparks

6   within Golden Gate Park," and (3) "violations at the Main Library; namely, non-ADAAG compliant

7   features in certain restrooms, the Latino/Hispanic meeting room, the Koret Auditorium and the Deaf

8   Services Center." *Id.* at *27. The Court found Kirola was not entitled to class-wide injunctive relief

9   because she had not encountered them, and she had failed to show the violations were attributable to

10  policies or practices based on its conclusive finding that the City has "a robust, multi-faceted

11  infrastructure to address the needs of its disabled." *Id.* at *27-28. The Court did not rule on the City's

12  motion to decertify the class.

13      Kirola again appealed and the Ninth Circuit again affirmed in part and reversed in part. *Kirola*

14  *v. City & Cnty. of San Francisco*, No. 21-15621, 2023 WL 2851368, at *1 (9th Cir. Apr. 10, 2023)

15  ("*Kirola-II*"). The Ninth Circuit held that Court "appropriately found that the plaintiffs' evidence did

16  not warrant the sweeping class-wide relief that the plaintiffs sought," but that Court "abused its

17  discretion in denying relief for the ADAAG violations found." *Id.* at *2. The Ninth Circuit also

18  affirmed the Court's findings with respect to each facility the Court analyzed, with the sole exception

19  of a door latch in a bathroom at one pool. *Id.* at *2-3. The Ninth Circuit directed the Court to analyze

20  claimed ADAAG violations at eleven park facilities. *Id.* at *2. The Ninth Circuit instructed the Court

21  to "first issue injunctive relief as to the ADAAG violations it found," then "evaluate the evidence of

22  alleged violations" at the eleven park facilities, and finally, "[i]f the district court finds any further

23  ADAAG violations, the district court should revisit the question of injunctive relief that is systemwide

24  or tailored to any additional violations found." *Id.* at *2-3.

25      The case was reassigned to this Court on remand and the Court is familiar with the remaining

26  proceedings. In Phase I, the Court issued injunctive relief for the initial ADAAG findings from the

27  Ninth Circuit. ECF No. 822. In Phase II, the Court analyzed alleged ADAAG violations at the eleven

28  remaining facilities identified by Kirola's experts, and found disparate ADAAG violations at five

recreation centers and the Botanical Gardens. ECF No. 852. After issuing narrowly tailored injunctions, the Court ordered systemic injunctive relief in Phase III, finding City policies deficient and that policy changes, a survey of facilities, and remediation were appropriate. ECF No. 889. The City appealed the systemic relief order and the Court's class certification order. ECF Nos. 895, 900. Final judgment has not been entered.

## III.    LEGAL STANDARDS

### A.    Motions For An Indicative Ruling.

"The filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Under Federal Rules of Civil Procedure 62.1, a court may nevertheless issue an indicative ruling "if a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending." If the court "states that it would grant the motion or that the motion raises a substantial issue," the movant must promptly notify the Ninth Circuit, which may remand for further proceedings. *Id.*; *see* Fed. R. App. P. 12.1. "The purpose of Rule 62.1(a) is to promote judicial efficiency and fairness by providing a mechanism for the district court to inform the parties and the court of appeals how it could rule on a motion made after the district court has been divested of jurisdiction." *Sanai v. Cardona*, No. 22-CV-01818-JST, 2025 WL 1644502, at *2 (N.D. Cal. June 10, 2025) (cleaned up).

### B.    Motions To Dismiss For Lack Of Subject Matter Jurisdiction.

"Federal courts are courts of limited jurisdiction" whose power "is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Subject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th Cir. 2004) (recognizing the "court has an independent obligation to address *sua sponte* whether [it] has] subject matter jurisdiction"). While courts must independently consider subject matter jurisdiction, a defendant may seek dismissal for lack of subject matter jurisdiction pursuant to Federal

1    Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe*

2    *Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[T]he deadline for making a Rule

3    12(b)(1) motion to dismiss for lack of subject matter jurisdiction is prolonged by Rule 12(h)(3), which

4    provides that '[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court

5    must dismiss the action.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012). "Indeed,

6    'the objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a

7    court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.'" *Id*.

8    (citation omitted).

9           "[I]n a facial attack, the challenger asserts that the allegations . . . are insufficient on their face

10    to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Standing allegations must

11    satisfy the plausibility requirement. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056, n.1 (9th Cir.

12    2023). "By contrast, in a factual attack," which is raised here based on the trial record, "the challenger

13    disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."

14    *Id*. The court "may review evidence beyond the complaint[.]" *Safe Air for Everyone*, 373 F.3d at 1039.

15    "It is to be presumed that a cause lies outside this limited jurisdiction. . . and the burden of establishing

16    the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted).

17    "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the

18    requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121-

19    22 (9th Cir. 2014).

20           "[P]laintiffs must demonstrate standing for each claim that they press and for each form of

21    relief that they seek[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To meet the

22    "irreducible constitutional minimum" of standing, a plaintiff must have (1) suffered an injury in fact,

23    (2) that is fairly traceable to the defendant's challenged conduct, and (3) will be redressed by a

24    favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation omitted). Injury in

25    fact requires a showing of "'an invasion of a *legally protected interest*' that is 'concrete and

26    particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578

27    U.S. 330, 339 (2016) (citation omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102

28    (1983). "The Supreme Court has not defined the term 'legally protected interest' as it pertains to

Article III standing, nor has it clarified whether the term does any independent work in the standing analysis." *Cottrell v. Alcon Labs.*, 874 F.3d 154, 163 (3d Cir. 2017). For equitable relief, the "threatened injury must be *certainly* impending to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up) (emphasis added). A "high degree of immediacy" is required where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564 n.2. Standing is evaluated based on the facts existing when the operative complaint was filed. *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017).

Nevertheless, "it is not enough that a dispute was very much alive when suit was filed." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted); *United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018) ("A case that becomes moot at any point . . . is outside the jurisdiction of the federal courts."). "'[C]hanging circumstances' can render a case moot." *McDonald v. Lawson*, 94 F.4th 864, 868 (9th Cir. 2024) (citation omitted). "To show that a case is truly moot, a defendant must prove "'no reasonable expectation'" remains that it will 'return to [its] old ways.'" *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (citation omitted).

## IV.     ARGUMENT

### A.     The Court Lacks Jurisdiction Over A Policy Challenge.

As a threshold issue, the FAC does not allege that any policy bearing on new or altered construction is unlawful. Rather, Kirola alleges that the City "failed to adopt and implement effective policies to ensure that its public facilities and programs are readily accessible" and that the City "intentionally refused to comply with federal and state disability non-discrimination laws." FAC ¶¶ 2, 20. At trial, Kirola and the Class introduced *no* evidence concerning *any* policy relating to new or altered construction. Instead, as the City explained in Section II.C.2, the City introduced evidence at

trial showing sophisticated and robust policies to ensure compliance with the access laws. Because Kirola and the Class failed to attribute any injuries at trial to a written policy they contend was unlawful, they failed to carry their burden to prove their standing at trial on a policy challenge. To prove standing, they needed to point to "specific facts" that are "supported adequately by the evidence adduced at trial." *Lujan*, 504 U.S. at 561. Having failed to identify any facts, let alone specific facts, Kirola and the Class cannot establish that any injury was fairly traceable to a City's challenged policy. "[F]airly traceable" means that "there must be a causal connection between the injury *and the conduct complained of*." *Dep't of Ed. v. Brown*, 600 U.S. 551, 561 (2023) (emphasis added). "[T]he plaintiff must show a predictable chain of events leading from the government action to the asserted injury[.]" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024). Kirola and the Class cannot rely "on mere conjecture about possible governmental actions" and must present "concrete evidence to substantiate their fears." *Clapper*, 568 U.S. at 420. But after presenting their case at trial, Kirola and the Class cannot show that they were injured by any unlawful defect in any policy, let alone the intentional failure to adopt polices they complain about in the FAC. They lack standing.

What's more, Kirola and the Class abandoned any policy challenge after *Kirola-I* and the Court has no jurisdiction to allow them to resurrect new policy challenges. "When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1977). A district court only has jurisdiction to consider "any issue not expressly or impliedly disposed of on appeal[.]" *Id*. Defining the claims at issue, *Kirola-I* recognized that "a significant portion of the trial was also dedicated to evidence of the City's various plans and policies for addressing access barriers." *Kirola-I*, 860 F.3d at 1170 n.2. "The specific content of these plans and policies is not relevant to the issues on appeal." *Id*. That is because the Court found the City employs "sophisticated and robust" policies and procedures to ensure ADA compliance. *Kirola*, 74 F. Supp. 3d at 1203, 1212. Kirola and the Class did not appeal these findings and did not challenge the unlawfulness of any policy in *Kirola-I*. Instead, Kirola framed their appeal as seeking "declaratory and injunctive relief requiring the City to remedy the effects of its past and ongoing violations of the law, including a plan for the removal of barriers and the implementation of

measures to ensure that new construction and alterations to City facilities comply with ADAAG," and represented their new or altered construction claim "requires an element-by-element evaluation of a facility's compliance with ADAAG." Mills Decl. Ex. M at pp. 6, 61-85. Yet, "[i]t is well established that an appellant's failure to argue an issue in the opening brief, much less on appeal more generally, waives that issue[.]" *Freedom from Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1152 (9th Cir. 2018).

Even if Kirola and the Class still had a valid policy challenge on remand for ADAAG compliance—and they do not—any policy challenge is moot. At trial and in the FAC, Kirola and the Class sought compliance with ADAAG and now complain that DPW's Procedure 9.8.24 from January 2010—a document Kirola and the Class did not introduce in their case-in-chief or identify in the FAC—is somehow unlawful. ECF No. 594 (Plts. Trial Index); FAC ¶¶ 2,44, 51-77, & Prayer for Relief. However, DPW Procedure 9.8.24 was superseded by Procedure 10.02.21 after trial. The current version was finally approved in January 2014 and requires compliance with ADAS. Mills Decl. Ex. N. The policy states in unambiguous terms that "ADAAG may no longer be used after March 14, 2012" since "[t]he ADAAG is being replaced by the 2010 ADA Standards for Accessible Design, which will be mandatory for all projects as of March 15, 2012." Mills Decl. Ex. N at p. 1. These circumstances moot any policy challenge for ADAAG construction.

"No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC*, 568 U.S. at 91 (citation omitted). Courts "presume that a government entity is acting in good faith when it changes its policy, . . . but when the government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up." *Rosebrock v. Mathis*, 745 F.3d 963, 971-72 (9th Cir. 2014) (citation omitted). This standard is satisfied here because the DOJ (not the City) superseded ADAAG by making ADAS an optional standard on September 15, 2010, and controlling after March 15, 2012. 28 C.F.R. § 35.151(c); *see also Kirola-I*, 860 F.3d at 1176-78 (explaining evolution of regulations). At trial, the City was already applying proposed guidelines as best practice, and those were incorporated into ADAS. Mills Decl. Ex. O, ECF

No. 707 at 1947-1948. There is no evidence the City has failed to comply with ADAS and the FAC does not allege any issues with ADAS. Given "the presumption that the Government acts in good faith," the City has met its burden that there is no reasonable expectation that an ADAAG policy will still apply and any grievances with the new policy fall entirely outside of this lawsuit. *Rosebrock*, 745 F.3d at 974. Speculation about the City's compliance with ADAS cannot change the result. "Speculative contingencies afford no basis for finding the existence of a continuing controversy between the litigants as required by article III." *Jarvis v. Regan*, 833 F.2d 149, 154 (9th Cir. 1987) (quoting *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985)). To the extent Kirola and the Class believe the City violates new regulations and standards, their recourse is not in this lawsuit.

In addition, the Court lacks the judicial power to mandate substantive policy changes. "[T]here is no redressability if a federal court lacks the power to issue such relief." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018). "Principles of federalism" serve as a limit on judicial power and "counsel against' awarding 'affirmative injunctive and declaratory relief' that would require state officials to repeal an existing law and enact a new law proposed by plaintiffs." *Id*. at 1089 (citation omitted). Mandating Kirola and the Class's preferred policies, rather than enjoining unlawful policies, exceeds Article III. Plaintiffs' new "policy" claim must be dismissed.

**B.    Kirola And The Class Do Not Have Standing To Challenge All RecPark Facilities.**

At trial, Kirola failed to establish that the Class has standing to challenge alleged barriers at all RecPark facilities. They do not. It's the law of the case that "[s]tanding for ADA claims is measured on a facility-by-facility basis, not a barrier-by-barrier basis. Once a plaintiff has proven standing to challenge one barrier at a *particular facility*, that plaintiff has standing to challenge all barriers related to her disability *at that facility*." *Kirola-I*, 860 F.3d at 1175 n.4 (emphasis added). Nothing in *Kirola-I* or *Kirola-II* establishes that Kirola and the Class have standing to challenge all RecPark facilities that are newly altered or constructed since 1992 without any evidence that a class member used the facility or has actual knowledge of barriers. A contrary result would conflict with precedent from the Ninth Circuit and the Supreme Court.

In the Ninth Circuit, ADA standing comes with limits. Plaintiffs "must have actual knowledge of an access barrier or ADA violation." *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023). Without

1   that foundation, a plaintiff cannot establish a sufficient likelihood of harm by showing they are

2   "currently deterred from visiting" the facility "because of a barrier," or "that they were previously

3   deterred and that they intend to return to the" facility "where they are likely to reencounter the

4   barrier." *Id.* A plaintiff is only able to "pursue an injunction to remove all accessibility barriers related

5   to [her] disability that [she] is likely to encounter at a place . . . to which [she] intends to return."

6   *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 952 (9th Cir. 2011). "Injunctions do not extend to

7   barriers not affecting persons with the plaintiff's particular disability; barriers that the plaintiff is not

8   reasonably likely to encounter, . . .; or barriers in areas [she] is unlikely to enter, such as [single sex]

9   restrooms or employee work areas." *Id.* (cleaned up). These limits help ensure that the ADA is not

10  "transform[ed] . . . into an open-ended private attorney general statute, because the scope of such an

11  injunction is limited." *Id.*

12      The Ninth Circuit properly recognized the limits of Kirola and the Class's standing. It held

13  Kirola and the "class has standing for claims related to all facilities *challenged at trial*" and expressly

14  cabined further evaluation of ADAAG violations and remedies to "facilities *used* by Kirola and all

15  other class members[.]" *Kirola-I*, 860 F.3d at 1174-76, 1185 (emphasis added). Based on the trial

16  record, that includes seven parks. Nothing in *Kirola-I* gave Kirola or the Class authority to challenge

17  every new or altered construction in the City since 1992 with no showing that the facility had been

18  used by Kirola or the Class, or that there was actual knowledge of barriers.

19      The scant evidence of barriers from class members (or their mothers)[2] hardly scraped the

20  surface of RecPark's system and the features ADAAG regulates. Seven class members testified

21  concerning alleged access barriers. *Kirola-I*, 860 F.3d at 1169-70. Kirola's nine pages of direct

22  testimony was "minimal" and only concerned Alamo Square Park. The only other parks testified to by

23  class members concerned a bathroom stall at Golden Gate Park, the Tea House entrance at the

24  Japanese Tea Garden in Golden Gate Park, a Golden Gate Park playground, the McLaren Park duck

25  pond, pathways at St. Mary's playground, a play area at Balboa Park, paths at Holly Park, parts of the

26

27      [2] No guardian ad litems have been appointed and Plaintiffs have never argued parents (who are
    not parties to this litigation) have standing. "Particularization is necessary to establish injury in fact[.]"
28  *Spokeo, Inc.*, 578 U.S. at 340.

eucalyptus forest at Glen Canyon Park, and access to the Conservatory of Flowers at Golden Gate Park. *See generally Kirola*, 2021 WL 1334153 (evaluating barriers encountered by class); *see also* Mills Decl., Ex. A, ECF No. 700 at 535-596 [O'Neil]; Ex. B, ECF No. 701 at 820-855 [Kimbrough]; Ex. C, ECF No. 702 at 862-898 [Grant], 997-1027 [DeChadenedes], 1028-1051 [Cherry]; Ex. D, ECF No. 703 at 1225-1249 [Monasterio]; Ex. E, ECF No. 704 at 1380-1396 [Kirola]. This reached a mere seven parks, which pales in comparison to the City's "'220 parks spanning 4,200 acres of park space and 400 structures (i.e., clubhouses, recreation centers, etc.)[.]'" *Kirola-I*, 860 F.3d at 1172. Kirola and the Class failed to introduce *any* evidence that class members will likely be injured in the future by using the City's remaining RecPark facilities, or that they are deterred from using those facilities based on knowledge of actual barriers. Indeed, the record is entirely devoid of any evidence showing how many individuals with disabilities use City parks to lay any foundation about the Class's engagement with the RecPark system. Plaintiffs' failure of proof is fatal since Plaintiffs rested on speculation. *Lujan*, 504 U.S. at 564 n.2; *see also Nelsen v. King County*, 895 F.2d 1248, 1251 (9th Cir. 1990) (standing cannot be based "upon [] naked statistical assertion").

As the sole class representative, Kirola does not have standing on a "facility-by-facility basis" to challenge any remaining facility. *Kirola-I*, 860 F.3d at 1175 n.4. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 594 U.S. at 431. "That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976). Notably, Kirola, who is an adult, has not shown any entitlement to use any other facility and cannot be injured at some. The class submitted evidence in this case showing that adult access to children's playgrounds is restricted. ECF No. 190 at ECF p. 10 ¶ 6; S.F. Park Code § 3.02 (requiring compliance with posted restrictions). The Tenderloin Recreation Center similarly restricts adult access. Mills Decl. Ex. P.[3] To the extent Kirola must violate rules and regulations to access these facilities, the Court must

---

[3] Government documents and "statements of public record are appropriate for judicial notice." *Cnty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1217 n.11 (N.D. Cal. 2017).

1  "assume that '[litigants] will conduct their activities within the law and so avoid . . . exposure to the
2  challenged course of conduct." *Sanchez-Gomez*, 584 U.S. at 391 (citations omitted).

3       Nor does it make any difference that *Kirola-I* found Kirola has standing for her individual
4  claim at Alamo Square Park. Standing still must be adjudicated on a facility-by-facility basis. *Kirola-I*,
5  860 F.3d at 1175 n.4. The rule that a single plaintiff only needs to have standing for equitable relief
6  only applies if "the scope of the relief available does not differ among each Plaintiff." *Nat. Grocers v.*
7  *Rollins*, 157 F.4th 1143, 1156 (9th Cir. 2025); *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir.
8  2015) ("*Standing* is [still] meant to ensure that the injury a plaintiff suffers defines the scope of the
9  controversy he or she is entitled to litigate[.]"). But here, Plaintiffs seek to "remove all disability
10  access barriers that deny or limit access to persons with disabilities in the CITY's newly constructed
11  facilities or in areas of facilities that are subject to alterations provisions of federal or state disability
12  nondiscrimination laws." FAC, Prayer for Relief ¶ 3a. And as Kirola conceded previously on appeal,
13  the Class's new or altered construction claim requires an element-by-element analysis at those
14  facilities. To the extent Kirola seeks to remove barriers at distinct facilities, and for individuals with a
15  wide range of mobility impairment, the relief is not the same for each individual. Permitting a different
16  result fails to adequately "screen[] out plaintiffs who might have only a general legal, moral,
17  ideological, or policy objection to a particular government action" without the requisite stake Article
18  III requires to justify relief. *Hippocratic Med.*, 602 U.S. at 381. "A citizen may not sue based only on
19  an 'asserted right to have the Government act in accordance with law.'" *Id.* (citation omitted).

20       **C.    The Court Lacks Jurisdiction Over Kirola's Section 1983 Claim.**

21       Kirola's Section 1983 claim against the official capacity Defendants must also be dismissed. In
22  the FAC, Kirola alleged that "the Mayor and Members of the Board Supervisors . . . deprive Plaintiffs
23  of their rights under Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA in violation
24  of 42 U.S.C. § 1983." FAC ¶ 63. This claim is not raised against the City even though the remaining
25  claims are alleged against the City. While the claim is asserted on behalf of Plaintiffs, Kirola did not
26  seek to certify this claim on behalf of the class. Thus, the Section 1983 claim only applies to Kirola.
27  The Court can dismiss this claim despite the City's pending appeal because the orders granting
28  systemic injunctive relief and class certification have no bearing on this claim.

Based on the trial record, Kirola lacks standing for this claim because she failed to prove traceability as to any official capacity Defendant for any ADAAG violation in a new or altered construction. There is simply no evidence tying any of her purported injuries to any challenged conduct from these Defendants. Again, her conjecture is insufficient to carry her burden. *Clapper*, 568 U.S. at 420. Alternatively, the claim is moot because Kirola failed to identify any predicate ADAAG violation as to herself. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Notably, "[n]either a municipality nor a supervisor, however, can be held liable under § 1983 where no injury or constitutional violation has occurred." *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001); *see also Bell v. Krol*, Case No. 13-cv-05820-SI, 2024 WL 1055850, at *7 (N.D. Cal. Mar. 11, 2024) (finding injunctive relief claim moot where plaintiff failed on the merits). Here, Kirola conclusively failed to identify any ADAAG violation as to her at trial such that she experienced no predicate violation under the ADA or Rehabilitation Act to support a cognizable Section 1983 claim. Thus, any request for relief based on a Section 1983 claim is moot and should be dismissed. And to the extent Plaintiffs impermissibly seek to backdoor in an ADAAG policy challenge, it is moot for the reasons discussed in Section IV.A.

Proceeding on this claim is also futile even if Kirola had standing or a live claim (and she does not). The Section 1983 claim is based on statutory violations of the ADA and Rehabilitation Act. However, those statutory schemes preclude a Section 1983 claim because they provide comprehensive remedial schemes to enforce rights conferred under those statutes. *See, e.g.*, *Vinson v. Thomas*, 288 F.3d 1145, 1155-56 (9th Cir. 2002); *see also Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003) (recognizing that official capacity suits are available under the ADA). While the City moves to dismiss this claim on jurisdictional grounds, the court may sua sponte dismiss the claim on the merits because Kirola "cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987).

**D.    This Court Should Issue an Indicative Ruling.**

An order dismissing the remainder of the new or altered construction claims would entirely resolve this litigation, including the pending appeal concerning systemic injunctive relief. Without a live ADAAG policy challenge, there is no policy challenge left to redress. And to the extent Kirola and the Class failed to demonstrate their standing to justify remediation at any other facility on a facility-by-facility basis as required by *Kirola-I*, then the individual injunctions the Court issued to resolve harms to class members resolves the case. Similarly, conducting the required jurisdictional inquiries would be extremely beneficial as it would provide the parties and the Ninth Circuit the benefit of the Court's jurisdictional analysis (including any factual findings bearing on the jurisdictional inquiry) over substantial issues without need for a third remand. *See, e.g.*, *Common Cause Ind. v. Marion Cty. Election Bd.*, No. 1:17-cv-01388-SEB-TAB, 2019 WL 441849, at *2 (S.D. Ind. Feb. 5, 2019) (granting indicative ruling concerning mootness "[t]o facilitate the appellate litigation"); *Cuhaci v. Echemendia*, No. 20-cv-23950, 2021 WL 4307051, at *3-8 (S.D. Fal. Sept. 21, 2021) (issuing indicative ruling the court would dismiss for lack of subject matter jurisdiction while the same issue was appealed). Indeed, Kirola and the Class have already claimed that the Ninth Circuit should not consider policy changes because they were not before this Court. But "[s]ubject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). Accordingly, an indicative ruling provides the efficiency contemplated by Rule 62.1 and complies with the Court's independent obligation to assess subject matter jurisdiction under Rule 12(h)(3). The Court should grant the motion for an indicative ruling, indicting that it would dismiss the newly altered or construction claim for lack of jurisdiction or that a substantial question has been raised.

//////

/////

////

///

//

/

1

## V.    CONCLUSION

For the foregoing reasons, the Court should issue an indicative ruling granting the City's motion to dismiss the new or altered construction claims for lack of subject matter jurisdiction. Similarly, the Court should grant the City's motion to dismiss Kirola's Section 1983 claim, which is not subject to appeal, and can be dismissed for lack of jurisdiction without an indicative ruling.

Dated:  March 13, 2026

DAVID CHIU
City Attorney
ELAINE M. O'NEIL
ARI A. BARUTH
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys


By:  _/s/ Steven A. Mills_____
STEVEN A. MILLS

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.