# EXHIBIT J

```
                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA          **ORIGINAL**

      BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

      IVANA KIROLA, ET AL.,        )      **COURT TRIAL**
                                   )
                PLAINTIFFS,        )      **VOLUME 14**
                                   )
         VS.                       )      NO. C 07-03685 SBA
                                   )
      CITY AND COUNTY OF           )
      SAN FRANCISCO, ET AL.,       )      **PAGES 2713 – 2901**
                                   )
                DEFENDANTS.        )      OAKLAND, CALIFORNIA
      _____)      THURSDAY, MAY 5, 2011


                      **TRANSCRIPT OF PROCEEDINGS**

      APPEARANCES:

      FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                                  KONECKY
                               180 MONTGOMERY STREET, SUITE 2000
                               SAN FRANCISCO, CALIFORNIA  94109
                          BY:  MARK T. JOHNSON,
                               ANDREW P. LEE,
                               KIRAN PRASAD,
                               GUY B. WALLACE, ATTORNEYS AT LAW

                               BROWN POORE LLP
                               THE WATERGATE TOWERS
                               2200 POWELL STREET, SUITE 745
                               EMERYVILLE, CALIFORNIA  94608
                          BY:  SCOTT A. BROWN, ATTORNEY AT LAW

      FOR DEFENDANT:           OFFICE OF THE CITY ATTORNEY
                               SIXTH FLOOR – FOX PLAZA
                               1390 MARKET STREET
                               SAN FRANCISCO, CALIFORNIA  94102
                          BY:  ERIN BERNSTEIN,
                               JAMES M. EMERY,
                               ELAINE M. O'NEIL, ATTORNEYS AT LAW




      REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258
                          DIANE E. SKILLMAN, CSR NO. 4909
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

# I N D E X

| DEFENDANTS' WITNESSES | PAGE | VOL. |
|---|---|---|
| HECKER, JR., WILLIAM FULHAM | | |
| DIRECT EXAMINATION BY MR. EMERY | 2717 | 14 |
| CROSS-EXAMINATION BY MR. JOHNSON | 2795 | 14 |
| REDIRECT EXAMINATION BY MR. EMERY | 2811 | 14 |
| EXAMINATION BY THE COURT | 2813 | 14 |
| FURTHER REDIRECT EXAMINATION BY MR. EMERY | 2819 | 14 |
| RECROSS-EXAMINATION BY MR. JOHNSON | 2822 | 14 |

# E X H I B I T S

| PLAINTIFFS' EXHIBITS | W/DRAWN | IDEN | EVID | VOL |
|---|---|---|---|---|
| 2131A SEQUENCE 1 | | | 2887 | 14 |
| 2161 | | | 2896 | 14 |
| 4075 | | | 2886 | 14 |
| 4103B | | | 2885 | 14 |
| 4140R | | | 2887 | 14 |
| 4140T | | | 2887 | 14 |
| 4140Y | | | 2887 | 14 |
| 4140Z | | | 2887 | 14 |
| 4149 | | | 2887 | 14 |

| DEFENDANTS' EXHIBITS | W/DRAWN | IDEN | EVID | VOL. |
|---|---|---|---|---|
| AA29 | | | 2718 | 14 |
| AA23 | | | 2888 | 14 |

1   MR. HECKER AS AN EXPERT IN THE AREAS OF ARCHITECTURE,
2   DISABILITY ACCESS, TRANSITION AND SELF-EVALUATION PLANS, AND
3   TITLE II PROGRAM ACCESS REQUIREMENTS.
4           **THE COURT:** ANY OBJECTION?
5           **MR. JOHNSON:** NO, YOUR HONOR.
6           **THE COURT:** OKAY. THE REQUEST IS GRANTED.
7   **BY MR. EMERY:**
8   **Q.** MR. HECKER, WHEN DID SAN FRANCISCO HIRE -- SAN FRANCISCO
9   HIRE YOU TO WORK ON THIS CASE?
10  **A.** MAY OF 2009.
11  **Q.** AND WHAT DID SAN FRANCISCO HIRE YOU TO DO IN THIS CASE?
12  **A.** I WAS RETAINED TO MAKE AN AUDIT OF SAN FRANCISCO'S
13  ACCESSIBILITY POLICIES RELATED TO A.D.A. AND 504 AND TO RESPOND
14  TO ALLEGATIONS IN THE COMPLAINT IN THIS MATTER.
15  **Q.** UM-HMM.
16          AND THEN LATER ON, AFTER THE CITY GAVE YOU THE
17  EXPERT REPORTS FROM PLAINTIFFS, DID YOUR CHARGE EXPAND A LITTLE
18  BIT?
19  **A.** YES. I WAS ALSO TASKED TO RESPOND TO THE PLAINTIFFS'
20  EXPERTS' DISCLOSURES.
21  **Q.** AND HOW DID YOU GO ABOUT GATHERING INFORMATION YOU NEEDED
22  TO FORM YOUR OPINIONS IN THIS CASE?
23                  (EXHIBIT PUBLISHED.)
24          **THE WITNESS:** I'VE GOT A SLIDE THAT SHOWS THE THREE
25  GENERAL WAYS THAT I DID THAT.

1         **MR. EMERY:** THIS SLIDE IS ON AA38.

2         **THE COURT:** THANK YOU.

3         **THE WITNESS:** OF COURSE --

4         **MR. EMERY:** IT'S --

5         **THE WITNESS:** EXCUSE ME.

6         **MR. EMERY:** THAT'S SLIDE NO. 1 ON AA38.

7         **THE WITNESS:** OF COURSE, I CAME TO THE TASK WITH A
8   DEEP AND -- DEEP UNDERSTANDING AND DETAILED KNOWLEDGE OF
9   A.D.A.'S FACILITY COMPLIANCE REQUIREMENTS AND 504 REQUIREMENTS.
10        BUT AS PART OF MY TASK, I INTERVIEWED KEY PERSONNEL
11  WHO WERE RESPONSIBLE FOR A.D.A. AND PROGRAM ACCESSIBILITY
12  COMPLIANCE FOR THE CITY AND COUNTY OF SAN FRANCISCO, INCLUDING
13  SUSAN MIZNER, DIRECTOR OF THE MAYOR'S OFFICE ON DISABILITIES,
14  AND JOHN PAUL SCOTT, DEPUTY DIRECTOR FOR PHYSICAL ACCESS AT THE
15  MOD; ALSO KEVIN JENSEN WITH THE DEPARTMENT OF PUBLIC WORKS; AND
16  DAWN KAMALANATHAN WITH THE CITY'S RECREATION AND PARK
17  DEPARTMENT.
18        IN ADDITION TO THAT, I REVIEWED KEY DOCUMENTS ON THE
19  CITY'S ACCESSIBILITY POLICIES INCLUDED ON THE CITY WEBSITES
20  THROUGH OTHER CASE-RELATED MATERIALS THAT WERE PROVIDED IN THIS
21  MATTER AND TRANSITION PLANS, SELF EVALUATIONS, ET CETERA,
22  DEPOSITIONS, STANDARD DESIGN DOCUMENTS, AND ALSO REVIEWED THE
23  REGULATIONS THAT IMPLEMENT THE A.D.A. AND 504 PROVISIONS OF THE
24  FEDERAL LAWS RELATED TO ACCESSIBILITY, TECHNICAL ASSISTANCE
25  DOCUMENTS FROM THE FEDERAL GOVERNMENT AS WELL AS INDUSTRY

```
 1   RESOURCES AND REFERENCE DOCUMENTS.
 2              AND ALONG WITH AN OPPORTUNITY TO MAKE SITE VISITS TO
 3   50 OR 60 CITY FACILITIES TO -- THAT MADE THE BASIS FOR MY
 4   OPINION.
 5   Q.   AND DID YOU REACH ANY OPINIONS IN THIS CASE?  JUST
 6   BRIEFLY, CAN YOU GIVE US AN OVERVIEW?
 7   A.   I CAN.  FIRST, THE STAFF AT THE MAYOR'S OFFICE ON
 8   DISABILITY IS WELL TRAINED, COMPETENT, WITH A DEEP
 9   UNDERSTANDING OF THE PROGRAM ACCESSIBILITY PROVISIONS OF
10   FEDERAL LAW.  AND SAN FRANCISCO, THROUGH THE WORK OF THE
11   MAYOR'S OFFICE ON DISABILITIES (SIC), HAS THE BEST
12   ACCESSIBILITY POLICIES THAT I'VE SEEN.
13   Q.   AND YOU BEEN LOOKING AT DISABILITY POLICIES AT PUBLIC
14   ENTITIES FOR 21 YEARS, IS THAT RIGHT?
15   A.   I HAVE.
16   Q.   SO ARE THOSE POLICIES THAT YOU REVIEWED, DOES THAT
17   INCLUDE MOD'S PUBLIC OUTREACH?
18   A.   IT DOES.  THEIR EFFORTS FOR PUBLIC OUTREACH ARE
19   EXEMPLARY.  THROUGH THEIR WEBSITE, THERE IS VOLUMINOUS
20   INFORMATION, NOT ONLY ABOUT WHAT THE CITY'S POLICIES ARE, BUT
21   ALSO ABOUT THE RIGHTS OF PEOPLE WITH DISABILITIES AS THEY
22   INTERACT WITH THE CITY ON PROGRAMS, AND THROUGH MAILINGS,
23   TELEPHONE CONVERSATIONS, AND -- AND WALK-IN'S, BASICALLY.  THE
24   OUTREACH PROCESS IS EXCELLENT.
25              ALSO I MIGHT ADD, THE MAYOR'S DISABILITY COUNCIL IS
```

1  A KEY COMPONENT TO THE CITY'S OUTREACH TO PEOPLE WITH
2  DISABILITIES AND AIDS IN COMMUNICATING THE POLICIES AND
3  PRACTICES THAT THE CITY HAS.
4  Q.    WHY IS THIS KIND OF PUBLIC OUTREACH IMPORTANT FOR A
5  PUBLIC TWO (SIC) ENTITY AND ITS A.D.A. COMPLIANCE?
6  A.    WELL, FOR ONE, THERE IS A REQUIREMENT THAT THE CITY
7  PROVIDE NOTICE TO PEOPLE WITH DISABILITIES REGARDING THEIR
8  RIGHTS UNDER THE FEDERAL LAW.
9        ALSO IT IS GOOD CUSTOMER SERVICE TO SHARE WITH YOUR
10 CUSTOMERS, IN THIS CASE, THE CITIZENS OF SAN FRANCISCO, THAT --
11 THE ACCOMMODATIONS THAT ARE AVAILABLE FOR THOSE WITH
12 DISABILITIES AND THE PROGRAMS AND SERVICES THAT ARE AVAILABLE
13 FOR THOSE WITH DISABILITIES.
14 Q.    DID YOU ALSO REVIEW THE TRAINING THAT MAYOR'S OFFICE ON
15 DISABILITY PROVIDES TO CITY STAFF?
16 A.    I DID.
17 Q.    AND DID YOU FORM AN OPINION ABOUT THE QUALITY OF THAT
18 TRAINING?
19 A.    I DID.  THE TRAINING THAT IS AVAILABLE ON THE WEBSITE
20 FROM THE MAYOR'S OFFICE ON DISABILITIES FOR BOTH A.D.A.
21 COORDINATORS AT VARIOUS DEPARTMENTAL LEVELS AND STAFF IS
22 EXCELLENT.  I HAVE REVIEWED IT.  IT'S INCLUDED IN OUR BINDER
23 AT --
24 Q.    ARE YOU THINKING OF E27 AND E45?  THAT WOULD BE IN THE
25 LARGER BINDER.

A. THAT IS EXACTLY CORRECT, IN THE LARGER BINDER. THOSE ARE EXCERPTS FROM THE POWERPOINT PRESENTATIONS THAT ARE AVAILABLE FROM THE CITY AND THAT DEMONSTRATE TO ME THE COMMITMENT THAT THE CITY HAS TO ENSURE THAT ITS PROGRAMS ARE ACCESSIBLE.

Q. HAVE YOU ALSO REVIEWED SAN FRANCISCO'S GRIEVANCE PROCEDURE FOR DISABILITY ACCESS ISSUES?

A. I HAD.

Q. AND HAVE YOU -- HAVE YOU FORMED AN OPINION ON THE QUALITY OF SAN FRANCISCO'S GRIEVANCE PROCEDURES?

A. I HAVE. THE GRIEVANCE PROCEDURES THAT THE CITY HAS, AGAIN, ON THE MOD WEBSITE, AVAILABLE FOR ANYBODY THAT WANTS TO LOOK, ARE CONSISTENT WITH THE REQUIREMENTS AND PROVISIONS IN THE A.D.A. REGULATIONS. THEY ALLOW YOU TO MAKE A COMPLAINT IN ANY WAY THAT YOU WANT TO COMMUNICATE IT TO THE CITY. YOU CAN CALL IT IN ON THE 311. YOU CAN SEND IT THROUGH THE WEBSITE. YOU CAN SEND AN EMAIL. YOU CAN SEND A LETTER. OR THERE ARE FORMS TO FILL OUT, IF YOU'D LIKE TO USE THE FORMS.

AND THE GRIEVANCE PROCEDURE CLEARLY IDENTIFIES THAT THE CITY SHOULD RESPOND TO THOSE COMPLAINTS WITHIN 30 DAYS.

Q. NOW, THIS CASE IS FOCUSED ON PHYSICAL ACCESS AND -- IN THE CITY'S BUILDINGS. SO I WANT TO TURN NOW TO THE CITY'S POLICIES OF DESIGN AND CONSTRUCTION REVIEW FOR PUBLICLY FUNDED PROJECTS.

HAVE YOU REVIEWED SAN FRANCISCO'S PROCEDURES AND POLICIES FOR THE DESIGN AND CONSTRUCTION REVIEW OF PUBLIC

1    PROJECTS?

2    **A.**    I HAVE.

3    **Q.**    AND IS THERE A PLACE WHERE SAN FRANCISCO DESCRIBES THOSE

4    POLICIES?

5    **A.**    THOSE POLICIES ARE -- AND PROCEDURES ARE ALSO DESCRIBED

6    ON THE MOD WEBSITE.

7    **Q.**    AND -- EXCUSE ME.

8            THAT WOULD BE EXHIBIT A35 IN THE FIRST BINDER.

9                    (EXHIBIT PUBLISHED.)

10           **MR. EMERY:**    AT PAGE 126.

11   **Q.**    IS THIS WHAT YOU HAD IN MIND, MR. HECKER?

12   **A.**    THAT IS CORRECT.

13   **Q.**    AND BRIEFLY, WHAT -- WHAT ARE SAN FRANCISCO'S POLICIES

14   FOR THE DESIGN REVIEW AND CONSTRUCTION REVIEW OF PUBLIC

15   PROJECTS?

16   **A.**    AS YOU CAN SEE FROM THE DEMONSTRATIVE ON THE SCREEN

17   THAT'S ENTITLED "PLAN REVIEW AND APPROVAL," THIS PORTION OF THE

18   CITY'S PROCESS IDENTIFIES HOW THOSE WHO ARE GOING TO BE WORKING

19   ON PUBLICLY FUNDED PROJECTS NEED TO DISCUSS THOSE PROJECTS WITH

20   MOD AND FILE FOR APPLICATIONS TO HAVE THEIR PROJECTS REVIEWED,

21   THE PLANS OF THOSE PROJECTS REVIEWED.  ALL PUBLIC PROJECTS MUST

22   BE REVIEWED AND APPROVED BY THE MAYOR'S OFFICE ON DISABILITIES

23   UNDER THIS PROCESS.

24           ADDITIONALLY, THERE ARE CONSTRUCTION INSPECTIONS AND

25   A FINAL INSPECTION THAT IS REQUIRED UNDER THEIR DESIGN REVIEW

1  PROCESS THAT PROVIDES FOR AN ASSURANCE THAT THE BUILDING IS
2  COMPLIANT WITH THE A.D.A. AND ACCESSIBILITY PROVISIONS.
3          **THE COURT:**  DID YOU SAY THIS IS AA35?
4          **MR. EMERY:**  NO, A35.  I'M SORRY.  IN THE LARGER
5  BINDER.
6          **THE COURT:**  OH.
7          **MR. EMERY:**  I'M SORRY, YOUR HONOR.
8          **THE COURT:**  THAT'S OKAY.
9          **MR. EMERY:**  AND THESE POLICIES ARE DESCRIBED ON PAGE
10 126.  THAT'S BATES PAGE 126, AND BATES PAGES 130 THROUGH 132.
11 IT'S A -- A35 IS A BIG, THICK PRINTOUT OF EXCERPTS FROM THE
12 MAYOR'S OFFICE ON DISABILITY WEBSITE.  AND THAT'S ALREADY BEEN
13 ENTERED INTO EVIDENCE.
14         **THE COURT:**  OKAY.
15         **MR. EMERY:**  I APOLOGIZE FOR THE CONFUSION.  WE HAVE
16 THE "A'S" AND WE HAVE THE DOUBLE "A'S."
17 **Q.**    DID YOU FORM ANY OPINIONS, MR. HECKER, ABOUT THE
18 EXPERIENCE OF THE INDIVIDUALS WITHIN THE CITY OF SAN FRANCISCO
19 WHO PERFORM THESE DESIGN AND CONSTRUCTION REVIEWS OF PUBLICLY
20 FUNDED PROJECTS?
21 **A.**    YES.
22 **Q.**    AND WHAT -- WHAT DID YOU LEARN?  AND WHAT DID YOU
23 DETERMINE?
24 **A.**    BASED ON MY OBSERVATIONS AND ANALYSIS, THE STAFF WHO ARE
25 RESPONSIBLE FOR IMPLEMENTING THE CONSTRUCTION DESIGN AND

1  CONSTRUCTION REVIEW PROCESS FOR THE CITY ARE WELL QUALIFIED,

2  COMPETENT, DETAIL-ORIENTED PROFESSIONALS THAT REALLY UNDERSTAND

3  THE ACCESSIBILITY REQUIREMENTS OF THE A.D.A.

4  Q.    BASED ON YOUR EXPERIENCE OF 21 YEARS, HOW DO

5  SAN FRANCISCO'S POLICIES AND PROCEDURES FOR THE DESIGN REVIEW

6  AND CONSTRUCTION REVIEW OF PUBLICLY FUNDED PROJECTS MEASURE UP

7  WITH OTHER ENTITIES?

8  A.    THEY'RE THE BEST I'VE --

9           MR. JOHNSON:  OBJECTION, RELEVANCE.

10          THE WITNESS:  -- SEEN.

11          THE COURT:  WHAT IS THE RELEVANCE OF HOW THEY

12 MEASURE UP IF -- TO OTHER ENTITIES?  AREN'T WE JUST FOCUSING ON

13 THE CITY AND COUNTY OF SAN FRANCISCO?

14          MR. EMERY:  THE -- THE ENTIRE PURPOSE OF THIS --

15          THE COURT:  NO.

16          MR. EMERY:  -- CLASS ACTION --

17          THE COURT:  BUT THE QUESTION IS HOW -- YOU SAID HOW

18 THEY MEASURE UP.  WHAT DOES THAT MEAN ANYWAY, HOW DO THEY

19 MEASURE UP?

20          MR. EMERY:  HOW DO THEY COMPARE TO POLICIES AND

21 PRACTICES THAT MR. HECKER HAS SEEN THROUGHOUT HIS 21 YEARS.

22          THE COURT:  SO WHAT IS THE RELEVANCE OF HOW THEY

23 MEASURE UP TO OTHER JURISDICTIONS?

24          MR. EMERY:  THE -- THE TASK THAT'S PRESENTED BY THIS

25 CLASS ACTION IS THE REASONABLENESS AND ADEQUACY OF

| | |
|---|---|
| 1 | SAN FRANCISCO'S POLICIES AND PRACTICES. AND I -- I DO BELIEVE |
| 2 | IT'S RELEVANT IF -- IF SAN FRANCISCO -- HOW SAN FRANCISCO'S |
| 3 | POLICIES AND PRACTICES COMPARE TO THE STANDARD OF CARE |
| 4 | THAT'S -- THAT'S REFLECTED IN THE POLICIES AND PRACTICES |
| 5 | IMPLEMENTED THROUGHOUT THE COUNTRY BY OTHER TITLE II ENTITIES. |
| 6 | **THE COURT:** I'M NOT SO SURE THAT'S -- THAT'S |
| 7 | CORRECT. I DON'T SEE THE RELEVANCE. THE OBJECTION'S |
| 8 | SUSTAINED. |
| 9 | **BY MR. EMERY:** |
| 10 | **Q.** DO YOU KNOW HOW LONG SAN FRANCISCO HAS HAD THESE POLICIES |
| 11 | AND PRACTICES FOR DESIGN AND CONSTRUCTION REVIEW IN PLACE? |
| 12 | **A.** YES. |
| 13 | **Q.** AND HOW LONG IS THAT? |
| 14 | **A.** MY UNDERSTANDING IS MAYOR WILLIE BROWN PUT THE CITY ON |
| 15 | NOTICE TO REVIEW PLANS FOR PUBLIC PROJECTS IN 1998. |
| 16 | **Q.** AND IS THAT -- |
| 17 | **MR. JOHNSON:** OBJECTION, YOUR HONOR, NONRESPONSIVE. |
| 18 | THE QUESTION WAS -- |
| 19 | **THE COURT:** I UNDERSTAND WHAT THE QUESTION WAS. |
| 20 | SO NON-RESPONSIVE WITH RESPECT TO EVERYTHING EXCEPT |
| 21 | FOR "1998"? |
| 22 | **MR. JOHNSON:** MY UNDERSTANDING WAS THAT THE QUESTION |
| 23 | WAS SPECIFIC TO THE POLICIES AND PROCEDURES THAT WERE JUST |
| 24 | DISPLAYED, A35. |
| 25 | **THE COURT:** YEAH, YOU'RE RIGHT. THE OBJECTION'S |

1  SUSTAINED.

2  **MR. JOHNSON:** THANK YOU.

3  **THE COURT:** YOU MAY -- DO YOU WANT THE QUESTION READ
4  BACK AGAIN?

5  **MR. EMERY:** NO, I'LL ASK ANOTHER QUESTION.

6  **THE COURT:** OKAY.

7  BY MR. EMERY:

8  Q.    DO YOU KNOW HOW LONG SAN FRANCISCO HAS REQUIRED SEPARATE
9  DESIGN AND CONSTRUCTION REVIEW FOR ACCESS ISSUES OF PUBLICLY
10 FUNDED PROJECTS?

11 A.    YES.

12 Q.    AND HOW LONG HAS SAN FRANCISCO HAD THAT POLICY AND
13 PRACTICE IN PLACE?

14 A.    SINCE 1998.

15 Q.    AND WHAT DO YOU BASE THAT UNDERSTANDING ON?

16 A.    I WAS SHOWN A LETTER FROM MAYOR WILLIE BROWN DIRECTING
17 THE CITY'S PUBLICLY FUNDED PROJECTS TO GO THROUGH THAT PROCESS.

18 Q.    I'D LIKE -- I'D LIKE YOU TO LOOK AT THE DOCUMENT UNDER
19 TAB P11 IN THE LARGER BINDER YOU HAVE. IS THAT THE DOCUMENT
20 YOU HAD IN MIND?

21              (EXHIBIT PUBLISHED.)

22 **THE WITNESS:** (REVIEWING DOCUMENTS.)

23 YES.

24 BY MR. EMERY:

25 Q.    WHAT EXACTLY DOES THAT DOCUMENT SAY THAT'S PERTINENT TO

1 THE ISSUE WE WERE JUST TALKING ABOUT?

2 **A.** IN THE FIRST PARAGRAPH OF THIS DOCUMENT DATED JUNE 22ND,
3 1998, THE DOCUMENT READS, "I AM DIRECTING ALL DEPARTMENT HEADS
4 TO MAKE SURE THAT PLANS AND SPECIFICATIONS FOR BUILDING
5 PROJECTS OR MODIFICATIONS TO THE BUILT ENVIRONMENT ARE REVIEWED
6 AND APPROVED BY MY CITY-WIDE DISABILITY COORDINATOR."

7        THAT WAS WHAT I WAS REFERRING TO.

8 **Q.** UM-HMM. WHY IS YOUR CONFIDENCE IN SAN FRANCISCO'S DESIGN
9 AND CONSTRUCTION REVIEW PROCEDURES IMPORTANT FOR YOUR OPINIONS
10 IN THIS CASE?

11 **A.** WELL, IT LAYS THE FOUNDATION FOR MY CONFIDENCE IN THE
12 CITY'S IDENTIFICATION OF ACCESSIBLE FACILITIES IN THE ACCESS
13 MAPS THAT WERE IN THE HEART OF MY ANALYSIS.

14 **Q.** DO YOU EXPECT AN EFFECTIVE POLICY OF DESIGN AND
15 CONSTRUCTION REVIEW TO RESULT WITH BUILDINGS THAT HAVE
16 ABSOLUTELY ZERO DEPARTURES FROM THE ADAAG STANDARDS IN THE
17 FINAL BUILDINGS?

18 **A.** NOT REALLY.

19 **Q.** WHY NOT?

20 **A.** ONE, THE BUILDING PROCESS IS COMPLEX. IT IS ALSO CARRIED
21 OUT BY HUMAN BEINGS AND THE VAST MAJORITY OF BUILDING
22 COMPONENTS AND FEATURES ARE PUT TOGETHER BY HAND.

23        ADDITIONALLY, THERE ARE THOUSANDS OF MEASUREMENTS
24 THAT GO -- THAT APPLY TO ACCESSIBILITY THAT WOULD HAVE TO BE
25 DEALT WITH IN A TYPICAL BUILDING.

1           ALSO EACH SITE IS UNIQUE AND HAS UNIQUE CHALLENGES,
2    PARTICULARLY IN MY OBSERVATIONS IN THE CITY OF SAN FRANCISCO.
3    Q.    WHY DOES SAN FRANCISCO PROVIDE UNIQUE CHALLENGES FOR --
4    AT ITS BUILDING SITES?
5    A.    WELL, IT'S A VERY COMPACT, DENSELY COMPACT CITY.  AND IT
6    HAS SOME PRETTY EXTREME TOPOGRAPHY.
7    Q.    I'M GOING TO SHIFT GEARS RIGHT NOW FROM DESIGN AND
8    CONSTRUCTION REVIEW TO BUILDINGS AND ASK YOU A FEW QUESTIONS
9    ABOUT THE DESIGN OF CURB RAMPS.
10          HAVE YOU REVIEWED SAN FRANCISCO'S STANDARD
11   ENGINEERING DRAWINGS FOR CURB RAMPS?
12   A.    I HAVE.
13   Q.    I'D LIKE YOU TO LOOK AT EXHIBIT H04 IN THE LARGE BINDER
14   AND TELL ME WHAT THAT IS.
15                  (EXHIBIT PUBLISHED.)
16          **THE WITNESS:**  (REVIEWING DOCUMENTS.)
17   BY MR. EMERY:
18   Q.    DO YOU HAVE H04 IN FRONT OF YOU?
19   A.    I DO.
20   Q.    AND WHAT ARE THOSE?
21   A.    THESE ARE THE STANDARD DETAIL PLANS THAT DEPARTMENT OF
22   PUBLIC WORKS HERE IN THE CITY HAS PUT TOGETHER FOR CURB RAMPS.
23   Q.    HAVE YOU REVIEWED THESE AND DETERMINED WHETHER YOU
24   BELIEVE THEY ARE CONSISTENT WITH THE APPLICABLE REQUIREMENTS?
25   A.    I HAVE REVIEWED THESE, AND I BELIEVE THAT THEY MEET OR

CERTIFICATE OF REPORTER

WE, RAYNEE H. MERCADO, AND DIANE E. SKILLMAN, OFFICIAL REPORTERS FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C07-03685SBA, KIROLA, ET AL. V. CITY AND COUNTY OF SAN FRANCISCO, ET AL., WERE REPORTED BY US, CERTIFIED SHORTHAND REPORTERS, AND WERE THEREAFTER TRANSCRIBED UNDER OUR DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY US AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTERS' CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

_____
RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR


_____/s/_____
DIANE E. SKILLMAN, CSR, RPR, FCRR


FRIDAY, MAY 6, 2011