# EXHIBIT N

**City and County of San Francisco**
**Department of Public Works**

*Departmental Procedures Manual*
*Vol. 10 – Design Manual*

PROCEDURE 10.02.21

ADA AND ACCESSIBILITY COMPLIANCE

A. **PURPOSE**

To establish a procedure for identifying the scope of work required to attain accessibility compliance on all Department of Public Works projects and to ensure that construction documents and completed facilities meet all applicable requirements and policies. To establish procedures to enable the completed facilities to accommodate the accessible programs, services and activities intended to be provided to the public. The intended result is that these facilities and the programs provided therein are readily accessible to and usable by persons with disabilities in the most integrated settings possible. This policy does not directly address employment or accommodations of employees with disabilities under Title I of the ADA or similar federal, state or local statutes and regulations.

B. **POLICY**

Compliance with state, federal and local accessibility statutes and regulations is mandatory for all local government entities, including the City and County of San Francisco. Additional policies and practices established by the City and County of San Francisco through the Mayor's Office on Disability and the Department of Public Works may establish more specific requirements than the federal and state requirements in order to assure that the intention and purpose of accessibility statutes and regulations are met.

C. **DISCUSSION**

There are several Federal and State statutes and regulations that require accessibility in the capital projects designed and provided by the Department of Public Works, and the programs provided within the facilities. The most commonly referred to include the following:

1. Americans with Disabilities Act, Title II, 28CFR, Part 35 "Nondiscrimination on the Basis of Disability in State and Local Government Services." This includes requirements for an ADA Grievance Procedure, a Self-Evaluation and Transition Plan, Effective Communication and provision of Accommodations. Note: The ADA was updated and amended, effective March 15, 2011. The provisions of the updated regulations and the 2010 ADA Standards for Accessible Design will be mandatory for all projects as of March 15, 2012.

2. Access to Buildings and Facilities and Transportation Facilities: Federal Standards for Buildings and Facilities, Published in the Federal Register on July 26, 1991, Corrected January 14, 1992, and as subsequently amended, 36 CFR Part 1191. (ADA Accessibility Guidelines – ADAAG). Note: The ADAAG may no longer be used after March 14, 2012. The ADAAG is being replaced by the 2010 ADA Standards for Accessible Design, which will be mandatory for all projects as of March 15, 2012.

3. Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794.

4. California Code of Regulations (CCR), Title 24, Part 2, California Building Code, and Title 19, Public Safety Code.

5. California Government Code, Sections 4450-4460.  It is the purpose of this chapter to ensure that all buildings, structures, sidewalks, curbs, and related facilities, constructed in this state by the use of state, county or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities. This section tasks the State Architect with developing accessibility standards in the California Building Code that provide a minimum level of accessibility that is not less than that required by the federal ADA Accessibility Guidelines (ADAAG). These requirements apply to public sector projects regardless of whether a building permit is issued or not and applies to temporary and emergency construction as well as permanent buildings.

6. California Civil Code, Sections 51-55.1 "Unruh Civil Rights Act."  These sections state that any violation of the rights of individuals under the Federal Americans with Disabilities Act shall also be construed as a violation of the accessibility requirements of the Unruh Civil Rights Act. Also stated in Section 54: "Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, physicians' offices, public facilities, and other public places."

D. PROCEDURE

1. <u>Responsibility</u>

    The Project Manager ("PM") (or the Project Lead ("PL") when no PM has been assigned to manage a project,) is responsible for scheduling periodic ADA reviews and ensuring that the Project team follows through with the implementation of review comments or provides adequate explanation as to why the comments are not being implemented.

    ADA reviews will be conducted by the DPW Disability Access Coordinator (DAC) who reports to the Deputy Manager of the Infrastructure Division. The DPW DAC will be responsible for completing and coordinating ADA reviews within (2) weeks of confirming receipt of drawings, plans, and any other project information. The DAC may assign work to one of two part-time DAC Assistants, one specializes in infrastructure projects and the other in buildings/facilities projects.

    Because capital projects vary widely in size and complexity, the PM is encouraged to meet with the DAC or one of his assistants to establish the number and schedule of reviews and set expectations on how long each review will take.  Each review period is usually one to two hours each. The PM may choose to delegate some or all of that responsibility on simple jobs, but is responsible for issues affecting the budget and schedule and communicating them to clients and funding agencies.

2. <u>Projects Exempt from Accessibility Review</u>

    Under the California Building Code, facility projects which consist only of heating, ventilation, air conditioning, reroofing, electrical work not involving placement of switches and receptacles, cosmetic work that does not affect items regulated by the building code.

    Under Title II of the ADA, ADAAG or the 2010 ADA Standards for Accessible Design, facility projects such as painting, equipment not considered to be a part of the architecture of the building or area, such as computer terminals, office equipment, etc., are not considered

alteration projects and do not require DPW DAC review and approval *unless they affect the usability of the building or facility.*

Structural work that is required solely for the purpose of performing mechanical remodeling or alteration projects is considered incidental to the mechanical project, which is also exempt work under CBC 1134B.2.1, Exception 4. However, the new work must comply with accessibility requirements that pertain to it, such as mounting heights for switches, outlets, thermostats, fire alarm pull stations, etc.

The only purpose of the above exemption is to exclude projects from full review. This exemption does not relieve projects from complying with other applicable accessibility requirements. (For example, replacement of carpet or door hardware does not require review by the DPW DAC under this procedure; however the work must comply with accessibility requirements that apply to those elements.) If in doubt contact the DPW DAC for confirmation of project requirements. If the project is exempt from review, the DAC will provide written confirmation.

3. <u>Planning Phase</u>

    Meet with the DPW DAC for early planning input in order to identify accessibility requirements that are critical to the budget and schedule of planned projects. Access compliance options may be identified to establish a range estimate for budget and schedule planning purposes. Coordination with the Citywide ADA Transition Plan and the priorities for meeting the ADA requirements should be evaluated during this phase. The DPW DAC can advise on funding opportunities that may be available for identified accessibility barrier removal and program accessibility of a given facility or departmental function.

4. <u>Concept Design Phase (10%-30% completion)</u>

    a. Meet with the DPW DAC to review design concepts and solicit input on critical accessibility requirements. Consider joint meetings with client representatives in order to identify accessibility practices and procedures that may affect project programming and fundamental design.

    b. The DPW DAC will also review the project and advise on potential options to comply with accessibility requirements. Consideration of accessibility compliance impact on overall regulatory compliance will be considered.

5. <u>Schematic Design</u>

    a. During Schematic Design the DPW DAC will review the project program and intended uses, site development needs, existing conditions, overall code compliance issues that may affect access compliance, path of travel from the project to the public right-of-way and nearby public parking and transportation.

    b. Because the design phase is a dynamic and interactive process and as such includes changes that could not have been anticipated during the concept phase, Project Leads are strongly encouraged to document the outcome of the reviews with the DPW DAC. The documentation can take place in the form of redlined drawings and meeting minutes or both.

6. Design Development Reviews (30-60% completion)

    a. At this phase of the project, the DPW DAC will review proposed plans and details with respect to the intended uses of the facility along with general code compliance issues. The DPW DAC shall identify design and compliance options for the project sponsor to use in determining the most appropriate measures and in setting priorities.

    b. Specifications related to accessible features must be submitted for review along with manufacturer's supporting product literature, cut sheets, etc. Such specifications should include; elevators, lifts, signage, door & gate hardware, flooring & walking surfaces, fire alarm pulls, stair nosing, entrance mats, toilet room partitions & accessories, plumbing fixtures, etc.

    c. Public Right of Way projects that cannot meet the requirements of the SF DPW Curb Ramp Standards must meet with the DPW DAC to review such issues to evaluate alternative designs, or to establish technical infeasibility documentation prior to proceeding to the construction document phase.

7. Construction Document Reviews (75-100% completion)

    The PM shall schedule meetings at least 2 weeks in advance.   Informal reviews of sketches about specific issues raised during earlier design reviews are encouraged via email and walk-in meetings. Both parties should reserve raising new issues for project review meetings.

    a. DPW Disability Access Coordinator Quality Assurance Review Form is required to be included in plans with project title block. Form must be wet-signed by the DPW DAC prior to submittal to Building Department for permit review. For projects that do not obtain building permits, DPW DAC wet signature is required on record plans prior to issuing for bidding. Standard accessibility details must be approved in advance by the DPW DAC. Project construction documents shall not duplicate or contradict the standard accessibility details that have been approved by the DPW DAC.

    b. SF Department of Building Inspection Accessibility Forms may also be required on plans: http://sfdbi.org/index.aspx?page=62.

    c. Project addenda issued during bidding that affect or may affect accessibility must be reviewed by the DPW DAC prior to issuance.

8. Construction

    a. The DPW DAC is available for consultation and site visits needed to resolve accessibility issues during construction.  Site visits are most beneficial when scheduled at the time of Framing, Electrical Box, and Plumbing Rough-In Inspections. Also, schedule DPW DAC inspection prior to installation of gypsum board or otherwise closing to view.

    b. Grading Inspections: Schedule DPW DAC inspection prior to installation of accessible courts, walks, ramps and parking areas.

    c. Framing, Electrical Box, & Plumbing Rough-In Inspections: Schedule 2 weeks in advance with the DPW DAC, prior to the installation of gypsum board or otherwise closing the work to inspection.

    d. Plumbing Fixtures, Toilet Partitions & Accessories Inspections: Schedule DPW DAC inspection after installation.

    e. Doors, Fixtures, Furnishings & Equipment Inspections: Schedule DPW DAC inspection after installation and adjustment. Doors must be adjusted after mechanical system is balanced and all exterior doors and windows are closed.

    f. Sitework Inspections: Schedule DPW DAC inspection after installation of accessible features.

    g. Signage Inspections: California Building Code Section 1117B.5 requires a rigorous and detailed plan review and field inspection of accessible signage.

        1) Construction phase submittals of accessible signage must be routed to the DAC and included in design review meetings.

        2) Non-standard content Braille – Separate review required by qualified individual or organization, such as the Lighthouse for the Blind. Reviewer to provide letter of compliance.

        3) Field inspection by the DAC is mandatory upon installation of all provided accessible signs. Complex or custom accessible signs, such as accessible evacuation map signs, must be reviewed by the DPW DAC prior to submitting for fabrication.

    h. Changes During Construction:

        1) The PM must notify in a timely manner the DPW DAC of any unforeseen conditions or other changes to the work that affect or could affect the accessibility requirements and compliance of the project.

        2) Critical Path: If for any reason accessibility issues may soon become critical path issues the project manager must notify the DPW DAC as soon as possible in order to expedite reviews and inspections.

    i. Final Project Review & Acceptance:

        1) Temporary Certificate of Occupancy: DPW DAC must sign SF DBI job card inspectors list.

        2) Certificate of Occupancy: DPW DAC must sign SF DBI job card.

        3) Projects without Building Permits: PM's and PL's must secure from the DPW DAC a letter of completion on all such projects upon project completion.

9. Access Appeals Process for MOD/DPW

The Department of Public Works and the Mayor's Office on Disability are the primary departments responsible for the Access review of city-funded projects. On those occasions when Project Lead, architects, engineers, (or developers) have disagreed with the findings of the ADA Coordinator, the PL may file an appeal. The appeal process is established to ensure consistency of interpretation within and among various projects at same time that policies and laws keep evolving. The answers to the following Frequently Asked Questions describe the appeal process that has been created for this purpose:

    a. What types of issues may be appealed?

- Federal, State, or Local access code interpretations.

b. Who may file an appeal?

- Project Managers, Project Architects and Project Engineers with the approval of the Bureau Managers.
- Private architects or developers in contract with the City for projects that MOD reviews.

c. When do I need to appeal?

- For site reviews, the appeal should be made as soon as possible, but within 5 business days of receiving the punch list.
- For plan reviews, an appeal should be filed within 15 business days from the receipt of plan comments. No appeal will be accepted after the project has been advertised for bid. If an unforeseen condition is discovered during construction that requires a new code interpretation, an appeal may be filed to waive a requirement that was imposed based on a different set of assumptions.

d. How do I file an appeal?

- Submit an [ADA Appeal Request Form](#) with the attachments and photos listed at the bottom of the form. See Attachment.
- Attaching a cover is optional.
- On the form, the pertinent dates to be listed (depending on the phase) may include:

    Grant application due, Planning budget due, ADA Criteria for Planning Phase due, Design budget due, 10% review due, 30% review due, 60% review due, 90% review due, advertise deadline, Change Order (10 day max response period), construction progress walkthrough, punch list walkthrough, substantial completion (10 day max response period), final completion (10 day max response period).

- Submit the above information/material to the City Engineer for projects reviewed by DPW and to the Director of MOD for projects reviewed by MOD.

e. How will the appeal be handled?

1) <u>Projects Reviewed by DPW</u>:

    - The City Engineer will review the information/material provided by the Project Lead as described above.
    - If needed, the City Engineer will meet with the appellant and with the ADA Coordinator. Each side will be allowed an opportunity to present their opinion/case.
    - The City Engineer may request additional information from each side to substantiate their recommendations.
    - The City Engineer shall consult the Mayor's Office on Disability on the issue. The Mayor's Office on Disability will supply a response within 2 business days of receipt of the information.
    - The City Engineer may request the assistance of additional external code experts to assist in the interpretation of certain code requirements.
    - The City Engineer will make a decision within four (4) working days after receipt of all requested information. The City Engineer's decision is final.

- The City Engineer may delegate his authority to review and rule on appeals to the Manager of the Design and Construction Division.

2) <u>Projects Reviewed by MOD</u>:

    - The Director of MOD will review the information/material provided by the project lead or applicant as described above.
    - If needed, the Director of MOD will meet with the appellant and with the Compliance Officer. Each side will be allowed an opportunity to present his/her opinion/case.
    - The Director of MOD may request additional information from each side to substantiate their recommendations.
    - The Director of MOD shall consult with DPW, and DPW will provide a response within 2 business days.
    - The Director of MOD will make the final decision within four (4) working days after receipt of all requested information. The MOD Director decision is final.

3) <u>Access Appeals Commission</u>:

    On those occasions when architects, engineers (or project developers) disagree with interpretations of the San Francisco Department of Building Inspection's plan checkers or inspectors, the City has an appeal process in Section 105.3 of the San Francisco Building Code and the DBI <u>Access Appeals Commission</u>; See the following DBI link: <u>http://www.sfdbi.org/index.aspx?page=26</u>.

**City and County of San Francisco**
**Department of Public Works**

*Departmental Procedures Manual*
*Vol. 10 – Design Manual*

RECOMMENDED:

                12/2/2013                                       12/17/2013

X                                       X 

Patrick Rivera, Manager                                  Julia Laue, Manager
Infrastructure Design & Construction (IDC)         Building Design & Construction (BDC)

                12/29/2013                                        1/2/2014

X                                         X Edgar Lopez

Fuad S. Sweiss                                               Edgar Lopez
Dep. Director for Infrastructure & City Engineer    Dep. Director for Buildings & City Architect

APPROVED:

                1/6/2014

X Mohammed Nuru

Mohammed Nuru
Director of Public Works

**Prepared by:** Kevin Jensen, Infrastructure Design & Construction Division
**Revised/Reviewed by:** Peg Divine, Deputy Manager, Infrastructure Design & Construction Division

**APWA Practice No.:** 1.4 (7th Edition)

**File Name:** Proc10-02-21R04_ADA-and-Accessibility-Compliance.docx

> NOTE:
> THIS PROCEDURE SUPERSEDES
> PROCEDURE NO. 10.02.21, REV. 03

| City and County of San Francisco<br>Department of Public Works | Departmental Procedures Manual<br>*Vol. 10 – Design Manual* |
|---|---|

ATTACHMENT

**City and County of San Francisco**



**Edwin M. Lee,** Mayor
**Mohammed Nuru,** Director



# ADA Appeal Request Form

Project No: _____     Date of Request: _____

Project Name: _____

PM/Project Lead : _____     Phone Number: _____

Email: _____     Dept & Division: _____

Appellant: _____     Phone Number: _____

Email: _____     Dept & Division: _____

Project Description: _____

Phase:    ☐ Planning     ☐ Design     ☐ Construction     ☐ Operational

Pertinent Dates:
(See procedure) _____

## Specific Items to be Appealed

| Description | Drawing / Spec. Reference | Code Citation | Justification (See Note*) | Date of Rejection |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

*Please add and attach additional sheets if more space is required.*
**\*Note**: Justification must describe the conditions that support findings of technical feasibility and/or structural impracticability or unreasonable hardship as defined in the California Building Code. Describe the proposed equivalent facilitation and why the proposed facilitation is the best available alternative.
**Attachments:**   Photos; Plan, Elevations, Sections, Details; Rejection letter, emails, and/or drawings.