# EXHIBIT I

2713

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,        )        COURT TRIAL
                             )
          PLAINTIFFS,        )        VOLUME 14
                             )
   VS.                       )        NO. C 07-03685 SBA
                             )
CITY AND COUNTY OF           )
SAN FRANCISCO, ET AL.,       )        PAGES 2713 - 2901
                             )
          DEFENDANTS.        )        OAKLAND, CALIFORNIA
_____)        THURSDAY, MAY 5, 2011

                    TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                             KONECKY
                         180 MONTGOMERY STREET, SUITE 2000
                         SAN FRANCISCO, CALIFORNIA  94109
                    BY:  MARK T. JOHNSON,
                         ANDREW P. LEE,
                         KIRAN PRASAD,
                         GUY B. WALLACE, ATTORNEYS AT LAW

                         BROWN POORE LLP
                         THE WATERGATE TOWERS
                         2200 POWELL STREET, SUITE 745
                         EMERYVILLE, CALIFORNIA  94608
                    BY:  SCOTT A. BROWN, ATTORNEY AT LAW

FOR DEFENDANT:           OFFICE OF THE CITY ATTORNEY
                         SIXTH FLOOR - FOX PLAZA
                         1390 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA  94102
                    BY:  ERIN BERNSTEIN,
                         JAMES M. EMERY,
                         ELAINE M. O'NEIL, ATTORNEYS AT LAW


REPORTED BY:            RAYNEE H. MERCADO, CSR NO. 8258
                        DIANE E. SKILLMAN, CSR NO. 4909
        RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

2727

HECKER - DIRECT / EMERY

A.    THAT IS EXACTLY CORRECT, IN THE LARGER BINDER.  THOSE ARE EXCERPTS FROM THE POWERPOINT PRESENTATIONS THAT ARE AVAILABLE FROM THE CITY AND THAT DEMONSTRATE TO ME THE COMMITMENT THAT THE CITY HAS TO ENSURE THAT ITS PROGRAMS ARE ACCESSIBLE.

Q.    HAVE YOU ALSO REVIEWED SAN FRANCISCO'S GRIEVANCE PROCEDURE FOR DISABILITY ACCESS ISSUES?

A.    I HAD.

Q.    AND HAVE YOU -- HAVE YOU FORMED AN OPINION ON THE QUALITY OF SAN FRANCISCO'S GRIEVANCE PROCEDURES?

A.    I HAVE.  THE GRIEVANCE PROCEDURES THAT THE CITY HAS, AGAIN, ON THE MOD WEBSITE, AVAILABLE FOR ANYBODY THAT WANTS TO LOOK, ARE CONSISTENT WITH THE REQUIREMENTS AND PROVISIONS IN THE A.D.A. REGULATIONS.  THEY ALLOW YOU TO MAKE A COMPLAINT IN ANY WAY THAT YOU WANT TO COMMUNICATE IT TO THE CITY.  YOU CAN CALL IT IN ON THE 311.  YOU CAN SEND IT THROUGH THE WEBSITE. YOU CAN SEND AN EMAIL.  YOU CAN SEND A LETTER.  OR THERE ARE FORMS TO FILL OUT, IF YOU'D LIKE TO USE THE FORMS.

AND THE GRIEVANCE PROCEDURE CLEARLY IDENTIFIES THAT THE CITY SHOULD RESPOND TO THOSE COMPLAINTS WITHIN 30 DAYS.

Q.    NOW, THIS CASE IS FOCUSED ON PHYSICAL ACCESS AND -- IN THE CITY'S BUILDINGS.  SO I WANT TO TURN NOW TO THE CITY'S POLICIES OF DESIGN AND CONSTRUCTION REVIEW FOR PUBLICLY FUNDED PROJECTS.

HAVE YOU REVIEWED SAN FRANCISCO'S PROCEDURES AND POLICIES FOR THE DESIGN AND CONSTRUCTION REVIEW OF PUBLIC

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 14, 110505

2728

HECKER - DIRECT / EMERY

PROJECTS?

A.      I HAVE.

Q.      AND IS THERE A PLACE WHERE SAN FRANCISCO DESCRIBES THOSE POLICIES?

A.      THOSE POLICIES ARE -- AND PROCEDURES ARE ALSO DESCRIBED ON THE MOD WEBSITE.

Q.      AND -- EXCUSE ME.

                THAT WOULD BE EXHIBIT A35 IN THE FIRST BINDER.

                        (EXHIBIT PUBLISHED.)

                MR. EMERY:  AT PAGE 126.

Q.      IS THIS WHAT YOU HAD IN MIND, MR. HECKER?

A.      THAT IS CORRECT.

Q.      AND BRIEFLY, WHAT -- WHAT ARE SAN FRANCISCO'S POLICIES FOR THE DESIGN REVIEW AND CONSTRUCTION REVIEW OF PUBLIC PROJECTS?

A.      AS YOU CAN SEE FROM THE DEMONSTRATIVE ON THE SCREEN THAT'S ENTITLED "PLAN REVIEW AND APPROVAL," THIS PORTION OF THE CITY'S PROCESS IDENTIFIES HOW THOSE WHO ARE GOING TO BE WORKING ON PUBLICLY FUNDED PROJECTS NEED TO DISCUSS THOSE PROJECTS WITH MOD AND FILE FOR APPLICATIONS TO HAVE THEIR PROJECTS REVIEWED, THE PLANS OF THOSE PROJECTS REVIEWED.  ALL PUBLIC PROJECTS MUST BE REVIEWED AND APPROVED BY THE MAYOR'S OFFICE ON DISABILITIES UNDER THIS PROCESS.

                ADDITIONALLY, THERE ARE CONSTRUCTION INSPECTIONS AND A FINAL INSPECTION THAT IS REQUIRED UNDER THEIR DESIGN REVIEW

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 14, 110505

2729

HECKER - DIRECT / EMERY

PROCESS THAT PROVIDES FOR AN ASSURANCE THAT THE BUILDING IS

COMPLIANT WITH THE A.D.A. AND ACCESSIBILITY PROVISIONS.

THE COURT:  DID YOU SAY THIS IS AA35?

MR. EMERY:  NO, A35.  I'M SORRY.  IN THE LARGER BINDER.

THE COURT:  OH.

MR. EMERY:  I'M SORRY, YOUR HONOR.

THE COURT:  THAT'S OKAY.

MR. EMERY:  AND THESE POLICIES ARE DESCRIBED ON PAGE 126.  THAT'S BATES PAGE 126, AND BATES PAGES 130 THROUGH 132. IT'S A -- A35 IS A BIG, THICK PRINTOUT OF EXCERPTS FROM THE MAYOR'S OFFICE ON DISABILITY WEBSITE.  AND THAT'S ALREADY BEEN ENTERED INTO EVIDENCE.

THE COURT:  OKAY.

MR. EMERY:  I APOLOGIZE FOR THE CONFUSION.  WE HAVE THE "A'S" AND WE HAVE THE DOUBLE "A'S."

Q.    DID YOU FORM ANY OPINIONS, MR. HECKER, ABOUT THE EXPERIENCE OF THE INDIVIDUALS WITHIN THE CITY OF SAN FRANCISCO WHO PERFORM THESE DESIGN AND CONSTRUCTION REVIEWS OF PUBLICLY FUNDED PROJECTS?

A.    YES.

Q.    AND WHAT -- WHAT DID YOU LEARN?  AND WHAT DID YOU DETERMINE?

A.    BASED ON MY OBSERVATIONS AND ANALYSIS, THE STAFF WHO ARE RESPONSIBLE FOR IMPLEMENTING THE CONSTRUCTION DESIGN AND

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

2731

HECKER - DIRECT / EMERY

SAN FRANCISCO'S POLICIES AND PRACTICES.  AND I -- I DO BELIEVE

IT'S RELEVANT IF -- IF SAN FRANCISCO -- HOW SAN FRANCISCO'S

POLICIES AND PRACTICES COMPARE TO THE STANDARD OF CARE

THAT'S -- THAT'S REFLECTED IN THE POLICIES AND PRACTICES

IMPLEMENTED THROUGHOUT THE COUNTRY BY OTHER TITLE II ENTITIES.

THE COURT:  I'M NOT SO SURE THAT'S -- THAT'S

CORRECT.  I DON'T SEE THE RELEVANCE.  THE OBJECTION'S

SUSTAINED.

BY MR. EMERY:

Q.    DO YOU KNOW HOW LONG SAN FRANCISCO HAS HAD THESE POLICIES

AND PRACTICES FOR DESIGN AND CONSTRUCTION REVIEW IN PLACE?

A.    YES.

Q.    AND HOW LONG IS THAT?

A.    MY UNDERSTANDING IS MAYOR WILLIE BROWN PUT THE CITY ON

NOTICE TO REVIEW PLANS FOR PUBLIC PROJECTS IN 1998.

Q.    AND IS THAT --

MR. JOHNSON:  OBJECTION, YOUR HONOR, NONRESPONSIVE.

THE QUESTION WAS --

THE COURT:  I UNDERSTAND WHAT THE QUESTION WAS.

SO NON-RESPONSIVE WITH RESPECT TO EVERYTHING EXCEPT

FOR "1998"?

MR. JOHNSON:  MY UNDERSTANDING WAS THAT THE QUESTION

WAS SPECIFIC TO THE POLICIES AND PROCEDURES THAT WERE JUST

DISPLAYED, A35.

THE COURT:  YEAH, YOU'RE RIGHT.  THE OBJECTION'S

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 14, 110505

2732

HECKER - DIRECT / EMERY

SUSTAINED.

MR. JOHNSON:  THANK YOU.

THE COURT:  YOU MAY -- DO YOU WANT THE QUESTION READ BACK AGAIN?

MR. EMERY:  NO, I'LL ASK ANOTHER QUESTION.

THE COURT:  OKAY.

BY MR. EMERY:

Q.   DO YOU KNOW HOW LONG SAN FRANCISCO HAS REQUIRED SEPARATE DESIGN AND CONSTRUCTION REVIEW FOR ACCESS ISSUES OF PUBLICLY FUNDED PROJECTS?

A.   YES.

Q.   AND HOW LONG HAS SAN FRANCISCO HAD THAT POLICY AND PRACTICE IN PLACE?

A.   SINCE 1998.

Q.   AND WHAT DO YOU BASE THAT UNDERSTANDING ON?

A.   I WAS SHOWN A LETTER FROM MAYOR WILLIE BROWN DIRECTING THE CITY'S PUBLICLY FUNDED PROJECTS TO GO THROUGH THAT PROCESS.

Q.   I'D LIKE -- I'D LIKE YOU TO LOOK AT THE DOCUMENT UNDER TAB P11 IN THE LARGER BINDER YOU HAVE.  IS THAT THE DOCUMENT YOU HAD IN MIND?

(EXHIBIT PUBLISHED.)

THE WITNESS:  (REVIEWING DOCUMENTS.)

YES.

BY MR. EMERY:

Q.   WHAT EXACTLY DOES THAT DOCUMENT SAY THAT'S PERTINENT TO

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 14, 110505

2733

HECKER - DIRECT / EMERY

THE ISSUE WE WERE JUST TALKING ABOUT?

A.    IN THE FIRST PARAGRAPH OF THIS DOCUMENT DATED JUNE 22ND, 1998, THE DOCUMENT READS, "I AM DIRECTING ALL DEPARTMENT HEADS TO MAKE SURE THAT PLANS AND SPECIFICATIONS FOR BUILDING PROJECTS OR MODIFICATIONS TO THE BUILT ENVIRONMENT ARE REVIEWED AND APPROVED BY MY CITY-WIDE DISABILITY COORDINATOR."

THAT WAS WHAT I WAS REFERRING TO.

Q.    UM-HMM.  WHY IS YOUR CONFIDENCE IN SAN FRANCISCO'S DESIGN AND CONSTRUCTION REVIEW PROCEDURES IMPORTANT FOR YOUR OPINIONS IN THIS CASE?

A.    WELL, IT LAYS THE FOUNDATION FOR MY CONFIDENCE IN THE CITY'S IDENTIFICATION OF ACCESSIBLE FACILITIES IN THE ACCESS MAPS THAT WERE IN THE HEART OF MY ANALYSIS.

Q.    DO YOU EXPECT AN EFFECTIVE POLICY OF DESIGN AND CONSTRUCTION REVIEW TO RESULT WITH BUILDINGS THAT HAVE ABSOLUTELY ZERO DEPARTURES FROM THE ADAAG STANDARDS IN THE FINAL BUILDINGS?

A.    NOT REALLY.

Q.    WHY NOT?

A.    ONE, THE BUILDING PROCESS IS COMPLEX.  IT IS ALSO CARRIED OUT BY HUMAN BEINGS AND THE VAST MAJORITY OF BUILDING COMPONENTS AND FEATURES ARE PUT TOGETHER BY HAND.

ADDITIONALLY, THERE ARE THOUSANDS OF MEASUREMENTS THAT GO -- THAT APPLY TO ACCESSIBILITY THAT WOULD HAVE TO BE DEALT WITH IN A TYPICAL BUILDING.

2775

HECKER - DIRECT / EMERY

REVIEW MATERIALS FOR MY OPINION, IS OF THE GOLDEN GATE PARK ACCESSIBLE CIRCULATION PARKING AND FREE-STANDING REST ROOMS.

IT SHOWS 30 ACCESSIBLE PARKING AREAS.  IT SHOWS 15 ACCESSIBLE REST ROOMS, AND THE -- THE NARROW BLUE LINE THAT IS SHOWN ON THE MAP THROUGHOUT THE WHOLE PARK IS AN ACCESSIBLE TRAIL AS IDENTIFIED BY MOD, AND THERE'S A HEAVIER BLUE LINE IN THE UPPER RIGHT THAT GOES FROM THE PANHANDLE AREA ALL THE WAY TO CROSSOVER DRIVE, AND IT IS A WEEKEND TRAM THAT IS ACCESSIBLE AS WELL.

Q.   DO YOU KNOW HOW THE MAYOR'S OFFICE ON DISABILITY DETERMINED THAT A PARTICULAR PATH OR TRAIL IN GOLDEN GATE PARK WAS ACCESSIBLE?

A.   YES.

Q.   HOW'S THAT?

A.   JOHN PAUL SCOTT MADE -- PERSONALLY MADE AN EVALUATION OR AT LEAST TOLD ME HE MADE AN EVALUATION OF EACH OF THOSE ROUTES THAT HE IDENTIFIED ON THIS MAP BY THE BLUE LINES, THE THIN BLUE LINES.

Q.   WHAT ACCESS STANDARDS APPLY TO A CIRCULATION TRAIL WITHIN GOLDEN GATE PARK?

MR. JOHNSON:  OBJECTION, CALLS FOR A LEGAL CONCLUSION.  IT ALSO CALLS FOR A RESPONSE THAT'S OUTSIDE -- SOLICITING OPINION OUTSIDE THE OPINIONS DISCLOSED IN THE EXPERT'S REPORT.

THE COURT:  OH.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 14, 110505

2777

HECKER - DIRECT / EMERY

FACT, DISCLOSE THE OPINION.  AND IF THAT'S TRUE, THEN JUST SHOW IT TO HIM, AND THEN MAYBE WE CAN MOVE ON TO THE NEXT OBJECTION THAT YOU'RE GOING TO ACCOMMODATE BY REFRAMING THE QUESTION.

MR. EMERY:  WELL --

(OFF-THE-RECORD DISCUSSION.)

MR. EMERY:  I'M GOING TO REFRAME, AND I THINK WE CAN WORK THROUGH THIS.  BUT WE'LL -- WE'LL HAVE TO SEE.

THE COURT:  OKAY.  YOU'RE GOING TO REFRAME IT?

MR. EMERY:  YEAH.

THE COURT:  OKAY.  JUST A SECOND.

(OFF-THE-RECORD DISCUSSION.)

THE COURT:  OKAY.

OKAY.  YOU MAY PROCEED.

MR. EMERY:  OKAY.

Q.    MR. HECKER, DO YOU HAVE A UNDERSTANDING OF WHAT ACCESS REQUIREMENTS SHOULD APPLY TO A ACCESSIBLE CIRCULATION ROUTE SUCH AS THESE IN GOLDEN GATE PARK?

A.    I DO.

Q.    AND WHAT -- WHAT FEDERAL STANDARDS APPLY TO A TRAIL SUCH AS THESE?

A.    THERE CURRENTLY ARE NO FEDERAL STANDARDS THAT WOULD APPLY TO A TRAIL SUCH AS THIS.  THEY ARE IN THE RULE-MAKING PROCESS AT THE ACCESS BOARD IN WASHINGTON.

Q.    I'D LIKE YOU TO LOOK AT THE DOCUMENT UNDER TAB AA39 OF THE SMALLER BINDER.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 14, 110505

2778

HECKER - DIRECT / EMERY

A.    I'M THERE.

(EXHIBIT PUBLISHED.)

BY MR. EMERY:

Q.    DOES THIS DOCUMENT REFER TO THE RULE-MAKING THAT YOU JUST TALKED ABOUT?

A.    THIS IS FINAL REPORT FROM 1999, YES.

Q.    HAVE THERE BEEN SUBSEQUENT RULE-MAKINGS WITH REGARD TO OUTDOOR DEVELOPED AREAS SINCE 1999?

A.    NOT WITH REGARD TO A.D.A. COMPLIANCE.

Q.    WHAT DOES THIS FINAL REPORT SUGGEST FOR STANDARDS FOR OUTDOOR TRAILS?

A.    ON PAGE 8 OF THIS REPORT, WHICH IS IN AA39, THEY GIVE A DEFINITION OF WHAT A TRAIL IS FOR THE PURPOSES OF RECOMMENDING ACCESSIBILITY GUIDELINES, AND IT DEFINES A TRAIL AS A ROUTE THAT IS DESIGNED, DESIGNATED, OR CONSTRUCTED FOR RECREATIONAL PEDESTRIAN USE OR PROVIDED AS AN ACCESSIBLE -- A PEDESTRIAN ALTERNATIVE TO VEHICULAR ROUTES WITHIN A TRANSPORTATION SYSTEM.

THIS DOCUMENT, THEN --

Q.    WAIT, WAIT.

A.    EXCUSE ME.

Q.    JUST WAIT.  DO YOU HAVE AN OPINION ABOUT THE APPLICABILITY OF THIS DEFINITION OF "TRAIL" TO THE CIRCULATION PATHS THAT ARE SHOWN ON THE GOLDEN GATE PARK MAP?

MR. JOHNSON:  OBJECTION, CALLS FOR A LEGAL CONCLUSION.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 14, 110505

2779

HECKER - DIRECT / EMERY

THE COURT:  THE WAY THE QUESTION IS PHRASED, IT DOES.  THE OBJECTION'S SUSTAINED.

BY MR. EMERY:

Q.    IN ANALYZING ACCESSIBILITY FOR THESE -- FOR THESE CIRCULATION TRAILS IN GOLDEN GATE PARK, WHICH ACCESS RULES WOULD YOU APPLY?

A.    WELL, THERE ARE NO RULES, BUT IT WOULD BE APPROPRIATE TO CONSIDER FEDERAL GUIDANCE ON THE ISSUE.  THIS DOCUMENT IS THE FEDERAL GUIDANCE ON A.D.A. OUTDOOR RECREATION AREAS, AND IT INCLUDES GUIDANCE ON HOW TO MAKE TRAILS ACCESSIBLE.

Q.    IN YOUR VIEW, DO THE PATHS IN GOLDEN GATE PARK FALL WITHIN THIS DEFINITION OF "TRAIL"?

A.    YES.

Q.    WHY IS THAT?

A.    BECAUSE THE PATHS IN GOLDEN GATE PARK ARE, INDEED, CONSTRUCTED FOR RECREATIONAL PEDESTRIAN USE.

Q.    AND DOES THIS FINAL REPORT SUGGEST PARTICULAR ACCESS REQUIREMENTS FOR TRAILS IN A DEVELOPED OUTDOOR AREA?

A.    YES, IT DOES.

Q.    AND WHERE ARE THOSE -- WHERE IS THAT?

A.    STARTING ON PAGE 11 OF THIS REPORT AND THEN GOING FURTHER BACK, WE SEE TRAIL TECHNICAL PROVISIONS.  THESE -- THIS REPORT DESCRIBES WAYS TO MAKE TRAILS ACCESSIBLE.

Q.    AND DOES THIS FINAL REPORT GIVE STANDARDS FOR SLOPE AND CROSS-SLOPE OF TRAILS?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

2780

HECKER - DIRECT / EMERY

A.    NO.   IT GIVES RECOMMENDATIONS.

Q.    OKAY.

AND WHERE ARE THOSE RECOMMENDATIONS?

A.    THEY ARE PROVIDED IN THE REPORT, AND IN THE NEXT FEW PAGES, THEY ARE ILLUSTRATED.

Q.    IS THAT ON PAGES 12 AND 13?

A.    IT IS.

Q.    AND WHAT --

A.    AMONG OTHERS.

Q.    -- WHAT RECOMMENDATIONS DO -- DOES THIS FINAL REPORT GIVE FOR SLOPE AND CROSS-SLOPE OF TRAILS IN DEVELOPED OUTDOOR AREAS?

(EXHIBIT PUBLISHED TO JURY.)

THE WITNESS:  AS SHOWN ON PAGE 12 AND ON PAGE 13, THE MAXIMUM CROSS-SLOPE FOR A TRAIL SEGMENT CAN BE AS HIGH AS 5 PERCENT.

BY MR. EMERY:

Q.    IS 1 IN 20 THE SAME AS 5 PERCENT?

A.    1 IN 20 IS THE SAME AS 5 PERCENT.

Q.    HOW DOES THAT COMPARE TO THE REQUIREMENT UNDER THE ADAAG FOR A CROSS-SLOPE ON A ACCESSIBLE ROUTE?

A.    FOR ACCESSIBLE ROUTES, ON SITES, THAT IS, A BUILDING ON A SITE, IS WHAT ADAAG APPLIES TO, IS LIMITED TO 2 PERCENT IN THE A.D.A. STANDARDS.  SO IT'S 2 PERCENT VERSUS 5 PERCENT.

Q.    THAT'S CROSS-SLOPES, RIGHT?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 14, 110505

2781

HECKER - DIRECT / EMERY

A.      THAT IS CROSS-SLOPES.

Q.      SO WHAT DOES THIS FINAL REPORT RECOMMEND FOR RUNNING SLOPES, THE SLOPES IN THE DIRECTION OF TRAVEL FOR A TRAIL IN AN OUTDOOR DEVELOPED AREA?

A.      IT OFFERS SIGNIFICANT FLEXIBILITY IN A LOWER LEVEL OF ACCESSIBILITY THAN THE ADAAG STANDARDS DO WITH REGARD TO RUNNING SLOPES.  IT ALLOWS A RUNNING SLOPE OF 1 TO 12, WHICH IS 8.3 FOR UP TO 200 FEET MAXIMUM, WHERE ADAAG WOULD ALLOW A RUNNING SLOPE OF 1 TO 12 FOR ONLY ABOUT 30 FEET.

AND YOU WOULD HAVE TO INCLUDE RAMP FEATURES LIKE HANDRAILS AND EDGE PROTECTION LIKE -- THOSE ARE NOT IDENTIFIED IN THE ACCESS BOARD'S OUTDOOR RECREATION GUIDANCE.

IT ALSO ALLOWS YOU TO GO UP TO AS HIGH AS 10 PERCENT FOR 30 FEET AND 12.5 PERCENT, WHICH IS WHAT THE 1-TO-8 RATIO SHOWN IN THAT BOTTOM BOX IN THE SECOND BOTTOM LINE --

Q.      THAT'S DOWN HERE, RIGHT (INDICATING)?

A.      THAT'S THE 12.5 PERCENT FOR RUNNING SLOPE MAXIMUM FOR A 10-FOOT DIFFERENCE.

Q.      HOW DO THESE RUNNING SLOPES COMPARE TO THE ADAAG REQUIREMENTS FOR AN ACCESSIBLE PATH WITHIN A FACILITY OR A SITE?

A.      THEY ARE SIGNIFICANTLY LESS BURDENSOME ON A PUBLIC ENTITY.  THEY ARE PROVIDING A LOWER LEVEL OF ACCESSIBILITY IN THE TRAILS THAN WOULD BE REQUIRED IN A BUILDING BASED ON THE STANDARDS.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

2804

HECKER - CROSS / MR. JOHNSON

Q.   SO IS YOUR ANSWER "YES" OR "NO"?

A.   ASK ME THE QUESTION AGAIN.

Q.   IS THE CHARACTER OF THE JAPANESE TEA GARDEN AN ASPECT OF THE PROGRAM THAT IS BEING OFFERED THERE?

A.   IT IS AN ASPECT, YES.

Q.   AND THAT'S AN ASPECT OF THE PROGRAM THAT CAN'T BE -- THAT'S NOT OFFERED BY THE CITY ELSEWHERE OTHER THAN THE JAPANESE TEA GARDEN; IS THAT CORRECT?

A.   YES.

Q.   LET ME ASK YOU ABOUT THE OUTDOOR RECREATION TRAILS.  THIS IS -- YOU TESTIFIED ON DIRECT ABOUT THE REGULATORY NEGOTIATION COMMITTEE ON ACCESSIBILITY GUIDELINES FOR OUTDOOR DEVELOPED AREAS FINAL REPORT?

A.   YES.

Q.   THAT WAS A FINAL REPORT THAT WAS DATED SEPTEMBER 30, 1999?

A.   CORRECT.

Q.   IN FACT, THE ACCESS BOARD HAS NOT ACTUALLY ADOPTED THE GUIDELINES THAT WERE THE SUBJECT OF THAT FINAL REPORT, RIGHT?

A.   THEY HAVE NOT FOR ADA.

Q.   AFTER 12 YEARS OF THESE -- THIS FINAL REPORT BEING PENDING?

A.   THAT IS CORRECT.  IT'S STILL IN THE RULE-MAKING PROCESS.

Q.   AND, IN FACT, THE DOJ WILL NOT ADOPT GUIDELINES FOR OUTDOOR RECREATION AREAS UNTIL AFTER THE ACCESS BOARD ADOPTS THE GUIDELINES; IS THAT CORRECT?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 14, 110505

2805

HECKER - CROSS / MR. JOHNSON

A.   YES.

Q.   AND UNTIL SUCH TIME AS SPECIFIC GUIDELINES ARE ADOPTED FOR SPECIFIC TYPES OF ELEMENTS AND FACILITIES OR SITES, ISN'T IT TRUE THAT PUBLIC ENTITIES ARE REQUIRED TO APPLY ADAAG TO THE EXTENT FEASIBLE, TO THE EXTENT THAT IT COVERS ELEMENTS IN THOSE FACILITIES?

A.   TO THE EXTENT THAT IT COVERS ELEMENTS IN THAT FACILITIES, YES.

Q.   AND ADAAG COVERS SITES, RIGHT?

A.   THEY DO.

Q.   WHAT IS A DEFINITION OF A SITE?

A.   IT'S AN AREA, PIECE OF LAND BOUNDED BY A PROPERTY LINE OR BOUNDED BY DEDICATED PUBLIC RIGHT-OF-WAY.

Q.   IS GOLDEN GATE PARK A SITE?

A.   NOT WITHIN THE CONTEXT OF ADAAG COMPLIANCE.

Q.   IS GOLDEN GATE PARK A -- DOES GOLDEN GATE PARK HAVE WALKWAYS?

A.   YES.

Q.   ARE THEY COVERED BY ADAAG?

A.   NO.

Q.   YOU TESTIFIED ABOUT THE CITY'S DESIGN STANDARDS FOR CURB RAMPS?

A.   YES.

Q.   THOSE DESIGN STANDARDS DON'T PERMIT A HALF INCH LIP, DO THEY?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 14, 110505

2806

HECKER - CROSS / MR. JOHNSON

A.   THEY DO NOT FOR CURB RAMPS.

Q.   DID THEY AT ONE TIME?

A.   THE STATE REQUIRED A HALF INCH LIP AT ONE TIME.

Q.   HAS THE FEDERAL GOVERNMENT EVER PERMITTED HALF INCH LIPS?

A.   NOT THAT I AM AWARE OF.

Q.   AND THE FEDERAL GOVERNMENT'S REQUIREMENTS WOULD TRUMP THE STATE'S REQUIREMENTS, RIGHT?

MR. EMERY:  CALLS FOR A LEGAL CONCLUSION.

MR. JOHNSON:  I WILL WITHDRAW THE QUESTION.

THE COURT:  OKAY.

BY MR. JOHNSON:

Q.   MR. HECKER, IT IS YOUR OPINION, ISN'T IT, THAT THE UPHAS, U-P-H-A-S IS NOT A TRANSITION PLAN AS DESCRIBED IN THE FEDERAL REGULATIONS?

A.   THAT'S CORRECT.

Q.   IT HAS NO DEADLINE?

A.   IT DOES NOT.

Q.   ARE YOU FAMILIAR WITH THE LOGAN HOPPER TRANSITION PLAN THAT THE CITY COMMISSIONED AND THAT WAS PREPARED FOR THE CITY?

A.   YES.

Q.   AND HAVE YOU MADE ANY DETERMINATION AS TO WHETHER THE BARRIERS IDENTIFIED BY LOGAN HOPPER TO ACHIEVE PROGRAM ACCESS HAVE BEEN REMEDIATED BY THE CITY?

A.   NO.

Q.   IN FACT, IT'S YOUR UNDERSTANDING --

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930