Guy B. Wallace (SBN 176151)
gwallace@schneiderwallace.com
Jennifer U. Bybee (SBN 302212)
juhrowczik@schneiderwallace.com
Travis C. Close (SBN 308673)
tclose@schneiderwallace.com
Scott L. Gordon (SBN 319872)
sgordon@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL KIM LLP
2000 Powell Street, Suite 1400
Emeryville, CA  94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105

James C. Sturdevant (SBN 94551)
jsturdevant@sturdevantlaw.com
THE STURDEVANT LAW FIRM
A Professional Corporation
4040 Civic Center Drive, Suite 200
San Rafael, CA 94903
Telephone:  (415) 477-2410
Facsimile:   (415) 492-2810

Linda M. Dardarian (SBN 131001)
ldardarian@dhkl.law
DARDARIAN HO KAN & LEE
155 Grand Avenue, Sute 900
Oakland, CA 94612
Telephone:   (510) 763-9800
Facsimile:    (510) 835-1417

Jose R. Allen (SBN 122742)
jose.allen@probonolaw.com
525 University Avenue, Suite 1100
Palo Alto, CA 94301
Telephone: (650) 470-4520
Facsimile:  (650) 798-6507

Monique Olivier (SBN 190385)
monique@os-legal.com
OLIVIER & SCHREIBER PC
475 14th Street, Suite 250
Oakland, CA 94612
Telephone: (415) 484-0980

Attorneys for Plaintiff and the Certified Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IVANA KIROLA, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>       Defendants. | Case No. 3:07-cv-03685-AMO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING; MOTION TO DECERTIFY**<br><br>Date:    June 4, 2026<br>Time:   2:00 p.m.<br>Place:  Courtroom 10<br>Judge: Hon. Araceli Martinez-Olguin |

## TABLE OF CONTENTS

I.      INTRODUCTION...............................................................................................1

II.     RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................2

        A.    Plaintiffs' Complaint.............................................................................2

        B.    Class Certification.................................................................................3

        C.    Trial.....................................................................................................4

        D.    Defendants' Motion for Judgment on Partial Findings............................6

        E.    Defendants' First Motion for Judgment...................................................7

        F.    The Court's Findings of Fact and Conclusions of Law ............................7

        G.    Defendants' Second Motion for Judgment...............................................8

        H.    Second Remand.....................................................................................8

        I.    Defendants' Appeal and Indicative Motions...........................................8

III.    LEGAL STANDARD ...........................................................................................9

        A.    Motions for Indicative Rulings ..............................................................9

        B.    Motions for Decertification...................................................................10

IV.     ARGUMENT ....................................................................................................10

        A.    Defendants' Motion Must Be Denied Because It Raises the Same Issues
              as Defendants' Appeal .........................................................................10

        B.    Defendants' Motion Improperly Seeks Reconsideration of Their
              Prior Decertification Motions...............................................................12

        C.    This Court Should Not Decertify the Class............................................14

              1.    Defendants Fail to Meet the Decertification Standard ..................14

              2.    The Trial Record Confirms That Requirements for Certification
                    Are Met .................................................................................15

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

a.    Plaintiffs' FAC and Motion for Class Certification Continue to Support Certification Post-Trial ................................... 15

b.    Joinder Is Impracticable ................................................................. 16

c.    Commonality Is Satisfied ............................................................... 16

d.    Typicality and Adequacy Are Met ................................................. 22

e.    Plaintiffs' Claims Are Suitable for Certification Under Rule 23(b)(2) ......................................................................................... 24

f.    The Certified Class Is Not an Improper Fail-Safe Class ................ 25

V.    OBJECTION TO POST-TRIAL EVIDENCE ....................................................... 25

VI.    CONCLUSION ..................................................................................................... 25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hawaii State Dep't. of Ed.*, 30 F.4th 828 (9th Cir. 2022) ..................................................... 16

*Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004) ........................ 22

*Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890 (3d Cir. 2022) ............................................. 20, 21

*Amarin Pharms. Ir. Ltd. v. FDA*, 139 F. Supp. 3d 437 (D.D.C. 2015) ............................................. 9

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ................................................................. 22, 23, 24

*Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016) ....................................................................... 22

*Bally v. State Farm Life Ins. Co.*, No. 18-cv-04954-CRB, 2022 WL 594798 (N.D. Cal. Feb. 24, 2022) ................................................................................................................... 14

*Barapind v. Reno*, 225 F.3d 1100 (9th Cir. 2000) ........................................................................... 11

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ................................................... 23

*Bowerman v. Field Asset Servs., Inc.*, No. 3:13-cv-00057-WHO, 2018 WL 2215483 (N.D. Cal. May 15, 2018) ............................................................................................................ 12

*Brown v. Wal-Mart Store, Inc.*, No. 09-CV-03339-EJD, 2018 WL 1993434 (N.D. Cal. Apr. 27, 2018) ................................................................................................................ 14

*Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*, 249 F.R.D. 334 (N.D. Cal. 2008) .................................................................................................................... 17, 18

*Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850 (10th Cir. 2003) ................................................... 22

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) ........................... 2, 8, 11, 24

*Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*, 867 F.3d 1093 (9th Cir. 2017) .......................................................................................................................... 21

*Cohen v. City of Culver City*, 754 F.3d 690 (9th Cir. 2014) ............................................................ 2

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976) ........................ 11

*Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982 (9th Cir. 2014) ............................................ 23

*Defs. of Wildlife v. Salazar*, 776 F. Supp. 2d 1178 (D. Mont. 2011) ................................................ 9

*Dillery v. City of Sandusky*, 398 F.3d 562 (6th Cir. 2005) ............................................................ 22

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008) .................................................................. 24

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977) .............................................. 23

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)...................................................... 17

*Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011) .............................................................. 22

*Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747 (1976)............................................................ 23

*Gonzalez v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140 (S.D. Cal. 2007)................................. 10

*Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020).............................. 17, 23

*Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501 (N.D. Cal. 2011) .............. 17, 18, 20

*Griffin v. City of Los Angeles*, No. 2:24-cv-06312-RGK-MAR, 2025 WL 1108231 (C.D. Cal.
        Feb. 13, 2025)................................................................................................... 17, 18, 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998)................................................................ 22

*Harper v. Charter Commc'ns, LLC*, No. 2:19-CV-00902 WBS DMC, 2024 WL 3901469 (E.D.
        Cal. Aug. 22, 2024) ...................................................................................................... 10

*In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2018 WL 1456618 (N.D. Cal.
        Mar. 23, 2018) ............................................................................................................. 10

*In re MyFord Touch Consumer Litig.*, No. 13-cv-030072-EMC, 2018 WL 3646895 (N.D. Cal.
        Aug. 1, 2018)................................................................................................................ 10

*In re Optical Disk Drive Antitrust Litig.*, No. 10-md-02143-RS, 2017 WL 6448192 (N.D. Cal.
        Dec. 18, 2017) .............................................................................................................. 10

*Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1206 (8th Cir. 2015) .................................................. 9

*Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010) ..................................................... 25

*Kirola v. City & Cnty. of San Francisco*, 2023 WL 2851368 (9th Cir. Apr. 10, 2023)........ 8, 13, 25

*Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164 (9th Cir. 2017)................................. passim

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)................................................................ 11

*Lopez v. San Francisco Unified Sch. Dist.*, C-99-3260 SI, 2003 WL 26114018 (N.D. Cal.
        Sept. 8, 2003) ......................................................................................................... 18, 20

*Maldonado v. Apple, Inc.*, No. 3:16-cv-04067-WHO, 2021 WL 1947512 (N.D. Cal. May 14,
        2021).............................................................................................................................. 10

Case No. C 07-3685-AMO

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

*Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942 (9th Cir. 2011) ................................................... 10

*Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) ............................................................ 11

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ................................... 17

*O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404 (C.D. Cal. 2010) .............................................. 14

*Olean Wholesale Groc. Coop., Inc. v. Bumble Bee Foods*, 31 F.4th 651 (9th Cir. 2022) .. 13, 14, 24

*Park v. Ralph's Grocery Co.*, 254 F.R.D. 112 (C.D. Cal. 2008) ..................................................... 20

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ............................................................... 17, 18, 19, 24

*Payan v. L.A. Cmty. College Dist.*, 11 F.4th 729 (9th Cir. 2021) ...................................................... 11

*Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002) ........................................... 24

*Powers v. McDonough*, 163 F.4th 1162 (9th Cir. 2025) .................................................................. 18

*Roshan v. Lawrence*, No. 21-CV-01235-JST, 2025 WL 1829033 (N.D. Cal. July 2, 2025) ............ 9

*Sanai v. Cardona*, No. 22-CV-01818-JST, 2025 WL 1644502 (N.D. Cal. June 10, 2025) ........ 9, 10

*Sheehan v. City and Cnty. of San Francisco*, 743 F.3d 1211 (9th Cir. 2014) ................................. 23

*Silbersher v. Allergan Inc.*, No. 18-CV-03018-JCS, 2024 WL 2044626 (N.D. Cal. May 7, 2024) ............................................................................................................................................. 9

*Smith v. City of Oakland*, 339 F.R.D. 131 (N.D. Cal. 2021) ..................................................... 18, 20

*Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150 (N.D. Cal. 2023) ........................... 21

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................................................ 13

*U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983) ............................................... 19

*U.S. v. Jingles*, 702 F.3d 494 (9th Cir. 2012) ................................................................................. 14

*Utne v. Home Depo U.S.A., Inc.*, No. 16-cv-01854-RS, 2022 WL 1443338 (N.D. Cal. May 6, 2022) ............................................................................................................................................ 14

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ............................................................. passim

*Wortman v. Air New Zealand*, 326 F.R.D. 549 (N.D. Cal. 2018) ................................................... 16

**Other Authorities**

3 Newberg and Rubenstein On Class Actions (5th ed.), § 7:39 ...................................................... 14

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

**Rules**

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 16

Fed. R. Civ. P. 23(b)(2) ................................................................................................ 24

Fed. R. Civ. P. 62.1 ........................................................................................................ 9

Local Rule 7-9 .............................................................................................................. 12

**Regulations**

28 C.F.R. § 35.149 ................................................................................................... 2, 23

ADAS § 403.3 .............................................................................................................. 19

ADAS § 405.2 .............................................................................................................. 19

ADAS § 405.3 .............................................................................................................. 19

Case No. C 07-3685-AMO

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

## I.    INTRODUCTION

The Court granted class certification sixteen years ago.  ECF 285.  Since that time, Defendants filed three previous motions for decertification—during trial after the presentation of Plaintiffs' case in chief (ECF 570); in 2014, prior to the Court's issuing the Findings of Fact and Conclusions of Law (ECF 666); and in 2018, on remand after the *Kirola I* decision (ECF 751).  After the Court granted systemic injunctive relief following the *Kirola II* decision, *see* ECF 889, Defendants appealed and have since filed their opening brief ("AOB") in the Ninth Circuit.[1]  The AOB sets forth Defendants' sprawling arguments against class certification, which Defendants have now repackaged into the instant Motion for an Indicative Decertification Ruling ("motion").  The motion asks this Court to consider the very same issues that are currently pending in its appeal. Compounding matters, Defendants raised, or could have raised, the arguments in the instant motion in their prior decertification motions.

The Court should deny the motion for at least four reasons.  First, motions for indicative rulings are improper when they rehash the same arguments that are raised in the appeal, particularly when both filings raise the same legal claims such as changes in law and requests to overturn existing precedent.  Defendants' motion repeats the appellate arguments, seeks redundant proceedings, and does not promote judicial efficiency and fairness—thwarting the very purpose of Rule 62.1—and should be denied on that basis alone. Second, the motion improperly seeks reconsideration of Defendants' three prior decertification motions and fails to raise a change in fact or law that the City did not or could not raise previously.  Third, Defendants fail to meet the decertification standard because they show no changed circumstances.  Fourth, the trial record confirms that this case easily satisfies the requirements for certification under Rule 23(b)(2).

The central premise of Defendants' motion is that Plaintiffs cannot satisfy the commonality standard set forth in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("*Dukes*"), because they have not shown a policy of discrimination.  This is simply untrue.  It is well-settled that Defendants' failure to perform new construction and alterations in compliance with ADAAG constitutes

---

[1] Defendants' AOB was filed on February 18, 2026, and is attached as Exhibit 1 to the accompanying Declaration of Guy Wallace ("Wallace Decl.").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

discrimination against persons with disabilities. *See, e.g.*, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (en banc) ("Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA."); *Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014) (same); 28 C.F.R. § 35.149. Here, this Court has found that Defendants' newly constructed or altered facilities contain "dozens" of ADAAG violations. ECF 889 at 8. Furthermore, this Court has found that "Plaintiffs' injuries are the result of violations 'attributable to policies or practices pervading the whole system.'" *Id.* In particular, the City does "not use ADAAG for parks, playgrounds, outdoor recreation facilities, and the pedestrian rights of way." *Id.* at 7. Defendants have not shown that this Court's findings are erroneous. But this Court's conclusions regarding the City's policies and practices cannot be disregarded. As discussed below, it is well-settled that ADA cases that challenge policies or practices are suitable for class treatment. Accordingly, Defendants' motion fails.

For the reasons set forth herein, this Court should deny Defendants' motion. Alternatively, the Court should defer a ruling on decertification until after the Ninth Circuit issues its opinion.

## II. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Plaintiffs' Complaint

Plaintiffs' operative First Amended Complaint ("FAC") sought "declaratory and injunctive relief against the Defendants for severely limiting Plaintiffs' access to the CITY's facilities … by knowingly refusing to eliminate architectural … barriers" in violation of Title II of the ADA and parallel laws. ECF 294 at ¶ 3. Plaintiffs alleged that Defendants' policies and practices regarding new construction and alterations were not sufficient to ensure compliance with the ADA. ECF 294 at ¶ 2, ¶ 17. Plaintiffs sought relief relating to the City's policies regarding new construction and alterations and requested the issuance of a permanent injunction requiring Defendants to undertake remedial measures to remove all disability access barriers in the City's newly constructed and altered facilities and develop and implement plans to ensure that all future new construction and alterations are compliant. *Id.* at Prayer for Relief ¶ 3, 3(a), 3(d).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

## B.     Class Certification

Plaintiffs filed their Motion for Class Certification (ECF 187) on March 2, 2010.  Plaintiffs showed that whether the City's policies and procedures were inadequate to ensure that newly constructed and altered facilities were constructed in compliance with federal and state disability access design standards was a question of law and fact common to the class.  ECF 187 at 12-14.  Plaintiffs identified seven common questions of law and fact pertaining to the City's policies and practices regarding new construction and alterations and identified two specific written policies that they challenged pertaining to same.  *Id*.  (citing Declaration of Andrew P. Lee (ECF 189) ("Lee Decl."), Exh. 49 (Mayor's Office on Disability Plan Review and Approval policy), Exh. 55 (Disabled Access Checklist Package)).[2]  Plaintiffs also stated that the barriers present in the City's newly constructed and altered facilities "are the result of the City's failure to adopt and implement sufficient written policies and procedures to ensure that new construction and alterations are performed in compliance with state and federal disability access standards."  ECF 187 at 1.  Plaintiffs made clear that they "do not seek to have this court preside over a trial in which the alleged barriers to access are individually adjudicated."  ECF 262 at 3-4.

Plaintiffs submitted substantial evidence in support of class certification, including but not limited to the Lee Decl. that attached 63 exhibits (ECF 189, 191-95).  Plaintiffs' evidence included, without limitation, various deposition transcripts (including that of City official Kevin Jensen); 17 expert reports; various City documents; a declaration from Plaintiffs' expert Gary Waters attaching his opening and rebuttal expert reports (ECF 185); a declaration from Plaintiffs' expert Dr. Edward Steinfeld that evaluated the sufficiency of the City's policies and procedures regarding new construction and alterations (ECF 186 at ¶¶ 49-59); and 23 declarations from class members (ECF 190).

The Declarations of Dr. Steinfeld and Gary Waters detail how "the City's failure to comply with applicable accessibility design standards in its new construction and alterations arise from significant flaws in its written policies and procedures, as well as its practices.  First, the City's

---

[2] Exhibit 49 was filed at ECF 194-4 and Exhibit 55 was filed at ECF 194-5.  They are attached to the Wallace Decl. as Exhibits 27 and 28, respectively.

written policies and procedures regarding new construction and alterations contain no express written statement that new construction of facilities or alterations to existing buildings must be performed in strict compliance with federal and state disability access design standards." ECF 187 at 12 (citing ECF 186 at ¶ 53; Lee Decl., Exh. 49, Exh. 55). "Second, the plan approval process for accessibility review appears to be minimal" and does not require or certify compliance with applicable design standards at all. ECF 186 at ¶¶ 54-55. Third, "the City's written policies and procedures for ensuring compliant construction are inadequate to ensure compliance with ADAAG or UFAS" because the close out procedures do not require a formal site inspection of the site as-built to ensure it meets federal and state standards. ECF 187 at 13; Lee Decl., Exh. 55. No close out documents were produced "that indicate that any formal site inspection of the construction is routinely required to assure that the work is actually performed in compliance with any disability access standards." ECF 186 at ¶ 56.

In their opposition, Defendants waived multiple challenges that they now seek to revive. Defendants stated that "the City agrees that Plaintiffs have met the numerosity requirement" ECF 245 at 6. Defendants also admitted that the City "does not challenge Ms. Kirola's standing to litigate the City's policy and procedures related to ADA compliance, on behalf of a class of persons with mobility disabilities." ECF 245 at 9. Further, Defendants waived their challenge to "Ms. Kirola's adequacy as a class representative based upon [the City's] contention that she lacks standing to seek relief regarding barriers she has not personally encountered" as the City withdrew that objection at the hearing on the motion. ECF 285 at ¶ 9. On June 7, 2010, the Court certified the class. ECF 285.

### C.    Trial

A bench trial was conducted over 14 days between April 4, 2011 and May 5, 2011. ECF 811 at 4-6. Plaintiff Ivana Kirola testified that in the over 17 years she had lived in San Francisco, she regularly used the Main Library (ECF 704 at 1385-86), Alamo Square Park (*id.* at 1385) and other newly constructed or altered facilities that did not comply with ADAAG (*id.* at 1381-87).[3]

---

[3] Relevant excerpts of Ms. Kirola's testimony from the Transcript of Proceedings are attached to the Wallace Decl. at Exhibit 10.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

Struggling with barriers in these facilities made her "feel discriminated against" and "so frustrated" that the City had not complied with the ADA.  *Id.* at 1387-88.

Six class members or parents of class members testified about the negative impact that encounters with ADAAG violations have on persons with mobility disabilities.  For example, Tim Grant testified that an "accessible" restroom he used at Golden Gate Park lacked a grab bar which increased his risk of falling and injury and Jill Kimbrough testified that she and her mobility disabled daughter were completely unable to use the newly constructed St. Mary's Playground due to the lack of an accessible path of travel.  ECF 702 at 893-95 (Tim Grant); ECF 702 at 835-36 (Jill Kimbrough); *see also* ECF 700 at 541-542 (Elizabeth O'Neil); ECF 702 at 1031-32 (Margie Cherry); ECF 702 at 1002, 1017-18 (Audrey Dechadenedes).[4]

Plaintiffs' experts in disability access testified regarding a representative sample of parks and recreation centers that were identified by the City as having been newly constructed or altered since January 26, 1992.  Plaintiffs' showing established numerous undisputed ADAAG violations in the Botanical Gardens, recreation centers, and other facilities.[5]  These violations included, *inter alia*, numerous steep ramps and paths of travel with slopes far in excess of ADAAG maximums (*see, e.g.,* ECF 703 at 1123-24, 1162-66, 1168-69, 1185-87; ECF 699 at 229-31; PTX 2148A, seq. 8.); curb ramps with non-compliant lips (*see, e.g.*, Wallace Decl, Exh. 26; ECF 707 at 1994-95); and noncompliant entrances (*see, e.g.,* ECF 703 at 1168-70, 1121-24, 1139-40, 1162, 1165; PTX 2148A, seq. 8).  The undisputed ADAAG violations also included noncompliant restrooms (*see, e.g.,* ECF 703 at 1121-22, 1139-42, 1150-52, 1155-60, 1180-83; ECF 699 at 304-307; ECF 708 at 2131-32; PTX 2144A, seq. 6; PTX 2145A, seq. 11); lack of accessible signage (*see, e.g.,* ECF 703 at 1141, 1157-58, 1160, 1162-63); and inaccessible playgrounds (*see, e.g., id*. at 1121-23; ECF 699 at 279-290).

Plaintiffs also elicited evidence of a Citywide policy and practice of not complying with

---

[4] Excerpts of the class member testimony are attached to the Wallace Decl. as Exhibits 3 (Elizabeth O'Neil), 5 (Jill Kimbrough), 6 (Tim Grant), 8 (Audrey Dechadenedes), and 9 (Margie Cherry),
[5] Excerpts of the testimony cited in this paragraph are attached to the Wallace Decl. as Exhibit 2 (ECF 699), 7 (ECF 703), 15 (ECF 707) and 16 (ECF 708).  Additionally, PTX 2144A, seq. 6; PTX 2145A, seq. 11; and PTX 2148A, seq. 8 are attached to the Wallace Decl. as Exhibits 19-21 respectively.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

ADAAG in the new construction and alteration of pedestrian rights of way, parks, playgrounds and recreational facilities.  John Paul Scott, the City's Deputy Director for Physical Access with the Mayor's Office on Disability ("MOD"), and Kevin Jensen, the City's Disability Access Coordinator for the Department of Public Works ("DPW"), both testified that ADAAG did not apply to parks and playgrounds, and admitted that the City did not use ADAAG for those types of facilities.[6]  ECF 705 at 1496-97; ECF 706 at 1820-24; ECF 707 at 1946-48.  Although Defendants now claim that "trial testimony demonstrates that the City applied ADAAG to park features and facilities" (motion at 17), the citations to the record simply do not support this assertion (e.g., ECF 917-4 at 33-52) or are contradicted by the testimony of Scott and Jensen (e.g., ECF 917-3), and there has been no finding that any park feature or facility complies with ADAAG.  None of the City's policies or procedures regarding new construction or alterations admitted at trial, including DPW Procedure No. 9.8.24, specified that the pedestrian rights of way, parks, playgrounds or recreational facilities must comply with ADAAG.[7]  *See* DTX A13; DTX A14.[8]

**D.     Defendants' Motion for Judgment on Partial Findings**

Prior to the close of trial, on April 22, 2011, Defendants filed a Motion for Judgment on Partial Findings or, in the Alternative, for Decertification of the Plaintiff Class.  ECF 570.  Defendants raised the same argument as they do in the instant motion: that Plaintiffs "failed to articulate a policy or practice of the City that they claim deprives them of their rights under the ADA."  ECF 570 at 1, 2, 4, 6-7.  In opposition, Plaintiffs emphasized that the trial evidence demonstrated that the City's policies and practices regarding new construction and alterations have not been adequate to ensure ADAAG-compliant construction.  ECF 573 at 3, 7.

---

[6] Relevant excerpts of the testimony of Mr. Scott and Mr. Jensen are attached to the Wallace Decl. at Exhibits 11 (ECF 705-706) and 15 (ECF 707), respectively.  Additional relevant testimony of Dr. Steinfeld (ECF 701 at 749-51) is attached to the Wallace Decl. at Exhibit 4.

[7] City officials testified that DPW and MOD follow the same overall policy and process and use the same review form.  ECF 707 at 1913-1915 (Kevin Jensen); *see also id.* at 1901-04 (James Whipple); ECF 706 at 1744-48 (Carla Johnson); DTX K10; DTX P11.  Relevant excerpts of the testimony of Ms. Johnson and Mr. Whipple are attached at Exhibits 13 and 14, and DTX K10 and DTX P11 are attached as Exhibits 24 and 25, respectively, to the Wallace Decl.

[8] DTX A13 and DTX A14 are attached to the Wallace Decl. as Exhibits 24 and 25, respectively.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

### E.        Defendants' First Motion for Judgment

On May 27, 2014, the City filed a Post-Trial Motion for Judgment in which Defendants sought judgment on all claims, or, in the alternative, class decertification on the basis that Ms. Kirola lacked standing and therefore could not satisfy the requirements of typicality or adequacy. ECF 666 at 23.  Defendants argued, as they do in the instant motion, that Plaintiffs must show that "the identical policy or practice has caused widespread harm to class members" under *Dukes*, and that Ms. Kirola had not personally encountered a proven ADAAG violation in a newly constructed or altered facility and could not establish injury arising from the challenged policies.  *Id.* at 7, 18-19.

### F.        The Court's Findings of Fact and Conclusions of Law

On November 26, 2014, the Court issued its findings of fact and conclusions of law and entered judgment in favor of the City on all claims.  ECF 686-687.  This Order was the product of multiple serious errors of law, but the Court did not make any findings that any of the City's facilities complied with ADAAG and did not even address the undisputed evidence of ADAAG violations identified by Plaintiffs' experts in the Botanical Gardens and recreation centers.  The class was not decertified and Defendants did not move for reconsideration or file a cross appeal.

Because the Court based its entire new construction and alterations analysis on the proposition that ADAAG did *not* apply to parks, playgrounds, outdoor recreation areas and the pedestrian rights of way, it did not analyze whether the City's policies or practices regarding new construction and alterations were sufficient to ensure ADAAG compliance.  *Id.* at 51 ("Kirola's experts applied the more stringent but inapplicable ADAAG standard to park and playground facilities"); 99-101.

On June 22, 2017, the Ninth Circuit reversed the Court's judgment regarding Plaintiffs' claims for violations of the new construction and alterations duties, including their challenges to the sufficiency of any policies and practices regarding same.  The Ninth Circuit held that ADAAG does apply to parks, playgrounds, outdoor recreational facilities and the pedestrian rights of way, and that the trial judge had erred by not applying ADAAG to those facilities.  *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1178-81 (9th Cir. 2017).  In other words, the City's policy and practice of not applying ADAAG to its newly constructed and altered parks, playgrounds, outdoor

7

recreational facilities and the pedestrian rights of way was unlawful. The Ninth Circuit emphasized that full compliance with ADAAG is required in new or altered facilities. *Id.* at 1181 (quoting *Chapman*, 631 F.3d at 945-46).

### G.    Defendants' Second Motion for Judgment

On remand, Defendants filed a Motion for Judgment as a Matter of Law (ECF 751) on August 16, 2018, where it argued again that Plaintiffs had not established any ADAAG violations at trial and that the Court should decertify the class. Defendants contended, *inter alia*, that the "class claims must share a common contention that is 'capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" ECF 751 (citing *Dukes*, 564 U.S. at 350). Plaintiffs' opposition contained a detailed discussion of the specific defects in the City's policies and practices regarding new construction and alterations. ECF 758 at 20-27. The Court granted the City's motion and entered judgment again on March 12, 2021. ECF 776. The Ninth Circuit affirmed in part and reversed in part. *Kirola v. City & Cnty. of San Francisco*, 2023 WL 2851368 (9th Cir. Apr. 10, 2023).

### H.    Second Remand

On remand, this Court first issued injunctive relief as to the ADAAG violations found at the Phase I facilities and then granted injunctive relief as to conditions at seven Phase II facilities. ECF 822; ECF 852. Pursuant to this Court's orders and the Ninth Circuit's remand directive, Plaintiffs filed their Motion for Systemic Injunctive Relief (ECF 872) on November 1, 2024. Defendants' opposition (ECF 874) did not ask the Court to consider any evidence regarding its current policies or practices. The Court issued the Order Granting Plaintiffs' Motion for Systemic Injunctive Relief on September 29, 2025. ECF 889.

### I.    Defendants' Appeal and Indicative Motions

Defendants filed a notice of appeal on October 27, 2025 (ECF 895) and an amended notice on November 21, 2025 (ECF 900). The amended notice challenged the Order Granting Plaintiffs' Motion for Systemic Injunctive Relief and specifically appealed the Court's Order Granting Plaintiffs' Motion for Class Certification. ECF 900 at 2-3. Defendants filed their AOB on February 18, 2026, and the appeal is currently pending.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

### III.         LEGAL STANDARD

#### A.         Motions for Indicative Rulings

Federal Rule of Civil Procedure 62.1 provides that, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a). The court's decision to make such a ruling is discretionary. *See, e.g., Jackson v. Allstate Ins. Co*., 785 F.3d 1193, 1206 (8th Cir. 2015); *Silbersher v. Allergan Inc*., No. 18-CV-03018-JCS, 2024 WL 2044626, at \*4 (N.D. Cal. May 7, 2024).

Consideration of such a request involves four steps:

> First, the appealing parties must be motivated by some concern or issue and specifically ask for an indicative ruling. Second, the District Court is then obliged to indicate its view of the request. If the request is denied, that ends the inquiry. If the District Court is inclined to grant the request for an indicative ruling, the third step is to tell the parties and the Circuit Court of its intent. Finally, it is up to the Circuit Court to decide whether it will send the case back to the District Court and empower the lower court to rule.

*Roshan v. Lawrence*, No. 21-CV-01235-JST, 2025 WL 1829033, at \*1 (N.D. Cal. July 2, 2025) (quoting *Defs. of Wildlife v. Salazar*, 776 F. Supp. 2d 1178, 1182 (D. Mont. 2011)).

"[T]he purpose of Rule 62.1[(a)] is to promote judicial efficiency and fairness by providing a mechanism for the district court to inform the parties and the court of appeals how it could rule on a motion made after the district court has been divested of jurisdiction." *Sanai v. Cardona*, No. 22-CV-01818-JST, 2025 WL 1644502, at \*2 (N.D. Cal. June 10, 2025) (quoting *Amarin Pharms. Ir. Ltd. v. FDA*, 139 F. Supp. 3d 437, 447 (D.D.C. 2015)). "[I]ssuing an indicative ruling would not promote judicial efficiency and fairness" where the appellant "is not presenting newly discovered evidence or any other issue that this Court would be in any better position than the Ninth Circuit to decide" and merely "ask[s] this Court to consider the same question … that is at issue in his pending appeal." *Id*. For example, when the appellant attempts to newly raise the same case law in both proceedings, "the Ninth Circuit may address the newly cited cases [] in the first instance" and an indicative ruling "'would likely delay the previously scheduled proceedings in front of the Ninth Circuit.'" *Id*. (quoting *Harper v. Charter Commc'ns, LLC*, No. 2:19-CV-00902 WBS DMC, 2024

9

WL 3901469, at *1 (E.D. Cal. Aug. 22, 2024).

### B.    Motions for Decertification

In considering the appropriateness of decertification, the standard remains whether the requirements of Rule 23 are met.  The burden of proof remains on the plaintiffs.  *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011).  While the plaintiff bears the burden to demonstrate the Rule 23 criteria, the defendant on a decertification motion must make a "showing of changed circumstances or law" before the plaintiff's burden is triggered.  *See, e.g.*, *Maldonado v. Apple, Inc.*, No. 3:16-cv-04067-WHO, 2021 WL 1947512, at *2 (N.D. Cal. May 14, 2021).  Thus, decertification "should only take place after some change, unforeseen at the time of the class certification, that makes alteration of the initial certification decision necessary."  *In re MyFord Touch Consumer Litig.*, No. 13-cv-030072-EMC, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018); *In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2018 WL 1456618, at *2 (N.D. Cal. Mar. 23, 2018) ("The burden of showing why I should consider decertification falls squarely on the shoulders of defendants …").

Courts have described the defendant's burden on decertification as "heavy."  *See, e.g., In re Optical Disk Drive Antitrust Litig.*, No. 10-md-02143-RS, 2017 WL 6448192, at *1 (N.D. Cal. Dec. 18, 2017) ("Nonetheless, '[t]o prevail on its decertification motion, defendant[s] face[] a heavy burden because []doubts regarding the propriety of class certification should be resolved in favor of certification.'") (quoting *Gonzalez v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007)).

### IV.    ARGUMENT

#### A.    Defendants' Motion Must Be Denied Because It Raises the Same Issues as Defendants' Appeal

The Court should deny Defendants' motion because it merely "ask[s] this Court to consider the same question … that is at issue in [their] pending appeal" and confounds the judicial efficiency and fairness that Rule 62.1 seeks to promote.  *Sanai*, 2025 WL 1644502, at *2.  The motion raises the same arguments as Defendants' AOB, including that Plaintiffs' claims are "sprawling" (AOB at 9-13); that this Court erroneously found commonality (AOB at 41-48), including because it relied

on the Ninth Circuit's overturned opinion in *Dukes*; that Ms. Kirola is not an adequate or typical class representative (AOB at 48-53); that Plaintiffs failed to establish numerosity (AOB at 54); that certification was improper under Rule 23(b)(2) (AOB at 54-55); and that the Court certified an improper fail-safe class (AOB at 41).

The instant motion also raises sundry further arguments from the AOB, including that there is no private right of action for ADAAG violations in new construction and alterations (AOB at 57-58, 72); that ADAAG violations no longer constitute ADA violations in newly constructed or altered facilities following *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (AOB at 55-57); that disparate impact claims are not cognizable under Title II (AOB at 82); and that the City has a policy that requires ADAS compliance (AOB at 30-31).[9]  Moreover, both filings cite the same authorities. For example, the motion and AOB both cite the concurrence of Judge Murphy in *Booth v. Lazzara*, 164 F.4th 581 (6th Cir. 2026) and provide the identical two-sentence quote in parenthetical.  *See* motion at 17; AOB at 56.  Defendants even argue that the same cases should be overturned, including *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) (AOB at 50); *Payan v. L.A. Cmty. College Dist.*, 11 F.4th 729 (9th Cir. 2021) (AOB at 82); and Ninth Circuit case law holding that in newly constructed or altered facilities a violation of ADAAG is a violation of the ADA (i.e., *Kirola*, 860 F. 3d at 1181; *Chapman*, 631 F.3d at 946) (AOB at 56).

Defendants' motion fails to further judicial economy or fairness because it simply attempts to raise the same decertification arguments in two courts at once.  This conflicts with federal courts' "'general principle [of] avoid[ing] duplicative litigation.'" *See, e.g., Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir. 2000) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)).  Moreover, both the motion and AOB are laden with legal arguments, including that certification was improper after the Supreme Court's opinion in *Dukes* and that multiple Ninth Circuit cases should be overturned.  To the extent that the Ninth Circuit needs to address these legal questions (and to the extent they are not waived), they will be reviewed *de novo* on appeal.  Given that the Ninth Circuit is better suited to address many of Defendants' arguments

---

[9] Plaintiffs object to the admission and consideration of evidence of policy changes that occurred after trial, as discussed *infra*.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

at this juncture (such as Defendants' requests that multiple precedents be overruled), the Court should deny the motion or defer any decertification ruling until after the appeal is resolved.

**B.     Defendants' Motion Improperly Seeks Reconsideration of Their Prior Decertification Motions**

Defendants filed three previous decertification motions that raised, or could have raised, the arguments in the instant motion. *See* ECF 570; ECF 666; ECF 751.  Defendants cannot identify a change of fact or law from these previous motions, as required, because they are limited to the evidence at trial and they raised the Supreme Court decision in *Dukes* twelve years ago.[10]  All of these motions were denied, and Defendants never appealed the orders denying their motions for decertification or the original order certifying the class.  *Kirola*, 860 F.3d at 1176 n.5.

Furthermore, Defendants previously represented to this Court that they did not challenge class status on remand.  *See, e.g.*, ECF 811 at 30 ("The parties do not anticipate any motion practice to decertify or alter the class.").  Plaintiffs—and this Court—understood that class status was not in question when they began the three Phase process for determining the proper scope of injunctive relief.  Defendants may not now take the opposite position and belatedly challenge class certification as an attempted means of evading injunctive relief in this matter.

Because Defendants have made three prior motions to decertify, Local Rule 7-9 (Motion for Reconsideration) applies.  *See, e.g., Bowerman v. Field Asset Servs*., Inc., No. 3:13-cv-00057-WHO, 2018 WL 2215483, at *1 (N.D. Cal. May 15, 2018) ("Under these circumstances, it seems appropriate that any subsequent motion to decertify should be fashioned as a motion for reconsideration.").  Under Local Rule 7-9, "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion."  Accordingly, Defendants were required to file a motion for leave in order to file an additional motion for decertification, and they must meet the standards set forth in Local Rule 7-9(b) and (c).

Defendants cannot show any change in facts as this Court—at Defendants' request—has

---

[10] Even if the City's purported 2014 policy requiring ADAS compliance (*see* motion at 18:11-12) was admissible, it could have been raised in one or more of its prior motions. "DPW Procedure 10.02.21, entitled ADA and Accessibility Compliance, [was] recommended in December 2013, and approved by the Director of Public Works on January 6, 2014." *See* ECF 919 at ¶ 15.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

conducted the Phase I, II, and III proceedings based exclusively on the 2011 trial record. To illustrate, Defendants claim that Ms. Kirola is not an adequate class representative with regard to some facilities because playgrounds are supposedly "off limits to adults" (motion at 22) but Defendants have been aware that Ms. Kirola was an adult since the time of trial in 2011, and have never previously raised this argument regarding her typicality or adequacy as a class representative. What is more, there is literally no evidence in the trial record of these "facts," and Defendants never even proposed such factual findings post-trial. They may not do so now, all these years later.

Similarly, Defendants cannot point to any change in governing law that would impact class certification. None of the cases cited by Defendants warrant revisiting class certification, and even if they did, Defendants raised or should have raised any such arguments years ago. For example, the Supreme Court decided *Dukes* in 2011, and Defendants argued that Supreme Court opinion in two of its prior decertification motions. *See* ECF 666 at 6-7; ECF 751 at 6, 18-19. *Olean Wholesale Groc. Coop., Inc. v. Bumble Bee Foods*, 31 F.4th 651 (9th Cir. 2022) (en banc), was issued in 2022, before the Ninth Circuit's second opinion in this case and this Court's Phase I-III proceedings in 2024 and 2025. Further, *Olean* has limited application as it involved an antitrust case that was certified under Rule 23(b)(3), and thus focuses on the predominance standard, which does not apply to cases such as the instant one which was certified under Rule 23(b)(2). *Id.* at 666-69.

With respect to any arguments that Defendants advance about whether Ms. Kirola has standing under Article III, the Ninth Circuit has repeatedly held that she does. *Kirola*, 860 F.3d at 1174-76. Further, in the second appeal, the Ninth Circuit considered—and rejected—Defendants' argument that Ms. Kirola does not have standing because she allegedly has not encountered an ADAAG violation in Defendants' facilities. *Kirola*, 2023 WL 2851368, at *1 ("Although the district court was concerned that Kirola, the sole class representative, had not personally encountered any of the ADAAG violations that the plaintiffs ultimately proved at trial, that takes too narrow a view of injunctive relief under the ADA."). Moreover, *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), cited by Defendants, held that "[e]very class member must have Article III standing in order to recover **individual damages**." *Id.* at 431 (emphasis added). *TransUnion* did not hold that the class members in a case for injunctive relief must establish standing. *Id.* at 431, 435-36. When

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

interpreting *TransUnion*, the Ninth Circuit clarified that the law of the Circuit remains that, when a class seeks injunctive or equitable relief, only one plaintiff need demonstrate standing. *Olean*, 31 F.4th at 682 n.32. The Ninth Circuit's decisions regarding Ms. Kirola's standing are the law of the case and may not be revisited. *See, e.g., U.S. v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012).

In sum, Defendants have had three prior bites at the decertification apple and fail to show any change in fact or law that would justify reconsideration of the prior Orders denying those motions. The Court should deny Defendants' motion on this basis.

**C.      This Court Should Not Decertify the Class**

**1.      Defendants Fail to Meet the Decertification Standard**

Defendants must also show that there is some change in fact or law that warrants reconsideration of the prior class certification Order as part of the decertification inquiry. Courts have recognized that "parties should be able to rely on a certification order" and that "in the normal course of events it will not be altered except for good cause." *Bally v. State Farm Life Ins. Co*., No. 18-cv-04954-CRB, 2022 WL 594798, at *2 (N.D. Cal. Feb. 24, 2022) (quoting *O'Connor v. Boeing N. Am., Inc*., 197 F.R.D. 404, 410 (C.D. Cal. 2010)). Prior to considering a motion for decertification, the proponent of a motion must show "there has been some change in the law or facts that justifies reversing the initial certification decision." *Utne v. Home Depo U.S.A., Inc*., No. 16-cv-01854-RS, 2022 WL 1443338, at *5 (N.D. Cal. May 6, 2022). "[T]he defendant seeking decertification must make a showing that the change is sufficient to warrant reconsidering the certification decision." *Brown v. Wal-Mart Store, Inc*., No. 09-CV-03339-EJD, 2018 WL 1993434, at *2 (N.D. Cal. Apr. 27, 2018) (citing 3 Newberg and Rubenstein On Class Actions (5th ed.) at § 7:39 ("[A] defendant seeking decertification or modification ought to be required to make some showing of changed circumstances or law, which would then trigger a plaintiffs' obligation to defend certification.")).

Defendants fail to meet the heavy burden of decertification because they have already raised (or could have raised) any asserted change in fact or law in their prior motions for decertification. Detailed above, Defendants moved for decertification at trial (ECF 570), again in 2014, prior to the Court's issuing the Findings of Fact and Conclusions of Law (ECF 666), and once more in 2018, on

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

remand after the *Kirola I* decision (ECF 751).  Moreover, the proceedings are limited to the 2011 trial record at Defendants' insistence.  Defendants have already been heard on decertification and are not permitted to raise "new arguments" that they raised or should have raised long ago.

**2.      The Trial Record Confirms That Requirements for Certification Are Met**

**a.      Plaintiffs' FAC and Motion for Class Certification Continue to Support Certification Post-Trial**

The FAC stated a viable claim for violations of the ADA's requirements for new construction and alterations, identified non-compliant new construction and alterations as one of the key common questions at issue, and sought classwide relief to enjoin Defendants to "[d]evelop and implement a plan to remove all disability access barriers that deny or limit access to persons with disabilities in the CITY's newly constructed facilities or in areas of facilities that are subject to the alterations provisions of federal or state disability nondiscrimination laws."  ECF 294 at ¶¶ 2, 55, 44(g), 44(h), 71-72, Prayer for Relief 3(a).  Defendants have not cited any authority requiring a party to identify the specific written policies that they challenge in their class action complaint.

Plaintiffs' Motion for Class Certification included briefing that identified the common questions raised by the City's policies and practices regarding new construction and alterations.  ECF 187 at 10-14.  In addition, Plaintiffs submitted the Lee Decl., which attached numerous policy documents, including the MOD Plan Review and Approval Forms for new construction and alterations (Exh. 49).  The MOD Plan Review and Approval Forms did not state that the City used ADAAG for parks, playgrounds, outdoor recreation areas or the pedestrian rights of way.  Wallace Decl., Exh. 27.  The Lee Decl. also included the City's Disabled Access Upgrade Compliance Checklist Package (Exh. 55), which contained the City's close-out procedures.  *Id.*, Exh. 28. Plaintiffs showed that those procedures did not require that the City confirm that completed projects were in compliance with ADAAG, thereby supporting commonality.  ECF 187 at 13.

The Lee Decl. also attached the deposition testimony of Kevin Jensen (Exh. 9).[11]  Mr. Jensen testified that ADAAG did not apply to the pedestrian right of way.  Wallace Decl., Exh. 18 at 119:7-

---

[11] Exhibit 9 was filed at ECF 189-1, and the excerpts of Mr. Jensen's deposition transcript cited herein are attached to the Wallace Decl. as Exhibit 18.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

121:22.  He also testified that the City was not required to perform new construction and alterations in strict (*i.e.*, full) compliance with ADAAG.  *Id.*  Plaintiffs also submitted the expert Declarations of Dr. Steinfeld and Gary Waters, both of whom opined that the City's policies and practices were insufficient to ensure ADAAG compliance.  ECF 186 at ¶¶ 49-59; ECF 185 at 43-45.

Plaintiffs adequately alleged their claims regarding new construction and alterations and class allegations in the FAC, and set forth specific policy-driven theories at certification as to the causes of ADAAG violations in new and altered facilities that were well supported by accompanying evidence and have held true through trial and the Phase I-III proceedings.

### b.    Joinder Is Impracticable

In its opposition to Plaintiffs' Motion for Class Certification, Defendants stated that the City "agrees that Plaintiffs have met the numerosity requirement."  ECF No. 245 at 6.  Regardless, Plaintiffs have shown that joinder is impracticable.  The Ninth Circuit has held that classes of 300 persons are sufficiently numerous that joinder is impracticable.  *A.B. v. Hawaii State Dep't. of Ed.*, 30 F.4th 828, 837 (9th Cir. 2022).  Reasonable estimates of the size of a class are permissible.  *See, e.g.*, *Wortman v. Air New Zealand*, 326 F.R.D. 549, 556 (N.D. Cal. 2018).

The City's Director of the Mayor's Office on Disability, Susan Mizner, testified at trial that approximately 150,000 San Franciscans (19.7% of the City's overall population) were people with disabilities, and that 12% to 13% of that population was comprised of people with mobility disabilities.  ECF 705 at 1592.[12]  This yields an approximate class size ranging from 18,000 to 19,500 members, and the Ninth Circuit adopted a figure of 21,000 that is consistent with same.  *Kirola*, 860 F.3d at 1169.  Defendants have never presented any evidence to the contrary, nor have Defendants shown that the Court's findings regarding numerosity are erroneous.

### c.    Commonality Is Satisfied

The record shows that "[t]here are questions of law and fact common to the class" and that "class members have 'suffered the same injury.'"  Fed. R. Civ. P. 23(a)(2); *Dukes*, 564 U.S. at 350 (citation omitted).  The commonality requirement is "construed permissively."  *Ellis v. Costco*

---

[12] Excerpts of Ms. Mizner's testimony are attached to the Wallace Decl. at Exhibit 12.

Case No. C 07-3685-AMO

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

*Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citations omitted). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)…." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (citations omitted). The Ninth Circuit has emphasized that "[a]ll questions of fact and law need not be common to satisfy the [commonality requirement]. The existence of shared legal issues with divergent factual predicates is sufficient[.]" *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020) (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012)).

Here, the record shows that the following questions of law or fact are common to the class. The answers to such these questions will not vary from class member to class member, and will "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citations omitted).

*Whether ADAAG applies to the City's parks, playgrounds, outdoor recreation areas and the pedestrian rights of way that were newly constructed or altered between January 26, 1992 and March 14, 2012.* This legal issue has been central to the litigation. At trial, and during the first appeal, the parties disputed whether ADAAG applied to such facilities. The vast majority of courts have recognized that determining which access standard applies to facilities, and whether a defendant has complied with that standard, raise common questions that support class certification. *See, e.g., Griffin v. City of Los Angeles*, No. 2:24-cv-06312-RGK-MAR, 2025 WL 1108231, at *2 (C.D. Cal. Feb. 13, 2025); *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 513-14 (N.D. Cal. 2011); *Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*, 249 F.R.D. 334, 345-46 (N.D. Cal. 2008). The City has never conceded that ADAAG applies to these categories of facilities, and now takes the position that ADAAG is unenforceable. Motion at 17. Thus, whether ADAAG applies to the City's parks, playgrounds, outdoor recreation areas and the pedestrian rights of way is an important common question of law that applies to all members of the class.

*Whether the City's policies and practices are adequate for ensuring compliance with disability access laws with respect to newly constructed or altered facilities including the requirements of ADAAG.* Whether a public entity's policies and practices are sufficient to ensure compliance with the requirements of the ADA is a common question that supports class treatment.

17

*See, e.g.*, *Powers v. McDonough*, 163 F.4th 1162, 1185 (9th Cir. 2025); *Parsons*, 754 F.3d at 681 (commonality "can be satisfied by proof of the existence of systemic policies and practices"). Courts in this Circuit have regularly granted class certification in cases that challenge the lawfulness of policies or practices regarding the accessibility of public facilities. Such cases focus on common proof regarding the policies and practices themselves, the conduct of senior officials, admissions contained in government documents, expert testimony, site inspection results from a sample of facilities, and other common evidence. *See, e.g.*, *Griffin*, 2025 WL 11082371 at *2; *Smith v. City of Oakland*, 339 F.R.D. 131, 140 (N.D. Cal. 2021) (commonality met where plaintiffs "challenge a deficient government policy or program, not the individual harm of an inaccessible sidewalk or apartment"); *Gray*, 279 F.R.D. at 512-13 (commonality met in challenge to policies and practices that were allegedly insufficient to ensure compliance with the accessibility requirements of federal law); *Californians for Disability Rights*, 249 F.R.D. at 345 (commonality met in challenge to use of improper accessibility guidelines for newly constructed or altered facilities); *Lopez v. San Francisco Unified Sch. Dist.*, C-99-3260 SI, 2003 WL 26114018, at *3 (N.D. Cal. Sept. 8, 2003) (commonality and typicality met because the plaintiffs "seek systemic policy and architectural changes").

Here, the City has written policies and procedures regarding new construction and alterations that apply to all facilities falling within the class definition. Procedure 9.8.24, "ADA & Accessibility Compliance," sets forth the City's written policy regarding compliance with the ADA for newly constructed or altered facilities. This Court found that the City's policy and practice, according to the testimony of its most senior officials regarding disability access, Mssrs. Scott and Jensen, was that "they did not use ADAAG for parks, playgrounds, outdoor recreation facilities, and the pedestrian rights of way." ECF 889 at 7.

Defendants admit that instead of using ADAAG, the City used proposed access guidelines that had not been adopted by the U.S. DOJ, and that were far less protective than ADAAG in terms of their requirements for disability access. ECF 616 at ¶¶ 53-54. For example, according to the City's own expert witnesses, the proposed guidelines used by the City permitted running slopes of

up to 12.5%, 50% steeper than the maximum of 8.3%  permitted by ADAAG for a ramp.[13]  Further, the City's standards permitted steep cross slopes of up to 5%, over twice the maximum cross slope of 2.0% permitted by ADAAG.  *Id*.  Unsurprisingly, the City's "accessibility" standards were never adopted by the DOJ, much less included in the 2010 ADAS, which permits a maximum running slope of 8.3% on ramps, 5% running slope on walks, and a maximum cross slope of 2.1% on ramps and walks.  *See* ADAS §§ 403.3, 405.2, 405.3.

In addition to the foregoing policy and practice defects, the Court found that the City's project close-out forms and procedures did not require any certification that a construction project complied with ADAAG.  ECF 889 at 7-8.  These close-out forms and procedures were identified by Mr. Jensen as the ones that were used for newly constructed or altered facilities.  ECF 707 at 1933-1935.[14]  In short, the City's deficient policies and practices were implemented.

Plaintiffs have shown that there were numerous ADAAG violations in ten of the City's newly constructed and altered facilities.  ECF 889 at 8.  These violations establish liability to the Plaintiff class.   Furthermore, as this Court, these ADAAG violations are "attributable to" Defendants' policy and practice of not using ADAAG.  Thus, the City's policy and practice of not using ADAAG provides the "glue" that holds Plaintiffs' class claims together, and that provides the common answer to the question "why was I disfavored?"  *Dukes*, 564 U.S. at 352; *Parsons*, 754 F.3d at 681.  In this case, the class members were all disfavored by the City's policy and practice of not using ADAAG.

Defendants' argument that a plaintiff can only rely on evidence established in its case-in-chief, rather than other evidence established at trial, is also wrong.  *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983) ("As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence. The trier of fact should consider all the evidence, giving it whatever weight and credence it deserves.").

*Whether the City is required to perform its new construction and alterations in a manner*

---

[13] *See* testimony of Larry Wood, ECF 707 at 2063-64 and testimony of William Hecker, ECF 711 at 2779-81.  The relevant excerpts are attached at Exhibits 16 and 17, respectively, to the Wallace Decl.
[14] The Jensen testimony is attached to the Wallace Decl. at Exhibit 15.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

*that fully complies with ADAAG.* Under governing law, ADAAG compliance is the minimum standard for accessibility for newly constructed or altered facilities. The existence of ADAAG violations in such facilities establishes liability. *See, e.g.*, *Kirola*, 860 F.3d at 1181 ("While, as explained below, focusing on overall accessibility is acceptable when evaluating *existing* facilities, avoiding 'minor variations' is exactly what ADAAG requires of new or altered facilities.). At trial, Defendants did not identify any new or altered City facilities that complied with ADAAG.

Commonality is further supported in this case by the fact that a single access standard—ADAAG—applies to all of the facilities in the class definition that were constructed or altered between January 26, 1992 and March 14, 2012. ADAAG applies to all architectural styles and provides objective minimum standards for accessibility by which facilities can be evaluated. Courts have repeatedly rejected the argument that variation in architecture, facilities, construction history or barriers defeat commonality or typicality; rather, courts have routinely granted class certification in systemic access cases challenging policies and/or practices regarding access to hundreds, or even thousands, of diverse facilities of numerous different types and ages in statewide or citywide class actions. *See, e.g.*, *Griffin*, 2025 WL 1108231 at *1-2; *Smith*, 339 F.R.D. at 140-41 (granting class certification in challenge to city's failure to provide accessible housing units); *Gray*, 279 F.R.D. at 514, 519-20 (granting class certification in case challenging inaccessibility of numerous park facilities spread across sixty miles of California coastline, and finding that commonality was satisfied based on common proofs such as defendant's access surveys and policies, expert site inspections reports and class member declarations); *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 118, 120-21 (C.D. Cal. 2008) (rejecting "unique architecture" argument and granting class certification in challenge to accessibility of 90 stores in California); *Lopez*, 2003 WL 26114018 at *3-4 (denying decertification of class of students with mobility and/or visual impairments challenging access to more than 120 different public schools in San Francisco).

Defendants' reliance on the *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890 (3d Cir. 2022), is misplaced. As an initial matter, that case involved a national class. *Id.* at 901. It also involved existing facilities constructed prior to the effective date of the ADA, and therefore did not involve any written policy about ADAAG compliance in new or altered facilities or an admitted practice of

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

following unauthorized proposed guidelines instead of ADAAG. *Id.* at 902. Further, the defendant company permitted local discretion by stores regarding the maintenance of accessibility features. Thus, there was discretionary localized decisionmaking about access compliance, not centralized decisionmaking about access standards for all facilities as in the instant case. *Id.* at 901-02. And even though the plaintiffs sought a class with over four hundred stores in twenty-nine states, they only presented evidence about stores in Pennsylvania. *Id.* at 902.

*Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150 (N.D. Cal. 2023), is also readily distinguishable. In *Stiner*, the court found that the defendant did not have any written policies or centralized practices regarding disability access compliance, but that cases like this one which *did* challenge such policies and practices were appropriate for class certification. *Id.* at 1191.

Similarly, *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*, 867 F.3d 1093 (9th Cir. 2017), did not involve any challenge to specific written policies and practices regarding the defendant's failure to use ADAAG for particular types of new or altered facilities. Rather, the plaintiffs challenged the defendant's "unwritten, de facto policy of non-compliance that resulted in widespread ADA violations" by its contractors. *Id.* at 1104. In addition, unlike this case, the corporate defendant did not actually operate and manage the hotels at issue. *Id.* at 1105. Further, as in *Stiner*, the court found that the defendant's decisionmaking regarding access compliance was decentralized and took place at the hotel-level, not the corporate level. That is the opposite of this case in which senior City officials determined the access standards that were to be used (or not) for all facilities falling within the class definition.

Moreover, Defendants puzzlingly assert that there is no private right of action for the new construction and alteration claims in this case, and that this further negates a finding of commonality. Motion at 17. Defendants previously made this argument in 2011 in the City's Post-Trial Brief (ECF 614 at 4-6) but then abandoned it by failing to raise it in any of the remand proceedings. In any event, this argument fails to undermine commonality because whether there is a private right of action is a common question that applies across the class and can be resolved in one stroke for all class members. Defendants present no authority holding that there is no private right of action under 28 C.F.R. § 35.151 to enforce ADAAG violations in newly constructed or altered facilities, and

every Court of Appeals that has looked at the issue has found that there is one. *See, e.g., Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc); *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004); *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 859 (10th Cir. 2003).

*Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016), is inapposite as the majority applied the existing facility approach, with the concurrence noting that the plaintiff failed to make out a new construction claim because she did not identify "what areas of Cadillac Place have been renovated." 812 F.3d at 535-36 (majority); *id* at 541 (concurrence). Thus, the majority opinion in *Babcock* did not discuss or apply 28 C.F.R. § 35.151, which imposes more demanding and specific standards on newly constructed or altered public facilities, as opposed to older existing facilities that were built before 1992 and are covered by 28 C.F.R. § 35.150 (program access).

### d.     Typicality and Adequacy Are Met

Rule 23(a)(3) requires that the claims of the class representative be typical of those of the class. "We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Under Rule 23(a)(4), class representatives are adequate if they do not have "any conflicts of interest with other class members" and if they will "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998).

Ms. Kirola satisfies typicality and adequacy. First, she has encountered barriers in the City's parks, outdoor recreation areas, libraries and the pedestrian rights of way, and has also been deterred from using City facilities because of such barriers. *Kirola*, 860 F.3d at 1174-75. While Defendants contend that she has not personally encountered any ADAAG violations, she uses the Main Library and is at risk of encountering ADAAG violations therein. Moreover, she seeks the same injunctive relief as the class with respect to the other newly constructed or altered facilities that fall within the class definition.     Further, she and the class members have encountered, or are at risk of encountering, ADAAG violations in the City's facilities that are attributable to the City's policy and practice of not using ADAAG for parks, playgrounds, outdoor recreational areas and the pedestrian

22

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

rights of way.  ECF 889 at 6, 7-8.  Accordingly, Ms. Kirola has suffered injuries that are "similar" to those of the class members as a result of the same course of conduct by the City.  This meets the "permissive" standard for typicality.  *See, e.g.*, *Gonzalez*, 975 F.3d at 809; *Armstrong*, 275 F.3d at 869.

Defendants argue that Ms. Kirola's claims are atypical and that she is an inadequate representative because she has not personally encountered the barriers established at trial and because her individual claim failed.  Motion at 19-21.  They are wrong.  To prevail on the merits of a claim for injunctive relief under Title II, the plaintiff must show: "(1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability."  *Sheehan v. City and Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014).  "An individual is excluded from participation in or denied the benefits of a public program if 'a public entity's facilities are inaccessible to or unusable by individuals with disabilities.' 28 C.F.R. § 35.149."  *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014).  To be accessible, new or altered facilities must comply with ADAAG.  *Id.* at 986.

Ms. Kirola satisfied all of the elements of her claim and established her entitlement to equitable relief.  She established that she is a person with a mobility disability who seeks to use the Main Library, that the Library is a newly constructed facility which contains ADAAG violations, and that she is presently deterred from using it because of its inaccessibility.  *See supra* at II.C; ECF 889 at 8.  Nothing more is required to establish discrimination under the ADA and to obtain injunctive relief requiring the removal of ADAAG violations.[15]  *See, e.g.*, *Pickern v. Holiday Quality*

_____

[15] Even if Ms. Kirola's individual claim for injunctive relief had failed (which it did not), that would have no legal significance to the separate issue of whether the class is entitled to injunctive relief. It is well-settled that the failure of the named plaintiff's claim in a certified class action is irrelevant to whether the class established liability, or to whether the class is entitled to relief.  *See, e.g.*, *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 406 n.12 (1977); *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 752-57 (1976); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 987-88 (9th Cir. 2007) (en banc).

23                                    Case No. C 07-3685-AMO

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

*Foods Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) (plaintiffs not required to encounter barriers in order to obtain relief).

Moreover, it is well-settled that a disabled plaintiff, such as Ms. Kirola, may rely upon expert testimony regarding unencountered barriers to establish liability and obtain injunctive relief requiring the removal of unencountered barriers that were proven through expert testimony. *See, e.g.*, *Chapman*, 631 F.3d at 943-44, 947-51; *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044, 1047 (9th Cir. 2008). This rule applies regardless of whether the plaintiff has personal knowledge of the barriers identified by their expert. *Id.*

Ms. Kirola seeks the same relief as the members of the Plaintiff class and does not have any conflicts with the unnamed class members. She has standing and testified at trial. *Kirola*, 860 F.3d at 1174-75. She prevailed on her individual claim against the City and has already obtained substantial injunctive relief on behalf of the class as a whole. She has faithfully represented the class for 19 years. She is plainly a typical and adequate class representative.

e.    **Plaintiffs' Claims Are Suitable for Certification Under Rule 23(b)(2)**

Class certification under Rule 23(b)(2) is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The primary role of this provision has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686. Classwide injury is not required for certification under Rule 23(b)(2), and only the named plaintiff need show Article III injury, not the class members. *See, e.g.*, *Olean*, 31 F.4th at 682, n.32 (collecting authorities).

Plaintiffs have sought declaratory and injunctive relief that is indivisible and applies to all members of the Plaintiff class, as required by governing law. *Dukes*, 564 U.S. at 360. The Ninth Circuit has approved the types of class relief granted herein (changes in policies, access survey and remedial plan) in similar cases under the ADA. *See, e.g., Armstrong*, 275 F.3d at 858-59, 879. Further the removal of ADAAG violations from public facilities benefits the entire class. Plaintiffs do not seek any individual injunctions on behalf of Ms. Kirola or the class members. The civil rights

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING

claims herein are precisely the type that Rule 23(b)(2) was intended to address.

**f.    The Certified Class Is Not an Improper Fail-Safe Class**

Defendants have never previously argued that the Court certified a fail-safe class and may not do so now.  A fail-safe class "is defined in way that precludes membership unless the liability of defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). Here, the class definition does not constitute a "fail-safe" class as it includes "[a]ll persons with mobility disabilities who are ***allegedly*** being denied access" to the City's facilities.  ECF 285 at 6 (emphasis added).  Class members would not drop out of the class in the event that their claims failed as they would still "allege" that they were denied access.  In any event, the class *did* prevail, *i.e.*, it has already been established by this Court that at least some of the City's newly constructed or altered facilities violated ADAAG and the ADA, and that the City was liable for systemic injunctive relief.  *Kirola*, 2023 WL 2851368 at *1; ECF 885 at 9-12.  Accordingly, the issue of a "fail-safe" class is not presented.

## V.    OBJECTION TO POST-TRIAL EVIDENCE

Plaintiffs object to the admission and consideration of any evidence of alleged policy changes that occurred after trial, including but not limited to Procedure 10.02.21.  *See* motion at 18. Any such evidence is outside the trial record, is hearsay, lacks foundation, and must be excluded. Defendants have repeatedly maintained that this case should be decided based on the existing trial record.  *See, e.g.,* ECF 811 at 27.  When Defendants previously attempted to make an end run around this evidentiary limitation by tendering the City's "new" policy (from *2014*) with the parties' December 2025 Joint Case Management Conference Statement, the Court struck it from the record. *See* ECF 905-907.  The Court should again exclude any evidence of alleged policy changes that occurred after trial.

## VI.    CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court deny Defendants' motion, or alternatively, defer any decision on decertification until Defendants' appeal has been resolved.

Dated: April 17, 2026

/s/ *Guy B. Wallace*
Guy B. Wallace
Attorneys for Plaintiffs

25

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system on April 17, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

Dated: April 17, 2026                /s/ *Guy B. Wallace*
                                       Guy B. Wallace

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN INDICATIVE DECERTIFICATION RULING