# EXHIBIT 1

No. 25-6844

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

IVANA KIROLA, et al.,

*Plaintiff-Appellee*

v.

THE CITY AND COUNTY OF SAN FRANCISCO, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:07-cv-03685-AMO
Hon. ARACELI MARTÍNEZ-OLGUÍN

---

### APPELLANTS' OPENING BRIEF

---

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
TARA M. STEELEY
Chief of Appellate Litigation

ELAINE M. O'NEIL
ARI A. BARUTH
STEVEN A. MILLS
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, California 94102-5408
Telephone: (415) 554-4704 (Mills)
Email: Steven.Mills@sfcityatty.org

*Attorneys for Appellants*
CITY AND COUNTY OF SAN
FRANCISCO, ET AL.

Appellants' Opening Brief
Case No. 25-6844

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ..............................................................................................1

JURISDICTIONAL STATEMENT .................................................................4

STATEMENT OF ISSUES ..............................................................................5

RELEVANT AUTHORITIES ..........................................................................6

STATEMENT OF THE CASE .........................................................................6

    I.    The City Has A Robust System For ADA Compliance In Its RecPark System. ...............................................................................6

        A.    The RecPark System Is Expansive. ...........................................6

        B.    The City Has Robust Policies For New Or Altered Construction. ................................................................................8

    II.    Plaintiffs' Sprawling Claims. ...............................................................9

    III.    The District Court Certified And Maintained A Sprawling Class. ...................................................................................................11

    IV.    A Prolonged Trial And Post-Trial Proceedings Resulted From Plaintiffs' Failure To Justify Class-Wide Relief. ...............................13

    V.    The District Court's Findings And Appeal In *Kirola-I* ......................14

    VI.    The First Remand And Appeal In *Kirola-II* .......................................15

    VII.    The Second Remand And Grant Of Systemic Injunctive Relief. .......16

SUMMARY OF THE ARGUMENT .............................................................19

STANDARDS OF REVIEW ..........................................................................26

ARGUMENT ...................................................................................................27

    I.    The District Court Exceeded Its Remand Instructions. ......................27

    II.    The District Court Lacked Subject Matter Jurisdiction To Order Written Policy Changes. .....................................................................30

    III.    The District Court Improperly Awarded Relief For Policies And ADAAG Violations For Which Plaintiffs Lacked Standing. ...............................................................................................32

    IV.    The District Court Abused Its Discretion In Certifying And Maintaining The Class. ........................................................................38

A.   The District Court Conducted No Rigorous Analysis. ..............38

B.   The District Court Certified An Impermissible Fail-Safe
     Class. ...................................................................................41

C.   The District Court Erroneously Found Commonality. .............41

D.   Kirola Is Not An Adequate Or Typical Class
     Representative. .....................................................................48

E.   Kirola Failed To Establish Numerosity. ................................54

F.   Rule 23(b)(2) Certification Was Improper. ............................54

V.   The District Court Erroneously Determined That Systemic
     Relief Was Appropriate And Issued Overbroad Relief. ...................55

A.   Standalone ADAAG Violations Do Not Violate Title II..........55

B.   The District Court's Identification Of ADAAG
     Violations Are Clearly Erroneous...........................................58

C.   The Evidence Only Showed Isolated Violations
     Impacting Class Members.......................................................63

D.   The District Court Erred When It Found Violations Were
     Attributable To Deficient Policies and Practices.....................69

VI.  The District Court Erred In Its Application Of The Equitable
     Factors. ........................................................................................75

A.   The District Improperly Found Imminent Irreparable
     Harm.....................................................................................75

B.   The District Court Erred In Weighing The Hardships and
     Public Interest. .....................................................................78

VII. The District Court's Policy, Survey, And Remediation Orders
     Are Overbroad And Vague. ............................................................80

VIII. This Court Should Overrule Case Law Holding That Disparate
      Impact Theories Are Cognizable.....................................................82

CONCLUSION....................................................................................................82

STATEMENT OF RELATED CASES .................................................................84

CERTIFICATE OF COMPLIANCE...................................................................85

CERTIFICATE OF SERVICE ...........................................................................86

# TABLE OF AUTHORITIES

**Federal Cases**

*A.B. Haw. v. State Dep't of Education*
    30 F.4th 828 (9th Cir. 2022) .................................................................54

*A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*
    605 U.S. 335 (2025) ...........................................................................82

*Alexander v. Sandoval*
    532 U.S. 275 (2001) ...........................................................................82

*Allen v. Ollie's Bargain Outlet, Inc.*
    37 F.4th 890 (3d Cir. 2022) .................................................. 22, 44, 54

*Already, LLC v. Nike, Inc.*
    568 U.S. 85 (2013) .............................................................................31

*Am. Express Co. v. Italian Colors Rest.*
    570 U.S. 228 (2013) ...........................................................................27

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997) ...........................................................................49

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*
    568 U.S. 455 (2013) ...........................................................................39

*Armstrong v. Davis*
    275 F.3d 849 (9th Cir. 2001) ........................................................ *passim*

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...........................................................................60

*B.K. v. Snyder*
    922 F.3d 957 (9th Cir. 2019) ..............................................................63

*Babcock v. Michigan*
    812 F.3d 531 (6th Cir. 2016) ..............................................................43

*Bates v. UPS*
    511 F.3d 974 (2007) .............................................................................4

*Black Lives Matter L.A. v. City of Los Angeles*
   113 F.4th 1249 (9th Cir. 2024)....................................................................38

*Blyden v. Mancusi*
   186 F.3d 252 (2d Cir. 1999) ......................................................................27

*Booth v. Lazzara*
   164 F.4th 581 (6th Cir. 2026)....................................................................56

*Burlington N.R.R. Co. v. Dep't of Revenue*
   934 F.2d 1064 (9th Cir. 1991) ...................................................................78

*California Disability Rights, Inc. v. California Department of Transportation*
   249 F.R.D. 334 (N.D. Cal. 2008) ....................................................... 64, 65

*Chapman v. Pier 1 Imps. (U.S.), Inc.*
   631 F.3d 939 (9th Cir. 2011) ............................................................. 34, 56

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*
   467 U.S. 837 (1984) ............................................................................ 3, 23

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1983) ............................................................................ 33, 70

*Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*
   867 F.3d 1093 (9th Cir. 2017)....................................................................46

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013) .......................................................................... 33, 37

*Daubert v. Lindsay Unified Sch. Dist.*
   760 F.3d 982 (9th Cir. 2014) ............................................................. 43, 58

*Davidson v. O'Reilly Auto Enters., LLC*
   968 F.3d 955 (9th Cir. 2020)......................................................................47

*Dep't of Ed. v. Brown*
   600 U.S. 551 (2023) ...................................................................................37

*Dukes v. Wal-Mart Stores, Inc.*
   603 F.3d 571 (9th Cir. 2010)......................................................... 27, 41, 42, 64

*eBay Inc. v. MercExchange, LLC*
  547 U.S. 388 (2006) ...........................................................................................75

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970 (9th Cir. 2011) ..............................................................................48

*Firth v. United States*
  554 F.2d 990 (9th Cir. 1977) ..............................................................................27

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*
  98 F.4th 1180 (9th Cir. 2024) .............................................................................80

*Food & Drug Admin. v. All. for Hippocratic Med.*
  602 U.S. 367 (2024) ...........................................................................................37

*Freedom from Religion Found., Inc. v. Chino Valley Unified Sch. Dist.*
  *Bd. of Educ.*
  896 F.3d 1132 (9th Cir. 2018) ............................................................................29

*Galvez v. Jaddou*
  52 F.4th 821 (9th Cir. 2022) ...............................................................................26

*Gen. Tel. Co. of Sw. v. Falcon*
  457 U.S. 147 (1982) ..................................................................................... 40, 48

*Gratz v. Bollinger*
  539 U.S. 244 (2003) ..................................................................................... 49, 50

*Halliburton Co. v. Erica P. John Fund, Inc.*
  573 U.S. 258 (2014) ...........................................................................................39

*Hertz Corp. v. Friend*
  559 U.S. 77 (2010) .............................................................................................60

*Hodgers-Durgin v. De La Vina*
  199 F.3d 1037 (1999) ............................................................................. 60, 76, 77

*In re Petrobras Sec. Litig.*
  862 F.3d 250 (2d Cir. 2017) ...............................................................................27

*Kim v. Allison*
  87 F.4th 994 (9th Cir. 2023) ...............................................................................48

*Kirola v. City & Cnty. of San Francisco*
74 F. Supp. 3d 1187 (N.D. Cal. 2014)..........................................................59

*Kirola v. City & Cnty. of San Francisco*
860 F.3d 1164 (2017) ............................................................ *passim*

*Kirola v. City & Cnty. of San Francisco*
No. 21-15621, 2023 WL 2851368 (9th Cir. Apr. 10, 2023) ...................... *passim*

*Kohler v. Presidio Int'l, Inc.*
782 F.3d 1064 (9th Cir. 2015)..................................................................61

*Langer v. Kiser*
57 F.4th 1085 (9th Cir. 2023).................................................................33

*Lewis v. Casey*
518 U.S. 343 (1996) ........................................................... 4, 63, 66, 69

*Londberg v. City of Riverside*
571 F.3d 846 (9th Cir. 2009)................................................... 25, 71, 72

*Loper Bright Enters. v. Raimondo*
603 U.S. 369 (2024) ............................................................... *passim*

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992) ........................................................... 32, 33, 36

*Lytle v. Nutramax Labs., Inc.*
114 F.4th 1011 (9th Cir. 2024)...............................................................38

*M.S. v. Brown*
902 F.3d 1076 (9th Cir. 2018)................................................... 22, 32

*Mazzei v. Money Store*
829 F.3d 260 (2d Cir. 2016) ..................................................................81

*Melendres v. Arpaio*
784 F.3d 1254 (9th Cir. 2015)................................................................50

*Meredith v. Oregon*
321 F.3d 807 (9th Cir. 2003)....................................................... 5, 22

*Mielo v. Steak 'N Shake Operations, Inc.*
  897 F.3d 467 (3d Cir. 2018) ....................................................39

*Miles v. Kirkland Stores Inc.*
  89 F.4th 1217 (9th Cir. 2024) ........................................... 39, 47

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*
  31 F.4th 651 (9th Cir. 2022) ............................................. 39, 41

*Paige v. California*
  102 F.3d 1035 (9th Cir. 1996) ...................................................5

*Parsons v. Ryan*
  754 F.3d 657 (9th Cir. 2014) ............................................. 42, 43

*Payan v. L.A. Cmty. College Dist.*
  11 F.4th 729 (9th Cir. 2021) ...................................................82

*Rosebrock v. Mathis*
  745 F.3d 963 (9th Cir. 2014) ............................................. 22, 31

*Sali v. Corona Reg'l Med. Ctr.*
  909 F.3d 996 (9th Cir. 2018) ....................................... 38, 40, 53

*Schmidt v. Lessard*
  414 U.S. 473 (1974) ..............................................................80

*Sierra Forest Legacy v. Sherman*
  646 F.3d 1161 (9th Cir. 2011) ................................................26

*Silver Sage Partners, LTD v. City of Desert Hot Springs*
  251 F.3d 814 (9th Cir. 2001) ..................................................78

*Simon v. E. Ky. Welfare Rights Org.*
  426 U.S. 26 (1976) ...............................................................36

*Small v. Allianz Life Ins. Co. of N. Am.*
  122 F.4th 1182 (9th Cir. 2024) ..................................... 22, 48, 53

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016) ........................................................ 33, 35

*Stiner v. Brookdale Senior Living, Inc.*
  665 F.Supp.3d 1150 (N.D. Cal. 2023) ....................................................... 22, 44

*Stiner v. Brookdale Senior Living, Inc.*
  No. 17-cv-03962-HSG, 2024 WL 5112480 (N.D. Cal. Dec. 13, 2024) ..............56

*Strong v. Valdez Fine Foods*
  724 F.3d 1042 (9th Cir. 2013)...................................................................60

*TransUnion LLC v. Ramirez*
  594 U.S. 413 (2021) ...................................................................................32

*Trump v. CASA, Inc.*
  606 U.S. 831 (2025) ................................................................................ 50, 53

*United States v. Sanchez-Gomez*
  584 U.S. 381 (2018) ..................................................................................37

*Van v. LLR, Inc.*
  61 F.4th 1053 (9th Cir. 2023)...................................................................26

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) ................................................................................ *passim*

*Whitaker v. Tesla*
  985 F.3d 1173 (9th Cir. 2021)...................................................................51

*Willis v. City of Seattle*
  943 F.3d 882 (9th Cir. 2019).....................................................................43

*Winter v. NRDC, Inc.*
  555 U.S. 7 (2008) ................................................................................... 78, 80

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*
  231 F.3d 1215 (9th Cir. 2000)...................................................................52

**Federal Statutes**
28 U.S.C.
  § 1292(a)(1) .............................................................................................4

29 U.S.C.
  § 794 [Rehabilitation Act of 1973].................................................. 1, 6, 10, 82

**42 U.S.C.**
 § 1983 ................................................................................................10, 11
 § 12132 [Americans With Disabilities Act].................................................*passim*

**Rules**
Fed. R. Civ. P.
 Rule 23................................................................................ 3, 27, 38, 39
 Rule 23(a) ................................................................................ 22, 49
 Rule 23(a)(3)....................................................................................48
 Rule 23(a)(4)....................................................................................48
 Rule 23(b)(2) ................................................................ 4, 11, 12, 23, 54
 Rules 23(c)(1)(C)..............................................................................13
 Rules 65(d) .....................................................................................80

**Regulations**
28 C.F.R.
 § 35.151(a)......................................................................................59
 § 35.151(b)......................................................................................59
 § 35.151(c).................................................................................. 31, 44
 § 35.151(c)(1) .................................................................................44
 § 35.151(c)(2) .................................................................................44
 Part 36, App. A................................................................................23
 Part 36, App. D................................................................................23
 Part 36, App. D, § 4.........................................................................45

**San Francisco Statutes, Codes, & Ordinances**
S.F. Park Code § 3.02 ..........................................................................37

**Other References**
3 Newberg & Rubenstein on Class Actions § 7:37 (6th ed. 2025).........................38

## INTRODUCTION

The sole class representative, Ivana Kirola ("Kirola"), commenced this case in 2007 on behalf of a certified class of individuals with mobility impairments alleging that the City and County of San Francisco and its elected officials (the "City") discriminate by failing to remove access barriers in parks, libraries, swimming pools, curb ramps, sidewalks, crosswalks, and any other outdoor designated pedestrian walkways. Nearly two decades later, all that remains is a theory that the Recreation and Park Department ("RecPark") violates the Americans With Disabilities Act ("ADA"), Rehabilitation Act of 1973, and analogous state laws by retaining access barriers in violation of the ADA Accessibility Guidelines from 1991 ("ADAAG") in new or altered constructions. Plaintiffs' claims challenging policies, program access, and the public-rights-of-way have been conclusively decided against them.

As of trial in 2011, RecPark maintained 220 parks spanning 4,200 acres, with 400 structures. Features include children's play areas, recreation centers, clubhouses, neighborhood parks, open space facilities, athletic fields, natural areas, and more. RecPark spent hundreds of millions of dollars on renovations and ADA compliance. Trial established that the City's detail-oriented employees understand accessibility and that sophisticated and robust policies and procedures ensure ADA

Appellants' Opening Brief                    1
Case No. 25-6844

compliance in new or altered construction. Plaintiffs never appealed these now binding findings.

Federal courts have limited jurisdiction and must exercise restraint when enjoining local governments. Unfortunately, a new judge assigned to the litigation post-trial has disregarded these maxims by giving Plaintiffs a complete do-over. The district court has resurrected resolved claims, found ADAAG violations based on speculative testimony for barriers that impacted no class member, and issued sweeping systemic injunctive relief unsupported by the trial record.

This overbroad relief requires the City to adopt Plaintiffs' preferred written policies with no showing that the City's *current* policies are defective. Of course, the trial in 2011 included no evidence about current policies in 2026. Nonetheless, the district court did not consider the City's current policies, which are lawful and consistent with the City's longstanding commitment to access. Instead, the district court issued forward-looking injunctive relief based on misperceptions of policies from 2011. In addition, the district court improperly shifted the burden to the City to survey all RecPark facilities constructed or altered since 1992 for hypothetical ADAAG violations Plaintiffs failed to prove—even though ADAAG was superseded by March 15, 2012—and develop a remediation plan for any hypothetical violations of that now-superseded standard. No carveouts are included for facilities the City prevailed on at trial. And since *Loper Bright Enters. v.*

*Raimondo*, 603 U.S. 369 (2024) overruled *Chevron* deference, violation of ADAAG is no longer a per se ADA violation. This sweeping relief based on a handful of isolated ADAAG violations—which the City contests—is an abuse of discretion that turns equitable restraint on its head. This Court should intervene and reverse.

Notably, all of this was done without jurisdiction. This Court was clear that Plaintiffs' standing is narrow—they only have standing for facilities the Plaintiffs used. Plaintiffs only established that class members used seven parks. No evidence was presented that class members will use any other facility, let alone the recreation centers the district court relied upon for systemic relief. Because Plaintiffs abandoned any policy challenge on their first appeal, the district court erred resurrecting it. Even then, the district court lacked jurisdiction to find written policies deficient 14-years after trial since regulations and policies have been superseded, mooting Plaintiffs' policy grievances.

Systemic relief also rests on a fiction that class certification is appropriate. The City objected to certification on numerous grounds, including that litigating individual access barriers is a misuse of Federal Rule of Civil Procedure 23. Nevertheless, the district court conducted no rigorous analysis and deferred essential Rule 23 findings until trial. But certification is doomed because it rests on this Court's commonality standard that the Supreme Court overruled in *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("*Wal-Mart*"). Aware of the change, the district court has ignored it. Access barrier classes are poor candidates for certification because facilities have thousands of disparate measurements, and ADAAG regulates hundreds of features. There is no common glue. Without that glue, adequacy, typicality, and the appropriateness of injunctive relief under Rule 23(b)(2) disintegrate. With no proper class, systemic relief is far too broad. Kirola has never encountered any ADAAG violation. Complete relief as to her is no relief at all.

Reviewing this litigation in context, systemic relief is inappropriate. While the district court found disparate ADAAG violations at a small handful of recreational centers and parks, it ignored the claims Plaintiffs failed to prove. Plaintiffs made thousands of access measurements spanning dozens of facilities. Thus, the small slice of contested violations pales in comparison. Plaintiffs established two violations that impacted class members. But two violations are not enough to justify systemic relief. *Lewis v. Casey*, 518 U.S. 343, 359 (1996). With nothing else to redress, this Court should reverse and direct judgment to be entered.

## JURISDICTIONAL STATEMENT

Jurisdiction exists pursuant to 28 U.S.C. § 1292(a)(1) over "[i]nterlocutory orders . . . granting . . . injunctions." *See, e.g.*, *Bates v. UPS*, 511 F.3d 974, 984 (2007) (exercising jurisdiction over "order granting a permanent injunction"). On

September 29, 2025, the district court granted Plaintiffs' motion for systemic injunctive relief, and the City filed a timely notice of appeal on October 27, 2025. 1-ER-2-13; 32-ER-7338-7352. Thus, the Court has jurisdiction, including over "the merits of the district court's determination of liability." *Bates*, 511 F.3d at 984. The City amended its notice on November 21, 2025, to include the class certification order. 32-ER-7313-7337. "[B]ecause certification of a class action provides the basis for granting relief on a class-wide basis, an injunction granting class-wide relief cannot be affirmed without also upholding the class certification order." *Meredith v. Oregon*, 321 F.3d 807, 814 (9th Cir. 2003); *Paige v. California*, 102 F.3d 1035, 1039 (9th Cir. 1996) (holding certification "is inextricably bound up with" class-wide relief).

## STATEMENT OF ISSUES

1. Did the district court exceed its remand instructions?

2. Did the district court have subject matter jurisdiction to order changes to superseded policies?

3. Does the class have standing to challenge all RecPark facilities?

4. Should this Court's standard for reviewing orders granting certification be overruled?

5. Did the district court err in certifying the class?

6.     Are this Court's prior opinions concerning strict compliance with ADAAG irreconcilable with *Loper Bright* such that reversal is warranted?

7.     Did the district court err when it found ADAAG violations, deficiencies with City policies and practices, and ordered broad and vague systemic relief?

8.     Did the district court err when considering the factors for equitable relief?

9.     Is disparate impact cognizable under the ADA and Rehabilitation Act?

## RELEVANT AUTHORITIES

Relevant authorities are set out in a separate addendum.

## STATEMENT OF THE CASE

**I.     The City Has A Robust System For ADA Compliance In Its RecPark System.**

**A.     The RecPark System Is Expansive.**

The RecPark program encompasses "220 parks spanning 4,200 acres of park space and 400 structures (i.e., clubhouses, recreation centers, etc.)." 1-ER-98. In 2011, the City provided 43 accessible recreation centers and clubhouses, with more set for renovation. 1-ER-172-173.

RecPark spent over $500 million on facility improvements between 2000 and trial. 1-ER-108. Each project includes improvements to ensure compliance

with access regulations. 1-ER-108-109. The Mayor's Office on Disability

("MOD") maintained "blue dot" maps depicting the geographic distribution of

facilities providing programs in an accessible setting. *E.g.*, 31-ER-7086-7103.

"Blue dots signify a building that had undergone new construction or alterations,

based on a post-2000 capital improvement project." 1-ER-100 (cleaned up). "[A]

blue dot indicates only that the facility offers some accessible program or

programs, and not necessarily that every physical element of the facility is

compliant with disability access regulations." *Id*. Thus, a blue dot does not mean

that every physical element required compliance with access regulations because

not every aspect of a blue dot facility was necessarily constructed or altered after

1992.

RecPark inspects facilities daily for safety hazards or other issues that might

impact access. 1-ER-105-106; 31-ER-7194-7195. Features such as pathways,

playgrounds, athletic courts, and trees are regularly inspected to promote

accessibility by focusing on path of travel issues, operability of gates/latches, and

removal of barriers such as low-hanging tree limbs. 1-ER-106-107. RecPark also

conducts a semi-annual accessibility survey using a detailed checklist and corrects

features that may affect physical access. 1-ER-106; 31-ER-7184-7193.

B.     **The City Has Robust Policies For New Or Altered Construction.**

The City has "sophisticated and robust" policies and procedures to ensure ADA compliance in its new or altered construction. 1-ER-85; 30-ER-6901-6902, 6924-6938; 31-ER-7104-7195. It used "ADAAG as its standard for ensuring that newly constructed or altered facilities comply with federal access laws." 1-ER-101. "Since June 22, 1998, the City has required that all projects involving new construction or alterations . . . undergo review by City staff to ensure compliance with disability access laws." 1-ER-101; 25-ER-5805-5811; 31-ER-7171. "City staff members regularly meet with architectural teams during the planning and design stage, review construction plans before permits are issued, visit sites during the construction process, and conduct post-construction field inspections to ensure access compliance." 1-ER-101.

The City's Department of Public Works ("DPW") Disability Access Coordinator and MOD's Access Compliance Officers complete access reviews for RecPark's capital improvement projects consistent with their sophisticated and robust policies. 1-ER-109. DPW "adopted and implemented Procedure 9.8.24 [in January 2010], which is a written accessibility compliance procedure that sets forth the review process for all projects designed by or contracted through DPW to ensure that all construction plans and completed facilities meet applicable access regulations and City standards." 1-ER-101. The "DPW Disability Access

Appellants' Opening Brief                        8
Case No. 25-6844

Coordinator [must] conduct: (1) accessibility reviews during the planning and design of DPW-managed City projects, which includes the review of construction drawings and plans prior to submission to the Department of Building Inspection ["DBI"]; (2) accessibility reviews during construction; and (3) post-construction inspections for disability access compliance before the building is certified for occupancy." 1-ER-102; 31-ER-7176-7183; 25-ER-5812-5829, 5837-5839. "Publicly-funded projects reviewed by MOD undergo similar access reviews." 1-ER-102; 30-ER-6924-6938; 31-ER-7171. DBI "will not issue a building permit, or certify a project as complete, without written approval from MOD's compliance officers for each stage of design and construction." 1-ER-102. "[T]he City staff members responsible for design and construction review of publicly-funded projects are well qualified, competent, detail-oriented professionals that really understand the accessibility requirements of the ADA." 1-ER-102 (cleaned up). Indeed, the City's policy expert William Hecker testified that the City has "the best" polices he has seen in his 21 years—including City training on accessibility and construction inspections for accessibility compliance. 29-ER-6619-6630. Plaintiffs offered no related testimony.

## II.    Plaintiffs' Sprawling Claims.

Class counsel filed this lawsuit on July 17, 2007. 16-ER-3862-3883. On June 24, 2010, Kirola filed the operative First Amended Complaint ("FAC"),

"seek[ing] declaratory and injunctive relief against the Defendants for severely limiting Plaintiffs' access to the City's facilities . . . by knowingly refusing to eliminate architectural and programmatic barriers[.]" 10-ER-2134. While Kirola alleged multiple common questions of law and fact, not one concerned a policy related to new or altered construction. 10-ER-2143-2144. Instead, the FAC complained that the City's ADA transition and self-evaluation plans violated regulations. 10-ER-2133. Years into litigation, Plaintiffs were "informed and believed" the City "failed to make their facilities readily accessible." 10-ER-2145. They alleged claims under the ADA, Rehabilitation Act, Section 1983, and state disability laws, primarily focused on transition and self-evaluation plans, the failure to maintain accessible features, and ADAAG compliance. 10-ER-2144-2149. They sought removal of "all disability access barriers" and sought no relief related to policies other than self-evaluation and transition plans. 10-ER-2150-2151.

After a 14-day bench trial in 2011 and two appeals, the City has prevailed on theories concerning City policies, including transition and self-evaluation plans, maintenance, grievance, and safety policies, RecPark's website, program access, and new or altered construction in pools, libraries, and the public-rights-of-way. *See generally Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164 (2017) ("*Kirola-I*"); *Kirola v. City & Cnty. of San Francisco*, No. 21-15621, 2023 WL

2851368 (9th Cir. Apr. 10, 2023) ("*Kirola-II*"); 1-ER-25-189. All that remains is a claim that, despite the City's robust policies, barriers in RecPark's new or altered construction violate ADAAG and must be removed.[1]

## III.    The District Court Certified And Maintained A Sprawling Class.

Two-and-a-half years into litigation, Kirola filed a sprawling motion for class certification. 15-ER-3775-3806.[2] The City opposed because the fact-intensive adjudication of thousands of alleged barriers failed to satisfy commonality, adequacy, typicality, and Rule 23(b)(2). 10-ER-2171-2234. At the hearing, the district court erroneously believed that the motion was largely unopposed before it began issuing oral rulings. 5-ER-1189-1190. The City re-raised its objections to adjudicating individual access barriers. 5-ER-1236-1237. Notably, the district court struck references to certain facilities from the class definition because adjudicating individual facilities is improper (5-ER-1237-1243) and acknowledged it is "a little odd" to order remediation of facilities with no proof of a violation at trial. 5-ER-1243-1246. With respect to the City's concerns that it would be hard-pressed to understand what issues to focus on for trial, the district court punted to trial, recognizing "I don't know what's going to be asked. I don't know what the record

---

[1] A Section 1983 claim was not certified and has not been prosecuted.

[2] Plaintiffs filed a voluminous record containing complete copies of all depositions and dozens of exhibits they did not cite in support of a new or altered construction claim. The ER provides excerpts cited in Plaintiffs' motion for this claim.

– how the record is going to be developed and what the law says about what's available for the court to consider. We will have to deal with it at that time." 5-ER-1246-1248. It then ordered the parties to submit an order reflecting the oral rulings. 5-ER-1259-1260.

On June 7, 2010, the district court issued its written order certifying Kirola to represent the class of:

> All persons with mobility disabilities who are allegedly being denied access . . . due to disability access barriers to the following programs, services, activities and facilities owned, operated and/or maintained by the City and County of San Francisco: parks, libraries, swimming pools, and curb ramps, sidewalks, crosswalks, and any other outdoor designated pedestrian walkways in the City and County of San Francisco.

1-ER-215. The district court concluded that Kirola satisfied commonality based on *allegations* of a pattern and practice of discrimination. 1-ER-211. No policies or practices were defined. The district court declined to consider standing and made no findings as to the relief sought. Nevertheless, the district court found Rule 23(b)(2) was satisfied. 1-ER-211-213.

Before trial, the City sought to exclude evidence of alleged violations at facilities outside of the class definition. 9-ER-2128. As to the term "parks," the City argued "parks" cannot include all RecPark facilities since that impermissibly injects individual issues into the case. *Id.* Even though modifications can be made

before final judgment, the district court held "the motion is untimely[.]" 1-ER-205-206; Fed. R. Civ. Proc. 23(c)(1)(C).

### IV. A Prolonged Trial And Post-Trial Proceedings Resulted From Plaintiffs' Failure To Justify Class-Wide Relief.

The district court conducted a 14-day bench trial in 2011. 16-ER-3884-29-ER-6797. Class counsel was admonished for being unprepared, playing games, and prejudicing the City. 21-ER-4971-4986. After Plaintiffs rested, the City moved for judgment and to decertify the class because the Plaintiffs had not identified any policies and practices and instead based their case on scattershot evidence they hoped would add up to an ADA violation. 9-ER-2078-2099. Plaintiffs claimed their "core challenges to [] policies" were "that they do not function to properly identify and proactively remove disability access barriers[.]" 8-ER-1798; 8-ER-1801-9-ER-2077.

The district court never revisited certification. 6-ER-1416. Instead, it required Plaintiffs to supplement their requested relief due to deficiencies (6-ER-1498-1500), and those supplements lacked clarity. 6-ER-1472-1497. In response, the City explained class-wide relief was inappropriate under *Wal-Mart*. 6-ER-1462-1463. The district court then questioned whether its certification order should be reconsidered and again sought clarity from Plaintiffs about their claims. 6-ER-1395-1396. Plaintiffs finally identified eleven "policies." 6-ER-1385-1386.

On April 29, 2014, the district court acknowledged that it had not addressed standing and the scope of remedies. 6-ER-1365-1372. It directed the City to again file a motion for judgment, or alternatively, class decertification. *Id*. The City's motion was briefed. 5-ER-1267-6-ER-1364. Plaintiffs' opposition made no argument that DPW Policy 9.8.24 was unlawful, but instead claimed that they sought to challenge the City's "overarching policy and practice of leaving disability access barriers in place." 5-ER-1318.

**V.      The District Court's Findings And Appeal In *Kirola-I*.**

The district court found for the City on all claims. 1-ER-77-189. This included findings that Plaintiffs' "overarching policy" argument made "no sense," and that the City did not violate the ADA through its transition plan, self-evaluation plan, maintenance, grievance, and safety policies, RecPark website, new or altered construction, and program access. 1-ER-144, 177-189. Plaintiffs appealed findings related to new or altered construction and program access, however, they did not appeal any findings concerning construction policies applicable to RecPark.

On appeal, this Court found that Plaintiffs had "standing for claims related to all facilities challenged at trial." *Kirola-I*, 860 F.3d at 1176. Plaintiffs failed to prove their program access claim. *Id*. at 1182-84. As to new or altered construction, the Court held that ADAAG's "feature-specific" requirements apply

to public-rights-of-ways, parks, and playgrounds. *Id*. at 1179. The Court remanded

for the district court to reevaluate the extent of ADAAG violations and "[o]nce the

scope of any ADAAG violations at facilities used by Kirola and all other class

members has been determined, the district court shall revisit the question of

whether injunctive relief should be granted in light of the scope of the violations

determined by the district court[.]" *Id*. at 1185.

## VI.    The First Remand And Appeal In *Kirola-II*.

On remand, the City moved for judgment and to decertify the class. 4-ER-

829-924. Applying this Court's instructions, the district court again entered

judgment in favor of the City on the remaining claims based on a review of the

facilities used by class members and declined to grant systemic relief in part since

"the City has implemented a robust, multi-faceted infrastructure to address the

needs of its disabled, including the mobility-impaired population." 1-ER-75.

Plaintiffs appealed again. This Court affirmed findings that there were no curb

ramp or crosswalk violations, as well as the balance of findings concerning pools

and libraries that are no longer relevant. *See generally Kirola-II*, 2023 WL

2851368. As to parks, this Court affirmed that no violations were established at

"the Golden Gate Park Children's Playground, Stow Lake, Alamo Square Park,

Holly Park, and the Conservatory of Flowers," in addition to the Japanese Tea

Garden. *Id*. at *3. The Court remanded for individual injunctions to issue for "the

lack of an ADAAG-compliant route at St. Mary's Playground, and a missing grab bar in a restroom in Golden Gate Park." *Id*. at *1. It affirmed the district court's findings that "plaintiffs' evidence did not warrant the sweeping class-wide relief that the plaintiffs sought[.]" *Id*. at *2.

This Court remanded to the district court to evaluate ADAAG violations at the following facilities surveyed by Plaintiffs' experts that were not addressed: "the Bernal Heights Recreation Center, Eureka Valley Recreation Center, St. Mary's Recreation Center, Upper Noe Recreation Center, Tenderloin Recreation Center, Woh Hei Yuen Recreation Center, Minnie and Lovie Ward Recreation Center, Gene Friend Recreation Center, Joseph Lee Recreation Center, Richmond Recreation Center, and the Botanical Gardens." *Id*. Once the district court evaluated "the evidence of alleged violations in the facilities listed . . . If the district court finds any further ADAAG violations, the district court should revisit the question of injunctive relief that is systemwide or tailored to any additional violations found." *Id*. at *3.

## VII. The Second Remand And Grant Of Systemic Injunctive Relief.

On remand, the case was reassigned by the district court to a new judge. The new judge expressed concerns that Plaintiffs were seeking compliance in the present and may need to bring a new case. 4-ER-814-816. Proceedings were split into three phases: Phase I issued injunctive relief consistent with *Kirola-II*, Phase II

evaluated violations at the remaining facilities, and Phase III considered Plaintiffs'

entitlement to systemic relief.

**Phase I:** An injunction issued addressing the accessible route at St. Mary's

playground and the missing grab bar at Golden Gate Park. 3-ER-797-801.

**Phase II:** Plaintiffs filed their Phase II motion for injunctive relief on April

4, 2024. 3-ER-728-796. In its opposition, the City agreed to improve certain

conditions, not violations, including Botanical Garden bathroom steps, entrance

gate hardware at the Bernal Heights Recreation Center, uninsulated sinks and pipes

at the Bernal Heights Recreation Center, an accessible sign at Who Hei Yuen

Recreation Center, and a toilet stall door latch at MLK Pool. 3-ER-663-727. The

district court granted in part and denied in part injunctive relief. 1-ER-14-24.

No violations were found at the Eureka Valley, Gene Friend, Joseph Lee,

and Richmond Recreation Centers. 1-ER-24.[3] Insufficient evidence was provided

concerning signage at Upper Noe Recreation Center. 1-ER-23. The Court found

one violation at the Bernal Heights playground concerning the use of sand. 1-ER-

19-20. As to the Botanical Gardens, and Bernal Heights, Tenderloin, Who Hei

Yuen, Upper Noe, and Minnie and Lovie Ward Recreation Centers, the court

credited Plaintiffs' vague expert testimony and found a small sample of disparate

violations ranging from issues with accessible routes, impermissible slopes in

---

[3] Plaintiffs abandoned St. Mary's Recreation Center. 3-ER-741.

restrooms, entrance, clearance, and hardware issues, one elevator issue, and increased door pressure. 1-ER-15-23. A final injunction was entered on October 23, 2024. 3-ER-631-636.

**Phase III:** Plaintiffs filed a motion for systemic injunctive relief on November 1, 2024. 2-ER-290-3-ER-630. The City opposed. 2-ER-255-289. Notably, Plaintiffs' motion did not include any evidence from their case-in-chief that the City had deficient policies, and they reraised policy issues that had long been decided and abandoned. Nearly a year later, Plaintiffs' motion was granted without a hearing. 1-ER-2-13. Abandoning its prior concerns about evaluating compliance in the present (4-ER-814-816), the district court found the City's "current" policy from trial deficient, even though there was no evidence that the policy controlled 14 years later. 1-ER-8-9. It ordered the City to:

> adopt policies that clearly specify that the 2010 ADAS and the most recent iteration of the CBC will be used as the accessibility standard for all aspects of newly constructed or altered parks, playgrounds, outdoor recreation areas, and pedestrian pathways, and that bidding documents and contracts for construction projects should require that all work be done in compliance with those authorities as well.

> [and]

> that City policy require that all projects be inspected for compliance with 2010 ADAS and the CBC at close-out, with a written verification to be prepared confirming the project is in full compliance with those standards before projects are opened to the public.

1-ER-11-12. In addition, the City must "survey the City's parks, playgrounds, outdoor recreational facilities, and pedestrian rights of way that were newly constructed or altered after January 26, 1992, for ADAAG violations." 1-ER-11. If violations are found, the City shall "prepare a proposed remedial plan with Plaintiffs' input, which would be submitted to the Court for its review and approval, with Plaintiffs again permitted to comment and object." *Id*. The parties were ordered to submit a proposed injunction consistent with the relief ordered. 1-ER-13. The City timely appealed.

## SUMMARY OF THE ARGUMENT

When evaluating "system-wide injunctive relief, the issues of standing, class certification, and the propriety and scope of relief are often intermingled." *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001). Here, there are problems with each issue.

Plaintiffs pled a sprawling theory that the City fails to comply with ADAAG and sought removal of all disability access barriers in multiple City programs. 10-ER-2132-2151. The FAC did not challenge any specific policy bearing on new or altered construction but instead challenged individual access issues on a class-wide basis. *Id*. Based on case law that has been overturned, the district court certified a class despite the lack of commonality and without identifying the scope of remedies. 1-ER-209-216. Seeing through Plaintiffs' smokescreen, the judge that

presided over a 14-day bench trial found the City has sophisticated and robust policies, and employees that understand accessibility. 1-ER-85, 101-102. When Plaintiffs appealed, they did not challenge the district court's conclusions concerning any policy, let alone policy concerning new or altered construction in RecPark facilities. 5-ER-1059-1186. Instead, Plaintiffs represented that their case was about removing individual barriers, and "requires an element-by-element evaluation of a facility's compliance with ADAAG." 5-ER-1079, 1136-1158.

After this Court remanded in *Kirola-II*, the reassigned judge impermissibly gave Plaintiffs' a do-over far outside of this Court's mandates. It erroneously found that a small set of disparate ADAAG violations at a handful of RecPark's diverse facilities justified sweeping systemic injunctive relief. 1-ER-2-13. The relief mandates policy changes despite no finding that the City's "current" policies are deficient, a survey to find hypothetical violations that Plaintiffs did not identify in RecPark's new or altered construction, and remediation of hypothetical violations. 1-ER-8-12. The district court abused its discretion, and therefore the City respectfully requests that the Court reverse with instructions to enter final judgment. It is time for this nearly 20-year-old litigation to end.

**Article III Limits:** This Court properly found that Plaintiffs' standing was narrow. ADA standing is evaluated on a "facility-by-facility basis" and Kirola and the "class [have] standing for claims related to all facilities *challenged at trial*" that

were "*used* by Kirola and all other class members[.]" *Kirola-I*, 860 F.3d at 1174-76, 1185, n.4 (emphasis added). At trial, Kirola and class members only testified to alleged barriers at seven of the City's approximately 220 parks. None of their limited testimony concerned recreation centers, athletic fields, and myriad other unique features covered by the systemic relief. 1-ER-114-115. Nor did Plaintiffs introduce other testimony to establish class members would use any other facility. *Id.* They failed to prove standing to challenge every RecPark facility.

Nevertheless, the district court erroneously identified violations at RecPark facilities where Plaintiffs presented no evidence that a member of the class had or would use it. 1-ER-14-24. Then it resurrected challenges to City policies that Plaintiffs did not allege in their complaint, present in their case-in-chief, or argue on appeal, to conclude that the City's policies at the time of trial were deficient, and mandated that the City adopt a policy consistent with Plaintiffs' policy preferences, even though the City's policy had already changed in the 14-years since trial. 1-ER-2-13. No showing was made that the City's current policy is unlawful. 1-ER-2-13; 2-ER-218-229. Doing so was error.

In the decade since trial, regulations changed and ADAAG no longer controls—ADAS does. *Kirola-I*, 860 F.3d at 1177.[4] The City adopted a new policy after trial that mandates ADAS compliance. 2-ER-218-229. Any challenge to the

---

[4] While the Court refers to ADAAG, ADAS is apt. 1-ER-11-12.

City's prior ADAAG policy is moot, and the City is presumed to act in good faith when it adopts a new policy. *See, e.g.*, *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014). The district court also has no judicial power to commandeer the substance of City policy, *M.S. v. Brown*, 902 F.3d 1076, 1083, 1089 (9th Cir. 2018), and the policy challenges do not redress what Plaintiffs truly complain about—barriers in facilities that have already been constructed.

**Class Certification:** Class-wide relief cannot be upheld without affirming class certification. *Meredith*, 321 F.3d at 814. In certifying a class, "the district court never has discretion to get the law wrong." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1191 (9th Cir. 2024) (cleaned up). Yet, the overbroad class certification order cannot be upheld since legal error pervades it.

The record shows that the district court failed to conduct the rigorous analysis required *before* it certified the class. It also relied upon the commonality standard the Supreme Court expressly overruled in *Wal-Mart*. After *Wal-Mart*, courts find classes seeking to adjudicate access barriers at all facilities lack commonality since there is variety in features and injuries. *See, e.g.*, *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 902-03 (3d Cir. 2022); *Stiner v. Brookdale Senior Living, Inc.*, 665 F.Supp.3d 1150, 1187-88 (N.D. Cal. 2023). There is no reason to reach a different result here. Similarly, Kirola cannot establish adequacy, typicality, or numerosity under Rule 23(a). Nor can a single

injunction resolve this case as *Wal-Mart* requires under Rule 23(b)(2)—just look at the district court's two-step remedy ordering a survey for hypothetical violations before remediation.

**Systemic Relief:** The overbroad systemic relief fails on the merits. Violation of ADAAG is no longer a per se violation of the ADA following reversal of *Chevron* deference in *Loper Bright*, 603 U.S. at 369. Yet, the district court erroneously found ADAAG violations at facilities where no evidence showed any class member would be harmed based on vague expert testimony. 1-ER-14-24. Moreover, it failed to find that the features at issue were new or altered constructions subject to the purview of ADAAG in the first place—and ignored conclusive findings that Plaintiffs misunderstood how to identify new or altered constructions to support their claim. Reversal is appropriate on these bases alone.

Notably, "the decision to grant system-wide prospective injunctive relief does not occur in a vacuum; it is intimately connected to determinations made earlier in the lawsuit." *Armstrong*, 275 F.3d at 870-71. "A typical building has thousands of access measurements; a single set of restrooms has hundreds of access measurements." 1-ER-176. And ADAAG regulates hundreds of requirements across disparate features. *See* 28 C.F.R. Part 36, App. D.[5] No

---

[5] ADAAG was previously in 28 C.F.R. Part 36, App. A. A readable copy is in the addendum.

ADAAG violations were proven at the Eureka Valley, Gene Friend, Joseph Lee, Richmond Recreation Centers, Alamo Square Park, Holly Park, the children's playground at Golden Gate Park, the Japanese Tea Garden, the Conservatory of Flowers, Stow Lake, and several bathroom, signage, and pathway features in Golden Gate Park. 1-ER-23-24, 45-56. Nor were violations identified at the overwhelming majority of "blue dot" facilities identified at trial. *E.g.*, 31-ER-7086-7103.

Ultimately, two ADAAG violations impacted class members: one lack of an accessible route at a children's playground and one missing grab bar in a men's restroom facility at Golden Gate Park. 1-ER-56. But two violations cannot support systemic injunctive relief. *Lewis*, 518 U.S. at 359. Even crediting "violations" found based on expert testimony, which the City maintains are reversible, the findings are far too isolated and based on disparate features to justify overhauling the entire RecPark system. They hardly scratch the surface of RecPark's hundreds of facilities and features.

Without any common glue holding these violations together, the district court erroneously turned to City policies and found DPW's construction policy from the time of the trial to be deficient without citing any legal authority. Again, this exceeded this Court's instructions since Plaintiffs had already abandoned any policy challenges by not pleading them, proving them at trial, or appealing the

district court's policy findings. The district court's order also exceeds authority under the ADA since Title II does not create a standalone private right of action to challenge policies. *Londberg v. City of Riverside*, 571 F.3d 846 (9th Cir. 2009). Nor does any evidence in the trial record support the district court's constrained view that the City did not apply ADAAG to the public-rights-of-way, parks, playgrounds, and outdoor recreational facilities.

The district court also abused its discretion when it issued injunctive relief ordering the City to adopt a policy in 2025 based on a trial record from 2011. The district court did not consider any evidence of imminence and made perfunctory findings about the balance of equities since the scope of violations is hypothetical. Reversal is warranted.

The face of the order is also irrationally overbroad. The district court ordered the City to survey all new or altered construction since 1992 through the present for ADAAG violations. But ADAAG was optional after September 15, 2010, and no longer the law after March 15, 2012. It makes no sense to subject construction that was not governed by ADAAG to ADAAG review and remediation. Moreover, the district court's order rewards Plaintiffs' failure of proof by giving them relief for violations they did not actually prove. On its face, it resurrects a claim concerning the public-rights-of-way even though Plaintiffs lost that theory on appeal. It also resurrects review of facilities where Plaintiffs failed to carry their

burden and lost on appeal. The district court's do-over for Plaintiffs impermissibly shifts the burden of proof to the City and is an abuse of discretion. All systemic relief should be reversed.

## STANDARDS OF REVIEW

"Standing, ripeness and mootness are questions of law that [are] review[ed] de novo." *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1176 (9th Cir. 2011). "[A] district court's issuance of a permanent injunction [is reviewed] under three standards: 'factual findings for clear error, legal conclusions de novo, and the scope of the injunction for abuse of discretion.'" *Galvez v. Jaddou*, 52 F.4th 821, 829 (9th Cir. 2022) (citation omitted).

"A district court's grant or denial of class certification is reviewed for abuse of discretion." *Van v. LLR, Inc.*, 61 F.4th 1053, 1062 (9th Cir. 2023). "A class certification order is an abuse of discretion if the district court applied an incorrect legal rule or if its application of the correct legal rule was based on a 'factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'" *Id.* (citation omitted). This Court gives "more deference to a district court's grant of class certification as opposed" to denials. *Id.* A disjunctive standard is irreconcilable with the rigorous analysis the Supreme Court requires and should be overruled. *Wal-Mart*, 564 U.S. at 351. It creates perverse incentives for courts to error on the side of granting class certification

even though Rule 23 should "exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Deference seemingly originated based on Second Circuit cases. *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 579 (9th Cir. 2010) ("*Dukes*")  (quoting *Blyden v. Mancusi*, 186 F.3d 252, 269 (2d Cir. 1999)), rev'd on other grounds by *Wal-Mart*, 564 U.S. 338. However, the Second Circuit disavowed its "misreading of earlier Second Circuit cases" and "no Second Circuit case provides any reasoning or justification" for the deference. *In re Petrobras Sec. Litig.*, 862 F.3d 250, n.11 (2d Cir. 2017).

## ARGUMENT

### I.    The District Court Exceeded Its Remand Instructions.

"When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1977). A district court can only consider "any issue not expressly or impliedly disposed of on appeal[.]" *Id.* Here, the district court exceeded its remand instructions when determining that the City has deficient policies, even though Plaintiffs abandoned those claims, and this Court rejected theories based on the exact same evidence. Doing so is legal error.

Context matters. The judge that tried this case found that the City employs "sophisticated and robust" policies and procedures to ensure ADA compliance. 1-

ER-85-86, 101-102, 105-109; *see also* 1-ER-75. It explained that the City elected

to use ADAAG, has required all projects undergo access review, and mapped out

the extensive steps taken before, during, and after construction to ensure

compliance. 1-ER-101-102, 109. City employees doing this work "really

understand" accessibility. 1-ER-102.

Defining the claims at issue, *Kirola-I* recognized that "a significant portion

of the trial was also dedicated to evidence of the City's various plans and policies

for addressing access barriers." *Kirola-I*, 860 F.3d at 1170 n.2. "The specific

content of these plans and policies is not relevant to the issues on the appeal." *Id*.

That is because the district court found the City employs "sophisticated and

robust" policies and procedures to ensure ADA compliance. 1-ER-85-86, 101-102,

105-109. Plaintiffs did not appeal these findings and did not challenge the

unlawfulness of any policy in *Kirola-I*. Instead, Plaintiffs framed their appeal as

seeking "declaratory and injunctive relief requiring the City to remedy the effects

of its past and ongoing violations of the law, including a plan for the removal of

barriers and the implementation of measures to ensure that new construction and

alterations to City facilities comply with ADAAG," and represented their new or

altered construction claim "requires an element-by-element evaluation of a

facility's compliance with ADAAG." 5-ER-1079, 1130-1158. "It is well

established that an appellant's failure to argue an issue in the opening brief, much

less on appeal more generally, waives that issue[.]" *Freedom from Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1152 (9th Cir. 2018).

Following remand in *Kirola-I*, Plaintiffs challenged the City's policies by arguing that City employees testified that ADAAG did not apply to parks, playgrounds, and other outdoor recreation areas, and that its written policies and procedures were deficient. 4-ER-887-888. The district court rejected Plaintiffs' arguments and adopted "its prior findings and conclusions to the extent that they do not conflict with the Ninth Circuit's opinion" and echoed its undisturbed findings that "the City has implemented a robust, multi-faceted infrastructure to address the needs of its disabled, including the mobility-impaired population." 1-ER-33, 75.

Disappointed, Plaintiffs again appealed. In *Kirola-II*, Plaintiffs resurrected their abandoned policy arguments and argued that the district court erred since policies did not require certification, proposed guidelines were used, and employees testified ADAAG did not apply. AOB, No. 21-15621, Dkt. 23 at 51-52. This Court rejected Plaintiffs' argument and held "the district court appropriately found that the plaintiffs' evidence did not warrant the sweeping class-wide relief that the plaintiffs sought[.]" *Kirola-II*, 2023 WL 2851368 at *2. Thus, the district

court was reaffirmed; the City's written policies and procedures were still robust, and City employees really understand the ADA.

On remand, the district court was instructed to "evaluate the evidence of alleged violations" in clearly enumerated facilities and "[i]f the district court finds any further ADAAG violations, the district court should revisit the question of injunctive relief that is systemwide or tailored to any additional violations found." *Id* at *3. Nothing permitted the district court to evaluate the lawfulness of any policy. This Court remanded for the district court to reconsider violations at certain facilities and the appropriate scope of injunctive relief in light of those violations, nothing more. Therefore, the district court erred in finding the City's written policies defective, and the Court should reverse all relief changing City policies.

## II. The District Court Lacked Subject Matter Jurisdiction To Order Written Policy Changes.

The district court lacked jurisdiction to resurrect a claim that any written policy was defective yet improperly did so when it ordered a remedy for a moot policy. The district court found deficiencies with DPW's Procedure 9.8.24 from January 2010—a document Plaintiffs did not introduce in their case-in-chief or identify as unlawful in the FAC. 7-ER-1687-1694; 10-ER-2132-2151. The district court ordered the City to adopt new written policies, including a policy requiring compliance with ADAS. However, DPW Procedure 9.8.24 was superseded by Procedure 10.02.21. The current version went into effect in December 2013 and

requires compliance with ADAS. 2-ER-218-229. The policy states that "ADAAG may no longer be used after March 14, 2012" since "[t]he ADAAG is being replaced by the 2010 ADA Standards for Accessible Design, which will be mandatory for all projects as of March 15, 2012." 2-ER-221. These circumstances moot Plaintiffs' policy challenge for ADAAG construction.

"No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted). Courts "presume that a government entity is acting in good faith when it changes its policy, . . . but when the government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up." *Rosebrock*, 745 F.3d at 971-72. This standard is satisfied here because the DOJ superseded ADAAG by making ADAS an optional standard on September 15, 2010, and controlling after March 15, 2012. 28 C.F.R. § 35.151(c). At trial, the City was already applying proposed guidelines as best practice, and those were incorporated into ADAS. 25-ER-5839-5840. There is no evidence the City has failed to comply with ADAS. Given "the presumption that the Government acts in good faith," the City has met its burden and any

grievances with the new policy fall outside of this case. *Rosebrock*, 745 F.3d at 974.

By mandating substantive policy changes without finding that the City's current policies are unlawful, the district court exceeded its judicial power. "[T]here is no redressability if a federal court lacks the power to issue such relief." *M.S.*, 902 F.3d at 1083. "Principles of federalism" serve as a limit on judicial power and "counsel against' awarding 'affirmative injunctive and declaratory relief' that would require state officials to repeal an existing law and enact a new law proposed by plaintiffs." *Id.* at 1089 (citation omitted). Nevertheless, the district court mandated Plaintiffs' preferred policies and identified no authority to justify its overreach. These changes also do not redress barriers in new or altered constructions prior to trial, which Plaintiffs sought to remove. The order requiring policy changes should be vacated.

## III.   The District Court Improperly Awarded Relief For Policies And ADAAG Violations For Which Plaintiffs Lacked Standing.

"[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). A plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). Injury in fact requires a showing of "'an invasion of a legally protected

interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). To have standing for injunctive relief, the "threatened injury must be *certainly impending*[.]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). Here, Plaintiffs must prove standing by specific facts "supported adequately by the evidence adduced at trial." *Lujan*, 504 U.S. at 561 (citation omitted).

As explained in Argument §I, Plaintiffs abandoned any challenge to the City's policies. Plaintiffs also lack standing to challenge facilities at which they will not experience an ADA violation. Based on the nature of the claims at issue evaluating individual barriers at facilities, *Kirola-I* held "[s]tanding for ADA claims is measured on a facility-by-facility basis, not a barrier-by-barrier basis. Once a plaintiff has proven standing to challenge one barrier at a *particular facility*, that plaintiff has standing to challenge all barriers related to her disability *at that facility*." 860 F.3d at 1175 n.4 (emphasis added).

ADA standing comes with limits. Plaintiffs "must have actual knowledge of an access barrier or ADA violation." *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023). Without that foundation, a plaintiff cannot establish a sufficient likelihood of harm by showing they are "currently deterred from visiting" the facility "because of a barrier," or "that they were previously deterred and that they intend

to return to the" facility "where they are likely to reencounter the barrier." *Id*. A plaintiff is only able to "pursue an injunction to remove all accessibility barriers related to [her] disability that [she] is likely to encounter at a place . . . to which [she] intends to return." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 952 (9th Cir. 2011). "Injunctions do not extend to barriers not affecting persons with the plaintiff's particular disability; barriers that the plaintiff is not reasonably likely to encounter, . . .; or barriers in areas [she] is unlikely to enter, such as [single sex] restrooms or employee work areas." *Id.* (cleaned up). These limits help ensure that the ADA is not "transform[ed] . . . into an open-ended private attorney general statute, because the scope of such an injunction is limited." *Id.*

This Court properly recognized the limits of Plaintiffs' standing. It held Kirola and the "class has standing for claims related to all facilities *challenged at trial*" and expressly cabined further evaluation of ADAAG violations to "facilities *used* by Kirola and all other class members[.]" *Kirola-I*, 860 F.3d at 1174-76, 1185 (emphasis added). Based on the trial record, that includes seven parks. Nothing in this Court's opinion gave Plaintiffs authority to challenge every new or altered construction in the City since 1992 with no showing that the facility had been used by Kirola or the class, or that there was actual knowledge of barriers. Likewise, nothing in this Court's opinion gave the district court the power to order the City to survey every new or altered construction since 1992 to search for violations not

experienced by the class or challenged at trial. The evidence in the record falls short of any entitlement to the sweeping relief ordered.

The scant evidence of barriers from class members (or their mothers)[6] hardly scraped the surface of RecPark's system and features ADAAG regulates. Seven class members testified concerning alleged access barriers. *Kirola-I*, 860 F.3d at 1169-70. Kirola's nine pages of direct testimony was "minimal" and concerned "issues at only one park: Alamo Square Park." 1-ER-138, 147-148; 22-ER-5268-5283. The only other parks testified to by class members concerned a bathroom stall at Golden Gate Park, the Tea House entrance at the Japanese Tea Garden in Golden Gate Park, a Golden Gate Park playground, the McLaren Park duck pond, pathways at St. Mary's playground, a play area at Balboa Park, paths at Holly Park, parts of the eucalyptus forest at Glen Canyon Park, and access to the Conservatory of Flowers at Golden Gate Park. *Id*. at 1-ER-114-115; *see also* 18-ER-4420-4481; 19-ER-4706-4741; 20-ER-4749-4785, 4884-4938; 21-ER-5113-5137. This reached a mere six parks, which pales in comparison to the City's "'220 parks spanning 4,200 acres of park space and 400 structures (i.e., clubhouses, recreation centers, etc.)[.]'" *Kirola-I*, 860 F.3d at 1172. Plaintiffs failed to introduce *any* evidence that class members will likely be injured in the future by

---

[6] No guardian ad litems have been appointed and Plaintiffs have never argued parents have standing. "Particularization is necessary to establish injury in fact[.]" *Spokeo, Inc.*, 578 U.S. at 340.

using the City's remaining RecPark facilities, or that they are deterred from using those facilities based on knowledge of actual barriers. Plaintiffs' failure of proof is fatal since Plaintiffs rested on speculation. *Lujan*, 504 U.S. at 564 n.2.

On remand, the district court exceeded instructions in *Kirola-I* to limit review to facilities used by the class members where facilities were challenged at trial. Instead, it evaluated facilities where there was no evidence that a class member had or would use the facility. This included the Botanical Gardens and the Bernal Heights, Minnie and Lovie Ward, Tenderloin, Who Hei Yuen, Upper Noe, Eureka Valley, Gene Friend, Joseph Lee, and Richmond Recreation Centers. 1-ER-14-24. While *Kirola-II* instructed the district court to determine whether there were violations at these facilities, it did not erase the threshold standing inquiry, let alone overrule *Kirola-I*.

As the sole class representative, Kirola does not have standing on a "facility-by-facility basis" to challenge any of those facilities. *Kirola-I*, 860 F.3d at 1175 n.4. "That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976). Notably, Kirola, who is an adult, has not shown any entitlement to use these

facilities and cannot be injured at some. The class submitted evidence showing that adult access to children's playgrounds is restricted. 10-ER-2244 ¶6; S.F. Park Code § 3.02. The Tenderloin Recreation Center similarly restricts adult access. RJN Ex. A. To the extent Kirola must violate rules and regulations to access these facilities, the Court must "assume that '[litigants] will conduct their activities within the law and so avoid . . . exposure to the challenged course of conduct." *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (citations omitted).

Similarly, Plaintiffs failed to establish any policy tying alleged violations together. "[F]airly traceable" means that "there must be a causal connection between the injury *and the conduct complained of.*" *Dep't of Ed. v. Brown*, 600 U.S. 551, 561 (2023) (emphasis added). "[T]he plaintiff must show a predictable chain of events leading from the government action to the asserted injury[.]" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024). Plaintiffs cannot rely "on mere conjecture about possible governmental actions" and must present "concrete evidence to substantiate their fears." *Clapper*, 568 U.S. at 420. Having introduced no evidence in their case-in-chief tying injuries to any specific challenged policy, and having abandoned policy challenges, Plaintiffs' road ends at traceability on a policy claim. The district court's order should be reversed.

## IV. The District Court Abused Its Discretion In Certifying And Maintaining The Class.

"Class certification is [] not to be granted lightly." *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024). Yet, the district court certified a class with no rigorous analysis. "The district court's class certification order, while important, is also preliminary: 'An order that grants or denies class certification may be altered or amended before final judgment.'" *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018) (citation omitted). "Once a court certifies a class, its authority over the subsequent litigation requires it to ensure that these indicia continue to be met, thereby creating a 'duty of monitoring . . . class decisions in light of the evidentiary developments of the case.'" 3 Newberg & Rubenstein on Class Actions § 7:37 (6th ed.). Aware of essential changes in law and deficiencies in Plaintiffs' evidence, the district court maintained the class over the City's objections, and has now issued sweeping systemic relief. Because class certification was always improper, it should be reversed.

### A. The District Court Conducted No Rigorous Analysis.

"Before a class may be certified, the district court must conduct a 'rigorous analysis' to determine if the prerequisites of FRCP 23 have been satisfied." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024) (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th

Cir. 2022) ("*Olean*")). This rigorous analysis may "entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart*, 564 U.S. at 351, "to determin[e] whether the Rule 23 prerequisites" are met. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "[A] party cannot plead or speculate her way to class certification." *Miles v. Kirkland Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024). Plaintiffs must "actually *prove*—not simply plead— that their proposed class satisfies each requirement of Rule 23," *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014), "by a preponderance of the evidence." *Olean*, 31 F.4th at 665.

Notably, the class certification order failed to acknowledge its obligation to conduct a rigorous analysis. 1-ER-209-216. It failed to define with any specificity what the class claims are, what issues impact the class on a class-wide basis, how the evidence was weighed under the appropriate burden, and how issues can appropriately be tried on a class-wide basis. *Id*. But "a district court must engage in a 'rigorous analysis' of all the evidence—including how the policies were enforced, implemented and followed—in determining whether to certify a class." *Miles*, 89 F.4th at 1222 (citation omitted); *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 488 n.21 (3d Cir. 2018) (requiring "clear and complete list of the claims, issues or defenses to be treated on a class basis"). None of these essentials were addressed. The district court admitted it "makes no finding as to the

Appellants' Opening Brief                    39
Case No. 25-6844

type of scope of relief Plaintiff might seek or obtain on behalf of the class[.]" 1-ER-212. Any rigorous analysis was abandoned when the court held that "[s]uch determinations will be made following trial[.]" *Id.*

Post-certification proceedings were just as flawed. "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). "The Supreme Court's guidance in the analogous field of standing is also instructive. . . . . the 'manner and degree of evidence required' at the preliminary class certification stage is not the same as 'at the successive stages of the litigation'—*i.e.*, at trial." *Sali*, 909 F.3d at 1006. During trial the City moved to decertify the class after Plaintiffs failed to identify *any* policies or practices and instead based their case on scattershot evidence they hoped would add up to an ADA violation on a facility-by-facility basis. 9-ER-2098-2099. Plaintiffs' own summary of the evidence did not identify evidence supporting their policy-claim remaining on this appeal. 8-ER-1801-9-ER-2077. The district court did not rule on the City's motion. While the district court later questioned whether class certification should be reconsidered in light of *Wal-Mart* and the record, 6-ER-1395-1396, the district court has *never* reassessed its conditional certification, reconciled it with the law, or conformed it to Plaintiffs' proof. Class certification should be reversed.

**B.      The District Court Certified An Impermissible Fail-Safe Class.**

Intervening law prohibits Plaintiffs' fail-safe class. "A court may not, however, create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct." *Olean*, 31 F.4th at 669 n.14 (citation omitted). "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id*. (citation omitted). These problems exist here where the class is premised on allegedly unlawful conduct—i.e., allegedly being denied access due to disability barriers (1-ER-215)—and the sole representative failed to identify any unlawful barrier to her such that she has *conclusively* not been denied access. Reversal is required.

**C.      The District Court Erroneously Found Commonality.**

The district court abused its discretion in finding commonality satisfied because it relied upon overruled law and rests on allegations rather than evidence. Plaintiffs' claim that the City systematically violates the ADA in its new or altered construction cannot pass muster.

Based on this Court's opinion in *Dukes*, the district court found commonality satisfied because the "City's policies and practices for ensuring compliance with disability access laws is an overarching issue that is common to the claims of the class as a whole and is, therefore, sufficient[.]" 1-ER-211. In

*Dukes*, this Court found commonality was satisfied where there are common facts and legal issues among the class. 603 F.3d at 590-600. The Supreme Court reversed and defined the contours of what commonality requires. Plaintiffs must "demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart*, 564 U.S. at 349-50 (citation omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 350. Plaintiffs' "claims must depend upon a common contention" and that "must be of such a nature that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common 'questions'–even in droves–but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* There must be "some glue holding" together the claim. *Id.* at 352.

Since *Dukes* was reversed, the district court's reliance on it is reversible legal error. Plaintiffs' allegations of systemic discrimination do not change the result. Commonality requires "proof of the existence of systemic polices and practices[.]" *Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014). "[P]recedent does not hold that utterly threadbare allegations that a group is exposed to illegal policies and practices are enough to confer commonality," *id.* at 683, and "[a]llegations of individual instances of mistreatment, without sufficient evidence,

do not constitute a systemic deficiency or overarching policy of wrongdoing."

*Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019). The district court did

not base its order on any evidence and instead relied on allegations. 1-ER-211.

Under the correct standards, Plaintiffs' class based on all access barriers

fails. "[C]ommonality cannot be determined without a precise understanding of the

nature of the underlying claims"—something the district court failed to grapple

with. *Parsons*, 754 F.3d at 676. All that remains is Plaintiffs' claim that RecPark

violates the ADA (and derivative law) in new or altered constructions. Title II of

the ADA provides that "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination

by any such entity." 42 U.S.C. § 12132. As the Sixth Circuit has persuasively held,

"facility accessibility is not, standing alone, a cognizable claim under Title II's

private right of action; rather, the inquiry is tied to whether that facility's

inaccessibility interferes with access to public services, programs, or activities."

*Babcock v. Michigan*, 812 F.3d 531, 536 (6th Cir. 2016); *see also Daubert v.

Lindsay Unified Sch. Dist.*, 760 F.3d 982, 987 (9th Cir. 2014) (recognizing

constructed feature was "incidental" to ADA program). While new or altered

construction needed to conform with ADAAG between January 26, 1992, and

March 15, 2012 "[d]epartures from particular requirements . . . by the use of other

Appellants' Opening Brief
Case No. 25-6844

43

methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided." 28 C.F.R. § 35.151(c)(1)-(2); 28 C.F.R. § 35.151(c) (2010).

These extremely nuanced issues are not appropriate for class-wide resolution. As the Third Circuit has persuasively acknowledged, "[a] class that includes any and all access barriers is overbroad." *Allen*, 37 F.4th at 902-03. The "broad term 'accessibility barriers,' [] sweeps in a broad array of potential claims with little in common." *Id*. at 903.[7] District courts are in accord. *See, e.g.*, *Stiner*, 665 F.Supp.3d at 1187-88 ("challeng[ing] architectural features of dozens of different facilities" is not suited for certification since "physical differences between the different locations may make it impossible to identify a common body of evidence that each proposed class member can rely on"). The same applies here.

Plaintiffs' class extends to persons "denied access . . . due to disability access barriers" in "parks, libraries, swimming pools, and curb ramps, sidewalks, cross-walks, and any other outdoor designated pedestrian walkways." 1-ER-215. At class certification, RecPark maintained more than 200 buildings and/or facilities, which included parks, playgrounds, open spaces, recreation centers, pools, golf courses, and athletic fields or courts. 10-ER-2233 ¶2. ADAAG alone

---

[7] The plaintiff in *Allen* alleged injuries based on parking slopes, but the class was not limited to parking lot injuries. *Allen,* 37 F.4th at 903.

includes hundreds of requirements across discrete features, including but not limited to, accessible routes, ground surfaces, parking, ramps, doors, drinking foundations, restrooms, showers, grab bars, signage, and benches. *See* 28 C.F.R. Part 36, App. D, §4 *et seq*. Variation is exacerbated when a court must determine whether ADAS or ADAAG controls, and whether departures pass muster. Without some glue holding disparate barriers together for men, women, and children of different ages and impairment, for constructions built at different times, there is simply no way for Plaintiffs to satisfy commonality based on their chosen class.

In a futile effort to tie disparate features and facilities together, Plaintiffs broadly claimed that City policies are inadequate to ensure that newly constructed and altered facilities are built in compliance with federal and state access standards. Yet, Plaintiffs' sprawling class certification theory was inconsistent with their own evidence. Their motion admitted that MOD has a policy document that stated "new construction must be performed in 'strict compliance' with federal design standards[.]" 15-ER-3793. Even the MOD Plan Review and Approval Procedure that Plaintiffs criticized set forth steps for approving new construction and alteration and stated, "standards employed include the requirements of ADAAG . . . and other state and local laws, guidelines, and policies for accessibility." 14-ER-3343-3346. It is implausible to find by preponderance of the

evidence that the City did not apply ADAAG based on written procedures since the contention is belied by Plaintiffs' own evidence.

Moreover, the policies the district court found unlawful on remand were not even at issue in the FAC, during class certification, or at trial given Plaintiffs' sprawling tactics. Plaintiffs did not challenge any failure to provide written certifications post-construction at class certification and abandoned post-trial any challenge to the City's policies' alleged failure to mention federal design standards. *Compare* 15-ER-3795 *with* 6-ER-1385-1386. Nor were either identified in the FAC. 10-ER-2132-2151. The district court held Plaintiffs to certain policies and practices enumerated in post-trial briefing. 1-ER-144. But no evidence supported Plaintiffs' challenges concerning written certification at close-out or whether the policy specified access standards. This bait-and-switch is highly prejudicial and turns class certification on its head.

What's more, this Court has recognized in ADA litigation that "a 'policy *against* having uniform ... practices' is decidedly not a common issue." *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*, 867 F.3d 1093, 1105 (9th Cir. 2017) (citation omitted). Facilities were built at different times using different architectural styles, with many being historical structures. 10-ER-2233. RecPark did not use a universal design approach because designs considered many factors including topography and dimension of the site, size and locations of the

Appellants' Opening Brief
Case No. 25-6844

46

building or facility, the historical value, proposed use of the facility, and the date of any renovation. 10-ER-2233-2234. To the extent access barriers allegedly exist at any facility, each of those barriers is unique to that facility. 10-ER-2234. This is decidedly not common.

Even if the City's policies relevant to new or altered construction were somehow facially defective at class certification, despite subsequent findings at trial that they are sophisticated and robust, "'the mere existence' of a [] policy—with little evidence that it was implemented or enforced uniformly—does 'not constitute significant proof that a class [was] subject to an unlawful practice.'" *Miles*, 89 F.4th at 1224 (quoting *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 968 (9th Cir. 2020) (cleaned up)). This is a particularly heavy burden for Plaintiffs, whose own members admitted that accessible features did exist in parks and recreation centers. *See, e.g.*, 10-ER-2251 ¶14; 10-ER-2274 ¶13; 10-ER-2281 ¶9. They did not show through a preponderance of evidence that any deficiency in a City policy reached the entire universe of disparate accessibility barriers that lurk within their overbroad class—let alone specific evidence to support a claim that these barriers existed in new or altered construction. No evidence was identified to explain how features at new or altered construction are identified on a class-wide basis. And at trial Plaintiffs have conclusively failed to establish common violations across facilities/features. "If there is no evidence that the entire class was

subject to the same [unlawful] practice, there is no question common to the class."

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011). The district

court abused its discretion.

### D.     Kirola Is Not An Adequate Or Typical Class Representative.

Commonality and typicality "tend to merge with the adequacy-of-

representation requirement." *Falcon*, 457 U.S. at 157-158, n.13. Class

representatives must have "claims or defenses . . . typical of the claims or defenses

of the class," and "fairly and adequately protect the interests of the class." Fed. R.

Civ. Proc. 23(a)(3)-(4). "Typicality . . . is said to require that the claims of the class

representatives be typical of those of the class, and to be 'satisfied when each class

member's claim arises from the same course of events, and each class member

makes similar legal arguments to prove the defendant's liability.'" *Armstrong*, 275

F.3d at 868 (citation omitted); *see also Ellis*, 657 F.3d at 984-85. "The adequacy

inquiry is addressed by answering two questions: (1) do the named plaintiffs and

their counsel have any conflicts of interest with other class members and (2) will

the named plaintiffs and their counsel prosecute the action vigorously on behalf of

the class?" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (cleaned up). "If

either answer is no, the representative is inadequate." *Small*, 122 F.4th at 1202. To

satisfy the conflict-of-interest inquiry, the "class representative must be part of the

class and possess the same interest and suffer the same injury as the class

members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (cleaned up).

Neither was properly satisfied. Since the district court failed to conduct a rigorous analysis (*see* Argument §IV.A), it did not consider the City's arguments that Plaintiffs could not proceed on a facility-by-facility basis and doubled-down on Plaintiffs' "alleged system-wide failures" with no description of what those are. 1-ER-211. Discretion was abused.

The district court also failed to properly consider Kirola's injuries. The City opposed certification because Kirola did not have standing (constitutional injury) for each of the barriers and facilities that she sought to invoke on behalf of the class. 10-ER-2183-2191. At class certification, this Court had not established how standing must be assessed as its relates to class certification: "[T]here is a question whether the relevance of [] variation [in the theory of injury], if any, is a matter of Article III standing at all or whether it goes to the propriety of class certification pursuant to Federal Rule of Civil Procedure 23(a)[.]" *Gratz v. Bollinger*, 539 U.S. 244, 263 (2003). As this Court explained in *Kirola-I*, the Court adopted "the class certification approach," which recognizes that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Kirola-I*, 860 F.3d at 1176 (quoting

*Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)). "Under the class certification approach, therefore, 'any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing.'" *Melendres*, 784 F.3d at 1262 (citation omitted). "Stated differently, '[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Id*.

*Melendres* was wrongly decided and should be overruled en banc. "*Standing* is [still] meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate," *id* at 1261, and is tension with the flexible class certification approach. *Melendres* also puts the cart before the horse by broadening who can get relief before determining who is constitutionally entitled to relief. *See Trump v. CASA, Inc*., 606 U.S. 831, 852 (2025) (judicial power only provides "complete relief *to the plaintiffs before the court*"). But "[r]egardless of whether the requirement is deemed one of adequacy[, typicality,] or standing," it is not satisfied by Kirola here for all accessibility barriers. *Gratz*, 539 U.S. at 263.

Again, there is no glue holding together disparate requirements within ADAAG's purview. *See* Argument §IV.C. Plaintiffs with different mobility impairments who experience different types of features at different facilities constructed at different points of time do not share the same injury.

This result is consistent with what this Court requires under the ADA as discussed in Argument §III, including that standing is driven on a facility-by-facility basis. At class certification, Kirola did very little to show that she experienced the same injury as the sprawling class that she sought to represent by being denied access due to particular features. She primarily complained about curb ramps, identified vague issues at pools, and claimed that she "experienced or observed access difficulties at City parks and libraries" and facilities that are not even part of the class. 10-ER-2284-2288 ¶¶7-12. Because these vague allegations do not pass muster at the pleading stage, *see*, *e.g.*, *Whitaker v. Tesla*, 985 F.3d 1173, 1177-78 (9th Cir. 2021), they are equally deficient at class certification where plaintiffs must *actually* satisfy elements through preponderance of the evidence. Kirola showed no injury at facilities far different from those she encountered—let alone at a new or altered construction subject to ADAAG to support that claim—including the overwhelming majority of parks, playgrounds, open spaces, recreation centers, pools, and athletic fields or courts. Nor did she identify any injury from the dozens of features throughout ADAAG, including but

not limited to signage, benches, water fountains, parking, handrails, toilets, walking surfaces, elevators, lifts, windows, sinks, storage, phones, tables, seating, and so much more. Given the sweeping nature of the features included in the class, Kirola established no manner to vigorously prosecute them all without sacrificing the select few she vaguely experienced.

The conflict and atypicality this created is apparent from Plaintiffs' class certification record. Take *children's* playgrounds as one example. Another class member admitted children's parks were "off limits to adults"—meaning all facilities are not intended for adult use. 10-ER-2244 ¶6. ADA Guidelines recognize "[c]hildren often interact with their environment in ways that would be considered inappropriate for adults. Crawling and climbing, for example, are integral parts of the play experience for young children." RJN Ex. B at 159. Thus, any injury an adult may experience at a children's playground collides with, and is atypical of, the interests of the children the playgrounds are designed and intended for. Ultimately, Kirola failed to establish that she was an adequate representative and had a typical claim as to all class members to support this sprawling class.

Trial magnified Kirola's inadequacy and atypicality. "It is not inconceivable that a lead plaintiff appointed originally might turn out to be an inadequate class representative[.]" *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218-19 (9th Cir. 2000). Kirola's nine pages of direct testimony failed to

parallel the diverging injuries the class allegedly experienced. Her cursory testimony, which was cabined to one park where no violation was found (1-ER-114; 1-ER-45-46; 22-ER-5268-5283), stands in sharp contrast to the scope of ADAAG's feature-specific purview given that "[a] typical building has thousands of access measurements; a single set of restrooms has hundreds of access measurements." 1-ER-176. In totality, she failed to vigorously represent any class members' claims with respect to any park facility. Her testimony certainly did not justify relief with respect to nearly all of RecPark's unique parks and the thousands of features permeating throughout.

It has been conclusively established that Kirola encountered no ADAAG violation, and she offered no testimony as to any barriers that she may encounter in a new or altered construction. 1-ER-114; 1-ER-74; 22-ER-5268-5283. Again, Kirola now falls out of her own fail-safe class, which defeats adequacy since "[a] named plaintiff must be a member of the class she seeks to represent[.]" *Sali*, 909 F.3d at 1007. And any survey and remediation are far too broad to give her complete relief, *see CASA, Inc.*, 606 U.S. at 852, making her an atypical representative. Nor did she identify any causal relationship between any claimed injury and a policy. *See Small*, 122 F.4th at 1203 (varying causation defeated typicality). Given the foregoing, the district court abused its discretion.

### E.    Kirola Failed To Establish Numerosity.

While numerosity was unopposed below, *Wal-Mart* clarified plaintiffs must "prove that there are *in fact* sufficiently numerous parties," 564 U.S. at 350, and this Court defined numerosity in *A.B. v. Haw. State Dep't of Education*, 30 F.4th 828 (9th Cir. 2022). At trial, Plaintiffs submitted no evidence concerning the class size. While the City testified about census data, 23-ER-5482, the Third Circuit has persuasively held census data is insufficient. *Allen*, 37 F.4th at 896-97. That result should be reached here.

### F.    Rule 23(b)(2) Certification Was Improper.

The district court abused its discretion when it certified and maintained an injunctive relief class for access barriers under Rule 23(b)(2). "Rule 23(b)(2) applies only when *a single injunction* or declaratory judgment *would provide relief to each member of the class.*" *Wal-Mart*, 564 U.S. at 360 (emphasis added); *see also id*. ("The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"). The City opposed certification under Rule 23(b)(2) for individual accessibility violations. 10-ER-2191. Because the district court did not identify the scope of the remedies, it did not address whether that relief was appropriate. 1-ER-

212-3. Rather it narrowly found Plaintiffs seek relief as to *policies and practices* regarding access to City facilities and programs—again without identifying them.

Moreover, the order granting systemic relief shows that Plaintiffs' claim cannot be decided in a single stroke. The district court issued individual injunctions for disparate barriers in two phases. 1-ER-5. After tallying violations up in a third phase, it ordered the City to adopt a new ADAS policy, even though ADAAG was the only federal standard Plaintiffs tried. 1-ER-8-12. That policy change today provides no relief and does not redress existing ADAAG barriers. Accordingly, the court ordered the City to survey facilities to identify hypothetical ADAAG violations not proven at trial (even though ADAAG was superseded) so the district court could then order remediation. 1-ER-12. This shows that relief cannot be provided in a single injunction and that Plaintiffs failed to carry their burden by identifying the scope of any violation that *actually* exists. Class certification should be reversed.

## V.     The District Court Erroneously Determined That Systemic Relief Was Appropriate And Issued Overbroad Relief.

### A.     Standalone ADAAG Violations Do Not Violate Title II.

The days of deferring to agency regulations for the sake of deferring has come to an end: It is the role of courts "to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright*, 603 U.S. at 395. To the extent this Court has held that "ADAAG establishes the

technical standards" for evaluating ADA claims such that "violating these standards . . . constitutes 'discrimination' under the ADA," *Chapman*, 631 F.3d at 947, the case law is irreconcilable with *Loper Bright* and should be overruled. *See, e.g.*, *Booth v. Lazzara*, 164 F.4th 581, 598-99 (6th Cir. 2026) (Murphy, J. concurring) ("But we may not give that deference now that the Supreme Court has instructed us that courts (not agencies) must resolve questions about the scope of laws like the ADA. . . . That deference is particularly problematic here because background norms should instead compel us to resolve any ambiguity in Title II in favor of state and local governments."). District courts have recognized "that *Loper Bright* raises substantial new questions about the degree of deference courts should give to regulations," however, they find themselves bound by *Chapman* until this Court overturns it. *Stiner v. Brookdale Senior Living, Inc.*, No. 17-cv-03962-HSG, 2024 WL 5112480, at *7 (N.D. Cal. Dec. 13, 2024). Courts must now independently consider whether meaningful access is still provided to comply with the ADA for each feature. These individual inquiries underscore the impropriety of Plaintiffs' class action since common questions cannot drive common answers in a uniform way.

This is not a harmless issue. *Loper Bright* was decided after the parties briefed Phases I-II, so it was not considered by the district court. At trial, City employees turned to forward-looking guidelines as best practice. 25-ER-5839-

5840; 30-ER-6880. These guidelines got adopted into ADAS with slight variation. *Kirola-I*, 860 F.3d at 1177. While this Court held the guidelines were not binding, it did not hold the City failed to provide meaningful access. *Id*. at 1181. Indeed, the City could not have failed to provide meaningful access by following the ADAS guidelines before they became law. The fact that the regulations permitted public entities to apply ADAS before the date ADAS became effective in March 2012 underscores that the guidelines do provide meaningful access, and the temporal cutoffs in the regulations are arbitrary.

Notably, the district court originally refused to credit Plaintiffs' experts since they failed to consider the guidelines. 1-ER-127. This Court reversed on the grounds that the guidelines were not binding. *Kirola-I*, 860 F.3d at 1177. But because the guidelines have independent value for proving meaningful access under the ADA, this Court's prior opinion is irreconcilable with *Loper Bright* and should be reconsidered. The City's compliance with the guidelines demonstrate that meaningful access was nevertheless provided despite any deviations from ADAAG, and thus the district court should have been affirmed in 2017 for Plaintiffs' failure of proof.

Preserving its argument here, the City argued in the proceedings below and in *Kirola-I* that there was no private right of action to enforce ADAAG period. *See* 7-ER-1550-1552; 4-ER-957, 1018. Nothing in Title II's prohibition concerning

discrimination "by reason of disability" in "services, programs, or activities" extends to construction or requires certain standards to be satisfied. 42 U.S.C. § 12132. As this Court recognized in *Daubert*, the ADA does not extend to incidental issues such as the placement of a bleacher at a sports event, which should equally extend to standards for new or altered construction removed from the provision of any service, program, or activity. *Daubert*, 760 F.3d at 987. This Court should reconcile the scope of potential violations with what Title II actually prohibits.

### B. The District Court's Identification Of ADAAG Violations Are Clearly Erroneous.

The district court's order granting systemic injunctive relief incorporates its Phase II findings that the City violated ADAAG at a handful of recreation centers and parks. 1-ER-9. None of these facilities concerned a class member and should be reversed since no class member had standing to challenge them. *See* Argument §III. There is also no evidence confirming that all these violations are new or altered features within ADAAG's purview. Even then, the district court erroneously found violations based on vague and speculative evidence, and rejected evidence demonstrating mootness and the lack of imminent harm. These "violations" cannot pass scrutiny and should be reversed.

During Phase II, Plaintiffs represented that "[t]he district court previously found, and the City does not dispute, that all eleven of the Phase Two facilities at

issue in this Motion were newly constructed or altered after January 26, 1992.

*Kirola v. City & Cnty. of San Francisco*, 74 F. Supp. 3d 1187, 1211 (N.D. Cal.

2014.)." 3-ER-737. However, the court made *no* such finding. Instead, it explained

the City's "blue dot" system, which "indicates only that the facility offers some

accessible program or programs, and not necessarily that every physical element of

the facility is compliant with disability access regulations." 1-ER-100. Because

ADAAG applies only to new construction and altered portions of facilities (28

C.F.R. § 35.151(a), (b)), facilities that are modified in part to provide program

access may contain features subject to ADAAG and features that are not. Thus, a

blue dot does not indicate that every feature of the facility is—or legally needs to

be—compliant with ADAAG. Plaintiffs' (and now a new judge's) assumption that

all blue dot facilities must comply in their entirety with ADAAG is incorrect. As

the presiding judge at trial explained, Plaintiffs made an essential "flaw" and

"misapprehend[ed]" the blue dot designation. 1-ER-132. Given the flaw, Plaintiffs

could not identify with foundation whether a feature at a "blue dot" facility was

subject to ADAAG, and their experts were discredited. Unfortunately, the new

judge proceeded to evaluate each feature as if it were subject to ADAAG without

identifying evidence that features were subject to ADAAG. Because the district

court clearly erred, liability findings should be reversed and remanded.

In addition, the district court misconstrued this Court's authorization to consider new evidence. The district court took the position that it would not consider *any* evidence outside of the trial record. 1-ER-15. This was wrong for two reasons. First, "[t]he Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way." *Hodgers-Durgin*, 199 F.3d at 1042. Because trial was in 2011, there is no evidence to support imminence in the present. Second, evidence showed that alleged barriers had been remediated, and City policies have changed. But the district court refused to consider evidence showing mootness. 1-ER-15. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). And "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Thus, the district court should have considered remediation and policy changes that occurred after trial in 2011 before ordering remedies. These errors of law were substantial and cannot be unraveled from the district court's findings.

The district court also relied upon vague, speculative, and non-descript testimony that failed to establish actual ADAAG violations based on a liberal read of *Strong v. Valdez Fine Foods*, 724 F.3d 1042 (9th Cir. 2013). 1-ER-17-23.

*Strong* stands for a proposition that an "ADA plaintiff is not required to provide 'specialized or technical knowledge' through an expert witness to prove a violation," since disabled individuals are "particularly qualified to opine on the accessibility of facilities they visit." *Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1068-69 (9th Cir. 2015). But here, the court was considering *expert* testimony for ADAAG violations, and steadfastly credited vague, speculative, and non-descript testimony that does not establish ADAAG violations by preponderance of the evidence. The presiding trial judge admonished Plaintiffs for their deficient testimony. 21-ER-5013-5033. Several reversable deficiencies are identified:

**Upper Noe Recreation Center:** The district court found that door pressure was too heavy based on speculative belief. 21-ER-5029-5030. Yet, he admitted that door pressure can vary every day, depending on wind and other factors, and did not identify particular doors. 21-ER-5160.

**Who Hei Yuen Recreation Center:** The district court found violations with door clearances (1-ER-22-23), even though Plaintiffs' expert testified that at least some wheelchair users would be able to use the restroom. 21-ER-5045-5048. With no measurements, there was no way to know whether there was an actual ADAAG violation.

**Tenderloin Recreation Center:** The district court found impermissible cross-slopes leading to a designated accessible toilet stall. 1-ER-20-21. However,

Plaintiffs' expert admitted that his measurements were for the "length of the restroom" so there is *no* testimony establishing what the cross-slope was leading to the accessible stall, let alone evidence of where that stall was. 21-ER-5038-50409. Similarly, the expert testified that clearances were deficient at other restrooms, yet there was no foundation to understand the clearances in their context or whether they actually created an accessibility barrier. 21-ER-5043-5045.

**Bernal Heights Recreation Center:** The district court found that clearances in the accessible stalls were too narrow, however, the expert provided no foundation about the width. 1-ER-20; 21-ER-5009, 5027-5028. As to the playground, the district court found an ADAAG violation since the playground was on sand. 1-ER-19-20; 21-ER-5009-5011. However, the testimony was deficient since it did not identify an accessible route that would connect accessible features, and ADAAG's ground and floor surfaces only apply to accessible routes. *See* ADAAG § 4.5.1; ADAAG § 4.3.2. This is particularly hard to understand since Plaintiffs have judicially admitted that ADAAG does not apply to play equipment (4-ER-949), so it is unclear where Plaintiffs claim the route was required to be, and their own expert admitted he applied proposed guidelines instead of ADAAG because the playground was not regulated. 21-ER-5095-5159.

**Botanical Garden:** The district court found that an accessible route had impermissible cross-slopes and lacked handrails. 1-ER-18. However, Plaintiffs'

expert did not identify *where* these cross-slopes existed. "[T]here were pathways that were improved and created to provide accessibility and there were other pathways that were just repaved or modified or altered that were not intended to be accessible." ER-21-5073-5075. While he reviewed *multiple* accessible paths, he provided no foundation for where those paths and defects were, or how they were measured. *Id*. The record is not specific enough to identify actual violations. *See* ADAAG § 4.3.2.

Multiple errors permeate throughout the district court's findings that require reversal before systemic relief is evaluated.

### C. The Evidence Only Showed Isolated Violations Impacting Class Members.

It is black letter that "[t]he scope of injunctive relief is dictated by the extent of the violation established," *Lewis*, 518 U.S. at 360 (citation omitted), and "*plaintiffs* will only be entitled to injunctive relief if such relief is necessary to redress the [statutory] violations they *actually prove at trial*." *B.K. v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (emphasis added).

> System-wide relief is required if the injury is the result of violations of a statute . . . attributable to policies or practices pervading the whole system (even though injuring a relatively small number of plaintiffs), or if the unlawful policies or practices affect such a broad range of plaintiffs that an overhaul of the system is the only feasible manner in which to address the class's injury. However, if injunctive relief is premised upon only a few isolated violations affecting a narrow range of plaintiffs, its scope must be limited accordingly.

*Armstrong*, 275 F.3d at 870. "[T]he decision to grant system-wide prospective injunctive relief does not occur in a vacuum; it is intimately connected to determinations made earlier in the lawsuit." *Id*. at 870-71. Decisions must be guided by "the longstanding maxim that injunctive relief against a state agency or official must be no broader than necessary to remedy the [] violation." *Id*. at 870. And they must now be informed by *Wal-Mart*.

Here, the district court erroneously determined that systemic relief was appropriate far outside of violations Plaintiffs *actually proved at trial* after the district court found disparate violations at eight RecPark facilities based upon an erroneous construction of law and the record. As the district court acknowledged, "critically, the case law does not instruct that there is any minimum number of violations necessary to justify systemwide relief." 1-ER-10. It held that "requiring a plaintiff to present evidence of many or all accessibility barriers to obtain injunctive relief would defeat the purpose of class actions" (*id*.) based upon a citation to *California Disability Rights, Inc. v. California Department of Transportation*, 249 F.R.D. 334, 345 (N.D. Cal. 2008). However, this misses the mark and underscores the district court's misunderstanding of the law. *California Disability Rights, Inc.* was a class certification order based on *Dukes*—which has been overruled—not an order granting systemic relief. In any event, that court recognized "plaintiffs make abundantly clear, they are *not* seeking that this Court

directly order and oversee the remediation of every non-ADA compliant pedestrian feature" since "[t]his lawsuit is not about specific barriers." *Id*. at 343, 345. But this lawsuit, which the City has shown is improperly certified, is about remediation of specific barriers on a class-wide basis as demonstrated by systemic relief requiring the City to survey and remediate them.

Even based on the ADAAG violations that were found, the evidence does not cross the line between isolated into systemic. When granting "system-wide injunctive relief, the issues of standing, class certification, and the propriety and scope of relief are often intermingled." *Armstrong*, 275 F.3d at 860. The number of "violations" shrinks considerably when you consider what the class members testified about as required to show any actual injury. Kirola identified no violation as to her. 1-ER-74. The class members fared no better. At the relevant park facilities, the court found one violation at St. Mary's children's playground in the form of a lack of an accessible route based on a mother's testimony, and one *missing* grab bar in one stall in Golden Gate Park (others were installed). 1-ER-45-56. Thus, the district court found two instances of actual injury in parks that were completely distinct violations. 1-ER-74. But as the Supreme Court has held, "two instances were a patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief" such that any broader remedy was improper.

*Lewis*, 518 U.S. at 359-60. *Lewis* controls and the systemic relief should be reversed.

If this Court is inclined to credit the ADAAG violations at facilities that were not used by testifying class members—and it should not for the reasons discussed *supra* Argument §§III, V.B—they are too isolated. Disparate violations were found at eight RecPark facilities. 1-ER-14-23; 3-ER-797-801. In total, this included two playgrounds (St. Mary's and Bernal Heights), two parks (Botanical Gardens and Golden Gate Park), and five recreational centers (Bernal Heights, Tenderloin, Who Hei Yuen, Upper Noe, and Minnie and Lovie Ward). There is no common glue holding these together, since disparate violations included lack of an accessible route and impermissible slopes, one missing grab bar, missing restroom insulation, the use of sand at a playground, hardware issues, narrow clearances and entrance issues in restrooms, one missing sign, variable door pressure at one facility, and a single restroom with a step. 1-ER-14-23; 3-ER-797-801. Again, the record largely does not establish when these features were created to fall within ADAAG.

These isolated violations cannot ignore RecPark's entire system "encompass[ing] '220 parks spanning 4,200 acres of park space and 400 structures (i.e., clubhouses, recreation centers, etc.)[.]'" *Kirola-I*, 860 F.3d at 1172. No ADAAG violations were proven at the Eureka Valley, Gene Friend, Joseph Lee,

Richmond Recreation Centers, Alamo Square Park, Holly Park, the Children's Playground at Golden Gate Park, the Japanese Tea Garden, the Conservatory of Flowers, Stow Lake, in addition to several bathroom, signage, and pathway features in Golden Gate Park. 1-ER-23-24; 1-ER-45-56. This is significant since "[a] typical building has thousands of access measurements; a single set of restrooms has *hundreds* of access measurements" and Plaintiffs' own expert admitted perfection is not industry standard. 1-ER-176 (emphasis added). Even Plaintiffs admit their "experts took thousands of measurements" and effectively concede by judicial admission that these violations are a micro sliver of those measurements. 3-ER-743. Indeed, experts surveyed dozens of facilities. 16-ER-4046-4049; 19-ER-4537-4538; 20-ER-4820; 22-ER-5200-5204. And Plaintiffs' own expert Gary Waters admitted new constructions "had significant accessibility." 22-ER-5234. A few cherry-picked departures from ADAAG do not reflect systemic deficiencies throughout the entire RecPark system.

To justify its sweeping injunction, the district court concluded that focusing on "the total number of City facilities as a denominator is misleading, as many City facilities are not newly constructed or altered, and thus are not challenged in this case." 1-ER-9-10. But this ignores the evidence of new or altered construction that *was presented* at trial and undermines the district court's own factual conclusions since they are largely devoid of any foundation for when a barrier was even

constructed or altered in the first place. Trial focused extensively on the City's blue

dot system. Again, a blue dot does not mean every feature is subject to ADAAG,

and Plaintiffs misunderstood the designation. 1-ER-132. But the blue dot

designations demonstrate Plaintiffs' evidence concerns a small portion of RecPark

facilities. RecPark has dozens of children's play areas, community recreation and

open space, athletic fields, recreation centers and club houses, and special park

features that were designated as blue dot facilities. 31-ER-7087-7103; 24-ER-

5701-5716. Plaintiffs' proof at trial does not even scratch the surface given the

sheer volume of blue dot facilities and the hundreds of measurements within

facilities. The district court's refusal to consider that context was improper.

Finally, the district court erroneously concluded that this case has more

evidence than *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1073 (9th Cir. 2010),

where this Court found the need for systemic relief was "a close question." This is

wrong. The *Armstrong* defendants claimed they had "no responsibility for ensuring

that any disabled prisoners and parolees that they so house receive

accommodations." *Id*. at 1062.  The Court disagreed. Despite the defendants' claim

that they had *no* obligation to adhere to the ADA, this Court found the evidence

largely related to individuals who were not class members and was still "composed

largely of single incidents that could be isolated." *Id*. at 1073. While the legal error

"took plaintiffs much of the way towards a showing sufficient" for relief it was still

not enough "with the minimal evidence of violations that was adduced[.]" *Id*. at 1074. However, that case centered on a policy pre-*Wal-Mart*, not the removal of disparate barriers allegedly derived from hundreds of millions spent on accessibility, so it is not controlling here. Plaintiffs established two actual disparate violations impacting class members. As *Lewis* held, this is not enough. The district court erred.

**D.     The District Court Erred When It Found Violations Were Attributable To Deficient Policies and Practices.**

It was improper for the district court to resurrect policy challenges. *See* Argument §§I-III. Nevertheless, it faulted the City's written policies on three grounds: (1) Procedure 9.8.24 did not specify that ADAAG applies to the pedestrian rights of way, parks, playgrounds, and outdoor recreational facilities; (2) the DBI job card did not require an attestation that a project complies with ADDAG; and (3) the City's certificate completed at the end of DBI projects does not require a certificate of compliance. 1-ER-8-9. Plaintiffs identified no authority demonstrating that any of those policy changes, attestations, or certificates were required by law or industry practice, let alone a violation connected to them. *Id*. Despite Plaintiffs failure to satisfy their burden, the district court blamed the City for not identifying any "authority to the contrary" and found the City's policies deficient as a legal matter. 1-ER-9. This improper burden shifting was legal error and the Court's conclusions cannot be squared with the law and evidence showing

the City's robust, multi-faceted infrastructure ensuring that new or altered construction complies with access obligations.1-ER-85; 1-ER-75; 30-ER-6880, 6924-6940; 31-ER-7104-7195.

Presented with the district court's order here, another court rejected similar criticisms of written policies. The court noted that "Defendant does not have any such written policy, but the Court is not aware of any federal or state accessibility law requiring public entities to have one." *Griffin v. City of Los Angeles*, No. 2:24-cv-06312-RGK-MAR, 2025 WL 3466739, at *9 (C.D. Cal. Nov. 13, 2025), appeal filed, No. 26-496 (9th Cir. Jan. 23, 2026). "In their case-in-chief, Plaintiffs failed to demonstrate how the absence of a specific written policy directly caused or otherwise attributed to the accessibility violations at issue. Without evidence connecting those dots, system-wide relief based on this alleged defect is unwarranted." *Id*. The same applies here. At trial Plaintiffs admitted *no* evidence concerning these policies in their case-in-chief. *Compare* 7-ER-1687-1694 *with* 8-ER-1696-1720. The City moved for judgment during trial for this exact reason. 9-ER-2089-2091. As Plaintiffs' motion for systemic relief admitted, the policies they now complain about were admitted by the City. 2-ER-306-307. There is *zero* evidence tethering these policies, or their application, to any violation because that was not Plaintiffs' case.

A free-standing private right of action to challenge written policies or practices does not exist. This Court's opinion in *Londberg* is instructive. In *Londberg*, the Court held that there was no private right of action to enforce transition plan regulations under Title II. 571 F.3d at 849. "The plain language of § 202 prohibits public entities from discriminating against qualified disabled individuals in its administration of services and programs. This prohibition against discrimination is universally understood as a requirement to provide 'meaningful access.'" *Id*. at 851. Notably, "Section 202 says nothing about a public entity's obligation to draft a detailed plan and schedule for achieving such meaningful access, nor does it create a private right to such a plan." *Id*. Ultimately, "[t]he existence or non-existence of a transition plan does not, by itself, deny a disabled person access to a public entity's services, nor does it remedy the denial of access." *Id*. at 851-52. Any "true remedy would lie in an injunction requiring the actual removal of barriers that prevent meaningful access." *Id*. at 852. Here, the injunction concerning the City's written policies echoes the same problem. A City could be fully compliant with the ADA without a policy requiring certified compliance with ADAAG, and conversely, it may have a written policy and still be in violation by failing to construct individual barriers properly. *See id*. The policy requirements Plaintiffs seek to inject upon the City outside of their case-in-chief are "nowhere to be found in § 202's plain language" and cannot support injunctive

Appellants' Opening Brief                                   71
Case No. 25-6844

relief. *Id*. at 852. And again, there is no private right of action for new or altered construction standards.

The district court grossly overstated the City's non-compliance with ADAAG in the pedestrian rights-of-way, parks, playgrounds, and other outdoor recreational facilities by distorting this Court's opinions and ignoring evidence. It is true that this Court previously found that "ADAAG's standards apply to public rights-of-way, parks, and playgrounds" over the City's contention that ADAAG did not apply as a matter of law based on the face of the regulations. *Kirola-I*, 860 F.3d at 1178-81. But this Court's opinion came with an important caveat that the district court ignored. "Although ADAAG does not include facility-specific guidelines particular to [public-rights-of-way, parks, and playgrounds], the Section Four feature-specific requirements apply." *Id* at 1179.  Thus, ADAAG applies only to the extent Section Four contains an applicable feature. And as Plaintiffs judicially admitted on appeal, ADAAG does not apply to play equipment. 4-ER-949. They also conclusively failed to establish any violation in the public-rights-of-way after two appeals and failed to show violations of all features in ADAAG's purview.

Making a mountain out of a molehill, the district court credited testimony that Plaintiffs did not elicit in their case-in-chief from two employees to broadly conclude that they "did not use ADAAG for parks, playgrounds, outdoor recreation

facilities, and the pedestrian rights of way." 1-ER-8. The district court did not cite

any evidence because any citation to the record shows the clear error and abuse of

discretion made. Indeed, MOD, with the assistance of DPW's Disability Access

Coordinator Kevin Jensen and the Deputy Director for Physical Access for MOD

John Paul Scott, provided training on new or altered construction and access

barriers for all facilities and features within the RecPark system, including parks,

playgrounds, outdoor recreation facilities, and the pedestrian-rights-of-way. 24-

ER-5745-57566; 31-ER-7136-7147. Their work complied with the ADA.

Jensen testified that he "predominately" applied ADAAG and the current

California Building Code to RecPark construction following DPW Procedure

9.8.24. 25-ER-5811-5812, 5837-5839. However, for "playgrounds" and

"recreational uses"—which were undefined—he testified that he applied the

Access Board's nonbinding guidelines as "best practice." 25-ER-5839. He further

testified that he evaluated the path of travel from the facility to the nearest public

transportation stop in his review, 25-ER-5840, and even applied ADAAG and the

CBC to paths at the Botanical Garden. 25-ER-5918. Based on his testimony, he

applied ADAAG or the "best practice" standards for accessibility to the following

facilities: Argon Clubhouse and playground, Eureka Valley Clubhouse and

playground, Conservatory of Flowers, the Joe Lee Recreation Center and

playground, St. Mary's playground, Sunnyside Conservatory, Sunset Recreation

Center playground and sports fields, the Upper Noe Recreation Center, playground, and sport fields, SOMA Park, Victoria Manolo Graves Park, and the West Portal Clubhouse and playground. 25-ER-5838. At trial, Plaintiffs identified a *single* violation actually impacting a class member at St. Mary's playground for lack of an accessible route, which is a facility Plaintiffs' expert admitted had "accessible play elements" and "obviously a lot of thought went into the playground in terms of it being functional for people with disabilities[.]" 17-ER-4176. This is a far cry from any systemic disregard of the ADA or ADAAG.

Testimony from Scott does not change the result. Scott testified to his extensive knowledge working with the Access Board to develop ADAAG and guidelines for playgrounds, including his personal knowledge that ADAAG was initially rushed and did not include outdoor recreation. 24-ER-5663-5666. He did not begin working with the City as a Deputy Director until 2004. 24-ER-5668. As to RecPark projects, he testified that he was not involved in the decisions as to which standard they would apply to playgrounds, and that he conducted ADAS training. 24-ER-5700-5701. Scott did testify that there were no enforceable guidelines for "trails," however, he was using "common sense" to evaluate the usability of Golden Gate Park's *existing* trail system. He was not designing or constructing or accessible routes constructed after 1992 and instead was looking for "good recreational opportunity" for people with disabilities within the "spirit

Appellants' Opening Brief
Case No. 25-6844

74

and intent" of what was being proposed for outdoor recreation and trails and paths. 24-ER-5710-5715. He was going above and beyond. And he still applied ADAAG. 23-ER-5380. His testimony does not stand for a systemic disregard of the ADA or ADAAG.

As the City set forth in Argument §V.A, it cannot be faulted for applying forward-looking guidelines (which became ADAS) as a best practice following *Loper Bright*. Considering the foregoing, there is no evidence of any deficient policy or practice. Even this Court noted the legal changes in detail and recognized ambiguity in the record concerning which standard applied to facilities—an ambiguity that has never been resolved. *Kirola-I*, 860 F.3d at 1777-78. The district court should be reversed.

## VI. The District Court Erred In Its Application Of The Equitable Factors.

The district court correctly acknowledged Plaintiffs must demonstrate irreparable harm and that the balance of hardships and public interest warrant a remedy. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). It nevertheless erred.

### A.     The District Improperly Found Imminent Irreparable Harm.

The district court recognized in 2014 that there were concerns with issuing injunctive relief based on changing conditions given that this case was tried in 2011. 6-ER-1414. Even the new judge in 2024 aptly admitted she was "nervous at

the idea that what we're doing is figuring out compliance today." 4-ER-815. "The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way." *Hodgers-Durgin*, 199 F.3d at 1042-1045. Nevertheless, the district court ordered systemic relief in 2025 that presupposes that the City has violated the law through the present and had deficient policies since 2011 with no evidence and no due process. Such sweeping relief is unmoored from any evidence, disregards the constraints of federalism, and should be reversed.

Over the City's objections that the district court had already determined that it had a "robust infrastructure" to "meet the needs of the disabled," the new judge nevertheless concluded that the City's policy from trial in 2011 "does not *currently* require compliance with federal and state accessibility standards when performing new construction or alterations to City facilities." 1-ER-12 (emphasis added). It then granted relief requiring unspecified policies to "clearly specify that the 2010 ADAS and the most recent iteration of the CBC will be used as the accessibility standard" and required the same for unspecified bidding documents and contracts. 1-ER-11. However, the district court knew nothing about the City's *current* policy since it only considered evidence on remand that was already in the trial record concerning compliance with ADAAG—not ADAS—and there was no admissible evidence to infer that the policies it criticized still controlled.

At trial, it was already established that ADAAG was changing, and that the City was already applying the proposed guidelines as best practice. As the City explained in 2014 when the district court first asked about changes post-trial, "[t]he legal landscape governing access at recreation and park facilities has shifted significantly since the 2011 trial"—namely transition to ADAS—and that MOD "has worked closely with [RecPark] to ensure a smooth transition and full compliance with the 2010 Standards[.]" 6-ER-1406-1407. The City also submitted records showing the extensive increases to its new or altered RecPark construction. 6-ER-1411-1413.

Since the district court only considered evidence that was already in the trial record, the parties could not submit new evidence or set evidentiary foundation for changes. Records show that the City *did* change its written policy since trial in ways that comply with the district court's order. 2-ER-218-229. There is no evidence that the City did not comply with ADAS. Whether the Plaintiffs are likely to be injured by ADAS practices—which were never tried—"is simply too speculative to warrant an equitable judicial remedy[.]" *Hodgers-Durgin*, 199 F.3d at 1044. The injunction requiring policy changes should be reversed.

Similarly, the district court's order requiring the City to survey and remediate new constructions or alterations that post-dated trial through the present is defective. Trial concerned ADAAG compliance, not ADAS. Plaintiffs failed to

establish that the City would continue to apply ADAAG given that testimony trial the City was already applying the proposed guidelines and conducting ADAS training. While the Plaintiffs could have established imminence based on the existing record for features that were constructed within the purview of ADAAG (and they did not), they have no evidence of imminence concerning ADAS. To the extent the order requires the City to survey all facilities for ADAAG and not ADAS, that was legal error.

The district court also erroneously found irreparable harm satisfied since the City violates a civil rights statute. 1-ER-7. Yet, as the sole case cited by the district court shows, a presumption applies where the "federal statute [] specifically provides for injunctive relief." *Silver Sage Partners, LTD v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) (quoting *Burlington N.R.R. Co. v. Dep't of Revenue*, 934 F.2d 1064, 1074 (9th Cir. 1991)). There is no private right of action for policy changes or new or altered construction.

## B. The District Court Erred In Weighing The Hardships and Public Interest.

"An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. NRDC, Inc.*, 555 U.S. 7, 32 (2008) (citation omitted). The district court abused its discretion because it extended relief far beyond trial into the present. It considered no evidence of the hardship for the City to remedy concerns at every facility constructed since 1992

because the City had no opportunity at trial to predict hardship resulting over the next 14 years. Again, Plaintiffs failed to establish the scope of actual violations to even put the City on notice of what would be surveyed or remediated, and class members experienced just two violations.

In any event, the district court ignored evidence bearing on the equities. As the City explained in Statement of the Case §I.A, RecPark has spent hundreds of millions of dollars on construction and accessibility. At trial, the City Controller explained that only 20% of the City's general fund is discretionary to support essential public services, meaning funds are restricted, and the City has experienced multi-year deficits since the 2008 economic downturn. 28-ER-6419-6512. Evidence showed housing, transit, nutritional, and other services are higher priority needs facing the disabled community. 28-ER-6383-6404. Non-profits also rely on discretionary funds for disability services. 28-ER-6406-6415. The City is still operating under severe financial strain as it faces a two-year deficit of $936 million, expected to increase to $1.2 billion, while the new Mayor prioritizes health, homelessness, safety, affordability, and strengthening the economy. RJN Exs. C-D. Unfortunately, RecPark is already making budget cuts with a worsening outlook. RJN Exs. C-D.

The burdens the systemic relief imposes on the City and public cannot be dismissed. Courts "should pay particular regard for the public consequences in

employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation omitted). That did not happen here. To the extent this Court affirms any relief, it should remand for further consideration based on the actual scope of the violation and the harms any injunction imposes on the City and the public.

## VII.   The District Court's Policy, Survey, And Remediation Orders Are Overbroad And Vague.

Injunctions cannot be overbroad. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180. 1195-97 (9th Cir. 2024). They also cannot be vague. Fed. R. Civ. Proc. 65(d). "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). The district court's order is both.

The order is overbroad because it requires changes to the City's written policies when Plaintiffs failed to identify deficiencies in the City's current policies. The order also impacts the City's bidding and contract processes when there is no record evidence that bidding documents and contract processes covered by the order are deficient or caused a violation. To the extent, the district court requires policy changes, it has not identified which policies are subject to the order, and sweeps too far to the extent it contemplates City-wide policies not bearing on RecPark.

The survey and remediation orders are also overbroad. The order to survey extends through the present even though Plaintiffs established no violations in constructions that post-date trial and erroneously applies ADAAG even though ADAAG was optional after September 15, 2010. *Kirola-I*, 860 F.3d at 1177. The survey also includes facilities and features where Plaintiffs did not establish violations or their standing. Ultimately, the remediation order is overbroad to the extent it is based on the overbreadth of the survey and rests on speculation.

Finally, the terms "pedestrian rights of way" and "park" in the order are vague. *Kirola-II* did not instruct the district court to review any public-right-of-way on remand since Plaintiffs lost on that theory. To the extent these are included within "pedestrian rights of way," the order is overbroad. Similarly, "park" has never been defined. The City timely sought to clarify the definition of "park" before trial to mean open spaces and the Court procedurally denied the request as an untimely without defining the term. 9-ER-2128; 1-ER-205-206. That was error. *See Mazzei v. Money Store*, 829 F.3d 260, 266-67 (2d Cir. 2016) (holding a class may be decertified post-trial). To the extent "parks" did not include "playgrounds" and "outdoor recreation facilities"—which are now *separately* contemplated—the injunction is overbroad and extends relief outside of the class.

**VIII.  This Court Should Overrule Case Law Holding That Disparate Impact Theories Are Cognizable.**

Plaintiffs' claims fail because disparate impact theories are not cognizable under the ADA and Rehabilitation Act under *Alexander v. Sandoval*, 532 U.S. 275, 293 (2001), where the Supreme Court held that there is no private right of action to enforce disparate impact under Title VI. For the same reasons, the ADA and Rehabilitation Act do not create a private right of action for disparate impact claims. Although a divided panel in *Payan v. L.A. Cmty. College Dist.*, 11 F.4th 729 (9th Cir. 2021) held to the contrary, *Payan* ignores textual analysis in favor of the purpose of the ADA. *Id.* at 736-37. As the dissent correctly explains, "[t]hough 'the ADA must be construed broadly,' we cannot construe it more broadly than the text allows," and "the plain language makes clear that the statutes only forbid intentional discrimination." *Id.* at 741-44 (Lee, J. dissenting). Four Supreme Court justices highlighted this important issue. *See, e.g.*, *A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 351 (2025) (Thomas, J. concurring); *id.* at 355 (Sotomayor, J. concurring). Accordingly, the Court should review the issue en banc and overrule *Payan*. This issue is case dispositive since there is no evidence of intentional discrimination.

## CONCLUSION

For the foregoing reasons, the City requests that the Court reverse and vacate the district court's orders granting class certification and systemic relief.

Dated:  February 18, 2026          Respectfully submitted,

                                   DAVID CHIU
                                   City Attorney
                                   YVONNE R. MERÉ
                                   Chief Deputy City Attorney
                                   TARA M. STEELEY
                                   Chief of Appellate Litigation
                                   ELAINE M. O'NEIL
                                   ARI A. BARUTH
                                   STEVEN A. MILLS
                                   Deputy City Attorneys



                                   By:  _/s/ Steven Mills_____
                                        STEVEN A. MILLS
                                        Deputy City Attorney

                                   Attorneys for Appellants/Defendants
                                   CITY AND COUNTY OF SAN
                                   FRANCISCO, ET AL.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## STATEMENT OF RELATED CASES
### Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form17instructions.pdf](http://www.ca9.uscourts.gov/forms/form17instructions.pdf)

**9th Cir. Case Number(s)** No. 25-6844

The undersigned attorney or self-represented party states the following:

☒   I am unaware of any related cases currently pending in this court.

☐   I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

☐   I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Dated:  February 18, 2026

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
TARA M. STEELEY
Chief of Appellate Litigation
ELAINE M. O'NEIL
ARI A. BARUTH
STEVEN A. MILLS
Deputy City Attorneys

By:   */s/Steven Mills*
STEVEN A. MILLS

Attorneys for Appellants/Defendants
CITY AND COUNTY OF SAN
FRANCISCO, ET AL.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## CERTIFICATE OF COMPLIANCE

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**  25-6844_____

     I am the attorney or self-represented party.

     This brief contains 18,750 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

     I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ☐ it is a joint brief submitted by separately represented parties;

    ☐ a party or parties are filing a single brief in response to multiple briefs; or

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____.

☒ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


Signature */s/Steven Mills*_____   Date February 18, 2026_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Appellants' Opening Brief            85
Case No. 25-6844

## CERTIFICATE OF SERVICE

I, Pamela Cheeseborough, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECFsystem on February 18, 2026.

### APPELLANTS' OPENING BRIEF

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed February 18, 2026, at San Francisco, California.

/s/ Pamela Cheeseborough
Pamela Cheeseborough
