# EXHIBIT 2

1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,          )
                               )            COURT TRIAL
            PLAINTIFFS,         )
                               )
    VS.                        )            NO. C 07-03685 SBA
                               )
CITY AND COUNTY OF             )
SAN FRANCISCO, ET AL.,         )            PAGES 1 - 194
                               )
            DEFENDANTS.         )            OAKLAND, CALIFORNIA
_____)            MONDAY, APRIL 4, 2011

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:        SCHNEIDER WALLACE COTTRELL BRAYTON &
                          KONECKY
                       180 MONTGOMERY STREET, SUITE 2000
                       SAN FRANCISCO, CALIFORNIA  94109
                   BY: MARK T. JOHNSON,
                       ANDREW P. LEE,
                       KIRAN PRASAD,
                       GUY B. WALLACE, ATTORNEYS AT LAW

                       KAHN BROWN & POORE
                       THE WATERGATE TOWERS
                       2200 POWELL STREET, SUITE 745
                       EMERYVILLE, CALIFORNIA  94608
                   BY: SCOTT A. BROWN, ATTORNEY AT LAW

FOR DEFENDANT:         OFFICE OF THE CITY ATTORNEY
                       SIXTH FLOOR - FOX PLAZA
                       1390 MARKET STREET
                       SAN FRANCISCO, CALIFORNIA  94102
                   BY: ERIN BERNSTEIN,
                       JAMES M. EMERY,
                       ELAINE M. O'NEIL, ATTORNEYS AT LAW

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258
                      DIANE E. SKILLMAN, CSR NO. 4909

      RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

195

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,        )
                             )          COURT TRIAL
          PLAINTIFFS,        )
                             )
   VS.                       )          NO. C 07-03685 SBA
                             )
CITY AND COUNTY OF           )
SAN FRANCISCO, ET AL.,       )          PAGES 195 - 414
                             )
          DEFENDANTS.        )          OAKLAND, CALIFORNIA
_____)        WEDNESDAY, APRIL 6, 2011

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                             KONECKY
                         180 MONTGOMERY STREET, SUITE 2000
                         SAN FRANCISCO, CALIFORNIA  94109
                    BY:  MARK T. JOHNSON,
                         ANDREW P. LEE,
                         KIRAN PRASAD,
                         GUY B. WALLACE, ATTORNEYS AT LAW

                         KAHN BROWN & POORE
                         THE WATERGATE TOWERS
                         2200 POWELL STREET, SUITE 745
                         EMERYVILLE, CALIFORNIA  94608
                    BY:  SCOTT A. BROWN, ATTORNEY AT LAW

FOR DEFENDANT:           OFFICE OF THE CITY ATTORNEY
                         SIXTH FLOOR - FOX PLAZA
                         1390 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA  94102
                    BY:  ERIN BERNSTEIN,
                         JAMES M. EMERY,
                         ELAINE M. O'NEIL, ATTORNEYS AT LAW

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258
                      DIANE E. SKILLMAN, CSR NO. 4909

     RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 02, 110406

229

MARGEN - DIRECT (RESUMED)/ WALLACE

MR. WALLACE:  PLAINTIFFS MOVE THAT THIS BE RECEIVED INTO EVIDENCE, YOUR HONOR.

THE COURT:  ANY OBJECTION?

MR. EMERY:  PLAINTIFFS HAVEN'T ESTABLISHED THAT THIS WITNESS TOOK THIS PHOTOGRAPH.  I DO KNOW HE DID, BUT THEY NEED TO ESTABLISH THAT FOUNDATION.

BY MR. WALLACE:

Q.    MR. MARGEN, DID YOU TAKE THIS MEASUREMENT?

A.    YES.

Q.    IS THIS THE IMAGE OF THE MEASUREMENT THAT YOU TOOK?

A.    YES, I TOOK THE MEASUREMENT AND THE PHOTOGRAPH.

MR. JOHNSON:  OKAY.  PLAINTIFFS RENEW THEIR MOTION THAT THIS BE RECEIVED INTO EVIDENCE.

THE COURT:  DO YOU STILL HAVE A FOUNDATION OBJECTION.

MR. EMERY:  NO OBJECTION, YOUR HONOR.

THE COURT:  OKAY.  THE -- THAT REQUEST THAT IT BE RECEIVED INTO EVIDENCE IS GRANTED.

(PLAINTIFFS' EXHIBIT 4140-H

RECEIVED IN EVIDENCE)

BY MR. WALLACE:

Q.    MR. MARGEN, WHAT PROBLEMS DOES A 13.5 PERCENT CROSS-SLOPE CAUSE FOR PERSONS WITH MOBILITY DISABILITIES?

A.    WELL, FOR A WHEELCHAIR USER, WHAT A CROSS-SLOPE IN EXCESS OF THE ESTABLISHED STANDARDS DOES IS IT PULLS A WHEELCHAIR IN

MARGEN - DIRECT (RESUMED)/ WALLACE

THE DIRECTION OF THE CROSS-SLOPE.  SO IF A WHEELCHAIR IS TRYING TO TRAVEL IN A STRAIGHT LINE AND THEY ENCOUNTER THIS CROSS-SLOPE, THE WHEELCHAIR IS GOING TO PULL IN THE DIRECTION OF THE CROSS-SLOPE ITSELF, WHICH CAN BE PRETTY JARRING AND UNSTEADY, PARTICULARLY WITH A 13 PERCENT CROSS-SLOPE, WHICH IS EXTREMELY SEVERE.

I PUT IT IN THE -- IN THE GENERALLY HAZARDOUS CATEGORY.  AND IF SOMEBODY WASN'T PAYING ATTENTION AND ENCOUNTERED THIS, THEY COULD GET TIPPED OUT OF THEIR WHEELCHAIR.

SIMILAR FOR PEOPLE WHO USE WALKERS, CANES, CRUTCHES. SOMEBODY ENCOUNTERS SOMETHING LIKE THAT, IT'S PRETTY UNEXPECTED AND I BELIEVE IT'S ESSENTIALLY AN EXPOSED HAZARD ON ONE SIDE.

Q.    WHAT IS THE ADAAG STANDARD ON CROSS-SLOPES, MR. MARGEN?

A.    IT'S 2 PERCENT MAXIMUM CROSS-SLOPE.

Q.    AND WHAT IS THE CALIFORNIA BUILDING CODE STANDARD ON THE CROSS-SLOPES?

A.    IT'S ALSO 2 PERCENT.

Q.    SO WOULD THIS CROSS-SLOPE CONDITION EXCEED THE MAXIMUM FEDERAL DESIGN GUIDELINES STANDARD BY A FACTOR OF MORE THAN SIX?

A.    YES.

Q.    DID THIS CONDITION APPEAR AT ONLY ONE LOCATION, OR WAS THAT AT MULTIPLE LOCATIONS?

A.    NO, WE FOUND MULTIPLE LOCATIONS WHERE THERE ARE

231

MARGEN - DIRECT (RESUMED)/ WALLACE

CROSS-SLOPE CONDITIONS OR ADJACENT BARRIERS OR HAZARDS.  ONE EXAMPLE OF THAT WOULD BE ST. MARY'S PLAYGROUND, WHICH IS ONE OF THE FACILITIES WE RECENTLY ANALYZED.  AND WE'LL SHOW SOME EXAMPLES, I BELIEVE, LATER IN THE TESTIMONY.

MAY I CORRECT SOMETHING ABOUT MY PRIOR TESTIMONY ON -- ON THIS, YOUR HONOR?  I REALIZE -- I LOOKED AT MY NOTES --

THE COURT:  ON THIS -- LIKE, A FEW MINUTES AGO?

THE WITNESS:  YES.

THE COURT:  COUNSEL?

MR. WALLACE:  YES.  OF COURSE, WITH THE PERMISSION OF THE COURT, I BELIEVE.

THE COURT:  YEAH.

THE WITNESS:  YEAH, I'M SORRY.  I THINK I WAS TALKING ABOUT THE GAP OF THE UTILITY COVER BEING AN INCH WIDE, AND ACTUALLY IT'S AN INCH AND A HALF WIDE.

MR. WALLACE:  OKAY.

Q.   COULD YOU -- IS THERE PART OF THE PHOTO THAT WOULD ALLOW US TO SEE WHERE THIS GAP CONDITION IS?

A.   NO, I DON'T BELIEVE THAT THE PHOTO OF THAT IS CONTAINED IN THIS EXHIBIT.

Q.   ARE YOU ABLE TO SHOW US ABOUT THE LOCATION OF WHERE THE CONDITION IS?

A.   YES, IF YOU GO BACK TO THE PRIOR SLIDE.

MR. WALLACE:  MS. DREVON.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 02, 110406

279

MARGEN - DIRECT (RESUMED)/ WALLACE

A.   RIGHT.  THERE WAS A HANDFUL OF PEOPLE WHO WERE PARTICULARLY VOCAL AND WERE REALLY OUT THERE, AND THEN OTHER PEOPLE WERE -- HAD -- WHO HAD ISSUES WERE REALLY RELUCTANT TO RAISE THE ISSUE BECAUSE THEY WERE, YOU KNOW, FRANKLY, KIND OF AFRAID.

          MR. WALLACE:  COULD WE IDENTIFY WHAT'S BEEN SHOWN AS 4140-N, PLEASE?  I THINK WE'RE UP TO --

               (PLAINTIFFS' EXHIBIT 4140-N

               MARKED FOR IDENTIFICATION)

               (EXHIBIT PUBLISHED.)

               (PAUSE IN THE PROCEEDINGS.)

          THE WITNESS:  I'M SORRY.  WAS THAT A QUESTION, COUNSEL?

BY MR. WALLACE:

Q.   WHAT ARE WE LOOKING AT HERE, MR. MARGEN?

A.   WHAT WE'RE LOOKING AT IN THAT PICTURE IS THE ENTRANCE TO THE ST. MARY'S PLAYGROUND.

Q.   AND DID YOU TAKE THIS PHOTOGRAPH?

A.   YES, I DID.

Q.   AND IS IT A TRUE AND FAIR DEPICTION OF THE CONDITION AT THE SITE?

A.   YES.

Q.   WHAT'S SIGNIFICANT ABOUT WHAT WE'RE LOOKING AT?

A.   WHAT WE'RE LOOKING AT IS THE ENTRANCE TO THE -- TO THE PLAYGROUND.  THIS IS A -- THIS IS A SITE WHERE A PLAYGROUND WAS

          RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

280

MARGEN - DIRECT (RESUMED)/ WALLACE

RECENTLY -- A NEW PLAYGROUND WAS RECENTLY CONSTRUCTED, WHOLE NEW PLAY AREA.  AND THIS IS THE ENTRANCE BOTH TO THE PLAY AREA AND TO THE -- THE PARK ON THE LOWER LEVEL.  IT'S THE DESIGNATED ACCESSIBLE ROUTE TO GET INTO THE PLAY AREA AND PARK.

MR. WALLACE:  AND COULD WE GO TO THE NEXT SLIDE?

(EXHIBIT PUBLISHED.)

MR. WALLACE:  CAN WE IDENTIFY THIS AS --

THE COURT:  O?

(PLAINTIFFS' EXHIBIT 4140-O

MARKED FOR IDENTIFICATION)

THE COURT:  4140-O.

MR. WALLACE:  O.  OKAY.

Q.    MR. MARGEN, WHAT ARE WE LOOKING ANOTHER HERE?

A.    WE'RE ACTUALLY LOOKING AT THE OPPOSITE SIDE OF THE GATE THAT WE JUST LOOKED AT IN THE PREVIOUS SLIDE.  AND I DON'T KNOW IF WE CAN GO BACK TO THE PREVIOUS SLIDE 'CAUSE I WANTED TO MAKE A COMMENT ABOUT THAT GATE.

(EXHIBIT PUBLISHED.)

BY MR. WALLACE:

Q.    IS THERE AN ACCESS PROBLEM HERE?

A.    YES, THERE IS.

Q.    WHAT IS IT?

A.    WHAT'S REQUIRED BY THE CALIFORNIA BUILDING CODE IS THAT THE BOTTOM 10 INCHES OF A DOOR OR GATE IS REQUIRED TO HAVE A SMOOTH SOLID BOTTOM THAT CAN BE EASILY PUSHED OPEN BY THE

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 02, 110406

281

MARGEN - DIRECT (RESUMED)/ WALLACE

FOOTRESTS ON A WHEELCHAIR.

AND THE PROBLEM WITH THIS PARTICULAR GATE DESIGN ON THE PUSH SIDE IS THAT WE HAVE BASICALLY METAL PICKETS WHICH COME DOWN THAT CAN CATCH THE FOOT REST OF A WHEELCHAIR AND WOULD LIMIT OR PROHIBIT THE ABILITY OF SOMEBODY WHO RELIES ON THE FOOTRESTS OF THEIR WHEELCHAIR TO BE ABLE TO PUSH THROUGH THAT GATE AND -- AND GET IN.

MR. WALLACE:  PLAINTIFFS MOVE THAT 4140-N BE RECEIVED INTO EVIDENCE.

THE COURT:  ANY OBJECTION?

MR. EMERY:  NO OBJECTION, YOUR HONOR.

THE COURT:  REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 4140-N

RECEIVED IN EVIDENCE)

BY MR. WALLACE:

Q.    NEXT SLIDE.

(EXHIBIT PUBLISHED.)

BY MR. WALLACE:

Q.    IS THERE AN ACCESS BARRIER CONDITION THAT WE ARE OBSERVING IN THE PHOTO HERE, MR. MARGEN?

A.    YES.  LIKE ON A DOOR, A GATE IS REQUIRED TO PROVIDE CLEAR SPACE ADJACENT TO THE PULL SIDE OF THE DOOR OF THE GATE, AND THIS WOULD ALLOW A WHEELCHAIR USER OR SOMEBODY USING A WALKER TO POSITION THEMSELVES IN THIS AREA OUTSIDE OF THE SWING OF THE GATE TO BE ABLE TO OPEN THE GATE AND THEN GO THROUGH.

282

MARGEN - DIRECT (RESUMED)/ WALLACE

AND THE ISSUE HERE IS BECAUSE THIS IS AN EXTERIOR APPLICATION, IT'S AN EXTERIOR GATE, THERE'S A REQUIREMENT UNDER THE CALIFORNIA BUILDING CODE FOR 24 INCHES OF CLEAR SPACE FROM THIS EDGE TO ANY OBSTRUCTION ON THIS SIDE (INDICATING).  AND THERE'S 14 INCHES PROVIDED THAT LOCATION.

Q.    WOULD THAT BE WITHIN -- WOULD THAT BE WITHIN A DIMENSIONAL TOLERANCE?

A.    NO.

Q.    HOW MUCH SPACE IS MISSING THAT OUGHT TO BE THERE TO MAKE THIS ACCESSIBLE?

THE COURT:  LET ME GO -- YOUR QUESTION WAS WOULD THAT BE WITHIN A DIMENSIONAL TOLERANCE.  I DON'T UNDERSTAND THE QUESTION.  MAYBE THE WITNESS CAN EXPLAIN WHAT THE QUESTION MEANS AND THEN I CAN UNDERSTAND WHAT HIS ANSWER IS.

MR. WALLACE:  OKAY.

THE WITNESS:  SURE.  YOUR HONOR, SO -- SO BOTH CALIFORNIA REGULATIONS AND FEDERAL REGULATIONS ALLOW WHAT ARE CALLED DIMENSIONAL TOLERANCE, MEANING VERY, VERY MINUTE VARIATIONS IN THE MEASUREMENTS BASED ON CERTAIN FACTORS IN THE FIELD OR FIELD CONDITIONS.

I MEAN, AN EXAMPLE OF THAT MIGHT BE SOMETHING MIGHT BE QUARTER OF AN INCH OFF OR AN EIGHTH OF AN INCH OFF BECAUSE OF CERTAIN FACTORS THAT WOULD PREVENT FULL AND STRICT COMPLIANCE.

THE COURT:  OKAY.  OKAY.  THANK YOU.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 02, 110406

283

MARGEN - DIRECT (RESUMED)/ WALLACE

BY MR. WALLACE:

Q.    WE'RE WELL OUTSIDE THAT SORT OF SITUATION HERE, RIGHT?

A.    YES.

Q.    OKAY.  AND HOW DOES IT -- HOW DOES THE LACK OF THAT DIMENSION THAT YOU'VE DESCRIBED FOR US MAKE IT MORE DIFFICULT FOR SOMEONE TO OPEN THE GATE?

A.    WELL, ESSENTIALLY WHAT YOU WOULD HAVE TO DO IS TRY AND OPEN UP THE GATE AND THEN BACK YOUR WHEELCHAIR UP AT THE SAME TIME WITH ONE HAND OR, IN THE CASE OF AN ELECTRIC WHEELCHAIR, WITH YOUR JOYSTICK OR CONTROLLER SO YOU'RE ACTUALLY OPENING THE GATE INTO YOURSELF AS YOU'RE TRYING TO BACK UP AND YOU CAN'T GET OUTSIDE OF THE SWING OF THE GATE.  IT'S VERY DIFFICULT TO DO.

          MR. WALLACE:  PLAINTIFFS MOVE THAT 4140-O BE RECEIVED INTO EVIDENCE.

          THE COURT:  ANY OBJECTION?

          MR. EMERY:  NO OBJECTION.

          THE COURT:  REQUEST IS GRANTED.

                    (PLAINTIFFS' EXHIBIT 4140-O

                      RECEIVED IN EVIDENCE)

                    (EXHIBIT PUBLISHED.)

          MR. WALLACE:  COULD WE IDENTIFY THIS AS 4140-P, PLEASE.

          THE COURT:  YES.

284

MARGEN - DIRECT (RESUMED)/ WALLACE

(PLAINTIFFS' EXHIBIT 4140-P

MARKED FOR IDENTIFICATION)

BY MR. WALLACE:

Q.   MR. MARGEN, WHAT ARE WE LOOKING AT HERE?

A.   WELL, THE ENTRANCE TO THIS PLAYGROUND AND THIS FACILITY IS PRETTY UNIQUE AND INTERESTING IN THAT TO GET TO THE LOWER LEVEL WHERE THERE'S, YOU KNOW, TABLES TO SIT AT OR OTHER PLAY ELEMENTS OR THE TENNIS COURTS, YOU HAVE TO ACTUALLY GO THROUGH THE PLAY STRUCTURE ITSELF.

THE COURT:  WAIT.  EXCUSE ME.  THE QUESTION WAS WHAT ARE WE LOOKING AT, BEFORE YOU DISCUSS --

THE WITNESS:  OH, I'M --

(SIMULTANEOUS COLLOQUY.)

THE COURT:  -- TELL US WHAT IT IS.

THE WITNESS:  WHAT WE'RE LOOKING AT IS ONE -- ONE OF THE PLAY ELEMENTS AT THE -- THE SITE IN THIS CASE, IT'S A TUBULAR SLIDE THAT IS BASICALLY SELF-CONTAINED.

THE COURT:  IS THIS AT ST. MARY'S --

THE WITNESS:  YES, THIS IS AT THE SAME SITE, YOUR HONOR.

THE COURT:  OKAY.

BY MR. WALLACE:

Q.   AND IS THERE AN ACCESS BARRIER THAT WE'RE LOOKING AT HERE IN THE PHOTO?

A.   THE PRIMARY ACCESS BARRIER IS THE PATH OF TRAVEL TO GET

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 02, 110406

285

MARGEN - DIRECT (RESUMED)/ WALLACE

THIS.  THIS IS ONE OF THE KEY PLAY ELEMENTS AT THE PLAYGROUND, AND -- YOU CAN PROBABLY SEE THIS IN ONE OF THE SLIDES BEYOND THIS, BUT TO GET TO THE SLIDE, YOU ACTUALLY HAVE TO GO OUTSIDE OF THE PLAY AREA IF YOU HAVE A DISABILITY OR YOU'RE A PARENT WITH A DISABILITY OR A CHILD WITH A DISABILITY AND THEN GO UP A REALLY SIGNIFICANT SLOPE TO TRY AND GET IN THROUGH ANOTHER GATE THAT'S COMPLETELY INACCESSIBLE.

SO IF A CHILD WITH A MOBILITY IMPAIRMENT WANTED TO USE THIS OR A CAREGIVER WHO HAS A DISABILITY WHO HAS A CHILD -- WANTS TO TAKE THEIR CHILD TO THAT SLIDE, THEY REALLY CAN'T GET TO IT.

Q.    DO YOU HAVE AN UNDERSTANDING OF WHEN THE ST. MARY'S PLAYGROUND WAS CONSTRUCTED?

A.    I DON'T RECALL THE EXACT DATE, BUT IT WAS WITHIN THE PAST YEAR OR TWO.

Q.    HOW DO YOU KNOW THAT, SIR?

A.    BECAUSE THERE'S INFORMATION ON THE CITY'S WEBSITE ABOUT IT, AND I BELIEVE IT'S ONE OF THE BLUE DOT FACILITIES THAT WAS IDENTIFIED BY THE CITY AS AN ACCESSIBLE SITE.

Q.    OKAY.

IS THIS SLIDE ACCESSIBLE, SIR?

A.    I THINK THE SLIDE IS ACCESSIBLE -- WELL, I HAVE TWO COMMENTS ABOUT IT.  ONE BEING THAT IF THIS PLATFORM WAS SLIGHTLY HIGHER AND ACTUALLY AT THE SAME ELEVATION AS WHERE YOU WOULD TRANSFER INTO THE SLIDE AND YOU HAD A HANDHOLD ON EITHER

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

MARGEN - DIRECT (RESUMED)/ WALLACE

SIDE, IF YOU COULD GET IT TO, YEAH, A LOT OF PEOPLE COULD USE IT, A LOT OF KIDS COULD TRANSFER INTO THAT WITH SOME ASSISTANCE OR PROBABLY INDEPENDENTLY TO BE ABLE TO USE IT TO GO DOWN BELOW.

AND IT'S, YOU KNOW, IT'S A KEY ELEMENT AND EXPERIENCE AT THE -- AT THE PLAYGROUND.  IT'S KIND OF A BIG KAHUNA SLIDE.

MR. WALLACE:  SHOW THE NEXT PHOTO.

(EXHIBIT PUBLISHED.)

MR. WALLACE:  COULD WE IDENTIFY THIS AS 4140-Q, PLEASE?

(PLAINTIFFS' EXHIBIT 4140-Q

MARKED FOR IDENTIFICATION)

BY MR. WALLACE:

Q.   MR. MARGEN, WHAT ARE WE LOOKING AT HERE?

A.    THIS IS A PICTURE OF THE -- THE GATE THAT I ALLUDED TO EARLIER WHERE YOU HAVE TO ACTUALLY EXIT THE PLAY AREA AND COME UP THIS SLOPE, WHICH IS -- WHICH IS WITHIN THE RANGE OF 11 PERCENT TO 15 PERCENT TO -- TO GET THIS GATE, GO THROUGH THIS GATE TO GET TO THE SLIDE.

AND WHAT WE'RE LOOKING AT IS MY LEVEL, WHICH IS PLACED ON THE DECKING SURFACE OF THE SLIDE AREA TO SHOW THAT THERE'S A SIGNIFICANT CHANGE IN LEVEL.  THERE'S VERTICAL CHANGE IN LEVEL AT THIS LOCATION.  IT'S NOT ON A SMOOTH -- IT'S NOT A SMOOTH TRANSITION.  YOU HAVE TO ACTUALLY GO UP OVER A VERY

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

287

MARGEN - DIRECT (RESUMED)/ WALLACE

SIGNIFICANT LIP TO BE ABLE TO GET IN.

Q.    HOW HIGH IS THAT LIP?

A.    (REVIEWING DOCUMENTS.)

      IT'S APPROXIMATELY AN INCH AND A HALF.

Q.    OKAY.  WOULD THAT RENDER THIS PATH OF TRAVEL INACCESSIBLE

FOR MANY PERSONS WITH MOBILITY DISABILITIES?

A.    YES.

            MR. WALLACE:  PLAINTIFFS MOVE THAT 4140-Q BE

RECEIVED INTO EVIDENCE.

            THE COURT:  ANY OBJECTION?

            MR. EMERY:  NO OBJECTION.

            THE COURT:  REQUEST IS GRANTED.

                        (PLAINTIFFS' EXHIBIT 4140-Q

                         RECEIVED IN EVIDENCE)

            MR. WALLACE:  COULD LOOK AT THE NEXT ONE.

                  (EXHIBIT PUBLISHED.)

            MR. WALLACE:  COULD WE IDENTIFY THIS AS 4140-R,

PLEASE?

            THE COURT:  OKAY.

                        (PLAINTIFFS' EXHIBIT 4140-R

                         MARKED FOR IDENTIFICATION)

BY MR. WALLACE:

Q.    MR. MARGEN, WHAT ARE WE LOOKING AT HERE?

A.    WHAT WE'RE LOOKING AT -- AND WE CAN ACTUALLY SEE IT

PROBABLY CLEARER ON SOME OF THE SUBSEQUENT SLIDES -- THIS IS --

            RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

288

MARGEN - DIRECT (RESUMED)/ WALLACE

THIS IS THE PATH -- THIS IS THE ACCESSIBLE PEDESTRIAN PATH OF TRAVEL TO GET DOWN INTO THE PARK.  AND WHAT THIS IS IS AN ELEVATED BRIDGEWAY SYSTEM THAT YOU NEED TO TRAVERSE TO GET INTO THE PARK AND USE THE PARK.

MR. WALLACE:  COULD YOU SHOW THE NEXT PHOTO, PLEASE.

(EXHIBIT PUBLISHED.)

THE WITNESS:  HERE'S A ZOOM-OUT OF THAT SO IF YOU'RE A PERSON WITH A DISABILITY OR YOU'RE A CAREGIVER WITH A DISABILITY, YOU'RE COMING TO THE PARK, YOU'D HAVE TO GO THROUGH THIS TO GET DOWN INTO THE PARK.

BY MR. WALLACE:

Q.   AND WHAT BARRIERS ARE WE LOOKING AT IN THIS PHOTO?

A.   WE'RE LOOKING THAT THIS PHOTO BECAUSE THE BRIDGE IS ACTUALLY AN ARCHED BRIDGE, IT BECOMES A RAMP, AND THERE'S TWO THINGS GOING ON WITH IT.  ONE IS THAT THE -- THAT THE CLEAR WIDTH OF THE BRIDGE -- THE ARCHED BRIDGEWAY IS 35 AND A HALF INCHES WIDE, WHERE -- CALIFORNIA, FOR A WALK OR A RAMP IN THIS CASE BECAUSE IT HAS A SLOPED SURFACE IS 48 INCHES MINIMUM WIDTH.  SO IT'S WELL -- MUCH LESS THAN REQUIRED CLEAR WIDTH.

Q.   BY ABOUT A FOOT.  WOULD THAT BE RIGHT?

A.   BY ABOUT A FOOT, YES.

Q.   DOES THIS CONDITION RENDER THIS PATH OF TRAVEL INACCESSIBLE FOR MANY PERSONS WITH MOBILITY DISABILITIES?

A.   YES.

THE COURT:  LET ME JUST ASK, IS THAT THE ONLY WAY TO

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 02, 110406

289

MARGEN - DIRECT (RESUMED)/ WALLACE

GET TO THE OTHER SIDE, IS BY THIS RAMP?

THE WITNESS:  YES, YOUR HONOR.  THIS IS THE ONLY WAY TO GET DOWN INTO THE PLAYGROUND AREA BELOW.  THE ONLY ALTERNATIVE YOU COULD DO IS GO DOWN THE SERVICE ROAD THAT HAS ABOUT A 13 TO 15 PERCENT SLOPE, BUT THIS IS THE DESIGNATED ROUTE TO GET INTO THE PLAY STRUCTURE.

THE COURT:  OKAY.  THANK YOU.

MR. WALLACE:  OKAY.

COULD WE -- PLAINTIFFS MOVE THAT THIS BE RECEIVED INTO EVIDENCE?

THE COURT:  THAT'S 4140 -- IS THAT S?

MR. WALLACE:  I THINK IT IS S.

THE COURT:  ANY OBJECTION?

MR. EMERY:  NO OBJECTION.

THE COURT:  THE REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 4140-S

RECEIVED IN EVIDENCE)

BY MR. WALLACE:

Q.   MR. MARGEN, WHAT IS THE GRADIENT ON THIS RAMP OR WALK?

A.   COULD YOU GO TO THE NEXT SLIDE IN SEQUENCE, PLEASE?

(EXHIBIT PUBLISHED.)

THE WITNESS:  OKAY.  SO I MEASURED THE GRADIENT ON BOTH SIDES OF THE ARCHED BRIDGEWAY, AND I MEASURED A RUNNING SLOPE OF 13.7 PERCENT ON EITHER SIDE OF THAT.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 02, 110406

290

MARGEN - DIRECT (RESUMED)/ WALLACE

BY MR. WALLACE:

Q.   WHAT IS THE SIGNIFICANCE OF A SLOPE OF 13.7 PERCENT RUNNING?

A.   WELL, FIRST OFF, IT'S WELL IN EXCESS OF THE MAXIMUM SLOPE WHICH IS ALLOWED EITHER UNDER THE A.D.A. REGULATIONS OR THE CALIFORNIA REGULATIONS.  THE MAXIMUM SLOPE ALLOWED IS 8.33 PERCENT.  SO SIGNIFICANTLY STEEPER.

SECONDLY, WITH A SLOPE THAT STEEP, THERE'S A TENDENCY FOR SOME REASON IN A WHEELCHAIR TO POTENTIALLY FLIP BACKWARDS IF THEY'RE TRYING TO GO UP IT, AND IF THEY'RE TRYING TO COME DOWN THE OTHER SIDE, LOSE -- POTENTIALLY LOSE CONTROL OF THE WHEELCHAIR.

ADDITIONALLY, THERE'S NO HANDRAILS ON EITHER SIDE OF THAT, WHICH WOULD BE REQUIRED ON ANY SLOPE WHICH IS IN EXCESS OF 5 PERCENT.

Q.   AND I THINK EARLIER IN RESPONSE TO HER HONOR'S QUESTION, YOU INDICATED THAT THERE WAS AN ALTERNATIVE ROUTE BUT THAT ALSO HAD A STEEP SLOPE?

A.   YEAH, THE ALTERNATIVE ROUTE, IF YOU DIDN'T WANT TO GO THROUGH HERE AND GET TO THE LOWER PART OF THE PARK, YOU WOULD NEED TO BASICALLY GO DOWN A SERVICE ROAD FROM THE DESIGNATED ACCESSIBLE PARKING IN THIS CASE THAT HAS ABOUT A 13 TO 15 PERCENT SLOPE.

Q.   SO THERE'S STEEP RUNNING SLOPES EVERYWHERE HERE?

A.   IN MAJOR PORTIONS OF THE PARK, YEAH.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

304

MARGEN - DIRECT (RESUMED)/ WALLACE

A.    NO, THEY'RE FIXED IN PLACE.

          CAN I -- I'M ACTUALLY MISSING ONE OF MY REPORTS.

Q.    WHICH ONE?

A.    THE WEST PORTAL.

Q.    AND WHILE -- JUST SO -- CAN WE MULTI-TASK A LITTLE BIT HERE, MR. MARGEN?

A.    YEAH, I'M REALLY SORRY.

                    (EXHIBIT PUBLISHED.)

BY MR. WALLACE:

Q.    DID YOU TAKE THIS PHOTO?

A.    YES.

Q.    WHAT ARE WE LOOKING AT HERE?

          I THINK THIS WOULD BE IDENTIFIED, PLEASE, AS 4140 --

          THE COURT:  V.

          MR. WALLACE:  -- V.

                         (PLAINTIFFS' EXHIBIT 4140-V

                         MARKED FOR IDENTIFICATION)

          THE COURT:  IS THAT RIGHT, LISA?

          THE CLERK:  YES.

          MR. EMERY:  IS THAT "V" AS IN VICTOR?

          THE COURT:  "V" AS IN VICTOR.

          MR. EMERY:  THANK YOU, YOUR HONOR.

BY MR. WALLACE:

Q.    WHAT DO WE SEE IN 4140-V, PLEASE?

A.    WE'RE SEEING THE -- THE LAVATORIES IN THE MAIN LIBRARY.

          RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

305

MARGEN - DIRECT (RESUMED)/ WALLACE

Q.   AND IS THERE AN ACCESS BARRIER THAT'S SHOWN IN THIS PHOTOGRAPH?

A.   WELL, THE ISSUE IS THAT THE LIBRARY WAS CONSTRUCTED AT TIME WHEN THE CALIFORNIA BUILDING CODE SAID THAT "LAVATORIES" SHALL BE ACCESSIBLE, IN THE PLURAL FORM.

HERE, THEY'VE PROVIDED ONE LAVATORY AT THE END THAT HAS INSULATION BELOW IT, WHICH IS THERE TO PREVENT SOMEBODY WHO HAS A SPINAL CORD INJURY, SO REDUCED SENSATION IN THEIR LEGS, FROM BURNING THEIR LEGS IF THERE WAS HOT WATER, OR IF THERE WAS AN ADJACENT ABRASIVE SURFACE THAT SOMEBODY WOULD ROLL INTO, AND BECAUSE OF THE REDUCED SENSATION OR NO SENSATION IN THEIR LEGS COULD GET ABRASIONS OR CUTS.

SO THERE IS INSULATION ON THIS ONE.  HOWEVER, THIS WAS CONSTRUCTED AT A TIME WHEN THE REGULATIONS SAID THAT LAVATORIES SHALL BE ACCESSIBLE, NOT JUST ONE LAVATORY SHOULD BE ACCESSIBLE.  AND NONE OF THE REST OF THESE HAD INSULATION UNDERNEATH.

ADDITIONALLY, THE ONE THAT IS INSULATED IS NOT IDENTIFIED AS ACCESSIBLE WITH THE INTERNATIONAL SYMBOL OF ACCESSIBILITY, WHICH WOULD AT LEAST HELP SOMEBODY IDENTIFY WHICH ONE WOULD BE SAFE FOR THEM TO USE.

Q.   OKAY.  AND IS THERE ALSO A REACH RANGE ISSUE THAT'S SHOWN IN THIS PHOTOGRAPH?

MR. EMERY:  LEADING.

THE COURT:  OVERRULED.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 02, 110406

306

MARGEN - DIRECT (RESUMED)/ WALLACE

YOU MAY ANSWER THE QUESTION.

THE WITNESS:  YEAH, THERE'S AN ISSUE WITH THE REACH TO THE ELECTRIC HAND DRYERS.

BY MR. WALLACE:

Q.    AND ARE THOSE LOCATED TOO HIGH OR TOO LOW?  WHAT'S THE PROBLEM, MR. MARGEN?

A.    I WOULD HAVE TO REFER TO MY REPORT TO GIVE YOU THE EXACT DIMENSION.

MR. WALLACE:  PLAINTIFFS MOVE THAT 4140-V BE RECEIVED INTO EVIDENCE.

THE COURT:  ANY OBJECTION?

MR. EMERY:  NO OBJECTION.

THE COURT:  OKAY.  THE REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 4140-V

RECEIVED IN EVIDENCE)

THE WITNESS:  (REVIEWING DOCUMENTS.)

YES, IT'S MOUNTED AT 46 INCHES TO THE OPERATING CONTROL.  AND UNDER THE CALIFORNIA BUILDING CODE, ACCESSORIES LIKE TOWEL DISPENSERS, SOAP DISPENSERS, ET CETERA, ARE REGULATED AT 40 INCHES MAXIMUM TO THE HIGHEST OPERABLE PART.

BY MR. WALLACE:

Q.    OKAY.  WOULD THIS BE A DIMENSIONAL TOLERANCE, MR. MARGEN?

A.    NO.

Q.    DID YOU REACH ANY OPINIONS ABOUT THE RELEVANT ACCESSIBILITY OF THE REST ROOM THAT WE'RE LOOKING AT AT THE

307

MARGEN - DIRECT (RESUMED)/ WALLACE

MAIN LIBRARY?

A.    WELL, I BELIEVE BASED ON THOSE TWO ISSUES, THERE ARE
ACCESSIBILITY PROBLEMS WITH THE LIBRARY REST ROOMS.

Q.    OKAY.  DID YOU OBSERVE OTHER REST ROOMS DURING THE COURSE
OF YOUR WORK ON THIS CASE THAT HAD PROBLEMS WITH THE LACK OF
INSULATION ON THE PIPES?

A.    YES, WE FOUND THAT AT OTHER LOCATIONS.

Q.    AND CAN YOU IDENTIFY SOME OF THOSE LOCATIONS FOR US,
PLEASE?

A.    THAT WOULD BE DIFFICULT FOR ME TO DO.  WOULD TAKE SOME
TIME.

Q.    HOW ABOUT THE REACH RANGE?  WAS THAT A COMMON PROBLEM IN
BRANCH LIBRARY BATHROOMS?

A.    REACH RANGES OF DISPENSERS WAS A PROBLEM.  AND THAT'S ONE
OF THE THINGS THAT WE DID IDENTIFY ISSUES WITH.

Q.    COULD YOU TELL US JUST SOME OF THE BRANCH LIBRARIES WHERE
THAT WAS ALSO A PROBLEM?

      I THINK WE'VE GOT YOU LOOKING FOR TWO THINGS NOW IN
THE BRANCH LIBRARIES.  WE'VE GOT THE TURN-AROUND AND
OBSTRUCTION?

A.    THAT, I'VE COMPLETED.

Q.    OKAY.  AND WHICH OTHER LOCATIONS HAVE THAT PROBLEM?

A.    WELL, WHAT I'VE BEEN ABLE TO IDENTIFY 'CAUSE I CAN'T FIND
ONE OF MY REPORTS PARKSIDE BRANCH, SUNSET BRANCH, WEST PORTAL,
EUREKA, HARVEY MILK, MARINA LIBRARY, MISSION BAY, AND MISSION