# EXHIBIT 7

857

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,          )          COURT TRIAL
                               )
          PLAINTIFFS,          )          VOLUME 5
                               )
    VS.                        )          NO. C 07-03685 SBA
                               )
CITY AND COUNTY OF             )
SAN FRANCISCO, ET AL.,         )          PAGES 857 - 1076
                               )
          DEFENDANTS.          )          OAKLAND, CALIFORNIA
_____)          MONDAY, APRIL 11, 2011

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                             KONECKY
                        180 MONTGOMERY STREET, SUITE 2000
                        SAN FRANCISCO, CALIFORNIA  94109
                   BY:  MARK T. JOHNSON,
                        ANDREW P. LEE,
                        KIRAN PRASAD,
                        GUY B. WALLACE, ATTORNEYS AT LAW

                        BROWN POORE LLP
                        THE WATERGATE TOWERS
                        2200 POWELL STREET, SUITE 745
                        EMERYVILLE, CALIFORNIA  94608
                   BY:  SCOTT A. BROWN, ATTORNEY AT LAW

FOR DEFENDANT:          OFFICE OF THE CITY ATTORNEY
                        SIXTH FLOOR - FOX PLAZA
                        1390 MARKET STREET
                        SAN FRANCISCO, CALIFORNIA  94102
                   BY:  ERIN BERNSTEIN,
                        JAMES M. EMERY,
                        ELAINE M. O'NEIL,
                        KRISTINE A. POPLAWSKI, ATTORNEYS AT LAW

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258
                      DIANE E. SKILLMAN, CSR NO. 4909

        RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

958

MASTIN - DIRECT / JOHNSON

MR. JOHNSON:  AS LONG AS YOU CAN BE HEARD.

DOES HE --

THE COURT:  YEAH, AS LONG AS HE KEEPS HIS VOICE UP SO THAT HE CAN BE HEARD.

(OFF-THE-RECORD DISCUSSION.)

THE WITNESS:  THEY'RE REFERRING TO THIS BOTTOM EDGE, TRANSITION BETWEEN CURB RAMP AND THE GUTTER, AND THAT'S SUPPOSED TO BE FLUSH UNDER FEDERAL AND CALIFORNIA CODES --

(OFF-THE-RECORD DISCUSSION.)

THE WITNESS:  UNDER CALIFORNIA AND FEDERAL CODES, THAT'S REQUIRED TO BE FLUSH, THIS BOTTOM -- THIS BOTTOM TRANSITION.

IF IT'S NOT FLUSH, THIS CREATES A -- A ABRUPT CHANGE FOR A PERSON COMING DOWN THE RAMP.  IF THEY HIT THAT EDGE, THEIR FOOTREST CAN CATCH HERE IN THE GUTTER.  THE WHEELCHAIR CAN ACTUALLY STOP, AND THEY CAN BE THROWN OUT OF IT.

SAME WAY GOING UP.  THE JARRING CAN BE THE SAME THING WITH THE FOOTREST HERE.  AND ALSO THAT JARRING CAN BE -- CAN BE INJUROUS (PHONETIC) TO PEOPLE -- IT CAN INJURE A PERSON.

BY MR. JOHNSON:

Q.   AND, MR. MASTIN, YOU INDICATED THAT IT'S REQUIRED UNDER BOTH FEDERAL AND STATE STANDARDS --

A.   THAT'S --

Q.   -- TO BE FLUSH?

A.   THAT'S CORRECT.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 05, 110411

993

MASTIN - DIRECT / MR. JOHNSON

THE COURT:  IS THAT A GAP?

THE WITNESS:  THAT'S A RAISED EDGE, YOUR HONOR.

THE COURT:  OKAY.

BY MR. JOHNSON:

Q.   ALSO KNOWN AS A LIP?

A.   SURE.  A LIP IS ANOTHER WAY TO SAY THAT.

Q.   AND SO THE REQUIREMENT IS IT BE SMOOTH AND FLUSH?

A.   THAT'S CORRECT.  FLUSH.

Q.   AND YOU MEASURED THIS PARTICULAR AT THREE QUARTERS OF AN INCH?

A.   THREE QUARTERS OF A INCH.

Q.   DID YOU OBSERVE OTHER -- DID YOU ASSESS OTHER CORNERS ON MARKET STREET IN -- IS THIS IN THE FINANCIAL DISTRICT?

A.   THIS IS AT FIFTH STREET, I THINK IT SAID.  SO THAT'S A LITTLE BIT FARTHER DOWN.  THAT IS COMMON ON MARKET STREET. THERE'S QUITE A FEW OF THOSE RANGING FROM A HALF INCH TO AN INCH HIGH.

Q.   DOES IT APPEAR TO YOU THEY WERE CONSTRUCTED THIS WAY OR THAT THAT'S THE RESULT OF SOME KIND OF DETERIORATION OR EROSION?

A.   IT'S CLEAR THAT THEY ARE CONSTRUCTED THAT WAY.

Q.   DID YOU OBSERVE ANY CONDITIONS THAT SUGGESTED THAT THEY WERE -- THAT THERE HAD BEEN ANY EFFORT BY THE CITY TO ELIMINATE THIS PARTICULAR BARRIER?

A.   NO.  I DIDN'T SEE ANY WHERE THEY HAD BEEN GROUND DOWN.  A

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

994

MASTIN - DIRECT / MR. JOHNSON

LOT OF CITIES WILL GRIND THESE EDGES DOWN.  IT'S PRETTY SIMPLE TO DO.  IT DOESN'T TAKE VERY LONG AND IT'S NOT EXPENSIVE.

I ACTUALLY DIDN'T SEE THAT.  I DON'T REMEMBER SEEING THAT ANYWHERE.

Q.   DID YOU ALSO MEASURE THE --

MR. JOHNSON:  YOU CAN ZOOM BACK OUT, MS. DREVON.

BY MR. JOHNSON:

Q.   DID YOU ALSO MEASURE THE RUNNING SLOPE AT THIS CURB RAMP?

A.   YES.  I SEE THAT I DID.

Q.   WHAT WAS YOUR MEASUREMENT?

A.   9.4 PERCENT.  THAT SHOWS THERE ON THE SECOND LINE ITEM.

Q.   AND DOES THAT EXCEED THE STANDARD?

A.   YES, IT DOES.

THE STANDARD IS 8.33, SO IT'S SIGNIFICANTLY ABOVE THAT.

Q.   DID YOUR MEASUREMENT OF THE MAXIMUM SLOPE OF THE FLARED SIDE ALSO EXCEED THE STANDARD?

A.   YES.

Q.   WHY IS THAT A PROBLEM?

A.   WELL, PEOPLE EXPECT TO USE THE CURB RAMP FROM DIFFERENT DIRECTIONS.  SO ESPECIALLY ON A BUSY STREET LIKE THIS, THEY ARE COMING FROM ALL DIFFERENT DIRECTIONS.

YOU MIGHT FIND YOURSELF USING THE SIDE SLOPE INSTEAD OF THE STRAIGHT RAMP PORTION.  SO THOSE ACTUALLY COME INTO PLAY QUITE A BIT, THE SIDE FLARES.  AND AT 14 AND 15.5, THAT'S --

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 05, 110411

1077

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,          )          COURT TRIAL
                               )
            PLAINTIFFS,        )          VOLUME 6
                               )
    VS.                        )          NO. C 07-03685 SBA
                               )
CITY AND COUNTY OF             )
SAN FRANCISCO, ET AL.,         )          PAGES 1077 - 1295
                               )
            DEFENDANTS.        )          OAKLAND, CALIFORNIA
_____)          MONDAY, APRIL 18, 2011

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                            KONECKY
                         180 MONTGOMERY STREET, SUITE 2000
                         SAN FRANCISCO, CALIFORNIA  94109
                    BY:  MARK T. JOHNSON,
                         ANDREW P. LEE,
                         KIRAN PRASAD,
                         GUY B. WALLACE, ATTORNEYS AT LAW

                         BROWN POORE LLP
                         THE WATERGATE TOWERS
                         2200 POWELL STREET, SUITE 745
                         EMERYVILLE, CALIFORNIA  94608
                    BY:  SCOTT A. BROWN, ATTORNEY AT LAW

FOR DEFENDANT:           OFFICE OF THE CITY ATTORNEY
                         SIXTH FLOOR - FOX PLAZA
                         1390 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA  94102
                    BY:  JAMES M. EMERY,
                         ELAINE M. O'NEIL,
                         KRISTINE A. POPLAWSKI, ATTORNEYS AT LAW

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258
                      DIANE E. SKILLMAN, CSR NO. 4909
        RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1119

MASTIN - DIRECT (RESUMED)/ JOHNSON

THE COURT:  IT IS?

THE CLERK:  YES.

THE COURT:  OKAY.  SO THAT'S IN EVIDENCE.

AND -- AND THE -- AND 4147 IS THE SAME MAP, WITH JUST -- WITH -- THAT'S BEEN AUGMENTED --

(EXHIBIT PUBLISHED.)

THE COURT:  IS THAT 4146?

MR. JOHNSON:  THAT'S 4147, YOUR HONOR.

THE COURT:  OKAY.

MR. JOHNSON:  THE DIFFERENCE BEING THAT THE 4146 HAD THE PEDESTRIAN RIGHT-OF-WAY AS INDICATED AND THE FACILITIES WHERE MR. MASTIN HAD DONE PEDESTRIAN RIGHT-OF-WAY IN THE SURROUNDING AREA IN THE PERIMETER OF THE FACILITY.

4147 IS THE SAME, EXCEPT IT ALSO INCLUDES ADDITIONAL FACILITIES THAT -- WHERE JUST THE FACILITY WAS INSPECTED.

THE COURT:  OKAY.  OKAY.  SO ANY OTHER COMMENTS?

SKWRAO:  NO.

THE COURT:  OKAY.  THE OBJECTION'S OVERRULED.  4147 WILL BE RECEIVED INTO EVIDENCE.

(PLAINTIFFS' EXHIBIT 4147

RECEIVED IN EVIDENCE)

MR. JOHNSON:  THANK YOU, YOUR HONOR.

Q.  I -- I DON'T KNOW, MR. MASTIN, IF YOU HAD LISTED ALL THE RECREATION CENTERS THAT YOU HAD -- THE TEN THAT YOU HAD RECALLED.  YOU'D MENTIONED BERNAL -- BERNAL HEIGHTS, UPPER NOE,

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1120

MASTIN - DIRECT (RESUMED)/ JOHNSON

AND TENDERLOIN, AND -- WERE THERE OTHERS?

A.     YES.   I NAMED THEM ALREADY.   THEY ARE WOH HEI YUEN, SOUTH OF MARKET, JOSEPH LEE, MINNIE AND LOVIE, EUREKA VALLEY, AND RICHMOND.

Q.     OKAY.  THANK YOU.  IF WE MAY HAVE THE NEXT EXHIBIT, PLEASE.

THIS WOULD BE, YOUR HONOR, EXHIBIT 22142A, WHICH SHOULD BE NEXT IN ORDER IN THE COURT'S BINDER.

THE COURT:  IT IS.  THANK YOU.

THE WITNESS:  I'M SORRY.  I FORGOT ONE, ACTUALLY.

BY MR. JOHNSON:

Q.     WHAT WAS THAT?

A.     POTRERO RECREATION CENTER.

Q.     OKAY.  THANK YOU, MR. MASTIN.

LET ME DIRECT YOUR ATTENTION TO WHAT'S BEEN MARKED FOR IDENTIFICATION AS EXHIBIT 2142A, WHICH IS ALSO ON THE SCREEN.

(EXHIBIT PUBLISHED.)

MR. JOHNSON:  CAN WE GO TO SEQUENCE 17, PLEASE, MS. DREVON.

(EXHIBIT PUBLISHED.)

BY MR. JOHNSON:

Q.     DO YOU RECOGNIZE THIS EXHIBIT, MR. MASTIN?

A.     YES, I DO.

Q.     OKAY.  CAN YOU TELL THE COURT WHAT IT IS?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1121

MASTIN - DIRECT (RESUMED)/ JOHNSON

A.    SURE.    THAT'S A PAGE FROM MY -- MY SITE ASSESSMENTS FOR THAT FACILITY.

Q.    FOR THE BERNAL HEIGHT -- BERNAL RECREATION AREA?

A.    THAT'S CORRECT.

Q.    OKAY.  AND THAT'S ONE OF THE FACILITIES THAT YOU INSPECTED?

A.    YES, I DID.

Q.    AND YOU PERFORMED A SITE ASSESSMENT OR AN ACCESSIBILITY ASSESSMENT FOR THAT FACILITY?

A.    YES, I DID.

Q.    OKAY.  DID YOU REACH A CONCLUSION AS TO WHETHER OR NOT THE BERNAL RECREATION CENTER WAS ACCESSIBLE?

A.    YES.

Q.    AND WHAT WAS YOUR CONCLUSION?

A.    I FOUND THAT IT WAS NOT ACCESSIBLE.

Q.    OKAY.

A.    FOR SEVERAL REASONS.

Q.    WHAT WAS THE BASIS FOR THAT FINDING?

A.    THE BASIS OF MY OPINION IS -- STEMS FROM MY INSPECTION AND THE IDENTIFICATION OF MANY BARRIERS IN -- IN MY REPORT.  I THINK CHIEF AMONG THEM ARE ENTRANCE TO THAT PLAYGROUND. THERE'S A PICTURE OF IT THERE.  THE GATE AND PATH OF TRAVEL IS INACCESSIBLE.  THE PLAYGROUND ITSELF IS ON SAND.  I THINK THERE WERE 22 PLAY COMPONENTS INVOLVED WITH THAT PLAY STRUCTURE, BUT THERE ARE ONLY -- OF 7 DIFFERENT TYPES, MEANING SWINGING,

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1122

MASTIN - DIRECT (RESUMED)/ JOHNSON

CLIMBING, ET CETERA, BUT THERE WERE ONLY 2 THAT ARE ACTUALLY ACCESSIBLE.  THOSE ARE THE SWINGS, SO THAT'S ONLY ONE TYPE, SO IT'S REALLY NOT EQUIVALENT.

MR. JOHNSON:  CAN WE HAVE THE NEXT --

THE WITNESS:  OH, AND --

MR. JOHNSON:  -- PICTURE.

(EXHIBIT PUBLISHED.)

THE WITNESS:  YEAH, THE RECREATION CENTER ASSOCIATED WITH THAT ALSO HAS BARRIERS.  I THINK CHIEF AMONG THAT -- THOSE WERE THE -- THE REST ROOMS WERE INACCESSIBLE.

MR. JOHNSON:  CAN WE HAVE THE NEXT SLIDE, PLEASE, MS. DREVON.

(EXHIBIT PUBLISHED.)

BY MR. JOHNSON:

Q.   THIS IS A MORE ENLARGED PICTURE OF THE -- THE MIDDLE PICTURE THAT WAS ON THE PRIOR PAGE, MR. MASTIN.

THIS IS THE PLAY AREA YOU WERE REFERRING TO?

A.   YES, IT IS.

Q.   AND WHAT ARE THE REASONS THAT YOU DETERMINED THAT THE PLAY AREA IS INACCESSIBLE?

A.   WELL, THERE ARE MANY PLAY COMPONENTS.  I THINK THERE WERE THREE OR FOUR STRUCTURES -- WHAT WE CALL COMPOSITE PLAY STRUCTURES.  AND THEY'RE ALL LOCATED ON SAND EXCEPT THERE'S A -- AN ACCESS TO TWO SWINGS WHICH CAN BE ACCESSED FROM THE SIDEWALK OR FROM THE PATHWAY, SO THE PARENTS OF CHILDREN WHO

1123

MASTIN - DIRECT (RESUMED)/ JOHNSON

SOCIALIZE HERE, THEY CAN'T ACTUALLY -- IF THEY WERE DISABLED, THEY WOULDN'T BE ABLE OR HAD A MOBILITY DISABILITY, THEY WOULDN'T BE ABLE TO BE NEAR THEIR CHILDREN.

AND, OF COURSE, IF THEIR -- THE CHILDREN THEMSELVES WERE -- WERE -- HAD A MOBILITY DISABILITY, IT WOULDN'T BE ABLE TO ACCESS ALMOST ALL OF THE -- THE OPPORTUNITIES HERE FOR -- FOR PLAY.

Q.   IS SAND CONSIDERED AN ACCESSIBLE SURFACE?

A.   NO, IT'S NOT.

Q.   WHY NOT?

A.   IT'S -- IT'S NOT FIRM AND SMOOTH, SO A -- WHEELCHAIR, WALKER, CANES, ET CETERA, BRACES, YOU'RE NOT ABLE TO USE THAT IN SAND.

Q.   OKAY.  AND ASSUMING THERE WERE A -- AN ACCESSIBLE SURFACE TO THE PLAY EQUIPMENT, WOULD THE -- WOULD THE -- THIS PLAYGROUND BE ACCESSIBLE IN THAT CASE?

A.   NO, THE GATE ACTUALLY HAD HARDWARE THAT -- IT WAS NOT ACCESSIBLE.  IT'S BASICALLY SOMETHING YOU HAD TO USE TWO HANDS AND LINE IT UP, AND YOU'RE REQUIRED TO ONLY HAVE TO USE ONE HAND.  THAT'S -- IN BOTH FEDERAL AND CALIFORNIA STANDARDS.

ALSO THE SLOPES WERE PRETTY EXTREME COMING THROUGH THAT GATE ON THE -- BOTH THE OUTSIDE AND THE INSIDE.  THE OUTSIDE'S ON THE SIDEWALK.  THE INSIDE'S ACTUALLY ON THE PLAYGROUND PROPERTY.

I THINK, YEAH, THAT'S -- LOOKS LIKE IT'S 8.7 PERCENT

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1124

MASTIN - DIRECT (RESUMED)/ JOHNSON

CROSS -- ACTUALLY, 8.9 CROSS-SLOPE, WHICH IS OVER FOUR TIMES THE ALLOWABLE.  THAT ALSO OCCURS WHILE YOU'RE OPERATING THE GATE, WHICH IS A DOOR AND IT'S EVEN MORE IMPORTANT FOR THAT TO BE LEVEL 'CAUSE YOU'RE TRYING TO USE A HAND TO OPERATE THE DOOR AND NOT ROLL ALL OVER THE PLACE OR TIP OVER.

(REVIEWING DOCUMENT).

Q.    THANK YOU.  CAN WE GO BACK TO THE PRIOR SLIDE, WHICH WAS SEQUENCE 17.

(EXHIBIT PUBLISHED.)

BY MR. JOHNSON:

Q.    MR. MASTIN, IN ADDITION TO THE PHOTOGRAPHS ON -- THAT APPEAR ON EXHIBIT 2142A, SEQUENCE 17, YOU ALSO HAVE A MATRIX THERE.  IS THAT A PART OF YOUR ACCESSIBILITY ASSESSMENT?

A.    YEAH, YOU'RE REFERRING TO THOSE CONDITIONS THAT I'M LOOKING AT?

Q.    YES.

A.    YES.  YES.

Q.    THE MATRIX THAT HAS A C-O-D COLUMN AND THEN A CONDITION DESCRIPTION, THEN ACTUAL?

A.    CORRECT?

Q.    IS THAT THE SAME TYPE OF -- DID YOU USE THE SAME METHODOLOGY IN RECORDING BARRIERS AT THIS BERNAL RECREATION CENTER AS YOU DID IN -- WITH RESPECT TO YOUR PEDESTRIAN RIGHTS-OF-WAY ACCESSIBILITY ASSESSMENTS?

A.    YES, I DID.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1138

MASTIN - DIRECT (RESUMED)/ JOHNSON

RESPECT --

A.    I'M SORRY.  THAT'S -- THAT WAS JANUARY 2010.

Q.    JANUARY 2010?

A.    MISTAKE.  YEAH.

MR. JOHNSON:  COULD WE SEE THE NEXT PHOTOGRAPH.

(EXHIBIT PUBLISHED.)

BY MR. JOHNSON:

Q.    WHAT WERE THE PROBLEMS WITH THIS CORNER FROM THE PERSPECTIVE OF DISABILITY ACCESS, MR. MASTIN?

A.    THOSE PROBLEMS WERE EXTREMELY STEEP RUNNING SLOPE.  LOOKS LIKE OVER THREE TIMES THE ALLOWABLE 8.33 PERCENT.  A WIDTH THAT IS NARROWER THAN THE -- THAN BOTH FEDERAL AND CALIFORNIA STANDARDS.  A TOP LANDING THAT IS -- HAS NONCOMPLIANT OR HAS -- A CROSS-SLOPE THAT EXCEEDS TOO -- THE ALLOWABLE CROSS-SLOPE. IT ALSO HAS A HALF-INCH EDGE AT THE BOTTOM WHEN IT SHOULD BE FLUSH.

AND LOOKS LIKE TO USE THE CROSSWALK IN ONE DIRECTION, A PERSON WOULD HAVE THE CHOICE OF EITHER USING THE STREET OR USING THE -- WITHIN THE CROSSWALK MARKINGS AND HAVING TO NAVIGATE A -- A GRATE WITH WIDE OPENINGS, MUCH WIDER THAN ARE ALLOWABLE IN THE PATH OF TRAVEL OR IN THE CIRCULATION AREA.

AND THE -- THERE'S ALSO NOT 48 INCHES OF AREA BETWEEN THE CURB AND THE CROSSWALK MARKINGS.

Q.    WHERE IS THIS CORNER IN RELATION TO BERNAL RECREATION CENTER?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1139

MASTIN - DIRECT (RESUMED)/ JOHNSON

A.     (REVIEWING DOCUMENT.)

I DON'T RECALL HOW CLOSE IT IS.  IT'S WITHIN A BLOCK.

Q.    DID YOU --

YOUR HONOR, PLAINTIFFS REQUEST THAT EXHIBIT 2142A, SEQUENCE 8, BE ADMITTED INTO EVIDENCE.

THE COURT:  ANY OBJECTION?

MR. EMERY:  NO OBJECTION.

THE COURT:  REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 2142A, SEQUENCE 8

RECEIVED IN EVIDENCE)

THE COURT:  AND THAT'S -- WHEN YOU SAY "SEQUENCE 8," YOU MEAN THE PHOTOGRAPH BEHIND IT AS WELL?

MR. JOHNSON:  YES.  I'M SORRY, YOUR HONOR.  I SHOULD CLARIFY --

THE COURT:  IT'S A TWO-PAGE DOCUMENT, 2142A, SEQUENCE 8.

BY MR. JOHNSON:

Q.    MR. MASTIN, WERE THERE ANY OTHER REASONS OTHER THAN THOSE YOU DISCUSSED THAT YOU DETERMINED THAT THE BERNAL RECREATION CENTER WAS INACCESSIBLE?

A.    YES.

Q.    WHAT OTHER REASONS COME TO MIND?

A.    THERE WERE MANY BARRIERS IDENTIFIED.  I THINK THE OTHER MAJOR ONE THAT COMES TO MIND ARE IN THE RECREATION CENTER, THE

1140

MASTIN - DIRECT (RESUMED)/ JOHNSON

REST ROOMS ARE NOT ACCESSIBLE.  THEY HAVE HIGH THRESHOLDS, AND THEY APPEAR TO BE RECENTLY -- I THINK THEY WERE PART OF THE RENOVATION THAT OCCURRED IN 1994.  SO THOSE THRESHOLDS ARE ABOUT AN INCH HIGH, AND THEY SHOULD BE NO MORE THAN A HALF-INCH HIGH.

ALSO THE CLEARANCES IN THE ACCESSIBLE STALLS, IT'S TOO NARROW.  BUT I COULDN'T SEE ANY REASON WHY IT SHOULDN'T BE THE CORRECT WIDTH.  THERE WAS NO LIMITATION THERE.

ALSO AT THE LAVATORIES LACKED INSULATION TO PROTECT SOMEONE FROM BURNING THEIR LOWER EXTREMITIES THAT -- WHO DON'T HAVE FEELING.

AND SOME OF THE ACCESSORIES WERE TOO HIGH, NOT WITHIN REACH RANGES, SO THESE ARE ALL THINGS THAT WOULD HAVE BEEN NONCOMPLIANT WITH CALIFORNIA AND FEDERAL STANDARDS AT THE TIME OF THAT 1994 RENOVATION.

Q.   OKAY.  AND WHAT'S THE BASIS FOR YOUR UNDERSTANDING THAT THERE WAS A RENOVATION IN 1994?

A.    ACTUALLY, THAT COMES FROM A PERMIT THAT WAS FILED ON THE FACILITY WITH THE VALUATION THAT WAS HIGH ENOUGH TO ALLOW ME TO IDENTIFY IT AS THE PERIOD OF TIME FOR THE RENOVATION.

Q.   AND THAT 1994 WOULD BE AFTER THE EFFECTIVE DATE OF THE AMERICANS WITH DISABILITIES ACT?

A.    THAT'S CORRECT.

Q.   SO ANY RENOVATIONS OR NEW CONSTRUCTION WOULD NEED TO BE STRICTLY COMPLIANT WITH ADAAG?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1141

MASTIN - DIRECT (RESUMED)/ JOHNSON

A.   THAT'S CORRECT.

Q.   DID YOU ALSO CONDUCT A -- AN ACCESSIBILITY ASSESSMENT OF THE UPPER NOE RECREATION CENTER?

A.   YES, I DID.

Q.   OKAY.  AND DID YOU FORM AN OPINION AS TO WHETHER OR NOT THE UPPER NOE RECREATION CENTER WAS ACCESSIBLE?

A.   YES, I DID.

Q.   WHAT WAS YOUR OPINION?

A.   I FOUND THAT IT -- IT WAS NOT ACCESSIBLE.

Q.   AND WHAT WAS THE BASIS FOR THAT OPINION?

A.   AGAIN, BASED ON THE DATA THAT I GATHERED ON SITE, AND -- AND IDENTIFIED IN THE -- AND THESE -- THE DATA PORTION OF THESE ASSESSMENTS.  THERE WERE MANY BARRIERS, BUT I FOUND -- I THINK THE CHIEF BARRIERS WERE A PROBLEM WITH SIGNAGE.  ALSO SOME PORTIONS WEREN'T -- THIS WAS THE SITE OF A 2006 RENOVATION, AND SOME PORTIONS WERE NOT IMPROVED AT ALL, ALTHOUGH I THOUGHT THEY SHOULD BE, AND THEY REMAINED INACCESSIBLE LIKE THE TENNIS COURT.

AND ALSO THE -- THE REST ROOMS WERE NOT -- WERE -- DID NOT CONFORM TO THE STATE AND FEDERAL STANDARDS IN EFFECT AT THAT TIME.

Q.   HOW SO?  WHAT WAS WRONG WITH THE REST ROOMS?

A.   WELL, THE REST ROOM DOORS WERE HEAVY, AND THEY CLOSED -- TOO HEAVY TO -- HEAVIER THAN THEY SHOULD BE.  SHOULD BE 5 POUNDS.  AND I BELIEVE THEY WERE 7 OR 8.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1142

MASTIN - DIRECT (RESUMED)/ JOHNSON

AND THEY ALSO CLOSED MUCH TOO QUICKLY, ABOUT TWICE AS FAST AS THEY SHOULD SO THAT CAN TRAP PEOPLE TRYING TO USE IT.

ALSO THE ACCESSORIES WERE TOO HIGH, AND -- IN TWO REST ROOMS.

Q.   DID YOU ALSO INSPECT THE AREA AROUND THE UPPER NOE RECREATION CENTER FOR THE PURPOSE OF DETERMINING THE ACCESSIBILITY OF THE RECREATION CENTER?

A.   I DID.

MR. JOHNSON:  CAN WE HAVE EXHIBIT 2143A, SEQUENCE 30, MS. DREVON.

(EXHIBIT PUBLISHED.)

BY MR. JOHNSON:

Q.   DO YOU RECOGNIZE THIS DOCUMENT, MR. MASTIN?

A.   YES, I DO.

Q.   IS IT A COPY OF A PAGE, SEQUENCE 30, TO BE SPECIFIC, FROM YOUR REPORT ON UPPER NOE RECREATION CENTER?

A.   YES, IT IS.

Q.   AND CAN YOU TELL THE COURT WHAT IT REPRESENTS?

A.   YES.  WHEN I'M GATHERING DATA FOR THESE ASSESSMENTS, I'M LOOKING FOR -- I'M CONCERNED WHERE BUS STOPS ARE, POINTS OF TRANSPORTATION THAT PEDESTRIANS MIGHT USE.

I SURVEYED THIS BECAUSE THERE'S A BUS STOP DOWN THE ROAD, AND THERE WERE TWO WAYS TO GET TO THE SITE FROM THAT BUS STOP.

1150

MASTIN - DIRECT (RESUMED)/ JOHNSON

AFTER I'VE HAD A CHANCE TO REVIEW HIS REPORTS.

THE COURT:  OKAY.  THE QUESTION IS WITHDRAWN.

MR. JOHNSON:  THANK YOU.

Q.   DID YOU IDENTIFY OTHER CONDITIONS BESIDES THIS CROSS-SLOPE LEADING TO UPPER NOE RECREATION CENTER THAT RENDERED, IN YOUR OPINION, THE UPPER NOE RECREATION CENTER INACCESSIBLE?

A.   YES, I MENTIONED SIGNAGE, TENNIS COURT, FOR EXAMPLE, NOT BEING MADE ACCESSIBLE, AND WE ALREADY DISCUSSED REST ROOMS, I THINK.

Q.   ALL RIGHT.

AND, YOUR HONOR, I'D LIKE TO MOVE INTO EVIDENCE EXHIBIT 2143A.

THE COURT:  SEQUENCE 30?  ANY OBJECTION?

MR. EMERY:  NO OBJECTION, YOUR HONOR.

THE COURT:  OKAY.  2143A, SEQUENCE 30, WILL BE RECEIVED INTO EVIDENCE.

(PLAINTIFFS' EXHIBIT 2143A, SEQUENCE 30 RECEIVED IN EVIDENCE)

MR. JOHNSON:  THANK YOU, YOUR HONOR.

Q.   MR. MASTIN, DID YOU ALSO CONDUCT A SITE ASSESSMENT OF THE TENDERLOIN RECREATION CENTER?

A.   YES, I DID.

Q.   AND WHEN DID YOU CONDUCT THAT SITE ASSESSMENT?

A.   ALSO JANUARY OF 2010.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1151

MASTIN - DIRECT (RESUMED)/ JOHNSON

MR. JOHNSON:  CAN WE HAVE EXHIBIT 2144A, SEQUENCE 6, DISPLAYED AND ALSO MARKED FOR IDENTIFICATION?

(PLAINTIFFS' EXHIBIT 2144A, SEQUENCE 6 MARKED FOR IDENTIFICATION)

(EXHIBIT PUBLISHED.)

BY MR. JOHNSON:

Q.    DO YOU RECOGNIZE THIS DOCUMENT, MR. MASTIN?

A.    YES.  YES, I DO.

Q.    WHAT DOES IT REPRESENT?

A.    IT'S DATA RECORDED REGARDING THE FIRST FLOOR GIRLS' REST ROOM IN TENDERLOIN RECREATION CENTER.

Q.    OKAY.  AND WHAT'S THE PROBLEM, IF ANY, WITH THE GIRLS' REST ROOM ON THE FIRST FLOOR OF THE TENDERLOIN RECREATION CENTER?

A.    THE CROSS-SLOPE LEADING TO THE ACCESSIBLE FEATURES IN THE REST ROOM IS -- IS TOO HIGH, OVER TWICE THE ALLOWABLE -- AND THAT'S -- I'VE INDICATED HERE THAT IT'S -- I MEASURED IT FOR THE LENGTH OF THE REST ROOM OR NEAR THERE?

Q.    AND WHY IS THAT A PROBLEM FOR A PERSON WITH A MOBILITY DISABILITY?

A.    WELL, ANY CROSS-SLOPE REQUIRES THE -- SAY, THE USER OF A WHEELCHAIR TO OVERCOME THAT.  SO IT LEADS TO BUMPING INTO THINGS AND INJURY, ALSO THE BALANCE PROBLEM.  YOU CAN FALL OVER.

IF YOU'RE NOT ABLE TO -- TO DISCERN WHAT IS UP AND

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1152

MASTIN - DIRECT (RESUMED)/ JOHNSON

DOWN -- THERE ARE PEOPLE WITHOUT A -- SUFFICIENT BALANCE. ANY -- ANY KIND OF CONDITION WHERE YOU'RE USING A DEVICE YOU'RE GOING TO NEED A STABLE SURFACE, THAT WILL UNDERMINE THE USE OF THAT DEVICE IF IT'S SLOPED.

Q.    OKAY.

YOUR HONOR, I'D MOVE INTO EVIDENCE WITH THE COURT'S PERMISSION EXHIBIT 2144A, SEQUENCE 6.

THE COURT:  ANY OBJECTION?

MR. EMERY:  NO OBJECTION.

THE COURT:  REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 2144A,

SEQUENCE 6 RECEIVED IN EVIDENCE)

MR. JOHNSON:  CAN YOU PLEASE DISPLAY THE NEXT IN ORDER, PLEASE.

THIS WOULD BE 2144A, SEQUENCE 13.

(EXHIBIT PUBLISHED.)

MR. JOHNSON:  CAN YOU ZOOM IN A LITTLE BIT, PLEASE.

(EXHIBIT PUBLISHED.)

BY MR. JOHNSON:

Q.    MR. MASTIN, DO YOU REPRESENT (SIC) WHAT'S BEEN MARKED AS EXHIBIT 2144A SEQUENCE 13?

MR. EMERY:  OBJECTION, YOUR HONOR.

THE COURT:  DO YOU REPRESENT IT OR DO YOU RECOGNIZE?

MR. JOHNSON:  I'M SORRY --

THE COURT:  YOU SAID "DO YOU REPRESENT."

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1155

MASTIN - DIRECT (RESUMED)/ JOHNSON

JUST TO THE INTRODUCTION OF THE -- THE DOCUMENT INTO EVIDENCE; IS THAT RIGHT?

IS THERE --

THE COURT:  YOU MEAN, THE ONE THAT HE JUST MADE?

MR. JOHNSON:  YES.

THE COURT:  MY UNDERSTANDING IS WHEN YOU -- WHEN YOU ASK THAT IT BE RECEIVED INTO EVIDENCE, HE OBJECTED.  WELL, ACTUALLY HE DIDN'T EVER GIVE THE LEGAL OBJECTION.  HE JUST -- EXCEPT FOR IT'S UNDISCLOSED -- IT WAS AN UNDISCLOSED EXHIBIT, SO I'M ASSUMING THAT IT -- HE DID NOT WANT IT RECEIVED INTO EVIDENCE.

WHAT'S YOUR -- THERE'S A QUESTION THAT YOU'RE WONDERING ABOUT?

MR. JOHNSON:  I'LL JUST PROCEED, YOUR HONOR.  AND --

THE COURT:  OKAY.

MR. JOHNSON:  -- IF MR. EMERY HAS AN OBJECTION, HE CAN MAKE IT.

THE COURT:  OKAY.

BY MR. JOHNSON:

Q.    MR. MASTIN, DID YOU -- AS PART OF YOUR ASSESSMENT OF THE TENDERLOIN RECREATION CENTER, DID YOU INSPECT THE SECOND FLOOR WOMEN'S REST ROOM?

A.    YES I DID.

Q.    DID YOU REACH ANY CONCLUSIONS WITH RESPECT TO THE ACCESSIBILITY OF THAT REST ROOM?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1156

MASTIN - DIRECT (RESUMED)/ JOHNSON

A.    YES, I DID.

Q.    AND WHAT WAS YOUR CONCLUSION?

A.    MY CONCLUSION WAS THAT IT WAS COMPLETELY INACCESSIBLE.

Q.    I'M SORRY?

A.    COMPLETELY INACCESSIBLE.

Q.    AND WHAT WAS THE BASIS FOR THAT OPINION?

A.    A PERSON IN A WHEELCHAIR, FOR EXAMPLE, WOULD BE UNABLE TO -- OR MOST PERSONS IN WHEELCHAIRS WOULD BE UNABLE TO OPEN THAT DOOR TO LEAVE THE REST ROOM, BECAUSE IT'S -- THE CLEAR SPACE IN ORDER TO DO THAT IS OBSTRUCTED BY THE LAVATORY AND THE WASTE -- THE BUILT-IN WALL WASTE RECEPTACLE.

Q.    DID YOU -- I'M SORRY IF I ALREADY ASKED YOU THIS.

DID YOU FORM AN OPINION ABOUT THE OVERALL ACCESSIBILITY OF THE TENDERLOIN RECREATION CENTER?

A.    YES, I DID.

Q.    AND WHAT WAS THAT OPINION?

A.    IT WAS NOT ACCESSIBLE.

Q.    OKAY.  AND WERE THERE OTHER BASES FOR THAT OPINION BESIDES THE INACCESSIBILITY OF THE GIRL'S REST ROOM ON THE FIRST FLOOR AND THE WOMEN'S REST ROOM ON THE SECOND FLOOR?

A.    SURE.  CHIEFLY, THE ELEVATOR IS NOT FUNCTIONING.  AND THE STAFF MENTIONED THAT IT HAS NEVER REALLY FUNCTIONED IN THE TIME THAT THIS IS CONSTRUCTED SINCE -- I'M ASSUMING SINCE 1992 WHEN I BELIEVE THERE WAS A RENOVATION.

THERE ARE PROGRAMS LOCATED ON THE SECOND FLOOR, SO

1157

MASTIN - DIRECT (RESUMED)/ JOHNSON

THOSE AREN'T -- THOSE WOULDN'T BE AVAILABLE TO A PERSON WHO NEEDED AN ELEVATOR WHO COULDN'T NEGOTIATE STAIRS.  ALSO THE PROBLEM WITH THE UPPER FLOOR WOMEN'S REST ROOM OCCURS IN THE MEN'S REST ROOM AS WELL, BUT I COULD -- I COULD SEE THAT DOOR COULD BE REVERSED AND THAT CONDITION COULD BE ELIMINATED -- ACTUALLY, THAT BARRIER.

Q.     WERE THE REST ROOMS THAT YOU IDENTIFIED AS HAVING PROBLEMS THE ONLY REST ROOMS THAT WERE AVAILABLE IN THE RECREATION CENTER TO THE PUBLIC?

A.     NO, THERE ARE BOYS' AND GIRLS' REST ROOMS ON THE FIRST FLOOR, AND BOTH OF THOSE HAD HAD BARRIERS INSIDE THEM, TOO. BOTH OF THEM HAD THE SLOPING FLOORS, AND THE HARDWARE WAS BEYOND REACH ON THE STALL DOORS, FAR ABOVE ANY REACH RANGE UNDER FEDERAL OR CALIFORNIA STANDARDS UNDER THE BEST OF CONDITIONS.  I THINK THEY WERE -- IT WAS ABOVE 54 INCHES HIGH, WHICH IS THE HIGHEST ALLOWABLE UNDER FEDERAL STANDARDS, AND 40 INCHES IS THE HIGHEST ALLOWABLE UNDER CALIFORNIA --

Q.     MR. MASTIN, DID YOU ALSO INSPECT THE WOH HEI YUEN RECREATION CENTER IN SAN FRANCISCO?

A.     YES, I DID.

Q.     AND DID YOU FORM ANY OPINION ABOUT THE ACCESSIBILITY OF THAT RECREATION CENTER FOR PERSONS WITH MOBILITY DISABILITIES?

A.     YES, I DID.

Q.     WHAT OPINION DID YOU FORM?

A.     (REVIEWING DOCUMENT.)

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1158

MASTIN - DIRECT (RESUMED)/ JOHNSON

I -- MY OPINION IS THAT THAT FACILITY IS NOT ACCESSIBLE.

Q.    AND WHAT WAS THE BASIS FOR THAT OPINION?

A.    CHIEFLY, IT WAS A LACK OF SIGNAGE AND THE MEN'S AND WOMEN'S REST ROOMS WERE BOTH INACCESSIBLE, AGAIN DEALING WITH -- MAINLY WITH CLEARANCES.

MR. JOHNSON:  LET ME HAVE EXHIBIT NO. 2145A, SEQUENCE 11 DISPLAYED, PLEASE, AND MARKED FOR IDENTIFICATION.

(PLAINTIFFS' EXHIBIT 2145A, SEQUENCE 11 MARKED FOR IDENTIFICATION)

(OFF-THE-RECORD DISCUSSION.)

(EXHIBIT PUBLISHED.)

MR. JOHNSON:  CAN YOU ZOOM IN A LITTLE BIT.

(EXHIBIT PUBLISHED.)

BY MR. JOHNSON:

Q.    DO YOU RECOGNIZE WHAT'S BEEN MARKED AS EXHIBIT 2145A, SEQUENCE 11, MR. MASTIN?

A.    YES, I DO.

Q.    CAN YOU STATE WHAT IT IS, PLEASE?

A.    SURE.  THAT'S DATA -- THE DATA PORTION OF THE ASSESSMENT REGARDING THE WOMEN'S REST ROOM ACCESSIBLE STALL DOOR AT THE WOH HEI YUEN RECREATION CENTER.

Q.    OKAY.  AND YOU STATE IN YOUR NOTES THERE, "THIS DOOR IS COMPLETELY UNUSABLE TO THE MAJORITY OF THE WHEELCHAIR USERS. FURTHER, IT IS LIKELY TO TRAP A USER WHO ATTEMPTS TO MANEUVER

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1159

MASTIN - DIRECT (RESUMED)/ JOHNSON

INTO A TRANSFER POSITION TO THE WATER CLOSET OR WC."

WHAT'S THE BASIS FOR THAT CONCLUSION?

A.    RIGHT.  AN ACCESSIBLE STALL, ONE OF THE REQUIREMENTS IS THAT YOU CAN -- APART FROM THE DIMENSIONS THAT ARE REQUIRED, IS THAT YOU CAN ACTUALLY ENTER IT, THEN CLOSE THE DOOR BASED ON A WHEELCHAIR-SIZED AREA, WHICH IS 30 INCHES BY 48.

IN THIS CASE, BOTH THE MEN'S AND THE WOMEN'S, THERE'S NO WAY TO ACTUALLY GET IN THERE AND CLOSE THE DOOR.  IT WAS NOT ACTUALLY PHYSICALLY POSSIBLE USING THAT AREA.

IF YOU COULD, WHEN YOU HAVE THAT -- THAT MIX OF THE DOOR SWINGING AND YOU TRYING TO NEGOTIATE AN AREA THAT ISN'T BIG ENOUGH, THERE'S A HIGH POTENTIAL FOR BEING TRAPPED WHERE YOU ACTUALLY GET INTO A POSITION WHERE YOU CAN'T EXTRICATE YOURSELF BECAUSE THE DOOR IS JAMMED UP AGAINST THE WHEEL AND SLIP BETWEEN THE WHEEL AND THE WHEELCHAIR AND WHATNOT.

THAT HAPPENS A LOT.  AND THIS IS ONE OF THOSE CASES WHERE IF YOU ATTEMPTED TO USE IT, THAT IS HIGHLY LIKELY THAT IT WOULD HAPPEN.

MR. JOHNSON:  PLAINTIFFS WOULD MOVE EXHIBIT 4144 -- I'M SORRY -- 2145A, SEQUENCE 11, INTO EVIDENCE.

THE COURT:  ANY OBJECTIONS?

MR. EMERY:  NO OBJECTION.

THE COURT:  REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 2145A, SEQUENCE 11 RECEIVED IN EVIDENCE)

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1160

MASTIN - DIRECT (RESUMED)/ JOHNSON

BY MR. WALLACE:

Q.    MR. MASTIN, WAS THAT THE ONLY WOMEN'S REST ROOM AVAILABLE ON THE -- THE PREMISES OF WOH HEI YUEN RECREATION CENTER?

A.    TO MY KNOWLEDGE, YES, THAT WAS THE ONLY ONE.

Q.    AND WERE THERE OTHER PROBLEMS WITH THE WOH HEI YUEN RECREATION CENTER THAT LED YOU TO CONCLUDE THAT CENTER WAS INACCESSIBLE?

A.    SURE.  THE SIGNAGE -- I IDENTIFIED A PROBLEM WITH THE SIGNAGE.  THE LEGAL ADDRESS OCCURS ON THE SOUTH SIDE ON A STEEP SIDEWALK AND THE PATH OF TRAVEL OF THAT ENTRANCE IS QUITE -- IS NONCOMPLIANT BECAUSE OF -- I BELIEVE IT WAS RUNNING SLOPES AND CROSS-SLOPES.

BUT THERE'S NO SIGN DIRECTING TO THE ENTRANCE THAT MIGHT BE -- THAT'S USABLE ON THE NORTHEAST CORNER.  AND THAT WOULD ALSO BE USEFUL TO HAVE A SIGN AT POWELL STREET, WHICH IS THE BOTTOM OF THAT SLOPE, SO A PERSON WOULDN'T ACTUALLY MAKE THEIR WAY UP TO THE LEGAL ADDRESS AND THEN HAVE TO COME BACK DOWN ASSUMING THEY COULD MAKE IT UP THE SLOPE TO THAT ADDRESS.

THERE'S ALSO AN ENTRANCE ON THE NORTH SIDE THAT'S NOT ACCESSIBLE EITHER, AND THERE'S NO SIGNAGE THERE EITHER. AND THERE'S NO ACCESSIBLE ENTRANCE SIGNAGE AT THE -- WHAT I IDENTIFIED AS THE ONE INTENDED ACCESSIBLE ENTRANCE.

Q.    OKAY.

THE COURT:  WHENEVER YOU'RE AT A GOOD BREAKING POINT, IT'S TIME FOR THE MORNING BREAK.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1162

MASTIN - DIRECT (RESUMED)/ JOHNSON

BY MR. JOHNSON:

Q.   MR. MASTIN, IS THE MINNIE LOVIE RECREATION CENTER ONE OF THE RECREATION CENTERS YOU CONDUCTED A SITE -- AN ACCESSIBILITY ASSESSMENT FOR?

A.   YES, IT IS.

Q.   AND DID YOU FORM AN OPINION AS TO WHETHER OR NOT THE MINNIE LOVIE RECREATION CENTER WAS ACCESSIBLE?

A.   YES, I DID.

Q.   WHAT WAS THAT OPINION?

A.   IT IS NOT ACCESSIBLE.

Q.   AND WHAT WAS THE BASIS FOR THAT OPINION?

A.   WELL -- (REVIEWING DOCUMENTS) -- I FOUND ISSUE WITH SIGNAGE, INSUFFICIENT SIGNAGE.  ALSO THE PATH OF TRAVEL TO THE BALL FIELDS DOWN BELOW THE RECREATION CENTER WERE NOT ACCESSIBLE.  ALSO ALL OF THE RAMPS WHICH WERE APPARENTLY CONSTRUCTED IN 2003 ARE -- DO NOT CONFORM TO THE STANDARD IN EFFECT AT THE TIME.

AND THERE WERE SOME VERY HEAVY GATES THAT WOULD HAVE BEEN VERY DIFFICULT TO OPERATE.

Q.   LET ME HAVE YOU LOOK AT WHAT'S BEEN MARKED AS EXHIBIT NO. 2148A, SEQUENCE 2.

(EXHIBIT PUBLISHED.)

BY MR. JOHNSON:

Q.   ARE THOSE PHOTOGRAPHS OF MINNIE AND LOVIE RECREATION CENTER?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1163

MASTIN - DIRECT (RESUMED)/ JOHNSON

A.    YES, THESE ARE PICTURES OR PHOTOGRAPHS I TOOK OF THE STREET ENTRANCE TO THE BALL FIELD.

Q.    OKAY.  YOU MENTIONED THAT THERE IS -- THERE WAS A PROBLEM WITH SIGNAGE.  WAS THERE SIGNAGE FOR THE ENTRANCE TO THE BALL FIELD AREA OF THE RECREATION CENTER?

A.    IN THE -- THERE ARE FIVE PICTURES THERE.  IN THE LOWER LEFT PHOTOGRAPH, THERE IS A ACCESSIBLE SYMBOL DIRECTING SOMEONE TO CONTINUE UP THAT SIDEWALK UP THE HILL.  THE PROBLEMS I FOUND WERE THERE WERE -- THERE'S NO SIGN FARTHER UP THE HILL TO DIRECT YOU TO THE ACCESSIBLE ENTRANCE.  YOU ACTUALLY GO PAST THE ONE THAT'S ACCESSIBLE THAT WOULD CONTINUE -- MOST PEOPLE WOULD CONTINUE UP TO THE STREET ABOVE, WHICH IS EVEN HIGHER. THERE'S NO ACCESSIBLE SYMBOL THERE EITHER, BUT IT'S OBVIOUS THERE 'CAUSE YOU'RE IN FRONT OF REC CENTER, THAT THAT'S WHERE YOU SHOULD GO.

BUT THAT INVOLVES A LOT MORE VERTICAL DISTANCE THAN THE -- WHAT I THINK IS THE INTENDED ACCESSIBLE PATH THAT'S BETWEEN THERE THAT KIND OF LIES AT THE SAME LEVEL AS THE RECREATION CENTER.

Q.    AND IT -- I'M SORRY.

A.    THAT'S IT.

Q.    IS THERE A PROBLEM WITH THE PATH AS WELL THAT YOU'VE IDENTIFIED IN EXHIBIT 2148A, SEQUENCE 2?

A.    YES, IN THIS EXHIBIT, THERE'S TWO WAYS TO GET TO THE BALL FIELD.  THIS IS FROM THE STREET SIDE.  THE GENERAL PUBLIC CAN

1164

MASTIN - DIRECT (RESUMED)/ JOHNSON

JUST WALK THROUGH.  YOU CAN SEE A DIRT PATH THERE IN THE UPPER RIGHT-HAND PHOTOGRAPH.  BUT THIS ASPHALT PATH, WHICH -- IT'S NOT A COMPLIANT PATH OF TRAVEL, BUT AT LEAST IT'S POSSIBLE -- THAT'S CHAINED OFF.

THE OTHER ACCESS TO THIS BALL FIELD IS DOWN A PRETTY LONG RAMP SYSTEM AND INVOLVES VERY STEEP CROSS-SLOPES.  THERE'S ONLY TWO OPTIONS.  NEITHER OF THEM ARE ACCESSIBLE.

AN IMPORTANT CONSIDERATION HERE IS A PERSON ARRIVING AT THIS POINT TO GO TO THE BALL FIELDS ACTUALLY NEEDS TO CONTINUE UP A VERY STEEP HILL FOR VERY LONG DISTANCE AND THEN ACCESS THE LEVEL OF THE RECREATION CENTER AND ALL THE RAMP SYSTEMS BETWEEN THERE AND THE BALL FIELD, SO IT'S QUITE A BIT OF DEVELOPED DISTANCE JUST TO GO WHAT OTHER PEOPLE CAN JUST GO 10 FEET, YOU ACTUALLY NEED TO GO -- AND I'M ESTIMATING, BUT IT MUST BE 20 FEET VERTICAL ELEVATION UP AND BACK DOWN.

MR. JOHNSON:  CAN WE HAVE THE NEXT --

OH, YOUR HONOR, I WOULD LIKE TO MOVE THIS INTO EVIDENCE AS EXHIBIT 2148A, SEQUENCE 2.

THE COURT:  IS IT JUST THE -- OKAY.  ANY OBJECTION?

MR. EMERY:  NO OBJECTION.

THE COURT:  OKAY.  2148 (SIC), SEQUENCE 2, WILL BE RECEIVED INTO EVIDENCE.

(PLAINTIFFS' EXHIBIT 2148A, SEQUENCE 2

RECEIVED IN EVIDENCE)

MR. JOHNSON:  THANK YOU.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1165

MASTIN - DIRECT (RESUMED)/ JOHNSON

AND IF WE MAY HAVE MARKED AS 2148A, SEQUENCE 8.

THE COURT:  OKAY.  IT'S ALREADY MARKED.  IS IT, LISA?

THE CLERK:  YES, YOUR HONOR.  YES.

THE COURT:  OKAY.

BY MR. JOHNSON:

Q.  MR. MASTIN, CAN YOU EXPLAIN WHAT SEQUENCE 8 AND THE PHOTOGRAPHS DESCRIBE THERE?

A.  SURE.  THIS IS THE -- THIS IS THE -- THE ENTRANCE RAMP FROM THE NORTH SIDE OF THIS FACILITY, SO THIS IS NOT WHAT I THINK IS THE INTENDED ACCESSIBLE ENTRANCE, BUT IT -- IT'S THE ONE THAT'S PERCEIVED AS SUCH FOR SOMEONE ARRIVING.  THAT'S WHERE THE RECREATION CENTER BASICALLY IS LOCATED.  AND THIS IS -- YEAH, SO THAT'S IT.

Q.  AND WHAT ARE THE PROBLEMS, IF ANY, IN TERMS OF DISABILITY ACCESS WITH THIS RAMP?

A.  THIS RAMP WAS APPARENTLY RECENTLY CONSTRUCTED, AND I FOUND PROBLEMS WITH EXCESSIVE RUNNING SLOPE, AND CROSS-SLOPE AND -- AND THAT OCCURRED ON THE RAMP AND THE LANDING.  ALSO THE HANDRAILS WERE NOT -- WERE NOT COMPLIANT WITH THE -- THE STANDARDS IN EFFECT AT THE TIME.  AND THAT GOES FOR ALL THE NEW RAMPS THAT I SAW IN THIS FACILITY.

Q.  AT THIS FACILITY?

A.  AT THIS FACILITY, YES.

MR. JOHNSON:  PLAINTIFFS WOULD MOVE INTO EVIDENCE

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1166

MASTIN - DIRECT (RESUMED)/ JOHNSON

EXHIBIT 2141 -- 2148 -- EXCUSE ME -- SEQUENCE 8.

THE COURT:  ANY OBJECTION TO RECEIVING IN EVIDENCE WHAT'S BEEN MARKED FOR IDENTIFICATION AS PLAINTIFFS' EXHIBIT 2148A, SEQUENCE 8?

MR. EMERY:  NO OBJECTION.

THE COURT:  OKAY.  THE REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 2148A, SEQUENCE 8

RECEIVED IN EVIDENCE)

MR. JOHNSON:  AND WE WOULD LIKE TO MARK FOR IDENTIFICATION SEQUENCE 10 OF EXHIBIT 2148A.  THAT WILL BE 2148A, SEQUENCE 10.

(EXHIBIT PUBLISHED.)

(PLAINTIFFS' EXHIBIT 2148A, SEQUENCE

10 MARKED FOR IDENTIFICATION)

BY MR. JOHNSON:

Q.  MR. MASTIN, WHAT DOES EXHIBIT 2148A SEQUENCE 10 REPRESENT?

A.   THIS IS DATA REGARDING THE TENNIS COURT WHICH IS CONTIGUOUS WITH THE MINNIE LOVIE RECREATION CENTER AND I PERCEIVE IT TO BE ON THE SAME SITE.

Q.   OKAY.  IS THE PATHWAY THERE THAT'S DISPLAYED IN THE FOUR PHOTOGRAPHS ACCESSIBLE?

A.   NO, THAT'S A DIRT PATH, CONVOLUTED, INSUFFICIENT CLEARANCES TO THE GATE.  THE OTHER OPTION IS A STAIR.  THERE'S TWO OPTIONS FOR THAT COURT.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1167

MASTIN - DIRECT (RESUMED)/ JOHNSON

Q.   OKAY.   AND THAT'S ACCESS TO -- THAT'S THE PATHWAY TO THE TENNIS COURTS.

A.   RIGHT.

Q.   IN YOUR OPINION, ARE THE TENNIS COURTS ACCESSIBLE AT MINNIE AND LOVIE RECREATION CENTER?

A.   NO, THEY ARE NOT.

Q.   ARE THERE OTHER REASONS THEY'RE NOT ACCESSIBLE BESIDES THE PATHWAY?

A.   I ACTUALLY DID NOT GO BEYOND THE GATE TO IDENTIFY ANYTHING IN THE -- IN THE COURTS IN THIS SITUATION.  THESE ARE -- PRETTY MUCH PREVENT ENTRY FOR MOST PEOPLE WITH MOBILITY DISABILITIES.

Q.   OKAY.

PLAINTIFFS WOULD MOVE INTO EVIDENCE EXHIBIT 2148A, SEQUENCE 10.

THE COURT:  ANY OBJECTION?

MR. EMERY:  NO OBJECTION.

THE COURT:  REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 2148A,

SEQUENCE 10 RECEIVED IN EVIDENCE)

MR. JOHNSON:  IF WE MAY MARK FOR IDENTIFICATION 2148A, SEQUENCE 14.

THE COURT:  I THINK ALL OF THESE ARE -- THE ONES THAT HAVE THE EXHIBITS TABS ON THEM HAVE ALREADY BEEN MARKED, HAVE THEY NOT, LISA?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1168

MASTIN - DIRECT (RESUMED)/ JOHNSON

THE CLERK:  YES.

THE COURT:  SO YOU CAN JUST IDENTIFY THEM AS HAVING ALREADY BEEN MARKED FOR IDENTIFICATION.

MR. JOHNSON:  OKAY.

Q.  SO EXHIBIT 2148A, SEQUENCE 14, MR. MASTIN, WHAT DOES THAT SHOW?

A.  YES, THESE ARE PHOTOGRAPHS AND DATA REGARDING THE -- THE SECOND OF TWO PATH OF TRAVELS (SIC) FROM THE REC CENTER -- OR, ACTUALLY, TO THE BALL FIELD FROM ANY LOCATION.

THIS HAPPENS TO BE THE LOWER PORTION OF THE RAMP SYSTEM AND PATHWAY SYSTEM CONNECTING THE RECREATION CENTER ABOVE WITH THE BALL FIELDS BELOW.

Q.  AND IS THIS PATH TO THE BASEBALL FIELD ACCESSIBLE?

A.  NO, IT IS NOT.

Q.  CAN YOU EXPLAIN WHY NOT?

A.  THERE WERE SEVERAL REASONS.  THIS PARTICULAR DATA THAT WE'RE LOOKING AT HERE IS INDICATING A 9.8 PERCENT CROSS-SLOPE, WHICH IS OVER -- AGAIN, IT'S ALMOST FIVE TIMES THE ALLOWABLE. AND THAT'S -- THAT'S UNAVOIDABLE.  THAT IS THE ONLY PATH.  IT ALSO SLOPES TOWARDS A -- A DROPOFF AND A GRATE.  SO IT'S -- IF YOU LOSE CONTROL THERE, THAT'S -- THAT CAN BE A SIGNIFICANT RISK OF INJURY THERE.  AND THE PLANTING IS ALSO OVERGROWN RESTRICTING -- RESTRICTING THE WIDTH THAT'S AVAILABLE AND -- PORTIONS OF THE PATHWAY ARE MUD COVERED, AND I LOOK AT THAT AS A DESIGN FLAW.  THEY'RE NOT -- THEY AREN'T ACTUALLY LOCATED SO

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1169

MASTIN - DIRECT (RESUMED)/ JOHNSON

THAT THE DRAINAGE DOESN'T RUN ACROSS THE PATHS AND BRING ALL THE SANDS AND EARTH ACROSS THEM.

MR. JOHNSON:  PLAINTIFFS WOULD MOVE INTO EVIDENCE EXHIBIT 2148A, SEQUENCE 14.

THE COURT:  ANY OBJECTION?

MR. EMERY:  NO OBJECTION.

THE COURT:  REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 2148A, SEQUENCE 14 RECEIVED IN EVIDENCE)

MR. JOHNSON:  THANK YOU.

Q.    IF WE MAY -- IF YOU COULD LOOK AT THE NEXT EXHIBIT 21 -- THAT'S BEEN MARKED EXHIBIT 2148A, SEQUENCE 15, MR. MASTIN.

A.    YES.  I -- I SEE IT.

Q.    WHAT DOES THAT -- WHAT DO THOSE PHOTOGRAPHS IN THIS EXHIBIT ILLUSTRATE?

(EXHIBIT PUBLISHED.)

THE WITNESS:  THESE ARE PHOTOS AND MEASUREMENTS FOR A GATE.  THIS IS ONE OF THE GATES BETWEEN THE WEST AREA WHICH HAS THE PLAYGROUNDS AND THE BARBECUES, I BELIEVE, AND THE RAMP SYSTEM AND THE RECREATION CENTER.

BY MR. JOHNSON:

Q.    AND IS THERE AN ALTERNATIVE ACCESS ROUTE TO THOSE LOCATIONS?

A.    THERE ARE -- ARE MORE THAN ONE SET OF GATES.  IT'S NOT CLEAR TO ME WHICH ONES ARE -- ARE ALWAYS OPEN.  THE PRESENCE OF

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1170

MASTIN - DIRECT (RESUMED)/ JOHNSON

THE MULTIPLE GATES INDICATES TO ME THAT THEY'RE NECESSARY.

Q.    HAVE THESE -- AND WHAT SPECIFICALLY IS THE PROBLEM WITH THIS SET OF GATES?

A.    THESE HAVE EXTREMELY HEAVY OPERATION -- IT -- IT REQUIRES EXTREME FORCE TO ACTUALLY OPERATE THE DOOR OR THE GATE.

Q.    OKAY.  AND HOW DID YOU MEASURE THAT?

A.    WITH A DOOR PRESSURE GAUGE.

SO IN THIS CASE, IT'S 10 TO 28 POUNDS, MEANING ONE DOOR WAS 10 AND THE OTHER WAS 28.  THE MAXIMUM WOULD BE 5 POUNDS, SO IT'S FROM TWICE TO SIX -- TO ALMOST SIX TIMES. AND THERE WERE OTHER GATES.  I REMEMBER THE EMERGENCY GATE TO THE SOUTH.  THAT'S THE EMERGENCY EXIT GATE, WHICH WAS SIMILAR ABOUT THE SAME FORCE.

MR. JOHNSON:  PLAINTIFFS MOVE INTO EVIDENCE EXHIBIT 2148A, SEQUENCE 15.

THE COURT:  ANY OBJECTION?

MR. EMERY:  NO OBJECTION.

THE COURT:  REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 2148A, SEQUENCE

15 RECEIVED IN EVIDENCE)

BY MR. JOHNSON:

Q.    MR. MASTIN, DID -- DID YOU IDENTIFY BARRIERS AT THE OTHER RECREATION CENTERS THAT YOU INSPECTED SIMILAR TO THOSE THAT YOU'VE DESCRIBED WITH RESPECT TO THE RECREATION CENTERS THAT WE'VE DISCUSSED?

1171

MASTIN - DIRECT (RESUMED)/ JOHNSON

A.    YES, I -- I DID FIND SIMILAR BARRIERS.

Q.    AND WERE ANY OF THOSE OTHER RECREATION CENTERS THAT YOU INSPECTED ACCESSIBLE, IN YOUR PROFESSIONAL OPINION?

A.    NO.   IN MY OPINION, NONE OF THE TEN THAT I INSPECTED WERE ACCESSIBLE.

Q.    WERE ALL OF THESE RECREATION CENTERS THAT YOU INSPECTED IDENTIFIED ON MR. HECKER'S -- IN MR. HECKER'S REPORT AS A BLUE DOT SITE INDICATING THAT IT WAS AN ACCESSIBLE SITE?

A.    THAT'S CORRECT, YES.

Q.    AND DO YOU KNOW WHETHER THESE SITES WERE ALSO IDENTIFIED ON THE CITY'S DEPARTMENT OF RECREATION AND PARKS WEBSITE AS BEING ACCESSIBLE?

A.    YES, AS I CHECKED THEM IN THE PAST, THEY WERE INDICATED AS SUCH.   AND I JUST VERIFIED THAT ACTUALLY THIS WEEK.   POTRERO RECREATION CENTER WAS NOT LISTED ANYMORE.

(SIMULTANEOUS COLLOQUY.)

BY MR. JOHNSON:

Q.    -- POTRERO RECREATION CENTER?

A.    YES, I DID.

Q.    OKAY.   WHAT DID YOU FIND THERE?

A.    IT WAS CLOSED FOR CONSTRUCTION.

Q.    AND WAS THAT INFORMATION AVAILABLE ON THE WEBSITE?

A.    NO, IT WAS INDICATED AS AN ACCESSIBLE FACILITY.   THAT INSPECTION WAS PERFORMED ABOUT A MONTH AGO.   AND SO THE RECENT INFORMATION LAST WEEK INDICATES THAT IT BEEN TAKEN OFF THE

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1174

MASTIN - DIRECT (RESUMED)/ JOHNSON

Q.    DID YOU SEE PING PONG TABLES AT ANY OF THE RECREATION SITES THAT YOU OBSERVED?

A.    NOT ONE THAT I DID A REPORT FOR, NO.

Q.    ARE YOU AWARE OF ANY OTHER RECREATION SITES THAT HAVE PING PONG TABLES?

A.    SURE.  I SAW THAT AT -- AT SUNSET RECREATION CENTER. YEAH.

Q.    SO JUST AT THE TWO RECREATION CENTERS THERE WERE PING PONG TABLES?

A.    CORRECT.

          MR. JOHNSON:  LIKE TO HAVE MARKED AS EXHIBIT 2104A --

          THE COURT:  I THINK THESE ARE ALREADY.

          MR. JOHNSON:  OKAY.

          THE COURT:  OH, IS THIS ONE THAT HAS NOT BEEN --

          MR. JOHNSON:  NO, IT HAS BEEN MARKED.  I THINK, YOUR HONOR, IT'S IN THE BINDER, AND IT'S BEEN IDENTIFIED BY US AS 2104A, SEQUENCE 22, THIS IS SKIPPING THROUGH A FEW TABS IN THE BINDERS.

          THE COURT:  YEAH, I SEE THAT.

               (EXHIBIT PUBLISHED.)

BY MR. JOHNSON:

Q.    MR. MASTIN, DID YOU -- IN ADDITION TO THE RECREATION CENTERS, DID YOU ALSO INSPECT AND CONDUCT SITE ASSESSMENTS OF -- OR ACCESSIBILITY ASSESSMENTS OF FACILITIES IN GOLDEN GATE

          RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1175

MASTIN - DIRECT (RESUMED)/ JOHNSON

PARK?

A.    YES, I DID.

Q.    WHICH FACILITIES DID YOU -- OR SITES DID YOU INSPECT IN GOLDEN GATE PARK?

A.    THERE WAS THE BOTANICAL GARDENS OR STRYBING ARBORETUM, AND STOW LAKE, THE TENNIS FACILITY, ARCHERY, OAK WOODLANDS.  I THINK THAT'S ALL.  OH, WAIT.  THAT'S ALL OF THEM EXCEPT FOR A PATH OF TRAVEL ASSESSMENT, PUBLIC RIGHT-OF-WAY ASSESSMENT.

Q.    WERE ANY OF THESE SITES SITES THAT YOU WOULD REGARD AS -- AS REPRESENTING PROGRAMS THAT HAVE ALTERNATIVE PROGRAMS IN OTHER PARTS OF THE CITY OUTSIDE OF GOLDEN GATE PARK?

A.    NO.  AND CONSIDERING THAT LAST QUESTION, I JUST REMEMBERED THERE'S ALSO A CONSERVATORY OF FLOWERS WHICH IS UNIQUE.

Q.    I'M SORRY.  WHICH IS...?

A.    CONSERVATORY OF FLOWERS.  I LEFT THAT OFF MY LIST.

Q.    OKAY.

        LET ME ASK YOU ABOUT THE BOTANICAL GARDENS.  WHEN DID YOU INSPECT THE BOTANICAL GARDENS?

A.    I INSPECTED THE BOTANICAL GARDENS TWICE, ACTUALLY, AND REVIEWED -- I INSPECTED IT IN A PRE-CONSTRUCTION STATE.  I ALSO REVIEWED DRAWINGS FOR THE CONSTRUCTION WHICH WAS A PATHWAY RENOVATION, AND I ALSO INSPECTED IT AFTER THE CONSTRUCTION WAS PERFORMED.

        AND THE FIRST INSPECTION WAS IN -- I BELIEVE IT WAS

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1176

MASTIN - DIRECT (RESUMED)/ JOHNSON

THE FALL OF 2008, AND THE LAST INSPECTION WAS JUST RECENTLY.

LET'S SEE, FEBRUARY 21ST OF THIS YEAR.

Q.    OKAY.  DIRECTING YOUR ATTENTION TO WHAT'S BEEN MARKED AS -- AS EXHIBIT 2104A, SEQUENCE 2, DO YOU RECOGNIZE THAT DOCUMENT?

A.    YES, I DO.

Q.    CAN YOU TELL US WHAT IT IS?

A.    SURE.  THAT'S DATA AND PHOTOGRAPHS FROM MY ORIGINAL PRECONSTRUCTION INSPECTION, AND I'M LOOKING AT THE ENTRANCE TO THE BOOK STORE, WHICH IS AT THE -- WHAT I CONSIDER THE MAIN ENTRANCE TO THE BOTANICAL GARDENS.  IT LIES JUST OUTSIDE THE GATE.

Q.    OKAY.  AND DO YOU KNOW IF THAT CONDITION CONTINUES TO EXIST TODAY?

A.    YES, AND IT LOOKS EXACTLY THE SAME THE LAST TIME I WAS THERE.

Q.    WHICH WAS WHEN?

A.    ON FEBRUARY 11TH.

Q.    OF THIS YEAR?

A.    OH, I'M SORRY.  FEBRUARY 21ST OF THIS YEAR.

Q.    AND IS THE BOOK STORE AT THE BOTANICAL GARDENS ACCESSIBLE TO PERSONS WITH MOBILITY DISABILITIES?

A.    NO, THERE'S A -- A STEP UP TO GET IN.  I JUST -- I NOTICED THERE WAS PLENTY OF ROOM TO -- TO CONSTRUCT A SMALL RAMP THERE.  IT'S ONLY SEVEN AND A HALF INCHES HIGH, SO THAT'S

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 06, 110418

1178

MASTIN - DIRECT / MR. JOHNSON

BY MR. JOHNSON:

Q.   ARE THERE REST ROOMS AT THE BOTANICAL GARDEN IN GOLDEN GATE PARK?

A.   YES, THERE ARE.

Q.   DID YOU CONDUCT AN INSPECTION AND ACCESSIBILITY ASSESSMENT OF THOSE REST ROOMS?

A.   YES, I DID.

Q.   ARE THEY ACCESSIBLE?

A.   NO, THEY ARE NOT.

Q.   OKAY.

WHERE ARE THE REST ROOMS LOCATED?

A.   THERE ARE TWO SETS OF REST ROOMS IN THE BOTANICAL GARDENS. ONE SET IS LOCATED ON THE -- NEAR FRIEND'S GATE ON THE NORTH SIDE, THE EXTREME NORTH EDGE OF THE PROPERTY.  IT IS ACTUALLY THE SECOND ENTRANCE.  THOSE ARE DESIGNATED AS ACCESSIBLE.

AND THEN THERE'S A SET OF REST ROOMS NOT AT THE SOUTH EXTREME PART OF THE SITE, BUT JUST SOUTH OF THE MAIN ENTRANCE AREA CALLED THE -- OH, IT'S A GREAT MEADOW IS WHAT THEY CALL IT.  AND THOSE ARE NOT ACCESSIBLE IN ANY WAY.

MR. JOHNSON:  CAN WE JUMP FORWARD A FEW SLIDES TO THE OVERHEAD VIEW OF THE GARDENS?

(EXHIBIT DISPLAYED ON SCREEN.)

(PAUSE IN THE PROCEEDINGS.)

AND TO THE OVERHEAD VIEW OF THE GARDENS.  RIGHT THERE.  CAN YOU ZOOM IN ON THE TOP PICTURE, PLEASE?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 06, 110418

1181

MASTIN - DIRECT / MR. JOHNSON

(WITNESS STEPS DOWN TO SCREEN.)

THERE ARE TWO RED CIRCLES ON THIS AERIAL VIEW.  AND THIS RED CIRCLE UP HERE (INDICATING) AT THE TOP OF THE PHOTOGRAPH IS THE FRIEND'S GATE BATHROOM THE ONE THAT'S DESIGNATED AS ACCESSIBLE.

AND THIS ONE DOWN HERE BELOW THE GREAT MEADOW, THAT'S WHAT THIS CIRCLE IS, THE MAIN ENTRANCE IS RIGHT HERE -- ACTUALLY THE MAIN ENTRANCE IS RIGHT HERE (INDICATING).  THIS IS THE INACCESSIBLE REST ROOM.

THAT'S ABOUT -- I JUST DID A MEASUREMENT OFF OF GOOGLE MAPS.  THAT'S APPROXIMATELY 1500 FEET BETWEEN THESE TWO.  BOTANICAL GARDEN, THE EXTENT OF IT, IS ALL THE WAY HERE.  I AM OUTLINING THIS (INDICATING).  I DON'T KNOW HOW TO DESCRIBE IT FOR THE RECORD, BUT IT IS BASICALLY ALL THE PICTURE EXCEPT THE UPPER LEFT.

Q.   SO THE ROADWAY THAT ENCOMPASSES THE -- MOST OF THE PICTURE IS INDICATIVE OF THE BORDER OF THE BOTANICAL GARDENS?

A.   YEAH, THAT'S A GREAT WAY TO DESCRIBE IT.  THAT'S EXACTLY WHAT IT IS.  IT IS BOUNDED BY THE ROADWAYS.  IT'S QUITE A BIG AREA.

Q.   OKAY.  ARE BOTH OF THOSE REST ROOMS ACCESSIBLE TO PERSONS WITHOUT DISABILITIES?

A.   YES, THEY ARE.

Q.   AND WHICH IS THE ONE THAT IS THE DESIGNATED ACCESSIBLE REST ROOM?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1182

MASTIN - DIRECT / MR. JOHNSON

A.   THAT'S THE ONE AT THE TOP AT FRIEND'S GATE.

Q.   AND THE OTHER ONE NEAR THE BOTTOM IS THE ONE THAT YOU'VE INDICATED WAS NOT ACCESSIBLE IN ANY WAY?

A.   THAT'S CORRECT.

Q.   WHY DON'T YOU TAKE THE STAND AGAIN AND LOOK AT THOSE.

          (WITNESS RESUMES THE WITNESS STAND.)

          EXHIBIT 2104A SEQUENCE 7 HAS FIVE PHOTOGRAPHS.  ARE THOSE PHOTOGRAPHS OF THE -- WHICH REST ROOM ARE THOSE PHOTOGRAPHS OF?

A.   THAT'S 21AA -- -A, 2104-A.

Q.   NO, THIS IS 2104A SEQUENCE 7.

A.   OKAY.

Q.   ACCORDING TO YOUR ACCESSIBILITY ASSESSMENT.

          MR. JOHNSON:  CAN WE GET THAT DISPLAYED AGAIN PLEASE?

          (EXHIBIT DISPLAYED ON SCREEN.)

A.   YES.  I RECOGNIZE THAT.  THIS IS THE -- THESE ARE PHOTOGRAPHS OF THE WOMEN'S, WHAT I CALL THE SOUTH REST ROOMS, THE LOWER CIRCLE THAT ARE INACCESSIBLE.

Q.   AND WHAT ARE THE MEN'S REST ROOMS LOOK LIKE?  ARE THEY SIMILAR?

A.   YEAH.  THEY ARE PRETTY MUCH THE SAME.

Q.   IN YOUR OPINION HAS THERE BEEN ANY EFFORT TO MAKE THESE REST ROOMS ACCESSIBLE?

A.   NO.  SOME OF THAT EFFORT WOULD BE QUITE EASY; LIKE JUST

1183

MASTIN - DIRECT / MR. JOHNSON

LOWERING ACCESSORIES.  THEY ARE MUCH TOO HIGH.  INSULATING --
THERE MAY NOT BE HOT WATER THERE.  WIDENING THE DOOR,
CREATING -- GETTING RID OF THE STEP AT THE ENTRANCE.

IT'S-- I AM JUST GOING FROM MEMORY.  THIS ISN'T ON
THIS FORM, BUT THERE IS A STEP GETTING UP INTO BOTH REST ROOMS.
THE STALLS ARE MUCH TOO NARROW TO ALLOW ENTRANCE BY A PERSON
USING A WHEELCHAIR, FOR EXAMPLE.

Q.   SO A PERSON WITH A MOBILITY DISABILITY WOULD HAVE TO
TRAVEL A DISTANCE IF THEY WERE IN THAT PART OF THE PARK, THEY
WOULD HAVE TO TRAVEL A DISTANCE TO THE OTHER REST ROOM IN ORDER
TO BE ABLE TO USE THE REST ROOM?

A.   YES, MOST LIKELY.

Q.   IS THE OTHER REST ROOM ACCESSIBLE?

A.   NO.

Q.   WHAT ARE THE PROBLEMS WITH THE OTHER REST ROOM?

A.   I NOTICED IN THE MEN'S REST ROOM THERE WERE SLOPES GETTING
TO THE ACCESSIBLE STALL.  THERE WERE -- GOING FROM MEMORY, I
BELIEVE THEY WERE OVER FIVE PERCENT CROSS SLOPE, WHICH IS MORE
THAN TWICE WHAT'S ALLOWED.

AND THAT'S, IN MY MIND, THAT SHOULD HAVE BEEN
CORRECTED IF WE ARE RELYING ON THOSE REST ROOMS, PARTICULARLY
FOR THIS SIZE FACILITY.

I THINK THERE WERE SOME -- OH, YES.  AND THE
ACCESSORIES WERE TOO HIGH.  THE PAPER TOWEL DISPENSER WAS TOO
HIGH, TOO, IN BOTH REST ROOMS.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 06, 110418

1185

MASTIN - DIRECT / MR. JOHNSON

A.   NO, I DID NOT.

Q.   BY THE WAY, MR. MASTIN, IN YOUR OPINION IS THE BOTANICAL GARDENS AT GOLDEN GATE PARK A UNIQUE FACILITY?

A.   YES.

Q.   DOES ITS UNIQUENESS REQUIRE THAT IT BE ACCESSIBLE TO PERSONS WITH MOBILITY DISABILITIES?

A.   YES, THAT WOULD BE REQUIRED.

Q.   IS THERE ANY ALTERNATIVE BOTANICAL GARDENS OR SIMILAR FACILITY IN THE CITY THAT YOU ARE AWARE OF THAT SOMEONE COULD ACCESS IN LIEU OF BEING ABLE TO ACCESS THE BOTANICAL GARDENS?

A.   NOT THAT I KNOW OF.

Q.   DID YOU INSPECT THE PATH OF TRAVEL ALONG THE BOTANICAL GARDENS AS WELL?

A.   YES, I DID.

Q.   AND IS THERE SOME PART OF THE WALKWAYS WITHIN THE BOTANICAL GARDENS THAT IS DESIGNATED AS BEING AN ACCESSIBLE PATH?

A.   YES.  THE CONSTRUCTION PROJECT WAS -- IT WAS CLEAR FROM THE DRAWINGS THAT THERE WERE BASICALLY TWO DIFFERENT KINDS OF PATHWAYS.

THERE WERE PATHWAYS THAT WERE IMPROVED AND CREATED TO PROVIDE ACCESSIBILITY AND THERE WERE OTHER PATHWAYS THAT WERE JUST REPAVED OR MODIFIED OR ALTERED THAT WERE NOT INTENDED TO BE ACCESSIBLE.  AND THEY PRETTY MUCH EXTENDED THROUGHOUT THE ENTIRE FACILITY.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1186

MASTIN - DIRECT / MR. JOHNSON

SO IN THE BEGINNING, THE FIRST INSPECTION, I LOOKED AT EVERYTHING, CONSIDERING THE SIZE I DIDN'T SEE EVERYTHING. ON THE SECOND INSPECTION I SPECIFICALLY LOOKED AT ALL THOSE PATHS THAT WERE DESIGNATED AND INTENDED TO BE ACCESSIBLE AT A MINIMUM AND THEN A FEW OTHER THINGS, TOO.

Q.   DID YOU FIND PROBLEMS WITH THE DESIGNATED ACCESSIBLE PATHS?

A.   YES, I DID.

Q.   WHAT WERE THOSE PROBLEMS?

A.   I FOUND EXCESSIVE RUNNING SLOPE AND SOME CROSS SLOPE PROBLEMS, MUCH HIGHER THAN -- THAT'S ALLOWED.

I SEE HERE I'VE TABULATED THOSE -- I FOUND THAT IN 17 PLACES 5.7 PERCENT RUNNING SLOPE TO 15.4 PERCENT WHERE FIVE PERCENT WOULD BE THE MAXIMUM WITHOUT HANDRAILS AND RAMP FEATURES.

Q.   WERE THOSE ALONG THE PATHS CONSTRUCTED AND DESIGNATED ACCESSIBLE?

A.   YES.  THESE ARE THE PATHS THAT HAVE BEEN -- THEY'RE INTENDED TO BE ACCESSIBLE AND MARKED AS SUCH.  THERE WERE THREE PORTIONS THAT WERE ADDED UP TO 180 FEET OF CONTINUOUS, NONACCESSIBLE RUNNING SLOPE ALONG THESE PATHS.

Q.   WERE -- DID THE DESIGNATED ACCESSIBLE PATHS GO TO ALL PARTS OF THE PARK?

A.   NO.  WHAT -- THE DESIGNATED ACCESSIBLE PATHS WERE A SUBSET OF WHAT'S AVAILABLE TO THE GENERAL PUBLIC.  SO, IT'S -- IT WAS

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 06, 110418

1187

MASTIN - DIRECT / MR. JOHNSON

PARTICULARLY IMPORTANT THAT THE SUBSET ACTUALLY BE USABLE BY PERSONS WITH MOBILITY DISABILITIES BECAUSE THAT'S REALLY ALL THEY HAVE.

Q.   WERE THERE PARTS OF THE PARK THAT WERE, IN YOUR OPINION, DISTINCT OR UNIQUE FROM OTHER PARTS OF THE PARK WHERE THE DESIGNATED ACCESSIBLE PATH DID NOT PERMIT TRAVEL?

A.   YES.   THERE WERE -- THE PARK IS DIVIDED INTO I THINK SEVEN OR EIGHT AREAS, AND THEY ARE ALL VERY MUCH DIFFERENT.   AND THE PATHS DO NOT EXTEND -- THE DESIGNATED ACCESSIBLE PATHS DO NOT CIRCULATE AMONG ALL THOSE AREAS.

Q.   SO THERE WERE PROGRAMS WITHIN THE BOTANICAL GARDENS THAT COULD NOT BE ACCESSED BY A PERSON WITH A MOBILITY DISABILITY EVEN IF THE DESIGNATED ACCESSIBLE PATHS HAD BEEN ACTUALLY ACCESSIBLE?

A.   THAT'S CORRECT.

        MR. JOHNSON:  LET ME HAVE DISPLAYED EXHIBIT 2147A-1, PLEASE, WHICH IS IN THE COURT'S BINDER.  AND IT IS THE OVERHEAD VIEW OF THE CONSERVATORY OF FLOWERS.

        (EXHIBIT DISPLAYED ON SCREEN.)

BY MR. JOHNSON:

Q.   ARE YOU ABLE TO TELL THE COURT WHAT THIS DOCUMENT REPRESENTS, MR. MASTIN?

        MR. EMERY:  OBJECTION, YOUR HONOR.  THIS IS A LATE DISCLOSED DEMONSTRATIVE.

        MR. JOHNSON:  I BELIEVE THIS WAS DISCLOSED AS PART

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930