# EXHIBIT 11

1296

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,          )          COURT TRIAL
                               )
          PLAINTIFFS,          )          VOLUME 6
                               )
     VS.                       )          NO. C 07-03685 SBA
                               )
CITY AND COUNTY OF             )
SAN FRANCISCO, ET AL.,         )          PAGES 1296 - 1467
                               )
          DEFENDANTS.          )          OAKLAND, CALIFORNIA
_____)          WEDNESDAY, APRIL 20, 2011

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                              KONECKY
                         180 MONTGOMERY STREET, SUITE 2000
                         SAN FRANCISCO, CALIFORNIA  94109
                    BY:  MARK T. JOHNSON,
                         GUY B. WALLACE, ATTORNEYS AT LAW


FOR DEFENDANT:           OFFICE OF THE CITY ATTORNEY
                         SIXTH FLOOR - FOX PLAZA
                         1390 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA  94102
                    BY:  JAMES M. EMERY,
                         ELAINE M. O'NEIL, ATTORNEYS AT LAW


REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258

                      DIANE E. SKILLMAN, CSR NO. 4909

          RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1448

SPIELMAN - REDIRECT / MR. JOHNSON

IN OUR CASE IN THE DEFENSE.

THE COURT:  MR. SPIELMAN, YOU MAY STEP DOWN.  YOU ARE NOT EXCUSED FROM FURTHER TESTIMONY BECAUSE YOU ARE SUBJECT TO BEING RECALLED.  OKAY?  YOU MAY STEP DOWN AT THIS TIME.

COUNSEL, YOU MAY CALL YOUR NEXT WITNESS.

MR. WALLACE:  PLAINTIFFS CALL MR. JOHN PAUL SCOTT.

MS. VAN AKEN:  HE IS IN THE HALLWAY.

THE COURT:  OKAY.  THANK YOU.

MR. SCOTT, IF YOU WOULD PLEASE STEP FORWARD.

THE CLERK:  RAISE YOUR RIGHT HAND.

JOHN PAUL SCOTT,

CALLED AS A WITNESS FOR THE PLAINTIFFS, HAVING BEEN DULY SWORN, TESTIFIED AS FOLLOWS:

THE WITNESS:  I DO.

THE CLERK:  PLEASE BE SEATED.

PLEASE STATE YOUR FULL NAME FOR THE COURT AND SPELL YOUR LAST NAME.

THE WITNESS:  I AM JOHN PAUL SCOTT, S-C-O-T-T.

THE CLERK:  THANK YOU.

DIRECT EXAMINATION

BY MR. WALLACE:

Q.   GOOD AFTERNOON MR. SCOTT.

A.   GOOD AFTERNOON.

Q.   YOU'RE CURRENTLY THE DEPUTY DIRECTOR OF PHYSICAL ACCESS IN THE MAYOR'S OFFICE ON DISABILITY; IS THAT CORRECT?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 07, 110420

1449

SCOTT - DIRECT / MR. WALLACE

A.    YES.

Q.    HOW LONG HAVE YOU HELD THAT POSITION, SIR?

A.    SINCE THE FALL OF 2004.

Q.    OKAY.  ABOUT HOW MANY YEARS WOULD THAT BE?

A.    THAT WOULD BE ALMOST SIX YEARS, SEVEN YEARS.

Q.    IT IS TRUE, IS IT NOT, THAT AS DEPUTY DIRECTOR OF PHYSICAL ACCESS AT THE MAYOR'S OFFICE ON DISABILITY, YOU DON'T HAVE ANY PEOPLE WHO REPORT TO YOU DIRECTLY?

A.    THAT'S CORRECT.

Q.    DOES THE MAYOR'S OFFICE ON DISABILITY HAVE ANY WRITTEN DEFINITION OF PHYSICAL ACCESSIBILITY?

A.    NO, I DON'T THINK SO.

Q.    IS THERE ANY FORMAL POLICY DOCUMENTS FROM MAYOR'S OFFICE ON DISABILITY THAT SETS OUT ITS DEFINITION OF ACCESSIBLE?

A.    WELL, IF I COULD EXPLAIN.

      WE DO HAVE POLICY TO COMPLY WITH ADAAG AS OUR ACCESSIBILITY GUIDELINE INCLUDING THE CALIFORNIA BUILDING CODE ACCESSIBILITY REGULATIONS.  WE CHOOSE NOT TO USE THE UNIFORM FEDERAL ACCESSIBILITY STANDARD, UFAS, WHICH TITLE II IT ALLOWS US TO USE EITHER ONE, BUT WE ELECT TO USE ADAAG.

Q.    OKAY.  I APPRECIATE THAT INFORMATION, SIR, BUT IT'S NOT DIRECTLY RESPONSIVE TO THE QUESTION THAT I ASKED YOU.

      THE QUESTION I ASKED YOU IS FROM YOUR DEPOSITION.

      "IS THERE ANY FORMAL POLICY DOCUMENTS FROM

      MAYOR'S OFFICE ON DISABILITY THAT SETS OUT ITS

1456

SCOTT - DIRECT / MR. WALLACE

ALLOW HIS RECOLLECTION TO BE REFRESHED.  AND THEN YOU DON'T READ THINGS INTO EVIDENCE.  YOU ALLOW HIM TO REFRESH HIS RECOLLECTION AND TESTIFY INDEPENDENTLY OF THE DOCUMENT.

IF THAT'S WHAT YOU ARE DOING.

MR. WALLACE:  OKAY.

BY MR. WALLACE:

Q.   MR. SCOTT, YOU DID NOT DO ANY OF YOUR OWN FORMAL SITE INSPECTIONS AS PART OF PREPARING THE UPHAS?

A.   WELL, I NEED TO EXPLAIN.  WE HAVE DISCUSSED THIS IN MY DEPOSITIONS.  I DIDN'T DO INSPECTIONS, I DID SITE VISITS AND SITE SURVEYS, BUT NOT INSPECTIONS.

Q.   AND WHAT IS A FORMAL SITE INSPECTION AS YOU DEFINE IT?

A.   THAT WOULD BE A SITE INSPECTION THAT IS DONE WITH A CHECKLIST, WITH A TAPE MEASURE, WITH AN ELECTRONIC LEVEL, GOING OUT AND SPENDING SEVERAL HOURS AT A SITE AND FORMALLY GOING THROUGH RECORDING ALL OF THE OBSERVATIONS, DOCUMENTING THAT, AND MAKING A PUBLIC RECORD.

Q.   IT IS TRUE, IS IT NOT, THAT THERE IS NO DEADLINE FOR THE COMPLETION OF THE BARRIER REMOVAL ITEMS THAT ARE IDENTIFIED IN THE UNIFORM PHYSICAL ACCESSIBILITY STRATEGY?

A.   THE ORIGINAL GOALS AND OBJECTIVES THAT ARE LISTED ON OUR WEBSITE DID HAVE A TIMETABLE FOR THAT ACTIVITY IN A SUNSET OF BOTH FUNDING AND CONSTRUCTION, AND WE HAVE -- THOSE DEADLINES HAVE ALL SLIPPED.

Q.   OKAY.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1463

SCOTT - DIRECT / MR. WALLACE

CERTIFICATION THAT THE CITY HAS MET ITS PROGRAM ACCESS

REQUIREMENTS.

Q.   OKAY.  WOULD THAT REMAIN TRUE TODAY, SIR?

A.   YES --

Q.   OKAY.

A.   I AM SORRY.

YES.

Q.   DID THERE COME A TIME WHEN YOU PREPARED A SERIES OF MAPS

OF ACCESSIBLE FACILITIES AND SITES FOR THE RECREATION AND PARKS

DEPARTMENT, AMONG OTHERS?

A.   I AM SORRY, RESTATE THE QUESTION.  WHAT IS THE QUESTION?

Q.   DID THERE COME A TIME IN 2009 WHERE YOU PREPARED A SERIES

OF MAPS SHOWING FACILITIES DESIGNATED WITH BLUE DOTS FOR THE

FOR THE RECREATION AND PARK'S DEPARTMENT?

A.   I WAS PREPARING MAPS BACK IN 2004 THROUGH 2006.  AND THEN

WE WENT THROUGH ANOTHER SERIES OF PREPARING MORE MAPS WHEN WE

STARTED LOOKING AT THE CHANGES THAT WERE GOING TO HAPPEN WITH

THE RECREATION AND PARK'S 2008 BOND.  AND I HIRED -- OUR OFFICE

HIRED INTERNS AND WE PREPARED ANOTHER CYCLE OF MAPS, AND WE ARE

IN THE PROCESS OF PREPARING MORE MAPS.

Q.   OKAY.  NOW, WERE THERE SOME OF THOSE THAT WERE PREPARED IN

2009?

A.   YES.

Q.   OKAY.

IT'S TRUE, IS IT NOT, THAT A FACILITY MARKED WITH A

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 07, 110420

1464

SCOTT - DIRECT / MR. WALLACE

BLUE DOT MEANS, BY YOUR DEFINITION, THAT THERE HAS BEEN A CAPITAL IMPROVEMENT PROJECT ON THAT SITE DONE AFTER THE YEAR 2000, WHICH HAS MADE IT USABLE BY INDIVIDUALS WITH DISABILITIES?

A.    YES.

THE COURT:  SO YES MEANS YES, IT'S TRUE OR YES, IT IS NOT TRUE, SINCE THE QUESTION IS, IT IS TRUE, IS NOT IT.

THE WITNESS:  YES, IT IS TRUE.  THANK YOU.

BY MR. WALLACE:

Q.    SO THAT ACCURATELY STATES THE DEFINITION OF WHAT A BLUE DOT MEANS ON THE 2009 MAP, SIR?

A.    ESSENTIALLY, YES.

Q.    OKAY.

AND IT'S ALSO TRUE THAT ACCESSIBLE, AS THE TERM IS USED ON THOSE MAPS, DOES NOT MEAN THAT A FACILITY THAT IS MARKED WITH A BLUE DOT IS COMPLIANT WITH THE AMERICANS WITH DISABILITIES ACT ACCESSIBILITY GUIDELINES?

A.    THAT'S CORRECT.  THAT WAS NOT THE INTENT.

Q.    OKAY.  DOES A BLUE DOT MEAN THAT THAT FACILITY OR SITE IS IN COMPLIANCE WITH THE UNIFORM FEDERAL ACCESSIBILITY STANDARDS?

A.    THAT BLUE DOT MEANS THAT IT IS MEETING THE INTENT OF WHAT WE ARE ATTEMPTING TO ACHIEVE UNDER THE UPHAS, UNIFORM PHYSICAL ACCESS STRATEGY.

Q.    I APPRECIATE THAT, SIR.

BUT IN TERMS OF LITERALLY ANSWERING THE QUESTION,

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1468

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,          )          COURT TRIAL
                               )
          PLAINTIFFS,          )          VOLUME 8
                               )
     VS.                       )          NO. C 07-03685 SBA
                               )
CITY AND COUNTY OF             )
SAN FRANCISCO, ET AL.,         )          PAGES 1468 - 1660
                               )
          DEFENDANTS.          )          OAKLAND, CALIFORNIA
_____)          THURSDAY, APRIL 21, 2011

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                            KONECKY
                         180 MONTGOMERY STREET, SUITE 2000
                         SAN FRANCISCO, CALIFORNIA  94109
                    BY:  MARK T. JOHNSON,
                         ANDREW P. LEE,
                         KIRAN PRASAD,
                         GUY B. WALLACE, ATTORNEYS AT LAW

                         BROWN POORE LLP
                         THE WATERGATE TOWERS
                         2200 POWELL STREET, SUITE 745
                         EMERYVILLE, CALIFORNIA  94608
                    BY:  SCOTT A. BROWN, ATTORNEY AT LAW

FOR DEFENDANT:           OFFICE OF THE CITY ATTORNEY
                         SIXTH FLOOR - FOX PLAZA
                         1390 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA  94102
                    BY:  ERIN BERNSTEIN,
                         JAMES M. EMERY,
                         ELAINE M. O'NEIL,
                         CHRISTINE VAN AKEN, ATTORNEYS AT LAW

REPORTED BY:           RAYNEE H. MERCADO, CSR NO. 8258
                       DIANE E. SKILLMAN, CSR NO. 4909
        RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1472

SCOTT - DIRECT (RESUMED) / WALLACE

THERE.

A.    (REVIEWING DOCUMENTS.)

OKAY.

Q.    DO YOU HAVE THAT ONE, SIR?

A.    YES, I DO.

Q.    OKAY.  MR. SCOTT, IS THIS THE RECREATION AND PARKS WEBSITE DOCUMENT THAT WE DISCUSSED AT YOUR DEPOSITION IN MARCH THIS YEAR?

A.    YES.

Q.    OKAY.  AND DOES THIS DOCUMENT, WHICH HAS BEEN IDENTIFIED AS PLAINTIFFS' EXHIBIT 3875, IDENTIFY A SERIES OF PARKS AND PARK FACILITIES?

A.    YES.

Q.    OKAY.  AND DOES IT RATE THOSE IN TWO DIFFERENT WAYS, ONE AS BEING ACCESSIBLE AND THEN THE OTHER AS BEING LIMITED ACCESS?

A.    YES.

Q.    IN PREPARING THE GRADING OF FACILITIES BETWEEN ACCESSIBLE AND LIMITED WHEELCHAIR ACCESSIBILITY, DID YOU USE ANY PARTICULAR WRITTEN DEFINITION OF "DISABILITY ACCESS BARRIER"?

A.    NO.  JUST SO THAT WE HAVE A CLEAR ANSWER, BUT I DID HAVE A METHODOLOGY AS TO WHY WE CREATED THIS SYSTEM ON THIS WEBSITE.

Q.    OKAY.  I'M SURE MR. EMERY WILL ASK YOU ABOUT THAT.

A.    OKAY.

Q.    AND AM I CORRECT IN REMEMBERING THAT YOU ARE THE ONE THAT DID THE GRADING?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1473

SCOTT - DIRECT (RESUMED) / WALLACE

A.   THAT'S CORRECT.

Q.   OKAY.  DID ANYONE ELSE DO THE GRADING?

A.   NO.

Q.   OKAY.  IN PREPARING THE LIST OF ACCESSIBLE PARKS THAT APPEARS IN WHAT HAS BEEN MARKED AS EXHIBIT 3875, DID YOU USE THE ADAAG TO IDENTIFY BARRIERS THAT LIMIT OR DENY ACCESS TO PERSONS WITH MOBILITY DISABILITIES AT THOSE PARKS?

A.   NO, THAT WAS NOT THE PURPOSE OF THE WEBSITE INFORMATION.

Q.   OKAY.  AND ARE YOU CONFIDENT THAT WHAT'S BEEN IDENTIFIED AS EXHIBIT 3875 IS THE RECREATION AND PARKS WEBSITE WHERE YOU ASSISTED IN THE GRADING OF VARIOUS FACILITIES?

A.   WELL, THIS PARTICULAR ONE IS A SNAPSHOT OF THE WEBSITE AT THAT TIME, BUT THERE'S BEEN A NUMBER OF REVISIONS, OBVIOUSLY, AS THE WEBSITE HAS BEEN DEVELOPING.

Q.   OKAY.  WHAT -- WHAT TIME DOES THIS REPRESENT THE CONDITION OF THE WEBSITE?  WHAT POINT IN TIME ARE WE LOOKING AT HERE?

A.   SOMETIME BETWEEN 2010 AND 2011.  I COULDN'T GIVE YOU AN EXACT DATE.

Q.   OKAY.  WOULD IT BE LATE 2010, SIR?

A.   I BELIEVE SO.

Q.   OKAY.

        MR. WALLACE:  YOUR HONOR, PLAINTIFFS MOVE THAT WHAT'S BEEN IDENTIFIED AS EXHIBIT 3875 BE RECEIVED INTO EVIDENCE.

        RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1474

SCOTT - DIRECT (RESUMED) / WALLACE

THE COURT:  ANY OBJECTION?

MR. EMERY:  NO OBJECTION.

THE COURT:  REQUEST IS GRANTED.

(PLAINTIFFS' EXHIBIT 3875

RECEIVED IN EVIDENCE)

BY MR. WALLACE:

Q.  IN GRADING THE SITES, DID YOU USE A DISABILITY ACCESS STANDARD TO IDENTIFY BARRIERS AT THE SITES?

A.  ESSENTIALLY, YES.  IN ORDER GIVE THE CORRECT ANSWER -- I MEAN, THESE WERE BASED ON ALL THE ANALYSIS THAT I'VE BEEN WORKING ON IN DEVELOPING THE A.D.A. TRANSITION PLAN SINCE 2004. SO IT'S AN EXTRAPOLATION OF THAT MATERIAL BUT A SIMPLIFICATION OF IT IN ORDER TO COMMUNICATE TO THE PUBLIC ABOUT -- INFORMATION ABOUT THESE PARKS.

Q.  OKAY.  LIKE TO DIRECT YOUR ATTENTION TO YOUR DEPOSITION OF MARCH 10, 2011, SIR.

MS. DREVON, COULD YOU MAKE SURE THAT THE WITNESS HAS THAT?

(PAUSE IN THE PROCEEDINGS.)

BY MR. WALLACE:

Q.  AND I'D LIKE TO DIRECT YOUR ATTENTION TO PAGE 23 OF YOUR MARCH 10, 2011 DEPOSITION.  AND AT PAGE 23, THERE'S A QUESTION THAT APPEARS AT LINE 24,

"IN PREPARING THE LIST OF ACCESSIBLE PARKS THAT APPEARS IN EXHIBIT 422, DID YOU USE THE AMERICANS

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1475

SCOTT - DIRECT (RESUMED) / WALLACE

WITH DISABILITIES ACT ACCESSIBILITY GUIDELINES TO IDENTIFY BARRIERS THAT LIMIT OR DENY ACCESS TO PERSONS WITH MOBILITY DISABILITIES?"

AND YOU ANSWERED,

"THAT'S NOT HOW I APPROACHED THE PROJECT."

WE COVERED THAT A MOMENT AGO.

THE COURT:  WELL, YOU SHOULDN'T BE GOING OVER IT IF THEY'VE ALREADY COVERED IT.

MR. WALLACE:  IT'S THE VERY NEXT QUESTION, YOUR HONOR.  I WAS JUST TRYING TO GIVE A LITTLE CONTEXT.

"Q.  DID YOU USE A DIFFERENT DISABILITY ACCESS STANDARD TO IDENTIFY BARRIERS AT SITES?

"A.  I DIDN'T USE A DISABILITY ACCESS DESIGN STANDARD."

Q.  IS THAT YOUR TESTIMONY, MR. SCOTT?

A.  IT APPEARS SO.  THAT'S WHAT'S IN THIS TRANSCRIPT.

Q.  OKAY.

AND IT'S ALSO TRUE, IS IT NOT, THAT IN DOING THE GRADING ON THE SITES THAT ARE IDENTIFIED IN EXHIBIT 3875, THERE WAS NO GRADING THAT YOU DID ON THE ACCESSIBILITY OF THE PARKING FACILITIES AND THE REST ROOMS AT THE VARIOUS SITES THAT YOU COVERED?

A.  I DIDN'T DO THOSE PARTICULAR PIECES OF INFORMATION FOR THIS WEBSITE.  THE -- THOSE TWO PIECES OF INFORMATION WERE NOT GRADING ACCESSIBILITY.  THEY WERE TALKING ABOUT THE PROVISION

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1476

SCOTT - DIRECT (RESUMED) / WALLACE

OF THOSE PARTICULAR FACILITIES AT THAT SITE.

Q.    OKAY.  MY UNDERSTANDING IS -- AND PLEASE CORRECT ME IF I'M WRONG -- THAT WHAT'S BEEN RECEIVED AS EXHIBIT 3875 DOES NOT CONTAIN INFORMATION ABOUT THE ACCESSIBILITY OF THE REST ROOMS AT THE PARK SITES.

A.    THAT IS -- TO THE BEST OF MY KNOWLEDGE, THAT'S CORRECT, UNLESS IT WAS -- IF THAT REST ROOM WAS IN A FACILITY THAT WAS IDENTIFIED AS ACCESSIBLE.

Q.    OKAY.  AND IT'S ALSO TRUE THAT YOU DID NOT DO ANY SITE INSPECTION AS PART OF THE PROJECT WHERE YOU GRADED THE PARKS AS BEING EITHER ACCESSIBLE OR LIMITED ACCESSIBILITY AS SHOWN IN THIS EXHIBIT.

A.    THAT'S CORRECT.  THIS WAS BASED ON ALL THE WORK THAT I BEEN WORKING ON SINCE 2004, SO THIS IS AN EXTRAPOLATION OF ALL THAT INFORMATION THAT I KNOW IN ORDER TO CONVEY SOMETHING SIMPLE TO THE PUBLIC.

Q.    I'D LIKE TO DIRECT YOUR ATTENTION TO THE SECOND PAGE OF THE EXHIBIT.  OVER ON THE LEFT-HAND COLUMN THERE, THERE'S "FACILITY ACCESSIBILITY."  DO YOU SEE THAT, SIR?

A.    YES.

Q.    OKAY.  AND THEN FOR BUILDINGS, THERE'S A DEFINITION.  DID YOU PREPARE THIS DEFINITION?

A.    WE WORKED ON IT TOGETHER, SUSAN MIZNER AND I, AS WELL AS RECREATION AND PARKS DEPARTMENT STAFF THAT WERE WORKING ON THIS WEBSITE.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1490

SCOTT - DIRECT (RESUMED) / WALLACE

FOUNDATION DEPENDING ON WHAT YOUR THEORY IS, AND THEN YOU RESORT TO THE DEPOSITION.  AND THEN EITHER HE TESTIFIES INDEPENDENTLY OF IT OR HE DOESN'T.  AND IF HE DOESN'T, THEN THERE'S A FOUNDATION FOR THAT.

BUT WE DON'T JUST SIT AND JUST READ PARAGRAPH AFTER PARAGRAPH OF DEPOSITION TESTIMONY WHEN WE HAVE A LIVE WITNESS WHO IS HERE AND OSTENSIBLY IN A POSITION TO TESTIFY CONCERNING ANY OF THE ISSUES THAT ARE BEFORE THE COURT.

MR. WALLACE:  OKAY.

Q.   MR. SCOTT, DID YOU MAKE A DETERMINATION AS PART OF YOUR GRADING WORK AS TO WHETHER JEFFERSON SQUARE PARK WAS ACCESSIBLE TO PERSONS WITH MOBILITY DISABILITIES?

A.   IT'S MY DETERMINATION THAT IT'S A, FOR THE PURPOSES OF THIS WEBSITE, LIMITED ACCESS.

Q.   AS PART OF YOUR WORK AS DEPUTY DIRECTOR FOR PHYSICAL ACCESS, THE MAYOR'S OFFICE ON DISABILITY, DO YOU HAVE A DEFINITION OF A RUNNING SLOPE THAT YOU CONSIDER TO BE, AS A GENERAL RULE, TOO STEEP FOR PERSONS WITH MOBILITY DISABILITIES?

A.   DO I HAVE A DEFINITION?

Q.   YES.

A.   NO, I USE THE ADAAG, OR I USE THE CALIFORNIA BUILDING CODE, AS APPROPRIATE, OR I USE THE PROPOSED U.S. ACCESS BOARD'S OUTDOOR RECREATION GUIDELINES, WHICH ARE NOT IN EFFECT YET. BUT I HAVE A PERSONAL OPINION.

Q.   IS THERE ANY PARTICULAR LEVEL OF RUNNING SLOPE THAT

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1496

SCOTT - DIRECT (RESUMED) / WALLACE

A.    YES.

Q.    OKAY.  WHAT ARE WE LOOKING AT?

A.    WE'RE LOOKING AT A MAP THAT SAYS, "CHILDREN (SIC) PLAY AREA" RECREATION AND PARKS DEPARTMENT NEW CONSTRUCTION, ALTERATIONS, AND BARRIER REMOVAL.  AND IT'S DATED DECEMBER 7TH, 2009, SIXTH REVISION.

Q.    IS THIS A MAP THAT YOU ASSISTED IN PREPARING?

A.    YES.

Q.    OKAY.  AND WHAT DOES THE DATE INDICATE?

A.    THAT WAS THE DATE THAT THIS WAS PRINTED, THE RE- -- THIS WAS THE REVISION CYCLE OF THIS PARTICULAR MAP.

Q.    OKAY.  AND IT HAS A DOT FOR COW HOLLOW PLAYGROUND, DOES IT NOT?

A.    YES.

Q.    AND WHAT COLOR IS THE DOT?

A.    THE DOT IS BLUE, AND THAT WAS A MISTAKE BY A STUDENT INTERN.  SO I -- I DON'T KNOW WHY WE'RE FOCUSING ON A MISTAKE THAT A STUDENT INTERN DID WHEN SHE WAS PREPARING THIS MAP.

Q.    AND WHEN WAS THAT ERROR CORRECTED?

A.    LET'S SEE.  I THINK AFTER YOU BROUGHT THIS TO MY ATTENTION DURING THIS DEPO -- PARTICULAR DEPOSITION WHERE YOU PUT THIS EXHIBIT IN FRONT OF ME.

Q.    WITH RESPECT TO FACILITIES THAT ARE MARKED WITH A BLUE DOT, DOES THAT MEAN THAT THERE'S BEEN A CAPITAL IMPROVEMENT PROJECT AT THAT SITE DONE AFTER THE YEAR 2000?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1497

SCOTT - DIRECT (RESUMED) / WALLACE

A.    YES, THAT'S THE INTENT OF THE BLUE DOTS.

Q.    OKAY.  DOES A BLUE DOT INDICATE THAT THE SITE COMPLIES WITH THE AMERICANS WITH DISABILITIES ACT ACCESSIBILITY GUIDELINES?

A.    NOT NECESSARILY, BECAUSE SOME OF THESE SITES HAVE MULTIPLE FACILITIES ON THEM.  AND THE CONSTRUCTION MAY HAVE BEEN -- SAY, IN THE CASE OF GARFIELD PLAYGROUND, THE PLAYGROUND WAS NEW CONSTRUCTION AFTER 2000, THE -- THE SOCCER FIELD WAS. BUT THE CLUBHOUSE WAS RENOVATED BEFORE THE YEAR 2000.

SO WHEN YOU LOOK AT THE CHILDREN'S PLAY AREA MAP, THAT SITE MAY BE SHOWN AS BLUE, BUT THERE MAY BE OTHER THINGS LIKE THE GARFIELD POOL OR ACCESS ROUTES OFF ONE OF THE SIDE STREETS THAT ARE NOT, QUOTE, ADAAG COMPLIANT.

Q.    OKAY.

AND IS IT TRUE, SIR, THAT WHEN YOU PREPARED THESE MAPS, THERE WAS NO WRITTEN DEFINITION OF THE TERM "ACCESSIBLE" THAT YOU USED IN PREPARING THEM?

A.    THAT -- THAT WOULD -- THAT'S KIND OF AN OBTUSE QUESTION, BECAUSE WHEN I'M IDENTIFYING SOMETHING THAT WAS A NEW CONSTRUCTION OR ALTERATION AFTER 2000, THOSE WOULD HAVE BEEN DESIGNING -- CONSTRUCTED PER TITLE II OF THE A.D.A., ADAAG, THE AMERICANS WITH DISABILITY ACT ACCESSIBILITY GUIDELINES, 1991 VERSION, OR POSSIBLY TO THE PROPOSED GUIDELINES FOR RECREATION ACCESS AS IN THE CASE WITH PLAY AREAS BECAUSE ADAAG DOESN'T CONTAIN PLAY AREAS.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1498

SCOTT - DIRECT (RESUMED) / WALLACE

SO -- AND SOME OF THESE FACILITIES REQUIRED BUILDING PERMITS AND -- UNDER CHAPTER 11B OF THE BUILDING CODE, THERE IS A DEFINITION FOR "ACCESSIBLE," SO THAT THAT PARTICULAR SECTION OF WORK THAT WAS CONSTRUCTED UNDER THE BUILDING PERMIT WOULD ESSENTIALLY BE UNDER THAT DEFINITION.  SO THAT'S WHY I SAY IT'S KIND OF AN OBTUSE QUESTION.

Q.    OKAY.

LIKE TO DIRECT YOUR ATTENTION BACK TO YOUR DEPOSITION OF JANUARY 2010.  AND THAT WAS A DEPOSITION THAT WAS -- THAT I TOOK AT THAT TIME, WAS IT NOT?

A.    JANUARY 21 --

Q.    YES.

A.    -- 2010?

Q.    OKAY.  AND AT PAGE 196, LINE 15.

A.    (REVIEWING DOCUMENT.)

YES.

Q.    OKAY.  QUESTION IS,

"IS THERE ANY WRITTEN DEFINITION OF 'ACCESSIBLE' THAT WAS USED TO PREPARE THESE MAPS?"

IS THAT A QUESTION THAT I ASKED YOU, SIR?

A.    YES.

Q.    AND YOUR ANSWER WAS "NO"; IS THAT CORRECT?

A.    YES.  BECAUSE AS I SAID, YOUR QUESTION WAS EXTREMELY OBTUSE.

Q.    WITH RESPECT TO THE DOTS THAT ARE MARKED AS ORANGE, DOES

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1499

SCOTT - DIRECT (RESUMED) / WALLACE

THE MAP PROVIDE ANY INFORMATION ABOUT WHEN A ORANGE DOT, WHICH IS IDENTIFIED AS CURRENTLY IN DESIGN OR CONSTRUCTION, WILL BE COMPLETED AND MADE ACCESSIBLE?

A.    NO, THAT INFORMATION WOULD BE STORED EITHER ON MY SPREADSHEETS THAT I USE FOR TRACKING ALL THE FACILITY DESIGN AND CONSTRUCTION AND STATUS, AND IT WOULD ALSO BE LOCATED ON THE -- IN THIS PARTICULAR CASE, ON THE RECREATION AND PARKS DEPARTMENT CAPITAL IMPROVEMENT WEBSITE, WHICH HAS PROJECT SCHEDULES.

SO THIS MAP IS -- SIMPLY JUST A GRAPHICAL REPRESENTATION THAT -- A SUMMARY OF ALL THAT OTHER INFORMATION. SO THERE'S NO DATES OR THAT SORT OF ENRICHED INFORMATION DROPPED INTO THESE PARTICULAR ICONS ON THAT GIS MAP.

Q.    OKAY.  AND WOULD IT ALSO BE TRUE THAT YELLOW DOTS WHICH ARE IDENTIFIED AS "PLANNED/FUNDED," THAT THERE IS NOT ANY DATE WHEN THAT WORK IS GOING TO BE COMPLETED THAT'S SHOWN ON THE MAPS?

A.    I DON'T SEE ANY DATES.  I -- I'VE ALREADY ANSWERED THAT QUESTION.  THIS -- THESE MAPS DO NOT CONTAIN THAT SORT OF ENRICHED INFORMATION.  AND IN THE PRINCIPAL FORM, THEY WOULD NOT SHOW DATES.  THAT WAS NOT THE PURPOSE OF THESE MAPS.

Q.    OKAY.

AS PART OF IDENTIFYING THE SITES THAT WERE GOING TO RECEIVE A BLUE DOT, DID YOU TAKE ANY MEASUREMENTS AS PART OF THE PROCESS OF DETERMINING THAT THE SITE WAS ACCESSIBLE AND

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1500

SCOTT - DIRECT (RESUMED) / WALLACE

SHOULD GET A BLUE DOT?

A.   NO.   I RELIED ON ALL THE INFORMATION THAT WAS AVAILABLE TO ME FROM THE RECREATION AND PARKS DEPARTMENT IN THIS PARTICULAR CASE, AND USED -- BOTH INTERVIEWING THEM, LOOKING AT THEIR WEBSITE, LOOKING AT THE BOND PROGRAMS, AND ALSO VISITING THOSE SITES.   BUT I'M CERTAINLY NOT GOING TO BE RUNNING AROUND TAKING MEASUREMENTS OF EVERY INCH OF A PIECE OF PLAYGROUND EQUIPMENT.

Q.   OKAY.

WITH RESPECT TO THE SITES THAT ARE IDENTIFIED AS RED DOTS, ARE THOSE LIMITED ACCESS SITES?

A.   THAT'S WHAT IT STATES.

Q.   IS IT TRUE, SIR, THAT THE MAYOR'S OFFICE ON DISABILITY DOES NOT RELY ON THE LIMITED ACCESS RED DOT SITES TO PROVIDE PROGRAM ACCESS TO PERSONS WITH MOBILITY DISABILITIES?

A.   THAT'S NOT NECESSARILY SO.

Q.   DO THOSE SITES PROVIDE PROGRAM ACCESS TO PERSONS WITH MOBILITY DISABILITIES?

A.   IT DEPENDS ON THE PARTICULAR SITE.

Q.   ARE THESE THE MAPS THAT WERE PROVIDED TO MR. HECKER AND THAT HE USED IN PREPARING HIS EXPERT REPORTS?

MR. EMERY:  VAGUE AS TO WHAT "THESE MAPS" ARE BECAUSE THERE'S ONLY ONE MAP IN FRONT OF THE WITNESS.

THE COURT:  SUSTAINED.

THE WITNESS:  I HAVE -- I WASN'T PART --

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1508

SCOTT - CROSS / EMERY

A.    WELL, SEVERAL.  ALAMO SQUARE, OF COURSE, WAS BUILT BEFORE 1906.  IT WAS A REFUGE SITE FROM THE EARTHQUAKE.  IT HAS A ROUTE THAT IS VERY USABLE COMING IN FROM SCOTT AND FULTON.  BUT ALSO THE CITY RECREATION AND PARKS DEPARTMENT BUILT A NEW PLAYGROUND THERE AND -- FROM HAYES AND STEINER.  THAT ROUTE WAS TOTALLY REBUILT TO PROVIDE AN ACCESSIBLE ROUTE TO THE PLAYGROUND.

SO THOSE TWO ACCESS POINTS ARE USABLE AND, FOR THE PLAYGROUND, I WOULD CONSIDER ACCESSIBLE, AND THAT'S HOW WE GRADED THEM IN THIS PARTICULAR WEBSITE.

FROM A PROGRAM ACCESS POINT OF VIEW, "USABLE" IS -- A BROAD RANGE OF INDIVIDUALS WOULD -- ARE ABLE TO USE THAT PARK.  AND WE ARE ALSO UPGRADING THE REST ROOMS AT THAT PARTICULAR FACILITY TO BE ACCESSIBLE.

MR. EMERY:  THE CITY HAS NO FURTHER QUESTIONS AT THIS TIME, ALTHOUGH THE CITY DOES INTEND TO CALL MR. SCOTT IN ITS CASE-IN-CHIEF.

THE COURT:  OKAY.  THANK YOU, MR. SCOTT.  YOU MAY STEP DOWN.  YOU'RE NOT EXCUSED FROM FURTHER TESTIMONY, AND YOU ARE SUBJECT TO BEING RE-CALLED.

THE WITNESS:  THANK YOU.

THE COURT:  OKAY.  THANK YOU.

PLAINTIFFS HAVE ANY ADDITIONAL WITNESSES?

MR. LEE:  YES, YOUR HONOR, CALLING BRIAN STRONG.

THE COURT:  OKAY.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1661

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,          )          COURT TRIAL
                               )
          PLAINTIFFS,          )          VOLUME 9
                               )
     VS.                       )          NO. C 07-03685 SBA
                               )
CITY AND COUNTY OF             )
SAN FRANCISCO, ET AL.,         )          PAGES 1661 - 1887
                               )
          DEFENDANTS.          )          OAKLAND, CALIFORNIA
_____)          FRIDAY, APRIL 22, 2011

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                             KONECKY
                        180 MONTGOMERY STREET, SUITE 2000
                        SAN FRANCISCO, CALIFORNIA  94109
                    BY: MARK T. JOHNSON,
                        ANDREW P. LEE,
                        KIRAN PRASAD,
                        GUY B. WALLACE, ATTORNEYS AT LAW

                        BROWN POORE LLP
                        THE WATERGATE TOWERS
                        2200 POWELL STREET, SUITE 745
                        EMERYVILLE, CALIFORNIA  94608
                    BY: SCOTT A. BROWN, ATTORNEY AT LAW

FOR DEFENDANT:          OFFICE OF THE CITY ATTORNEY
                        SIXTH FLOOR - FOX PLAZA
                        1390 MARKET STREET
                        SAN FRANCISCO, CALIFORNIA  94102
                    BY: ERIN BERNSTEIN,
                        JAMES M. EMERY,
                        ELAINE M. O'NEIL,
                        KRISTINE A. POPLAWSKI, ATTORNEYS AT LAW

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258
                      DIANE E. SKILLMAN, CSR NO. 4909

          RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1813

SCOTT - DIRECT / EMERY

Q.   UH-HUM.

NEXT I WOULD LIKE YOU TO LOOK AT EXHIBIT -- NO.

MR. EMERY:  I WOULD LIKE TO MOVE EXHIBIT I32 INTO EVIDENCE.

THE COURT:  ANY OBJECTION?

MR. WALLACE:  NO OBJECTION.

THE COURT:  REQUEST IS GRANTED.

(DEFENDANTS' EXHIBIT I32 RECEIVED IN

EVIDENCE)

BY MR. EMERY:

Q.   NOW, I WOULD LIKE TO LOOK AT EXHIBIT F16.

(EXHIBIT DISPLAYED ON SCREEN.)

CAN YOU TELL ME WHAT EXHIBIT F16 IS, MR. SCOTT?

A.   THIS PARTICULAR MAP IS A MAP OF REC AND PARKS DEPARTMENT SWIMMING POOLS AND THEIR STATUS ACCORDING TO THE BLUE DOT THEORY.

Q.   AGAIN, WHAT DOES THE BLUE DOT MEAN?

A.   BLUE DOT MEANS THAT THAT PARTICULAR SITE HAS UNDERGONE NEW CONSTRUCTION OR ALTERATIONS SINCE 2000.

AND ALTHOUGH THE -- IN THE RED DOTS IN THIS PARTICULAR MAP ARE FACILITIES THAT HAVE LIMITED ACCESS, THAT HAVE NOT YET UNDERGONE NEW CONSTRUCTION OR ALTERATIONS SINCE THE YEAR 2000.

Q.   THIS SWIMMING POOL MAP DOESN'T HAVE ANY ORANGE OR YELLOWS; WHY'S THAT?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1819

SCOTT - DIRECT / EMERY

BY MR. EMERY:

Q.   NEXT, MR. SCOTT, I WOULD LIKE YOU TO LOOK AT EXHIBIT F37.

IT LOOKS A LITTLE DIFFERENT.  CAN YOU EXPLAIN WHAT EXHIBIT F37 IS?

A.   THIS WAS A PRELIMINARY ANALYSIS I WAS WORKING ON WITH RECREATION AND PARKS DEPARTMENT AS TO WHAT SORT OF CHANGES WERE HAPPENING TO GOLDEN GATE PARK WITH OUTDOOR RECREATION TRAILS, PARKING AND TOILET FACILITIES.  AND WE WERE MULLING OVER HOW WERE WE GOING TO CONVEY THIS INFORMATION TO THE PUBLIC.

SO THIS WAS SORT OF A FIRST ITERATION OF THAT GRAPHIC THAT WE MIGHT PUT UP ON THEIR WEBSITE.

Q.   DO YOU KNOW IF A VERSION OF THIS GRAPHIC HAS BEEN PUT UP ON THE REC PARK WEBSITE?

A.   NOT AS YET.  I DON'T BELIEVE IT HAS.

Q.   YOU ARE STILL WORKING ON IT WITH THEM?

A.   YEAH, WE ARE STILL TRYING TO GET THE ARTWORK THAT WAS RECENTLY PRODUCED FOR GOLDEN GATE PARK SITE PLAN.

Q.   WHAT DO THE BLUE LINES SIGNIFY IN THIS MAP GOING THROUGH GOLDEN GATE PARK?

A.   OKAY.

THERE IS ACTUALLY THREE DIFFERENT TYPES OF BLUE LINES, ALTHOUGH THE LEGEND IS ONLY DISCUSSING TWO.

ONE OF THEM THERE'S AN ACCESSIBLE WEEKEND TRAM THAT HAPPENS IN THE LATE SPRING SUMMERTIME, A BUS THAT HAS WHEELCHAIR ACCESSIBILITY THAT ONE CAN TAKE AROUND TO THE

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 09, 110422

1820

SCOTT - DIRECT / EMERY

VARIOUS SITES.

THE OTHER TWO, THERE WAS A 1994 GOLDEN GATE PARK ADA TRANSITION PLAN THAT DESIGNATED THE ACCESSIBLE ROUTES, RECREATION ROUTES THROUGH THE PARK, AND THERE'S MEDALLIONS IN THESE PATHS THAT EXPLAIN THAT THEY HAVE WHEELCHAIR SYMBOLS AND ARROWS.

AND THEN THERE'S ANOTHER SERIES OF LINES WHERE I'VE GONE OUT TO THAT PARTICULAR TRAIL OR RECREATION ROUTE AND FOUND THEM THAT THEY SHOULD BE ADDED TO THIS PLAN TO SHOW RECREATIONAL OPPORTUNITIES THAT HAVE EITHER BEEN IMPROVED THROUGH CAPITAL PROGRAMS SINCE 1994 OR THAT ACTUALLY ARE VERY USABLE, DEPENDING ON WHAT A PERSON WOULD LIKE TO DO OUT IN GOLDEN GATE PARK.

Q.   SO, IS THERE A DIFFERENCE IN THE VISUAL REPRESENTATION OF THE TRAILS THAT YOU PERSONALLY IDENTIFIED AS BEING ACCESSIBLE AND USABLE VERSUS THE ONES THAT THE TRAILS THAT YOU KNEW FROM RECORDS WERE THE SUBJECT OF PRIOR IMPROVEMENTS?

A.   THERE IS.  THERE'S KIND OF A DOTTED LINE IN THE MIDDLE OF THE MAP, AND THAT SHOWS WHAT IS A RUSTIC TRAIL.  IT IS ACTUALLY AN ASPHALT ROAD THAT ARKS THROUGH THE PROPERTY WHERE TRAFFIC HAS BEEN REDUCED OR ELIMINATED, AND IT REALLY IS A VERY NICE OUTDOOR TRAIL EXPERIENCE.

Q.   UH-HUM.

SO HOW DID YOU VERIFY THAT THE TRAILS IN GOLDEN GATE PARK MAP HERE THAT ARE DESIGNATED BLUE, HOW DID YOU PERSONALLY

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 09, 110422

1821

SCOTT - DIRECT / EMERY

VERIFY THAT THEY WERE ACCESSIBLE?

A.   WELL, THERE AREN'T ANY ACCESSIBILITY GUIDELINES ENFORCEABLE FOR TRAILS AT THIS POINT.

Q.   THE QUESTION IS WHAT DID YOU DO?

A.   WHAT DID I DO?  I WALKED EVERY ROUTE.

I DROVE OUT THERE AND WALKED ALL THESE ROUTES.  AND IN SOME CASES I USED AN ELECTRONIC LEVEL, BUT I DID NOT SURVEY THIS THING AS A CIVIL ENGINEER.  BUT I WENT AND WALKED EVERY ROUTE.

Q.   AND DID YOU APPLY A PARTICULAR STANDARD WHEN YOU WERE DECIDING WHETHER OR NOT TO DESIGNATE A PARTICULAR TRAIL AS BLUE ON THIS MAP?

A.   NO.  I APPLIED COMMON SENSE.

Q.   WHAT COMMON SENSE QUESTIONS WERE YOU ASKING YOURSELF?

A.   WHETHER A PERSON IN A WHEELCHAIR OR SOMEBODY WHO IS AMBULATORY OR VISION IMPAIRMENT OR HAS ANY OTHER SENSORY IMPAIRMENT DISABILITY WOULD FIND THIS EXPERIENCE THROUGH THESE TRAILS OR RECREATION ROUTES A GOOD RECREATIONAL OPPORTUNITY.

OUR INTENT WAS, ONCE WE HAD THIS MAPPED, THEN WE WOULD EXPLAIN THE EXPERIENCE.

Q.   WAIT FOR THE NEXT QUESTION.

I AM WAITING FOR THE OBJECTION.

THE COURT:  DON'T ENCOURAGE HIM.  HE'S GIVING YOU LEEWAY.

///

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1822

SCOTT - DIRECT / EMERY

BY MR. EMERY:

Q.   WHY DID YOU USE COMMON SENSE INSTEAD OF APPLYING A PARTICULAR ACCESSIBILITY STANDARD WHEN YOU WERE MAPPING OUT THIS EXHIBIT F40?

A.   BECAUSE YOUR PREVIOUS QUESTION WAS WERE THERE -- DID I APPLY ANY PARTICULAR ACCESSIBILITY STANDARD.

AND UNDER THE CURRENT ADAAG, THERE IS NO ENFORCEABLE STANDARD FOR RECREATION ROUTES AND TRAILS.  THIS IS A PROPOSED STANDARD BY THE U.S. ACCESS BOARD.

AND ONE OF THE THINGS THAT WE WANTED TO ENCOURAGE INDIVIDUALS WAS COME OUT TO USE GOLDEN GATE PARK WITH THIS MAP AND NOT TO DISCOURAGE PEOPLE TO STAY AWAY FROM CERTAIN AREAS OR SITES.

Q.   OKAY.

A.   THAT WE WANTED TO BE ABLE TO ENCOURAGE PEOPLE THAT THESE ARE RECREATIONAL OPPORTUNITIES.

MR. WALLACE:  PLAINTIFFS MOVE TO STRIKE THE PORTION OF THE RESPONSE IN WHICH THE WITNESS DESCRIBES SUPPOSEDLY UNENFORCEABLE ACCESS STANDARDS FOR TRAILS AND PARKS.

THE COURT:  COUNSEL?

MR. WALLACE:  SAME BASIS AS PREVIOUSLY, YOUR HONOR.

MR. EMERY:  I HAVE A SIMILAR RESPONSE TO PREVIOUSLY YOUR HONOR.  HE WAS EXPLAINING THE REASONS HE MADE A PARTICULAR DECISION IN -- IN THE COURSE OF HIS DUTIES.  THE FACT THAT HIS DECISIONS REQUIRE AN AREA OF EXPERTISE, DOES NOT MAKE THOSE

1824

SCOTT - DIRECT / EMERY

VERY CLOSE TO IT, MR. SCOTT.

A.   ALL RIGHT.

Q.   WHY DID YOU USE COMMON SENSE INSTEAD OF A PARTICULAR ACCESSIBILITY STANDARD WHEN YOU WERE MAKING YOUR DECISIONS MAPPING OUT THIS -- MAPPING OUT THE TRAILS IN THIS PARK?

A.   BECAUSE I A USER OF GOLDEN GATE PARK AND I HAVE 30 YEARS OF PROFESSIONAL EXPERIENCE AS AN ARCHITECT AND 20 YEARS OF EXPERIENCE AS AN ACCESSIBILITY SPECIALIST.

AND HAVING WORKED ON MANY OF THESE ACCESSIBILITY GUIDELINES THAT ARE BEING PROPOSED, I FELT THAT THESE ROUTES WERE IN THE SPIRIT AND INTENT OF WHAT IS BEING PROPOSED FOR OUTDOOR RECREATION AND TRAILS AND PATHS.

Q.   THANK YOU.

WE TALKED ABOUT THE TRAILS THAT ARE DESIGNATED WITH BLUE LINES ON EXHIBIT F37.  I WANT TO ASK YOU NOW ABOUT THE LITTLE SQUARE BOXES WITH THE INTERNATIONAL SYMBOL OF ACCESSIBILITY.

WHAT DO THOSE DESIGNATE ON THIS MAP?

A.   THOSE DESIGNATE ACCESSIBLE PARKING SPACES THAT ARE ACTUALLY STRIPED AND HAVE SIGNS.

Q.   WHAT DO THE NUMBERS THAT ARE ASSOCIATED WITH EACH OF THOSE BOXES HAVING THE ISA SYMBOL DESIGNATE?

A.   THAT IS THE NUMBER OF ACCESSIBLE PARKING SPACES THAT ARE AT THAT LOCATION.

Q.   WHAT DO THE BOXES WITH THE LITTLE SYMBOL OF A MAN AND A

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1825

SCOTT - DIRECT / EMERY

WOMAN INDICATE ON THIS MAP?

A.    THOSE ARE FREE-STANDING TOILETS THAT WERE -- OR TOILETS

INSIDE BUILDINGS THAT WERE RENOVATED AS PART OF THE 1994 ADA

TRANSITION PLAN FOR GOLDEN GATE PARK OR OTHERS THAT WERE

RENOVATED OR BUILT AFTERWARDS.  SO THOSE ARE ACCESSIBLE AND

USABLE TOILET ROOMS.

          MR. EMERY:  THE CITY MOVES EXHIBIT F37 INTO

EVIDENCE.

          THE COURT:  37.  ANY OBJECTION?

          MR. WALLACE:  NO OBJECTION, YOUR HONOR.

          THE COURT:  REQUEST IS GRANTED.

                    (DEFENDANTS' EXHIBITF37 RECEIVED IN

                     EVIDENCE)

BY MR. EMERY:

Q.    AND YOU CAN PUT THAT BINDER AWAY, MR. SCOTT.

          IN JANUARY AND FEBRUARY OF 2010, WERE YOU INVOLVED

IN THE TASK OF REVIEWING PLAINTIFFS' SITE INSPECTION REPORTS IN

THIS CASE?

A.    YES.

Q.    CAN YOU PLEASE DESCRIBE THAT PROJECT BRIEFLY?

A.    PER THE REQUEST OF THE CITY ATTORNEY'S OFFICE, WE WERE

SENT THESE REPORTS AND ASKED TO COMMENT ON THEM.

          AND THEN WHEN WE DISCUSSED HOW WE WERE GOING TO DO

THIS INTERNALLY AT MAYOR'S OFFICE ON DISABILITY, I CHOSE OR WAS

ASSIGNED CERTAIN FACILITIES TO GO OUT AND TAKE A LOOK AT AND

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 09, 110422

1826

SCOTT - DIRECT / EMERY

TAKE THE REPORT AND TRY TO SEE WHAT WAS THE NATURE OF THE CITATION.

Q.   WHAT DID YOU PERSONALLY DO WITH RESPECT TO EACH FACILITY TO CARRY THIS PROJECT THROUGH?

A.   I ACTUALLY TOOK THAT REPORT, ELECTRONIC LEVEL, TAPE MEASURE, DOOR GAUGE, WENT OUT TO THAT PARTICULAR SITE, MET WITH THE MANAGER OF THAT SITE.

LET'S SAY IT WAS A LIBRARY.  AND WE WALKED THROUGH THAT FACILITY, TRIED TO FIND OUT WHERE THE PHOTOGRAPH WAS TAKEN.  BECAUSE SOMETIMES IT WAS VERY DIFFICULT TO CORRELATE THE CITATION WITH THE THING IN THE PHOTOGRAPH.

AND THEN WE WOULD TRY TO SEE -- VERIFY IS THAT REALLY THAT CONDITION AT THAT LOCATION OR NOT, BUT ALSO THE CONTEXT.  WHAT IS HAPPENING THERE THAT THEY WOULD THINK THAT SOMETHING IS PARTICULARLY WRONG.

Q.   AFTER YOU DID -- WENT OUT TO EACH SITE, DID YOUR MEASUREMENTS, LOOKED AT THE CONTEXT, WHAT DID YOU DO NEXT?

A.   THEN I -- WE WENT AND CREATED OUR OWN SPREADSHEETS ON THESE PARTICULAR SURVEYS AND THEN MARKED IN THOSE SPREADSHEETS WHETHER WE FELT THE CITATION WAS RELEVANT OR NOT, WHETHER IT WAS A BUILDING CODE ISSUE VERSUS AN ADA ISSUE, WHETHER IT WAS MAINTENANCE OF ACCESSIBLE FEATURES OR WHETHER IT WAS SIMPLY INCORRECT, WHAT WE FELT WAS AN INCORRECT INTERPRETATION.

AND AS WELL, WE IDENTIFIED IF WE FELT THAT THERE WAS AN ISSUE THAT MIGHT BE AN ARCHITECTURAL BARRIER.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1836

SCOTT - CROSS / MR. WALLACE

Q.   MR. SCOTT, IS IT TRUE THAT THE 2008 BOND IS CALLED THE 2008 CLEAN AND SAFE NEIGHBORHOOD PARKS BOND?

A.   YES.

Q.   THAT'S ITS FULL NAME?

A.   I BELIEVE SO.

MR. WALLACE:  PLAINTIFFS MOVE THAT WHAT'S BEEN IDENTIFIED AS F39 BE RECEIVED INTO EVIDENCE.

THE COURT:  ANY OBJECTION?

MR. EMERY:  NO OBJECTION.

THE COURT:  REQUEST IS GRANTED.

(DEFENDANTS' EXHIBIT F39 RECEIVED IN

EVIDENCE)

MR. WALLACE:  OKAY.

BY MR. WALLACE:

Q.   I WOULD LIKE TO RETURN TO ONE OF THE MAPS THAT MR. EMERY DISCUSSED WITH YOU.

I BELIEVE IT WAS F37.

(EXHIBIT DISPLAYED ON SCREEN.)

DID YOU USE A WHEELCHAIR WHEN YOU WERE UTILIZING THE PATHS IN GOLDEN GATE PARK TO ASSESS THEIR RELATIVE ACCESSIBILITY?

A.   NO.  I AM NOT A WHEELCHAIR USER.

MR. WALLACE:  PLAINTIFF'S DON'T HAVE ANY FURTHER QUESTIONS FOR THIS WITNESS.

THE COURT:  ANY REDIRECT?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930