# EXHIBIT 12

1468

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,          )          COURT TRIAL
                               )
          PLAINTIFFS,          )          VOLUME 8
                               )
     VS.                       )          NO. C 07-03685 SBA
                               )
CITY AND COUNTY OF             )
SAN FRANCISCO, ET AL.,         )          PAGES 1468 - 1660
                               )
          DEFENDANTS.          )          OAKLAND, CALIFORNIA
_____)          THURSDAY, APRIL 21, 2011

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                              KONECKY
                         180 MONTGOMERY STREET, SUITE 2000
                         SAN FRANCISCO, CALIFORNIA  94109
                    BY:  MARK T. JOHNSON,
                         ANDREW P. LEE,
                         KIRAN PRASAD,
                         GUY B. WALLACE, ATTORNEYS AT LAW

                         BROWN POORE LLP
                         THE WATERGATE TOWERS
                         2200 POWELL STREET, SUITE 745
                         EMERYVILLE, CALIFORNIA  94608
                    BY:  SCOTT A. BROWN, ATTORNEY AT LAW

FOR DEFENDANT:           OFFICE OF THE CITY ATTORNEY
                         SIXTH FLOOR - FOX PLAZA
                         1390 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA  94102
                    BY:  ERIN BERNSTEIN,
                         JAMES M. EMERY,
                         ELAINE M. O'NEIL,
                         CHRISTINE VAN AKEN, ATTORNEYS AT LAW

REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258
                    DIANE E. SKILLMAN, CSR NO. 4909
     RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1561

STRONG - REDIRECT / LEE

YOUR LAST NAME.

THE WITNESS:  MY NAME IS SUSAN MIZNER, M-I-Z AS IN ZEBRA, N AS IN NANCY, E-R.

THE COURT:  YOUR VOICE IS VERY SOFT, SO IF YOU'LL PLEASE BE SURE TO SPEAK DIRECTLY INTO THE MICROPHONE.

THE WITNESS:  YES, YOUR HONOR.

THE COURT:  OKAY.

DIRECT EXAMINATION

BY MS. O'NEIL:

Q.   ALL RIGHT.  GOOD MORNING, MS. MIZNER.

ARE YOU EMPLOYED BY CITY AND COUNTY OF SAN FRANCISCO?

A.   YES, I AM.

Q.   AND HOW ARE YOU EMPLOYED?

A.   I'M THE DIRECTOR OF THE MAYOR'S OFFICE ON DISABILITY.

Q.   AND WHAT IS THE MAYOR'S OFFICE ON DISABILITY?

A.   IT'S THE A.D.A. COMPLIANCE OFFICE FOR THE CITY AND COUNTY OF SAN FRANCISCO.

Q.   HOW LONG HAVE YOU SERVED AS DIRECTOR OF THE MAYOR'S OFFICE ON DISABILITY?

A.   SINCE THE SPRING OF 2003.

Q.   AND DID YOU WORK FOR THE OFFICE BEFORE THAT DATE?

A.   YES, I DID.  I WAS THE ASSOCIATE DIRECTOR FOR PROGRAMMATIC ACCESS.

Q.   AND WOULD YOU DEFINE "PROGRAMMATIC ACCESS," PLEASE?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 08, 110421

1569

MIZNER - DIRECT / O'NEIL

Q.    AND WHAT DOES THAT REFER TO?

A.    OUR OFFICE IS ONE OF THE OFFICES THAT LOOKS AT CONSTRUCTION DRAWINGS AND CONSTRUCTION THAT THE CITY EITHER DOES ITSELF OR FUNDS.  AND BECAUSE WE DO THAT, WE WANT TO MAKE SURE THAT PEOPLE WHO ARE WORKING WITH THE CITY UNDERSTAND WHAT OUR PROCESS IS.

Q.    COULD I DIRECT YOUR ATTENTION, MS. MIZNER, TO PAGE 126 OF DEFENDANTS' EXHIBIT A35.  LET ME KNOW WHEN YOU'VE LOCATED IT.

                (EXHIBIT PUBLISHED.)

          THE WITNESS:  (REVIEWING DOCUMENT.)

          I HAVE 128 AS THE -- OH, SORRY.  THERE, I FOUND IT.

BY MS. O'NEIL:

Q.    OKAY.  AND DOES THE INFORMATION CONTAINED ON PAGE 126 OF DEFENDANTS' EXHIBIT A35 INCLUDE THE INFORMATION THAT YOU JUST TESTIFIED TO ABOUT THE CITY'S PLAN REVIEW PROCESS?

A.    YES.  IT EXPLAINS --

          MR. JOHNSON:  OBJECTION, VAGUE, YOUR HONOR.

          THE COURT:  OVERRULED.

          THE WITNESS:  IT EXPLAINS THAT ANY PERMIT APPLICATIONS FOR EITHER NEW CONSTRUCTION OR RENOVATIONS, ALTERATIONS, ADDITIONS TO BUILDINGS THAT ARE PUBLICLY FUNDED IN WHOLE OR IN PART BY CITY AND COUNTY OF SAN FRANCISCO HAVE TO BE APPROVED BY THE MAYOR'S OFFICE ON DISABILITY OR THE DEPARTMENT OF PUBLIC WORKS A.D.A. COORDINATOR.

          AND THE DEPARTMENT OF BUILDING INSPECTION WILL NOT

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1570

MIZNER - DIRECT / O'NEIL

ACCEPT THE -- A PERMIT APPLICATION BEFORE WE HAVE REVIEWED THOSE PLANS.  AND THE DEPARTMENT OF BUILDING INSPECTION WILL NOT PROVIDE A FINAL CERTIFICATE OF OCCUPANCY WITHOUT OUR HAVING STAMPED THAT -- THAT IT IS READY FOR OCCUPANCY.

MR. JOHNSON:  OBJECTION, YOUR HONOR, TO THE LAST TWO STATEMENTS ABOUT THE DEPARTMENT OF BUILDING INSPECTION AS LACK OF FOUNDATION, HEARSAY, AND BEYOND THE SCOPE OF THE QUESTION NON-RESPONSIVE.

MS. O'NEIL:  MS. --

I CAN LAY SOME FOUNDATION, YOUR HONOR.

THE COURT:  OKAY.

BY MS. O'NEIL:

Q.   MS. MIZNER, DO YOU HAVE FAMILIARITY WITH -- IN THE COURSE -- STRIKE THAT.  IN THE COURSE OF YOUR WORK AS DIRECTOR OF MOD, HAVE YOU GAINED ANY FAMILIARITY WITH THE POLICIES AND PROCEDURES OF THE DEPARTMENT OF BUILDING INSPECTION WITH RESPECT TO DISABILITY ACCESS REVIEW FOR CITY-FUNDED PROJECTS?

A.   YES, I HAVE.

MR. JOHNSON:  CALLS FOR HEARSAY.

THE COURT:  WHETHER SHE HAS ANY FAMILIARITY WITH THE POLICIES AND PROCEDURES OF THE DEPARTMENT?

MR. JOHNSON:  I'M SORRY, YOUR HONOR.  THE OBJECTION MAY HAVE BEEN PREMATURE.

THE COURT:  IT IS.  AND IT'S ALREADY DISRUPTIVE ENOUGH.  JUST MAKE SURE THAT IT'S -- AT LEAST THE TIMING IS

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1592

MIZNER - DIRECT / O'NEIL

A.   I HAVE BOTH IMMUNE AND NEUROLOGICAL DISORDERS.  THE MOST NOTICEABLE ISSUE FOR THAT IS THAT MY BLOOD PRESSURE DOESN'T WORK PROPERLY SO I CAN'T STAND UP FOR VERY LONG.  AND SO IF I NEED TO STAND UP FOR SOMETHING, I WILL -- I WILL NEED MY CANE SEAT OR TO LEAN AGAINST SOMETHING.

Q.   DOES MOD RETAIN ANY STATISTICS ABOUT THE TYPES OF DISABILITIES EXPERIENCED BY SAN FRANCISCO RESIDENTS?

A.   WE HAVE RELIED MOST FREQUENTLY ON THE 2000 CENSUS THAT FOUND ABOUT 19.7 PERCENT OF THE CITY POPULATION HAD -- WERE PEOPLE WITH DISABILITIES, OR ABOUT 150,000 PEOPLE.

Q.   AND CAN YOU ESTIMATE OR CHARACTERIZE THE RANGE -- THE TYPES OF DISABILITIES FROM THAT INFORMATION?

A.   THE LARGEST GROUP ARE PEOPLE WITH PHYSICAL DISABILITIES, ABOUT 12 OR 13 PERCENT INCLUDE MOBILITY DISABILITIES.  AND THEN THERE ARE ALSO SENSORY DISABILITIES, COGNITIVE DISABILITIES, AND PSYCHIATRIC DISABILITIES.

THE CENSUS DIDN'T -- LUMPED PEOPLE INTO CATEGORIES. THEY DIDN'T DO A LOT OF SPECIFICITY.

Q.   DOES MOD FOCUS ITS WORK ON ANY PARTICULAR SEGMENT OF THE DISABILITY COMMUNITY?

A.   NO, WE CONSIDER IT OUR JOB TO TRY TO REPRESENT THE ENTIRE DISABILITY COMMUNITY AS BEST WE CAN.

Q.   YOU REFERENCED THE MDC EARLIER IN YOUR TESTIMONY.  WHAT IS THAT?

A.   THAT IS THE MAYOR'S DISABILITY COUNCIL.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1608

MIZNER - DIRECT / MS. O'NEIL

A.   SO, FOR EXAMPLE, THE SLOPE OF THE CURB RAMP IS THE BOTTOM OF THAT FIRST SECTION WHERE IF THE SLOPE IS LESS THAN 8.33 PERCENT, THERE WOULD BE NO DEDUCTION, ZERO.

IF THE SLOPE WAS BETWEEN 8.33 AND 10 PERCENT, THERE WOULD BE A 12-POINT DEDUCTION FROM 100.

AND IF THE SLOPE WAS GREATER THAN 10 PERCENT, THERE WOULD BE A 25-POINT DEDUCTION FROM 100.

Q.   AND DO YOU SEE THE SECOND ITEM ON THE RATING SCALE WHICH IS UNDER FIELD, IT SAYS "IS THE LIP TOO HIGH?"

DO YOU SEE THAT?

A.   YES.

Q.   WHAT DOES THAT REFER TO?

A.   SO, MY UNDERSTANDING FROM SEVERAL CONVERSATIONS WITH PEOPLE WITH A HISTORY WITH CURB RAMPS, IS THAT THERE WAS A DESIGN FOR CURB RAMPS IN WHICH THERE WAS A HALF-INCH LIP BECAUSE IT WAS AN INDICATOR FOR PEOPLE WHO ARE BLIND WITH THEIR CANE THAT THEY WERE ENTERING AN AREA HAVING GONE DOWN A RAMP WHERE VEHICULAR TRAFFIC WOULD BE.

THIS WAS BEFORE WE HAD THE YELLOW TACTILE DOMES THAT PROVIDE MORE INDICATION AND GREATER INDICATION FOR PEOPLE WHO ARE BLIND AND LOW VISION.

THE HALF-INCH LIP IS SOMETHING THAT HAS SINCE BEEN PHASED OUT, BUT WHEN WE WERE HAVING THE DISCUSSION WITH THE PHYSICAL ACCESS COMMITTEE, THERE WAS CONCERN FROM PEOPLE WHO ARE BLIND AND LOW VISION OF GRINDING DOWN THAT LIP BEFORE WE

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 08, 110421

1610

MIZNER - DIRECT / MS. O'NEIL

FROM THE WITNESS THE BASIS FOR THE SCORING SYSTEM.  THESE ARE

QUESTIONS ABOUT THE SCORING SYSTEM THAT WAS CREATED IN

COLLABORATION WITH THE PHYSICAL ACCESS COMMITTEE AND THIS IS AN

ITEM THAT IS PART OF THAT SCORING SYSTEM.

IT'S ALSO AN ITEM THAT HAS BEEN DISCUSSED MUCH IN

TESTIMONY IN THIS LAWSUIT.  IT PROVIDES THE FOUNDATION FOR THE

SYSTEM THAT THE CITY CURRENTLY USES.

THE COURT:  I WILL ALLOW THE QUESTION.  JUST

ESTABLISH WITH HER HER FOUNDATION FOR UNDERSTANDING WHAT IT

REFERS TO IN RESPONSE TO YOUR QUESTION.

MS. O'NEIL:  OKAY.  YES, YOUR HONOR.

BY MS. O'NEIL:

Q.   MS. MIZNER, I ASKED YOU ABOUT THE CRITERIA "IS THE LIP TOO

HIGH?"  AND YOU RECALL THAT QUESTION?

A.   YES.

Q.   AND YOU PROVIDED AN ANSWER TO ME.  AND WHY DON'T WE START

OVER AGAIN.  AND I WILL ASK YOU, WHAT DOES THIS MEAN?  JUST IN

THE CONTEXT OF THE SCORING SYSTEM, "IS THE LIP TOO HIGH?"

A.   IF IT HAS A HALF-INCH LIP, THAT IS NOT COMPLIANT WITH THE

CURRENT STANDARDS THAT WE USE IN THE CITY AND COUNTY OF SAN

FRANCISCO.

Q.   AND DID THE MAYOR'S OFFICE ON DISABILITY HAVE DISCUSSIONS

WITH THE PHYSICAL ACCESS COMMITTEE OF THE MAYOR'S DISABILITY

COUNCIL REGARDING THIS CRITERIA FOR THE SCORING OF EXISTING

CURB RAMPS IN THE CITY?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 08, 110421

1646

MIZNER - DIRECT / MS. O'NEIL

Q.   IS THE INFORMATION THAT YOU JUST READ INTO THE RECORD INFORMATION THAT YOU HAVE CONSIDERED IN YOUR ROLE AS DIRECTOR OF THE MAYOR'S OFFICE ON DISABILITY IN EVALUATING THE CITY'S OBLIGATIONS TO INSTALL CURB RAMPS?

A.   YES, IT IS.

Q.   I WOULD LIKE TO SWITCH TO ANOTHER TOPIC.

A.   OKAY.

Q.   PUT THAT AWAY.

     MS. MIZNER, HAVE YOU REVIEWED ANY OF THE EXPERT REPORTS THAT WERE PREPARED BY PLAINTIFFS' EXPERTS WHO HAVE TESTIFIED IN THIS CASE?

A.   YES, I HAVE.

Q.   AND WERE YOU INVOLVED IN THE CITY'S PREPARATION OF A RESPONSE TO THOSE EXPERT REPORTS FOR PURPOSES OF THIS LAWSUIT?

A.   YES.

Q.   WHAT WAS THE NATURE OF THAT INVOLVEMENT?

A.   I ASKED THE PEOPLE IN MY OFFICE, JOHN PAUL SCOTT, JIM WHIPPLE AND CARLA JOHNSON TO TAKE THE EXPERT REPORTS AND GO OUT TO THE LOCATIONS AND EVALUATE WHAT THEY SAW AND FOUND.

Q.   SO WAS THIS A GROUP EFFORT?

A.   YES.

Q.   DID YOU DEVELOP A METHODOLOGY FOR CONDUCTING THOSE SITE INSPECTIONS?

A.   YES, WE DID.

Q.   WHAT WAS THAT METHODOLOGY?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1647

MIZNER - DIRECT / MS. O'NEIL

A.   THE FIRST STEP IS ALWAYS TO JUST GO ON THE WEBSITE AND PULL THE PUBLIC RECORD ABOUT WHEN THE BUILDING WAS CONSTRUCTED AND WHEN ANY RENOVATIONS OCCURRED SO THAT THEY WOULD KNOW WHAT VERSION OF THE CALIFORNIA BUILDING CODE THEY WOULD BE LOOKING AT TO COMPARE WHEN IT WAS BUILT TO THAT CODE.

OBVIOUSLY FOR BUILDINGS THAT WERE BUILT BEFORE THE AMERICANS WITH DISABILITIES ACT CAME INTO EFFECT, THEY WOULD WANT TO KNOW THAT AS WELL.

THEN THEY WOULD GO OUT AND RE-TAKE MEASUREMENTS AND RE-LOOK AT THE ITEMS THAT HAD BEEN IDENTIFIED IN THE EXPERT REPORTS, AND THEY CLASSIFIED THEM INTO FOUR DIFFERENT CATEGORIES.  AND IT BECAME CLEAR THAT WE NEEDED TO HAVE THESE FOUR CATEGORIES.

ONE WAS SIMPLY THAT THE EXPERT REPORT HAD MADE AN ERROR.  THEY WERE APPLYING THE WRONG CODE, THEY WEREN'T TAKING THE MEASUREMENT CORRECTLY, OR THEY WEREN'T APPLYING DIMENSIONAL TOLERANCES.

ANOTHER WAS THAT THIS WAS NOT ACTUALLY A CONSTRUCTION ISSUE, IT WAS A MAINTENANCE OF ACCESSIBLE FEATURES ISSUE.  SO A TRASH CAN THAT IS IN THE WRONG PLACE ISN'T SOMETHING THAT IS BECAUSE THE BUILDING WAS CONSTRUCTED INCORRECTLY, IT'S BECAUSE THERE WAS AN OBSTACLE THAT -- THAT'S A PROGRAMMATIC ACCESS ISSUE, AND TRAINING STAFF TO MAKE SURE THAT THINGS ARE NOT IN THE WAY TO IMPEDE ACCESS.

AND THIRD WAS, YES, THERE WAS, IN FACT, TECHNICALLY

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1648

MIZNER - DIRECT / MS. O'NEIL

SOMETHING WRONG, BUT IT DIDN'T AFFECT ACCESS, IN THEIR VIEW.

AND THE FOURTH WAS WHETHER -- THAT THEY ACTUALLY AGREED WITH THE EXPERT FINDING THAT THERE WAS A PROBLEM IN HOW SOMETHING HAD BEEN CONSTRUCTED.

MR. JOHNSON:  YOUR HONOR, I OBJECT TO THE RESPONSE AS PROFFERING EXPERT OPINION TESTIMONY FROM A LAY UNDISCLOSED WITNESS, UNDISCLOSED EXPERT.

THE COURT:  THE QUESTION WAS WHAT WAS THAT METHOD -- DID YOU DEVELOP A METHODOLOGY FOR CONDUCTING THOSE SITE INSPECTIONS?

YES, I DID.

WHAT WAS THAT METHODOLOGY?

SHE JUST DETAILED THE METHODOLOGY THAT THEY EMPLOYED.

MR. JOHNSON:  I THINK IT'S A METHODOLOGY FOR A SITE ASSESSMENT OF THE VERY TYPE THAT WE HAVE BEEN HEARING ABOUT IN COURT CONDUCTED BY EXPERTS.

THE COURT:  WHY DIDN'T YOU OBJECT WHEN THE QUESTION WAS ASKED?  SHE ASKED TWO QUESTIONS --

MR. JOHNSON:  I DIDN'T REALIZE THAT IT WAS ELICITING THIS KIND OF INFORMATION, YOUR HONOR --

THE COURT:  IT WAS.  WHAT WAS THE METHODOLOGY FOR CONDUCTING THE SITE INSPECTIONS?

OBJECTION IS OVERRULED.

///

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1649

MIZNER - DIRECT / MS. O'NEIL

BY MS. O'NEIL:

Q.   AND DID YOU DISCUSS THIS METHODOLOGY WITH YOUR COWORKERS MR. SCOTT, MR. WHIPPLE AND MS. JOHNSON?

A.   YES.   THEY DEVELOPED IT.   WE DEVELOPED IT TOGETHER.

Q.   DID YOU MEET WITH THE CITY'S EXPERT, LARRY WOOD, TO INFORM HIM OF THE METHODOLOGY USED FOR CONDUCTING THE SITE INSPECTIONS?

A.   YES.   WE EXPLAINED HOW THAT HAD BEEN DONE, THOUGH MOST -- HE MET MORE WITH JOHN PAUL SCOTT THAN HE MET WITH ME.

Q.   AND WERE THERE ANY OCCASIONS WHERE MR. SCOTT, MR. WHIPPLE OR MS. JOHNSON AGREED WITH THE PLAINTIFFS' EXPERTS FINDINGS?

MR. JOHNSON:   OBJECTION, CALLS FOR HEARSAY.

THE COURT:   COUNSEL?

MS. O'NEIL:   YOUR HONOR, I AM ESTABLISHING FOUNDATION FOR ACTIONS THAT MS. MIZNER TOOK IN RESPONSE TO CONFIRMATION OF THE IDENTIFICATION OF A PROBLEM.

THE COURT:   SO, IN OTHER WORDS, YOU ARE SAYING THIS IS NOT BEING ELICITED FOR HEARSAY PURPOSES, IT IS BEING OFFERED TO EXPLAIN HER SUBSEQUENT CONDUCT IN RESPONSE TO THE INFORMATION THAT SHE'S PROVIDED?

MS. O'NEIL:   YES, YOUR HONOR.

THE COURT:   THE HEARSAY OBJECTION IS OVERRULED.

YOU MAY ANSWER THE QUESTION.

THE WITNESS:   YES, THERE WERE A SMALL NUMBER OF CASES IN WHICH THEY DID AGREE.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930