# EXHIBIT 15

1888

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,           )          COURT TRIAL
                                )
              PLAINTIFFS,        )          VOLUME 10
                                )
     VS.                        )          NO. C 07-03685 SBA
                                )
CITY AND COUNTY OF              )
SAN FRANCISCO, ET AL.,          )          PAGES 1888 - 2084
                                )
              DEFENDANTS.        )          OAKLAND, CALIFORNIA
_____)          THURSDAY, APRIL 28, 2011

                     TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                              KONECKY
                         180 MONTGOMERY STREET, SUITE 2000
                         SAN FRANCISCO, CALIFORNIA  94109
                    BY:  MARK T. JOHNSON,
                         ANDREW P. LEE,
                         GUY B. WALLACE, ATTORNEYS AT LAW

                         BROWN POORE LLP
                         THE WATERGATE TOWERS
                         2200 POWELL STREET, SUITE 745
                         EMERYVILLE, CALIFORNIA  94608
                    BY:  SCOTT A. BROWN, ATTORNEY AT LAW

FOR DEFENDANT:           OFFICE OF THE CITY ATTORNEY
                         SIXTH FLOOR - FOX PLAZA
                         1390 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA  94102
                    BY:  ERIN BERNSTEIN,
                         JAMES M. EMERY,
                         ELAINE M. O'NEIL, ATTORNEYS AT LAW

REPORTED BY:             RAYNEE H. MERCADO, CSR NO. 8258
                         DIANE E. SKILLMAN, CSR NO. 4909


         RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1910

(PAUSE IN THE PROCEEDINGS.)

THE CLERK:  IF YOU'LL PLEASE RAISE YOUR RIGHT HAND.

KEVIN WESLEY JENSEN,

CALLED AS A WITNESS FOR THE DEFENDANTS, HAVING BEEN DULY SWORN,

TESTIFIED AS FOLLOWS:

THE CLERK:  PLEASE BE SEATED.

PLEASE STATE YOUR FULL NAME FOR THE COURT AND SPELL

YOUR LAST NAME.

THE WITNESS:  KEVIN WESLEY JENSEN.  LAST NAME

SPELLED J-E-N-S-E-N.

THE CLERK:  THANK YOU.

DIRECT EXAMINATION

BY MS. O'NEIL:

Q.   GOOD MORNING, MR. JENSEN.

A.   GOOD MORNING.

Q.   ARE YOU EMPLOYED BY THE CITY AND COUNTY OF SAN FRANCISCO?

A.   I AM.

Q.   AND WHAT IS YOUR POSITION?

A.   THE DISABILITY ACCESS COORDINATOR FOR THE DEPARTMENT OF

PUBLIC WORKS.

Q.   HOW LONG HAVE YOU HELD THAT POSITION?

A.   SINCE 2002.

Q.   WHAT ARE YOUR JOB DUTIES AS THE DEPARTMENT OF PUBLIC

WORKS DISABILITY ACCESS COORDINATOR?

A.   I SERVE AS THE A.D.A. COORDINATOR FOR THE DEPARTMENT, ONE

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1915

A.D.A. COORDINATORS THAT HE MENTIONED -- OR EVEN, I BELIEVE, MORE FOLLOW THE CITY POLICY.  SO I'M ASKING HIM TO DESCRIBE THE CITY POLICY.

THE COURT:  OKAY.  THE OBJECTION'S OVERRULED.

THE WITNESS:  THE POLICY IS TO REVIEW PLANS AND SPECIFICATIONS AND SO FORTH DURING DESIGN AND BEFORE THEY GO OUT TO BID AND BEFORE THEY'RE BUILT, AND THEN DURING CONSTRUCTION, AND -- YEAH.

BY MS. O'NEIL:

Q.    I'M SORRY?

A.    AND DURING CONSTRUCTION, YES.

Q.    IS THAT CITY POLICY EXPRESSED IN ANY WRITTEN DOCUMENTS, TO YOUR KNOWLEDGE?

A.    I BELIEVE THE MOD WEBSITE OUTLINES THAT BASIC PROCESS AND ALSO YOU'LL FIND IT EMBEDDED IN DEPARTMENT OF BUILDING INSPECTION ACCESSIBILITY COMPLIANCE FORMS.  THERE'S A REVIEW FORM THERE, FOR EXAMPLE, FOR MYSELF AND FOR JIM WHIPPLE AT MOD FOR CITY PROJECTS.

Q.    MR. JENSEN, I'D LIKE YOU TO TURN TO -- THERE SHOULD BE A BINDER IN FRONT OF YOU, I HOPE.  IS -- IS THERE A --

A.    YES.

Q.    DO YOU HAVE THAT?

A.    THERE'S THREE HERE.

Q.    THERE'S THREE.  OKAY.  THERE SHOULD BE ONE THAT HAS YOUR NAME ON IT.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1916

A.    (REVIEWING DOCUMENTS.)

      ALL RIGHT.

Q.    AND IF YOU COULD TURN TO THE CITY'S EXHIBIT P11.

A.    WHAT WAS THAT FIRST LETTER?

Q.    "P" AS IN PETER.

A.    OKAY.  (REVIEWING DOCUMENTS.)

      HAVING TROUBLE FINDING ANYTHING WITH A "P" ON IT.

Q.    IT'S -- THERE'S A -- IT'S AFTER K10, IF THAT HELPS.

A.    THERE'S TWO BINDERS WITH MY NAME ON IT HERE, SO TRY THE OTHER ONE.

Q.    OH, OKAY.  ONE HAS A VERY LARGE DOCUMENT, AND THEN THE OTHER HAS A NUMBER OF EXHIBITS.

      YOUR HONOR, MAY I APPROACH TO ASSIST THE WITNESS?

      THE COURT:  YOU MAY.

            (PAUSE IN THE PROCEEDINGS.)

            (OFF-THE-RECORD DISCUSSION.)

            (EXHIBIT PUBLISHED.)

BY MS. O'NEIL:

Q.    SO P11'S GOING TO BE I THINK IT'S RIGHT HERE (INDICATING).

A.    GOT IT.

Q.    YES.

      ALL RIGHT.  YOU HAVE THAT BEFORE YOU NOW, MR. JENSEN?

A.    YES, P11.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1917

Q.    AND DO YOU RECOGNIZE THIS DOCUMENT, SIR?

A.    I DO.

Q.    AND WHAT IS IT?

A.    IT'S A LETTER FROM THEN MAYOR WILLIE BROWN TO ALL DEPARTMENT HEADS.

MR. JOHNSON:  OBJECTION, FOUNDATION, YOUR HONOR. THIS LETTER IS DATED 1998, AND MR. JENSEN INDICATED THAT HE STARTED WITH THE CITY IN 2002.

THE WITNESS:  ACTUALLY, I STARTED WITH THE CITY IN --

MS. O'NEIL:  WAIT.

THE COURT:  YOUR OBJECTION'S THE FOUNDATION AS TO WHAT -- WHETHER HE KNOWS WHAT THIS -- WHAT THIS DOCUMENT -- WHETHER HE -- HE RECOGNIZES THE DOCUMENT?

MR. JOHNSON:  WELL, HE HAS TESTIFIED HE RECOGNIZES IT, BUT I MEAN --

THE COURT:  RIGHT.  WHAT IT IS.

MR. JOHNSON:  FOUNDATION AS TO WHAT -- HOW HE RECOGNIZES IT.

THE COURT:  OR WHAT IT IS.

MR. JOHNSON:  WHAT IT IS.  WHETHER --

THE COURT:  OKAY.  WHY DON'T YOU ESTABLISH --

(SIMULTANEOUS COLLOQUY.)

THE COURT:  -- THE FOUNDATION.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1918

BY MS. O'NEIL:

Q.     MR. JENSEN, IS IT CORRECT THAT YOU BEGAN YOUR EMPLOYMENT WITH THE CITY AT THE PORT OF SAN FRANCISCO IN 1995?

A.     THAT IS CORRECT.

Q.     AND IN THE COURSE OF YOUR WORK FOR THE PORT OF SAN FRANCISCO, AS THE A.D.A. COORDINATOR FOR THE PORT, DID YOU RECEIVE A COPY OF THIS DOCUMENT?

A.     I DID.

MS. O'NEIL:  YOUR HONOR, MAY I PROCEED?

THE COURT:  YOU MAY.

BY MS. O'NEIL:

Q.     AND I -- I BELIEVE YOU'RE IN THE MIDDLE OF EXPLAINING WHAT THIS DOCUMENT IS.  COULD YOU FINISH YOUR RESPONSE, SIR.

A.     YES.  IT IS DATED JUNE 22ND, 1998.  AND IT WAS A LETTER THAT WAS ESTABLISHING THE REQUIREMENT THAT CITY PROJECTS ALL RECEIVE ACCESSIBILITY REVIEWS AND GETTING INTO SOME DETAIL ABOUT WHAT THAT MEANS.

Q.     AND IN YOUR EXPERIENCE AS THE A.D.A. COORDINATOR FOR THE PORT OF SAN FRANCISCO AND AS THE DISABILITY ACCESS COORDINATOR FOR THE DEPARTMENT OF PUBLIC WORKS, HAS THIS POLICY ESTABLISHED BY MAYOR BROWN IN 1998 REMAINED IN EFFECT UP TO THE PRESENT?

A.     IT HAS.

MS. O'NEIL:  YOUR HONOR, THE CITY MOVES TRIAL EXHIBIT P11 INTO EVIDENCE.

THE COURT:  ANY OBJECTION?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1919

MR. JOHNSON:  NO OBJECTION, YOUR HONOR.

THE COURT:  P11 WILL BE RECEIVED INTO EVIDENCE.

(DEFENDANTS' EXHIBIT P11

RECEIVED IN EVIDENCE)

BY MS. O'NEIL:

Q.    MR. JENSEN, FOR THE CITY PROJECTS THAT ARE UNDER THE

RESPONSIBILITY OF THE DPW, IS IT CORRECT THAT YOU ARE THE

PERSON WHO APPROVES THOSE PROJECTS AS COMPLIANT WITH TITLE II

OF THE A.D.A.?

A.    I AM.

Q.    AND DOES YOUR JOB ALSO REQUIRE THAT YOU REVIEW CITY

CONSTRUCTION PROJECTS FOR COMPLIANCE WITH THE CALIFORNIA

BUILDING CODE?

A.    IT DOES.

Q.    AND DO YOU REVIEW CITY PROJECTS UNDER DPW'S JURISDICTION

FOR ANY OTHER CODES OR REGULATIONS WITH RESPECT TO DISABILITY

ACCESS?

A.    YES.  I'M CHARGED WITH REVIEWING THEM WITH THE GAMUT OF

ACCESSIBILITY REGULATIONS, BOTH FEDERAL, STATE, AND LOCAL.

Q.    DOES THE CITY USE ANY PARTICULAR DESIGN STANDARD FOR

ENSURING THAT CITY'S PROJECTS ARE CONSTRUCTED IN ACCORDANCE

WITH FEDERAL ACCESSIBILITY LAWS?

A.    YES, THE AMERICANS WITH DISABILITY ACT ACCESSIBILITY

GUIDELINES OR OTHERWISE CALLED ADAAG.

Q.    ADAAG; IS THAT RIGHT?

1920

A.   YES.

Q.   AND DOES DPW HAVE OTHER EMPLOYEES ON ITS STAFF THAT ARE TRAINED IN FEDERAL, STATE, AND LOCAL ACCESS STANDARDS?

A.   YES, MANY OF OUR STAFF HAVE RECEIVED TRAINING IN THAT REGARD, ARCHITECTS, LANDSCAPE ARCHITECTS, ENGINEERS, INSPECTORS.

Q.   DOES THE DEPARTMENT OF PUBLIC WORKS HAVE A SECTION THAT IS RELATED TO ARCHITECTURE?

A.   THE BUREAU OF ARCHITECTURE.

Q.   AND WHAT IS THE FUNCTION OF THE BUREAU OF ARCHITECTURE?

A.   TO PROVIDE ARCHITECTURAL DESIGN SERVICES AND CONSTRUCTION ADMINISTRATION SERVICES.

Q.   AND DO THEY PREPARE TYPICALLY -- STRIKE THAT.

     DOES THE BUREAU OF ARCHITECTURE TYPICALLY PREPARE THE CONSTRUCTION DRAWINGS AND THE ARCHITECTURAL PLANS FOR CITY-FUNDED PROJECTS?

A.   SOME OF THEM, YES.

Q.   I WOULD LIKE YOU, MR. JENSEN, IF YOU COULD, TURN TO ANOTHER DOCUMENT IN THE BINDER IN FRONT OF YOU, AND THIS IS DOCUMENT -- TRIAL EXHIBIT A14.

A.   OKAY.

          (EXHIBIT PUBLISHED.)

BY MS. O'NEIL:

Q.   MR. JENSEN, DO YOU RECOGNIZE THE CITY'S TRIAL EXHIBIT NO. A14?

1921

A.      I DO.

Q.      AND WHAT IS THIS DOCUMENT?

A.      THIS IS OUR CURRENT PROCEDURE 9.8.24, A.D.A. AND ACCESSIBILITY COMPLIANCE PROCEDURE.

Q.      DID YOU PREPARE THIS DOCUMENT?

A.      I DID.

Q.      DID YOU HAVE ASSISTANCE OF OTHERS IN PREPARING IT?

A.      YES.

Q.      WHY DID YOU PREPARE THIS PROCEDURE NO. 9.8.24?

A.      IT WAS PART OF A DEPARTMENT-WIDE REWORKING OF ALL OF OUR PROCEDURES IN ORDER TO ATTAIN APWA ACCREDITATION, AMERICAN PUBLIC WORKS ASSOCIATION.  AND A KEY PART OF THAT CERTIFICATION IS TO CONFORM TO THEIR FILE NUMBERING SYSTEM AND HAVING A CERTAIN NUMBER OF PROCEDURES IN PLACE IN ACCORDANCE WITH THEIR OUTLINES.

Q.      AND WHEN WAS PROCEDURE 9.8.24 CREATED?

A.      (REVIEWING DOCUMENT.)

        THIS WAS ADOPTED IN JANUARY 2010.  IT WAS CREATED IN 2009.

Q.      AND DOES PROCEDURE NO. 9.8.24 CREATE ANY NEW PROCEDURES FOR THE DEPARTMENT OF PUBLIC WORKS AS OF THAT DATE?

A.      NOT SUBSTANTIALLY, NO.  IT JUST PUTS INTO THIS NEW APWA FORMAT THE PROCEDURES AND -- AND POLICIES THAT WERE EXISTENCE ALREADY AT THAT POINT.

Q.      MR. JENSEN, I'D LIKE TO DIRECT YOUR ATTENTION TO PAGE 3

1922

OF THIS DOCUMENT.

ACTUALLY, IT'S THE -- IT'S PAGE 3, WHICH IS THE NUMBERING AT THE VERY BOTTOM.  YOU SEE, THERE'S TWO SETS OF NUMBERS, MR. JENSEN.  AND IT'S -- IT'S THE NUMBER AT THE BOTTOM THAT SAYS "EXHIBIT A14-" AND THEN IT HAS MANY ZEROS AND A 3.

DO YOU SEE THAT?  IT'S ACTUALLY PAGE 2 OF YOUR PROCEDURE --

A.    YES.

Q.    -- DOCUMENT.

A.    I HAVE IT, YES.

Q.    OKAY.  AND THEN DIRECTING YOUR ATTENTION TO SECTION D WHICH IS ENTITLED "PROCEDURE," AND SUB 1, WHICH IS "RESPONSIBILITY," DO YOU SEE THAT, SIR?

A.    YES.

Q.    COULD YOU READ THE FIRST PARAGRAPH OF THAT SECTION?

A.    YES.  THE PROJECT MANAGER, PM, OR THE PROJECT LEAD, PL, WHEN NO PM HAS BEEN ASSIGNED TO MANAGE A PROJECT, IS RESPONSIBLE FOR SCHEDULING A.D.A. REVIEWS IN A TIMELY MANNER AND ENSURING THAT PROJECT TEAM FOLLOWS THROUGH WITH THE IMPLEMENTATION OF REVIEW COMMENTS OR PROVIDES ADEQUATE EXPLANATION AS TO WHY THE COMMENTS ARE NOT BEING IMPLEMENTED.

Q.    AND THEN THERE'S A SECOND PARAGRAPH IN THAT SECTION. COULD YOU READ THAT, TOO?

A.    BECAUSE CAPITAL PROJECTS VARY WIDELY IN SIZE AND COMPLEXITY, PROJECT LEADS ARE ENCOURAGED TO MEET WITH THE DPW

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1923

DAC, DISABILITY ACCESS COORDINATOR, TO ESTABLISH THE NUMBER AND SCHEDULE OF REVIEWS AND SET EXPECTATIONS ON HOW LONG EACH REVIEW WILL TAKE.  EACH REVIEW PERIOD IS USUALLY ONE TO TWO HOURS EACH.

Q.     AND DID YOU DRAFT THAT LANGUAGE, SIR?

A.     YES.

Q.     AND WHAT'S THE SIGNIFICANCE OF THAT LANGUAGE?

A.     IT MEMORIALIZES THE PROCEDURE THAT I HAD BEEN USING SINCE -- WELL, EVEN BACK WHEN I WAS AT THE PORT OF SAN FRANCISCO WHERE, YOU KNOW, EACH -- EACH PROJECTS' NEEDS WILL VARY AND VARY WITH THE TYPE OF PROJECT, THE COMPLEXITY OF THE PROJECT, AND WHO'S WORKING ON IT.

AND SO WE MEET AT THE OUTSET TO DETERMINE WHAT WOULD BE THE APPROPRIATE SCHEDULE OF REVIEWS AND HOW MUCH OVERSIGHT OR ASSISTANCE THE PROJECT STAFF WILL NEED FROM ME.

Q.     THANK YOU.

AND THEN FURTHER DOWN THAT SAME PAGE, SUBSECTION 4 IS ENTITLED "PLANNING PROCESS."  DO YOU SEE THAT, SIR?

A.     "PLANNING PHASE"?

Q.     I'M SORRY.  "PLANNING PHASE," YES.

AND WOULD YOU PLEASE READ THE SECTION THAT BEGINS WITH -- READ THE SECTION THAT BEGINS "MEET" -- ACTUALLY, THE WHOLE SECTION, PLEASE.

A.     "MEET WITH THE DPW DAC FOR EARLY PLANNING INPUT IN ORDER TO IDENTIFY ACCESSIBILITY REQUIREMENTS THAT ARE CRITICAL TO THE

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1924

BUDGET AND SCHEDULE OF PLANNED PROJECTS.  ACCESS COMPLIANCE OPTIONS MAY BE IDENTIFIED TO ESTABLISH A RANGE ESTIMATE FOR BUDGET AND SCHEDULE-PLANNING PURPOSES.  COORDINATION WITH THE CITY-WIDE A.D.A. TRANSITION PLAN AND THE PRIORITIES FOR MEETING THE A.D.A. REQUIREMENTS SHOULD BE EVALUATED DURING THIS PHASE.

"THE DPW DAC CAN ADVISE ON FUNDING OPPORTUNITIES THAT MAY BE AVAILABLE FOR IDENTIFIED ACCESSIBILITY BARRIER REMOVAL AND PROGRAM ACCESSIBILITY OF A GIVEN FACILITY OR DEPARTMENTAL FUNCTION."

Q.    AND DID YOU DRAFT THIS LANGUAGE, SIR?

A.    I DID.

Q.    AND WHAT'S THE SIGNIFICANCE OF THIS LANGUAGE?

A.    IT'S ESSENTIALLY MAKING SURE THAT PRIMARILY EARLY ON, THAT -- THAT WE IDENTIFY THE ACCESSIBILITY ISSUES THAT WOULD BE MOST CRITICAL -- WELL, THE FULL RANGE, ESSENTIALLY SO THAT WE MAKE SURE WE GET IT IN THE -- THE COST ESTIMATE AND BUDGET FOR THE PROJECT, NUMBER ONE, AND THEN FOLLOW ACCORDINGLY THROUGH THE DESIGN OF THE PROJECT.

Q.    AND IF YOU COULD TURN TO ANOTHER DOCUMENT IN YOUR BINDER, SIR, WHICH IS TRIAL EXHIBIT I41.

YOU MIGHT WANT TO KEEP THAT PAGE -- MAYBE I SHOULD GIVE YOU A POST-IT 'CAUSE I'M GOING TO RETURN TO THIS PROCEDURE.

A.    I GOT IT.

(EXHIBIT PUBLISHED.)

1928

MS. O'NEIL:  OKAY.

(DEFENDANTS' EXHIBIT I41

RECEIVED IN EVIDENCE)

BY MS. O'NEIL:

Q.    RETURNING TO A14, THE DPW PROCEDURE 9.8.24, AND TURNING
TO PAGE 4 OF THE EXHIBIT, WHICH IS PAGE 3 OF THE PROCEDURE,
THERE ARE REFERENCES IN THIS DOCUMENT, SIR, TO A CONCEPTUAL
DESIGN PHASE AT SUBSECTION 5, A SCHEMATIC DESIGN AT SUBSECTION
6, DESIGN DEVELOPMENT REVIEWS AT SUBSECTION 7, AND CONSTRUCTION
DOCUMENT REVIEWS AT SUBSECTION 8.

DO THESE ENTRIES SIGNIFY DIFFERENT PHASES IN A
TYPICAL DPW CONSTRUCTION PROJECT?

A.    YES.

Q.    AND IS IT YOUR PRACTICE TO MEET WITH REPRESENTATIVES OF
THE ASSIGNED PROJECT TEAM AT EACH OF THESE PHASES?

A.    IT DEPENDS ON THE PROJECT.  AGAIN, AS I WAS EXPLAINING
EARLIER, IT'S TAILORED TO THE PROJECT.  FOR LARGER COMPLEX
PROJECTS SUCH AS THIS ONE, IT WOULD BE.

Q.    YOU SAID "SUCH AS THIS ONE," WHAT WERE YOU REFERRING TO?

A.    THE -- OH, THE MINNIE AND LOVIE WARD REC CENTER.  SMALLER
PROJECTS THAT ARE SIMPLER IN SCOPE AND SHORTER IN SCHEDULE
DON'T REQUIRE AS MANY REVIEWS DURING THE PHASES.

Q.    AND THEN WITH RESPECT TO SUBSECTION 8, CONSTRUCTION
DOCUMENT REVIEWS, THIS SECTION STATES "DPW DISABILITY ACCESS
COORDINATOR QUALITY INSURANCE REVIEW FORM IS REQUIRED TO BE

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1929

INCLUDED IN PLANS WITH PROJECT TITLE BLOCKS.

DO YOU SEE THAT LANGUAGE?

A.    YES.  UM-HMM.

Q.    AND WHAT DOES THIS TEXT REFER TO?

A.    IT REFERS TO A QUALITY ASSURANCE REVIEW FORM THAT IS REQUIRED TO BE INTEGRAL TO THE SET OF DRAWINGS ON TITLE BLOCK AND THOSE AS A STANDARD PLAN REVIEW APPROVAL FORM THAT IS -- THE RECORD OF -- OF MY REVIEW OF THOSE DOCUMENTS.

Q.    AND IS THERE ANY SIGNIFICANCE TO YOUR PLAN REVIEW -- STRIKE THAT.

WHAT IS THE SIGNIFICANCE OF YOUR PLAN REVIEW APPROVAL FORM?

A.    WELL, FOREMOST IN THE MINDS OF THE PEOPLE PREPARING THE DRAWINGS IS THAT THEY HAVE TO GET THAT APPROVAL AND HAVE MY WET SIGNATURE ON THE PLANS BEFORE THE DEPARTMENT OF BUILDING INSPECTION WILL ACCEPT IT FOR A BUILDING PERMIT REVIEW.

Q.    AND YOU JUST, I BELIEVE, SAID "WET SIGNATURE"?

A.    YES.

Q.    IS THAT RIGHT?  WHAT DOES THAT REFER TO?

A.    IT HAS TO BE IN MY HAND IN INK ON THE PAGE.

Q.    NOT A PHOTOCOPY?

A.    CORRECT.  JUST AS IS REQUIRED FOR THE ARCHITECT AND ENGINEER OF RECORD WHO'S STAMPING THE DRAWINGS.

Q.    I SEE.

NOW, YOU TESTIFIED THAT OF THE OTHER REVIEWS THAT

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1930

ARE SET FORTH IN THIS PROCEDURE, REVIEWS OF THE CONCEPTUAL DESIGN, THE CONCEPT DESIGN PHASE, OR THE SCHEMATIC DESIGN PHASE, OR THE DESIGN DEVELOPMENT PHASE MAY BE A MATTER OF DISCRETION DEPENDING UPON THE PROJECT; IS THAT CORRECT?

A.    YES.

Q.    IS THE REQUIREMENT OF A FINAL DISABILITY ACCESS QUALITY ASSURANCE REVIEW OF THE CONSTRUCTION DRAWINGS BEFORE ISSUANCE OF A BUILDING PERMIT SOMETHING THAT IS DISCRETIONARY?

A.    NO.

Q.    AND I'D LIKE TO DIRECT YOU TO TRIAL EXHIBIT J21.

A.    (REVIEWING DOCUMENT.)

Q.    DO YOU HAVE THAT BEFORE YOU, SIR?

A.    YES.

                    (EXHIBIT PUBLISHED.)

BY MS. O'NEIL:

Q.    J21 IS A ONE-PAGE DOCUMENT.  COULD YOU DESCRIBE THIS OR IDENTIFY IT FOR THE RECORD?

A.    YES.  THIS IS THE -- PROBABLY THE COVER DOCUMENT FOR THE MINNIE AND LOVIE WARD REC CENTER CONTRACT DOCUMENTS.

Q.    AND DOES THIS -- DOES YOUR A.D.A. REVIEW FORM -- STRIKE THAT.

          IS YOUR A.D.A. REVIEW FORM CONTAINED ON THIS DOCUMENT?

A.    IT IS.  IN THE BOX TITLED "A.D.A. REVIEW," AND YOU'LL SEE THAT IT HAS MY SIGNATURE ON IT.

1931

Q.    AND IS THIS THE FORM THAT IS REQUIRED ON EVERY DPW SET OF CONSTRUCTION DOCUMENTS BEFORE A BUILDING PERMIT WILL BE ISSUED?

A.    YES.

Q.    AND WHAT IS SIGNIFIED BY THIS FORM?  I MEAN, THE -- THE FACT THAT YOU HAVE SIGNED OFF ON THIS FORM, WHAT INFORMATION IS COMMUNICATED?

A.    WELL, I'M -- I'M STATING THAT I'VE REVIEWED IT FOR COMPLIANCE WITH APPLICABLE FEDERAL, STATE, AND LOCAL REQUIREMENTS.

Q.    AND THAT YOU'VE APPROVED THE DRAWINGS?

A.    YES.

Q.    OKAY.  ALL RIGHT.  THANK YOU.

          YOUR HONOR, AT THIS TIME, THE CITY MOVES TRIAL EXHIBIT J21 INTO EVIDENCE.

          THE COURT:  OKAY.  WHERE IS YOUR SIGNATURE, MR. JENSEN?

          THE WITNESS:  IT'S IN THE BOX THAT'S ENTITLED "A.D.A. REVIEW."  YOU'LL SEE THAT IT'S A LETTER FORM, AND THAT TOWARD THE BOTTOM --

          THE COURT:  OH, I SEE IT.  OKAY.  THANK YOU.

          ANY OBJECTION?

          MR. JOHNSON:  NO OBJECTION, YOUR HONOR.

          THE COURT:  OKAY.  THE REQUEST IS GRANTED.

                    (DEFENDANTS' EXHIBIT J21

                    RECEIVED IN EVIDENCE)
RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1932

BY MS. O'NEIL:

Q.   MR. JENSEN, DOES THIS -- DPW'S POLICY AS SET FORTH IN DPW PROCEDURE 9.8.24, WHICH IS TRIAL EXHIBIT A14 --

(EXHIBIT PUBLISHED.)

BY MS. O'NEIL:

Q.   -- REQUIRE ANY ACCESSIBILITY REVIEWS DURING CONSTRUCTION PHASE OF A PROJECT AFTER THE BUILDING PERMIT IS ISSUED?

A.   IT DOES.

Q.   AND -- AND WHAT TYPE OF REVIEWS ARE REQUIRED DURING THE CONSTRUCTION PHASE OF THE CITY PROJECT?

A.   WELL, FOR EXAMPLE, IN A -- IN A BUILDING PROJECT SUCH AS THE MINNIE AND LOVE -- LOVIE WARD REC CENTER, THE INITIAL INSPECTION IS USUALLY A FRAMING INSPECTION, SO WHEN THE -- THE PLUMBING IS GOING INTO THE WALLS AND THE ELECTRICAL CONDUITS AND JUNCTION BOXES, I LIKE TO REVIEW THOSE THINGS BEFORE THE DRY WALL GOES ON THE WALLS.

LATER ON, WHEN DOORS ARE SET AND TOILET ACCESSORIES AND PLUMBING FIXTURES ARE SET, BUILT-IN ELEMENTS ARE IN PLACE, I'LL BE REVIEWING THOSE THINGS AND MORE FREQUENT INSPECTIONS AS MORE OF THE FINISHES AND SIGNAGE GOES INTO THE PLACE, THE ROUGH GRADING GOES INTO PLACE.

IN THIS CASE, THERE WAS A PLAYGROUND, AND SITE DEVELOPMENTS, GATES, AND RAMPS AND SO FORTH, AND ULTIMATELY THE SIDEWALKS AND CURB RAMPS.

Q.   AND IS THE NUMBER OF INSPECTIONS THAT YOU MAY CONDUCT

1933

DURING THE CONSTRUCTION PHASE OF A CITY PROJECT DEPENDENT ON THE TYPE OF PROJECT?

A.   YES, IT IS.  DEPENDING ON THE -- THE COMPLEXITY AND THE DURATION AND THE -- THE NUMBER OF ELEMENTS INVOLVED AND ALSO JUST THE CONSTRUCTION SCHEDULES.  WHEN THE PROJECT -- CONSTRUCTION MANAGER OR A -- PROJECT ARCHITECTS, PROJECT MANAGER SEES THAT THINGS ARE MOVING ALONG AND THERE'S A POINT AT WHICH THAT THEY CAN SEE THAT IT'S TIMELY, THEY'LL CONTACT ME, AND I'LL GO OUT AND INSPECT IT.

Q.   AND, MR. JENSEN, TURNING YOUR ATTENTION TO TRIAL EXHIBIT A14 AND THE SECTION 9, WHICH RELATES TO CONSTRUCTION, WHICH IS ON PAGE 5 OF THE TRIAL EXHIBIT, IF YOU FLIP THE PAGE TO SUBSECTION 9H, YOU'LL SEE A SEGMENT CALLED "FINAL PROJECT REVIEW AND ACCEPTANCE."

DO YOU HAVE THAT IN MIND?

A.   YES.

(EXHIBIT PUBLISHED.)

BY MS. O'NEIL:

Q.   WOULD YOU PLEASE EXPLAIN THIS ASPECT OF THE DPW'S A.D.A. REVIEW PROCEDURES.

A.   YES.  THIS REQUIREMENT STATES THAT I NEED TO BE INVOLVED IN THE FINAL INSPECTIONS FOR THE PROJECT AND PRIOR TO A TEMPORARY CERTIFICATE OF OCCUPANCY OR THE FINAL CERTIFICATE OF OCCUPANCY ISSUANCE THAT I NEED TO SIGN OFF ON, THE -- WHAT'S CALLED THE JOB CARD, THE DEPARTMENT OF BUILDING INSPECTION JOB

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1934

CARD WHICH HAS ALL THE INSPECTORS' SIGNATURES.

Q.    AND IF I COULD DIRECT YOUR ATTENTION TO K10, WHICH IS AN EXHIBIT IN YOUR BINDER.

A.    (REVIEWING DOCUMENTS.)

Q.    PLEASE LET ME KNOW WHEN YOU HAVE THAT BEFORE YOU, SIR.

A.    I HAVE IT.

            THE COURT:  YOU'RE SAYING J10?

            MS. O'NEIL:  "K" AS IN "KITTEN."

            THE COURT:  OH "K."

BY MS. O'NEIL:

Q.    MR. JENSEN, DO YOU RECOGNIZE THIS DOCUMENT?

A.    I DO.

Q.    AND WHAT IS IT?

A.    THIS IS THE CERTIFICATE OF FINAL COMPLETION AND OCCUPANCY FOR THE MINNIE AND LOVIE WARD REC CENTER.

Q.    AND THIS EXHIBIT HAS THREE PAGES; IS THAT CORRECT?

A.    YES.

            (EXHIBIT PUBLISHED.)

BY MS. O'NEIL:

Q.    AND WOULD YOU PLEASE EXPLAIN THE INFORMATION CONTAINED IN EACH OF THESE PAGES?

A.    THIS IS THE JOB CARD FOR THE PROJECT, THE DEPARTMENT OF BUILDING INSPECTION JOB CARD.

Q.    IS THAT THE FIRST PAGE, SIR?

A.    THAT -- IT'S -- THE WHOLE THING IS.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1935

Q.    THE WHOLE THING IS THE JOB CARD?

A.    YEAH, IT'S JUST THE -- THE ACTUAL JOB CARD IS TWO-SIDED AND THERE'S MULTIPLE PAGES.

Q.    I SEE.

A.    YEAH.

Q.    AND IS THERE AN INSPECTION RECORD IN THE DOCUMENT?

A.    THERE IS.

Q.    AND IS YOUR SIGNATURE NOTED ON THE INSPECTION RECORD?

A.    YES, IT IS.

Q.    AND WHAT DOES THAT SIGNIFY?

A.    IT SIGNIFIES THAT ON JUNE 22ND, 2008, THAT I SIGNED OFF ON THE INSPECTION RECORD AND WAS CERTIFYING THAT THE BUILDING WAS READY FOR CERTIFICATE OF OCCUPANCY AS FAR AS DISABILITY ACCESS ISSUES ARE CONCERNED.

Q.    AND IS THE DOCUMENT CONTAINED IN TRIAL EXHIBIT K10 REPRESENTATIVE OF THE FINAL DISABILITY ACCESS SIGN-OFF REQUIRED UNDER CITY POLICY AS EXPRESSED IN MAYOR BROWN'S JUNE 22ND, 1998, DIRECTIVE AND DPW'S PROCEDURE 9.8.24?

A.    YES, IT IS.

          MS. O'NEIL:  YOUR HONOR, THE CITY MOVES TRIAL EXHIBIT K10 INTO EVIDENCE.

          THE COURT:  ANY OBJECTION?

          MR. JOHNSON:  NO OBJECTION, YOUR HONOR.

          THE COURT:  REQUEST IS GRANTED.

          RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1945

LIBRARY IMPROVEMENT PROJECTS TO REQUIRE CURB RAMP INSTALLATION AS NEEDED?

A.    YES.

Q.    AND HOW WAS IT DETERMINED WHETHER CURB RAMPS WERE NECESSARY TO BE INSTALLED?

A.    WELL, AT THE ON-STREET PARKING AND PASSENGER LOADING ZONES, WE MAKE SURE THAT THERE'S A CURB RAMP AT THOSE, AT THE BACK TYPICALLY.  AND THEN DOWN BLOCK, IF IT'S A MID-BLOCK SITE, OR IF IT'S A CORNER SITE, WE LOOK AT THOSE EXISTING CURB RAMPS TO SEE WHAT CONDITION THEY'RE IN AND ARE ANY NEW ONES NEEDED.

Q.    AND HOW DO YOU DETERMINE THE APPROPRIATE BOUNDARIES FOR THE IMPROVEMENT TO THE SIDEWALKS AND CURB RAMPS THAT WILL BE REQUIRED IN CONNECTION WITH A NEWLY CONSTRUCTED OR RENOVATED LIBRARY?

A.    WE'RE PRIMARILY CONCERNED WITH THE CITY BLOCK THAT THAT FACILITY IS ON AND HOW ONE WOULD GET ON AND OFF THAT BLOCK IN THE DIRECTION OF THE NEAREST TRANSIT.

Q.    MR. JENSEN, HAVE YOU HAD RESPONSIBILITY FOR REVIEWING ANY OF THE RECREATION AND PARK DEPARTMENT FACILITIES CONSTRUCTED OR RENOVATED UNDER THAT DEPARTMENT'S CAPITAL IMPROVEMENT PROGRAM TO ASSESS THEIR COMPLIANCE WITH APPLICABLE DISABILITY ACCESS LAWS?

A.    YES.

Q.    WHICH REC/PARK FACILITIES HAVE YOU REVIEWED AND APPROVED FOR COMPLIANCE WITH APPLICABLE, INCLUDING FEDERAL, DISABILITY

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1946

ACCESS LAWS?

A.     AGAIN, THE NUMBER IS QUITE NUMEROUS, EVEN MORE THAN THE

BRANCH LIBRARY PROGRAM.  BUT I BROUGHT A REPRESENTATIVE LIST IF

I COULD READ FROM THAT.

Q.     YES, PLEASE DO.

A.       ARGON CLUBHOUSE AND PLAYGROUND, KAUFMAN POOL, EUREKA

VALLEY CLUBHOUSE AND PLAYGROUND, CONSERVATORY OF FLOWERS, THE

JOE LEE REC CENTER AND PLAYGROUND, MINNIE AND LOVIE WARD REC

CENTER AND PLAYGROUND, MISSION POOL, NORTH BEACH POOL, SALVA

POOL, ST. MARY'S PLAYGROUND, SUNNYSIDE CONSERVATORY, SUNSET REC

CENTER AND PLAYGROUND, AND SPORT FIELDS.  UPPER NOE PLAYGROUND,

REC CENTER AND SPORT FIELDS; SOMA PARK, OTHERWISE KNOWN AS

VICTORIA MANOLO GRAVES PARK; AND THE WEST PORTAL CLUBHOUSE AND

PLAYGROUND.

Q.     DID YOU FOLLOW THE CITY'S A.D.A. COMPLIANCE PROCESS SET

FORTH IN TRIAL EXHIBIT A14 WHICH IS THE DPW PROCEDURES THAT

WE'VE JUST BEEN TESTIFYING ABOUT --

A.     YES.

Q.     -- IN -- IN CONNECTION WITH YOUR REVIEW OF THESE

FACILITIES?

A.     YES.

Q.     AND WAS IT GENERALLY YOUR PRACTICE IN CONNECTION WITH

REVIEW OF ALL OF THE RECREATION AND PARK FACILITIES THAT WERE

BROUGHT TO YOUR ATTENTION FOR REVIEW AND APPROVAL TO FOLLOW THE

PROCESS SET FORTH IN TRIAL EXHIBIT A14?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

1947

A.    YES.

Q.    AND WHAT ARCHITECTURAL ACCESS STANDARDS DID YOU USE IN CONNECTION WITH YOUR APPROVALS FOR THESE REC PARK CONSTRUCTION PROJECTS?

A.    PREDOMINANTLY THE ADAAG AND THE CURRENT CALIFORNIA BUILDING CODE.

Q.    AND DID YOU APPLY ANY PARTICULAR ACCESS STANDARDS FOR PLAYGROUNDS AND RECREATIONAL USES IN CONNECTION WITH YOUR REVIEW OF RECREATION AND PARK DEPARTMENT PROJECTS?

A.    YES, WE LOOKED AT THE -- AND USED THE PLAYGROUND ACCESSIBILITY STANDARDS THAT HAD BEEN DEVELOPED BY THE U.S. ACCESS BOARD.

Q.    WERE THESE ACCESS STANDARDS ADOPTED AT THE TIME BY THE DEPARTMENT OF JUSTICE?

A.    THEY WERE NOT.  THEY WERE PUBLISHED IN -- AN UPDATED VERSION OF THE ADAAG BUT HAD NOT YET BEEN ADOPTED FORMALLY BY THE DEPARTMENT OF JUSTICE.

Q.    AND WHY DID YOU USE STANDARDS THAT HAD NOT YET BEEN FORMALLY ADOPTED BY THE DEPARTMENT OF JUSTICE?

A.    BEST PRACTICE.

Q.    AND DID YOU REFER TO ANY PARTICULAR GUIDANCE DOCUMENTS IN CONNECTION WITH YOUR REVIEW OF THE DEPARTMENT'S PLANS FOR NEWLY CONSTRUCTED OR ALTERED SWIMMING POOLS?

A.    WE USED THE SAME RECREATION STANDARDS THAT HAD ALSO BEEN DEVELOPED BY THE U.S. ACCESS BOARD AND WERE ADOPTED INTO ADAAG.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

1993

TO THE PUBLIC RIGHT-OF-WAY?

A.    YES.

Q.    IN WHAT WAY?

A.    INASMUCH AS WE HAVE TRACKWAYS IN SOME OF OUR ROADWAYS AND ISLANDS AND MEDIANS, THIS ESTABLISHES METHODS ON HOW TO DEAL WITH THOSE, AS WELL AS LOCATIONS WHERE PERHAPS THERE'S NO CURB OR THERE'S -- THERE'S NO BOUNDING SIDEWALK BUT WE HAVE A PATH THAT'S APPROACHING THE ROADWAY AND A CROSSWALK AND DEVELOPS FLUSH TRANSITION STANDARDS FOR THOSE LOCATIONS.

Q.    THANK YOU.

        THE CITY MOVES TRIAL EXHIBIT H07 INTO EVIDENCE.

        THE COURT:  ANY OBJECTION?

        MR. JOHNSON:  NO, YOUR HONOR.

        THE COURT:  REQUEST IS GRANTED.

                (DEFENDANTS' EXHIBIT H07

                 RECEIVED IN EVIDENCE)

BY MS. O'NEIL:

Q.    MR. JENSEN, IN THE COURSE OF YOUR WORK IN DPW, HAVE YOU REVIEWED ANY PRIOR CURB RAMP DESIGN STANDARDS?

A.    YES.

Q.    AND IF I COULD DIRECT YOUR ATTENTION TO TRIAL EXHIBIT H05.

A.    (REVIEWING DOCUMENTS.)

Q.    WOULD YOU IDENTIFY THAT DOCUMENT FOR THE RECORD, SIR.

A.    YES, THIS IS AN OLDER CURB RAMP STANDARD PLAN FROM THE

1994

DEPARTMENT OF PUBLIC WORKS THAT WAS SUPERSEDED BY THE -- THE CURRENT STANDARD.

Q.    TRIAL EXHIBIT H04 (SIC) CONTAINS FOUR PAGES OF CONSTRUCTION DRAWINGS, CORRECT?

A.    CORRECT.

Q.    ARE THESE THE STANDARD PLANS THAT WERE IN PLACE AND IN OPERATION AT THE CITY WHEN YOU ASSUMED THE POSITION OF DISABILITY ACCESS COORDINATOR FOR DPW IN 2002?

A.    YES.

Q.    AND IS THIS THE SET OF PLANS THAT WERE SUPERSEDED BY THE CURB RAMP DESIGN STANDARDS THAT YOU CREATED AND THAT HAVE BEEN ENTERED INTO EVIDENCE AS EXHIBIT H04?

A.    YES.  YES.  YES.

Q.    IF I COULD DIRECT YOUR ATTENTION TO THE THIRD PAGE OF H05, THIS IS A DOCUMENT THAT HAS -- IT'S NUMBERED EXHIBIT H0500004.  DO YOU HAVE THAT BEFORE YOU?

A.    YES.

Q.    THIS DOCUMENT CONTAINS A LEGEND IN THE BOTTOM RIGHT-HAND CORNER THAT SAYS, "THIS PLAN SHALL BE USED ON ALL FEDERALLY FUNDED PROJECTS."

         DO YOU SEE THAT?

A.    YES.

Q.    WHAT DOES THIS REFER TO?

A.    THIS PARTICULAR SHEET REFERS TO THE -- THE LACK OF A LIP AT THE POINT WHERE THE RAMP MEETS THE STREET, THE FACE OF THE

1995

CURB, AS WE CALL IT.

OUR UNDERSTANDING AT THE TIME WAS THAT FEDERALLY -- FEDERAL CURB RAMP STANDARDS DID NOT ALLOW A -- A LIP AT THAT POINT THAT THE TRANSITION HAD TO BE FLUSH.

Q.   WHAT IS -- SO IS -- WAS THERE A DIFFERENCE AT THIS TIME BETWEEN THE PLANS THAT THE CITY PREPARED FOR FEDERALLY FUNDED PROJECTS VERSUS OTHER CURB RAMP PROJECTS?

A.   YES.  THIS STANDARD REFLECTS THAT IN THAT THE -- THE FIRST SHEET, THE FIRST PAGE, IS FOR NON-FEDERALLY FUNDED PROJECTS.  AND IT WAS USED DUE TO THE FACT THAT AT THE TIME, THE STATE BUILDING CODE REQUIRED A HALF-INCH LIP AT CURB RAMPS WHERE THEY MET THE STREET.

Q.   AND WHAT WAS YOUR UNDERSTANDING, AS DPW'S DISABILITY ACCESS COORDINATOR, OF THE PURPOSE SERVED BY INCLUDING A HALF-INCH LIP IN THE CURB RAMP DESIGN FOR STATE-FUNDED PROJECTS?

A.   I THINK THE -- AS I UNDERSTAND IT, THE GOAL WAS TO BE IN COMPLIANCE WITH THE OPERATIVE STANDARD DEPENDING ON WHERE THE MONEY WAS COMING FROM.  IF IT WAS A FEDERALLY FUNDED PROJECT WE'D USE THE STANDARD FOR PROJECTS THAT HAD NO LIP.  AND IF IT WAS A NON-FEDERALLY FUNDED PROJECT, THEN WE WOULD USE THE STATE STANDARD WITH THE -- WITH THE LIP.

MS. O'NEIL:  YOUR HONOR, THE CITY MOVES TRIAL EXHIBIT H06 -- EXCUSE ME -- H05 INTO EVIDENCE.

THE COURT:  ANY OBJECTION?

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

Kirola Trial Day 10, 110428

2021

THIS IS A NEW NOMENCLATURE FOR AN OLD PROCEDURE, DOES IT?

A.    THIS IS --

Q.    MR. JENSEN, PLEASE ANSWER THE QUESTION.

A.    FOR THIS APWA FORMAT, IT'S A NEW PROCEDURE.

Q.    OKAY.  AND THIS -- THERE'S NO PRIOR REVISIONS.  DOWN AT THE BOTTOM IN THE FOOTER THERE, IT SAYS, "REVISION NO. 0," RIGHT?

A.    THESE ARE THE VERY FIRST EDITION OF THE APWA FORMAT PROCEDURES.

Q.    YOU HAVEN'T TESTIFIED HERE TODAY ABOUT ANY PRIOR WRITTEN PROCEDURES, HAVE YOU, THAT MIRROR OR REPRESENT EARLIER VERSIONS OF THIS PROCEDURE THAT WAS ADOPTED IN JANUARY 2010; IS THAT CORRECT?

A.    I HAVE.

Q.    ABOUT WRITTEN PROCEDURES?

A.    YES.

Q.    YOU HAVEN'T PRODUCED OR IDENTIFIED ANY WRITTEN PROCEDURES THAT REPRESENT EARLIER VERSIONS OF EXHIBIT 9.8.24, RIGHT?

A.    WE'VE REPRESENTED THAT WE HAVE THE LETTER FROM MAYOR BROWN AS AN EXAMPLE.

Q.    OKAY.  SO -- THIS IS THE UPDATE OF THE LETTER FROM MAYOR BROWN?

A.    AN UPDATE, YES.

Q.    IN CARRYING OUT YOUR RESPONSIBILITIES AS A DISABILITY ACCESS COORDINATOR, IS IT CORRECT THAT -- OR -- ISN'T IT TRUE