# EXHIBIT 16

1888

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,        )        COURT TRIAL
                             )
         PLAINTIFFS,         )        VOLUME 10
                             )
  VS.                        )        NO. C 07-03685 SBA
                             )
CITY AND COUNTY OF           )
SAN FRANCISCO, ET AL.,       )        PAGES 1888 - 2084
                             )
         DEFENDANTS.         )        OAKLAND, CALIFORNIA
_____)        THURSDAY, APRIL 28, 2011

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                              KONECKY
                         180 MONTGOMERY STREET, SUITE 2000
                         SAN FRANCISCO, CALIFORNIA  94109
                    BY:  MARK T. JOHNSON,
                         ANDREW P. LEE,
                         GUY B. WALLACE, ATTORNEYS AT LAW

                         BROWN POORE LLP
                         THE WATERGATE TOWERS
                         2200 POWELL STREET, SUITE 745
                         EMERYVILLE, CALIFORNIA  94608
                    BY:  SCOTT A. BROWN, ATTORNEY AT LAW

FOR DEFENDANT:           OFFICE OF THE CITY ATTORNEY
                         SIXTH FLOOR - FOX PLAZA
                         1390 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA  94102
                    BY:  ERIN BERNSTEIN,
                         JAMES M. EMERY,
                         ELAINE M. O'NEIL, ATTORNEYS AT LAW

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258
                      DIANE E. SKILLMAN, CSR NO. 4909

     RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

2038

RECEIVED BASED ON HIS EDUCATION AND EXPERIENCE AS AN EXPERT

QUALIFIED TO RENDER EXPERT OPINIONS IN THE AREA OF ARCHITECTURE

AND DISABILITY ACCESS.

            YOU MAY CONTINUE.

BY MR. EMERY:

Q.   WHEN DID THE CITY AND COUNTY OF SAN FRANCISCO HIRE YOU TO

DO SOME WORK IN THIS CASE?

A.   IT WAS IN DECEMBER OF 2009.

Q.   WHAT IS IT THAT SAN FRANCISCO ASKED YOU TO DO?

A.   THEY ASKED ME TO REVIEW SOME PLAINTIFF REPORTS THAT HAD

BEEN PROVIDED ON ACCESSIBILITY ISSUES AND GENERALLY TO GIVE AN

OVERVIEW OF THE FACILITIES TO SEE IF THEY WERE ACCESSIBLE.

Q.   WHAT DID YOU DO IN ORDER TO EVALUATE SAN FRANCISCO'S

LIBRARIES, POOLS AND PARKS?

A.   WE WENT THROUGH ALL THE ITEMS IN PLAINTIFF REPORTS THAT WE

WERE SUPPLIED.  WE WENT TO THE SITES.  WE TOOK MEASUREMENTS.

WE JUST GENERALLY ACQUAINTED OURSELVES WITH THE BUILDING BY

VISITING THEM PERSONALLY.

Q.   WHO DID YOU COLLABORATE WITH WITH RESPECT TO THE FIRST

BATCH OF REPORTS THAT YOU GOT FROM THE PLAINTIFFS?

A.   WE RECEIVED THREE BATCHES OF REPORTS.  THE FIRST BATCH HAD

INITIALLY BEEN PUT TOGETHER BY -- THE RESPONSES HAD BEEN PUT

TOGETHER BY THE STAFF AT THE MAYOR'S OFFICE ON DISABILITY.

Q.   AND HOW DID YOU SATISFY YOURSELF THAT THE WORK DONE BY THE

MAYOR'S OFFICE ON DISABILITY WAS RELIABLE?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

2039

A.   I HAD MET WITH THEM AT THEIR OFFICES TO DISCUSS THEM.  AND WE ALSO HAD DONE THE FOLLOW-UP VISITS.  SO WE WERE FAMILIAR WITH THE BUILDINGS AND COULD ASSESS THE RESPONSES THAT HAD BEEN PREPARED.

Q.   DID YOU PERSONALLY VISIT THE BUILDINGS THAT WERE INVOLVED IN THIS FIRST BATCH WHERE THE MAYOR'S OFFICE ON DISABILITY STAFF DID THE WRITTEN RESPONSES?

A.   YES, THAT'S CORRECT.  I WENT TO THE FACILITIES.

Q.   AND WAS THERE A SECOND BATCH THAT YOU WORKED ON IN THE SPRING OF 2010?

A.   YES.  THERE'S A SECOND LARGER BATCH THAT --

Q.   WHAT DID YOU DO WITH RESPECT TO EVALUATING THAT SECOND BATCH OF FACILITY INSPECTION REPORTS?

A.   WELL, IT WAS A PRETTY BIG BATCH.  THERE WAS OTHERS IN MY OFFICE THAT ALSO VISITED THE SITES.  SO WE HAD MET IN THE OFFICE.  WE WORKED TOGETHER REGULARLY, EVERY DAY, SO WE HAD TEAM MEETING JUST TO DISCUSS METHODOLOGY AND OUR APPROACH TO VERIFYING.

     WE DECIDED TO VERIFY EACH OF THE ITEMS IN THE PLAINTIFF REPORTS AND TO DOCUMENT RESPONSES.  SO WE MADE SURE EVERYBODY WAS USING THE SAME LEVEL AND MEASURING SIMILAR WAYS AND VERIFYING THE CONDITIONS THAT WE SAW.

Q.   AND WHO WERE THE PEOPLE IN YOUR OFFICE THAT YOU WORKED WITH ON THIS PROJECT?

A.   IT WAS MYSELF, IT WAS MR. LOUIS SCHIANO, MR. MIKE CLARK,

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

2041

CERTIFIED ACCESSIBILITY SPECIALIST BY THE STATE OF CALIFORNIA.

Q.   SO YOU DESCRIBED YOUR PROCESS FOR THE FIRST BATCH WHERE YOU COLLABORATED WITH THE MAYOR'S OFFICE ON DISABILITY STAFF AND YOU DESCRIBED THE SECOND BATCH WHERE YOU COLLABORATED WITH YOUR COLLEAGUES AT WOOD ARCHITECTS.

THEN THERE WAS A THIRD BATCH OF REPORTS WE GOT FROM PLAINTIFFS IN FEBRUARY, MARCH OF THIS YEAR.  WHAT WAS YOUR PROCESS IN EVALUATING THOSE REPORTS FROM PLAINTIFFS?

A.   IN THE MORE RECENT BATCH, I ATTENDED THE SITE INSPECTION THAT THE PLAINTIFFS WERE PERFORMING.  I RECEIVED A REPORT SUBSEQUENT TO THAT, AND THEN LOOKED THEM OVER FOR A RESPONSE MYSELF TO EVALUATE WHAT THEY HAD SEEN AT THE SITES THAT I HAD JUST BEEN TO.

Q.   WHAT KIND OF WORK PRODUCT RESULTED FROM YOU -- YOUR REVIEWING AND YOUR COLLEAGUES REVIEWS OF ALL OF THESE FACILITY REPORTS FROM PLAINTIFFS?

A.   WE HAD TAKEN THE REPORTS AND RESPONDED AND EVALUATED THEM INDIVIDUALLY ITEM BY ITEM.  SO FOR EVERY ISSUE THAT WE RAISED, WE GAVE AN EVALUATION AS TO WHETHER THE ISSUE WAS RELEVANT.

Q.   SO WE HAVE BEEN TALKING ABOUT THE -- YOUR EVALUATION OF REPORTS FROM THE PLAINTIFFS ABOUT LIBRARIES, POOLS AND PARKS. HOW MANY OF THOSE FACILITIES REPORTS WERE THERE FROM PLAINTIFFS?

A.   IN THE THREE BATCHES I BELIEVE THERE'S A TOTAL OF 69 FACILITIES.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

2045

LIKE ADJUSTING DOOR CLOSERS.  DOOR CLOSER IS THE BOX THAT'S TYPICALLY AT THE TOP OF THE DOOR THAT STOPS THE DOOR FROM CLOSING TOO QUICKLY BUT KEEPS IT CLOSED FOR SAFETY REASONS. WHERE -- THOSE TYPICALLY ITEMS THAT A JANITOR OR HANDYMAN COULD TAKE CARE OF.

THERE WERE SOME ITEMS THAT WE FOUND ALTHOUGH TECHNICALLY RIGHT, THEY DIDN'T HAVE MUCH EFFECT.  THOSE MIGHT BE THINGS THEY HAD CLAIMED THAT ON A -- ON THE STALL DOOR INTO AN ACCESSIBLE TOILET STALL, THAT THE HANDLE HAD -- THE LATCH HAD TO BE IMMEDIATELY BELOW THE CLOSING LATCH.  AND THAT'S OFTEN NOT THE CASE.  OFTEN THEY ARE SLIGHTLY TO THE SIDE SO PEOPLE DON'T HIT THEIR KNUCKLES.

SO THAT WAS AN EXAMPLE WHERE TECHNICALLY IT WASN'T IMMEDIATELY UNDER THE LATCH, BUT IT WAS STILL USABLE AND HAD VERY LITTLE EFFECT.

THE TOP LINE WHERE WE HAD THE 1.6 PERCENT WAS THINGS THAT DID NEED TO BE CHANGED.  AND NO BUILDING IS PERFECT.  I HAVE LOOKED AT OVER 2,000 BUILDINGS.  I HAVE NEVER SEEN A BUILDING THAT WAS PERFECT.

SO, THOSE TYPICALLY ARE ITEMS LIKE MAYBE A GATE DIDN'T HAVE ENOUGH SIDE CLEARANCE, AS I THINK WAS MENTIONED EARLIER IN TESTIMONY, OR THERE COULD BE ANOTHER FEATURE OF A BUILDING THAT NEEDED ADJUSTMENT.

BY MR. EMERY:

Q.   ARE YOU TALKING ABOUT THE GATE WITHOUT SIDE CLEARANCE; WAS

2046

THAT ST. MARY'S PLAYGROUND?

A.    YES.

Q.    SO YOU'VE AGREED AND YOU'VE ADVISED THE CITY THAT THEY SHOULD REPAIR AND FIX THAT GATE AT ST. MARY'S PLAYGROUND?

            MR. JOHNSON:  OBJECTION, LEADING.

            THE COURT:  LEADING OBJECTION SUSTAINED.

BY MR. EMERY:

Q.    WHAT ADVICE DID YOU GIVE TO THE CITY REGARDING THE GATE AT ST. MARY'S PLAYGROUND?

A.    THAT IT SHOULD BE EITHER -- THE GATE SHOULD BE CHANGED TO SWING IN THE OTHER DIRECTION OR IT SHOULD BE MADE TO SWING BOTH WAYS.

Q.    WHAT DO YOU HAVE IN YOUR NEXT SLIDE?

            (DISPLAYED ON SCREEN.)

A.    THE NEXT SLIDE IS JUST AN OVERVIEW OF SOME OF THE CODE AND ADA REQUIREMENTS THAT APPLY IN THIS SITUATION.

            THOSE TWO BIG VOLUMES ON THE SCREEN ARE THE CURRENT 2010 VOLUMES OF THE CALIFORNIA BUILDING CODE.  AS YOU CAN SEE THERE'S OVER 1600 PAGES OF CODES THAT ADDRESS BOTH ACCESSIBILITY AND SAFETY AND EXITING AND STRUCTURAL AND ENERGY REQUIREMENTS.

            THE REASON I SHOWED THEM IS BECAUSE THE CALIFORNIA BUILDING CODE IS UPDATED APPROXIMATELY EVERY THREE YEARS.  AND THAT'S IMPORTANT BECAUSE IN PLAINTIFFS' REVIEW, THEY TOOK CLEAR REVIEW ONLY FOR NEWLY CONSTRUCTED STANDARDS FOR WHAT WAS IN

2047

EFFECT AT THE TIME, WHICH IS 2007 BUILDING CODE.  WHEN BUILDINGS ARE BUILT UNDER PREVIOUS CODE, THEY MAY HAVE PREVIOUS REQUIREMENTS.  THOSE BUILDINGS ARE STILL COMPLIANT.  THEY ARE COMPLIANT WHEN BUILT AND THEY'RE STILL COMPLIANT BECAUSE THEY COMPLIED WITH THE CODE THAT WAS IN EFFECT AT THE TIME.

THE OTHER STANDARD THAT HAS BEEN DISCUSSED IS WHAT HAS BEEN CALLED ADAAG, WHICH IS AMERICAN WITH DISABILITIES ACT ACCESSIBILITY GUIDELINES.  THAT WAS -- CAME INTO EFFECT IN 1992.  AND IT HAS TWO STANDARDS IN IT.  ONE THAT APPLIES TO NEW BUILDINGS AND ONE THAT APPLIES TO OLDER BUILDINGS, JUST AS THE CALIFORNIA BUILDING CODE DOES.

ANOTHER KEY THING ABOUT WHAT APPLIES AND WHAT DOESN'T, IN TYPICALLY MAKING AN EVALUATION OF A BUILDING, WE HAVE TO BE REALLY CAREFUL TO ADVISE OWNERS -- WE HAVE TO BE CAREFUL TO ADVISE OWNERS OF WHAT CODE REQUIREMENTS ARE CURRENTLY IN EFFECT AND WHAT THEY WOULD BE OBLIGATED TO COMPLY WITH.  THERE MAY BE OTHER FEATURES OF A BUILDING THAT MAY BE DESIRABLE OR THEY MAY WANT TO UPGRADE TO MEET CURRENT CODE, BUT THERE MAY NOT BE A REQUIREMENT FOR THAT, AND THAT'S FOR THEM TO DECIDE.

THE VERSION ADAAG THAT IS CURRENTLY IN EFFECT HAS BEEN IN EFFECT SINCE 1992 AND HASN'T CHANGED.  THERE IS PROPOSED CHANGES FOR -- THAT WILL TAKE EFFECT NEXT YEAR.

CURRENTLY, THE ADAAG DOES NOT REGULATE EITHER PUBLIC RIGHTS-OF-WAY, OUTDOOR RECREATION DEVELOPED AREAS --

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 10, 110428

2048

MR. JOHNSON: YOUR HONOR, I AM GOING TO OBJECT TO THE CONTINUING NARRATIVE. I DON'T KNOW THAT THIS IS RESPONSIVE.

THE COURT: LET'S PROCEED BY QUESTION AND ANSWER. THAT WAY -- RATHER THAN INTRODUCING QUESTIONS THAT CALL FOR A NARRATIVE.

OBJECTION SUSTAINED.

BY MR. EMERY:

Q.  MR. WOOD, ARE THERE ANY LIMITATIONS ON THE SCOPE OF ADAAG THAT WERE RELEVANT TO YOUR WORK IN THIS CASE?

A.  YES. THEY CURRENTLY THEY DO NOT -- THERE IS PROPOSED RULE MAKING FOR PUBLIC RIGHT-OF-WAY ISSUES. THERE'S PROPOSED RULE MAKING FOR OUTDOOR RECREATION OR DEVELOPED AREAS. AND THERE'S PENDING IMPLEMENTATION OF PLAYGROUND REQUIREMENTS THAT WERE NOT PREVIOUSLY ENFORCEABLE BY LAW IN ADAAG.

Q.  I SEE YOUR NEXT BULLET POINT SAY STANDARDS SOMETIMES CONFLICT.

WHAT DOES THAT MEAN?

A.  AS YOU CAN SEE, THERE'S A LOT OF -- A LARGE VOLUME OF REQUIREMENTS. AND AS AN EXAMPLE THAT HAS COME UP PREVIOUSLY, I THINK WHERE CURB RAMPS, CALIFORNIA HAD A REQUIREMENT THAT THERE HAD TO BE A HALF INCH LIP AT THE BOTTOM OF A CURB RAMP SO THAT IT COULD BE DETECTED BY A PERSON USING A CANE WHERE THE FEDERAL ADAAG REQUIREMENT WAS THAT THAT BE FLUSH.

SO, THAT'S A CONFLICT WHERE YOU CANNOT DO BOTH

2053

SECOND FLOOR OF THE LIBRARY THAT WOULDN'T BE PART OF A PRIMARY PATH OF TRAVEL UNDER EXISTING CONSTRUCTION, IT WOULDN'T BE RELEVANT TO SURVEY THAT DOOR FOR BEING ON AN ACCESSIBLE ROUTE.

Q.   BUT HOW IS THAT DIFFERENT IF THAT REAR DOOR ON THE SECOND FLOOR IS PART OF NEW CONSTRUCTION?

A.   IF THERE WAS A PATH OF TRAVEL THERE THAT LED TO AN ADJACENT WALKWAY THEN THAT WOULD ALSO BE ACCESSIBLE.

Q.   IN WHAT WAY DID PLAINTIFFS MAKE A MISTAKE IN APPLYING NEW CONSTRUCTION STANDARDS WHEN THE WORK WAS IN FACT AN ALTERATION?

A.   TYPICALLY BY LOOKING AT MULTIPLE ENTRANCES, THEY -- WAS A BIG FACTOR.  WHEN ELEVATORS WERE INSTALLED, THEY WOULD STILL LOOK AT A FRONT DOOR THAT WAS UP SEVERAL FLIGHTS OF STAIRS THAT WERE NOT ON AN ACCESSIBLE ROUTE.

SO IT WAS JUST FOCUSING -- LACK OF FOCUSING ON THE REGULATIONS THAT WERE ONLY REQUIRE ONE ACCESSIBLE ROUTE.  THERE COULD BE VARIATIONS FROM OLDER CONSTRUCTION THAT, SAY TYPICALLY BATHROOMS HAD NO WIDTH REQUIREMENT BEFORE, NOW THEY DO.

SO THOSE KIND OF DISCREPANCIES ARE IMPORTANT TO UNDERSTAND TO EVALUATE WHAT IS COMPLIANT AND WHAT IS NOT COMPLIANT.

Q.   YOU'VE ALREADY TALKED ABOUT USING THE 2007 VERSION OF THE CALIFORNIA BUILDING CODE.

YOU HAVE PLAYGROUNDS THERE UNDER WRONG CODE STANDARDS.  WHAT DOES THAT MEAN?

A.   WELL, PLAYGROUNDS -- THE STANDARDS ON PLAYGROUNDS HAD BEEN

2054

UNDER DEVELOPMENT FOR SOME TIME.  THEY HAVE BEEN INCORPORATED INTO THE NEXT VERSION OF ADA, WHICH WILL TAKE EFFECT MARCH 15TH OF 2010 (SIC), BUT THERE HAVE BEEN NO EXISTING STANDARDS UP TIL NOW.

Q.   YOU SAID MARCH 15TH, 2010?

A.   I WENT BACKWARD.  I SHOULD HAVE SAID 2012.

Q.   WHEN IS THE EFFECTIVE DATE OF THE NEW ADA STANDARDS FOR PLAYGROUNDS?

A.   IT WOULD BE MARCH 15TH OF 2012.

Q.   DO YOU HAVE ANY UNDERSTANDING OF WHAT STANDARDS THE CITY HAS BEEN USING WITH RESPECT TO PLAYGROUNDS OVER THE PAST SEVERAL YEARS?

A.   MY UNDERSTANDING IS THEY HAVE BEEN USING AS A GUIDE.

Q.   USING WHAT AS A GUIDE?

A.   THE PROPOSED PLAYGROUND STANDARDS AND RECREATIONAL STANDARDS.

Q.   YOU ALSO MENTIONED --

THE COURT:  THE ONES DESIGNED TO TAKE EFFECT IN MARCH 2012, IS THAT WHAT YOU ARE REFERRING TO?

THE WITNESS:  YES.

THE COURT:  HAS BEEN USED AS A GUIDE.  OKAY.

BY MR. EMERY:

Q.   YOU ALSO MENTIONED PARKS UNDER YOUR BIG BULLET USING WRONG CODE STANDARDS.  WHAT DO YOU MEAN THERE?

A.   IT'S THE SAME SITUATION.  THE PROPOSED CHANGES TO ADAAG TO

2055

INCORPORATE PARKS HAVE BEEN UNDER REVIEW FOR SOME TIME. THEY ARE SOMETIME LISTED IN THE ACCESS -- THEY ARE AVAILABLE ON THE ACCESS BOARD WEBSITE, BUT THEY HAVE NOT YET BEEN INCORPORATED INTO ADAAG.

THE REASON THESE THINGS ARE SIGNIFICANT IS BECAUSE THE PLAYGROUNDS AND PARKS ARE UNIQUE OR DIFFERENT ENVIRONMENTS THAN BUILDINGS. AND THAT THERE ARE SLOPE ISSUES AND OTHER KIND OF CLEARANCE ISSUES THAT ARE VERY DIFFERENT IN SPORTS EQUIPMENT, IN RURAL -- IN NATURAL SETTINGS THAN THEY ARE IN AN ENTRANCEWAY WALKWAY.

Q. FINALLY, UNDER USING WRONG CODE STANDARDS YOU MENTIONED HISTORICAL BUILDINGS. WHAT DO YOU MEAN THERE AND WHY IS THAT IMPORTANT?

A. SEVERAL OF THE FACILITIES WERE HISTORICAL BUILDINGS AND THERE WAS NEVER ANY EVALUATION IN THE PLAINTIFF REPORTS TO INDICATE ITEMS THAT HAD BEEN -- THAT WERE HISTORICAL BUILDINGS AND WOULD HAVE OTHER STANDARDS THAT WOULD APPLY.

BOTH THE ADA AND THE CALIFORNIA BUILDING CODE HAVE PROVISIONS FOR HISTORICAL BUILDINGS. AND, AGAIN, IT ALLOWS MORE FLEXIBILITY AND YOU CAN HAVE GREATER SLOPES ON RAMPS, WALKWAYS, AND OTHER FEATURES THAT ARE OFTEN OCCUR IN HISTORIC BUILDINGS BECAUSE OF THEIR AGE AND IMPORTANCE OF MAINTAINING THE HISTORICAL CHARACTER OF THE BUILDING.

Q. NEXT ON THE SLIDE, YOUR BIG BULLET POINT SAYS "MEASUREMENTS CANNOT BE RELIED UPON."

2063

THE SEVENTH TIME DOES NOT RENDER THIS AREA AT ST. MARY'S

INACCESSIBLE?

THE WITNESS:  THAT'S CORRECT.

THE COURT:  OKAY.  THANK YOU.

BY MR. EMERY:

Q.   THE QUESTION THAT I MANGLED BEFORE THE JUDGE SOUGHT CLARIFICATION, WAS HOW MANY OF THE 69 FACILITY REPORTS DID YOU ACTUALLY DO WITH THE PLAINTIFFS' EXPERTS SO THAT YOU COULD OBSERVE THEM?

A.   IT WOULD HAVE BEEN IN THE LAST BATCH IT WOULD HAVE BEEN A NUMBER BETWEEN FIVE AND EIGHT, SOMETHING LIKE THAT.  I WENT TO, I THINK, TEN SITE VISITS BUT SOME OF THEM WERE ALSO CURB RAMP VISITS.

Q.   LET'S LOOK NOW AT SLIDE FOUR OF EXHIBIT AA15.

(DISPLAYED ON SCREEN.)

HOW ARE THESE PROPOSED FEDERAL GUIDELINES THAT YOU REFERENCE HERE ON SLIDE FOUR RELEVANT TO YOUR ANALYSIS IN THIS CASE?

A.   WELL, THE PROPOSED GUIDELINES FOR PARKS RECOGNIZE THAT THESE ARE NATURAL SETTINGS, THAT THERE IS NATURAL TOPOGRAPHY. SO THEY VARY -- THEY ALLOW DIFFERENT SLOPE REQUIREMENTS AND TYPICALLY WOULD BE APPLIED IN WHAT THE PLAINTIFFS APPLIED TO SAY A WALKWAY GOING INTO A BUILDING.

IN THIS CASE, THESE ARE FROM THE PROPOSED FEDERAL GUIDELINES FOR OUTDOOR DEVELOPMENT.  THE CALIFORNIA PARKS HAVE

2064

A SIMILAR RECOMMENDATION WHICH ALLOWS -- TYPICALLY A RAMP IS 8.3 PERCENT MAXIMUM OR WHAT'S REFERRED TO AS ONE TO 12 SLOPE.

WHERE THESE PROPOSED STANDARDS AND THE STATE STANDARDS ALLOW 10 PERCENT SLOPE FOR UP TO 30 FEET OF LENGTH OR 12.5 PERCENT SLOPE FOR UP TO TEN FEET OF LENGTH.

SO, AGAIN, THESE ARE PROPOSED GUIDELINES THAT DO GIVE, AT LEAST IN THE ABSENCE OF LEGAL REQUIREMENTS, GIVE SOME GUIDE THAT WOULD APPLY TO THESE PARKS THAT WERE NOT ACCOUNTED FOR IN WHAT THE PLAINTIFFS HAD WRITTEN IN THEIR BARRIER LISTS.

Q.   HOW DO THESE PROPOSED GUIDELINES FOR OUTDOOR RECREATION AREAS AND PLAYGROUNDS COMPARE TO THE ADAAG AND THE CALIFORNIA BUILDING CODE REQUIREMENTS FOR AN ACCESSIBLE PATH OF TRAVEL, LIKE YOU SAID, TO A BUILDING ENTRANCE, FOR EXAMPLE?

A.   TYPICALLY AN ACCESSIBLE PATH OF TRAVEL UNDER ADAAG AND UNDER CALIFORNIA BUILDING CODE WOULD BE UP TO 8.33 PERCENT FOR A RAMP THAT WOULD NEED HANDRAILS.

AND THESE HAVE ADDITIONAL SLOPES THAN WHAT WOULD OTHERWISE BE REQUIRED, SO THAT MANY OF THE ITEMS THAT PLAINTIFF IDENTIFIED AS BEING AREAS THAT HAD LIMITED SLOPES ABOVE 8.3 PERCENT WOULD BE FULLY WITHIN THE PROPOSED GUIDELINES.

Q.   AND WHAT TYPES OF FACILITIES DO YOU BELIEVE PLAINTIFFS MADE A MISTAKE IN APPLYING THE STRICTER ADAAG STANDARDS FOR PATH OF TRAVEL INSTEAD OF THESE PROPOSED FEDERAL GUIDELINES FOR RECREATION AREAS?

A.   AT THE PARKS FACILITIES AND AT THE PLAYGROUND FACILITIES.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Kirola Trial Day 10, 110428

2085

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE

IVANA KIROLA, ET AL.,          )          COURT TRIAL
                               )
          PLAINTIFFS,          )          VOLUME 11
                               )
   VS.                         )          NO. C 07-03685 SBA
                               )
CITY AND COUNTY OF             )
SAN FRANCISCO, ET AL.,         )          PAGES 2085 - 2296
                               )
          DEFENDANTS.          )          OAKLAND, CALIFORNIA
_____)          FRIDAY, APRIL 29, 2011


                    TRANSCRIPT OF PROCEEDINGS

     APPEARANCES:

     FOR PLAINTIFFS:          SCHNEIDER WALLACE COTTRELL BRAYTON &
                                  KONECKY
                              180 MONTGOMERY STREET, SUITE 2000
                              SAN FRANCISCO, CALIFORNIA  94109
                          BY: MARK T. JOHNSON,
                              ANDREW P. LEE,
                              KIRAN PRASAD,
                              GUY B. WALLACE, ATTORNEYS AT LAW

                              BROWN POORE LLP
                              THE WATERGATE TOWERS
                              2200 POWELL STREET, SUITE 745
                              EMERYVILLE, CALIFORNIA  94608
                          BY: SCOTT A. BROWN, ATTORNEY AT LAW

     FOR DEFENDANT:           OFFICE OF THE CITY ATTORNEY
                              SIXTH FLOOR - FOX PLAZA
                              1390 MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94102
                          BY: ERIN BERNSTEIN,
                              DANNY Y. CHOU,
                              JAMES M. EMERY,
                              ELAINE M. O'NEIL,
                              KRISTINE A. POPLAWSKI, ATTORNEYS AT LAW

     REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258

2114

ACCESSIBLE PARKING THAT IS ACTUALLY PROVIDED AT THE

CONSERVATORY OF FLOWERS?

A.    I -- YES, AND THE ACCESSIBLE ROUTE THAT IS -- IS

AVAILABLE THERE.  THERE IS AN ACCESSIBLE ROUTE THAT'S WELL

SIGNED AND TAKES ADVANTAGE OF THE NATURAL TOPOGRAPHY OF THE

SITE TO GET SOMEONE UP TO THE ENTRY.

Q.    I'D LIKE TO TALK ABOUT ANOTHER FEATURE IN GOLDEN GATE

PARK, WHICH IS THE BOTANICAL GARDENS.

                   (EXHIBIT PUBLISHED.)

BY MR. EMERY:

Q.    DID YOU REVIEW THE CIRCULATION PATHS IN THE BOTANICAL

GARDEN?

A.    YES, I DID.  I HAVE BEEN THERE TWICE.

Q.    AND DID YOU ALSO EVALUATE THE LOCATION OF THE ACCESSIBLE

TOILETS IN THE BOTANICAL GARDEN?

A.    YES, I DID.

Q.    DID YOU HAVE -- DID YOU FORM ANY OPINIONS ABOUT THE

ACCESSIBLE TOILETS AND THE ADEQUACY OF THE CIRCULATION ROUTES

IN -- IN THE BOTANICAL GARDENS?

A.    I DID, YES.

                   (EXHIBIT PUBLISHED.)

BY MR. EMERY:

Q.    AND WHAT ARE WE LOOKING AT NOW?  SLIDE 29 OF AA17?

A.    YES.  THIS IS A MAP THAT'S HANDED OUT TO VISITORS AS THEY

COME THROUGH THE ENTRIES INTO THE FACILITIES.  SO THIS IS A

2115

VERY LARGE AREA.  IT'S ABOUT 55 ACRES.

Q.    UM-HMM.

A.    IT'S IN GOLDEN GATE PARK.  THE TRAIL SYSTEM IS SHOWN IN THE GRAY TONES.  I'VE CIRCLED ON THE MAP THE AREAS THAT ARE INDICATED AS ACCESSIBLE ROUTES.

Q.    SO THOSE RED CIRCLES YOU ADDED TO THE MAP; IS THAT RIGHT?

A.    YES.  THERE'S ACCESSIBLE SYMBOLS ON THESE TRAILS, AND I JUST CIRCLED THEM SO IT WAS EVIDENT WHERE THEY WERE.  THERE'S ALSO A BLUE CIRCLE AT THE TOP, WHICH INDICATES THE LOCATION OF ACCESSIBLE TOILET AREA.

                    (EXHIBIT PUBLISHED.)

          THE WITNESS:  AND TO -- RECENTLY, THERE WAS SOME ADDITIONAL IMPROVEMENTS IN THE FACILITY.  SLIDE 30 IS, AGAIN, A SKETCH OF THAT 55-ACRE SITE.  AND THE -- THE AREAS THAT ARE DARKER SHOW THE EXTENT OF THE TRAILS THAT ARE ACCESSIBLE.  THERE'S ALSO A RHODODENDRON TRAIL HERE, WHICH IN MY MIND WAS FLAT AND WAS ACCESSIBLE.

          SO AS YOU CAN SEE, A VAST PERCENTAGE OF THE SITE HAS BEEN MADE ACCESSIBLE.  IT'S ONLY THAT AS YOU GET IN THE BACK AND THERE'S SOME NATURAL TERRAIN TOPOGRAPHY ISSUES THAT ARE VERY STEEP THAT ARE VERY, VERY DIFFICULT TO GET INTO BECAUSE OF THE NATURAL TERRAIN.

          THE OTHER AREAS HAVE BEEN SERVED, AND THERE'S BEEN SOME -- EVEN SOME SWITCHBACKS AND OTHER AREAS THAT THE TRAILS HAVE BEEN MADE TO BE EXTENDED.

2116

BY MR. EMERY:

Q.   WHEN YOU REFER TO A CIRCULATION PATH IN THE BOTANICAL GARDEN AS BEING ACCESSIBLE, WHAT STANDARDS ARE YOU APPLYING TO -- TO THAT EVALUATION?

A.   WELL, THIS IS A PARK FACILITY SO THAT IT WOULD -- CURRENTLY THERE ARE NO STANDARDS LEGALLY FOR PARKS.  IT WOULD -- THERE ARE -- THE PROPOSED -- THERE ARE PROPOSED GUIDELINES FOR OUTDOOR RECREATIONAL FACILITIES FOR TRAILS THAT I HAD SHOWN SLIDES OF EARLIER THAT INDICATED THAT SLOPE ISSUES ARE MUCH DIFFERENT UNDER -- IN THE -- IN LOOKING AT AN OUTDOOR PARK FACILITY THAT -- THAN WOULD OTHERWISE BE REQUIRED IN CALIFORNIA BUILDING CODE OR IN ADAAG.

Q.   SO WHICH -- WHAT ARE YOU APPLYING WHEN YOU -- WHEN YOU CALL THESE TRAILS TO BE ACCESSIBLE?  WHAT -- WHAT STANDARD DO YOU APPLY TO REACH THAT CONCLUSION?

A.   WELL, I LOOK AT THE CALIFORNIA BUILDING CODE, AND I LOOK AT ADAAG.  AND THEN I ALSO LOOK AT THE -- SINCE THEY DON'T DIRECTLY APPLY TO OUTDOOR SITUATIONS THAT HAVE TOPOGRAPHY CONDITIONS, I ALSO LOOK TO THE PROPOSED GUIDELINES AS A -- WHEN THERE ARE CODES, YOU FOLLOW THEM.  AND WHEN THERE'S NO CODES, YOU -- THAT ARE, IN EFFECT, YOU KIND OF LOOK FOR GUIDANCE IN RELEVANT MATERIALS.  AND, IN MY MIND, THIS IS A RELEVANT MATERIAL.

Q.   UM-HMM.

     AND DID YOU FORM AN OPINION THE ADEQUACY OF THE

Kirola Trial Day 11, 110429

2172

DO YOU HAVE AN OPINION?

A.   I DIDN'T QUITE UNDERSTAND THE --

Q.   I'LL ASK IT A DIFFERENT WAY, THEN.

A.   OKAY.

Q.   ISN'T IT TRUE THAT YOU HAVE NO OPINION ON WHETHER THE CITY HAS RESPONSIBILITY FOR THE SIDEWALK AND CURB RAMPS SURROUNDING EACH OF THE FACILITIES THAT YOU -- THE 69 FACILITIES THAT YOU RESPONDED TO?

A.   THAT'S CORRECT.  IT WASN'T IN THE SCOPE OF WHAT I'M -- I REVIEWED IN THIS CASE.

Q.   OKAY.  AND ISN'T IT ALSO TRUE THAT THE PLAINTIFFS' EXPERT IDENTIFIED PROBLEMS AND INCONSISTENCIES WITH ADAAG AND CBC IN THE PUBLIC RIGHT-OF-WAY SURROUNDING THE FACILITY, THAT YOU COUNTED THAT AS AN ERROR OR MISAPPLICATION OF ADAAG WITH CBC?

A.   THAT'S CORRECT.  VERY SPECIFIC.

Q.   AND THAT WAS A BIG PART OF WHAT WAS INCLUDED IN THE 86.5 PERCENT; IS THAT CORRECT?

A.   YES.  AND THAT'S CONSISTENT WITH THE ADAAG REQUIREMENTS.

MR. JOHNSON:  MOVE TO STRIKE AFTER THE "YES" AS NON-RESPONSIVE.

THE COURT:  THE -- SO THE QUESTION WILL STAY IN, AND THE REST STARTING WITH "AND" WILL BE STRICKEN AS NON-RESPONSIVE.

BY MR. JOHNSON:

Q.   AND, IN FACT, IT'S YOUR POSITION THAT PUBLIC RIGHT-OF-WAY

Kirola Trial Day 11, 110429

2173

IS NOT REGULATED BY ADAAG OR THE CBC; IS THAT CORRECT?

A.    IT'S MY POSITION THAT ADAAG DOES NOT SPECIFICALLY COVER THE PUBLIC RIGHT-OF-WAY, YES.

Q.    AND YET BOTH THE -- BOTH THE ADAAG AND THE CBC HAVE PROVISIONS SPECIFYING THE DIMENSIONS OF WALKWAYS AND CURB RAMPS; IS THAT CORRECT?

A.    THAT'S CORRECT.

Q.    SO IT'S ALSO YOUR POSITION THAT PARKS ARE UNREGULATED BY THE ADAAG OR CBC; IS THAT CORRECT?

A.    YES AND NO.   SOMETIMES THEY COULD FALL UNDER CERTAIN PORTIONS -- GENERALLY, IT'S -- THEY'RE NOT COVERED BY THE CURRENT GUIDELINES.

Q.    BY GUIDELINES, YOU MEAN ADAAG AND THE CBC?

A.    CORRECT.

Q.    WHEN YOU SAY "CERTAIN PORTIONS OF IT," YOU'RE REFERRING TO BUILDINGS WITHIN A PARK WHICH YOU WOULD CONSIDER FACILITIES?

A.    BUILDINGS, PLAYGROUNDS, TRAILS, BALL FIELDS.

Q.    I DON'T UNDERSTAND.   SO NONE OF THOSE ARE COVERED?   OR SOME ARE COVERED, AND SOME ARE NOT?

A.    IT WOULD DEPEND UPON ON THE SITUATION AND THE BOUNDARIES. PARK, GENERALLY BUILDINGS ARE -- COULD BE COVERED BY THOSE ASPECTS, AND THE OTHER FACILITIES WOULD NOT BE.

Q.    SO IT'S YOUR POSITION THAT PLAYGROUNDS ARE NOT COVERED BY THE ADAAG OR CBC; IS THAT CORRECT?

A.    THAT'S CORRECT.

2176

A.    PARTIALLY.

Q.    THAT'S THE PRIMARY REASON THAT YOU IDENTIFIED CITATIONS BY THE PLAINTIFFS' EXPERTS AS BEING -- INVOLVING PLAYGROUNDS AS BEING ERRORS OR MISAPPLICATIONS OF THE CODE; IS THAT CORRECT?

A.    NO.   THAT'S NOT MY OPINION.

Q.    ISN'T IT YOUR POSITION THAT ADAAG AND THE CBC DON'T APPLY TO PLAYGROUNDS?

A.    THAT'S CORRECT, AND THE -- THAT THE SECTIONS INDICATED IN THE REPORTS THEMSELVES, THE PARTICULAR SECTIONS, WERE NOT THE RELEVANT CONTROLLING DETERMINATION.

Q.    ARE YOU FAMILIAR WITH THE GOLDEN GATE PARK MASTER PLAN?

A.    NO, I'M NOT.

          MR. JOHNSON:  THIS HAS BEEN INTRODUCED INTO EVIDENCE AS EXHIBIT 1422, YOUR HONOR.

          THE COURT:  1422, YOU SAID?

          MR. JOHNSON:  PLAINTIFFS' 1422.

          THE COURT:  OH, 1422.

          MR. JOHNSON:  YES, PREVIOUSLY.

          THE COURT:  OKAY.

          MR. JOHNSON:  I THINK COUNSEL HAS A COPY.

          MR. EMERY:  I DON'T HAVE IT WITH -- ON ME -- WITH ME.  I WASN'T EXPECTING --

          THE COURT:  THEY ALSO MARKED IT AS PTX -- REMEMBER PTX22 IN YOUR BINDER WITH THE SAME --

          THE CLERK:  THAT'S A DIFFERENT.

2185

A.   YES.

Q.   AND IT SAYS RIGHT BELOW THAT CHART, "THIS CHART SHOWS THE OVERALL ACCESSIBILITY COMPLIANCE OF BUILDINGS THAT PLAINTIFFS' EXPERTS HAVE REVIEWED."

DO YOU SEE THAT?

A.   YES.

Q.   AND YOU ALSO INCLUDED IN THAT 86.5 PERCENT ANY ITEMS THAT PLAINTIFFS HAVE IDENTIFIED AS INCONSISTENCIES WITH ADAAG OR CBC WHEN THEY WERE OUTDOOR WALKWAYS IN PARKS ON THE BASIS THAT THERE ARE NO GUIDELINES FOR OUTDOOR -- THAT ARE IN EFFECT FOR OUTDOOR WALKWAYS OR RECREATION AREAS; IS THAT CORRECT?

MR. EMERY:  COMPOUND.

THE COURT:  SUSTAINED.

BY MR. JOHNSON:

Q.   DID YOU -- IS IT YOUR POSITION, MR. WOOD, THAT A PAVED WALKWAY IN A PARK IS NOT REGULATED BY ADAAG OR CBC?

A.   THAT DEPENDS.  SOMETIMES YES, SOMETIMES NO.

Q.   WHAT DOES IT DEPEND UPON?

A.   THE ROUTE OF TRAVEL INTO A BUILDING AS AN ACCESSIBLE WALKWAY WOULD BE REQUIRED FOR THE ENTRANCE TO THAT BUILDING. OTHER NON-REQUIRED PATHS OR TRAILS THAT ARE IN PARTS OF OTHER AREAS OR TOPOGRAPHY IN THE PARK WOULD NOT NECESSARILY BE REQUIRED -- THAT WOULD NOT BE REGULATED.

Q.   SO YOUR POSITION WOULD BE THAT THE PAVED WALKWAYS THROUGH THE BOTANICAL GARDENS ARE COVERED BY ADAAG OR THE CBC; IS THAT

2186

CORRECT?

A.    THAT'S CORRECT.

Q.    OKAY.  SO WHEN MR. MASTIN IDENTIFIED PROBLEMS WITH THE CROSS-SLOPES AND -- AND OTHER PROBLEMS ON THE PAVED WALKWAY IN THE BOTANICAL GARDENS, YOU INCLUDED THAT AS A MISINTERPRETATION OF ADAAG OR CBC; IS THAT CORRECT?

A.    THAT'S CORRECT.

Q.    NOW, I THINK YOU HAVE TESTIFIED PREVIOUSLY THAT YOU UTILIZED THE A.D.A. TITLE II TECHNICAL ASSISTANCE MANUAL IN YOUR -- BASICALLY IN GATHERING -- IN GAINING YOUR EXPERTISE AND ALSO IN THIS CASE; IS THAT RIGHT?

A.    YES.  AND I INDICATED THAT IT WAS -- I'LL JUST SAY "YES" TO YOUR QUESTION.  YES.

Q.    OKAY.

AND ARE YOU FAMILIAR WITH THE 1994 SUPPLEMENT OF THE TITLE II TECHNICAL ASSISTANCE MANUAL?

A.    OFFHAND, I REVIEW A LOT OF DOCUMENTS.  I DON'T REMEMBER IN PARTICULAR THE DATES OF THAT ONE.  I'D HAVE TO TAKE A LOOK AT IT.

(PAUSE IN THE PROCEEDINGS.)

MR. JOHNSON:  LIKE TO MARK AS NEXT IN ORDER -- ACTUALLY, IT'S MARKED AS -- I'M SORRY, YOUR HONOR.  IT'S MISMARKED, I THINK, AS 4152.  I THINK WE MIGHT ALREADY HAVE SOMETHING MARKED AS 4152.

THE CLERK:  YOU DO.