# EXHIBIT 23

## PROCEDURE 9.8.24

## ADA & ACCESSIBILITY COMPLIANCE

### A. PURPOSE

To establish a procedure for identifying the scope of work required to attain accessibility compliance on all Department of Public Works projects and to ensure that construction documents and completed facilities meet all applicable requirements and policies. To establish procedures to ensure that the completed facilities allow for the programs, services and activities intended to be provided to the public in these facilities are readily accessible to and usable by persons with disabilities in the most integrated settings possible. This policy does not address employment or accommodations of employees with disabilities under Title I of the ADA or similar federal, state or local statutes and regulations.

### B. POLICY

Compliance with state, federal and local accessibility statutes and regulations is mandatory for all local government entities, including the City and County of San Francisco. Additional policies and practices established by the City and County of San Francisco through the Mayor's Office on Disability and the Department of Public Works may establish more specific requirements than the federal and state requirements in order to assure that the intention and purpose of accessibility statutes and regulations are met.

### C. DISCUSSION

1. There are several federal and state statutes and regulations that require the capital projects designed and provided by the Department of Public Works to be accessible. The most commonly referred to include the following: Americans with Disabilities Act, Title II, 28CFR, Part 35 "Nondiscrimination on the Basis of Disability in State and Local Government Services."

   a. ADA Grievance Procedure.

   b. Access to Programs, Services and Activities: Communications, Accommodations.

   c. Access to Buildings and Facilities: Federal Standards for Buildings and Facilities, Published in the Federal Register on July 26, 1991, Corrected January 14, 1992, 36 CFR Part 1191. (ADA Accessibility Guidelines – ADAAG).

2. California Code of Regulations (CCR), Title 24, Part 2, California Building Code.

3. California Government Code, Sections 4450-4460  It is the purpose of this chapter to ensure that all buildings, structures, sidewalks, curbs, and related facilities, constructed in this state by the use of state, county or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities. This section tasks the State Architect with developing accessibility standards in the California Building Code that provide a minimum level of accessibility that is not less than that required by the federal ADA Accessibility Guidelines (ADAAG). These requirements apply to public sector projects regardless of whether a building permit is issued or not and applies to temporary and emergency construction as well as permanent buildings.

4. California Civil Code, Sections 51-55.1 "Unruh Civil Rights Act."  These sections state that any violation of the rights of individuals under the Federal Americans with Disabilities Act

**CCSF-KIROLA 062860**

**City and County of San Francisco**
**Department of Public Works**

shall also be construed as a violation of the accessibility requirements of the Unruh Civil Rights Act. Also stated in Section 54: "Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, physicians' offices, public facilities, and other public places."

## D.  PROCEDURE

1.  Responsibility

    The Project Manager ("PM"), or the Project Lead ("PL") when no PM has been assigned to manage a project, is responsible for scheduling ADA reviews in a timely manner and ensuring that the Project team follows through with the implementation of review comments or provides adequate explanation as to why the comments are not being implemented.

    Because capital projects vary widely in size and complexity, Project Leads are encouraged to meet with the DPW DAC to establish the number and schedule of reviews and set expectations on how long each review will take.  Each review period is usually one to two hours each.

2.  Projects Exempt from Accessibility Review

    Projects in existing facilities which consist only of heating, ventilation, air conditioning, reroofing, electrical work not involving placement of switches and receptacles, cosmetic work that does not affect items regulated by the building code or ADAAG, such as painting, equipment not considered to be a part of the architecture of the building or area, such as computer terminals, office equipment, etc., are not considered alteration projects and do not require DPW DAC review and approval *unless they affect the usability of the building or facility*. Structural work that is required solely for the purpose of performing mechanical remodeling or alteration projects is considered incidental to the mechanical project, which is also exempt work under CBC 1134B.2.1, Exception 4. However, the work must comply with accessibility requirements that pertain to it, such as mounting heights for switches, outlets, thermostats, fire alarm pull stations, etc.

    The only purpose of the above exemption is to exclude projects from review. This exemption does not relieve projects from complying with other applicable accessibility requirements. (For example, replacement of carpet or door hardware does not require review by the DPW DAC under this procedure; however the work must comply with accessibility requirements that apply to those elements.) If in doubt contact the DPW DAC for confirmation of project requirements.

3.  Selection of Consultants, RFQs, and RFPs

    When the project plan and quality control plan are developed, the ADA DAC shall determine whether the consultants must demonstrate their ability to comply with federal, state & local accessibility statutes and regulations in their Statement of Qualifications or proposal. The DPW DAC shall provide language regarding desired or required qualifications related to accessibility and the method of demonstrating the consultant's ability to comply with ADA. For integrated project delivery methods, the same shall apply for the contractor's ability to comply with ADA.

4.  Planning Phase

    Meet with the DPW DAC for early planning input in order to identify accessibility requirements that are critical to the budget and schedule of planned projects.   Access

**CCSF-KIROLA 062861**

compliance options may be identified to establish a range estimate for budget and schedule planning purposes. Coordination with the Citywide ADA Transition Plan and the priorities for meeting the ADA requirements should be evaluated during this phase. The DPW DAC can advise on funding opportunities that may be available for identified accessibility barrier removal and program accessibility of a given facility or departmental function.

5.  Concept Design Phase (10%-30% completion)

    a.  Meet with the DPW DAC to review design concepts and solicit input on critical accessibility requirements. Consider joint meetings with client representatives in order to identify accessibility practices and procedures that may affect project programming and fundamental design.

    b.  The DPW DAC will also review the project and advise on potential options to comply with accessibility requirements. Consideration of accessibility compliance impact on overall regulatory compliance will be considered.

6.  Schematic Design

    a.  During Schematic Design the DPW DAC will review the project program and intended uses, site development needs, existing conditions, overall code compliance issues that may affect access compliance, path of travel from the project to the public right-of-way and nearby public parking and transportation.

    b.  Because the design phase is a dynamic and interactive process and as such includes changes that could not have been anticipated during the concept phase, Project Leads are strongly encouraged to document the outcome of the reviews with the DPW DAC. The documentation can take place in the form of redlined drawings and meeting minutes or both.

7.  Design Development Reviews (30-60% completion)

    a.  At this phase of the project, the DPW DAC will review proposed plans and details with respect to the intended uses of the facility along with general code compliance issues. The DPW DAC shall identify design and compliance options for the project sponsor to use in determining the most appropriate measures and in setting priorities.

    b.  Specifications related to accessible features must be submitted for review along with manufacturer's supporting product literature, cut sheets, etc. Such specifications should include; elevators, lifts, signage, door & gate hardware, flooring & walking surfaces, fire alarm pulls, stair nosing, entrance mats, toilet room partitions & accessories, plumbing fixtures, etc.

    c.  Public Right of Way projects that cannot meet the requirements of the SF DPW Curb Ramp Standards must meet with the DPW DAC to review such issues to evaluate alternative designs, or to establish technical infeasibility documentation prior to proceeding to the construction document phase.

8.  Construction Document Reviews (75-100% completion)

    The PM shall schedule meetings at least 2 weeks in advance.   Informal reviews of sketches about specific issues raised during earlier design reviews are encouraged via email and walk-in meetings. Both parties should reserve raising new issues for project review meetings.

    a.  DPW Disability Access Coordinator Quality Assurance Review Form is required to be included in plans with project title block. Form must be wet-signed by DPW DAC prior to

**CCSF-KIROLA 062862**

submittal to Building Department for permit review. For projects that do not obtain building permits, DPW DAC wet signature is required on record plans prior to issuing for bidding.

b. SF Department of Building Inspection Accessibility Forms may also be required on plans: http://www.sfgov.org/site/dbi_page.asp?id=18633.

c. Framing, Electrical Box, & Plumbing Rough-In Inspections: Schedule DPW DAC Standard accessibility details must be approved in advance by the DPW DAC. Project construction documents shall not duplicate or contradict the standard accessibility details that have been approved by the DPW DAC.

d. Project addenda issued during bidding that affect or may affect accessibility must be reviewed by the DPW DAC prior to issuance.

9. Construction

   a. The DPW DAC is available for consultation and site visits needed to resolve accessibility issues during construction.  Appropriate times for consultation include:
   Framing, Electrical Box, & Plumbing Rough-In Inspections. Schedule DPW DAC inspection prior to installation of gypsum board or otherwise closing to view.

   b. Grading Inspections: Schedule DPW DAC inspection prior to installation of accessible courts, walks, ramps and parking areas.

   c. Plumbing Fixtures, Toilet Partitions & Accessories Inspections: Schedule DPW DAC inspection after installation.

   d. Doors, Fixtures, Furnishings & Equipment Inspections: Schedule DPW DAC inspection after installation and adjustment. Doors must be adjusted after mechanical system is balanced and all exterior doors and windows are closed.

   e. Sitework Inspections: Schedule DPW DAC inspection after installation of accessible features.

   f. Signage Inspections: California Building Code Section 1117B.5 requires a rigorous and detailed plan review and field inspection of accessible signage.

      1) Construction phase submittals of accessible signage must be routed to Disability Access Coordinator and included in design review meetings.

      2) Non-standard content Braille – Separate review required by qualified individual or organization, such as the Lighthouse for the Blind. Reviewer to provide letter of compliance.

      3) Field inspection by Disability Access Coordinator is mandatory upon installation of all provided accessible signs. Complex or custom accessible signs, such as accessible evacuation map signs, must be reviewed by the DPW DAC prior to submitting for fabrication.

   g. Changes During Construction:

      1) The PM must immediately notify the DPW DAC of any unforeseen conditions or other changes to the work that affect or could affect the accessibility requirements and compliance of the project.

**CCSF-KIROLA 062863**

    2) Critical Path: If for any reason accessibility issues may soon become critical path issues the project manager must notify the DPW DAC as soon as possible in order to expedite reviews and inspections.

  h. Final Project Review & Acceptance

    1) Temporary Certificate of Occupancy: DPW DAC must sign SF DBI job card inspectors list.

    2) Certificate of Occupancy: DPW DAC must sign SF DBI job card.

    3) Projects without Building Permits: DPW DAC must provide letter of completion on all such projects.

10. Access Appeals Process for MOD/DPW

  a. ADA Coordinator Appeals: On those occasions when architects, engineers (or project developers) disagree with the ADA Coordinator or Access Compliance Officer's requirements for a project, the architect may file an appeal. The appeal process afforded for neutral dispute resolution is as follows:

    Access Appeals Process for MOD/DPW: Access Appeal Process - DPW & MOD

    The Department of Public Works and the Mayor's Office on Disability are the primary departments responsible for the access review of city-funded projects.  On those occasions when architects (or developers) have disagreed with the findings of the ADA Coordinator or Compliance Officer making a decision, previously there was no formal process to review the decision or have a neutral body respond.  The answers to the following Frequently Asked Questions describe the appeal process that has been created:

    1) What types of issues may be appealed?

       • Federal, State, or Local access code interpretations.

    2) Who may file an appeal?

       • Project Managers, Project Architects and Project Engineers with the approval of the Bureau Managers.
       • Private architects or developers in contract with the City for projects that MOD reviews.

    3) When do I need to appeal?

       • For site reviews, the appeal should be made as soon as possible, but within 20 business days of receiving the punch list.
       • For plan reviews, an appeal should be filed within 30 business days from the receipt of plan comments.  No appeal will be accepted after the project has been advertised for bid.

    4) How do I file an appeal?

       • Submit an appeal in writing.
       • Attach  a cover letter describing the issue being appealed.
       • Include the Project Name, Job Order #, Project Manager's Name & Phone #, and Appellant's Name & Phone #.
       • Provide a map of the area as appropriate.
       • Provide drawings as appropriate.

**CCSF-KIROLA 062864**

- Provide pictures as appropriate.
- Submit the above information/material to the Director of MOD for projects reviewed by MOD and to the Director of DPW for projects reviewed by DPW.

5) How will the appeal be handled?

- The Director of Public Works or the Director of MOD will designate a panel of 3 people who will review the information/material.  The panel will consist of two code experts and one neutral, but knowledgeable party.  (The neutral, knowledgeable party is intended to provide a "common sense" perspective, should the experts disagree.)
- If needed, the panel will meet with the appellant and with the ADA Coordinator.
- The panel will issue their recommendation to the Director.
- The Director will make the final decision.

b. Access Appeals Commission. On those occasions when architects, engineers (or project developers) disagree with interpretations of the San Francisco Department of Building Inspection's plan checkers or inspectors, the City has an appeal process in Section 105.3 of the San Francisco Building Code and the DBI Access Appeals Commission; See the DBI web site: http://www.sfdbi.org/.

---

**THE APPROVALS / SIGNATURES ARE FOUND IN THE NEXT PAGE.**

**CCSF-KIROLA 062865**



**City and County of San Francisco**
**Department of Public Works**

*Departmental Procedures Manuals*
*Vol. 9 – Project Delivery Manual*

**RECOMMENDED:**

Margaret Divine, Manager
Bureau of Engineering

Donald Eng, Manager
Bureau of Construction Management

Gary Hoy, Manager
Bureau of Architecture

Edgar Lopez, Manager
Bureau of Project Management

Fuad S. Sweiss
City Engineer & Deputy Director for Engineering

**APPROVED:**

Edward D. Reiskin
Director of Public Works

Date: January 2010

**Prepared by:** Kevin Jensen and Edgar Lopez, Bureau of Project Management

**APWA Practice No.:** 1.4 (6th Edition)

```
NOTE:
THIS IS A NEW PROCEDURE
```

Proc9.8.24R0_ADA –and- Accessibility- Compliance.docx

**CCSF-KIROLA 062866**